

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 23, 2018

Via ECF
The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
United State Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (ALC)

Dear Judge Carter:

    We write in response to the defendant's most recent submissions in support of his application for bail. On April 18, the Court found by a preponderance of the evidence that the defendant poses a serious risk of flight. Additionally, the Court found that, in light of the information and evidence presented at that time, the bail package proposed by the defendant was insufficient to reasonably assure his appearance at trial. For the reasons outlined below, the Government respectfully requests that the defendant continue to be detained.

    The Government has maintained throughout the bail process that the package proposed by the defendant is inadequate given the defendant's substantial incentive and ability to flee, and given his access to significant resources overseas. In particular, the evidence has established that (1) the defendant's father, who is an unindicted co-conspirator, is one of the wealthiest private businessmen in Iran, controlling a sprawling business empire comprising several multi-billion-dollar companies; (2) the defendant has an ownership interest in his father's businesses,[1] and he has worked with and on behalf of his father over the past decade, including on the project in Venezuela that is the subject of this case and for Samaneh Stratus Investment

---

[1] After failing to disclose this key fact, the defendant now takes the strained position that there is not "any evidence to indicate that [the defendant] is currently aware of any ownership interest." (Def's Submission, Ex. B, at 13). The defendant's sisters also now claim to have no knowledge of their ownership interest in their father's businesses. The defendant's and his sisters' assertions are not credible in light of emails between the defendant and his sister that discuss their interests in some of their father's companies. (*See, e.g.*, Ex. A (2011.07.18 Email from defendant to Pegah Sadr in which the defendant states, "All of these companies [including Stratus International Contracting] belong to our family including you, me, and negarin [sic].")).

The Honorable Andrew L. Carter, Jr.
May 23, 2018
Page 2

Company in Iran; (3) the defendant has set up and controlled numerous overseas companies of his own over the past decade, several with direct or indirect ties to his father's businesses in Iran; (4) at various times, the defendant has represented that his own assets measure in the tens of millions of dollars; (5) the defendant's father has represented that his assets are at least well in excess of $100 million; (6) both the defendant and his father have set up and controlled numerous foreign bank accounts in multiple jurisdictions and currencies with substantial assets in them; and (7) the defendant has exercised control over his father's foreign bank accounts, sending large sums of money around the world on his behalf, including millions of dollars to his mother and sisters in the United States.

In light of this and other evidence, the Court requested more information about the defendant's current financial circumstances and which of his assets are potentially subject to forfeiture; how much money may be available to the defendant through his father and other relatives; and the nature of the relationship between the defendant and the various individuals who have offered to be co-signers on a second bond, as well as information about their respective financial means.  In response, on May 17, the defendant submitted an eight-page letter attaching two exhibits: additional affidavits and letters from the proposed co-signers to the secondary $14 million bond, and a 22-page report from a financial investigator.  These submissions are unpersuasive for a number of reasons.

First, the $20 million bond the defendant proposes co-signing with his mother and sisters is based almost entirely on assets that are encumbered, forfeitable, or both:

- The defendant's equity in Pilatus Bank in Malta, worth allegedly $12.9 million. First, the defendant concedes that this money currently is frozen, and that whatever assets remain after the bank is unwound by the Maltese authorities will be "significantly" less than $12.9 million.  But, more significantly, regardless of how much money the defendant ultimately receives, his equity in Pilatus Bank is forfeitable because it constitutes criminal proceeds directly linked to the Venezuela project—the defendant used money from the project (CHF 1 million (Swiss Francs) and €8 million) to establish and capitalize Pilatus Bank in 2013.

- The defendant's apartment in Washington D.C., with an alleged fair market value of $1.5 million.  This property is forfeitable because it was purchased with criminal proceeds directly linked to the Venezuela project—the defendant used money from the project to purchase the apartment for nearly $1 million in 2013.

