```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                              18 Cr. 224 (ALC)

 5   ALI SADR HASHEMI NEJAD,
                                                Conference
 6                    Defendant.

 7   ------------------------------x
                                                New York, N.Y.
 8                                              July 17, 2018
 9                                              10:40 a.m.

10

11   Before:

12
                       HON. ANDREW L. CARTER, JR.,
13
                                                District Judge
14
                              APPEARANCES
15
     GEOFFREY S. BERMAN
16        United States Attorney for the
          Southern District of New York
17   BY:  ANDREW DEFILIPPIS.
          GARRETT LYNCH
18        Assistant United States Attorneys

19   ARNOLD & PORTER KAYE SCHOLER LLP
          Attorneys for Defendant
20   BY:  ANDREW BAUER
          BARUCH WEISS
21        TAL RACHEL MACHNES

22
     Also Present:  Michael Urbanowicz, FBI
23

24

25
```

1     (Case called)

2     MR. DeFILIPPIS: Good morning, your Honor, Andrew
3  DeFelippis and Garrett Lynch for the government. With us at
4  counsel table is Special Agent Michael Urbanowicz of the FBI.

5     MR. BAUER: Good morning, your Honor, Andrew Bauer
6  Baruch Weiss, and Tal Machnes for Ali Sadr, who is here with us
7  as well.

8     THE COURT: Good morning. What is the status of this
9  matter?

10    MR. BAUER: Since the ball is in our court, should I
11 begin, your Honor?

12    THE COURT: Let me hear from the government first.

13    MR. DeFILIPPIS: Your Honor, the government has
14 substantially completed its Rule 16 discovery obligations. We
15 produced a large quantity of discovery to the defense
16 consisting in large part of e-mails, but also financial
17 documents and other materials that we previously described to
18 the Court.

19    We are working through just some remaining requests
20 from the defense and questions regarding the discovery that we
21 have produced, but we are working collaboratively on that and
22 believe we will work those issues out.

23    From the government's perspective, while discovery is
24 always in some sense rolling to the extent that we acquire
25 additional materials, we think we are done producing discovery,

1    and we are prepared to set a motion schedule and trial date
2    today.
3              THE COURT:  Defense counsel.
4              MR. BAUER:  Thank you, your Honor.
5              Your Honor, we were last before you May 24, when you
6    ordered Mr. Sadr released after a long and highly contested
7    bail proceeding.  Mr. Sadr was released on June 13.
8              Between that time, between the 24th and the 13th, we
9    worked exhaustively and submitted a lot of documents to your
10   Honor for your signature, so it's really been since June 13
11   when Mr. Sadr was released that we have been able to turn to
12   the case itself.  Obviously, we were starting to review
13   documents as relating to bail.  We spent a considerable amount
14   of time, vast majority of our time focusing on bail.
15             Since June 13, we have hit the ground running.  We
16   have hired an e-discovery vendor, we have had our documents
17   processed, the discovery process, and we have begun reviewing.
18             The scope of the documents that we are looking to
19   review, your Honor, the government initially produced over
20   200,000 documents that it deemed relevant to the case.  They
21   have also given us their entire population of documents, 2.8
22   million files, and we are going to have to obviously look at
23   those at some level as well.
24             Focusing just on those 200,000 documents, we have
25   begun reviewing.  We have made some headway.  But, as you can

1  imagine, that's a large number of documents and it's going to
2  take us a while.  If you just do the math, which we have
3  obviously done, of how long it will take reviewers each hour to
4  review these documents, it's going to take months.
5      What we would like to do, your Honor, is to come back
6  before the Court in three months.  That's how long we think it
7  will take to review documents.  At that time I think we will be
8  in a better position to identify which motions that we are
9  going to bring and then set a motion schedule at that time.
10     I will say that we have made a preliminary list of
11 motions that we are considering.  Obviously, it is still very
12 early because we have only just begun our document review.  I
13 will focus on one of those motions that we are prepared to
14 bring.  It has to do with the presentation of foreign witnesses
15 at trial.
16     As you've seen during this case so far, Mr. Sadr has
17 every intention of bringing this case to trial and mounting a
18 vigorous defense.  We think the government's case has serious
19 flaws, and we are prepared to prove that during the course of
20 our case.
21     What we anticipate is an array of defense witnesses.
22 I don't know the exact number now.  It is part of what I'm
23 getting at.  Let's say it's five to 10 witnesses.  These are
24 all witnesses who are abroad in countries like Turkey and
25 Switzerland and Canada, and there are witnesses who will not be

1  coming here to the United States to testify, mainly because the

2  government has branded at least some of them as coconspirators.

