# Arnold & Porter

**Baruch Weiss**
601 Massachusetts Ave., NW
Washington, DC 20001-3743

+1 202.942.6819 Direct
Baruch.Weiss@arnoldporter.com

August 27, 2018

**VIA ECF**
Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re: *United States v. Ali Sadr Hashemi Nejad*, No. 18 Cr. 224 (ALC)
<u>Prosecution Access to Privileged Material</u>

Dear Judge Carter:

     We are writing to alert the Court to an important issue that the defense has identified in the course of reviewing the Government's discovery. Specifically, we have become aware that the prosecution team has had, and continues to have, access to privileged material in this case. The prosecution team has relied on that information in investigating and prosecuting this case. The privileged material includes both marital privileged material and attorney-client privileged material. Although the prosecution utilized a taint team to screen for privilege, privileged material still made its way into the documents made available to the prosecution team. The documents at issue number in the hundreds, at least.

     We are working as diligently as possible to assess the scope of the issue. However, due in part to certain technical IT issues with the data produced by the Government, we are unable at this time to fully search the material in order to determine the scope of privileged material that was improperly provided to the prosecution team. Forty four thousand of the documents produced by the Government were produced in a non-searchable format. We have already requested that the Government provide us with corrected data files to allow us to proceed with our assessment of these issues.

     While we are confident that the Government will work with us to solve the technical issues, we are writing to the Court to make clear that we are strongly asserting both privileges, and to seek preliminary relief to prevent any further erosion of the applicable privileges, as well as any further prejudice to Mr. Sadr. We will continue our review of the material to determine the scope of the problem and what remedies to seek; but in the meantime, we seek an immediate halt to any further invasion of the privileges. Specifically, we seek an order directing the Government—including but not limited to the prosecution team, its agents, and the taint team that originally conducted the privilege review—to *refrain from reviewing or further disseminating any discovery material in this matter, or any information contained therein, until three weeks after the defense is provided with corrected, fully searchable production data.* In

August 27, 2018
Page 2

other words, the discovery documents should be off limits to the Government until the Court and the parties can formulate the appropriate next steps. We note that trial is currently not scheduled until May 6, 2018; and thus, a short hiatus now, in August and September, will not overly burden the Government.

In order to assess these issues within this period, we need the technical production issues resolved and to have a complete, corrected set of the relevant discovery data as soon as possible. While we are asking for a temporary freeze, we understand that Government IT personnel may have to work with the data to fix these technical issues. We further understand that the Government's IT personnel need not read the documents, but need only fix the technical problems that preclude the defense from reviewing them. Nonetheless, we request that any correction of the production data be done by IT individuals who have already been exposed to the material, so as not to exacerbate the prejudice and cause further invasion of applicable privileges beyond that which has already occurred. We ask that no one else, whether from the prosecution team or the taint team, review the discovery materials during the pendency of the order sought herein. We see no reason why the prosecution team or the taint team (other than the relevant IT personnel) would need access or potential access to privileged or allegedly privileged documents to fix the technical problems or respond to this request for an order. If the Government has a contrary view, we ask that the Government so advise the Court and the defense prior to undertaking any additional review.

After the three week time period requested, the defense will be prepared to provide the Court, as well as the Government, with a fuller description of the scope of the problem, and a proposal for who should conduct a renewed privilege review, and how.

## I.   BACKGROUND

Although this case is now being handled as a federal prosecution by the U.S. Attorney's Office, the investigation was initiated as far back as 2014 (and perhaps earlier) as a state investigation by the Manhattan District Attorney's Office ("DANY").[1] As part of that investigation, DANY—starting in 2014—applied for and obtained at least seven search warrants over the course of seven months from New York State Supreme Court. The warrants authorized the search and seizure of the emails of various email accounts, including accounts in the name of our client, Mr. Sadr.

When commencing their review of the seized documents, the prosecutors saw that the documents contained privileged documents. On April 5, 2018, the Government provided us with the first round of discovery in this case. In the cover letter to that production, the Government briefly described what it had done to sift out the privileged material:

> [B]ecause the data from the defendant's electronic accounts may contain material protected by the attorney-client privilege, a wall team has reviewed those materials. Thus, the Government will produce an additional copy of the data from the defendant's and other individual's [sic] electronic accounts excluding any

---

[1] One of the three line prosecutors in this case, Garrett Lynch, is an Assistant District Attorney who has been cross-designated as an Special Assistant U.S. Attorney to participate in this case.

