# Arnold&Porter

**Baruch Weiss**
601 Massachusetts Ave., NW
Washington, DC  20001-3743

+1 202.942.6819 Direct
Baruch.Weiss@arnoldporter.com

September 5, 2018

**VIA ECF**
Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

  **Re:**  *U.S v. Ali Sadr Hashemi Nejad*, **No. 18 Cr. 224 (ALC)—Privilege Issues**

Dear Judge Carter:

  We write briefly in response to the Government's letter dated August 31, 2018 (Dkt. 48). While we appreciate the Government's consent to a hiatus of the prosecution team's review of discovery materials for three weeks, we oppose (1) the Government's taint team having continued access to discovery materials during that hiatus; and (2) the Government's request that the three-week period commence on Friday, August 31, as opposed to once the defense gets a fully searchable production of relevant materials.

  As an initial matter, the use of a government taint team to conduct the privilege review in a prosecution by the government "presents inevitable, and reasonably foreseeable, risks to privilege," as well as "conflicting interest[s]," whereby "the government's fox is left in charge of the [defendant's] henhouse, and may err by neglect or malice, as well as by honest differences of opinion." *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006).

  As set forth in our letter dated August 27, 2018 (Dkt. 49), we have determined that, here, the Government's taint team did in fact "err" in significant respects during the course of its review—thereby eroding important legal privileges and prejudicing the defendant in this case. For example, our letter provided an example showing the taint team somehow allowed the prosecution access to at least one family of documents that the taint team itself deemed to be privileged, *which then made it into the Indictment*. (Dkt. 49, Part I.B.)  We also gave a handful of examples showing that the taint team missed a large swath of privileged documents that they should have caught based on their own filter list. (*Id.*, Part I.C.)  Put simply, the defense has good reason to question the taint team process to date; and we need time to more fully assess the severity of the issue and propose a plan forward to the Court and to the Government—time in which the taint team (and anyone else from the Government as identified in our letter) refrains from further exacerbating the issues by reviewing privileged material. *See, e.g.*, *id.* Part II.

  Second, while we are amenable to providing an update to the Court on these issues on September 21, 2018, we strongly oppose the Government's request that the three-week hiatus

September 5, 2018
Page 2

end on that date.  Rather, we reiterate our request that the three-week hiatus last for three weeks after the defense is provided with a corrected, fully searchable production.  This request is eminently reasonable under the circumstances.  The technical issues with the August 16 production are ones that the Government should be able to remedy quickly; they need not add a significant amount of time to the proposed three-week hiatus.[1]  Moreover, the premise of our request for a three-week hiatus was that three weeks was necessary for the defense to:  (1) more comprehensively evaluate the issues with the Government's taint team review by searching through documents that were "withheld" from the prosecution team versus documents that were "reviewed" by the prosecution team; and (2) develop and send the Court (and the Government) a proposal for how to proceed based on that more comprehensive understanding of the scope of these issues.  However, we cannot complete step (1) without corrected production data—in three weeks or otherwise.  Therefore, if the hiatus is to serve any purpose, it is essential that the hiatus continue for *three weeks after* the Government provides the defense with the relevant production data free of technical issues.

For these reasons, we reiterate our request for a temporary order with the conditions as proposed in our August 27 letter.  *See* Dkt 49-1.  In the meantime, however, we would be happy to provide the Court with a status update on September 21, 2018 as proposed by the Government, to ensure that the Court is kept informed about the progress on this issue.

Sincerely,

Baruch Weiss / TKM

Baruch Weiss

cc:     All ECF Counsel

---

[1] At the beginning of this week, we e-mailed the Government a list of the four specific outstanding technical problems we encountered with the August 16 production (along with our IT specialists' recommendations as to how the Government can correct them).  The most pressing of those issues—the fact that more than 44,000 documents in the production are not searchable—was identified in our August 27 letter.  *See, e.g.*, Dkt. 49 at 3.