UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALI SADR HASHEMI NEJAD,<br><br>*Defendant*. | Case No. 18 Cr. 224 (ALC)<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ALI SADR HASHEMI NEJAD'S MOTION TO DISMISS COUNT ONE
FOR FAILURE TO STATE A CONSPIRACY TO DEFRAUD THE
UNITED STATES AND UNCONSTITUTIONAL VAGUENESS
(Pretrial Motion No. 2)**

**INTRODUCTION**

Count One of the Indictment charges Sadr with conspiring to defraud the United States, in violation of 18 U.S.C. § 371, by "impair[ing], imped[ing], and obstruct[ing] the lawful and legitimate governmental functions and operations of OFAC [the Treasury Department's Office of Foreign Assets Control] in the enforcement of economic sanctions laws and regulations administered by that agency." Ind. ¶ 15. Specifically, the Indictment alleges that, between 2006 and 2014, Sadr conspired to violate U.S. sanctions against Iran by exporting from the United States to Iran the "services" by intermediary U.S. based banks of processing international wire transfers between non-Iranian foreign banks, in violation of 31 C.F.R. § 560.204. *Id.* ¶¶ 4, 15, 19, 21. In other words, the Indictment charges Sadr with conspiring to defraud the United States by committing a regulatory infraction that allegedly obstructed OFAC's enforcement of economic sanctions against Iran. Critically, the Indictment does *not* allege that Sadr's conduct deprived the United States of money or property.

This charge, known as a *Klein* conspiracy, fails to state an offense because § 371 was intended only to capture fraud resulting in the deprivation of money or property, not *intangible* harms like the impairment or obstruction of government functions. Alternatively, to the extent a *Klein* conspiracy is permissible under § 371, Count One should be dismissed as an unconstitutionally vague application of the statute that failed to provide Sadr with fair notice that his conduct was criminal. In light of the Second Circuit's decision in *United States v. Coplan*, 703 F.3d 46, 59-62 (2d Cir. 2012), Sadr acknowledges that the *Klein* doctrine is currently an accepted theory of criminal liability within the Circuit. Accordingly, Sadr moves this Court for dismissal solely to preserve the issue for further review.

## ARGUMENT

I. **APPLICABLE LEGAL PRINCIPLES**

A charge in an Indictment must be dismissed if it "fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012). Whether the facts alleged in an indictment fall within the scope of a criminal statute is a question of law, and thus is appropriate for consideration on a motion to dismiss. *United States v. Heicklen*, 858 F. Supp. 2d 256, 262 & n.5 (S.D.N.Y. 2012) ("When a motion to dismiss an indictment is made solely upon an issue of law, consideration of the motion is appropriate. . . . Indeed, it would be a waste of judicial resources to conduct a trial, only to rule on a post-trial motion that the government's theory of criminal liability fails, no matter what facts it was able to establish at trial.").

The Due Process Clause forbids punishing a defendant for conduct that he could not reasonably understand to be proscribed. It requires that "fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (citing

*McBoyle v. United States*, 283 U.S. 25, 27 (1931)). Thus, a penal statute must define a criminal offense "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited," and "(2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402-03 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). A law is impermissibly vague if it fails to do either. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

## II. COUNT ONE FAILS TO STATE AN OFFENSE, OR ALTERNATIVELY, IS UNCONSTITUTIONALLY VAGUE

### A. The Judicially Created *Klein* Conspiracy Doctrine Has No Basis in the Text or History of Section 371

The text of § 371 prohibits conspiring to "defraud the United States." 18 U.S.C. § 371. Because the statute does not define the term "defraud," it should be "presumed to have its common-law meaning." *Evans v. United States*, 504 U.S. 255, 259 (1992). The word "defraud" is a common-law term of art that "commonly refer[s] 'to wronging one *in his property rights* by dishonest methods or schemes.'" *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)) (emphasis added). Nothing in the history of the statute suggests that Congress intended to depart from this settled, common-law meaning of "defraud."[1]

---

[1] Section 371 was originally enacted in 1867 as part of a multi-provisioned tax statute, *see* Act of March 2, 1867, ch. 169, § 30, 14 Stat. 484, and the conspiracy provision received little attention at the time. "Not a single explanatory reference to [the conspiracy provision] appears in the entire body of hearings and reports." Abraham S. Goldstein, *Conspiracy to Defraud the United States*, 68 Yale L.J. 405, 418 (1959). "All that can be said with certainty . . . is that it was enacted at a time and in a setting which strongly suggest that it was aimed at conspiracies either to commit offenses against the internal revenue or to defraud the United States of internal revenue." *Id*.

