UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALI SADR HASHEMI NEJAD,<br><br>*Defendant*. | Case No. 18 Cr. 224 (ALC)<br><br>ORAL ARGUMENT REQUESTED |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT ALI SADR HASHEMI NEJAD'S MOTION TO STRIKE SURPLUSAGE
**(Pretrial Motion No. 7)**

Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

Brian M. Heberlig (*Pro Hac Vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
bheberlig@steptoe.com

*Counsel for Defendant*
*Ali Sadr Hashemi Nejad*

Dated:  February 25, 2019

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

I.    THE COURT HAS DISCRETION TO STRIKE SURPLUSAGE ................................... 2

II.   THE COURT SHOULD STRIKE AS SURPLUSAGE IRRELEVANT AND PREJUDICIAL LANGUAGE IN THE INDICTMENT ...................................................... 3

      A.    Inflammatory References to Threats to National Security and United States Foreign Policy ........................................................................................................ 3

      B.    Unsubstantiated, Boilerplate Allegations That Sadr Exported Services to the Government of Iran ................................................................................................ 4

      C.    Conclusory Statements of Law and Policy ............................................................ 7

      D.    References to Unrelated or Overbroad Provisions of the U.S. Code and Code of Federal Regulations .................................................................................. 9

      E.    Extraneous Language Suggesting Sadr Is Responsible for Uncharged Misconduct ............................................................................................................ 12

CONCLUSION ................................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dennis v. United States*,
   341 U.S. 494 (1951) ................................................................................................................8

*Sparf v. United States*,
   156 U.S. 51 (1895) ..................................................................................................................8

*United States v. Alsugair*,
   256 F. Supp. 2d 306 (D.N.J. 2003) .......................................................................................13

*United States v. Bonanno*,
   177 F. Supp. 106 (S.D.N.Y. 1959) .........................................................................................3

*United States v. Carey*,
   152 F. Supp. 2d 415 (S.D.N.Y. 2001) ....................................................................................2

*United States v. DeFabritus*,
   605 F. Supp. 1538 (S.D.N.Y. 1985) ................................................................................12, 13

*United States v. Espy*,
   989 F. Supp. 17 (D.D.C. 1997) .............................................................................................13

*United States v. Fishenko*,
   No. 12-cr-626, 2014 WL 4804215 (E.D.N.Y. Sept. 25, 2014) .............................................3, 9

*United States v. Freeman*,
   619 F.2d 1112 (5th Cir. 1980) ...............................................................................................13

*United States v. Gotti*,
   42 F. Supp. 2d 252 (S.D.N.Y. 1999) ......................................................................................2

*United States v. Groos*,
   616 F. Supp. 2d 777 (N.D. Ill. 2008) ...............................................................................3, 8, 9

*United States v. Holy Land Found.*,
   No. 04-cr-240, 2006 WL 3542685 (N.D. Tex. Dec. 8, 2006) ...............................................13

*United States v. Malachowski*,
   604 F. Supp. 2d 512 (N.D.N.Y. 2009) ...................................................................................2

*United States v. Mango*,
   No. 96-cr-327, 1997 WL 222367 (N.D.N.Y. May 1, 1997) ..................................................13

*United States v. Miller*,
    641 F. Supp. 2d 161 (E.D.N.Y. 2009) ...................................................................................2

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001)......................................................................................................2

*United States v. Poindexter*,
    725 F. Supp. 13 (D.D.C. 1989)..............................................................................................13

*United States v. Reyes*,
    922 F. Supp. 818 (S.D.N.Y. 1996) .........................................................................................2

*United States v. Spalding*,
    No. 01-cr-152, 2002 WL 818129 (S.D. Ind. Apr. 24, 2002) ....................................................9

*United States v. White*,
    766 F. Supp. 873 (E.D. Wash. 1991) ......................................................................................9

**Statutes**

50 U.S.C. § 1705(c) ......................................................................................................................10

International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ......................... *passim*

**Other Authorities**

31 C.F.R. § 560.203 ......................................................................................................................10

