UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ALI SADR HASHEMI NEJAD,

*Defendant*.

Case No. 18 Cr. 224 (ALC)

ORAL ARGUMENT REQUESTED

**REPLY IN SUPPORT OF DEFENDANT ALI SADR HASHEMI NEJAD'S
MOTION FOR SUPPRESSION OF SEARCH WARRANT EVIDENCE
AND FOR A *FRANKS* HEARING
(Pretrial Motion No. 8)**

Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

Brian M. Heberlig (*Pro Hac Vice*)
David M. Fragale
Nicholas P. Silverman (*Pro Hac Vice request filed*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 429-3000
Fax: (202) 429-3902
bheberlig@steptoe.com

*Counsel for Defendant
Ali Sadr Hashemi Nejad*

Dated: May 17, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

INTRODUCTION ...............................................................................................................................1

ARGUMENT ......................................................................................................................................1

I.  A *FRANKS* HEARING IS WARRANTED ...........................................................................1

   A.  The Warrant Applications Contain False and Misleading Information and
       Omissions and Demonstrate a Reckless Disregard for the Truth ..............................2

       1.  Sadr has made the required preliminary showing for a *Franks* hearing ........2

       2.  The government may not knowingly or recklessly include false or
           misleading misstatements or omissions in a warrant affidavit .....................3

       3.  The Warrant Applications contain false and misleading information
           and omit material facts ..................................................................................5

       4.  The Warrant Applications contain recklessly false misstatements and
           omissions .......................................................................................................9

   B.  The Warrant Applications Do Not Establish Probable Cause for the
       Crimes Enumerated in the Warrants ........................................................................10

II. THE SEARCH WARRANTS ARE DEFICIENT AND NOT SUBJECT TO THE GOOD
    FAITH EXCEPTION ............................................................................................................11

   A.  The Search Warrants Were Overbroad and Lacked Particularity ............................11

   B.  The Search Warrants Are Not Subject to the Good Faith Exception ......................14

CONCLUSION .................................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Franks v. Delaware*,
  438 U.S. 154 (1978) .................................................................................................... *passim*

*Illinois v. Gates*,
  462 U.S. 213 (1983) .................................................................................................................6

*United States v. Barthelman*,
  No. 13-cr-10016 (MLB), 2013 WL 3946084 (D. Kan. July 31, 2013) ....................................3

*United States v. Canfield*,
  212 F.3d 713 (2d Cir. 2000) ....................................................................................................3

*United States v. Cioffi*,
  668 F. Supp. 2d 385 (E.D.N.Y. 2009). Dkt. 96 ......................................................................14

*United States v. Falso*,
  544 F.3d 110 (2d Cir. 2008) ..................................................................................................12

*United States v. George*,
  975 F.2d 72 (2d Cir. 1992) ....................................................................................................15

*United States v. Gotti*,
  399 F. Supp. 2d 214 (S.D.N.Y. 2005) .....................................................................................2

*United States v. Halsey*,
  257 F. Supp. 1002 (S.D.N.Y. 1966) ........................................................................................3

*United States v. Lahey*,
  967 F. Supp. 2d 698 (S.D.N.Y. 2013) ............................................................................3, 4, 9

*United States v. Rajaratnam*,
  719 F.3d 139 (2d Cir. 2013) ....................................................................................................9

*United States v. Reilly*,
  76 F.3d 1271 (2d Cir. 1996) ..................................................................................................14

*United States v. Trzaska*,
  111 F.3d 1019 (2d Cir. 1997) ..................................................................................................3

*United States v. Ulbricht*,
  858 F.3d 71 (2d Cir. 2017) ..............................................................................................12, 13

*United States v. Vilar*,
  No. S305-cr-621 (KMK), 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) ..................................4

*United States v. Zemlyansky*,
    945 F. Supp. 2d 438 (S.D.N.Y. 2013) ................................................................................... 13

**Other Authorities**

Fourth Amendment ................................................................................................................ 1, 13

Chip Cummins, *Iranian Oil Company Seeks to Clear Its Name*, Wall Street
    Journal (Feb. 29, 2008) ........................................................................................................... 8

Executive Order 13599 ................................................................................................................ 7

**INTRODUCTION**

The Opposition confirms that both a *Franks* hearing and suppression are required. The Warrant Applications in this case contained materially false and misleading statements and omissions that knowingly and recklessly misled the issuing court. With the offending misinformation and omissions corrected, the Warrant Applications are conspicuously lacking in probable cause. Rather than address these glaring deficiencies—because it cannot—the government resorts to the claim that a warrant affidavit may include "selective storytelling," and reiterates the Warrant Applications' vague and unsupported allegations in an unpersuasive attempt to demonstrate probable cause. This is not enough. Sadr has made a substantial preliminary showing that the Warrant Applications contained intentionally or recklessly false statements and omissions. A *Franks* hearing is warranted.

