*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 26, 2019

**FILED BY ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (ALC)

Dear Judge Carter:

    The Government respectfully submits this letter to advise the Court of potential conflicts of interest presented by the representation of the defendant, Ali Sadr Hashemi Nejad ("Sadr"), by the law firm Steptoe & Johnson LLP ("Steptoe"), and to request that the Court hold a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982).  Steptoe currently simultaneously represents both the defendant and at least one of the victims in this case, JP Morgan Chase & Co. ("JPMorgan Chase"), and previously represented others of the victims, including Citibank, UBS Financial Services Inc. ("UBS"), and Commerzbank (together with JPMorgan Chase, the "Victim Banks").  In very similar circumstances in *United States v. Zarrab*, 15 Cr. 867 (RMB), Judge Berman ordered a *Curcio* hearing including, among other things, a waiver on the record from the defendant, waivers in writing from each of the victim banks represented by counsel for the defendant, and the presence of unconflicted counsel to address issues pertaining to similarly-situated victim banks at trial, before approving the continued participation of counsel in the case *See Zarrab*, 2017 WL 946334 (S.D.N.Y. Feb. 15, 2017).  The Government has conferred with defense counsel about this issue, and understands that the defendant intends to submit a letter in response, but does not object to a *Curcio* hearing.

## BACKGROUND

    The defendant is charged in Indictment No. 18 Cr. 224 (ALC) (the "Indictment") with (i) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (ii) conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C. § 1705; (iii) bank fraud, in violation of 18 U.S.C. § 1344; (iv) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; (v) money laundering, in violation of 18 U.S.C. § 1956; and (vi) conspiracy to commit money laundering, in violation of Section 1956.

    As alleged in the Indictment, in August 2004, the governments of Iran and Venezuela entered into an agreement (the "Agreement") whereby they agreed to cooperate in certain areas of

common interest. The following year, both governments supplemented the Agreement by entering into a memorandum of understanding regarding an infrastructure project in Venezuela (the "Project"), which was to involve the construction of thousands of housing units in Venezuela.

The Project was led by Stratus Group, an Iranian conglomerate controlled by Sadr and his family with international business operations in the construction, banking, and oil industries. In December 2006, Stratus Group incorporated a company in Tehran, Iran, which was then known as the Iranian International Housing Corporation ("IIHC"). IIHC was responsible for construction for the Project. Thereafter, IIHC entered into a contract with a subsidiary of a Venezuelan state-owned energy company (the "Venezuelan Subsidiary"), which called for IIHC to build approximately 7,000 housing units in Venezuela in exchange for approximately $475,734,000. Stratus Group created the Venezuela Project Executive Committee to oversee the execution of the Project. Sadr was a member of the Committee and was responsible for managing the Project's finances.

In connection with his role on the Project, Sadr and his co-conspirators devised and executed a scheme to evade U.S. economic sanctions and defraud U.S. banks by concealing the role of Iran and Iranian parties in U.S. dollar payments sent through the U.S. banking system. For example, in 2010, Sadr and a co-conspirator used St. Kitts and Nevis passports and a United Arab Emirates address to incorporate two entities outside Iran that would receive U.S. dollar payments related to the Project on behalf of IIHC. The first entity, Clarity Trade and Finance ("Clarity"), was incorporated in Switzerland, and the second, Stratus International Contracting, J.S., a/k/a "Stratus Turkey," a/k/a "Straturk," was incorporated in Turkey. Sadr and his family members in Iran owned and controlled both Stratus Turkey and Clarity. Sadr then opened U.S. dollar bank accounts for Clarity and Stratus Turkey at a financial institution located in Switzerland.

Thereafter, Sadr and others, using Clarity and Stratus Turkey, conducted a series of international financial transactions for the benefit of Iranian parties in a manner that concealed the Iranian nexus to the payments from, among others, the Victim Banks, in violation of U.S. economic sanctions. Specifically, between April 2011 and November 2013, the Venezuelan Subsidiary, at the direction of Sadr and others, routed approximately 15 payments to IIHC through Stratus Turkey or Clarity using correspondent accounts at the Victim Banks, totaling approximately $115 million.

Sadr and others directed that payments be routed through the Victim Banks to Stratus Turkey's or Clarity's bank accounts at the financial institution in Switzerland. The majority of the funds were then transferred to another offshore entity located in the British Virgin Islands, which Sadr and others had incorporated in 2009. In addition, on February 1, 2012, Clarity wired more than $2,000,000 in proceeds from the Project directly into the United States. Those proceeds were then used to purchase real property in California.

Among the financial institutions allegedly defrauded by the defendant and his co-conspirators are JPMorgan Chase, Citibank, UBS, and Commerzbank. The Government understands that Steptoe currently represents JPMorgan Chase in unrelated matters, and has previously represented Citibank, UBS, and Commerzbank. At trial, the Government plans to call witnesses from some of the Victim Banks to testify about, among other things, their sanctions compliance processes, their procedures when opening accounts for clients and in authorizing

certain transactions, and the materiality to the Victim Banks of the type of misrepresentations alleged to be at the core of the charged conduct.

