

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

<sub></sub>

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 30, 2019

**FILED BY ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (ALC)

Dear Judge Carter:

    At a conference on July 29, 2019, the Court informed the parties that because of the Court's conflict of interest with respect to one of the victim banks in this case, the Court planned to recuse itself from the matter and reassign the case to a different judge. At defense counsel's request, the Court provided a briefing schedule for the parties to address the issue.

    The Government respectfully submits this letter in response to the defendant's letter of earlier today. The decision to recuse is "committed to the sound discretion of the district court." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992); *see also Pashaian v. Eccleston Props., Ltd.*, 1995 WL 224759, at *1 (S.D.N.Y. 1995) (recusing as a prudential matter "[s]ince there are twenty-three active judges in this district who would not be disqualified in this matter, it makes sense to have further proceedings in this case transferred to one of them"), *aff'd*, 88 F.3d 77, 83-85 (2d Cir. 1996); *see also* 28 U.S.C. § 455 (providing circumstances under which a federal judge shall disqualify himself). Accordingly, the Government defers to the Court's conflicts assessment regarding recusal. The Government writes to provide additional detail regarding the involvement of JPMorgan Chase & Co. ("JPMorgan Chase"), one of the victim banks in this case.[1]

## Background

    As the Court is aware, the defendant is charged in Indictment No. 18 Cr. 224 (ALC) (the "Indictment") with (i) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (ii) conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C. § 1705; (iii) bank fraud, in violation of 18 U.S.C. § 1344; (iv) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; (v) money laundering, in violation of 18 U.S.C. § 1956; and (vi) conspiracy to commit money laundering, in violation of Section 1956.

---

[1] The victim banks are collectively referenced herein as the "Victim Banks."

These charges arise from the defendant's involvement in an infrastructure project in Venezuela (the "Project"), which was led by the defendant's Iranian company, Stratus Group.

In connection with his role on the Project, the defendant and his co-conspirators devised and executed a scheme to evade U.S. economic sanctions and defraud U.S. banks—including JPMorgan Chase—by concealing the role of Iran and Iranian parties in U.S. dollar payments sent through the U.S. banking system. The defendant and others, using various entities, conducted a series of international financial transactions for the benefit of Iranian parties in a manner that concealed the Iranian nexus to the payments from, among others, the Victim Banks, in violation of U.S. economic sanctions. Specifically, between April 2011 and November 2013, the Venezuelan Subsidiary, at the direction of the defendant and others, routed approximately 15 payments to IIHC through Stratus Turkey or Clarity using correspondent accounts at the Victim Banks, totaling approximately $115 million.

The defendant and others directed that payments be routed through the Victim Banks to Stratus Turkey's or Clarity's bank accounts at the financial institution in Switzerland. The majority of the funds were then transferred to another offshore entity located in the British Virgin Islands, which the defendant and others had incorporated in 2009. In addition, on February 1, 2012, Clarity wired more than $2 million in proceeds from the Project directly into the United States. Those proceeds were then used to purchase real property in California.

## Trial and Sentencing

The Government has charged the defendant with defrauding the Victim Banks by duping them into processing financial transactions they would not otherwise have engaged in, and in doing so, exposing them to the possibility of substantial harm. At trial, the Government plans to call witnesses from some of the Victim Banks to testify about, among other things, their sanctions compliance processes, their procedures when opening accounts for clients and in authorizing certain transactions, the harm caused to the banks by the defendant's scheme, and the materiality to the Victim Banks of the type of misrepresentations alleged to be at the core of the charged conduct.[2] Indeed, the Government expects to prove that the defendant took specific actions designed for the particular purpose of concealing material information from the Victim Banks and to evade the Victim Banks' processes implementing sanctions barring financial transactions for the benefit of Iranian entities. Of the $115 million in U.S. dollar-denominated payments that are at the core of this case, JPMorgan Chase was the correspondent bank for approximately $45 million, and will thus play a central role in the proof at trial in this matter. Moreover, the Government will prove that the defendant (i) directed that transactions be processed for the benefit of Clarity through JPMorgan Chase; (ii) knew that JPMorgan Chase had implemented procedures to block correspondent transactions to pay Iranian institutions and individuals; (iii) designed a payment mechanism to conceal information about the Iranian beneficiaries of the transactions to induce the Victim Banks to process those transactions; and (iv) knew that JPMorgan Chase had in

---

[2] As the Government described at yesterday's conference, the Government intends to call at least one JPMorgan Chase employee as a witness at trial, and has discussed that with attorneys in JPMorgan Chase's General Counsel's office.

fact processed those transactions, in violation of U.S. sanctions and JPMorgan Chase policies prohibiting them.

      If the defendant is convicted, JPMorgan Chase will, as a victim of the offense, have certain rights. For example, JPMorgan Chase will be able to address the Court at sentencing, and describe the harm that the defendant's conduct caused it. *See* 18 U.S.C. § 3771(a)(4) (victim of crime has right to be "reasonably heard" at sentencing). Similarly, JPMorgan Chase will have the right to mandatory restitution for any pecuniary loss they suffered, which includes property lost as a result of the offense and "expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *See id.* § 3663A(b)(4) & (c)(1)(A)(ii).

          Respectfully submitted,

          GEOFFREY S. BERMAN
          United States Attorney

by: /s/
          David W. Denton Jr.
          Jane Kim
          Michael Krouse
            Assistant United States Attorneys
          Garrett Lynch
            Special Assistant United States Attorney
          (212) 637-2744/2038/2279

cc:     All Defense Counsel (by ECF)