J8F6NEJC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          18 CR 224(AJN)

5  ALI SADR HASHEMI NEGAD,

6            Defendant                   Conference

7  ------------------------------x
                                         New York, N.Y.
8                                        August 15, 2019
                                         4:15 p.m.
9

10 Before:

11
                      HON. ALISON J. NATHAN,
12
                                         District Judge
13
                      APPEARANCES
14
   GEOFFREY S. BERMAN
15      United States Attorney for the
        Southern District of New York
16 BY:  DAVID DENTON
        JANE KIM
17      MICHAEL KROUSE
        GARRETT LYNCH
18      Assistant United States Attorneys

19 STOPTOE & JOHNSON, LLP
        Attorneys for Defendant
20 BY:  Reid Weingarten
        Brian Heberlig
21

22

23

24

25

1        (Case called)

2        THE COURT:  Good afternoon.  Please be seated.

3        I will take appearances of counsel, starting with

4   counsel for the government.

5        MR. DENTON:  Good afternoon, your Honor.  David

6   Denton, Jane Kim, Michael Krouse on Garrett Lynch for the

7   government.

8        THE COURT:  For the defendant.

9        MR. WEINGARTEN:  Good afternoon, your Honor.  Reid

10   Weingarten and Brian Heberlig for the defendant, my client, who

11   is here, Mr. Nejad.

12        THE COURT:  Good afternoon, Mr. Nejad.

13        Mr. Nejad, I am Judge Nathan.  I will be the district

14   judge handling this matter going forward.  We're here for a

15   status and scheduling conference following the transfer of this

16   matter to me in light of Judge Carter's recusal in the matter.

17        I have began to familiarize myself with the docket and

18   existing schedule.  What I would like to do is hear a basic

19   status update from the government, talk about what needs to be

20   done to get the matter trial matter and set.  I will hear from

21   you on scheduling, but talk about the potential rescheduling of

22   trial in light of where the case is now and what needs to be

23   done to get it trial ready.  I am open to a discussion as to

24   what the parties wish to do as to how to proceed.

25        Mr. Denton.

1          MR. DENTON:  Yes, your Honor.

2          I think there are essentially three categories of

3     areas that need to be resolved before we get to pretrial

4     filings, motions in limine and request for charge and so on.

5     The first is the outstanding Curcio issue pertaining to the

6     conflicts.  I am happy to elaborate on what I think needs to be

7     done at this stage.  If your Honor would like, we can talk at a

8     higher level.

9          Second, is the pretrial motions which were briefed but

10    no oral argument was set.  I don't know if the Court is going

11    to want that.

12          THE COURT:  One of the motions is a suppression

13    motion, but the government hasn't consented to a hearing; is

14    that right?

15          MR. DENTON:  That's correct, your Honor.

16          THE COURT:  So potentially the need for a hearing?

17          MR. DENTON:  Yes, that's true as well.

18          There is then some bleed over between the pretrial

19    motions and the last category of dispute to be addressed, which

20    are privilege questions.  The reason I say that is that the

21    defendant's last pretrial motion was styled in the first

22    instance as a motion for the return of property for certain

23    unresponsive emails.  In his reply brief, the defendant makes

24    an application to the Court for the first time precluding the

25    government from reviewing emails even if his return of property

1   motion is rejected.  That is not something obviously that was

2   made in the first instance but the government has responded to.

3   Your Honor is obviously quite familiar with these issues from

4   the *United States v. Benson Wade* case.  I expect if that is

5   going to be an issue, it is going to be a separate motion

6   practice that needs to get addressed before the privilege

7   review.  Because one of the issues we have run into with the

8   privilege review is what universe of documents the filter team

9   on the government side should even be allowed to look at for

10  purposes of making privilege determinations.

11       So I think those three categories need to be handled

12  in sequence.

13       THE COURT:  Why don't you drill down on each category

14  then with your suggestions for process that needs to be

15  scheduled out that hasn't.  Recognizing that the primary set of

16  motions have been fully briefed, but what your proposal is for

17  what process remains to be determined.

