

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 9, 2019

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

    The Government respectfully submits this letter pursuant to the Court's November 25, 2019, request that the Government provide a page-by-page analysis of when each page in the 417 documents (the "417 Documents")[1] that were produced to the defendant in discovery in May 2018 was identified as responsive to the search warrants in this case. For the reasons that follow, the Government submits that the Court should deny the defendant's motion to suppress and permit the Government to rely on 2,978 of the 3,104 pages constituting the 417 Documents. These pages were identified for seizure pursuant to the warrants by April 2017, or are pages for which Sadr has no standing to seek suppression.

    **I.**    **Background**

    The Government has completed its analysis of each page contained in the 417 Documents and believes that the results demonstrate that the procedures used to seize these documents were consistent with the Fourth Amendment. As the Government detailed in its October 30, 2019 memorandum in opposition (the "Government's Opposition") to the defendant's motion to suppress, the Manhattan District Attorney's Office ("DANY") reviewed the provider data it received pursuant to warrants to search 37 electronic accounts, seven of which belonged to the defendant (the "Sadr Accounts"), and 30 of which belonged to third parties (the "Non-Sadr Accounts"). During this review, DANY identified the materials to be seized pursuant to the warrants by, among other methods, printing the documents, saving the documents as PDFs to

---

[1] The 417 Documents were referenced in the parties' briefing as the "May 2018 Pertinent Documents" or the "420 Documents." The parties agreed that three of the documents were subject to spousal privilege, and they therefore have been removed from the universe the Government analyzed.

folders in the DANY network drive, and identifying the documents in internal emails, timelines, memos, and other work product.

DANY's review pursuant to the warrants was completed by April 2017, and DANY delivered to the U.S. Attorney's Office (the "USAO") a set of hard-copy binders (the "USAO Binders") containing documents and portions of documents that DANY had identified for seizure and characterized as "hot documents." As discussed in the Government's Opposition, some of the documents in the USAO Binders were portions of complete documents – for example, a parent email without its attachment, or a parent email with some of its attachments but not others. At times between April 2017 and when the Government produced discovery in May 2018, DANY paralegals were instructed to query the data obtained by DANY from providers pursuant to the search warrants to retrieve complete versions of documents that previously had been identified for seizure pursuant to the warrants, or to query the database to retrieve documents that members of the DANY team had previously identified for seizure but had not yet segregated. The DANY team also conducted some limited, new searches in the database, including to retrieve documents responsive to Sadr's bail motion.

**II.    Findings**

In response to the Court's inquiry, the Government reviewed each of the 3,104 pages in the set of 417 Documents and sought to determine the approximate timeframe in which each page was initially identified by DANY as being subject to seizure during review of the provider data. In connection with its review, the Government reached the following conclusions, which fit roughly into 13 categories, with respect to 2,978 of the 3,104 pages in the set of 417 Documents:

1. <u>USAO Binders</u> – 1,590 of the pages in the set of 417 Documents were also located in the current versions of the USAO Binders, which DANY provided to the USAO in April 2017.[2]

2. <u>April 2017 or Earlier PDF Date Modified</u> – 385 of the pages in the set of 417 Documents are currently located in DANY's electronic folders and have an electronic "modified" date of April 2017 or earlier. The "modified" date generally reflects the last time the file was saved, printed to PDF, or otherwise altered by, for example, converting the PDF to a text-searchable file.

3. <u>April 2017 or Earlier Print Date</u> – 63 of the pages in the set of 417 Documents contain a physical "print date" in or before April 2017, which is printed on the bottom of the page and indicates when the page was either printed to PDF or in hard copy. These

---

[2] The USAO Binders that DANY provided to the USAO in April 2017 do not reflect the entire universe of documents DANY had seized by that point. The USAO Binders contain only a subset of those documents, which DANY viewed as the "hot" documents. When DANY created the May 2018 discovery production for defense, it included many of the documents that it had already provided to the USAO in the USAO Binders, as well as other documents that DANY had identified as responsive but had not previously provided to the USAO.

    print dates either appear at the bottom of the page in the May 2018 production, or appear on an identical document located in DANY's electronic or hard copy folders.

4. <u>Identical Content Identified by April 2017</u> – The contents of 26 pages, which come from three emails, were identified for seizure by April 2017 but in a somewhat different format than what was produced in the 417 Documents. Two of the three documents have identical content in the identified version and the produced version, but that content fits on a different number of pages in each version. In the third document, the print appears to be different sizes in the identified and produced versions.

