**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

ALI SADR HASHEMI NEJAD,

*Defendant*.

Case No. 18 Cr. 224 (ALC)

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT ALI SADR HASHEMI NEJAD'S MOTIONS IN LIMINE**

Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

Brian M. Heberlig (Pro Hac Vice)
Bruce C. Bishop (Pro Hac Vice)
David M. Fragale
Nicholas P. Silverman (Pro Hac Vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 429-3000
Fax: (202) 429-3902
bheberlig@steptoe.com

*Counsel for Defendant*
*Ali Sadr Hashemi Nejad*

Dated:  December 20, 2019

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ....................................................................................................... 1

I.     THE COURT SHOULD PROHIBIT EVIDENCE OR ARGUMENT USING THE TERMS "SHELL COMPANY" OR "FRONT COMPANY" ................................. 1

II.    THE COURT SHOULD PROHIBIT THE GOVERNMENT FROM USING AN FBI OVERVIEW WITNESS ............................................................................ 4

III.   THE COURT SHOULD PROHIBIT THE GOVERNMENT FROM ASKING GUILT-ASSUMING HYPOTHETICAL QUESTIONS .................................................. 8

       A.    The Court Should Exercise Its Inherent Control Over The Mode Of Examining Witnesses To Bar The Use Of Hypothetical Questions That Assume Sadr's Guilt ................................................................. 9

       B.    The Probative Value Of A Witness's Speculation In Response To Guilt-Assuming Hypothetical Questions Is Substantially Outweighed By The Danger Of Unfair Prejudice And The Potential To Mislead The Jury ................. 11

CONCLUSION ...................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co.*,
   No. 04-cv-10014, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ............................................3

*Cain v. Trans World Airlines*,
   549 F. Supp. 963 (S.D.N.Y. 1982).....................................................................................11, 12

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008)......................................................................................3

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017)......................................................................................2

*United States v. Barnwell*,
   No. 15-cr-620 (NSR), 2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017) ....................................6

*United States v. Brooks*,
   736 F.3d 921 (10th Cir. 2013) .................................................................................................5

*United States v. Casas*,
   356 F.3d 104 (1st Cir. 2004)....................................................................................................5

*United States v. Crabbe*,
   556 F. Supp. 2d 1217 (D. Colo. 2008).....................................................................................2

*United States v. Cuti*,
   720 F.3d 453 (2d Cir. 2013).............................................................................................10, 11

*United States v. Damblu*,
   134 F.3d 490 (2d Cir. 1998)...................................................................................................12

*United States v. Flores-De-Jesus*,
   569 F.3d 8 (1st Cir. 2009).....................................................................................................6, 7

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005)......................................................................................... *passim*

*United States v. Griffin*,
   324 F.3d 330 (5th Cir. 2003) .................................................................................................5, 7

*United States v. Moore*,
   651 F.3d 30 (D.C. Cir. 2011)................................................................................................6, 7

*United States v. Oshatz*,
   912 F.2d 534 (2d Cir. 1990)..................................................................13

*United States v. Paccione*,
   949 F.2d 1183 (2d Cir. 1991)................................................................13

*United States v. Reifler*,
   446 F.3d 65 (2d Cir. 2006)....................................................................11

*United States v. Russo*,
   110 F.3d 948 (2d Cir. 1997)..................................................................13

**Other Authorities**

28 Charles Alan Wright & Victor J. Gold, *Federal Practice & Procedure* ...................................9

# INTRODUCTION

Defendant Ali Sadr Hashemi Nejad respectfully moves *in limine* to preclude and limit

certain evidence and arguments:

1.      To prohibit evidence or argument using the terms "shell company" or "front company";

2.      To prohibit the government from using an FBI overview witness; and

3.      To prohibit the government from asking guilt-assuming hypothetical questions of witnesses.

## I.      THE COURT SHOULD PROHIBIT EVIDENCE OR ARGUMENT USING THE TERMS "SHELL COMPANY" OR "FRONT COMPANY"

The Court should prohibit the government from eliciting testimony or making any

argument that characterizes either of the companies that Sadr allegedly appointed as payment

agents for the Iranian International Housing Corporation—Clarity Trade and Finance ("Clarity")

or Stratus International Contracting, J.S. ("Stratus Turkey")—as a "shell company," "front

company," or any similarly inflammatory term.  These terms have no evidentiary value, and

serve no purpose other than to insinuate illegality.  Such pejorative, inflammatory labels should

be excluded under Federal Rule of Evidence Rule 403.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it

would be without the evidence," and "the fact is of consequence in determining the action."  Fed.

