UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ALI SADR HASHEMI NEJAD,<br><br>                              Defendant. | 18 Cr. 224 (AJN) |

# THE GOVERNMENT'S OPPOSITION
# TO THE DEFENDANT'S MOTIONS *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Jane Kim
Michael K. Krouse
Stephanie Lake
  Assistant United States Attorneys
Garrett Lynch
  Special Assistant United States Attorney
        *- Of Counsel -*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

DISCUSSION ....................................................................................................................... 2

I.     The Court Should Permit The Government To Elicit Testimony Regarding Front Companies And Shell Companies And To Use These Terms Before The Jury ................. 2

II.    The Court Should Permit The Government To Call Summary Witnesses ......................... 6

III.   The Court Should Permit The Government To Ask Non-Character Witnesses Hypothetical Questions ............................................................................................. 7

CONCLUSION ................................................................................................................... 13

## TABLE OF AUTHORITIES

**Federal Cases**

*United States v. Atilla*,
   15 Cr. 867 (RMB) ................................................................................................ 4, 10
*United States v. Barnwell*,
   2017 WL 1063457 (S.D.N.Y. 2017) ......................................................................... 6
*United States v. Bergstein*,
   2019 WL 4410240 (2d Cir. 2019) ............................................................................. 3
*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) .................................................................................... 7
*United States v. Caro*,
   454 F. App'x 817 (11th Cir. 2012) ............................................................................ 4
*United States v. Collins*,
   07 Cr. 1170 (LAP) (2013 trial) .................................................................................. 4
*United States v. Crabbe*,
   556 F. Supp. 2d 1217 (D. Colo. 2008) ...................................................................... 5
*United States v. Cuti*,
   720 F.3d 453, 458-59 (2d Cir. 2013) .................................................................. passim
*United States v. Fornah*,
   124 F. App'x 4 (D.C. Cir. 2005) ................................................................................ 4
*United States v. Galanis*,
   758 F. App'x 71 (2d Cir. 2018) ................................................................................. 6
*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005) .................................................................................. 6, 7
*United States v. Gohari*,
   227 F. Supp. 3d 313 (S.D.N.Y 2017) ........................................................................ 6
*United States v. Griffin*,
   324 F.3d 330 (5th Cir. 2003) ................................................................................. 6, 7
*United States v. Insaidoo*,
   765 F. App'x 522 (2d Cir. 2019) ............................................................................... 3
*United States v. Jennings*,
   487 F.3d 564 (8th Cir. 2007) ................................................................................ 8, 11
*United States v. Kellogg*,
   510 F.3d 188 (3d Cir. 2007) ....................................................................................... 8
*United States v. Laurienti*,
   611 F.3d 530 (9th Cir. 2010) ................................................................................ 7, 12
*United States v. Little*,
   12 Cr. 647 (PKC) (2018 trial) .................................................................................... 4
*United States v. Nejad*,
   2019 WL 6702361 (S.D.N.Y. 2019) .......................................................................... 3
*United States v. Orr*,
   692 F.3d 1079 (10th Cir. 2012) ............................................................................ 8, 12
*United States v. Powers*,

*United States v. Rosbottom*,
  2011 WL 13108128 (D.N.M. 2011) ....................................................................................... 5

*United States v. Rosbottom*,
  763 F.3d 408 (5th Cir. 2014) ................................................................................................. 4

*United States v. Russo*,
  110 F.3d 948 (2d Cir. 1997)............................................................................................. 8, 12

*United States v. Scott*,
  17 Cr. 630 (ER) (2019 trial).................................................................................................. 4

*United States v. Watts*,
  934 F. Supp. 2d 451 (E.D.N.Y. 2013) ................................................................................... 5

**Statutes**

18 U.S.C. § 1344................................................................................................................... 11

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)................................................................................... 2

**Rules**

Fed. R. Evid. 1006 ................................................................................................................... 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ALI SADR HASHEMI NEJAD,<br><br>Defendant. | 18 Cr. 224 (AJN) |

## INTRODUCTION

The Government respectfully submits this memorandum of law in opposition to the defendant's motions *in limine* in connection with the trial scheduled to begin in this matter on March 2, 2020. For the reasons that follow, the defendant's motions should be denied in their entirety.

