| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ALI SADR HASHEMI NEJAD,<br><br>                      Defendant. | 18 Cr. 224 (AJN) |

# THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
## MOTION TO EXCLUDE EXPERT TESTIMONY

                                                          GEOFFREY S. BERMAN
                                                          United States Attorney for the
                                                          Southern District of New York

Jane Kim
Michael K. Krouse
Stephanie Lake
  Assistant United States Attorneys
Garrett Lynch
  Special Assistant United States Attorney
      *Of Counsel*

## TABLE OF CONTENTS

| | Page |
|---|---:|
| INTRODUCTION | 1 |
| DISCUSSION | 2 |
| I. The Government's Expert Notice was Timely and Sufficient | 2 |
| II. The Government's Proposed Expert Testimony Satisfies Rule 702 and *Daubert* | 5 |
|     A. Applicable Law | 5 |
|     B. Application | 7 |
| CONCLUSION | 16 |

# TABLE OF AUTHORITIES

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, (2d. Cir. 2002) ................................. 7

*Boucher v. Suzuki Motor Corp.*, 73 F.3d 18, (2d Cir. 1996) .............................................................. 8

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ................................................. 3, 7, 8

*Davis v. Carroll*, 937 F.Supp.2d 390, (S.D.N.Y. 2013) .................................................................. 7

*Humphrey v. Diamant Boart, Inc.*, 556 F.Supp.2d 167, (E.D.N.Y. 2008) ..................................... 7

*Kumho Tire Co., Inc. v. Carmichael*, 526 U.S. 137, (1999) ........................................................... 7

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, (2d Cir. 1995) ......................................................... 8

*Shtakin v. McDonnell Douglas Corp.*, 727 F.2d 202, (2d Cir. 1984) ............................................. 8

*United States v. Amuso*, 21 F.3d 1251, (2d. Cir. 1994) .................................................................. 8

*United States v. Atilla*, 15 Cr. 867 (RMB) (S.D.N.Y. 2017) ................................................... passim

*United States v. Banki*, No. 10 Cr. 08 (JFK), 2010 WL 11606485, (S.D.N.Y. Mar. 18, 2010) ..... 6

*United States v. Banki*, No. S1 10 Cr. 08 (JFK), 2010 WL 2076770, (S.D.N.Y. May 25, 2010) .. 9

*United States v. Dukagjini*, 326 F.3d 45, (2d Cir. 2003) ................................................................ 8

*United States v. Duncan*, 42 F.3d 97, (2d Cir. 1994) ..................................................................... 8

*United States v. Farhane*, 634 F.3d 127, (2d Cir. 2011) ................................................................ 9

*United States v. Lahiji*, No. 10 Cr. 506, 2013 WL 5963033, (D. Or. Nov. 7, 2013) ...................... 9

*United States v. Locascio*, 6 F.3d 924, (2d. Cir. 1993) .................................................................. 8

*United States v. Lombardozzi*, No. S1 02 Cr. 273 (PKL), 2003 WL 1907965, (S.D.N.Y. Apr. 17, 2003) ............................................................................................................................................ 8

*United States v. Lopez*, No. S1 18 Cr. 0006 (DLC), 2019 WL 1570818, (S.D.N.Y. Apr. 11, 2019) ................................................................................................................................................... 6

*United States v. Mustafa*, 406 F. App'x 526, (2d Cir. 2011) .................................................... 9, 12

*United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, (S.D.N.Y. Feb. 25, 2011) ................................................................................................................................. 7

*United States v. Raniere*, 384 F. Supp. 3d 282, (E.D.N.Y. 2019) ................................................. 6

*United States v. Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 6076364, (S.D.N.Y. Nov. 14, 2014 .. 5

*United States v. Ulbricht*, 858 F.3d 71, (2d Cir. 2017) .................................................................. 6

*United States v. Vaghari*, 735 F. Supp. 2d 197, (E.D. Pa. 2010) ................................................... 9

*United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, (S.D.N.Y. Feb. 2, 2013) .......... 7

## Other Authorities

Executive Order 13382 ................................................................................................................ 12

Executive Order 13599 ................................................................................................................ 12

## Rules

Federal Rule of Evidence 702 .................................................................................................... 3, 7

Federal Rules of Criminal Procedure Rule 16 ....................................................................... 4, 5, 6

## Regulations

31 C.F .R. Part 560 ....................................................................................................................... 17

73 Fed. Reg. 66541 (Nov. 10, 2008) ............................................................................................ 13

# **INTRODUCTION**

The Government respectfully submits this memorandum of law in opposition to the defendant's motion to exclude expert testimony from the following witnesses:

(1) Mark Dubowitz, an expert on the Iranian economy and the United States' sanctions on Iran. Mr. Dubowitz will testify about the evolution of U.S. sanctions on Iran and the identities of the entities and individuals who are involved in this case.