- The defendant's equity interest in various entities that own pistachio farms in California, with an alleged net value of $5.7 million.  This property is forfeitable because it was purchased with criminal proceeds directly linked to the Venezuela project—the defendant used approximately $3.5 million from the project to purchase the properties, and used an additional $2.5 million from the project to make capital contributions to the entities.

The Honorable Andrew L. Carter, Jr.
May 23, 2018
Page 3

- Two bank accounts in Cyprus, worth allegedly $3.1 million. According to the defendant, these accounts have been frozen by Cyprus authorities. Moreover, defense counsel has acknowledged that this money, if made available to the defendant, largely would be used to pay his legal fees and other expenses. (*See* Def's Submission, at 4 n.2).

- Pegah Sadr's apartment located at 1134 Alta Loma Road, apartment 203, West Hollywood, California, with an alleged fair market value (in combination with an adjacent unit she owns) of $1,175,000. This property is forfeitable because it was purchased with criminal proceeds directly linked to the Venezuela project—the defendant and his father used approximately $380,000 from the Venezuela project to purchase this property in 2014.

- Vacant land owned by Pegah Sadr, located at 37314 Winding Way, Malibu, California, for which she paid $920,000. This property is forfeitable because it was purchased with criminal proceeds directly linked to the Venezuela project—the defendant used approximately $920,000 from the project to purchase this property in 2012.

- Shokouh Azad's apartment located at 5225 Pooks Hill Road, apartment 412N, Bethesda, Maryland, with an alleged fair market value of $320,000. This property is forfeitable because it was purchased with criminal proceeds directly linked to the Venezuela project—the defendant and his father used $180,000 from the project to purchase this property in 2013.[2]

Thus, at a minimum, approximately $24.5 million of the defendant's and his family's assets that would secure the proposed $20 million bond are forfeitable and/or encumbered. Accordingly, the core of the defendant's proposed bail package cannot reasonably assure the defendant's presence at trial because the defendant and his family members risk losing the bulk of the security whether the defendant flees or not.

Other elements of the defendant's proposed package also fail to provide adequate assurances that the defendant will return to court when ordered, including (1) his offer to surrender his passports, given that the Government had to identify at least one additional active passport not disclosed by the defendant, and where the defendant has a history of obtaining passports from multiple countries using a private company whose primary service is to obtain citizenship and/or passports for clients; (2) a likely unenforceable (both legally and practically) extradition waiver, *see, e.g.*, *United States* v. *Morrison*, 2016 WL 741924, at *4 (W.D.N.Y. 2016), *United States* v. *Kazeem*, 2015 WL 4645357, at *3 (D. Or. 2015), *United States* v. *Young*, 2013 WL 12131300, at *7 (D. Utah 2013); and (3) a lack of serious security measures beyond the defendant's reluctant

---

[2] The Government produced in discovery bank records, title records, and emails showing that the aforementioned properties were purchased using proceeds of the charged crimes.

The Honorable Andrew L. Carter, Jr.
May 23, 2018
Page 4

offer to be subject to electronic monitoring (which, as Magistrate Judge Moses observed, is not a guarantee against flight).[3]

More significantly, the face value of the defendant's package is inadequate given significant evidence of the defendant's access to substantial resources overseas far in excess of the total bail-package amount. In an attempt to address this issue, the defendant now relies on a 22-page report authored by Guidepost Solutions LLC, a corporate investigations firm hired by his attorneys.

At the outset, it is noteworthy that, by their own admission, the "primary goal" of the purportedly "independent" financial investigation conducted by Guidepost was to "validate" the defendant's prior representations to the Court. (Def.'s Submission, Ex. B at 2). In other words, Guidepost was not hired to and did not conduct a truly independent investigation, but rather set out to put their imprimatur on the positions already staked out by the defendant. And that is confirmed by the "investigation" they conducted, which appears to have consisted primarily of interviews of the defendant and his father, and a review of the record in this case, including the materials filed by the parties and disclosed by the Government in discovery. But none of this information could possibly answer the Court's questions about the defendant's *current* financial condition, and the state of his father's wealth and the defendant's ability to access it, because the materials obtained by the Government's investigation primarily cover the period of the charged conduct: 2008 to 2014. In other words, Guidepost's "investigation" was not designed to reveal any new information.