3      We anticipate making a motion, a pretrial motion to

4  your Honor about how to present those witnesses.  The choice

5  is, as your Honor surely knows, is between live closed-circuit

6  television testimony or a Rule 15 deposition.

7      In order to bring that motion we need to be able to

8  represent to your Honor the materiality of those witnesses'

9  testimony and what they are going to say.  I will tell you,

10 even now, in our preliminary conversations with some of these

11 witnesses, some of these unidentified coconspirators in the

12 indictment, each of them are saying that there wasn't a

13 conspiracy, that there was no agreement or understanding that

14 there was a violation of U.S. law here.  Obviously, it's going

15 to be highly relevant.  It's going to be highly probative to

16 the case.

17     We need to sit with them in greater detail.  We need

18 to figure out what exactly they are going to say.  In order to

19 do that we have to review the documents so we can bring the

20 documents and sit before them.

21     Just working back from that, being able to bring that

22 motion alone, but having to find time to sit with those

23 witnesses and travel to see them, review the documents

24 beforehand, we think it's premature to definitely set the trial

25 schedule, but definitely also the pretrial motion schedule as

1  well.

2  THE COURT: Let me get a sense from the government as
3  to how long you think your direct case would be at trial.

4  MR. DeFILIPPIS: Your Honor, we don't expect the
5  government's case would be more than two weeks.

6  THE COURT: Defense counsel, obviously, you are not
7  required to put on a case. You've indicated that at this point
8  you are anticipating having witnesses testify. Do you have a
9  sense as to how long the defense case might be?

10  MR. BAUER: Your Honor, obviously with the caveats
11  that you already identified, I would think probably another two
12  weeks. It could be more, could be less. With all due respect
13  to their estimate, I'm not sure that I'm buying that their case
14  is going to be two weeks as well. Even assuming that, then I
15  think we are looking at least at a month-long trial.

16  THE COURT: It seems to me that it makes sense, given
17  the estimated length of this potential trial, to go ahead and
18  set a trial date. We can set it pretty far out. I'm thinking
19  about setting a trial date somewhere around January the 23rd,
20  so that's more than five months from now. We can work back
21  from that date, and we can certainly come back in September or
22  October and deal with a motion schedule, depending on what sort
23  of motions you wish to file, but it seems that having a trial
24  date would be helpful in terms of making defense counsel making
25  arrangements to visit these witnesses and the like and make

1  sure that these witnesses' schedules will all align.  If we are

2  talking about five to 10 potential defense witnesses, I am not

3  sure how many witnesses from the government, it seems to me

4  that it makes sense to go ahead and set a trial date.

5           Let me hear from counsel about that potential date,

6  starting with counsel for the government.

7           MR. DeFILIPPIS:  Yes, your Honor.  The government

8  believes that that is appropriate.  We think that trial date

9  makes sense.

10          The government would just note that although there is

11  a large quantity of documents in this case, we fairly early on

12  in the discovery process expressed to the Court and the defense

13  that we think the case is relatively straightforward.  We set

14  out a very detailed roadmap for the defense of the documents

15  that we intend to rely upon at trial.  While we, in an

16  abundance of caution, really produced a very large quantity of

17  materials to the defense, the case is, we think, not overly

18  complicated and the relevant materials are really a small

19  fraction of what was produced to the defense.