> potentially privileged materials, which will represent the documents available to the prosecution team.

Letter from A. DeFillipis, M. Laroche, G. Lynch to B. Weiss, A. Bauer, dated April 5, 2018, at 1.

We understand that the "wall team" (or, as it is sometimes called, the "taint team") referred to by the Government in its April 5 cover letter is a permanent, ongoing privilege review unit of employees of DANY, comprised in whole or in part by Assistant District Attorneys, whose responsibility it is to review documents obtained by DANY prosecutors in all of their cases where taint team review is needed in order to ensure that the various prosecution teams do not access privileged material.

On July 17, 2018, the prosecution team provided us with the "filter list" (a list of attorney names, law firm names, email addresses, etc.) that DANY's privilege review unit used to search for, and presumably screen, privileged from non-privileged material, for the purpose of withholding any privileged material from the prosecution team. On August 16, 2018, the prosecution team provided us with the document production (the "August 16 Production") promised us in the April 5 letter.[2] That production was separated into two main folders of materials: (1) a folder labeled "Withheld," and apparently containing items that DANY's taint team determined were privileged (and thus "Withheld" from the prosecution team); and (2) a folder labeled "Reviewed," apparently containing items that DANY deemed were not privileged, and thus were disseminated to and reviewed by the prosecution team.

Since August 16, our IT department has worked tirelessly to fix significant technical issues with the data contained in the August 16 Production. While they were able to fix many of those issues, certain remain (for example, as indicated more than 44,000 documents were produced in non-searchable format), and therefore three days ago, on Friday, August 24, we identified those issues for the Government and requested replacement of some data. Only after we obtain the replacement data will we be able to run privilege terms through the full database and assess the full scope of the issues with DANY's initial privilege review.

Putting aside these lingering technical issues, we have conducted a preliminary analysis of the searchable data in the August 16 Production, and have also reviewed the Government's filter list. Based on that preliminary analysis, it appears that—notwithstanding DANY's taint team review—the prosecution team impermissibly has had (and continues to have) access to a large number of privileged materials.

### A.   The Taint Team did not Screen for Marital Privilege

Based on the filter list and the documents produced, it is clear that the taint team reviewed only for attorney client privilege, not marital privilege. It would have been quite

---

[2] On July 13, 2018, the Government attempted to provide us with a production of all "cleared" material (i.e., material deemed to be not privileged by DANY's taint team), but on July 25, 2018, informed us that there had been an error in the production, which had inadvertently resulted in some privileged material being pulled into the "cleared" production set. The Government instructed that we should set aside the July 13 production and await an updated, corrected production. The Government finally produced the updated, corrected production on August 16.

August 27, 2018
Page 4

simple for the taint team to ascertain that Mr. Sadr was married during the relevant period, but apparently the team did not do so.[3] Mr. Sadr exchanged hundreds of private, confidential emails with his wife. Not one was withheld by the taint team. Apparently, the prosecution team, which should not have had access to any marital privileged documents, has had access to them all.

Moreover, the prosecution team has affirmatively made use of these privileged documents. For example, on May 5, 2018, the prosecution team produced to the defense a subset of documents from Mr. Sadr's (and others') accounts, which the prosecution deemed to be the "pertinent," key documents in the case. Within that subset of key documents, the Government included one of the marital privileged documents. Bates No. 001047-49. Thus, it seems that the Government views at least one of the documents protected by marital privilege to be a prospective Government exhibit at trial.

### B. The Prosecution Team Has Inexplicably Had Access to Material That DANY's Taint Team Had Determined was Protected by the Attorney Client Privilege, and Which Therefore Should have been Withheld from the Prosecution Team

While the taint team did not conduct a review for marital documents, it did conduct such a review for attorney-client documents. Our review indicates that a number of documents which the taint team withheld as privileged still somehow made their way into the hands of the prosecution team, and the prosecution team made use of the privileged material in securing the indictment, and in securing a number of the search warrants.

For example, we have identified one document, with four attachments, that DANY's taint team marked as "Withheld" (i.e., privileged). *See* ALI_SADR_PRIV-00008501. Notwithstanding that determination, this family of privileged documents ended up in the hands of the prosecution team. Indeed, the document was ultimately relied on and quoted in the Indictment against Mr. Sadr,[4] and the prosecution team included the document, and several of its attachments, in a prior production to the defense, bearing bates numbers 000121-25, amongst a batch of indictment-related documents.