3

Despite this seemingly clear text and history, the *Klein* doctrine arose through a series of controversial lower court rulings in the late 1800s and early 1900s.[2] Subsequently, in the early twentieth century, the Supreme Court made statements in *dicta* that appeared to endorse the lower courts' expansive interpretations of § 371. In *Haas v. Henkel*, the Court stated that the statute "is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." 216 U.S. 462, 479 (1910). That statement, however, was not necessary to the Court's holding because there was also evidence that the defendant's scheme resulted in a "real financial loss" to the government. *Id*. Similarly, in *Hammerschmidt*, the Court reversed the defendants' convictions under § 371, but nevertheless remarked that defrauding the government "means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." 265 U.S. at 188.

In the wake of *Haas* and *Hammerschmidt*, lower courts seized upon the Supreme Court's *dicta* to dramatically expand the scope of liability under § 371. That evolution culminated in the *Klein* decision, in which the Second Circuit held that § 371 covers "not only . . . the cheating of the government out of property or money, but 'also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'" *United States v. Klein*, 247 F.2d 908, 916 (2d. Cir. 1957) (quoting *Hammerschmidt*, 265 U.S. at 188).

---

[2] *See, e.g.*, *United States v. Hirsch*, 100 U.S. 33, 35 (1879); *United States v. Whalan*, 28 Fed. Cas. 531, 532 (D. Mass. 1868); *Tyner v. United States*, 23 App. D.C. 324, 362 (1904); *Curley v. United States*, 130 F. 1 (1st Cir. 1904).

B.  **The *Klein* Doctrine Should Be Reconsidered in Light of the Supreme Court's Decision in *Skilling***

In the decades after the *Klein* decision, the Supreme Court never squarely addressed whether that doctrine was consistent with the text of § 371. In *United States v. Tanner*, 483 U.S. 107 (1987), the Court rejected the government's argument that § 371 must be read broadly to reach conspiracies to defraud government contractors as well as government agencies.[3] That same year, in *McNally v. United States*, 483 U.S. 350 (1987), the Court overturned mail fraud convictions based on an alleged deprivation of an intangible right and held that the mail fraud statute only reached schemes to obtain property. *Id.* at 360. However, the Court did not have occasion to reconsider whether the broad language from *Haas* and *Hammerschmidt* was a proper interpretation of § 371.

In *Skilling v. United States*, 561 U.S. 358 (2010), the former CEO of Enron was prosecuted for "honest services fraud" under 18 U.S.C. § 1346, which provides that the term "scheme or artifice to defraud" under the federal mail and wire fraud statutes includes any "scheme or artifice to deprive another of the intangible right of honest services." Although a majority of the Court rejected Skilling's argument that the entire statute was unconstitutionally vague, the Court adopted a "limiting construction" of the statute to address vagueness and fair notice concerns. *Id.* at 404-09. As the Court explained, the "solid core" of the honest services fraud doctrine involved "offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes," *id.* at 407; and therefore, reading the statute to encompass "a wider range of offensive conduct" would "raise the due process concerns underlying the vagueness doctrine,"

---

[3] The Court reasoned that "[e]ven if the Government's interpretation of § 371 could be pegged to some language in that section, the Government has presented us with nothing to overcome our rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* at 131.

*id.* at 408. If Congress desires to "go further" than the core conduct, the Court emphasized that it "must speak more clearly than it has." *Id.* at 411 (citation omitted).[4]

The Supreme Court's decision in *Skilling* severely undermines the continuing validity of the *Klein* conspiracy doctrine. The Court held that the inherent vagueness and indeterminacy of the honest services fraud statute required a limiting construction that "pare[d]" the doctrine down to its "solid core" of bribery and kickbacks. *Id.* at 407-09. The *Klein* doctrine, like the honest services fraud doctrine, is both vague and overbroad, and must therefore suffer the same fate. Accordingly, because the *Klein* doctrine does not require proof that the *object* of the conspiracy was the deprivation of property rights, the application of § 371 to Sadr is unconstitutional.