31 C.F.R. § 560.204 ......................................................................................................................10

31 C.F.R. § 560.205 .................................................................................................................10, 11

31 C.F.R. § 561.201 ......................................................................................................................11

31 C.F.R. § 561.204 ......................................................................................................................11

Fed. R. Crim. P. 7 ...........................................................................................................................2

Gardiner Harris and Jack Ewing, *U.S. to Restore Sanctions on Iran, Deeping
    Divide with Europe*, N.Y. Times, Aug. 6, 2018. .....................................................................6

Iranian Financial Sanctions Regulations, 31 C.F.R. pt. 561 ..............................................9, 10, 11

Iranian Transactions and Sanctions Regulations, 31 C.F.R. pt. 560..................................9, 10, 11

Mark Landler, *Trump Abandons Iran Nuclear Deal He Long Scorned*, N.Y. Times,
    May 8, 2018 .............................................................................................................................6

President George W. Bush, *State of the Union Address* (Jan. 29, 2002) .......................................5

Press Release, *President Donald J. Trump is Reimposing All Sanctions Lifted Under the Unacceptable Iran Deal* (Nov. 2, 2018) ................................................................. 5

## INTRODUCTION

The Court should strike a number of irrelevant and prejudicial allegations in the Indictment as surplusage. The Indictment charges Sadr with six counts: conspiracy to defraud the United States, conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), bank fraud, conspiracy to commit bank fraud, money laundering, and conspiracy to commit money laundering. Sadr has moved to dismiss all counts of the Indictment on various grounds. If any count survives, the Court at a minimum should strike irrelevant and prejudicial surplusage from the Indictment. These irrelevant, inflammatory, and prejudicial allegations, highlighted for illustration in Exhibit A to this Motion, can be summarized as:

1. The Indictment invokes the national security and foreign policy of the United States. Ind. ¶¶ 1-4. In stark contrast to a terrorism case, however, the Indictment involves technical regulatory violations of a trade embargo. These references run the risk of inflaming the passions of the jury.

2. The Indictment includes unsupported allegations insinuating that Sadr has some connection to the Government of Iran. *Id.* ¶¶ 19, 23. These allegations have no factual underpinning and appear to be boilerplate, yet highly prejudicial, recitations of inapplicable parts of the underlying regulations.

3. The Indictment features a conclusory statement of the historical and legal context of the statutes and regulations underlying the charges. *Id.* ¶¶ 1-5. This framework is irrelevant to the purpose of a criminal trial and usurps the Court's role to instruct on the law.

4. The Indictment includes overbroad references to unrelated and uncharged provisions of IEEPA and the Iranian Transactions and Sanctions Regulations ("ITSR"). *Id.* ¶¶ 18-21. The Indictment also repeatedly alleges that Sadr's charged conduct includes, but is not limited to, certain specifically alleged acts. *Id.* ¶¶ 16, 21, 27, 33. These references and vague insinuations run the risk of confusing the jury and improperly suggest that Sadr was involved in uncharged, illegal conduct.

These allegations are irrelevant, unfairly prejudicial, and serve no proper purpose. The Court should strike them from the Indictment.

**ARGUMENT**

**I.      THE COURT HAS DISCRETION TO STRIKE SURPLUSAGE**

"Upon the defendant's motion, the court may strike surplusage from the indictment."  Fed. R. Crim. P. 7(d).  This provision is designed to protect defendants from suffering unfair prejudice from allegations that are unnecessary to set forth a "*plain*, *concise*, and *definite* written statement of the *essential facts* constituting the offense charged."  Fed. R. Crim. P. 7(c)(1) (emphasis added).  In other words, Rule 7(d) "introduces a means of protecting the defendant against immaterial or irrelevant allegations."  Fed. R. Crim. P. 7(d) advisory committee's note to 1944 adoption.

A district court has discretion to strike allegations that are "not relevant to the crime charged and are inflammatory and prejudicial."  *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)); *see also United States v. Malachowski*, 604 F. Supp. 2d 512, 518 (N.D.N.Y. 2009) ("A defendant's motion to strike surplusage from an indictment will be granted so long as the language is not relevant to the offenses and is either prejudicial or inflammatory.").