The search warrants were also overbroad and lacked the requisite particularity required by the Fourth Amendment. The government's argument that the warrants meet this Circuit's particularity requirements ignores their fatal deficiencies—most notably, that they authorized a sweeping seizure and search of Sadr's email accounts without establishing probable cause that the accounts were used in the alleged criminal scheme. Likewise, the government's argument that the overbreadth of the warrants was justified by the complexity of the alleged criminal scheme is of no avail. Whatever the complexity of a given case, the government may not ignore the Fourth Amendment's requirements altogether.

**ARGUMENT**

**I.   A *FRANKS* HEARING IS WARRANTED**

The government contends that Sadr's motion should be denied without a hearing because Sadr's claims are conclusory and fail to show that the affidavits intentionally contained material misrepresentations or omissions. Omnibus Opp'n at 56 (Dkt. 108) ("Opp'n"). To the contrary,

1

Sadr has made the required substantial preliminary showing, by establishing with specificity that the Warrant Applications contained false and misleading information, material omissions, and other inaccuracies, which reflected a reckless disregard for the truth and knowingly misled the issuing judge. Mem. Supp. Pretrial Motion No. 8 at 5-13 (Dkt. 96). The government has not rebutted this showing. Cleansed of such falsities and omissions, the Warrant Applications are insufficient to show probable cause.

### A. The Warrant Applications Contain False and Misleading Information and Omissions and Demonstrate a Reckless Disregard for the Truth

#### 1. Sadr has made the required preliminary showing for a *Franks* hearing

To obtain a *Franks* hearing, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The showing "should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id.* at 171. Sadr's motion does just that. The Supreme Court in *Franks* did not establish any *required* type of proof offer, as the government contends. Opp'n at 64. Instead, it expressly left that task to the States. 438 U.S. at 172.

"The 'substantial preliminary showing' requirement is illusively vague." 2 Search and Seizure § 57.03 (Matthew Bender). Sadr is not aware of any Second Circuit decision mandating a particular type of offer of proof to satisfy this requirement. *Cf. United States v. Gotti*, 399 F. Supp. 2d 214, 219 (S.D.N.Y. 2005) (rejecting argument that *Franks* proffer was insufficient for failure to submit witness affidavits or other supporting statements because defendant's explanation of misrepresentations rendered such supporting information unnecessary). Other jurisdictions have ruled a defendant can satisfy this preliminary showing on pleadings alone.

2

*See, e.g.*, *United States v. Barthelman*, No. 13-cr-10016 (MLB), 2013 WL 3946084, at *7-8 (D. Kan. July 31, 2013) (granting *Franks* hearing on defendant's motion alone because the phrase "substantial preliminary showing" is "undefined and subject to 'interpretation'" and the failure to grant a hearing can result in reversal after trial).

Sadr's motion contains twenty-four pages detailing the specific false and misleading statements and omissions, demonstrating why they are false, and explaining their importance to the probable cause inquiry. Sadr has made the required "substantial *preliminary* showing" to obtain a *Franks* hearing.

### 2. The government may not knowingly or recklessly include false or misleading misstatements or omissions in a warrant affidavit

The government repeatedly claims that because a warrant affiant may "engage in selective storytelling," not every statement in an affidavit need be true. Opp'n at 65 (quoting *United States v. Lahey*, 967 F. Supp. 2d 698, 716 (S.D.N.Y. 2013)); *see also* Opp'n at 60, 71, 72. The notion that the law endorses inclusion of untruths in an affidavit is startling and unsupported. *Franks* (on which *Lahey* is based[1]) excused *inaccuracy*, but not *untruthfulness*:

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is there will be a *truthful* showing." This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. *But surely it is to be "truthful" in the sense that the information set forth is believed or appropriately accepted by the affiant as true*.