## **DISCUSSION**

**I.      Applicable Law**

"The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation." *United States v. Gonzalez*, 105 F. Supp. 2d 220, 222 (S.D.N.Y. 2000) (citing *United States v. Rogers*, 209 F.3d 139, 143 (2d Cir. 2000)). "Defense counsel has an ethical obligation to avoid dual representation or, if the dual representation is justified, to notify the clients with differing interests of the dual representation, give them the opportunity to evaluate the need for representation free of any potential conflict, and to obtain other counsel if they so desire. The attorney must fully explain the implications of the dual representation and obtain consent of both clients." *United States v. Diaz*, 770 F. Supp. 840, 844 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1160 (2d Cir. 1992) (internal citation omitted); *see also Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980) ("Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises.").

When a district court is confronted with a possible conflict of interest, it must first determine whether "the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012). "When a district court is sufficiently apprised of even the possibility of a conflict of interest, the court first has an 'inquiry' obligation. . . . When a possible conflict has been entirely ignored, reversal is automatic." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). An *actual* conflict of interest exists when, "during the course of the representation, the attorney's and the defendant's interest diverge with respect to a material factual or legal issue, or when the attorney's representation to the defendant is impaired by loyalty owed a former client." *United States v. Blau*, 159 F.3d 68, 75 (2d Cir. 1998) (internal citation omitted). "A potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998).

If the district court determines that an actual or potential conflict exists but that it would not fundamentally impair the lawyer's representation, the district court "should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in *Curcio*." *Cain*, 671 F.3d at 293.[1] Because a defendant who who chooses to waive his right to conflict-free counsel gives up important rights—and, in certain cases, may be required to "abandon a particular defense or line of questioning," *United States v. Perez*, 325 F.3d 115, 127 (2d Cir. 2003)—the Second Circuit has prescribed in detail what procedures must be followed in a *Curcio* proceeding to effectuate the waiver:

---

[1] New York Rule of Professional Conduct 1.7(b)(4) requires that both clients that are subject to the conflict waive the conflict in writing.

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Id.* at 119.

Where such procedures are followed successfully, and the defendant is fully informed of the dangers inherent in simultaneous representation, the client's wishes should generally be respected absent some indication that the conflict is so serious "that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." *Cain*, 672 F.3d at 293-94.

## II. The Court Should Hold a *Curcio* Hearing

Steptoe's simultaneous representation of the defendant and at least one of the Victim Banks potentially presents a conflict.[2] The Government has charged Sadr with defrauding the Victim Banks by duping them into processing financial transactions they would not otherwise have engaged in, and in doing so, exposing them to the possibility of substantial harm. As victims of the offense, the Victim Banks will have certain rights if the defendant is convicted, the exercise of which would be directly contradictory to the defendant's interest. *See, e.g., United States v. Fawell*, No. 02 Cr. 310, 2002 WL 1284388, at *7 (N.D. Ill. June 10, 2002) ("'[T]he former clients and alleged victims have an interest in seeing that [defendants] are convicted. Conversely, [the attorney's new client] has a great interest in being acquitted of all charges. These interests are diametrically opposed.'" (quoting *United States v. Alex*, 788 F. Supp. 359, 362 (N.D. Ill. 1992))); *United States v. DiTommaso*, 817 F.2d 201, 219 (2d Cir. 1987); *United States v. Armedo-Sarmiento*, 524 F.2d 591, 592-93 (2d Cir. 1975). For example, the Victim Banks would be able to address the Court at sentencing, and to describe the harm that the defendant's conduct caused them. *See* 18 U.S.C. § 3771(a)(4) (victim of crime has right to be "reasonably heard" at sentencing). Similarly, the Victim Banks would have the right to mandatory restitution for any pecuniary loss they suffered, which includes property lost as a result of the offense and "expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *See* 18 U.S.C. § 3663A(b)(4) & (c)(1)(A)(ii). Moreover, at trial, the Government expects to call as witnesses representatives of the Victim Banks to testify about the harm to the banks caused by the defendant's scheme.

---

[2] Although the possibility for conflict is different and the inquiry more limited, it is also possible that Steptoe's prior representation of Citibank, UBS, and Commerzbank may present diverging interests about which it would be prudent for the Court to inquire. *See* New York Rule of Professional Conduct 1.9; *United States v. Jiang,* 140 F.3d 124, 127 (2d Cir. 1998) (discussing requirement of inquiry to determine whether a conflict exists).

Under these circumstances, a *Curcio* hearing is necessary to determine the scope of the conflict, allow the Court to advise the defendant of the potential conflict, and inquire whether both the defendant and the Victim Banks elect to waive the conflict. *See United States v. Lussier*, 71 F.3d 456, 461 (2d. Cir. 1995) (affirming district court's decision to hold *Curcio* hearing and secure knowing, voluntary and intelligent waiver where defense counsel would have to cross examine a former client who was a witness against the defendant); *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986) (error to have defense counsel instead of the court advise defendant of conflict issue and inquire about continued representation).

For the foregoing reasons, the Government respectfully requests that the Court hold a hearing to "investigate the facts and details of [Steptoe]'s interests to determine whether [Steptoe] in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all," *Levy*, 25 F.3d at 153; and to advise Sadr of his right to conflict-free counsel and provide him the opportunity to waive that right if he so chooses pursuant to the *Curcio* procedure.

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney

by: /s/
    David W. Denton Jr.
    Jane Kim
    Michael Krouse
      Assistant United States Attorneys
    Garrett Lynch
      Special Assistant United States Attorney
    (212) 637-2744/2038/2279

cc:    All Defense Counsel (by ECF)