18       MR. DENTON:  Yes, your Honor.

19       So with respect to a Curcio, we are in partially

20  chartered territory here.  The only other case in which a

21  conflict situation of this type has arisen was before Judge

22  Berman in *United States v. Zarrab*.  The conflict issue arose

23  with respect to two defendants.  Judge Berman there adopted a

24  multistep process whereby he required the defendant to –– I

25  should say he required the defense counsel to obtain written

1    waivers of conflicts from the victim banks at issue, then

2    allocuted the defendant as to the nature of the conflict.  The

3    reasons for proceedings that way was that the waivers from the

4    banks included certain limitations on what defense counsel

5    could do, including in one instance the right to review

6    filings; and I think everyone agreed that the defendant needed

7    to be allocuted about limitations with respect to that.

8        The last was that he required there be separate

9    unconflicted counsel as part of the trial team to address

10   issues with respect to the banks.  As to the first defendant

11   for whom the issue came up, that wasn't an issue.  There

12   already was unconflicted counsel.  Defendant was represented by

13   several law firms.  With respect to the second defendant, in

14   that case it required the addition of a new lawyer to the

15   defense team.

16       I say we are in partially chartered territory here

17   because the government there took the position that this was a

18   nonwaivable conflict and required disqualification of counsel.

19   We have determined in light of the precedent there that we do

20   not take that view here.  We think it is probably a waivable

21   conflict; but what the specific parameters of what is required

22   to make an effective waiver if something different than what

23   Judge Berman did, is not an issue that has been addressed.

24       THE COURT:  The government's position now that it is

25   waivable you said is not based on distinguishing facts from in

1    that instance but because of the precedent set in that matter

2    by Judge Berman?

3              MR. DENTON:  Essentially, yes, your Honor.  We have

4    not explored whether there would be distinguishing facts, but I

5    think we're accepting that Judge Berman's process was

6    sufficient to satisfy that the defendant's Sixth Amendment

7    rights were protected.

8              THE COURT:  The government's proposal would be to

9    proceed in that same order with that same set of protections?

10             MR. DENTON:  Yes, your Honor.

11             THE COURT:  Why don't we take that one up first, Mr.

12   Weingarten.

13             MR. WEINGARTEN:  May I use to podium, your Honor?

14             THE COURT:  Sure.

15             MR. WEINGARTEN:  Your Honor, in terms the conflict

16   with a potential conflict issue, we really do take the position

17   that this is much adieu about precious little.  What we're

18   talking about are the fact that there are four banks and they

19   are clearing banks.  In the bookkeeping entries, our client was

20   not a customer at any of these banks.  The bank gained I think

21   about $7 or $8 per transaction.  We learned that these banks

22   can do literally millions of these transactions every day.

23   They take a second.  They are just automatic, electronic

24   transfers.  They are characterized as "potential victims" in

25   the indictment.

1        What it really boils down to -- Steptoe and Johnson

2   represents J P Morgan in something completely unrelated.  One

3   day there may be a J P Morgan guy or woman on the stand and we

4   will cross-examine that person.  We will not know that person.

5   We will never have represented that person.  We won't know that

6   person from Adam.  We anticipate the enormous bulk of the

7   testimony that they elicit from these banks will be

8   ministerial -- what happened?  How did you issue it?  What did

9   you do as a clearing bank?  Period.

10       I suppose it could get a little more complicated if

11  they attempt to establish materiality -- What would you have

12  done had you know that somewhere along the line Iran was in the

13  background?  We are certainly going to object to that testimony

14  as potentially offering a legal opinion; but under any

15  circumstances it is very hard for me to see a real honest to

16  goodness conflict here.  Of course our client has been advised

17  about at least the potential notion that we could pull short on

18  our cross-examination because we don't want to offend a client

19  at the other side of the law firm, and I am prepared to address

20  that with the Court today or at any time the Court wishes it to

21  be addressed.

22       With total respect to Judge Berman, I think he went an

23  extra couple of miles.  Now, to be sure the facts in *Zarrab* and

24  the banks involved and the law firms' relationship with these

25  banks is completely different and much greater than our

1  involvement with the banks in this case.  It really sort of

2  comes down to whether or not this Court will require a waiver

3  from J P Morgan.  To be sure we view ourselves as ethical

4  lawyers and we don't want to be on the wrong side of J P Morgan

5  and we'll engage with them.  We'll discuss with them what our

6  relationship with them is and should be.