5. <u>Attachment - Identified Parent Email by April 2017</u> – 184 of the pages in the set of 417 Documents are from email attachments where DANY identified for seizure the parent email by April 2017, but where DANY has not found evidence that it specifically identified the attachments by April 2017.

6. <u>Attachment - Identified Related Parent Email by April 2017</u> – 188 of the pages in the set of 417 Documents are from email attachments where a related version of the parent email was identified for seizure by April 2017. Specifically, the Government found evidence that, for 57 pages of attachments, a version of the parent email containing fewer messages in the email chain than were contained in the version that was ultimately produced was identified by April 2017. The Government found evidence that, for 131 pages of attachments, a version of the parent email containing more messages in the email chain than were contained in the version that was ultimately produced was identified by April 2017.

7. <u>Identified Related Version by April 2017</u> – 46 of the pages in the set of 417 Documents are pages from emails for which a related version of the email was identified for seizure by April 2017. Specifically, 33 of the pages are from email threads where DANY identified by April 2017 a version of the email thread containing fewer messages than ultimately were produced as part of the 417 Documents. Five of the pages are from email threads where DANY identified by April 2017 a version of the email exchange containing fewer messages than were ultimately produced as part of the 417 Documents, and which were referenced in an internal memo and an internal timeline DANY created by April 2017. Eight of the pages are from emails where DANY identified by April 2017 a version of the email thread containing more messages than ultimately were produced as part of the 417 Documents.

8. <u>Identified Related Version and Attachment by April 2017</u> – Six of the pages in the set of 417 Documents are from four parent emails for which a version of the parent email with fewer messages than contained in the produced version and its attachment(s) were identified for seizure prior to April 2017.

9. <u>Parent Email - Attachment Identified by April 2017</u> – One of the pages in the set of 417 Documents is the parent email to an attachment that DANY identified prior to April 2017.

10. <u>Other Portions of Document Identified by April 2017</u> – Four of the pages in the set of 417 Documents are excerpts from a document from which other pages were identified for seizure by April 2017.

11. <u>Referenced in Document Created by April 2017</u> – 36 of the pages in the set of 417 Documents are from documents that were identified in DANY work product that was created prior to April 2017, based on their evidentiary value in the ongoing investigation, which demonstrates that those pages had been identified for seizure pursuant to the search warrants prior to April 2017. One of the pages was attached to an email an individual at DANY sent prior to April 2017.

12. <u>Non-Sadr Document</u> – 440 pages from the set of 417 Documents are from Non-Sadr email accounts.

13. <u>Subpoena Return</u> – 9 pages from the set of 417 Documents were obtained pursuant to a grand jury subpoena rather than a search warrant.

In summary, the Government has categorized 2,978 of the 3,104 pages in the set of 417 Documents as follows:[3]

|    | **Category** | **Page #** |
|----|---|---|
| 1  | Contained in USAO Binders | 1590 |
| 2  | April 2017 or Earlier PDF Date Modified | 385 |
| 3  | April 2017 or Earlier Print Date | 63 |
| 4  | Identical Content Identified by April 2017 | 26 |
| 5  | Attachment - Identified Parent Email by April 2017 | 184 |
| 6  | Attachment - Identified Related Parent Email by April 2017 | 188 |
| 7  | Identified Related Version by April 2017 | 46 |
| 8  | Identified Related Version and Attachment by April 2017 | 6 |
| 9  | Parent Email - Attachment Identified by April 2017 | 1 |
| 10 | Other Portions of Document Identified by April 2017 | 4 |
| 11 | Referenced in Document Created by April 2017 | 36 |
| 12 | Non-Sadr Document | 440 |
| 13 | Subpoena Return | 9 |

---

[3] Where the Government found multiple sources supporting the conclusion that a page was identified in or before April 2017, it has not cited every source. For example, a page in the April 2017 USAO Binders that has a print date on the bottom of the page indicating that it was printed in 2016 may be classified as either "USAO Binder" or "April 2017 or Earlier Print Date." In addition, all confirmed Non-Sadr pages have been classified as Non-Sadr, even if they were in the USAO Binders.

### III. Argument

The Court should deny the defendant's motion to suppress with respect to the 2,978 pages from the 417 Documents described above. DANY identified the vast majority of those pages for seizure pursuant to the warrants by April 2017. The arguments set forth in the Government's Opposition establish the reasonableness of the search that led to the identification of these documents, and the Government should be permitted to use this evidence at trial. The Government will not rely on the 126 pages from the set of 417 Documents for which it could not locate evidence that the pages were identified for seizure by April 2017.