R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  The Court may

exclude even "relevant evidence if its probative value is substantially outweighed by a danger of

. . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.

Pejorative labels like "shell company" or "front company" are not relevant evidence, and should

be excluded.  The government may prove facts about the nature of the companies at issue

without inserting argument and insinuating illegality by using nefarious-sounding terms.  Even if

1

they had any marginal relevance, such accusative terms inject unfair prejudice that far outweigh

any probative value that might be imagined.

"[C]ourts often prohibit the use of certain 'pejorative terms when such categorizations

[are] inflammatory and unnecessary to prove a claim' and such statements 'do not bear on the

issues being tried.'" *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d

558, 570 (S.D.N.Y. 2017) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co.*, No. 04-cv-

10014, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009)).  Terms such as "shell company"

and "front company" are squarely among the terms routinely so excluded.

In *United States v. Watts*, for example, the court precluded the government from arguing

or eliciting from any witness that a corporation at issue in the case was a "shell company" or

"shell corporation," because those terms "could be perceived to have a pejorative meaning" and

have "no evidentiary value."  934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013).  Similarly, in *United

States v. Powers*, the court prohibited the government from using the term "shell company" in its

closing statement, holding that "the Government need not use the vague term, but instead may

make its point about [the company] clear by means of pointing to the relevant evidence and

drawing its intended conclusions in clearly defined, appropriate terms."  No. 09-cr-3065 (MCA),

2011 WL 13108128, at *11 (D.N.M. Mar. 30, 2011); *see also United States v. Crabbe*, 556 F.

Supp. 2d 1217, 1230-31 (D. Colo. 2008) (precluding expert testimony in a tax evasion case that a

corporation was a "shell company with no substantive business activity" because there is no

generally accepted definition of the term "shell company" and the proffered testimony was merely the agent's unreliable, subjective opinion).[1]

In this case, the government has freely used these pejorative labels to bolster its arguments in pretrial pleadings. *See, e.g.*, Dkt. No. 108, at 34-35 (accusing Sadr and/or his co-conspirators of instructing others "to list the aforementioned *front companies* in wire instructions, rather than the IIHC") (emphasis added); *id.* at 18 ("From that point forward, Sadr took steps to receive U.S. dollar payments through *shell companies*, including by incorporating Clarity and Stratus Turkey.") (emphasis added); *id.* at 30 (arguing that Sadr concealed information from U.S. banks by using "multiple *front companies*") (emphasis added). The government has made similar arguments at pretrial hearings. *See* Dkt. No. 160, at 14-15 ("[T]he government's position is that all of those payments, which were structured in a way to go through U.S. banks in order for Stratus to receive payment in U.S. dollars, and then were sent to *shell companies*, located in Switzerland and Turkey, are violations of the ITSR. It can't be that . . . under these regulations, the only thing you have to do to evade or avoid a violation of sanctions is that you create a *third-party shell company* in another country, . . . and then receive payments into that *shell company* . . . .") (emphasis added).

The Court should prohibit the government from using such derogatory labels before the jury, by arguing or eliciting from any witness that Clarity or Stratus Turkey was a "shell

---

[1] Courts have prohibited similar pejorative and derogatory labels as irrelevant and prejudicial. *See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, No. 04-cv-10014, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (precluding use of "tax haven," and cautioning the parties against using "inflammatory terms and making derogatory statements that do not bear on the issues being tried"); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 193 (S.D.N.Y. 2008) (prohibiting parties from "characteriz[ing] admissible evidence and testimony as 'securities fraud,' 'illegal,' 'insider trading,' 'inside information,' and 'market manipulation'").

company," "front company," or any similar term.  Such shady-sounding terms have no evidentiary value, and no likely or intended effect other than to insinuate criminality, by accusatory label rather than evidence.