First, the Government should be permitted to use the terms "front company" and "shell company" in its jury addresses and witness examinations. These terms are not prejudicial. They are common business terms that are widely used and accepted in the legal and financial professions, and will aid the jury in understanding the defendant's complicated criminal scheme. Indeed, this Court has used the term "shell company" in an opinion about the anticipated evidence in this case, and these terms are routinely used in proceedings across the country.

Second, the defendant's motion to preclude the Government from calling an "overview witness" should be denied as moot because the Government does not intend to call such a witness. (Dkt. 183 at 4). To the extent that the defendant seeks to preclude the Government from calling a "summary witness," the defendant's motion should be denied. Summary evidence, through summary witnesses, charts, and calculations, is regularly admitted in this Circuit and in others to

aid the jury when an appropriate foundation is laid under the Federal Rules of Evidence. Here, given the numerous documents, wire transfer records, and contracts in multiple languages, the Government will lay a sufficient foundation at trial for the use of one or more summaries and demonstratives offered during witness testimony.

Third, the defendant moves to preclude the Government from asking certain hypothetical questions of non-character witnesses that the defendant describes as "guilt-assuming." (Dkt. 183 at 8). The defendant's motion should be denied. The questions that the defendant seeks to preclude are not guilt-assuming, but rather, they assume facts that are in dispute. The defense is free to challenge the accuracy of these assumed facts on cross-examination. *See United States v. Cuti*, 720 F.3d 453, 458-59 (2d Cir. 2013). These hypothetical questions, moreover, are relevant and material in understanding the defendant's scheme to defraud U.S. banks. *See id.*

## DISCUSSION

**I. The Court Should Permit The Government To Elicit Testimony Regarding Front Companies And Shell Companies And To Use These Terms Before The Jury**

At trial, the Government plans to prove that the defendant created and used at least two front companies to evade U.S. sanctions against Iran, to defraud U.S. banks, and to launder money. Specifically, the Governments intends to offer evidence that the defendant masked his Iranian citizenship and ties to incorporate Clarity and Stratus Turkey in 2010 so that these front companies could receive U.S. dollar payments on behalf of an Iranian subsidiary of Stratus Group (the Iranian International Housing Corporation or "IIHC"). The Government expects that some of its witnesses, including expert witnesses, will define and use phrases like "front company" and "shell company" during their testimony because these are common terms that these witnesses and others use when speaking and during their work. *See* Black's Law Dictionary (11th ed. 2019) ("Shell

corporation. A corporation that has no active business and usually exists only in name as a vehicle for another company's business operations. Also termed shell company.").

The defendant moves to preclude the use of the terms "front" and "shell" company on the basis that these terms are, according to the defendant, "inflammatory" and "unduly prejudicial." The Court should deny this motion. Indeed, based on the allegations in the Indictment and the parties' briefing, the Court itself has described Clarity and Stratus Turkey as "shell companies"—not pejoratively, but rather because that is a fair, accurate, and not unduly prejudicial description of the anticipated evidence related to these entities. *United States v. Nejad*, 2019 WL 6702361, at *4-5 (S.D.N.Y. 2019). Here, the Government will establish that Clarity and Stratus Turkey were front companies in the generally accepted sense; the defendant and others used them to receive and transfer underlying assets, including payments for IIHC's work on the Venezuela Project. To the extent that the defendant believes witnesses have testified inaccurately about the status of these entities, he can cross-examine them regarding their word choice and make related arguments to the jury.