(2) Ted Kim, a representative of the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC").[1] OFAC is the office responsible for the administration and enforcement of the Iran sanctions regulations, and Mr. Kim will testify about the applicable statutes, executive orders, and regulations, as well as the designations of individuals and entities relevant to this case.[2]

The defendant asserts that these witnesses should be excluded for two reasons—first, that the Government's expert notices were purportedly untimely and inadequate; and second, that the Government's expert witnesses do not satisfy the relevant standards under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).[3]

For the reasons that follow, the defendant's motion should be denied.

---

[1] At the time of the Government's initial expert notice, the Government did not yet have the name of the witness who would testify from OFAC. However, on January 23, 2020, the Government provided the defendant with the name and resume for Ted Kim.

[2] The defendant also sought to preclude expert testimony from two bank witnesses. After further consideration, the Government will withdraw its notice as to those two witnesses and will instead call them at trial as fact witnesses.

[3] The defendant also moves to limit or preclude witnesses from offering expert testimony concerning the Government of Iran's involvement in terrorism, nuclear proliferation, hostage-taking, and economic jihad, as well as testimony that relies on hearsay evidence. These aspects of the defendant's motion are addressed, where relevant, in the Government's responses below concerning the testimony of Mr. Dubowitz and Mr. Kim.

# DISCUSSION[4]

## I.  The Government's Expert Notice was Timely and Sufficient

The defendant's first argument is that the Government's expert witnesses should be excluded based on the Government's allegedly defective and untimely notice under Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. The Government, however, provided the defendant "a written summary" of expert testimony it expects to use nearly three months before trial. Because that summary describes "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications," Fed. R. Crim. P. 16(a)(1)(G), the defense argument lacks merit.

On December 12, 2019—close to three months before the March 2, 2020 trial date—the Government provided the defendant with a letter setting forth the topics about which its expert witnesses would testify, the opinions they would provide, and their qualifications to provide those opinions. Attachments to this letter included: (1) Mr. Dubowitz's resume; (2) a transcript of Mr. Dubowitz's trial testimony in *United States v. Atilla*, 15 Cr. 867 (RMB) (S.D.N.Y. 2017); (3) a transcript of the OFAC witness's testimony (Lisa Palluconi) in *Atilla*; and (4) transcripts of testimony from the two bank witnesses who testified in *Atilla*. On January 23, 2020, the Government provided the defendant with a resume for Ted Kim from OFAC.

The defendant appears to fault the Government for providing him with similar expert notice to that which the Government provided the defendant in *Atilla*, claiming that this is "a dramatically different case." Def. Mot. at 1. But it is not. This case, just like *Atilla*, concerns a defendant who used front companies to disguise the role of an Iranian entity in U.S. dollar

---

[4] The Government incorporates by reference the background discussion from our motion *in limine*. Those facts will not be restated here except to the extent relevant to particular arguments.

transactions in connection with sanctions evasion, bank fraud, and money laundering. And this case, just like *Atilla*, requires expert witness testimony that can educate the jury about the evolution of, and justification for, Iranian sanctions, technical prohibitions contained within the sanction regime, and methods used to evade. It is therefore not surprising or objectionable that the Government would provide the defendant in this case with similar expert notice as in *Atilla*. The Government also provided transcripts of the witnesses' expert testimony in *Atilla*, and stated that the Government would expect the witnesses to provide similar opinions in this case.

The Government's expert notices here were therefore more than sufficient to ensure that "the proposed testimony [will not be] a surprise." *United States v. Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 6076364, at *4 (S.D.N.Y. Nov. 14, 2014). The Government has provided the subject matter, both general and specific, of each expert witness's expected testimony. The transcripts of prior testimony set forth, in detail, the opinions the Government expects those witnesses will offer, and the bases of support for those opinions. And the resumes of each witness provide the witness's qualifications to offer those opinions. Therefore, the expert notice plainly satisfies the requirements of Rule 16(a)(1)(G), and the defendant cannot credibly argue that he will suffer prejudice due to the Government's allegedly inadequate disclosure.