It is equally significant that, to the extent the report was based on the review of some additional materials or witness interviews, it fails to include or identify any of them, so the Court cannot examine or verify any information in the report. Ultimately, the purportedly "independent" investigator and the defendant are saying the same thing to the Court: take our word for it. But, based on the defendant's history in these proceedings of failing to identify and disclose material information, and the fact that Guidepost was hired simply to "validate" the defendant's prior positions, the Court should not. For example, when the report states without foundation that Mohammad Sadr is worth *only* "tens of millions of dollars" and that all his wealth is locked up in Iran, or that he has closed all 26 foreign bank accounts he controlled and has access to only $200,000 in cash (Def.'s Submission, Ex. B at 17, 19, 20), there is no way to verify any of this information, and no basis to rely on it or any of the report's conclusions.

---

[3] The Government does not dispute that there are examples of cases in which wealthy defendants with few ties to the United States are granted bail. Def.'s Submission at 6-7. There are also, however, a number of cases in which courts have detained defendants facing similar charges to the defendant in this case. *See, e.g.*, United States v. *Reza Zarrab*, 15 Cr. 867, Dkt. No. 41 (RMB) (S.D.N.Y. 2016) (denying bail to defendant charged with export violations based on defendant's lack of ties to the United States; his significant wealth and resources; his extensive international travel; and his strong ties to foreign countries without extradition); United States v. *Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990) (denying bail to defendants charged with export violations where defendants faced substantial sentences, had no domestic ties, extensive foreign ties, and had access to large quantities of cash).

The Honorable Andrew L. Carter, Jr.
May 23, 2018
Page 5

Next, while the defendant's Exhibit A does include several new submissions from the proposed co-signers to the secondary $14 million bond, based upon the foregoing and arguments we have made previously, this secondary bond alone cannot reasonably assure the defendant's appearance. Significantly, nearly a quarter of the letters come from members of the defendant's family, and approximately one third come from people who live outside the United States and have offered property located outside the United States. The former stand to lose their pledged property anyway pursuant to forfeiture, while there is no reasonable danger that the Government could successfully seize the property of the latter if the defendant were to flee. Accordingly, this bond too suffers from fundamental flaws, and it cannot reasonably assure that the defendant will not flee if released after spending two months in custody, and when he faces the prospect of spending many more years in federal prison if convicted.

Ultimately, the defendant argues that because he has "had to file multiple rounds of legal briefs, appear at five separate bail hearings, hire no fewer than three experts, and impose on dozens of [his] closes friends and family," it simply "is time to grant [him] bail." (Def.'s Submission, at 8). But no amount of time, effort, expense, or inconvenience can alter the basic facts and circumstances, which essentially have not changed since Magistrate Judge Moses first detained the defendant nearly two months ago, and which support detention and the denial of bail based on a fundamentally inadequate package. Contrary to the defendant's efforts to disparage the Government's arguments, they have been firmly rooted in the facts and evidence, while the defendant's arguments continue to rely on strained and creative attempts to explain inconvenient facts, and speculative opinions supplied by hired experts. The basic facts and evidence continue to merit detention of the defendant, who presents an unusual flight risk which the proposed bail conditions do not adequately address.

> Respectfully submitted,
> GEOFFREY S. BERMAN
> United States Attorney
>
> by: _____/s/_____
> Andrew DeFilippis
> Matthew Laroche
> Assistant United States Attorneys
> (212) 637-2420
>
> Garrett Lynch
> Special Assistant United States Attorney

cc:    Defense Counsel (via ECF)