20          We would suggest, if your Honor is amenable, that

21  perhaps we come back in 60 days to hear an update from the

22  defense on the review.  While we understand that they certainly

23  want to be thorough and diligent and prepare a defense, the

24  things like Rule 15 depositions and the video testimony, in our

25  experience, often are worked out simultaneous with motions *in*

1  *limine* fairly close to trial.  We don't think those are things
2  that should protract this over an extremely long period.
3          All to say, your Honor, that we are fine with an early
4  2019 trial date and would prefer, if you are amenable, to come
5  back in about 60 days.
6          THE COURT:  Defense counsel.
7          MR. BAUER:  Your Honor, we have no problem with coming
8  back in 60 days and giving you a status report.  We think
9  that's a reasonable request.  We don't disagree with the idea
10 that having a trial date on the calendar would be helpful to
11 the Court, to the parties and the witnesses as well.
12         The January date, however, your Honor, I think is,
13 respectfully, unrealistic.  Let me explain why.
14         First, with these foreign witnesses, and defense
15 counsel has gone through this process before, should your Honor
16 decide -- I'll tell you candidly we hope to convince you that
17 these witnesses can testify by live, closed-circuit television.
18 But should your Honor decide that Rule 15 depositions are the
19 way to move forward, the litigation surrounding that deposition
20 is going to be incredibly time consuming.  first of all, there
21 are the arrangements of actually going abroad and taking that
22 deposition and the parties being prepared to do that.  Then we
23 come back and then there is an entirely separate litigation
24 about annotations of what parts of the deposition are going to
25 be introduced, and there are surely going to be disagreements.

1    Your Honor is going to have to read line by line what our
2    requests are.  It just takes time.  That's one element.
3            We need approval from those foreign governments to go
4    and to take those depositions.  In some circumstances we have
5    to find another country other than their home country to take
6    their deposition.  This all takes time.
7            Second of all, your Honor, let me even take a step
8    back.  The government has had this case for over four years of
9    investigating it.  We have been on this case for a few months
10   and during those few months we have focused almost entirely on
11   bail.  I don't think it's unreasonable for us to need more time
12   to not only handle these Rule 15 depositions, but also to do
13   our own investigation.  They have made their production, but
14   there are other documents.  There are other witnesses out there
15   that we need time to look into.  And if we want to make
16   document requests, your Honor, then we need to make those
17   document requests through an MLAT process.  That also just
18   takes time.
19           Judge, if we set that January date, I can tell you
20   right now in a couple of months we are going to be back here to
21   push that back.  If you want to set a trial date, and I think
22   it's a good idea, your Honor, we are thinking next summer and,
23   if you want to be realistic, I think that's the date that we
24   should be targeting and we can move backward from that.
25           THE COURT:  Let me hear from defense counsel a little

1  bit more. I think I misspoke when I said five months from now.

2  It's actually six months from now, the trial date that I'm

3  proposing.

4      It seems to me that you already know that there is a

5  possibility that you wish to call these five to 10 witnesses.

6  I am not sure why that process can't start now, while you are

7  reviewing the discovery. It seems to me that defense counsel

8  is certainly very capable of multitasking.

9      Seems to me that since you know there is a possibility

10  that you wish to have these witnesses present testimony, and if

11  you change your mind, you can change your mind on that, but why

12  not start this process now. Because that's not going to be

13  contingent, your desire currently to call them is not

14  contingent on your review of the discovery.

15      Now, you can start this process and as you review the

16  discovery, if you later make a determination that you don't

17  wish to call these witnesses, then nothing is lost. It seems

18  to me that it's important to get this moving.

19      My recollection before, maybe I'm wrong, but I thought

20  the defense was trying to push -- I'll put it this way. If

21  Mr. Nejad had stayed in custody, it's my sense that the defense

22  would have been pushing for a much earlier trial date and

23  probably a trial date somewhere in the fall.

24      I understand that Mr. Nejad is out of custody now. We

25  are not talking about a fall trial date. We are talking about

1   the end of January. If you want me to push it back a couple of

2   weeks and have it toward the beginning of February, that's

3   fine, but it seems to me that I am not sure why it's going to

4   take that much time to start this process while you are

5   reviewing the discovery and have everything teed up.

6              Any other sort of technical issues, again, we are

7   talking about a defense case in which the government

8   anticipates their direct case would be two weeks, in any event,

9   and it may be longer than that. It seems to me that the end of

10  January or, if you want, perhaps February 6, somewhere in

11  there, that that should be enough time because we are going to

12  get into other issues if we start talking about pushing a trial

13  into the summer.

14             I am not sure exactly who all these witnesses are.  I

15  get a sense that there may be some desire to call experts,

16  quasi experts, things of that nature. When you get into the

17  summer, you start having all sorts of issues with people's

18  vacation plans and the like, and that's why I was thinking

19  again about the end of January, February, where people tend to

20  be a little more stationary.

21             let me hear from defense counsel.