It is not clear how the prosecution team obtained and presented to the Grand Jury a set of documents deemed privileged, and "Withheld," by DANY's taint team; but this calls into

---

[3] From April 9, 2009 until late March 2015, Mr. Sadr was married to Ms. D (we are using initials to protect her privacy). The allegations in the indictment span from 2006 to May 2014. Thus, during most of the period covered by the indictment, Mr. Sadr and Ms. D were married, and their confidential communications were privileged. In or around October 2014, about five months after the end of the conspiracy charged in the indictment, Mr. Sadr and Ms. D began divorce proceedings, and in late March 2015, a court entered final judgment in their divorce. On May 21, 2015, Mr. Sadr married his current wife. Since some of the search warrants in this case were issued as late as October 2015, they captured emails not only with Mr. Sadr's first wife, but also with his current wife. While we are concerned about those privileged communications as well, given the timing of the allegations in the indictment, it is the exchanges with Ms. D that are of primary concern.

[4] In this letter, we are not identifying the relevant paragraph of the indictment because this letter will be filed on the public docket, and we do not want to publicly disclose what information contained in the indictment was privileged. Similarly, we are not attaching the various documents cited, since we assume this letter will be publicly filed and we do not want to reveal privileged materials.

August 27, 2018
Page 5

question whether any other items in the "Withheld" folder of the August 16 Production similarly made their way to the prosecution team.

"Withheld" documents not only found their way into the indictment. The Government relied on and quoted at least one of the supposedly "withheld" documents, see ALI_SADR_PRIV-000000013_0001, in its February 17, 2015 affidavit in support of a search warrant. Bates Number 000555-56. That search warrant application was then in turn incorporated by reference into subsequent search warrant applications, three of which were dated October 2, 2015 (¶ 5) and another dated October 21, 2015 (¶ 5). The privileged document was thus relied on in the applications for five different search warrants.

### C. The Prosecution Team Has Had Access to Numerous Documents Subject to the Attorney Client Privilege Because the DANY Taint Team Employed an Incomplete Filter List

In addition to "Withheld" documents that were not in fact "withheld" from the prosecution team, at this preliminary stage we have already identified dozens of pages of privileged material that were cleared by DANY's taint team and therefore were included in the "Reviewed" folder of the August 16 Production. In some cases, it appears that DANY's taint team failed to identify these privileged items because the "filter list" that DANY used to conduct its privilege review omits numerous search terms—including attorney names, law firm names, keywords (such as "privileged," "confidential," 'Attorney Client Privilege," and/or "Attorney Client Communication")—that would have identified these privileged materials. One such example in this category is an e-mail between Mr. Sadr and a U.K. law firm that does not appear on DANY's filter list, bearing bates number ALI SADR-000186533. The e-mail bears a "Confidential and Privileged" header, yet DANY's taint team did not identify the e-mail as privileged on that basis, either, because it did not use privilege-related search terms in conducting its privilege review. This privileged document is unquestionably relevant to issues raised in this case.[5]

### D. The Prosecution Team Has Had Access to Numerous Documents Subject to the Attorney Client Privilege Because the DANY Taint Team Failed to Catch All the Documents that Should have been Caught By Their Filter List

In other cases, it appears that DANY's taint team cleared privileged documents for review by the prosecution team, despite the fact that those documents were communications between Mr. Sadr and attorneys and/or law firms that *do* appear on DANY's filter list. Several examples of documents in this category, also from the "Reviewed" folder in the Government's August 16 Production, include, but are not limited to, ALI SADR-000165809; ALI SADR-000167171; ALI SADR-000167468; ALI SADR-000174972; ALI SADR-000174975; ALI SADR-000222437; ALI SADR-000256823; ALI SADR-000353499; ALI SADR-000354795; ALI SADR-000354998; ALI SADR-000356932; ALI SADR-000357067; ALI SADR-

---

[5] Again, in order to maintain the privilege and to avoid the risk of any further taint by exposure to privilege materials, we are refraining from attaching the privileged materials themselves at this point in time. We identify them by bates number in this letter, however, so that the Government is on notice of this (non-exhaustive) set of examples.