C. **The Rule of Lenity and Prohibition on Common-Law Crimes Compel Elimination of the *Klein* Doctrine**

The *Klein* conspiracy doctrine also runs afoul of two related limitations on federal criminal law: the rule of lenity and the prohibition on common-law crimes. Federal crimes are "solely creatures of statute," *Liparota v. United States*, 471 U.S. 419, 424 (1985), because "the power of punishment is vested in the legislative, not in the judicial department," *United States v. Wiltberger*, 5 Wheat. 76, 95 (1820) (Marshall, C.J.). Thus, "the notion of a common-law crime is utterly anathema" in federal law. *Rogers v. Tennessee*, 532 U.S. 451, 476 (2001) (Scalia, J., dissenting).

---

[4] Justices Scalia, Thomas, and Kennedy concurred in the judgment, arguing that a limiting construction was inappropriate because the statute "provides no clear indication of what constitutes a denial of the right of honest services." *Id.* at 420-21. They concluded that even if the statute were limited to bribery and kickbacks, this "would not suffice to eliminate the vagueness of the statute." *Id.* at 421. The concurring Justices thus would have reversed Skilling's conviction on the sole basis that the honest services fraud statute, as written, "provides no 'ascertainable standard' for the conduct it condemns." *Id.* at 424 (citation omitted).

The rule of lenity bookends the prohibition on common-law crimes by ensuring that courts do not, in effect, create new crimes through expansive interpretation of criminal statutes. That rule "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos,* 553 U.S. 507, 514 (2008). In other words, "the tie must go to the defendant." *Id*. This "venerable rule" vindicates "the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain." *Id*. It also "places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Id*.

Even if the text and history of § 371 did not unambiguously limit the word "defraud" to common-law fraud, the rule of lenity would compel that interpretation. Although the concept of "fraud" could extend beyond its traditional meaning to encompass interference with a government function, that is not an obvious, non-vague reading of the statute, and Congress is perfectly capable of enacting a definition of fraud that goes beyond the common-law term. Indeed, that was the precise purpose of the honest services fraud statute. *See* 18 U.S.C. § 1346. Accordingly, even if § 371 were subject to two plausible interpretations—one based on the ordinary definition of "defraud" and one based on a more expansive definition—a court applying the statute is bound by the rule of lenity to adopt the narrower interpretation, as reflected in *Skilling*. *See Skilling*, 561 U.S. at 410-11 (explaining that the rule of lenity also supported the Court's holding that honest-services fraud "does not encompass conduct more wide ranging than the paradigmatic cases of bribes and kickbacks").[5]

---

[5] What Justice Scalia said about honest services fraud prosecutions a year before *Skilling* is equally applicable to the *Klein* doctrine: There is a "serious argument that [§ 371] is nothing more than an invitation for federal courts to develop a common-law crime of unethical conduct." *Sorich v. United States,* 555 U.S. 1204 (2009) (Scalia, J., dissenting from denial of certiorari).

## III. THE SECOND CIRCUIT'S DECISION IN *COPLAN*

In *Coplan*, defendants argued in the immediate wake of *Skilling* that the *Klein* doctrine was invalid. The Second Circuit examined the history of both § 371 and the *Klein* doctrine. *See* 703 F. 3d at 59-62. The court recognized that "the *Klein* conspiracy is a common law crime, created by the courts rather than by Congress," which "alone warrants considerable judicial skepticism." *Id.* at 61. The court also acknowledged the "infirmities in the history and deployment of [§ 371]." *Id*. Notwithstanding these serious reservations, the court declined to follow the example of *Skilling* by paring the prohibited conduct under § 371 "down to its core," instead leaving that decision to the Supreme Court: "As an intermediate appellate court, we are bound to follow the dictates of Supreme Court precedents, no matter how persuasive we find the arguments for breaking loose from the moorings of established judicial norms by 'paring' a statute." *Id.* at 61-62.

In light of the Second Circuit's ruling in *Coplan* that (1) "the *Klein* doctrine derives from and falls within the scope of the law of the Circuit (itself grounded on long-lived Supreme Court decisions)," and (2) that any effort to pare down the statute post-*Skilling* was "properly directed to a higher authority," Sadr acknowledges that his legal challenge to the *Klein* conspiracy charged in Count One of the Indictment is foreclosed at this stage of the case. *Id.* at 62. He moves this court for dismissal, therefore, in order to preserve the issue for further review.

## **CONCLUSION**

For the reasons set forth above, the Court should dismiss Count One of the Indictment for failure to state a conspiracy to defraud the United States and unconstitutional vagueness.

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

Brian M. Heberlig (*Pro Hac Vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
bheberlig@steptoe.com

*Counsel for Defendant
Ali Sadr Hashemi Nejad*

Dated: February 25, 2019