District courts in the Second Circuit have not hesitated to strike surplusage in appropriate cases.  *See, e.g.*, *United States v. Miller*, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) (striking allegations and references as "irrelevant to the crime charged and prejudicial"); *United States v. Carey*, 152 F. Supp. 2d 415, 429 (S.D.N.Y. 2001) (striking a reference to the Costa Nostra because the allegation was not relevant to the crime charged and was inflammatory and prejudicial); *United States v. Reyes*, 922 F. Supp. 818, 839 (S.D.N.Y. 1996) (striking allegations that were irrelevant and "both prejudicial and inflammatory"); *United States v. Gotti*, 42 F. Supp. 2d 252, 293 (S.D.N.Y. 1999) (striking allegations from which jury could draw inference defendant was accused of crimes not charged in indictment).

2

## II.   THE COURT SHOULD STRIKE AS SURPLUSAGE IRRELEVANT AND PREJUDICIAL LANGUAGE IN THE INDICTMENT

### A.   Inflammatory References to Threats to National Security and United States Foreign Policy

The Indictment highlights threats to national security and United States foreign policy as purported "background." These inflammatory references are not relevant to the charged conduct, and create a substantial risk that the jury will be unfairly prejudiced against Sadr.

Under longstanding precedent, courts have recognized that "[t]he danger to be protected against is that material [that is] prejudicial and otherwise inadmissible will be conveyed to the jury when the indictment is read." *United States v. Bonanno*, 177 F. Supp. 106, 116 (S.D.N.Y. 1959). To protect against that danger, district courts have stricken language that is virtually identical to allegations found in this Indictment. For instance, in another Iran sanctions case, the following language was stricken as surplusage:

> The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701-1706, authorized the President of the United States to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to national security, foreign policy or economy of the United States when the President declares a national emergency with respect to that threat.

*United States v. Groos*, 616 F. Supp. 2d 777 (N.D. Ill. 2008). In *Groos*, the court noted that "[r]eferences to national security and terrorism are likely to inflame passions that could cause jurors to judge the facts more harshly than they would if presented with an indictment strictly discussing violations of a trade embargo." *Id.* at 790; *see also United States v. Fishenko*, No. 12-cr-626, 2014 WL 4804215, at *8 (E.D.N.Y. Sept. 25, 2014) (striking five paragraphs of virtually identical background on IEEPA from the indictment).

The language in this Indictment—virtually identical to allegations stricken in *Groos* and *Fishenko*—remains just as irrelevant and prejudicial as it was in those cases. For example, the first sentence of the Indictment states: "The International Emergency Economic Powers Act

3

('IEEPA'), codified at Title 50, United States Code, Sections 1701-1706, confers upon the President authority to deal with unusual and extraordinary threats to the national security and foreign policy of the United States." Ind. ¶ 1.  The Indictment also describes Executive Orders related to sanctions against Iran and quotes Executive Order 12170, issued on November 14, 1979, stating that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States." *Id.* ¶ 2.  These characterizations are entirely unrelated to the actual offenses charged in the Indictment.  The reference to actions taken by the President of the United States also unnecessarily dramatizes the narrative and insinuates that the conduct at issue is particularly egregious.  These references to extraordinary threats are also highly prejudicial.  Sadr is not a terrorist and the Indictment contains no charges or allegations to the contrary.  The Court should strike this language from the Indictment.

### B. Unsubstantiated, Boilerplate Allegations That Sadr Exported Services to the Government of Iran

The Court should strike the boilerplate allegations in the Indictment that Sadr exported services to "the Government of Iran" as prejudicial surplusage. *Id.* ¶¶ 4, 19, 23.  Count Two of the Indictment purports to charge Sadr with conspiring to violate IEEPA by exporting "services, to wit, international financial transactions, to Iran *and to the Government of Iran*, without first obtaining the required approval of OFAC." *Id.* ¶ 19 (emphasis added).  Similarly, Count Three purports to charge Sadr with bank fraud and alleges that he "induc[ed] U.S. financial institutions to conduct financial transactions on behalf of and for the benefit of *the Government of Iran* and Iranian entities and persons . . . ." *Id.* ¶ 23 (emphasis added).  These references appear to be conclusory recitations from the charged regulations with no supporting factual allegations.