438 U.S. at 164-65 (second emphasis added) (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). Thus, while some inaccuracy may be tolerated, in no way do the government's cases approve the inclusion of *any* deliberate or reckless falsehoods or misleading

---

[1] *Lahey* cited *United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000), which in turn cited *United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir. 1997), which in turn cited *Franks*.

3

omissions—especially falsehoods or omissions that serve as the substantial basis for probable cause. *See United States v. Vilar*, No. S305-cr-621 (KMK), 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007) (an affiant "cannot intentionally or recklessly hide from the magistrate judge that which would be critical to the probable cause determination").

The government also ignores *Lahey*'s relevant analysis. *Lahey* assessed the validity of two different warrants. 967 F. Supp. 2d at 711-13, 723. Its analysis of the first—cited by the government—rejected the argument that minor inaccuracies about the attendees and sequence of a social gathering warranted suppression, because those details were immaterial, and because the supporting affidavit contained additional facts establishing probable cause. *Id.* at 711-13.

But *Lahey*'s analysis of the second warrant, omitted by the government, found the affiant had acted with reckless disregard for the truth, and that his "misrepresentation and each of the related omissions . . . dr[o]ve in the same direction: establishing a connection . . . the fuller evidence did not support." *Id.* at 723. The court was "troubled by the fact that the other allegations in the [affidavit] amount[ed] to little more than generalities" about a group to which the defendant belonged, demonstrating that the "misrepresentation and the related omissions were clearly critical to the magistrate judge's determination." *Id.* The court recognized that although each individual omission may not have established reckless disregard for the truth, "the cumulative effect of all the omissions was to eliminate nearly every indicator detracting from probable cause." *Id.* These fatal flaws, which warranted suppression in *Lahey*, are the precise problems that permeate the Warrant Applications in this case. The Warrant Applications' false statements, material omissions, and other misleading claims on critical issues were included with reckless disregard for the truth to manufacture probable cause not supported by the evidence.

4

### 3. The Warrant Applications contain false and misleading information and omit material facts

Sadr's opening brief demonstrated that the Warrant Applications were premised on numerous false and misleading pretenses, including that Sadr and his family have "substantial ties to the Government of Iran," and that the funds involved in the housing project at issue were used for "covert projects" between the Government of Iran and Venezuela. Dkt. 96 at 7-10. His brief further explained that the Warrant Applications contained other material omissions and inaccuracies, which when taken as a whole with the patently false statements, demonstrated an intentional or reckless disregard for the truth. *Id.* at 13.

Rather than address the most egregious falsehoods identified by Sadr—because it cannot—the government attempts to distill Sadr's motion into twelve statements that Sadr claims are false or misleading, and argues that Sadr concedes the remaining facts are true. Opp'n at 65-67. This premise is entirely false: Sadr has made no such concession.[2] The government then engages in a tortured attempt to explain why cherry-picked examples among the twelve statements are not actually false or misleading. *Id.* at 67-72. But these efforts merely underscore the fatal deficiencies in the Warrant Applications.

The government does not deny the falsity of the Warrant Applications' most inflammatory claim: that funds transferred from the Venezuelan company to companies controlled by Sadr were used for "covert projects" between the Government of Iran and Venezuela. There is no evidence that the Government of Iran received any of the funds at issue, nor that funds were used for any "covert projects"—a startling contrast from their actual use to build housing for low-income Venezuelans. Rather than defend this bombshell statement, the

---

[2] Sadr's culling of the affidavits' misrepresentations to only the most egregious and clear-cut does not signify concession of the truth of everything not expressly challenged. The cut-and-dry misrepresentations presented in this motion are sufficient to obtain a *Franks* hearing, at which the truth or falsity of these and other representations necessary to establish probable cause can be determined.

government weakly claims that the allegation merely "represent[ed] the investigator's best effort to describe relevant facts, information and beliefs at a certain point in time," and could not have misled the issuing judge because it began, "there is reason to believe." *Id.* at 70-71. This is not close to sufficient. "A sworn statement of an affiant that 'he has cause to suspect and does believe' . . . will not do. [The Magistrate's] action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983) (citation omitted). More importantly, such an explosive allegation needed to be based on *something* to pass constitutional muster. The government, however, identifies not one reason that allegedly caused the affiant to erroneously believe Sadr was aiding covert projects between the governments of Iran and Venezuela. The government's utter failure to defend this outrageous statement shows conclusively that it was submitted with intentional or reckless disregard for the truth to mislead the issuing judge, or worse, to inflame his emotions.