7          Let's say they don't want our result.  They have every

8  opportunity to fire us, to never hire us again, to go to the

9  bar against us.  I respectfully suggest it is not an issue that

10 the Court needs to worry about.  The Court needs to worry about

11 whether or not the procedure in this courtroom is appropriate,

12 whether or not our client was protected, and whether or not

13 everything is hunky-dory.  Whether or not we are crossways with

14 J P Morgan, I don't think is included in the mix.

15         To be sure we will engage with J P Morgan.  To be sure

16 we will advise the Court as to where we are on this particular

17 issue.  We're very happy for the Court to engage, question our

18 client as to whether or not he fully understands the

19 implications of our being his lawyer and cross-examining the J

20 P Morgan witnesses.

21         THE COURT:  You object to the requirement of written

22 waiver from J P Morgan?

23         MR. WEINGARTEN:  I don't think it is necessary.

24         THE COURT:  That is an answer to a slightly different

25 question.

1          Do you object to it?

2          MR. WEINGARTEN:  Yes.

3          THE COURT:  There is a lot of stuff that I do that I

4     don't think is necessary but sometimes I think no harm or

5     better safe than sorry.  This seems to me one of those

6     instances.

7          MR. WEINGARTEN:  I get that completely and at a bear

8     minimum, I assume the next time we come to court if the Court

9     will address our client on this issue, we would report.  If

10     something seems wrong with what is going on J P Morgan, we'll

11     advise the Court and the Court could order us to do anything

12     appropriate.

13          My sense is when you look at the weak case and you

14     look at the case where waivers are required from both parties,

15     it is a situation where the same defense attorney represents

16     two defendants.  Obviously you have to get waivers from both

17     where the same defense attorney represents two targets and one

18     flips and one is a defendant and the one who flips is a

19     government witness.  When a lawyer wants to cross-examine

20     somebody who he has represented for five years, obviously you

21     have to go and get both waivers.  Here, we're talking about J P

22     Morgan somebody -- it really comes down to whether or not we're

23     going to pull our punches with the guy on the stand, somebody

24     we don't know, we have never represented, we have never heard

25     of and we'll have the *Jencks* material.  Pure and simple.  That

1    is the story.

2            THE COURT:  So let me try one more time.  Do you

3    object to a requirement of written waiver?

4            There is so many things I have to decide in a given

5    day.  I try to avoid those that I don't.  If I do, I do.  I

6    haven't read the case you just referred to and I haven't looked

7    carefully at *Zarrab*.

8            So do you object to the written waiver requirement for

9    J P Morgan?

10           MR. WEINGARTEN:  Yes.

11           THE COURT:  Then I will look at the issue.

12           You obviously don't object to a Curcio hearing.

13           MR. WEINGARTEN:  No.

14           THE COURT:  And speculating and hypothesizing in front

15   of your client as to the potential conflicts and issues that

16   may arise.

17           What about unconflicted trial counsel?

18           MR. WEINGARTEN:  What about?

19           THE COURT:  The third process Mr. Denton tells me from

20   *Zarrab* was the I suppose requirement of addition of

21   unconflicted counsel.

22           MR. WEINGARTEN:  That is really the issue when you get

23   down to it.  In *Zarrab*, Ben Brafman was co-counsel to the firm

24   and he was there and the bank was okay with his cross-examining

25   the witness because he didn't represent the bank.  We don't

1    have another law firm.  It just seems like a cumbersome process

2    that should not be required.  We're anticipating that is the

3    worst case.  As a matter of principle, the bank is okay with

4    someone from a law firm that was not presently representing and

5    cross-examining the witness in *Zarrab*.  It is very like that

6    that would be satisfactory here.  That seems to us to be the

7    worst case unnecessary.

8         THE COURT:  Mr. Denton, did I interpret you right that

9    the government's position is that to ensure a knowing waiver

10   and protection of the defendant's rights that I should require

11   each of the three things you enumerated; is that the

12   government's position?

13        MR. DENTON:  I think it is the government's position

14   that that would certainly suffice.  I think if the Court were

15   inclined to explore something else, we're operating like I said

16   with a precedent universe of one here.  If we were going to

17   explore other options, we certainly --

18        THE COURT:  To move to the third category, there is

19   not presently any counsel from a firm other than Steptoe.  So

20   the question is:  Is it the government's position that that

21   would be necessary?