The Government's analysis demonstrates that a total of 2,064 individual pages were identified for seizure by April 2017 in connection with reasonable searches conducted pursuant to the warrants. *See, e.g., United States v. Mendlowitz*, 17 Cr. 248 (VSB), 2019 WL 1017533, at *11 (S.D.N.Y. Mar. 2, 2019) ("I find that the Government exercised the appropriate diligence by beginning its review in approximately October 2015, two months after the execution of the Search Warrant and after the relevant portions of the hard drives had been copied onto text-searchable software platforms, and completing the review before the return of the Indictment in April 2017."). This includes pages that match pages from the USAO Binders, pages with an April 2017 or earlier PDF date modified, pages with an April 2017 or earlier print date at the bottom of the page, and pages with identical content that was identified by April 2017, but which was produced in a slightly different format.

Separately, an additional 449 pages are not subject to challenge by Sadr because they are confirmed Non-Sadr documents (440 pages) or because they are part of a subpoena return (nine pages).

The remaining 465 pages, the which are part of email threads and attachments that DANY identified by April 2017, or were referenced in DANY work product created by April 2017, but for which the Government has not found evidence that the specific pages were segregated by that time similarly should not be subject to suppression. This is because there is no constitutional requirement that entire documents be segregated once they are identified as responsive to a search warrant, and a suppression remedy is not warranted based on the Government's inability to re-create every step of a lengthy and complicated review that was completed more than two years ago. Judge Rakoff's opinion in *United States v. Lumiere*, 16 Cr. 483 (JSR), 2016 WL 7188149 (S.D.N.Y. Nov. 29, 2017) is instructive on this point. In *Lumiere*, the defendant moved to suppress search warrant evidence based on "the Government's purported failure to 'segregate' documents within the scope of the warrant from documents outside the scope of the warrant." *Id.* at *3. "The Court rejected [the defendant's] attempt to constitutionalize document review procedures" in this way. *Id.* at *5; *see also Mendlowitz*, 2019 WL 1017533, at *12 (noting that "the Warrant did not require any specific procedure for review of the ESI"). The Court reasoned that the agents had satisfied the Fourth Amendment because they "review[ed] the seized devices for responsive evidence" and "identified" that evidence. *Lumiere*, 2016 WL 7188149, at *3. That the responsive, identified evidence was not also segregated was not material to the Court's analysis. The Court was satisfied that the reviewing agent in that case "relied on remembering the locations of particular records" and could "instruct forensic examiners to retrieve records they want to review

in further detail." *Id.* "[T]hose methods did not strike the [*Lumiere*] Court as constitutionally unreasonable." *Id.*

The search methodology used in this case was more comprehensive than the methodology that Judge Rakoff concluded was sufficient under the Fourth Amendment in *Lumiere*. Here, the reviewers identified the documents that could be seized pursuant to the warrants, in some instances by reference to portions, or earlier or later versions, of the documents or email threads. However, because of practical challenges associated with the scale of the search and the technological limitations of several of the review platforms used by DANY (discussed in detail in the Government's Opposition), DANY personnel did not consistently segregate every page of the documents identified for seizure. Instead, they printed and/or saved the most relevant documents or portions of documents, or memorialized their findings in internal emails, timelines, and memos, which specifically referenced various emails and attachments they had identified as responsive. Later, before producing discovery in May 2018, some reviewers were instructed to retrieve in their entirety certain documents that were previously identified for seizure – the precise method that Judge Rakoff blessed as constitutionally valid in *Lumiere*.[4] In other words, here, documents and pages that were identified in searches for seizure by April 2017, regardless of whether they also were segregated by that time, should not be subject to suppression as the fruits of a constitutionally unreasonable search.

### IV. Conclusion

For the foregoing reasons, the Court should deny the defendant's motion to suppress and permit the Government to rely on the 2,978 pages that were identified as responsive to the warrants by April 2017, or for which Sadr has no standing to seek suppression.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
   Assistant United States Attorneys
Garrett Lynch
   Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

---

[4] Even if this Court were to conclude that retrieving un-segregated portions of documents that had been identified as responsive during DANY's responsiveness review violates the Fourth Amendment, the Government submits that the good faith exception counsels against suppression for the reasons set forth in the Government's Opposition.