The government of course is free to elicit *evidence* about the incorporation and use of Clarity and Stratus Turkey and the surrounding circumstances.  Sadr expects that evidence will show that Clarity and Stratus Turkey were real companies that did substantial business independent of the Venezuela housing project at issue in the Indictment.  If that is the case, "shell" or "front" assertions would be improper for the additional reason that they mischaracterize the evidence.  If the government can prove that Clarity and Stratus Turkey had no purpose other than to serve as middleman payment agents for the Iranian International Housing Corporation, then it is free to elicit and argue those facts.  But it should be prohibited from making its case through pejorative labels rather than evidence, by characterizing the companies as "shell corporations" or "front companies" in questions, witness testimony, or argument.

## II.    THE COURT SHOULD PROHIBIT THE GOVERNMENT FROM USING AN FBI OVERVIEW WITNESS

The Second Circuit has "condemn[ed]" prosecutors' use of overview witnesses to testify on disputed issues, because of the potential unfair prejudice to the defendant.  *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005).  Allowing a law enforcement witness to give the government's view of disputed issues in this case in the guise of an overview or summary— especially at the outset, before any evidence is in—would effectively allow the government a second opening statement, place the imprimatur of the FBI on contested issues at trial, and

improperly color the jury's view of subsequent evidence and testimony.  The Court should prohibit the government from using such a witness to preview or sum up its case.

In *Garcia*, the Second Circuit "condemn[ed] the practice of having a case agent offer a summary opinion as to culpability before any evidence to support such a conclusion has been presented for jury review."  413 F.3d at 214 (holding even if the disputed testimony were considered summary evidence, such testimony would be improper and therefore not qualify as "helpful" to the jury).  The Second Circuit reached this conclusion after recognizing that other jurisdictions have similarly condemned the use of summary witnesses.  *Garcia*, 413 F.3d at 214 (citing *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003); *United States v. Casas*, 356 F.3d 104, 119 (1st Cir. 2004)).

In *Griffin*, the Fifth Circuit "unequivocally condemn[ed]" the use of an overview witness "as a tool employed by the government to paint a picture of guilt before the evidence has been introduced."  324 F.3d at 349.  The First Circuit has described several reasons the practice is "inherently problematic":

> [S]uch testimony raises the very real specter that the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence.  There is also the possibility that later testimony might be different than what the overview witness assumed; objections could be sustained or the witness could change his or her story.  Overview testimony by government agents is especially problematic because juries may place greater weight on evidence perceived to have the imprimatur of the government.

*Casas*, 356 F.3d at 120.  Other circuits have reached the same conclusion.  *See United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013) ("[P]otential problems include the government's ability (1) to spin the evidence in its favor before it is admitted (assuming it is ever admitted), (2) to give its official imprimatur to certain evidence, and (3) to allow its witnesses (usually law enforcement) to testify on matters about which they have no personal knowledge or that are

based on hearsay."); *United States v. Moore*, 651 F.3d 30, 60 (D.C. Cir. 2011) ("Overview testimony offers [the prosecution] an opportunity to poison the jury's mind against the defendant or to recite items of highly questionable evidence.") (citation and internal quotation marks omitted).

Like all witnesses, FBI agents who testify for the government may do so based only on personal knowledge, not hearsay.  Fed. R. Evid. 602, 802.  Rule 403 allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The probative value of testimony from an overview witness in this case is nil.  A summary witness is inappropriate when there is not yet any evidence to summarize.  *See Garcia*, 413 F.3d at 214; *United States v. Barnwell*, No. 15-cr-620 (NSR), 2017 WL 1063457, at *2 (S.D.N.Y. Mar. 20, 2017).  The jury will decide the issues in this case based on testimony from witnesses with first-hand knowledge of the charged events.  Testimony from an overview witness who neither participated in nor oversaw any of the charged conduct can add nothing except for the government's gloss on the case before any substantive evidence comes in.