Moreover, consistent with the evidence in this case, terms like "shell" and "front" company are routinely used in this District. *See, e.g.*, *United States v. Bergstein*, 2019 WL 4410240, at *2 (2d Cir. 2019) (discussing evidence at trial that defendant had "funneled the money through attorney trust accounts and shell companies to cover personal debts" where Government had elicited trial testimony regarding "shell companies" and Government had used this term in jury addresses); *United States v. Insaidoo*, 765 F. App'x 522, 526 (2d Cir. 2019) (discussing evidence that defendant transferred funds to a "shell company" she owned and falsified invoices for her "shell company" where Government described the defendant's company as a "shell company" and as a "sham, a front for the defendants' embezzlement"); *United States v. Scott*, 17 Cr. 630 (ER)

3

(2019 trial) (allowing testimony from a money laundering expert that shell companies are used by money launderers to distance money from its criminal source, hiding the ownership of certain money and where it is going, and allowing the Government to use the terms front and shell company in its jury addresses); *United States v. Little*, No. 12 Cr. 647 (PKC) (2018 trial) (allowing witnesses and Government to use the term "shell company" before the jury); *United States v. Collins*, 07 Cr. 1170 (LAP) (2013 trial) (same).[1] A search of Westlaw reveals that this Court has used the term "shell company" in 12 other opinions, in addition to the above-cited opinion in this case.

These terms are so widely used in court proceedings, including trials, because they function as helpful shorthand descriptions of somewhat technical business-related evidence. For example, in *United States v. Atilla*, one of the Government's expert witnesses, Mark Dubowitz, testified that

> [a] front company is used to disguise or hide the role of a designated company, a sanctioned company in a trade. So if you want to do a business transaction but you want to obscure the role of the sanctioned company, you would create what is known as a front company, which would be set up for the purposes of hiding and obscuring that role.

15 Cr. 867 (RMB) (Trial Tr. at 171). The Government anticipates offering similar testimony in this case. This is because, much like in *Atilla*, the Government has alleged here that the defendant used front companies in order to disguise the role of an Iranian entity in otherwise-prohibited U.S. dollar transactions in connection with sanctions evasion, bank fraud, and money laundering. (*See, e.g.*, Indictment ¶ 12 (alleging that the defendant "conspired to evade U.S. sanctions by conducting

---

[1] These terms are also commonly used in charging instruments and by federal courts across the country. *United States v. Rodrigues*, 696 F. App'x 785, 788 (9th Cir. 2017); *United States v. Rosbottom*, 763 F.3d 408, 418 (5th Cir. 2014); *United States v. Caro*, 454 F. App'x 817, 826 (11th Cir. 2012); *United States v. Fornah*, 124 F. App'x 4, 1 (D.C. Cir. 2005).

international financial transactions using Clarity and Stratus Turkey . . . in order to conceal from U.S. banks and others that services were being provided to Iran")). The Government is entitled to introduce evidence to prove this allegation—that Clarity and Stratus Turkey were "front" companies, as that term was defined in *Atilla*. And precluding the use of such an apt term would require the Government and its witnesses to engage in linguistic gymnastics, attempting to explain the role the Government has alleged Clarity and Stratus Turkey played without using the words that most appropriately describes those entities.

The defendant cites only out-of-district cases in which courts have precluded the Government from using the term "shell company." (Dkt. 183 at 2).[2] In *United States v. Watts*, 934 F. Supp. 2d 451 (E.D.N.Y. 2013), the court concluded that the term "holding company" was more "useful" than "shell company," *id.* at 482, in part because the Government alleged in the operative indictment that the entity was a "holding company," *id.*; *see also* Dkt. 295 ¶ 1, No. 10 Cr. 627 (E.D.N.Y.). Here, Clarity and Stratus Turkey did not own or control subsidiary companies with business operations, which is the usual sense in which "holding company" is used. Instead, they are vehicles through which their owner takes in cash and other assets and makes investments.

---

[2] The defendant also cites *United States v. Powers*, 2011 WL 13108128 (D.N.M. 2011), and *United States v. Crabbe*, 556 F. Supp. 2d 1217 (D. Colo. 2008). (Dkt. 183 at 2). In *Crabbe*, the court precluded an expert opinion from an IRS agent in a tax fraud case that a relevant entity was a "shell company" because it had "no substantive business activity." 556 F. Supp. 2d at 1219. The court reasoned in part that there was no definition of "shell company" in the Internal Revenue Code or any other accounting treatise, and that the expert had not explained an adequate foundation for the opinion under *Daubert*. *Id.* at 1230-31. *Powers* was a mortgage fraud case in which the court relied only on *Crabbe* and referred to the terms "mortgage fraud" and "shell company"—inaccurately—as "vague" "industry slang." 2011 WL 13108128, at *11. The terms challenged by the defendant are not vague. Witnesses using these words can explain what they mean, whether on direct or cross-examination, and the parties should be free to explain to the jury why the terms are applicable, or not, to the extent they wish to focus on that topic.