Moreover, the defendant cites no authority (because there is none) for his claim that expert notice nearly three months before trial violates Rule 16(a)(1)(G), or that the Government was required to provide expert notice at the same time as its initial Rule 16 discovery. There is *no* timing requirement in the Rule and, in any event, providing expert notice nearly three months before trial is plainly sufficient. *See* Fed. R. Crim. P. 16 advisory committee's notes, 1993 Amendments (stating in reference to expert disclosures—"[a]lthough no specific timing requirements are included, it is expected that the parties will make their requests and disclosures

in a timely fashion"). The defendant relies heavily on *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017), but in that case the District Court precluded the defendant's proposed expert witnesses because notice was provided to the Government during trial, just *one day* before the Government rested its case. Here, expert notice was provided nearly three months *before* trial, which is ample time to "minimize surprise . . . and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross examination." Fed. R. Crim. P. 16 advisory committee's notes, 1993 Amendments; *see also United States v. Banki*, No. 10 Cr. 08 (JFK), 2010 WL 11606485, at *2 (S.D.N.Y. Mar. 18, 2010) (denying motion to preclude expert testimony, and finding, where expert disclosure was made approximately one month before trial, that "the timing of the Government's expert disclosure to date is reasonable"). And the defendant has articulated no prejudice from receiving expert notice nearly three months before trial.

Finally, preclusion of expert testimony—the primary remedy the defendant seeks—is an "extreme remedy" that would be inappropriate in this case. *United States v. Raniere*, 384 F. Supp. 3d 282, 327 (E.D.N.Y. 2019) (noting that preclusion of expert testimony typically occurs where untimely disclosures occur "on the first day of trial or later"). Even if notice was inadequate (which it was not), courts routinely order an adjournment of the trial date, or permit parties to supplement their expert disclosure without resorting to preclusion. *See, e.g.*, *United States v. Lopez*, No. S1 18 Cr. 0006 (DLC), 2019 WL 1570818, at *5-6 (S.D.N.Y. Apr. 11, 2019) (directing supplemental expert disclosure two days before the expert's testimony); *United States*

*v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *6 (S.D.N.Y. Feb. 2, 2013); *United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, at *7 (S.D.N.Y. Feb. 25, 2011).[5]

Accordingly, the defendant's motion to preclude the Government's expert witnesses on the grounds that the expert notice was untimely or inadequate should be denied.

## II. The Government's Proposed Expert Testimony Satisfies Rule 702 and *Daubert*

The defendant also moves to preclude or limit the Government's proposed expert testimony on the grounds that the testimony does not satisfy the standards of Rule 702 and *Daubert*. Because his contentions are meritless, the Court should permit the Government's experts to testify.

### A. Applicable Law

Federal Rule of Evidence 702 allows an expert to offer testimony in the form of an opinion if the individual expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, as long as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. 579; *Kumho Tire Co., Inc. v. Carmichael*, 526 U.S. 137, 141 (1999). An expert's testimony is admissible when (1) expert has "sufficient qualifications to testify," *Humphrey* v. *Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 174 (E.D.N.Y. 2008) and (2) the proffered testimony has a "sufficiently reliable foundation." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d. Cir. 2002)). "The Rules of Evidence provide a liberal standard for the

---

[5] If the Court deems the Government's disclosures inadequate, the Government would be able to supplement its expert notice to cure any deficiencies identified by the Court.

admissibility of expert testimony," *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003), and the Second Circuit has held numerous times that expert testimony can be helpful to inform the jury about concepts involved in the trial that are "beyond the ken of the average juror." *United States v. Lombardozzi*, No. S1 02 Cr. 273 (PKL), 2003 WL 1907965, at *4 (S.D.N.Y. Apr. 17, 2003); *see also United States v. Amuso*, 21 F.3d 1251, 1264 (2d. Cir. 1994).