22             MR. BAUER: Your Honor, to be clear, we have started

23  the process. In our estimation, the process begins with

24  reviewing the documents. I say five to 10. I don't know who

25  those five to 10 are now. That's my estimate.

1    The first step, we have to identify who the witnesses
2    are. How do we identify them? We review the documents and we
3    go sit with them and we figure out what they are going to say.
4    It's only after we do that can we make that motion to your
5    Honor. It's only after we make that motion can you then say,
6    Rule 15 or live testimony.
7    There are 200,000 documents to get through. While we
8    could target our searches for one witness here or one witness
9    there who we, sitting here now, are going to predict we are
10   going to want to call at trial, there are other witnesses out
11   there as well, and each one of those is going to require our
12   demonstration of their materiality to your Honor and then all
13   of the other arrangements.
14   I am not sure it's realistic that we can be doing all
15   of those steps along the way.
16   THE COURT: Let me ask you this to make sure I haven't
17   misunderstood. My recollection in the earlier part of this
18   proceeding is that you first indicated that you wanted to come
19   back in about three months to talk about a motion schedule and
20   you need that time to review the discovery. Did I misremember
21   that?
22   MR. BAUER: From what I said a few minutes ago, yeah,
23   absolutely.
24   THE COURT: Three months from now takes us toward the
25   middle or end of October. From mid October until February is

three months and change. Why wouldn't that be enough time? If you actually can review this discovery, based on what you said before, in three months, why wouldn't that extra three and a half months be enough time to deal with these issues in terms of figuring out these other witnesses and the like?

MR. BAUER: Again, I think when we are talking about -- so if in three months we come back and we say, Judge, here are our witnesses and we want a ruling from you, your Honor, if we need to do depositions or not, and then we give you a couple of weeks to decide, three months from now is October. So now we are in early November when you say, it has got to be a Rule 15 deposition, which we won't hope you don't say.

If you do, from there we start planning logistics to get abroad, us and the government to go abroad and depose these people, to find a place to depose them and then to depose them.

Let's say we can do these depositions by the end of the year. I actually don't think that will happen. Again, we are getting into December and we are talking about other vacation schedules. Let's say it's now January. We are finishing those depositions.

Only then can we begin the litigation before your Honor. What portion of that testimony can be introduced at trial. And separate from that, your Honor -- and that's in a best-case scenario. I am telling you, from our experience,

1  that's not a one-off one-week type of litigation.  There is
2  going to be back and forth between the Court and the parties
3  about what aspects of the deposition testimony to be
4  introduced.  We have that.
5         We should not lose sight of the MLATs and the
6  documents abroad that we are going to be seeking to get, too.
7  That's also going to take a serious amount of time, your Honor.
8         I hear you on the summer schedule for witnesses and
9  the like.  I am not trying to horse trade with you, your Honor.
10 What about May, before the summer, a time where we can get
11 everybody's calendar before summer vacation but still give us
12 enough time to manage all of these very complex, very technical
13 international issues?
14        Again, they have had this case for four years.  You've
15 got to give us time to investigate the case and put together
16 what our defense is going to be.
17        THE COURT:  Counsel for the government.
18        MR. DeFILIPPIS:  Yes, your Honor.  We think that a
19 January, February trial date is certainly more than enough time
20 to address all the issues that Mr. Bauer was discussing.
21        In the first instance, as we said, the government
22 identified a very discrete, very limited set of documents that
23 we expect would be what we would introduce at trial or the vast
24 majority of what we would offer at trial.
25        And most of the issues that Mr. Bauer discussed with

1  regard to identifying witnesses could be addressed by

2  discussing these issues with the defendant.  The documents,

3  yes, may shed light on certain issues, but most of these

4  issues, your Honor, could be addressed through simple

5  discussions between lawyer and client.

6           As to depositions, video testimony, again, these

7  issues are routinely handled fairly close to trial.  Mr. Bauer

8  assumes that all of these requests for depositions would be

9  granted or that there is going to be a voluminous amount of

10 motion practice.  Again, there is no reason the process

11 couldn't be streamlined.  We shouldn't speculate and assume

12 that deposition and video testimony is going to be necessary

13 for scores of witnesses.

14          As your Honor pointed out, the defense was prepared to

15 have a very quick trial, contingent on the bail determination.