August 27, 2018
Page 6

000176957; ALI SADR-000164152; ALI SADR-000164153; ALI SADR-000170465; ALI SADR-000170807; ALI SADR-000170834; ALI SADR-000172341; ALI SADR-000173242; ALI SADR-000175761; ALI SADR-000178312; ALI SADR-000179108; ALI SADR-000179109.

## II.   **TEMPORARY RELIEF REQUESTED**

While we are continuing to review (and seek complete data for) the August 16 Production, which may reveal additional problematic documents beyond the ones we have identified so far, we are submitting this letter to make clear that we are asserting privilege for the documents identified above, as well as any other similar documents yet to be identified, and that we have no intention of waiving such privilege while we continue to assess this issue.

In addition, we write to seek preliminary relief to prevent even more prejudice to Mr. Sadr. Even at this early stage of our analysis, it is clear that the privilege review conducted by DANY must be redone in order to correct the serious errors detailed above. We are working as diligently as possible to identify the scope of the errors in DANY's initial privilege review—including by supplementing DANY's incomplete "filter list" to include all relevant individuals, entities, and keywords—to ensure that the privilege review can be redone with the proper filter terms. (As stated above, however, we reiterate that the taint team's errors were not limited to having used an incomplete filter list; the additional errors beyond using an incomplete filter list can only be corrected through a careful re-screening of all discovery material.)

Once we have a fully searchable production set from the Government, we will be able to use the supplemented filter list we are preparing to determine the population of material that must be re-screened for privilege based on the errors identified above.

In the meantime, we request that the Court issue a temporary order to prevent further erosion of applicable privileges and further prejudice to Mr. Sadr. Given the volume of privileged material that appears to have been improperly cleared by DANY's taint team and provided to the prosecution in this case, the only way to prevent further prejudice is through an order directing anyone in the Government—including but not limited to the prosecution team, any of its agents, and the taint team that originally conducted the privilege review—to *refrain from further viewing or disseminating any discovery material in this case, and to be bound by such order for a period lasting until three weeks after we are provided with corrected production material.* See *United States v. Shapiro*, No. 06 CR. 357 KMWFM, 2007 WL 2914218, at *2 (S.D.N.Y. Oct. 1, 2007) (noting that "the Government has refrained from reviewing any of the seized documents pending a resolution of the defendants' privilege claims").

In the meantime, any correction of the production data should be done by IT personnel who have already worked with the privileged material so as to not exacerbate the prejudice that has occurred already. Neither fixing the technical problems nor responding to this request for an order require that the Government review the discovery materials containing the privileged documents (with the exception of IT personnel who will be working with the material only to make sure the documents are readable by the defense, but not to review the documents for content). If the Government has a contrary view, we ask that the Government so advise the Court and the defense prior to undertaking any additional review.

After the three week time period requested, the defense will be prepared to provide the Court, as well as the Government, with a comprehensive list of privilege "filter" terms, as well as a proposal for who should conduct a renewed privilege review, and how, in order to correct the serious issues identified above. *See United States v. Winters*, No. 06 CR. 54 SWK, 2006 WL 2789864, at *2–3 (S.D.N.Y. Sept. 27, 2006) (ordering, as part of privilege-review process, that defendant provide to Government list of seized documents protected by attorney-client privilege and be given opportunity to challenge taint team's privilege determinations); *United States v. Segal*, 313 F. Supp. 2d 774, 779–80 (N.D. Ill. 2004) (ordering Government not to review or use as evidence at trial documents for which defendants asserted privilege, absent court order to the contrary).

Finally, we stress that the temporary relief requested herein in no way suggests that we concede that another screening of the discovery in this case will fully remedy the erosion of privilege to date. Furthermore, nothing in the limited relief that we seek in this letter should be construed as a waiver of privilege, or as condoning any of the practices utilized by the prosecution thus far, such as the use of a taint team comprised of prosecutors rather than the Court or a special master. Nor should anything in this letter be viewed as a waiver of any right to seek an evidentiary hearing on the scope of the invasion of privilege, or to seek any specific remedies, once we are aware of the full scope of the problem.

We enclose a proposed order for the temporary relief requested herein. We thank the Court in advance for its consideration of this important issue.

Sincerely,

Baruch Weiss/JDP

Baruch Weiss

cc:   All ECF Counsel