Despite these boilerplate references to the Government of Iran, there are no specific factual allegations that Sadr was involved in exports to, engaged in financial transaction for the benefit of,

4

or operated as an agent for the Government of Iran. In fact, while the "Background" section briefly describes coordination between the Governments of Iran and Venezuela to facilitate infrastructure projects and commercial contracts, *id.* ¶ 6, no allegation in the Indictment, including any of the fifty-four alleged overt acts, specifically alleges that Sadr exported any service to the Government of Iran or acted on its behalf, *id.* ¶ 16.a-.bbb (setting forth alleged overt acts). Moreover, Count Five, charging money laundering, tacitly acknowledges that there is no connection to the Government of Iran by alleging that Sadr engaged in monetary transfers "with the intent to promote the carrying on of specific unlawful activity, to wit, (i) the illegal export of services *to Iran* as charged in Count Two of this Indictment . . . ." *Id.* ¶ 29 (emphasis added). This charge includes no reference to the *Government of Iran*, confirming that those references elsewhere in the Indictment are mere boilerplate without foundation.

    The references to the Government of Iran are not only irrelevant, but they are also inflammatory and unfairly prejudicial to Sadr. Many Americans view Iran as a pernicious force, both in the Middle East and more broadly. In his 2002 State of the Union Address, President George W. Bush famously identified Iran, along with only Iraq and North Korea as part of an "axis of evil, arming to threaten the peace of the world."[1] Temperatures, both rhetorical and diplomatic, have not dropped in the years that followed. When President Donald Trump announced that he was reinstating certain sanctions against Iran in November 2018, he described the policy as a "campaign of economic pressure to deny the regime the funds it needs to advance its bloody agenda."[2] Provocative statements like these are distributed widely in the national media. For

---

[1] President George W. Bush, State of the Union Address (Jan. 29, 2002), https://georgewbush-whitehouse.archives.gov/news/releases/2002/01/ 20020129-11.html.

[2] Press Release, President Donald J. Trump is Reimposing All Sanctions Lifted Under the Unacceptable Iran Deal (Nov. 2, 2018), https://www.whitehouse.gov/briefings-statements/ president-donald-j-trump-reimposing- sanctions-lifted-unacceptable-iran-deal/.

instance, when President Trump announced that he would pull out of the nuclear deal with Iran, and, later, that he would also reinstate sanctions, both stories were featured on the front page of the New York Times.[3] In circumstances of significant, widespread, and negative public attention, such as here, courts should be particularly careful to excise inflammatory references.

The reasoning of *United States v. Quinn* is persuasive and supports striking the prejudicial allegations at issue. 401 F. Supp. 2d 80 (D.D.C. 2005). *Quinn* also involved charges that the defendants violated IEEPA by exporting goods to Iran without government approval. *Id.* at 98-100. The defendants moved to strike allegations in the indictment related to "Iran's support for international terrorism and the threat that such terrorism poses to the United States." *Id.* at 97-98. The court agreed and ordered the removal of the following allegations from the indictment: (1) "The Presidential Notice of March 10, 2004, additionally noted that the threat posed by Iran to the United States national security, foreign policy, and economy included Iran's support for 'international terrorism'"; and (2) "a country whose regime had for years been designated by the United States government as a supporter of international terrorism." *Id.*

Although the Indictment here does not specifically refer to terrorism, the logic of *Quinn* remains persuasive. That court found that:

> [T]he policies underlying the trade embargo against Iran are irrelevant to the charges defendants face. Defendants are not charged with providing material support to terrorists or some similar crime. They are accused of trading with a country subject to an embargo without first obtaining government approval for the transactions. Furthermore, the crime that defendants are charged with is no more or less criminal because of the *reasons* the embargo is in place; the scienter element in this case requires the government to show only that defendants knew their conduct