The government feebly defends the accuracy, "based on available information," of the false statement that Sadr's family had "substantial ties to the Government of Iran," Opp'n at 69, without offering *any* evidence of such ties. In reality, no member of the Sadr family has ever been employed by the Iranian government, and Stratus Group is unquestionably a private company. Unable to prove otherwise, the government relies on the Iranian Ambassador to Venezuela's attempt to mediate a payment dispute between IIHC and the Venezuelan company as evidence of a connection, Opp'n at 69-70, but this misses the point. It was the *Venezuelan* government's involvement in the housing project, not the Iranian government's involvement with IIHC, that led the Iranian Ambassador to intervene. At the time, IIHC was a foreign private company doing business with a state-owned entity on that state entity's home turf. The Iranian Ambassador's involvement was no different than a Pepsi bottling plant in Mexico seeking the U.S. Ambassador to Mexico's help in resolving a contract dispute with the Mexican government.

Moreover, the false statements included in the Warrant Applications were not directed at such incidental involvement; instead, they attempted to tar Sadr and his family as agents of the Iranian government. There was no basis for this patently false statement when the first warrant affidavit was submitted in April 2014, nor has the government found any evidence to support it during the ensuing five years of additional investigation.

The Warrant Applications also falsely claimed that Clarity, Sadr's family, and Stratus Group had "links" to "entities that have been sanctioned by OFAC . . . for supporting Iran's nuclear weapons program, proliferation activities, and support of terrorism." Dkt. 96-1 ¶ 29. Again, the Opposition does not identify any links between Clarity and sanctioned entities, because there are none.[3] The only cited basis for these claimed links to terrorism and nuclear proliferation is the tenuous allegation that Sadr's father founded and owned the Stratus Group, which in turn "owned and/or controlled [EN Bank] and Oriental Oil Kish," two entities eventually designated as SDNs. Opp'n at 69. As an initial matter, neither Sadr's father nor the Stratus Group owned a majority share of EN Bank. More importantly, though, EN Bank was not designated as an SDN "for supporting Iran's nuclear weapons program, proliferation activities, [or] . . . terrorism," Dkt. 96-1 ¶ 29, or for any other suspected illegal conduct. Instead, it was designated simply because OFAC determined that it met the definition of an "Iranian financial institution" under Executive Order 13599.

As for Oriental Oil Kish, the Warrant Application selectively cited an interview with Mohammed Sadr to misleadingly imply Stratus was linked to the Iranian government, stating: "According to published interviews in the English-language press, Mohammad Sadr states that while (sic) the Stratus Group receives government contracts." Dkt. 96-1 ¶ 31. Mr. Sadr's full statement, concealed by the affiant, painted a different picture. First, he *disclaimed* any

---

[3] Indeed, despite these supposed links, no member of Sadr's family, Clarity, or Stratus has ever been added to OFAC's SDN list.

substantive links between Stratus and the Iranian government or the Iranian Revolutionary Guard:  "In an interview, [Mohammad Sadr] said Stratus has government contracts, but the government has no ownership in or influence over his group.  The company said it has no business dealings with the [Iranian Revolutionary] Guard."[4]  Second, the 2008 article reports that in response to false rumors of Iranian Revolutionary Guard ownership, the private owners of Oriental Oil Kish chose to sell a stake in the company to Stratus Group.  *Id.*  Stratus Group was an alternative buyer representing continued private ownership *instead of* a link to the Iranian Revolutionary Guard.[5]

In an effort to manufacture a series of tenuous links from Sadr and Clarity to entities sanctioned for nuclear proliferation or terrorism, the Warrant Applications also contain false statements about Sadr's connections to two Iranian businesses.  First, the government claims that Sadr was the CEO of "Stratus International Co.," a supposed company "in Tehran."  Opp'n at 76 (summarizing the Warrant Affidavits in ¶¶ 16, 19).  This is false.  Sadr was the Chairman of Stratus International Contracting Insaat Ve Taahhut A.S. (also known as Straturk or Stratus Turkey), a Turkish company distinct from the Iranian Stratus International Contracting Co.[6] Sadr never served as CEO of Stratus Iran or any other Iranian company.  Second, although not in the Warrant Applications, the government alleges without citing supporting evidence that Sadr "sat on [EN Bank's] board of directors."  Opp'n at 69.  Sadr never sat on the EN Bank Board of

---

[4] Chip Cummins, *Iranian Oil Company Seeks to Clear Its Name*, Wall Street Journal (Feb. 29, 2008), https://www.wsj.com/articles/SB120425708924802267.