22        MR. DENTON:  If I could have a moment, your Honor.

23        (Pause)

24        MR. DENTON:  Again, your Honor, recognizing that we're

25   operating with a limited universe of precedent here, we think

1    the answer is yes, that it should be required.

2            MR. WEINGARTEN:  Can I make a suggestion here?

3            THE COURT:  Sure.

4            MR. WEINGARTEN:  What we will do irrespective of what

5    happens in court is engage with J P Morgan.  We'll have a

6    conversation with them.  In the course of the conversation,

7    they may say this is what we prefer:  We may prefer that you

8    engage another law firm to cross-examine our guy.  We may agree

9    or we may not agree.  What I respectfully ask today is the

10   opportunity to do that and come back to the court next time

11   we're here and report.  The issue may be completely mooted by

12   that conversation.

13           THE COURT:  Why don't we do this, why don't we set a

14   date for a Curcio hearing.  We'll set a date for some period

15   before that in which hopefully you'll submit a joint letter

16   indicating your agreement as to how to proceed.

17           MR. WEINGARTEN:  Yes.

18           THE COURT:  I will make sure that the third person at

19   the party, me, agrees as well.  Or if you disagree, you'll

20   write your basis for your separate suggestions as to how to

21   proceed.  I will ask with that also for purposes of the Curcio

22   hearing the government to submit a proposed script or whatever

23   you want to submit in light of the -- you can submit the

24   transcript from *Zarrab* I suppose if that is the basis for the

25   suggestion as to how to proceed.

1          When would you like to do the Curcio?

2          MR. WEINGARTEN:  I guess working backwards, I think a

3     lot of this will depend on when the trial date is.  Can we do

4     it that way and work backwards?

5          THE COURT:  Well, we can try that.  I want to see

6     where you are in terms of that.  From my perspective I will

7     make room on the calendar.  The question is what needs to be

8     done and realistically can get done between now and trial in

9     light of this landing on me unexpectedly.  Depending on what

10    the parties' position is as to when we should proceed to trial,

11    we might be able to resolve that and work backwards.

12         What is the request and proposal in that regard?

13         MR. WEINGARTEN:  For the hearing or for the trial?

14         THE COURT:  For the trial.

15         MR. WEINGARTEN:  So the trial date is October 21st.

16    We have cleared our decks and we anticipated that would be the

17    trial.  Mr. Heberlig has a trial March 2nd.  I had a trial

18    tragically that is not going to happen now.  I have a potential

19    trial next year.  So we're comfortable moving it back some, but

20    we would like it this year.

21         THE COURT:  Would you include January in this year?

22         MR. WEINGARTEN:  We much prefer December if that is

23    possible.

24         MR. HEBERLIG:  Can I address that, your Honor.

25         THE COURT:  Go ahead.

J8F6NEJC

1          MR. HEBERLIG:  Your Honor, the issue with January is

2     my other trial that starts March 2nd.  It involves a lot of

3     foreign evidence.  The judge in that case, which is the Western

4     District of Washington, has reserved the month of January for

5     the parties to take Rule 15 depositions.  Our cutoff for taking

6     those depositions is the end of January.  I anticipate the bulk

7     of the mouth of January I will be in Asia taking trial

8     depositions.  It is effectively a trial because the way it is

9     structure.

10          THE COURT:  My concern with December is the resolution

11    of what I see as nine pending fully briefed undecided motions.

12    I imagine that this crowd will have some in limine motions.  I

13    have a three-week criminal trial beginning December 2nd, which

14    almost certainly will go.  So that is the reality of where I

15    am.  If I thought for sure we could be trial-ready by December,

16    I would see what I could do.  I would potentially ask a

17    colleague to cover one of the two trials because we have to get

18    to trial when folks want it and it is a priority on the docket.

19    That is just the reality of both what needs to be done and the

20    Court's schedule and your schedules.

21          January it sounds like it is difficult.  I will tell

22    you that February has its only problems.  Again, we can make it

23    work.  March looks beautiful and certainly would ensure us the

24    time to get it done.  As I say, we can make things work when

25    cases are ready to go to trial.

J8F6NEJC

1          MR. WEINGARTEN:  Can I just ask for information

2     purposes about November?

3          THE COURT:  November.  It seems unlikely that we'll be

4     trial-ready in November.  Highly unlikely.  You have asked for

5     a Franks hearing.  I have only flipped through the pages of the

6     motions.  They are going to take some time to resolve.  As I

7     said, you've not even submitted in limine.  I don't see that

8     happening.