Even if overview testimony could have any probative value, it would be substantially outweighed by unfair prejudice to Sadr.  "Roadmap" testimony from a law enforcement witness would be nothing less than a second opening statement for the prosecution.  *See Garcia*, 413 F.3d at 214 ("The law already provides an adequate vehicle for the government to 'help' the jury gain an overview of anticipated evidence as well as a preview of its theory of [the] defendant's culpability: the opening statement."); *United States v. Flores-De-Jesus*, 569 F.3d 8, 17, 19 (1st Cir. 2009) (the government should not receive "an additional opportunity to present its case in a

tidy package" through "an overview witness who simply anticipates the testimony of other government witnesses."). The government may not use an overview witness to put before the jury a second time, this time in the guise of "evidence," its theory on disputed allegations.

Allowing overview testimony on disputed issues would also invite the jury to substitute the overview witness's account for that of trial witnesses with first-hand knowledge of the charged events. The jury may be unduly swayed by the overview witness's version and defer to it, thereby abdicating the jury's exclusive role as finder of the facts. *See Garcia*, 413 F.3d at 215 ("[W]hen a jury hears that an agent's opinion is based on the total investigation, there is a risk that it may improperly defer to the officer's opinion, thinking his knowledge of pertinent facts more extensive than its own") (citing *United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004)); *Griffin*, 324 F.3d at 349 ("Allowing that kind of testimony would greatly increase the danger that a jury might rely upon the alleged facts in the overview as if those facts had already been proved, or might use the overview as a substitute for assessing the credibility of witnesses that have not yet testified.") (internal quotation marks and citation omitted).

An FBI overview witness would also impermissibly place the imprimatur of that agency on disputed allegations. An FBI agent wears the mantle of not only the federal government but also its chief investigative agency. Giving an FBI agent the first word may improperly sway the jury to resolve subsequent disputes, conflicts in evidence, and credibility questions in the government's favor because the agent has purportedly examined the issues and resolved any debate. *Garcia*, 413 F.3d at 215; *Griffin*, 324 F.3d at 349; *Moore*, 651 F.3d at 60; *Flores-De-Jesus*, 569 F.3d at 17-19 (describing the "inescapable" "imprimatur problem," including how an agent's overview testimony serves as "an endorsement of the veracity of the testimony that will

follow"). Such testimony again threatens to usurp the jury's role. *Garcia*, 413 F.3d at 215 (citing *Grinage*, 390 F.3d at 749).

The government already has an opportunity to give the jury an overview of its case: the opening statement. *Garcia*, 413 F.3d at 214. Any probative value of a second overview from an FBI agent is far outweighed by unfair prejudice to Sadr. The Court should prohibit such overview testimony under *Garcia* and Rules 602, 802, 403, and 611(a).

## III.   THE COURT SHOULD PROHIBIT THE GOVERNMENT FROM ASKING GUILT-ASSUMING HYPOTHETICAL QUESTIONS

The government anticipates its witnesses will testify that if the banks "had known all of the facts about certain transactions for the benefit of [Sadr], [his] companies, [his] employees, or [his] agents, [they] would not have engaged in those transactions."[2] Although witnesses may testify about facts within their knowledge to establish materiality, the government should not be permitted to ask questions that contain baked-in assumptions about Sadr's guilt.

For instance, it may be appropriate to ask a bank employee if a fact in evidence (*e.g.*, that an entity's name was "Iranian International Housing Company" as alleged in Ind. ¶ 16.bb) would have been important to the bank's decision making. But it would *not* be appropriate to ask a question that assumes an element the government must prove beyond a reasonable doubt (*e.g.*, "Would you have approved this payment if you knew it violated U.S. sanctions?"). That is true for questions that assume disputed legal interpretations of sanctions regulations (*e.g.*, "Would you have approved this transaction if you knew that the benefit of the transaction was received by a person in Iran?"), or questions that assume disputed facts suggesting guilt (*e.g.*, "Would you

---

[2] Letter from David W. Denton Jr. et al. to Hon. Alison J. Nathan (Sept. 3, 2019) (Docket No. 127) (attaching proposed *Curcio* script).

have approved this transaction if you knew the money was going to an Iranian-owned company?").  This Court should enter an order precluding such guilt-assuming questions.