In addition, the defendant is charged with violating national security sanctions targeting one of the principal enemies of the United States because of the danger Iran poses to this country and its interests. In that context, Rule 403 does not call for the exclusion of terms like "shell company" and "front company." Accordingly, the defendant's motion should be denied.

## II. The Court Should Permit The Government To Call Summary Witnesses

The defendant moves to preclude the Government from calling an "FBI overview witness"—that is, a witness, at the outset of the trial, to provide an overview of the evidence before it is admitted. (Dkt. 183 at 4). The Government will not "open its case with an overview witness who summarizes evidence that has not yet been presented to the jury." *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005). This motion, accordingly, is moot.

To the extent that the defendant also moves to preclude the Government from calling summary witnesses at trial, the Court should deny this motion. "There is an established tradition, both within this circuit and in other circuits, that permits a summary of evidence to be put before the jury with proper limiting instructions." *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003) (distinguishing between overview and summary witnesses); *see also United States v. Galanis*, 758 F. App'x 71, 74 (2d Cir. 2018) (discussing summary witness testimony); *United States v. Gohari*, 227 F. Supp. 3d 313, 316 (S.D.N.Y 2017) (discussing defense's summary witness); *United States v. Barnwell*, 2017 WL 1063457, *2 (S.D.N.Y. 2017) (citing cases); *Cf.* Fed. R. Evid. 1006 (permitting the admission of summaries, including charts and calculations). The purpose of the summary witness is to "aid the jury in its examination of the evidence already admitted." *Griffin*, 324 F.3d at 349.

This case involves numerous documents, including wire transfer records and lengthy contracts in multiple languages. The Government anticipates calling at least one summary witness

to read and highlight portions of these documents. Doing so will facilitate the orderly introduction of evidence and assist the jury in understanding what is likely to be complex and voluminous documentary evidence.

The defendant cites *Garcia* and *Griffin*, among other cases, in support of his motion. (Dkt. 183 at 5-6). The portions of these cases the defendant relies on involve overview witnesses—not summary witnesses. *See Garcia*, 413 F.3d at 214; *Griffin*, 324 F.3d at 349. To the extent that the defendant is concerned that the jurors may place additional weight on the summary witness's testimony if the summary witness is a law enforcement witness, (Dkt. 183 at 7-8), this concern is misplaced. The jury will be instructed that all parties are equal before the law and that a law enforcement witness's "testimony is [not] necessarily deserving of more or less consideration or greater or lesser weight than of an ordinary witness." (Dkt. 185 at 13, 134).

Accordingly, the defendant's motion to preclude the Government from calling a law enforcement overview witness should be denied as moot and the Government should be permitted to call summary witnesses, law enforcement or otherwise, to aid the jury.

**III.    The Court Should Permit The Government To Ask Non-Character Witnesses Hypothetical Questions**

As a general matter, the Government is permitted to ask fact and expert witnesses hypothetical questions. *See Cuti*, 720 F.3d at 458-59 (discussing hypothetical questions posed to accountants, which were "especially useful [in understanding] . . . the impact of the fraud") (citing cases); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("The mere use of hypotheticals does not usurp the jury's function of applying the law to the facts of the case."). These hypothetical questions can have a "guilt-assuming element." *United States v. Laurienti*, 611 F.3d 530, 549 (9th Cir. 2010) ("[T]here appears to be no support for the proposition that the

government cannot ask its own fact witnesses otherwise relevant questions that may have a guilt-assuming element."); *see also United States v. Orr*, 692 F.3d 1079, 1096 (10th Cir. 2012) (finding that the Government's hypothetical questions were proper and "did not assume" the defendant's guilt, but rather, "focused on the materiality of [the defendant's] representations"); *United States v. Jennings*, 487 F.3d 564, 581-82 (8th Cir. 2007) (holding that it is generally permissible to ask guilt-assuming hypotheticals of fact witnesses to prove materiality); *United States v. Kellogg*, 510 F.3d 188, 196 (3d Cir. 2007) (holding that hypothetical questions and guilt-assuming hypothetical questions are not inherently prejudicial). For character witnesses specifically, there are restraints on "how far the government may go on cross-examination in posing guilt-assuming hypotheticals." *United States v. Russo*, 110 F.3d 948, 952 (2d Cir. 1997) (citing cases). The Government may not ask a defense character witness, on cross-examination, whether or not his or her opinion of the defendant would change if the defendant were guilty of the charges against him. *Id.*