This standard requires a "common sense inquiry into whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *United States v. Locascio*, 6 F.3d 924, 936 (2d. Cir. 1993). Undoubtedly, "expert witnesses are often uniquely qualified [in] guiding the trier of fact through complicated morass of obscure terms and concepts." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). While the Court retains the discretion to exclude expert testimony when its probative value is "substantially outweighed by the danger of unfair prejudice," *Dukagjini*, 326 F.3d at 51-52, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," *Daubert*, 509 U.S. at 596; *see also Boucher v. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith . . ., other contentions that the assumptions are unfounded go to the weight, not the admissibility of the testimony.") (quoting *Shtakin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984)) (citations omitted); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to . . . credentials, faults in his use of different etiology as a methodology, or lack

of textual authority for his opinion, go to the weight, not the admissibility of [the expert witness's] testimony.").

Courts in this District and Circuit repeatedly have "approved the use of expert testimony to provide juries with background on criminal organizations," *United States v. Farhane*, 634 F.3d 127, 159 (2d Cir. 2011), in particular "to help explain the operation, structure, membership, and terminology" of such organizations, *United States v. Mustafa*, 406 F. App'x 526, 528 (2d Cir. 2011). Consistent with this case law, courts around the country have similarly been unanimous in admitting similar expert testimony in cases alleging violations of the U.S. embargo on Iran. *See, e.g.*, *United States v. Vaghari*, 735 F. Supp. 2d 197, 203 (E.D. Pa. 2010) (admitting testimony of expert with "practical and academic experience in the area of Iran sanctions" "to testify about trans-shipment as a modus operandi in evading such sanctions"); *United States v. Lahiji*, No. 10 Cr. 506, 2013 WL 5963033, at *5 (D. Or. Nov. 7, 2013) (admitting expert testimony "about the governance of Iran, the role of ayatollahs, the payment of taxes to them, how ayatollahs can divert money"); *United States v. Banki*, S1 10 Cr. 08 (JFK), 2010 WL 2076770, at *2 (S.D.N.Y. May 25, 2010) (in Iranian sanctions prosecution, admitting expert testimony regarding "the operation of the alleged hawala").

B. Application

1. The Expert Testimony of Mr. Dubowitz is Admissible

The Government proposes to offer Mark Dubowitz as an expert in the United States' sanctions on Iran. In that regard, Mr. Dubowitz will testify about the Iranian economy, the identities of the designated entities and individuals who are involved in this case, the evolution of U.S. sanctions on Iran, and the Iranian actions both that prompted those evolutions and that came in response.

In its expert disclosure regarding Mr. Dubowitz, the Government stated:

The Government expects to call Mark Dubowitz, of the Foundation for Defense of Democracies ("FDD"), as a witness at trial. A copy of Mr. Dubowitz's resume is enclosed as Exhibit A. Mr. Dubowitz was previously qualified as an expert on the history of sanctions evasion practices in Iran in *United States v. Atilla*, 15 Cr. 867 (RMB) (S.D.N.Y. 2017). A transcript of Mr. Dubowitz's testimony in *Atilla* is attached hereto as Exhibit B.

If called, Mr. Dubowitz is expected to testify about the history of U.S. sanctions against Iran, Iranian response to those sanctions, and the longstanding political and economic ties between Iran and Venezuela, including:

- The repeated imposition of economic sanctions by the United States against the Islamic Republic of Iran, the actions by Iran that caused the United States to impose sanctions, and the goals of the United States' sanctions against Iran. This testimony would include Iran and its Islamic Revolutionary Guard Corps (the "IRGC")'s support of terrorism and foreign terrorist groups (including Hezbollah).

- Iran's "Economic Jihad" and adoption of a "resistance economy," and the various and evolving ways in which Iranian entities evade U.S. and European sanctions, including by exploiting the international financial system, bulk shipping of cash, illegal transfers of Iranian oil, and illicit procurement activity.

- Patterns of financial activity that are consistent with money laundering, including trade-based money laundering, and sanctions evasion.

- The role that key players in the Iranian government, economy, and society played in Iran's attempt to evade U.S. sanctions, including the IRGC. This testimony would include the IRGC's role in the Iranian government and economy, including its control over various sectors of the Iranian economy and its use of different corporate entities to conduct and conceal its commercial activity.

- The relationship between the Governments of Iran and Venezuela, including bilateral agreements, cooperation, and meetings between the two countries and their leaders, and strategic alliances in the areas of industry, infrastructure, environment, agriculture, commerce, education, housing, energy, technology, politics, finance, and nuclear development.