16 The schedule that the Court is proposing would be almost a year

17 since the defendant's arrest if there were a February trial.

18 The defendant is entitled to a speedy trial and the government

19 thinks that a January, February date is more than enough time.

20          THE COURT:  I'll be right back.

21          (Recess)

22          THE COURT:  Let's set a trial date in May, make sure

23 that defense counsel has plenty of time.  We will have a trial

24 date of May 1, which is a Wednesday.  Does that work for

25 everyone?

1        MR. DeFILIPPIS:  Yes, your Honor.  That's fine for the
2   government.
3        MR. BAUER:  Your Honor, I am just hearing from
4   Mr. Weiss.  He is actually going to be in Israel at the end of
5   April for Passover and be returning back to the U.S. right
6   around May 1.  He has to check the dates.
7        May 1 should work.  Are you trying to fit it into your
8   calendar, meaning waiting until Monday, the 6th would be
9   difficult for you, your Honor?  That might just allow Mr. Weiss
10  to get back from Israel and get ready to try the case so he
11  doesn't get off the plane and come immediately here.
12       THE COURT:  We could schedule it for May 6.  What my
13  thinking was, and I don't know if counsel have made the
14  determination on this yet or not.  I don't know if there will
15  be any need or utility in having a questionnaire for a case
16  like this and, if so, we would have to build in time for that
17  prior to the trial date.
18       Do counsel have any preliminary thoughts about that?
19       MR. BAUER:  I think your instincts are right, your
20  Honor.  If we say the case itself, openings begin on Monday,
21  the 6th, we are open to the idea of a questionnaire and picking
22  a jury that week before.
23       MR. DeFILIPPIS:  Your Honor, the government hasn't
24  considered in any detail the possibility of a questionnaire or
25  not.  If one were determined to be necessary by the Court, that

1    would be fine with the government.

2             MR. WEISS:  Your Honor, if I may, because it is my
3    schedule, I normally would not interpose my personal schedule,
4    but I have a 90-year-old very frail father in Israel and every
5    Passover I go see him and it's a very important annual family
6    event.  I will be back before -- I don't have my phone here.
7    They took it downstairs.  I have to get clearance for that, so
8    I'm doing it a little bit off memory.  May 6 would be a good
9    time to start jury selection as opposed to the actual trial.
10   If I can beg the Court for that, giving me a little bit of time
11   to get back, it's going to be a very serious trial, and to gear
12   up for jury selection, which will be very important in the
13   trial itself.

14            THE COURT:  That's fine.  We can put it on for May 6.
15   My sense is that jury selection for this case may actually take
16   some time due to the nature of the charges and due to the fact
17   that we are at that point exiting the spring and getting close
18   to the summer.  When you tell prospective jurors about the
19   prospect of a four or five-week trial, it may take some time to
20   get jurors for this case.

21            We will start on May 6.  We will have jury selection
22   on May 6.  Does that work?

23            MR. DeFILIPPIS:  Yes, your Honor.

24            MR. BAUER:  Yes, your Honor.  Thank you.

25            THE COURT:  Before we move backwards now, based on the

representations made by defense counsel in terms of their need to prepare for trial, I will exclude time from the Speedy Trial Act from today's date until May 6, 2019. I find it's in the interests of Mr. Nejad and in the interests of justice to exclude time under the Speedy Trial Act and that those interests outweigh the public's interest in a speedy trial, and I will enter an order to that effect.

        Let's work backwards. Let's get a date three months from now for a status conference and find out where we are in terms of anticipated motions.

        Can we get a date about three months from now, Tara.

        THE DEPUTY CLERK: Yes, Judge. Monday, October 16.

        THE COURT: I think that's a Tuesday.

        THE DEPUTY CLERK: Tuesday, October 16 at 10 a.m.

        MR. BAUER: Your Honor, is it possible to do it a little later in the morning so that Mr. Sadr has a chance to travel up from D.C. that morning? Obviously, early afternoon would work as well.

        THE COURT: We have availability at 11:30, Tara?

        THE DEPUTY CLERK: Yes.

        MR. BAUER: Thank you, your Honor.

        THE COURT: Anything else from the government today?

        MR. DeFILIPPIS: No, your Honor.

        THE COURT: Anything else from the defense?

        MR. BAUER: No, your Honor. (Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300