---

[3] *See* Mark Landler, *Trump Abandons Iran Nuclear Deal He Long Scorned*, N.Y. Times, May 8, 2018, at A1, *available at* https://www.nytimes.com/2018/05/08/world/middleeast/ trump-iran-nuclear-deal.html; Gardiner Harris and Jack Ewing, *U.S. to Restore Sanctions on Iran, Deeping Divide with Europe*, N.Y. Times, Aug. 6, 2018, at A1, *available at* https:// www.nytimes.com/2018/08/06/us/politics/ iran-sanctions-trump.html.


instance, when President Trump announced that he would pull out of the nuclear deal with Iran, and, later, that he would also reinstate sanctions, both stories were featured on the front page of the New York Times.[3] In circumstances of significant, widespread, and negative public attention, such as here, courts should be particularly careful to excise inflammatory references.

The reasoning of *United States v. Quinn* is persuasive and supports striking the prejudicial allegations at issue. 401 F. Supp. 2d 80 (D.D.C. 2005). *Quinn* also involved charges that the defendants violated IEEPA by exporting goods to Iran without government approval. *Id.* at 98-100. The defendants moved to strike allegations in the indictment related to "Iran's support for international terrorism and the threat that such terrorism poses to the United States." *Id.* at 97-98. The court agreed and ordered the removal of the following allegations from the indictment: (1) "The Presidential Notice of March 10, 2004, additionally noted that the threat posed by Iran to the United States national security, foreign policy, and economy included Iran's support for 'international terrorism'"; and (2) "a country whose regime had for years been designated by the United States government as a supporter of international terrorism." *Id.*

Although the Indictment here does not specifically refer to terrorism, the logic of *Quinn* remains persuasive. That court found that:

> [T]he policies underlying the trade embargo against Iran are irrelevant to the charges defendants face. Defendants are not charged with providing material support to terrorists or some similar crime. They are accused of trading with a country subject to an embargo without first obtaining government approval for the transactions. Furthermore, the crime that defendants are charged with is no more or less criminal because of the *reasons* the embargo is in place; the scienter element in this case requires the government to show only that defendants knew their conduct

---

[3] *See* Mark Landler, *Trump Abandons Iran Nuclear Deal He Long Scorned*, N.Y. Times, May 8, 2018, at A1, *available at* https://www.nytimes.com/2018/05/08/world/middleeast/ trump-iran-nuclear-deal.html; Gardiner Harris and Jack Ewing, *U.S. to Restore Sanctions on Iran, Deeping Divide with Europe*, N.Y. Times, Aug. 6, 2018, at A1, *available at* https:// www.nytimes.com/2018/08/06/us/politics/ iran-sanctions-trump.html.

was illegal, not that they understood the policy motivations underlying the decision to prohibit it.

*Id.*

The court concluded that the potential for prejudice was "substantial" because of "the seriousness with which the government and the public treat the present war on terrorism." *Id.* at 99. Similarly, tensions between the United States and Iran remain high, and the Indictment's references to the Government of Iran "do[] not provide additional insight into the charges against the defendant, but [they] only serve[] to suggest to the jury that the defendant['s] conduct constitutes criminal conduct before [he has] had an opportunity to defend [himself]." *Id.* (internal brackets omitted) (quoting *United States v. Espy*, 23 F. Supp. 2d 1, 10 (D.D.C. 1998)). Of the elements of the offenses charged in this Indictment, none turn on national security, and striking this prejudicial language would "not impair the government's case in any way, but will substantially reduce the possibility of unfair prejudice." *Id.*

### C. Conclusory Statements of Law and Policy

The Court should strike the first five paragraphs of the Indictment because they represent the government's conclusory statements of law, unconnected to the specific allegations in this case. Ind. ¶¶ 1-5. In this background section, the government discusses the political and historical context of the statutes and regulations at the root of the Indictment. This history, stretching back at least to the context of a 1979 Executive Order, *id.* ¶ 2, is untethered from the elements of the specific charges in the Indictment. This narrative serves only the impermissible purpose of prejudicing the jury and usurping the Court's role to instruct on the law.