[5] Not only did the Warrant Application omit all of this information, it neglected to state the obvious: none of this relates to Sadr.  He was not even aware of the Oriental Oil Kish transaction to the best of his recollection.  Discovery has not revealed any documents relating to the transaction or the operation of Oriental Oil Kish.

[6] The government further claims that the Iranian Stratus International Contracting Co. held an account with Hyposwiss Private Bank in Switzerland and that Sadr was a signatory on that account.  Opp'n at 77 (claiming separate accounts for "Stratus International Contracting" and "Straturk").  This is also false.  Sadr was never a signatory on such an account, nor did one ever exist to the best of his knowledge.

Directors, the Stratus Board of Directors, or the board of any other Iranian company. And even had the government's misstatements about Sadr been true, neither Stratus nor EN Bank had any link to nuclear proliferation or terrorism. These attempts to manufacture such a link, even a tenuous one, were false and designed to inflame the passions of the issuing judge.

The government makes no attempt to defend other statements Sadr identified as intentionally or recklessly false. For instance, with respect to the statement that "representatives of the IIHC" were "Iranian government officials," *see* Dkt. 96-1 ¶ 9, the government does not claim that it undertook even a cursory review by asking for the names or offices of these supposed officials. Had it done so, it could have easily determined that two of the three IIHC representatives identified in the Warrant Application were Turkish and, unsurprisingly, not Iranian government officials. The government's failure to defend these and other statements should be deemed a concession that they were false.

### 4. The Warrant Applications contain recklessly false misstatements and omissions

The government argues Sadr has not shown that the claimed misstatements, inaccuracies, and omissions were made intentionally, Opp'n at 72-74, but glosses over the fact that a defendant may obtain a *Franks* hearing by demonstrating they were "designed to mislead, or . . . made in reckless disregard of whether they would mislead, the magistrate." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (emphasis omitted). In the Second Circuit, the "reckless disregard" inquiry can be satisfied by a showing that the affiant (i) made a false statement with the knowledge that it was false, (ii) had serious doubts as to the truth of the statement, or (iii) had obvious reason to doubt the veracity of the statement. *Lahey*, 967 F. Supp. 2d at 709-10. Reckless disregard can be "*inferred* from the omission of critical information in a[n] . . . application." *Rajaratnam*, 719 F.3d at 154 (emphasis in original).

9

Sadr has shown the affiant's "reckless disregard for the truth," and that those statements were designed to mislead the issuing judge into approving the warrants.

**B.  The Warrant Applications Do Not Establish Probable Cause for the Crimes Enumerated in the Warrants**

The cumulative effect of the material misstatements, omissions, and other inaccuracies in the Warrant Applications was to cobble together a probable cause showing when it would otherwise not exist.  Though the government claims the Warrant Applications still contained "ample information supporting the probable cause findings," Opp'n at 74, its attempt to show this "ample information" simply highlights Sadr's objections.

The government begins by falsely claiming that Sadr concedes the truth of the majority of the statements in the Warrant Applications by not expressly challenging them.  *Id.* at 75.  He does not.  It then paraphrases thirty allegations in the April 2014 warrant affidavit that it claims supported a probable cause finding.  *Id.* at 75-77.  But many of these statements are false, *see* Sec. A.3, *supra*, and others have nothing to do with Sadr or do not describe anything remotely unlawful.  These allegations do not establish probable cause that Sadr committed a crime, or provide any evidence that the subject email accounts were used to further one.

The government makes no attempt to tie the probable cause showing to the New York criminal statutes supposedly violated.  Neither the Warrant Applications nor the Opposition even suggests that the transferred money constituted proceeds of criminal conduct sufficient to establish probable cause for money laundering under New York law.  As Sadr's opening brief explained, the only conceivable underlying criminal conduct articulated in the Warrant Applications is a violation of federal sanctions laws, but the Warrant Applications do not allege such a violation.  Dkt. 96 at 14.  The government completely ignores Sadr's argument that such a violation, even had it been alleged, could not support a state money laundering offense.  *Id.* at 15-16.  Nor does the government attempt to explain how there was probable cause that Sadr

10

offered a false instrument for filing or falsified a business record. *Id.* at 16-17. Stripped of the material misstatements and omissions, all that remains are speculative assertions with no foundation. This is not enough. The Warrant Applications do not establish probable cause that Sadr violated the underlying New York state criminal offenses, and are therefore invalid.