9          MR. WEINGARTEN:  May I have one minute with counsel?

10          THE COURT:  Sure.

11          (Pause)

12          THE COURT:  Is the expectation still a three-week

13     trial, Mr. Denton?

14          MR. DENTON:  Yes, your Honor.

15          MR. WEINGARTEN:  I think that is accurate.  So

16     suggestion:  How about we schedule everything but the trial.

17     Mr. Heberlig's defendant is Huawei.  That is an over -- that is

18     a very complicated overall situation.  It could be affected by

19     a thousand different things.  I think we'll know relatively

20     soon.  If we know that Mr. Heberlig's trial is not going to

21     happen in January, that's great.  Mr. Heberlig is incredibly

22     important to this.  I want to try the case with him.  If his

23     trial goes, we'll so report and then we move it to the spring.

24     We schedule everything else and we let you know immediately

25     whether there is clarity on our part and then the alternatives

J8F6NEJC

1    would either be January or in the spring.

2              THE COURT:  What do you imagine is the timing for

3    knowing?

4              MR. WEINGARTEN:  It's so unpredictable.  The Huawei

5    thing is affected by so many difference things.  It could be

6    this afternoon.  You can give us a deadline.  If we don't meet

7    the deadline with a resolution, then it's after Mr. Heberlig's

8    trial.

9              THE COURT:  Do you have a view, Mr. Denton, or are you

10   stretching?

11             MR. DENTON:  Your Honor, I think we would prefer that

12   the Court set a trial date.  If there were a scenario that

13   allowed us to all come back and ask to try to do something

14   sooner, we're certainly not going to oppose that.  I think

15   we're in a tough situation to go to witnesses who we have been

16   telling October and say it is going to be some time but we

17   don't know when.  We would prefer to have something on the

18   calendar.

19             THE COURT:  I am a believer in setting firm trial

20   dates and not moving them.  That is my practice.  I set

21   realistic dates.  I will move heaven and earth to get to it as

22   soon as we can.  The case has to be trial-ready.  I am not sure

23   what is gained.  In my experience waiting to set a trial date

24   only delays one trial it gets set for because in the meantime

25   other things start occupying the calendar.

1        MR. WEINGARTEN:  Perhaps the solution is a short time

2   frame for us to get back to the Court.  Every day different

3   things happen in Huawei that could dramatically affect this.  I

4   am being completely realistic about this trial being affected

5   by external events and then we have the trial in January as

6   apposed to May, which I think will benefit everybody.

7   Otherwise, I guess the solution would be to set the trial deep

8   in the spring and there is a realistic alternative.  If you

9   gave us until Labor Day, I am not sure how people would be

10  prejudiced by that.  We have everything else scheduled.

11       THE COURT:  If we were to go in January, we're talking

12  about starting January 6th.

13       MR. WEINGARTEN:  That's fine.

14       THE COURT:  Let's just work backwards from there.

15  There is any reason not to stay on the same pretrial schedule

16  with respect to -- Judge Carter had you briefing the in limines

17  and the other pretrial materials throughout October.  I suppose

18  one question is is resolution of the pending motions critical

19  to what you are going to file with respect to your in limines?

20       MR. WEINGARTEN:  Yes.

21       MR. DENTON:  Also with respect to what we expect will

22  be contested litigation as to privilege issues.

23       Just with respect to the in limine schedule, your

24  Honor, I think given the holidays if you were inclined to start

25  setting a schedule, we might want to push the dates a little

1    earlier in December so that we can have things briefed before

2    the holidays.

3        THE COURT:  Assuming I can resolve the pending

4    motions, and set aside the privilege issues for a moment

5    because I haven't fully gotten my head around that process, if

6    I can resolve the pending motions by October in October at some

7    point if the briefing on the in limines happens in November,

8    then briefing throughout November would give me December --

9    happy holidays to me -- to resolve the in limines.  That's the

10   basic schedule we're talking about.

11       MR. WEINGARTEN:  Can I ask for one clarification

12   question.  Am I correct that the January 6th date is assuming

13   that the Huawei trial gets pushed or disappears?

14       THE COURT:  Well, my preference would be to set it for

15   March.  You are saying you would like to go in January if could

16   co-counsel's schedule permits.