## A.  The Court Should Exercise Its Inherent Control Over The Mode Of Examining Witnesses To Bar The Use Of Hypothetical Questions That Assume Sadr's Guilt

Federal Rule of Evidence 611(a) gives the Court broad power to prevent questioning that may mislead the jury.[3]  A question is misleading if it tricks the witness into assuming facts that have not been proven, or mischaracterizes evidence presented earlier.  *See* 28 Charles Alan Wright & Victor J. Gold, *Federal Practice & Procedure (Evidence)* § 6164 (2d ed. 2012).  Not only are such questions suggestive (particularly with a friendly witness), but they present the danger that both the witness and the jury may assume those facts to be true, "based solely on the unverified assertion of the [questioner]."  *Id.*  Such guilt-assuming predicates sidestep the presentation of evidence and allow the government to "sum up" in the middle of its case by presenting its theory of guilt as predicates to be taken as true.  *See* Fed. R. Evid. 705 advisory committee's notes to 1972 proposed rules (noting hypothetical questions have long "been the target of a great deal of criticism as encouraging partisan bias, affording the opportunity for summing up in the middle of the case, and as complex and time consuming").

The Federal Rules of Evidence give the Court broad power to manage the "mode and order of examining witnesses and presenting evidence" to make "those procedures effective for determining the truth."  Fed. R. Evid. 611(a).  Guilt-assuming hypothetical questions undermine determining the truth by assuming the government's theory, suggesting it to the witness, and suggesting to the jury the government's version has already been established, relieving the

---

[3] *Id.* ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth.").

government of the burden of *proving* so.  They also permit the government to present conclusions and argument during the presentation of evidence.  Because guilt-assuming hypotheticals are contrary to effective determination of the truth, they should be precluded.

The Second Circuit's decision in *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013), does not hold differently.  Although *Cuti* approved the use of certain hypothetical questions to auditors who had firsthand knowledge of the facts, it emphasized that those questions "made no assumption of guilt."  *Id.* at 460.  On the contrary, "[t]he district court took pains to limit the hypotheticals to the impact of the withheld information and barred the witnesses from speaking to the wrongfulness of the defendants' actions, leaving that analysis to the jury."  *Id.* at 461.

The hypothetical questions allowed in *Cuti* were narrowly cabined to focus on the witnesses' personal perception and avoid calling for speculation.  *Id.* at 458-59.  For example, a witness was asked:

> Q. Which documents were you not shown in connection with the audit of the $2.1 million payment?
>
> A. We were not provided a copy of the modification agreement where we just discussed the proposed purchase and sale involving Blue Trophy of that site, and we were not provided a copy of the lease agreement.
>
> Q. Had you been shown all these documents, how would it affect the accounting?
>
> A. The information included in the documents that we were not provided, include significant facts critically important to determine what the appropriate accounting is . . . .

Apr. 29, 2010 Tr. at 2465:1-16, *United States v. Cuti*, No. 11-3756, Dkt. No. 104 at A-1563 (2d Cir.).  Thus, the witness himself first established that he did not receive a particular document, and was then allowed to address the limited question of that document's potential impact on his accounting approach.  In contrast, the *Cuti* trial court rebuked the government when it asked a

10

different witness, "What if you had learned that [particular deals] didn't have economic substance?"  May 12, 2010 Tr. at 3686:4-3687:14, *United States v. Cuti*, No. 11-3756, Dkt. No. 107 at A-2464 to A-2465 (2d Cir.).

Here, the government intends to call one or more general bank witnesses who (unlike the witnesses in *Cuti*) had no first-hand involvement in the transactions at issue.  Though they may testify about bank policies and practices, the government should not be allowed to ask them to apply those policies or practices to hypothetical facts outside their knowledge.  At the very least, the government should be precluded, as it was in the *Cuti* trial court, from asking guilt-assuming hypothetical questions.