In *Cuti*, the Second Circuit upheld the admission of testimony from two accountants in response to hypothetical questions about how withheld information from fraudulent transactions would have affected their accounting of proceeds had it been disclosed. *See* 720 F.3d at 458-59. The Court held that "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *Id.* at 459. Indeed, these sorts of "'what-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud." *Id.* (citing cases where circuit courts have permitted the use of hypothetical questions to inquire into the effect of a fraud). The Court further noted that, as in all cases where the Government poses hypothetical questions of a witness, the defendant is free to "challeng[e] the factual accuracy of the" assumed facts within the hypothetical. *Id.*

8

The defendant moves to preclude the Government from asking certain hypothetical questions of non-character witnesses, including its expert witnesses. (Dkt. 183 at 8). Specifically, the defendant argues that the Government should be precluded from asking witnesses employed by the victim banks hypothetical questions that assume "an element" of one of the offenses charged, "disputed legal interpretations of sanctions regulations," and "disputed facts." (*Id.*). The defendant contends that the following questions are improper and should be precluded:

1. "Would you have approved this payment if you knew it violated U.S. sanctions?";

2. "Would you have approved this transaction if you knew that the benefit of the transaction was received by a person in Iran?"; and

3. "Would you have approved this transaction if you knew that the money was going to an Iranian-owned company?"[3]

(*Id.*). The Government does not intend to ask these witnesses if they would have processed the transactions if they "knew it violated U.S. sanctions," as in Question 1 above. (Dkt. 183 at 8).

In effect, however, the defendant takes the standard for guilt-assuming hypotheticals posed to defense character witnesses and sweepingly applies it to non-character witnesses and to non-guilt-assuming questions in a meritless effort to preclude questions of the type set forth above in Questions 2 and 3. Indeed, the defendant cannot point to a single case in which a similar motion has been granted, and the vast majority of the cases cited by the defendant are cases involving defense character witnesses. (*Id.* at 13).

---

[3] The defendant concedes that the following question would be appropriate in this case: Would the fact that "an entity's name was [the] 'Iranian International Housing Company' . . . have been important to the bank's decision making"? (Dkt. 183 at 8).

At trial, the Government plans to call representatives of banks defrauded by the defendant to testify regarding standard banking industry practices and certain wire transfers that were routed through each witness's bank in connection with the charged conduct. The Government anticipates that the witnesses will testify, among other things, that they are prohibited by the sanctions at issue in this case from directly or indirectly facilitating any transaction involving Iran, the Iranian government, or Iranian persons and entities. *See Atilla*, 15 Cr. 867 (RMB) (Trial Tr. at 1547).[4] The Government also anticipates that the witnesses will testify that their banks may block or reject a payment if the processing information refers to "Iran" or includes Iran-related terms either in the name of the recipient or sender or in the SWIFT message code accompanying the transaction. *Id.* (Trial Tr. at 1706-07, 1709). In connection with this testimony, the Government anticipates asking these witnesses the following types of questions, among others:

- Would it have been relevant to their bank's decision to complete the requested transaction if a participant (i) had been an entity called the "Iranian International Housing Company," (ii) was a company located in Iran, (iii) was affiliated with the government of Iran, or (iv) was owned by one or more Iranian nationals or a person located in Iran? Why would such information have been relevant?