- The relationship between certain Iranian entities, like Stratus Holding Group and its various components, including Stratus International Contracting Co., the Iranian International Housing Co., Iran Construction Investment Co., Eghtesad-e-Novin Bank, and Oriental Oil Kish, and the Government of Iran.

Mr. Dubowitz has sufficient qualifications to testify about these matters, and his proffered testimony has a sufficiently reliable foundation. As set forth in his resume, Mr. Dubowitz is the CEO of the Foundation for Defense of Democracies ("FDD"), a non-profit think tank and policy institute focused on national security and foreign policy. He has been employed with the FDD for approximately 16 years. He also previously served as a lecturer on sanctions and nuclear issues at the University of Toronto. In these roles, Mr. Dubowitz has conducted and supervised research and analysis on issues such as terrorism, nuclear proliferation, and money laundering in countries like Iran, Iraq, Syria, Lebanon, and Turkey. Mr. Dubowitz has also conducted extensive research on Iran's economy and the role of sanctions within that economy. He has published numerous reports and articles on economic sanctions on Iran, and he has testified on these topics several times before the U.S. Congress and various other national legislatures. And as referenced in the defendant's motion, Judge Richard M. Berman permitted Mr. Dubowitz to testify as an expert witness in the *Atilla* case. *See* 15 Cr. 867 (RMB), Dkt. No. 357 (Nov. 22, 2017 Order) (permitting Mr. Dubowitz to testify about "the general purpose(s) of the sanctions regime, the role of certain sanctioned entities and individuals in the Iranian government and economy and, specifically, entities and individuals who will be discussed by fact witnesses in connection with the offense conduct in this case[,]" as well as "the orders and regulations under which those individuals were designated, and the economic relationship between Iran and Turkey during the time period charged in the Indictment"). There is no question that Mr. Dubowitz is qualified to offer the expert testimony summarized in the Government's notice.

The areas of Mr. Dubowitz's proposed testimony are also relevant to the allegations in this case and would help the jury understand the evidence. In particular, testimony about the

9

identities of various Iranian individuals and their roles in the Iranian economy, as well as the diplomatic relationship between Iran and Venezuela, will aid the jury's understanding of the scheme alleged in the Indictment. The defendant has repeatedly portrayed this case as nothing more than a technical violation by a private company that was building "low-income" housing in Venezuela. In reality, the defendant is a member of a powerful and politically connected family in Iran, which owns Stratus, the Iranian International Housing Corporation ("IIHC") and several other entities, two of which have been designated by OFAC.[6] The construction project at issue in this case was a part of a Memorandum of Understanding between the governments of Iran and Venezuela, and the Iranian government specifically chose the IIHC and Stratus to run the project.

The Government is entitled to challenge the defendant's simplistic interpretation of the facts by providing the jury with expert testimony on how the Iranian economy actually works, the role various governmental officials—including Ayatollah Ali Khamenei and the IRGC—play in the economy, the balance of payments crisis sparked by increasingly-restrictive sanctions, the need for Iranian companies to evade sanctions in order to obtain hard currency (like U.S. dollars), the relationship between Iran and Venezuela, and the relationship between Stratus, the Sadr family, and the government of Iran. *See, e.g.*, *Mustafa*, 406 F. App'x at 528 (the court "repeatedly has approved the admission of expert testimony in organized crime cases to help explain the operation, structure, membership, and terminology of organized crime families"). In short, a more complete understanding of the diplomatic and economic issues in this case is

---

[6] Oriental Oil Kish was designated in October 2007 under Executive Order 13382 as an entity affiliated with the Islamic Revolutionary Guard Corps ("IRGC") and involved in activities related to the proliferation of weapons of mass destruction. Eghtesad-e-Novin Bank was designated in July 2012 under Executive Order 13599, which prohibited that bank from conducting transactions with foreign persons. Both Oriental Oil Kish and Eghtesad-e-Novin are wholly owned subsidiaries of Stratus, which in turn is owned and controlled by the Sadr family.

required to put the events charged in the Indictment—including the dollar payments arranged by Sadr—in their appropriate context, and to help the jury understand the significance of that conduct.