First, the structure and origins of the regulatory and policy framework, including the President's reasons for instituting the Iran sanctions, are plainly irrelevant to the charges against Sadr. Considering a typical charging document makes clear the irrelevance of this historical

narrative. In a run-of-the-mill gun possession case, for instance, the indictment does not describe Congress's consideration of violent crime statistics or explain why gun violence required special legislation. Nor would it be appropriate in a narcotics prosecution for the indictment to delve into the social costs of drug abuse or the number of lives destroyed by drug trafficking. This case is no different. The jury's role is not to evaluate the legislature's purpose in passing a criminal statute or an executive agency's intention in issuing a regulation. Including those issues in an indictment runs the risk of distracting from the relevant issues that *are* part of the jury's mandate.

Second, the government's description of the law, including its characterization and framing, is prejudicial to Sadr because it purports to state the law controlling the case. In fact, that critical function has long been reserved exclusively for the Court when it provides instructions to the jury. *See, e.g.*, *Dennis v. United States*, 341 U.S. 494, 515 (1951) (noting that a "question of law" is an issue "for the judge to decide"); *Sparf v. United States*, 156 U.S. 51, 89 (1895) (explaining that "the judge decides the law"). Unnecessary surplusage describing the legal, political, and historical context of the Iran sanctions serves no legitimate purpose and is likely to inflame the jury, confuse the issues, and blur the elements of the charged offenses.

Several courts faced with these considerations have ordered background legal sections to be stricken. For example, in *Groos*, the indictment charged the defendant with violating IEEPA by allegedly shipping goods to Iran. 616 F. Supp. 2d at 780. The defendant moved to strike a background section that simply "set forth the historical and legal context of the statutes and regulations that underlie the charges," arguing that those "conclusory statements of law" were "irrelevant, prejudicial and inflammatory." *Id.* at 789. The court granted the motion to strike,

8

finding that nearly eight introductory paragraphs were surplusage and that "the legal principles are more appropriately addressed at the time of the jury instruction conference." *Id.* at 790.[4]

The same principles apply here. The initial section of the Indictment—under the heading "The International Emergency Economic Powers Act"—contains the government's conclusory summary characterizing the legal principles and policy considerations related to the Iran sanctions. The Court will instruct the jury on the applicable law. Permitting the government to include conclusory statements of the law as "background" in the Indictment, particularly on issues outside of the elements of the offense, would usurp the role reserved for the Court and is likely to mislead and confuse the jury. The Court should strike this language from the Indictment.

### D. References to Unrelated or Overbroad Provisions of the U.S. Code and Code of Federal Regulations

The Court should also strike overbroad references to unrelated, uncharged provisions of the U.S. Code and the Code of Federal Regulations. Specifically, paragraph 18 alleges that Sadr conspired to violate the entirety of the IEEPA ("Title 50, United States Code, Sections 1701 to 1707"), the entirety of the ITSR ("Part 560 of Title 31, Code of Federal Regulations"), and the entirety of the separate Iranian Financial Sanctions Regulations ("Part 561 of Title 31, Code of Federal Regulations"). Ind. ¶ 18. Paragraphs 19 and 20 similarly allege that Sadr violated the entirety of the IEEPA ("Title 50, United States Code, Sections 1701 to 1707"). *Id.* ¶¶ 19-20. Finally, the parenthetical listing of statutes and regulations allegedly at issue in Count Two

---

[4] *See also Fishenko*, 2014 WL 4804215, at *8 (striking "paragraphs eight through twelve of the indictment, which include background information in [IEEPA], and the Arms Export Control Act . . . , two statutes which are the basis for the allegations against the Defendants."); *United States v. White*, 766 F. Supp. 873, 885 (E.D. Wash. 1991) (striking nine paragraphs summarizing the government's version of environmental criminal statutes at issue as "neither relevant nor material to the charges"); *United States v. Spalding*, No. 01-cr-152, 2002 WL 818129, at *5 (S.D. Ind. Apr. 24, 2002) (striking background legal section "because the legal principles defined in these paragraphs may lead to confusion of issues and, in any event, will be furnished in proper form to the Jury in the final instructions").

includes an extraneous citation to 31 C.F.R. § 560.205. *Id.* ¶ 21. These references risk confusing the jury and inappropriately insinuating that Sadr was involved in uncharged illegal conduct.