Though a search warrant affiant has a limited license to engage in "storytelling," he may not tell tall ones. Here, the government did just that, by contorting and omitting evidence to paint Sadr as an Iranian government agent engaged in covert operations with Venezuela, when nothing could be further from the truth. The Warrant Applications contained recklessly false misstatements and omissions that misled the issuing court into finding probable cause to search Sadr's email accounts. The Court should order a *Franks* hearing and suppress the evidence unlawfully seized under them.

## II.   THE SEARCH WARRANTS ARE DEFICIENT AND NOT SUBJECT TO THE GOOD FAITH EXCEPTION

Because the warrants in this case were overbroad, lacking in particularity, and not saved by the good faith exception, the evidence seized pursuant to them should be suppressed. Dkt. 96 at 17-18. Rather than defend the brazen overbreadth and lack of particularity in the warrants, the government merely falls back on the same conclusory argument, repeated throughout the Opposition, that the warrants contained ample evidence of probable cause, and therefore, were sufficient. The government ignores critical distinctions between the cases cited and the warrants here, and fails to address these warrants' lack of probable cause to believe that evidence of the crimes alleged would be found in the places searched.

### A.   The Search Warrants Were Overbroad and Lacked Particularity

Regarding overbreadth, the government asserts that the Warrant Applications contain "ample evidence" of the crimes enumerated in the warrants, and that their sweeping breadth is justified by the complexity of the criminal scheme alleged in this case. Opp'n at 87-89. But the

11

government continues to gloss over Sadr's argument that the Warrant Applications failed to establish a nexus between the alleged crimes and accounts searched. Dkt. 96 at 18. Instead, the only "evidence" offered to support the government's feeble attempt to establish this nexus is that the affidavits "listed the variety of email accounts the defendant used in association with the described entities and activities outlined in the affidavits," and the accounts were active as of the date of the April 2014 warrant. Opp'n at 75-77, 88. This does nothing to establish that Sadr's accounts were used in furtherance of the alleged criminal scheme—especially when the bulk of the "activities outlined in the affidavits" either describe legitimate business activities or have nothing to do with Sadr. As such, neither the Warrant Applications nor the Opposition offer any reason to believe "there is a fair probability that . . . evidence of [those] crime[s] will be found in" Sadr's emails. *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (citation omitted).

The government's responses to Sadr's particularity concerns are equally unconvincing. First, the government argues that because the warrants satisfied all three particularity requirements articulated in *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017)—specification of the offenses for which the government has established probable cause; identification of the places to be searched; and specification of the items to be seized by their relation to the designated crimes—they were sufficiently particular. Opp'n at 83. As already explained in detail above and in Sadr's opening brief, the Warrant Applications fail the first *Ulbricht* requirement: the government has not established probable cause for *any* offense, let alone the offenses enumerated in the warrants. *See* Sec. I.B, *supra*; Dkt. 96 at 14-17. Thus, the warrants could not have possibly specified the offenses for which the government has established probable cause. In addition, unlike the warrants here, the *Ulbricht* warrants expressly incorporated an affidavit listing the crimes charged, which in turn, allowed the court to conclude

12

that the warrant specified "the items to be seized by their relation to designated crimes." 858 F.3d at 99.

Moreover, the Second Circuit put special weight on the fact that Ulbricht's crimes, unlike those alleged here, were "committed largely through computers," and thus the warrants "gave ample basis for the issuing magistrate judge to conclude that evidence related to [those crimes] likely permeated [the place to be searched]." *Id*. at 103-04. For this reason, the court "decline[d] to rethink the well-settled Fourth Amendment principles that the [warrant] may implicate," but acknowledged that "[a] future case may require this Court to articulate special limitations on digital searches to effectuate the Fourth Amendment's particularity or reasonableness requirements." *Id.* at 104. This case squarely presents those concerns. Thus, reliance on *Ulbricht* is not adequate to prove the warrants here were sufficiently particular.