17       MR. WEINGARTEN:  Mr. Heberlig's trial is in March.  So

18   he couldn't be here under any circumstances if the trial goes.

19       THE COURT:  So the January concern is foreign

20   discovery.

21       MR. WEINGARTEN:  I guess my hope would be that you

22   gave us a firm date to report to the Court whether or not we

23   cleared our decks for January the 6th and if we have not, then

24   we set the schedule consistent with that.  I think it will

25   work.  I don't know if there is a two-week lag that anyone --

J8F6NEJC

1          THE COURT:  That is what you are talking about a week

2     or two to resolve?

3          MR. WEINGARTEN:  Yes.

4          THE COURT:  I really don't think it could take much

5     longer then.  I suppose what I am going to suggest is we set

6     the Curcio hearing for something like a week or two -- time in

7     a week or two.  You have to talk to J P Morgan and work through

8     some issues, and then we come in to that proceeding with

9     counsel having met and conferred and having resolution on

10    Mr. Heberlig's schedule and you'll propose trial dates at that

11    point.

12         I think January is the earliest it could possibly

13    happen in order to be trial-ready and it would be pushing it.

14    I am not going to hold that date and operate because the Court

15    is going to kick into resolving -- the motions need to be

16    resolved anyway.

17         MR. WEINGARTEN:  Okay.

18         THE COURT:  I am not a believer in having fully

19    briefed motions sitting around too long.  So we'll get to them.

20    To keep three weeks on the calendar, it is a lot of real

21    estate.  I will put off for two weeks.

22         MR. WEINGARTEN:  Yes.  That would be fine.

23         THE COURT:  Mr. Denton.

24         MR. DENTON:  Your Honor, I have no problem with that.

25    I do think that date would require everything to happen without

1   any hiccups.  If defense would like to hold that and go through

2   this, that is fine.  They are the ones who have indicated that

3   they are likely to make a motion with respect to privilege.

4   They are the ones who made an additional *Wey* motion in their

5   reply brief.  Some of this is a little bit within their control

6   in terms of how much has to get done before then.

7              THE COURT:  Everything always needs to get done.

8              MR. DENTON:  That's is true.

9              THE COURT:  My chambers motto is the human heart works

10  on deadlines.  So if we have our foot on the gas like trial is

11  going to happen in January and it happens -- sounds like it

12  wouldn't happen in March -- then I am not sure what the

13  downside to that is.  But because the human heart works on

14  deadlines, I want to set a realistic trial date and then not

15  move it.  That is how things in my experience progress forward.

16             So I am not going to set a trial date at this time.

17  We have our eyes on January 6th as a potential trial date,

18  which may be enough to get the case trial-ready, but it will be

19  close.  We'll wait to hear whether the defense is interested in

20  that date or not.

21             If we're not look at January 6th, Mr. Weingarten, what

22  are we looking at?

23             MR. WEINGARTEN:  I missed that last thing.  When

24  should we have the Curcio hearing?

25             THE COURT:  No.  I am curious if you think January 6th

1  is not a good date to proceed, what are you likely to propose?

2          MR. WEINGARTEN:  Again, it turns entirely on

3  Mr. Heberlig's trial.  I very want to try the case with him.  I

4  think that is clearly in the client's interest.  His trial I

5  think will be about three or four weeks and then we're talking

6  about May.

7          MR. HEBERLIG:  It could be closer to five or six

8  weeks, but I still think we can do May.  We have foreign

9  witness translators.  It is a complicated matter, but May will

10  be safe.

11          THE COURT:  I can give you May.  It's wide open.

12          We'll set a final firm trial date in two weeks.  We'll

13  have our Curio hearing on --

14          MR. WEINGARTEN:  Could I make a suggestion on that?

15          THE COURT:  Just a second.

16          MR. WEINGARTEN:  I have something here in New York on

17  the 5th and 6th of September.  If it is possible for to us

18  squeeze it in then, that would be great.

19          THE COURT:  I will not be here.  I can do the 9th.

20  Spend the weekend.

21          MR. WEINGARTEN:  The 4th.

22          THE COURT:  You are moving in the wrong direction.

23          MR. WEINGARTEN:  The 9th.  Did someone suggest the

24  9th?