**B.      The Probative Value Of A Witness's Speculation In Response To Guilt-Assuming Hypothetical Questions Is Substantially Outweighed By The Danger Of Unfair Prejudice And The Potential To Mislead The Jury**

Furthermore, testimony provided in response to guilt-assuming hypothetical questions should not be admitted because its minimal probative value would be far outweighed by its unfair prejudicial impact.  Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  *Id.*; *see United States v. Reifler*, 446 F.3d 65, 91 (2d Cir. 2006).  Questions that assume guilt or assume disputed facts are unfairly prejudicial because they invite the jury to assume the government's version of the facts rather than hold the government to its burden.

While the government may suggest that hypothetical questions are relevant to purported impact of alleged fraud, *see Cuti*, 720 F.3d at 459, guilt-assuming hypothetical questions will result in testimony that is unreliable and lacking in probative value.  *See Cain v. Trans World Airlines*, 549 F. Supp. 963, 968 (S.D.N.Y. 1982) (Sand, J.).  As the Court observed in *Cain*,

responses to hypothetical questions are unreliable because they are inherently "conjectural and speculative, and are prone to being self-serving, subjective, and incapable of effective analysis by cross-examination." *Id.*

That is particularly true in this case. Here, any probative value of answers to guilt-assuming hypotheticals is limited because the loaded questions will always elicit the government's desired response. Bank employees, for instance, will feel significant pressure to tout the strength of their employers' sanctions control procedures, and to testify that even the smallest piece of additional information would have made an enormous difference to their decisions. But their responses to loaded, guilt-assuming hypotheticals will be highly confusing and unfairly prejudicial. By inserting both alternative facts and the government's legal conclusions, the questions could confuse the jury about both what actually happened (*e.g.*, how and why bank employees *actually* made their decisions), and about the jury's own role in determining guilt or innocence.

More important, such questions allow the government to launder its legal accusations through the mouths of bank professionals whom the jury is more likely to view as unbiased.[4] In other words, guilt-assuming hypothetical questions do not elicit firsthand testimony from the witnesses, but rather present the government with an opportunity to urge both the jury and the witnesses to take as a given what the government must prove beyond a reasonable doubt. For this reason, the Second Circuit has recognized in related contexts that such questioning runs the risk of undermining the presumption of innocence. *See, e.g.*, *United States v. Damblu*, 134 F.3d

---

[4] In fact, the government has asserted the banks are victims and has told the Court it may seek an order requiring Sadr to pay them restitution. That creates the risk that bank employees could have an interest in the outcome of the case. Despite this risk, the government's characterization of the banks as victims may lead the jury to view their testimony more sympathetically.

490, 496 (2d Cir. 1998) (finding that trial court abused its discretion by allowing prosecutor to ask character witness a question that assumed a disputed fact that was critical to defendant's entrapment defense); *United States v. Russo*, 110 F.3d 948, 952 (2d Cir. 1997) (noting that guilt-assuming hypothetical questions of character witnesses "trench too deeply into the presumption of innocence"); *United States v. Paccione*, 949 F.2d 1183, 1202 (2d Cir. 1991) (noting that the government's question to character witness was improper because it assumed defendant's guilt); *United States v. Oshatz*, 912 F.2d 534, 539 (2d Cir. 1990) (noting that courts prohibit guilt-assuming hypothetical questions of character witnesses because they create "too great a risk of impairing the presumption of innocence").

## CONCLUSION

For the reasons set forth above, the Court should (1) prohibit evidence or argument using the terms "shell company" or "front company"; (2) prohibit the government from using an FBI overview witness; and (3) prohibit the government from asking guilt-assuming hypothetical questions of witnesses.

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

Brian M. Heberlig (Pro Hac Vice)
Bruce C. Bishop (Pro Hac Vice)
David M. Fragale
Nicholas P. Silverman (Pro Hac Vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
bheberlig@steptoe.com

*Counsel for Defendant*
*Ali Sadr Hashemi Nejad*

Dated:  December 20, 2019