---

[4] The Government also anticipates that these witnesses will testify about other topics such as: the role and relationships of correspondent banks; the Society for Worldwide Interbank Financial Telecommunication (SWIFT) network and how it operates; the operation of wire transfers and wire transfer instructions, particularly with respect to international payment transactions; foreign currency transactions; common methods of money laundering and sanctions evasion, including wire stripping, layering, and the use of front companies; policies, procedures, and tools designed to combat money laundering and sanctions evasions schemes and to ensure sanctions compliance, including the monitoring and screening of international payment transactions; and the U.S. dollar payments made in connection with the Venezuela Project to Clarity and Stratus Turkey from a Venezuelan state-owned energy company that were routed through their respective banks.

These hypothetical questions are relevant to and probative of the charged offenses. Counts Three to Six of the Indictment charge the defendant with bank fraud, bank fraud conspiracy, money laundering, and money laundering conspiracy. (Indictment ¶¶ 22-33). For Counts Five and Six, the "specified unlawful activity" includes bank fraud and bank fraud conspiracy. (Indictment ¶¶ 29-32; Dkt. 185 at 112). The elements of bank fraud include "that there existed a scheme to defraud a bank or a scheme to obtain property under the custody or control of a bank by means of materially fraudulent pretenses, representations, or promises." (Dkt. 185 at 92 (citing 18 U.S.C. § 1344)). A "scheme to defraud a bank" is defined as "a pattern or course of conduct concerning a material matter designed to deceive a bank into releasing property." (Dkt. 185 at 92). "A representation is fraudulent if it was falsely made with the intent to deceive," and it includes "[d]eceitful statements of half truth, the concealment of material facts, and the expression of an opinion not honestly entertained may constitute false or fraudulent representations." (*Id.*). A fact is material if "a reasonable and prudent person [would have relied] upon the representation or statement in making a decision." (*Id.* at 93).

Whether or not it would have been relevant to U.S. banks that certain payments were to be received by or for the benefit of an Iranian company, an Iranian national, or an entity or person in Iran—and whether or not this information would have influenced the bank's decisions—provide highly probative evidence as to the materiality of representations made to these banks. (Dkt. 185 at 92-93). Indeed, hypothetical questions regarding the materiality of a defendant's representations are regularly admitted in fraud-related trials. *See, e.g.*, *Cuti*, 720 F.3d at 459 (finding that hypothetical questions regarding withheld facts were relevant as to the effect of the fraud) (citing cases); *Jennings*, 487 F.3d at 581-82 (in a public corruption trial, finding that the Government's hypothetical questions were probative as to materiality and that the "government would be hard

11

pressed to prove this element without asking whether the undisclosed information would have affected the decision-maker's analysis"); *Laurienti*, 611 F.3d at 549 (in a securities fraud trial, finding that the Government's questions were "plainly relevant and probative" in order to establish the "materiality of the defendant's actions"); *Orr*, 692 F.3d at 1097 (in a fraud trial, finding that "the prosecutor . . . was required to show that [the defendant] deliberately misrepresented material facts to his investors" and the Government's hypothetical questions "went to the material nature of [the defendant's] statements").

These hypothetical questions, moreover, do not assume the defendant's guilt. As the defendant notes, these questions assume "disputed facts," "disputed legal interpretations of sanctions regulations," and facts that would prove an element of an offense (Dkt. 183 at 8)—not the "defendant's guilt of the charges against him," *Russo*, 110 F.3d at 952; *see also Orr*, 692 F.3d at 1096 (hypothetical questions "did not assume" the defendant's guilt, but rather, focused on the materiality of the defendant's representations). The defendant, moreover, will be able to challenge the accuracy of the assumed facts on cross-examination. *See Cuti*, 720 F.3d at 459.[5]

---

[5] In addition, the jury will be instructed that, among other things, the defendant is presumed innocent and the burden is on the Government to prove that the defendant is guilty beyond a reasonable doubt. (*See* Dkt. 185 at 13).

**CONCLUSION**

Accordingly, the Government respectfully submits that the defendant's motions *in limine* should be denied.

Dated: New York, New York
January 17, 2020

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: __/s/_____
Jane Kim
Michael K. Krouse
Stephanie Lake
Assistant United States Attorneys
(212) 637-2038/2279/1066
Garrett Lynch
Special Assistant United States Attorney

cc: Defense Counsel (via ECF)