Similarly, Mr. Dubowitz's testimony about the reasons for the imposition of sanctions and their evolution is equally critical to understanding the charged scheme. As described in the Indictment, the defendant's scheme evolved in response to changes in the law applicable to sanctions, particularly the repeal of the U-Turn exemption, *see* 73 Fed. Reg. 66541 (Nov. 10, 2008) (revoking the U-Turn Exemption due to "the need to further protect the U.S. financial system from the threat of illicit finance posed by Iran and its banks"). The Government expects that Mr. Dubowitz will describe how changes in the sanctions laws arose both to target specific sectors of the Iranian economy and to prevent newly discovered Iranian methods of evasion. Thus, understanding the reasons why the sanctions were imposed and changed over time is necessary to explain members of the conspiracy's actions in changing the scheme, and to help the jury understand why the law was different at different points during the charged timeframe.[7]

Iran's response to the sanctions, and the effect the sanctions had on the Iranian economy, are also important. While the defendant protests the use of the term "Economic Jihad," that is the term—defined as economic struggle—that the Iranian government used to refer to its scheme of sanctions evasion. The Government expects that Mr. Dubowitz will testify that Ayatollah Ali Khamenei declared the "Economic Jihad" in a speech in March of 2011, for the stated purpose of violating, evading, and avoiding sanctions on the Iranian economy. While the Iranian purpose is

---

[7] If the Court permits the defendant to argue at trial that he believed the transactions at issue in this case were lawful under the U-Turn exception, Mr. Dubowitz's testimony regarding the exception's repeal—and why and when that repeal occurred—would be particularly critical to rebut that argument.

11

relevant in and of itself, the timing of that declaration bears substantially on the events charged in the Indictment. As the Indictment makes clear, between April 2011 and November 2013, the defendant and his co-conspirators arranged for approximately 15 payments to IIHC through front companies controlled by the defendant, which totaled approximately $115 million in U.S. dollars. Placing these actions in context and identifying why terms like "Economic Jihad" would have particular significance to the conduct charged in this case is both highly relevant to the jury's understanding of the defendants' scheme and is rooted in the facts of the case, rather than injecting issues that otherwise would not arise.

Sadr also argues that references to terrorism would be unduly prejudicial. While Iran's state sponsorship of terrorism is relevant to why sanctions were imposed (it provides the legal basis for designations of certain individuals and entities, and it explains the timeline for the adoption of differing sanctions laws and regulations), the Government recognizes the need to avoid undue prejudice, and will not elicit such references during Mr. Dubowitz's testimony. In particular, the Government will seek to avoid reference to specific acts of terrorism. Moreover, the Government would also have no objection to the Court providing the jury with a curative instruction to make clear that the defendant is not charged with a terrorism offense or participating in terrorism.

Accordingly, the motion to preclude Mr. Dubowitz's testimony should be denied.

### 2. The Expert Testimony of Mr. Kim is Admissible

Ted Kim, a representative of OFAC, will testify about the applicable statutes, executive orders, and regulations that make up the Iranian sanctions regime, as well as the designations of individuals and entities relevant to this case.

In its expert disclosure regarding the OFAC witness (subsequently identified as Mr. Kim), the Government stated:

12

The Government also expects to call a representative of the Office of Foreign Assets Control ("OFAC"), United States Department of the Treasury, as a witness at trial. The OFAC expert's biographical information and/or curriculum vitae will be provided when the specific individual witness has been identified. In *Atilla*, Lisa Palluconi was qualified as an expert on Iran-related economic sanctions programs and we anticipate that the OFAC expert in this case will provide similar testimony. A transcript of Ms. Palluconi's testimony in *Atilla* is attached hereto as Exhibit C.

If called, the Government anticipates that the OFAC expert will testify as to the nature of the Iran-related economic sanctions programs administered by OFAC, including:

- The nature of and authorities provided to OFAC by certain statutes, executive orders, and implementing regulations, including the International Emergency Economic Powers Act, the Comprehensive Iran Sanctions, Accountability and Divestment Act, the National Defense Authorization Act, the Weapons of Mass Destruction Proliferators Sanctions Regulations, the Iranian Transactions and Sanctions Regulations, and the Iranian Financial Sanctions Regulations.

- OFAC's licensing, designation, and enforcement authority.

- The identification and/or designation of Iranian banks, companies, and government entities pursuant to various OFAC authorities, including Eghtesad-e-Novin Bank and Oriental Oil Kish.