Count Two charges Sadr with conspiracy to violate IEEPA. IEEPA's criminal prohibition is contained in 50 U.S.C. § 1705(c). Inexplicably, Count Two accuses Sadr of violating "Title 50, United States Code, Sections 1701 to 1707," even though the rest of IEEPA's provisions do not contain criminal prohibitions. The cited statutes contain the nature of threats justifying the President's exercise of authority under IEEPA (§ 1701), the President's authorities (§ 1702), consultation and reporting obligations to Congress (§ 1703), authority to issue regulations (§ 1704), savings provisions (§ 1706), and embargo standards (§ 1707). The suggestion that Sadr violated provisions of IEEPA other than § 1705 is plainly misleading and unfairly prejudices Sadr by suggesting wrongly that he violated additional statutes not properly charged as crimes.

Count Two alleges that the conspiracy had two objects: (1) exporting services in the form of international financial transactions to Iran, in violation of 31 C.F.R. § 560.204, Ind. ¶ 19, and (2) engaging in transactions that evaded, violated, or attempted to violate one or more of the prohibitions in the ITSR, in violation of 31 C.F.R. § 560.203. *Id.* ¶ 20.[5] But Count Two also alleges that Sadr conspired to violate the entirety of the ITSR ("Part 560 of Title 31, Code of Federal Regulations"), *and* the entirety of the separate Iranian Financial Sanctions Regulations ("Part 561 of Title 31, Code of Federal Regulations"). *Id.* ¶ 18. The ITSR contain at least a dozen prohibitions that are not implicated by any specific allegation in the Indictment,[6] as well as

---

[5] As set forth in Sadr's Motion to Dismiss for Failure to State an Offense and Lack of Specificity (Pretrial Motion No. 6), the Indictment is separately deficient for failure to specify the underlying prohibition of the ITSR that Sadr attempted to evade or violated in violation of 31 C.F.R. § 560.203.

[6] These include prohibitions on imports to the United States from Iran (§ 560.201); entering into petroleum-related contracts (§ 560.209); and transactions involving blocked property of the Government of Iran, including the Central Bank of Iran (§ 560.211).

10

multiple definitions, interpretations, licenses, and other provisions. All told, there are more than one hundred regulations within "Part 560 of Title 31, Code of Federal Regulations."

The Iranian Financial Sanctions Regulations ("Part 561 of Title 31, Code of Federal Regulations")—referenced without explanation in ¶ 18—are even more remote. These regulations are directed at foreign financial institutions that engage in certain transactions with the Government of Iran, a Specially Designated National ("SDN"), the Central Bank of Iran, or other Iranian financial institutions, or certain petroleum-related transactions. *See* 31 C.F.R. §§ 561.201, 561.204 (prohibiting certain activities if undertaken by "a foreign financial institution"). On their face, the Iranian Financial Sanctions Regulations are inapplicable to Sadr.

Finally, the string citation following ¶ 21 includes a stray reference to 31 C.F.R. § 560.205. Ind. ¶ 21. That regulation contains a separate prohibition against the "reexportation" from a third country to Iran or the Government of Iran. 31 C.F.R. § 560.205. The Indictment contains no underlying factual allegations substantiating this allegation: no indication from what third country any reexports occurred, who reexported them, what was reexported, and to whom in Iran or the Government of Iran were the reexports intended. Moreover, given that the exports at issue appear to be of the one-time, instantaneous services of U.S. correspondent banks processing or "clearing" wire transfers, it does not appear that any reexportation was even possible given the allegations in the Indictment. Yet the reference to 31 C.F.R. § 560.205 in Count Two's charging language suggests that Sadr was involved in a separate, uncharged crime.