Second, the government argues that the lack of any temporal restrictions does not alone render a warrant insufficiently particular. Opp'n at 83-84. As a preliminary matter, Sadr does not argue the lack of temporal restrictions is dispositive—only that it supports a finding of insufficient particularity here, when coupled with the Warrant Applications' other deficiencies. Dkt. 96 at 20-21. It is well-established that a lack of temporal restrictions is a factor the Court may consider in assessing particularity, especially when "such limiting information is available, and the warrant is otherwise wide-ranging." *United States v. Zemlyansky,* 945 F. Supp. 2d 438, 459 (S.D.N.Y. 2013). Here, the government does not even try to explain why it needed to seize the entire contents of Sadr's email accounts back to their inception, when the Warrant Applications describe events that occurred primarily between 2011 and 2014. *See* Dkt. 96 at 20-21. This limiting information was clearly available, and its omission from the "otherwise wide-ranging" warrants supports Sadr's argument that the warrants were insufficiently particular.

13

The government futilely tries to distinguish Sadr's cases by focusing on the "'failure to identify the specific offense for which the police have established probable cause'" in those cases, Opp'n at 84 (citing *Ulbricht*, 858 F.3d at 99), while ignoring Sadr's argument that without the affidavits being attached, the warrants here are indistinguishable from the general warrant held unconstitutional in *United States v. Cioffi*, 668 F. Supp. 2d 385, 396 (E.D.N.Y. 2009).  Dkt. 96 at 19-20 n.14.  Again, although the warrants here state that evidence of three broad criminal violations may be found in the target email accounts, the paragraph of the warrant authorizing seizure commands the executing officer to seize *all* email messages with no limitations whatsoever.  Dkt. 96 at 19-20 n.14.  The government's failure to address this argument should be deemed a concession that the warrant affidavits were not attached to the warrants.  Thus, the warrants had the same "fatal flaw" that the government concedes would render a warrant insufficiently particular.  Opp'n at 84.

Although greater latitude is given in digital searches, *id.* at 86, this does not render the Fourth Amendment's requirements moot.  Here, the government's wholesale seizure of the entirety of several email accounts, which the government has now possessed for nearly five years, is hardly an incidental cursory review, as the government suggests.  *See* Mem. Supp. Pretrial Motion No. 9 (Dkt. 98).  The search warrants were overbroad and lacking in particularity, and the evidence unlawfully seized pursuant to them should be suppressed.

### B. The Search Warrants Are Not Subject to the Good Faith Exception

"Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996).  Despite the government's arguments, Opp'n at 91-93, the Warrant Applications contained material misstatements, omissions, and other inaccuracies that knowingly and recklessly misled the issuing court, and the warrants themselves were overbroad and lacking the requisite particularity.

14

Again, while the warrants state that the search warrant affidavit established probable cause to believe that evidence of the enumerated crimes would be found in the target email accounts, the warrants' description of the evidence to be seized—identified in the "YOU ARE THEREFORE COMMANDED" paragraph, *see, e.g.*, Dkt. 96-1 at 41—contained no limitations whatsoever on what could be seized. Likewise, the warrants authorized the executing officer "to seize, search, retrieve, and view *all* the data, information, and images provided to them by the email service provider." *Id.* at 42 (emphasis added). Thus, the warrants contained the same glaring deficiencies as a general warrant and precluded the executing officers from presuming them to be valid. Under these circumstances, the good faith exception is not applicable and does not save the unconstitutional warrants at issue here. *United States v. George*, 975 F.2d 72, 78 (2d Cir. 1992) (finding the good faith exception inapplicable where warrant was "the type of facially invalid warrant that could not have been relied upon in good faith because 'one who simply looked at the warrant, . . . would . . . suspect it was invalid'") (citation omitted).

## CONCLUSION

For the reasons explained above and in the opening brief, the Court should order a *Franks* hearing and suppress all evidence seized from Sadr's email accounts pursuant to the search warrants at issue.

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

15

        Brian M. Heberlig (*Pro Hac Vice*)
        David M. Fragale
        Nicholas P. Silverman (*Pro Hac Vice request filed*)
        STEPTOE & JOHNSON LLP
        1330 Connecticut Avenue, N.W.
        Washington, DC 20036
        Tel: (202) 429-3000
        Fax: (202) 429-3902
        bheberlig@steptoe.com

        *Counsel for Defendant*
        *Ali Sadr Hashemi Nejad*

Dated:  May 17, 2019