25          THE COURT:  That's a good idea.  I can do it in the

1      morning or the afternoon.  The morning at 10:00 or 2:00?

2              MR. WEINGARTEN:  See you at 10:00.

3              THE COURT:  Okay.

4              Mr. Denton?

5              MR. DENTON:  That's fine for us, your Honor.

6              THE COURT:  So we'll set our hearing for 10:00.  I

7      would like to hear from counsel by joint letter by

8      September 2nd hopefully with a joint proposal as to how to

9      proceed with respect to everything, including the question of

10     written waiver from J P Morgan, proposed script for the Curcio,

11     and the question of unconflicted trial counsel.

12             MR. DENTON:  We can do that, your Honor.

13             THE COURT:  That takes care of the Curcio hearing.

14             So talk to me about the privilege issue.

15             MR. DENTON:  So there are two nested issues.  The

16     overall privilege issue is that there are unquestionably within

17     the search warrant returns obtained by the government

18     privileged material that contain attorney-client privilege

19     communications. There are also, which is not uncommon, a set of

20     contested communications as to which the government believes

21     either that there is no privilege or to the extent there is

22     one, the crime fraud exception would apply.  That would

23     normally be a fairly straightforward matter.  It is the

24     defendant's burden.  He would make a motion to a certain

25     privilege.  We would respond and the Court could proceed

1    accordingly.

2          A felter team on the government's side has been

3    handling the discovery.  The prosecution team hear can see

4    something of all 500 emails at this point.  The reason why I

5    say there is a nested issue is that the defendant has, like I

6    said, in his reply briefing on the motion for return of

7    property asserted that the government should only be able --

8    any lawyer on government team including the filter lawyers

9    should only be allowed to look at one subset of documents

10   contained in one government discovery production, and they made

11   a *Wey* motion in their reply brief asking the Court to order

12   that.

13         We did not respond to a motion made in the first

14   instance in our reply brief.  They have now taken the position

15   with us that the filter team should not be reviewing anything

16   else for privilege.  So the privilege review has -- I wouldn't

17   say it is halted, but it has certainly slowed significantly and

18   slowed while we sort that issue out.

19         In the first instance there is the defendant's return

20   of property motion.  In the second instance there is the

21   question of whether there should be a motion at all with

22   respect to what emails the government can review if it can

23   retain this property.  We would obviously want a chance to

24   respond to that both on the merits but also where respect to

25   what the appropriate universe should be if the Court were

1   inclined to limit it.

2           Once we have settled those questions, then the

3   defendant can make a motion claiming privilege with respect to

4   certain of the documents that remain which the Court can

5   address.

6           THE COURT:  Okay.  So, Mr. Denton, your position would

7   be once I resolve the return of property motion, we then deal

8   with scheduling briefing on the issues?

9           MR. DENTON:  Yes.  I think assuming that the Court is

10  inclined to allow them to make essentially a secondary

11  application for relief essentially precluding the government

12  from reviewing additional emails --

13          THE COURT:  And the basis for not allowing that motion

14  would be what, that it is untimely, or what?

15          MR. DENTON:  Essentially, yes.  I am assuming that the

16  Court would likely give them leave to make that application.

17          THE COURT:  Fair assumption.

18          MR. DENTON:  We would then need a schedule for that.

19  The government would obviously want to be heard on the

20  question.

21          THE COURT:  Why don't we set a schedule now.

22          MR. DENTON:  We can certainly can do that, your Honor.

23          THE COURT:  What would you propose?

24          MR. DENTON:  Recognizing the possibility that it could

25  be mooted if the Court were to grant their motion for return of

property, I think if the defendant wants to make the

application in the first instance, however much time they want,

we'll take two weeks to respond.  If the Court warrants proceed

by just having us to respond to the last few pages of their

brief, we can probably do that in a couple weeks as well.

THE COURT:  Mr. Heberlig.

MR. HEBERLIG:  Thank you, your Honor.

I think this is far more straightforward than

Mr. Denton is portraying.  We didn't file a separate motion

with our reply brief.  The government opposed our motion for

return of property, which asked to the return of all emails the

government had seized that were not pertinent.  We received

much earlier in discovery the pertinent documents and then

proceeded accordingly.  When we filed that motion asking for

the return of the nonpertinent emails, the government's

opposition represented that there is no need to return those

emails because we the government are not searching or accessing

those nonpertinent documents.