- The existence and/or non-existence of licenses relating to certain counterparty entities or classes of transactions involved in this case.

Mr. Kim has sufficient qualifications to testify about these matters, and his proffered testimony has a sufficiently reliable foundation. As set forth in his resume, Mr. Kim is a Senior Enforcement Officer who has worked at OFAC for over five years. In that capacity, he has obtained expertise in implementation and operation of the U.S. sanctions regime, has investigated sanctions violations, and has advised foreign governments about U.S. sanctions. He has been directly involved in coordinating sanctions designations and has worked with the U.S. State Department and a foreign government to investigate violations of the U.S. sanctions against Iran. Mr. Kim is trained as an attorney, admitted to the New York and District of Columbia

Bars, who is well qualified to testify about the source of OFAC's authority and how OFAC executes its mission.

Mr. Kim's proposed testimony is also both "beyond the ken of the average juror" and helpful to the jury in understanding other evidence that will be introduced. The defendant's primary objection is that the OFAC witness would invade the province of the Court by testifying about the law. But the Government does not intend to elicit testimony regarding the elements of the offenses with which the defendant is charged.

Rather, the witness will explain: (1) when the applicable sanctions laws were enacted, issued, or adopted and the fact that they were made publicly available; (2) their general content, in a manner that provides sufficient context for the jury to understand other evidence that will be introduced at trial; (3) the system of licensing administered by OFAC; (4) the Specially Designated Nationals ("SDN") list; (5) designations by OFAC of relevant individuals and entities as SDNs (and the fact that such designations are publicly available); and (6) the fact that no licenses were provided for the conduct at issue in this case. In *Atilla*, Judge Berman permitted similar testimony from a different OFAC witness, Lisa Palluconi. *See* 15 Cr. 867 (RMB), Dkt. No. 357 (Nov. 22, 2017 Order) (permitting Ms. Palluconi to testify "as to when the applicable sanctions laws were enacted, issued or adopted and the fact that they were made publicly available; their general content, in a manner that does not describe the legal elements of an offense for violating such laws but that provides sufficient context for the jury to understand other evidence that will be introduced at trial; when OFAC designated relevant individuals and entities as SDNs, under what sanctions regime such designations were made, and the fact that such designations are publicly available; and when OFAC identified certain individuals or entities as within the definition of 'Government of Iran' under the Iranian Transactions and

Sanctions Regulations, 31 C.F.R. Part 560, and the fact that such identifications are publicly available"). Similar testimony should be received in this case, since these topics are beyond the ken of the average juror and are important to assist the jury in understanding the other evidence that will be introduced.

The defendant also argues that the OFAC witness should be prohibited from testifying that two companies within the Stratus Group—Oriental Oil Kish and Eghtesad-e-Novin Bank—were designated by OFAC as SDNs (Specifically Designated Nationals). The defendant has indicated, however, that he will argue that Stratus is a legitimate business entity with no connections to the Iranian government. The Government is entitled to rebut this claim by showing that two entities controlled by Stratus are on the SDN list, and that they are on the list because of their connections to the illicit activities committed by elements of the Iranian government, including the IRGC. *See supra* Note 6.

Finally, the defendant concedes that testimony regarding OFAC's licensing, designation, and enforcement authority, and the existence and non-existence of licenses in this case, is relevant and admissible. The defendant merely asserts that these areas should be admitted as fact rather than expert testimony. *See* Def. Mot. at 36 ("[T]estimony about OFAC's authority and responsibilities regarding the ITSR—which would include enforcement, licensing, and designation—should properly be given as fact testimony from an OFAC official with appropriate knowledge."). However, the defense cites no support for its position that testimony from qualified expert witnesses regarding OFAC's administration of the Iran sanctions regime should be excluded. The only concern appears to be that the expert witnesses may receive "unmerited credibility," Def. Mot. at 36, but that concern can be addressed in other ways, such as the Court

15

not informing the jury that the witness is testifying as an expert, or by providing a curative instruction.

Accordingly, the motion to preclude Mr. Kim's testimony should be denied.

## **CONCLUSION**

The Government respectfully requests that the Court deny the defendant's motion to exclude expert testimony.

Dated: New York, New York
January 24, 2020

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by:     /s/
Jane Kim
Michael Krouse
Stephanie Lake
  Assistant United States Attorneys
Garrett Lynch
  Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066