Permitting these irrelevant and overbroad references to remain in the Indictment would unfairly prejudice Sadr by confusing the jury and blurring the elements necessary for conviction under the more specific regulations charged in Count Two. Furthermore, these extraneous references "serve no useful purpose and allow the jury to draw the inference that the defendant is

11

accused of crimes not charged in the indictment." *United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985). The Court should strike these allegations from the Indictment.

### E. Extraneous Language Suggesting Sadr Is Responsible for Uncharged Misconduct

The Indictment repeatedly insinuates that Sadr was involved in additional wrongdoing beyond the specific allegations set forth in the charging document. These open-ended references not only prejudice Sadr by hinting at unknown (and uncharged) bad acts, they also invite the government to prejudicially enlarge the Indictment at trial without notice.

Specifically, the Indictment alleges that Sadr committed "the overt acts set forth below, *among others*," for the purpose of furthering a conspiracy to defraud the United States. Ind. ¶ 16 (emphasis added). This "among others" language is then repeated in subsequent counts of the Indictment charging conspiracy to violate IEEPA (*Id.* ¶ 21), conspiracy to commit bank fraud (*Id.* ¶ 27), and conspiracy to commit money laundering (*Id.* ¶ 33). The Court should strike this language from the Indictment.

Courts in this district have stricken language that impermissibly expands the charge returned by the grand jury. In *United States v. Pope*, for example, the indictment alleged that the defendants made false and misleading statements based on, "among other things," a certain specified falsehood. 189 F. Supp. 12, 25 & n.48 (S.D.N.Y. 1960). The court ordered the offending phrase to be stricken because it "would permit the prosecution to go beyond the specific charge of falsity made by the grand jury." *Id.* at 25. Furthermore, the open-ended language would have given the government the power to enlarge the charges contained in the Indictment, which would have impermissibly "depriv[ed] a defendant of his constitutional right to be accused of a felony offense only on the basis of a grand jury indictment." *Id.* at 26.

Numerous other courts have specifically rejected terms like "among others"; "included, but were not limited to the following"; "including but not limited to"; and "in substance and among other things."[7] These courts have appropriately recognized that "to expect the jury to assume that the inclusion of language indicative of additional misconduct has no real meaning and does not charge the defendant with additional crime[s] merely because it is contained in the indictment is to ascribe to a jury of laymen an ability to draw distinction that even lawyers have difficulty making." *United States v. Espy*, 989 F. Supp. 17, 35 (D.D.C. 1997), *aff'd in part, rev'd in part on other grounds*, 145 F.3d 1369 (D.C. Cir. 1998). For the same reasons, the Court should strike similar language from the Indictment in this case.

## **CONCLUSION**

For the reasons set forth above, the Court should strike as surplusage the irrelevant and prejudicial language from the Indictment, as highlighted in the motion and Exhibit A.

---

[7] *See, e.g.*, *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (holding that the district court should have treated the phrase, "included, but were not limited to, the following" as surplusage); *United States v. Holy Land Found.*, No. 04-cr-240, 2006 WL 3542685, at *3-7 (N.D. Tex. Dec. 8, 2006) (striking as surplusage terms like "and elsewhere," "and others," and "among others"); *United States v. Alsugair*, 256 F. Supp. 2d 306, 317 (D.N.J. 2003) (recognizing that suggestion that "others" are involved is improper); *United States v. Mango*, No. 96-cr-327, 1997 WL 222367, at *16 (N.D.N.Y. May 1, 1997) (striking the phrases "among others" and "among other things" from the indictment's description of certain legal requirements); *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (terms that "could improperly indicate to a jury that the defendant [was] charged with offenses and conduct in addition to those actually listed in the indictment" should be stricken from an indictment as irrelevant and prejudicial); *United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985) (striking "among others").

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

Brian M. Heberlig (*Pro Hac Vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
bheberlig@steptoe.com

*Counsel for Defendant
Ali Sadr Hashemi Nejad*

Dated: February 25, 2019