So what we said in reply is we believe that return is

warranted, but if the Court is okay with the government

maintaining possession because they said they needed it for

purposes of authenticity, which I don't think is a real issue,

and we can stipulate to, but in any event if the Court agreed

then at a minimum they needed to precluded from reviewing those

nonpertinent unconstitutionally obtained emails.  It wasn't a

1    new motion by an respect.

2            The government did not respond to our motion seeking

3    return of the nonpertinent emails saying, Well, in fact there

4    are a bunch of the other pertinent emails that we do believe we

5    have access to.  We never heard that until a call last week

6    that we had with the government where we understand now there

7    may be a position on the part of the government that the

8    officers who executed the search warrant deemed some other

9    universe of documents pertinent that we never heard of and have

10   not been represented in the 18 months this case has sat around

11   as discovery that the prosecution team has access to.  So it is

12   all teed and briefed.  I don't think there is any further need

13   for a briefing schedule.

14           MR. DENTON:  Briefly on this.  I think there are

15   obviously two very different issues between whether the

16   government is allowed to retain property and whether the

17   government is allowed to examine the retained property.  The

18   claim in the first instance was the government shouldn't have

19   this at all.  We represented accurately in that that the

20   prosecution team had not been reviewing material and had not

21   been searching for additional documents.  That certainly is not

22   to say that the government is limited in its ability to search

23   for documents responsive to an appropriately specific warrant.

24   I think that is an issue that we would have to address.

25           Obviously the Court nose this was something that took

J8F6NEJC

1    a lot of briefing and a lot off different issues in *Wey*.  I am

2    not suggesting we would be in that kind of territory here.  We

3    don't have a lot of those issues.  Also in describing what is

4    pertinent, defense counsel has chosen to select one production

5    of discovery that was made to predecessor counsel as the

6    universe of pertinent documents.  We would certainly want to

7    provide the Court with information about when and how certain

8    of the documents that have been produced to the defense in

9    discovery were identified as pertinent.

10       So I think there is a separate issue over what the

11   universe should be if the Court is inclined to grant this

12   limitation.  I think there are some issues that would need be

13   to addressed here.

14       MR. HEBERLIG:  We didn't decide on our own what the

15   universe was.  They were produced by the government and

16   represented to be the pertinent nonprivileged documents.  We

17   have discovery letters that we can happy and easily provide to

18   the Court.  The suggestion that five years after a search

19   warrant has been executed the government can now conduct

20   searches to determine what was responsive to the warrant is

21   completely inaccurate and inconsistent with the Court's ruling

22   in *Wey*.  That is just not allowed.

23       THE COURT:  Why don't I read the briefs.  Depending on

24   whether I want more briefing on the issue in light of what has

25   been teed up in the responses or following resolution of that

1    need more briefing, we'll set a schedule.

2          MR. DENTON:  That's fine.  Your Honor, to the extent

3    that any additional exhibits in terms of the discovery

4    communications would be helpful, we can provide that separate

5    from any briefing schedule as well.

6          THE COURT:  All right.  I think to be honest depending

7    on how this goes, January may not be totally realistic; but as

8    I say, there is no harm in acting as though at least now that

9    that is a likely possibility.

10          So we set our Curcio.  We will set the schedule on the

11   remaining pretrial materials once we set our trial date; but if

12   we're looking at January, then I think the existing schedule

13   would be pushed off by a month so that I have got full briefing

14   on pretrial materials by November.  To the extent I can get

15   those resolved quickly so you have that guidance in advance of

16   trial, all the better.

17          What else?

18          MR. DENTON:  Nothing further from the government, your

19   Honor.  We would note that time was already excluded through

20   the October trial date.  So I don't think we need to address

21   that now and we can take it up further on the 9th.

22          theco:  Mr. Weingarten.

23          MR. WEINGARTEN:  I am not clear on when we should

24   advise you as to the status of the Huawei situation.  Can it

25   await when we have the privilege of next being in court?

J8F6NEJC

1          THE COURT:  So you are going to submit a letter on the

2    Curcio on September 2nd so it should be included in that.

3          MR. WEINGARTEN:   September 2nd is Labor Day.  So maybe

4    September 3rd?

5          THE COURT:  Yes, September 3rd.

6          Anything else?

7          We're adjourned.

8                                    o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25