UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALI SADR HASHEMI NEJAD,<br><br>*Defendant*. | Case No. 18 Cr. 224 (AJN)<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT ALI SADR HASHEMI NEJAD'S MOTIONS IN LIMINE**

Defendant Ali Sadr Hashemi Nejad respectfully submits this reply in support of his motions in limine.[1]

**I. The Court should prohibit evidence or argument using the terms "shell company" or "front company"**

"Front company" and "shell company" are nefarious-sounding terms that connote wrongdoing. *See, e.g.*, *United States v. Watts*, 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013) (excluding "shell company" because it has "pejorative meaning" but "no evidentiary value"). That is how the government intends to use them. *See* Gov. MIL Opp. 2-3. The government should not be permitted to poison the jury's mindset using such "shorthand" labels (*id.* at 4).

The fact that prosecution witnesses use such accusatory labels at work (Gov. MIL Opp. 2) does not justify using those vague, ill-defined characterizations in front of the jury. *See United States v. Powers*, No. CR 09-3065 MCA, 2011 WL 13108128, at *11-12 (D.N.M. Mar. 30, 2011) (excluding "shell company" from closing); *United States v. Crabbe*, 556 F. Supp.

---

[1] Sadr's Notice of Motions in Limine is Dkt. No. 182, and his memorandum in support of them ("Sadr MIL Br.") is Dkt. No. 183. The government's opposition brief ("Gov. MIL Opp.") is Dkt. No. 190.

2d 1217, 1230 (D. Colo. 2008) (excluding expert opinion that company was a "shell company"). That is particularly true where jurors are likely to have a colloquial, derogatory understanding of these terms irrespective of any technical meaning that government witnesses may have.[2]

Nor does the fact that courts (including this Court) have used such terms in judicial opinions (Gov. MIL Opp. 3-4) justify using them before the jury. Judicial opinions are issued and read outside the courtroom. They characterize the government's arguments or evidence either before trial based on the charges (as this Court's pretrial opinion did), or after the fact, based on the trial record and verdict.[3] Neither the authors nor readers of those opinions are charged, as the jury is, with weighing whether the evidence proves the charges beyond a reasonable doubt. What is important here is whether use of corrupt-sounding labels will unfairly poison the jury's consideration of the evidence in court.

The government intends to offer expert testimony that sanctions-evaders use "front companies" to "hide and obscure" "the role of the sanctioned company." Gov. MIL Opp. 4.[4] Sadr has moved to exclude such testimony, in part because "the government cannot offer expert testimony about the practices of other people 'for the impermissible purpose of encouraging the inference of [defendant]'s guilt from the behavior of unrelated persons." Mem. Supp. Sadr. Mot.

---

[2] *See, e.g.*, John Grisham, *The Rooster Bar* 76 (2017) (describing part owner of a bank "up to its ears in the sub-prime mortgage scams" with "a history of fraud and corruption": "Rackley operates behind a wall of shell companies, most of them domiciled offshore. These fronts have slowly and quietly purchased the stock of Swift, always keeping their acquisitions under 5 percent. More than that, as we know, and they have to register with the SEC.").

[3] The nonprecedential summary orders the government cites do not show, much less approve, the use of such terms before the jury. *See United States v. Bergstein*, 788 Fed. Appx. 742, 745 (2d Cir. 2019); *United States v. Insaidoo*, 765 Fed. Appx. 522, 526 (2d Cir. 2019). Though the government asserts that two judges of this Court allowed "shell company" testimony in recent trials, it does not provide orders or transcripts showing those rulings, much less the context or support for them. *See* Gov. MIL Opp. 3-4.

[4] Unlike the *Atilla* trial the government cites, this trial does not involve any allegation of transactions involving sanctioned companies, *i.e.*, companies on the SDN list.

to Exclude Expert Test., at 20 (Dkt. No. 189) (quoting *United States v. Castillo*, 924 F.2d 1227, 1231 (2d Cir. 1991)). "What the government cannot do is to ask the jury to find that because criminals of a certain type classically engage in a certain kind of behavior, the defendant engaged in that behavior." *United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) (citation omitted). The government must prove the charges against Sadr by evidence of what Sadr did or did not do, not by shady-sounding labels describing what others allegedly do. Sticking to the evidence does not require "linguistic gymnastics" (Gov. MIL Opp. 5): one may argue that one company was used to conceal another's role by stating simply that—without using argumentative terms that inherently insinuate wrongdoing.

**II.    The Court should prohibit the government from using an FBI witness to preview or summarize its case**

The government's concession that it will not "*open* its case with an overview witness" (Gov. MIL Opp. 6) (emphasis added) does not moot Sadr's motion in limine, which seeks to bar use of an FBI overview witness at all. *See* Sadr MIL Br. 4. Although use of such witnesses is condemned "especially at the outset, before any evidence is in," *id.*; Sadr has moved to prohibit any use of an FBI overview witness, either "to preview or sum up its case." *Id.* at 5.

Relating evidence not yet introduced is only the first of many problems with an overview witness. *See id.* at 5-6. Equally important problems "include the government's ability (1) to spin the evidence in its favor ..., (2) to give its official imprimatur to certain evidence, and (3) to allow its witnesses (usually law enforcement) to testify on matters about which they have no personal knowledge or that are based on hearsay." *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013).[5] The jury may be unduly swayed by the case agent's summary (after all, he "worked on the case—he should know!" *Moore*, 651 F.3d at 60), and defer to the agent's

---

[5] *Accord United States v. Flores-De-Jesus*, 569 F.3d 8, 17-19 (1st Cir. 2009) (describing the "inescapable" "imprimatur problem"); *United States v. Moore*, 651 F.3d 30, 60 (D.C. Cir. 2011) (overview testimony may "poison the jury's mind against the defendant").

3

presumed knowledge, thereby abdicating its exclusive factfinding role. *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). These problems exist any time a law enforcement officer is permitted to summarize the government's case, whether at the beginning, middle, or end of the prosecution's presentation.

"Avoidance of th[e]se dangers is largely beyond the ability of the district court, much less the defense, to prevent." *Moore*, 651 F.3d at 60. As the D.C. Circuit explained,

> [A] trained law enforcement officer is likely to go as far as the questions allow, presenting a picture for the jury of a solid prosecution case based on his opinion of the strength and credibility of the witnesses the government [called] to testify at trial for reasons made persuasive in view of the officer's training and experience.... After-the-fact limiting instructions can, at best, mitigate prejudice, rather than invariably eliminate its effects completely.

*Id.* For these reasons, the government should be prohibited from using an FBI agent to summarize its case, whether at the outset, the middle, or the conclusion of its presentation.

Sadr's motion does not seek to exclude witnesses called to admit documentary evidence, or evidence that meets the requirements of Federal Rule of Evidence 1006 for summarizing voluminous documents. It is doubtful, however, that the documents admitted at trial will be so voluminous as to require summary testimony.[6] This case involves fifteen charged wire transfers, not hundreds or thousands of transaction records.[7] Indeed, the government has limited its use of documents seized from Sadr and others to a subset of the approximately 417 pertinent documents produced in May 2018, Nov. 25, 2019 Tr. at 38-39 (Dkt. No. 169), and it argued the simplicity of that limited documentary production as a reason for urging speedy trial.[8] If the government

---

[6] "[W]here such items are not voluminous, [Rule 1006] is inapplicable and the source material itself rather than a summary must be presented." 31 Charles Alan Wright et al., *Federal Practice & Procedure (Evid.)* § 8044, at 536-37 (2000). "Moreover, Rule 1006 only authorizes summaries of writings, recordings and photographs. It has no application to summaries of other forms of evidence, such as testimony." *Id.* § 8043 (2019 Supp., at 68).

[7] *See* Ind. ¶ 16.

[8] *See* Sadr MIL to Exclude Expert Testimony at 4 (quoting July 17, 2018 Tr. at 7).

wishes to offer "contracts in multiple languages," Gov. MIL Opp. 6, it must translate them into English.[9] The government cannot evade this basic requirement by calling a summary witness to give his or her second-hand understanding of the document. More important, the contracts speak for themselves. Any additional testimony about them should come from witnesses with firsthand knowledge of them, not a law enforcement officer who lacks any basis to opine about them.

The government nonetheless proposes calling a law enforcement summary witness to "read and highlight portions of [admitted] documents" to "assist the jury in understanding" the evidence. Gov. MIL Opp. 7. The government already has such an opportunity: its summation. *Cf. Garcia*, 413 F.3d at 214 ("The law already provides an adequate vehicle for the government to 'help' the jury gain an overview of anticipated evidence as well as a preview of its theory of [the] defendant's culpability: the opening statement."); *Flores-De-Jesus*, 569 F.3d at 17 (the government should not receive "an additional opportunity to present its case in a tidy package"). For the same reasons it may not call an agent for a second opening statement, it may not use one to give an extra closing.

### III. The Court should prohibit the government from asking guilt-assuming hypothetical questions

The government relies principally on out-of-circuit cases to urge the general rule that it is allowed to ask guilt-assuming hypotheticals to establish materiality. Gov. MIL Opp. 7-8.[10] Those cases do not establish the broad rule the government suggests,[11] but even if they did, in the

---

[9] *See Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016) ("[F]oreign-language documents … cannot be reviewed or relied on by the Court, even if otherwise properly authenticated in the declaration to which they are attached, unless they are accompanied by certified translations into English.").

[10] The Second Circuit's statement in *United States v. Bilzerian*, that "the mere use of hypotheticals does not usurp the jury's function of applying the law to the facts of the case," 926 F.2d 1285, 1294 (2d Cir. 1991), referred only to an expert's unobjected-to background testimony, and said nothing about questions that assume or suggest the defendant's guilt.

[11] The government's out-of-circuit cases merely held that trial courts did not abuse their discretion by allowing questions about facts established in the records of those cases. *See United*

Second Circuit the *Cuti* case marks the bounds of permissible hypothetical questions to show materiality in fraud cases. The government should not be permitted to exceed the bounds of *Cuti*, Rule 403, or the bar on legal testimony from witnesses, as it proposes to do.

Under *Cuti*, witnesses with a firsthand basis to know may testify not only to facts they knew, but also to facts they did not know, and what they would have done if they had known, *if* those facts "ha[ve] been independently established in the record." *United States v. Cuti*, 720 F.3d 453, 458 (2d Cir. 2013); *see id.* at 459 ("[A] witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior.").[12] But such testimony cannot contain embedded conclusions of wrongdoing. *See id.* at 461 (noting the "district court took pains to limit the hypotheticals to the impact of the withheld information and barred the witnesses from speaking to the wrongfulness of the defendants' actions"); *see also* Sadr MIL Br. 10-11 (noting *Cuti* trial court rejected the government's asking, "What if you had learned that [particular deals] didn't have economic substance?") (citation omitted)). Nor can a witness tell the jury what the law prohibits, *see* Sadr MIL to Exclude Expert Testimony, at 30-33 (Dkt. No. 189), or testify that the defendant's conduct violated the law. *See, e.g.*, *Garcia*, 413 F.3d at 213-14 (ruling testimony was not "helpful to the jury" under Federal Rule of Evidence 701(b) where it told them that an element of guilt was established).

---

States v. Laurienti*, 611 F.3d 530, 549 (9th Cir. 2010) (whether an investor would have purchased shares had he known that brokerage run by defendant prevented or discouraged its employees from allowing their clients to sell shares in that stock); *United States v. Orr*, 692 F.3d 1079, 1096 (10th Cir. 2012) (asking an investor what effect it would have had had he learned that alternative fuel inventor's tests on his own fuel showed no advantages); *United States v. Jennings*, 487 F.3d 564, 581 (8th Cir. 2007) (whether official would have approved a grant had he known that defendant had a financial interest in the proposal); *see also United States v. Kellogg*, 510 F.3d 188, 192, 197 (3d Cir. 2007) (approving thinly-veiled hypothetical question about a person who knows a laboratory used one analytical method, but then reported a different analytical method, while clarifying that its ruling was limited to "the facts and circumstances of this case").

[12]This is true whether the testimony is offered as fact, or lay opinion. *Id.*

Under these rules, certain factual questions the government anticipates asking would be relevant and permissible, if independently established by record evidence: "Would it have been relevant to their bank's decision to complete the requested transaction if a participant (i) had been an entity called the 'Iranian International Housing Company,' (ii) was a company located in Iran, ... or (iv) was owned by ... a person located in Iran?" Gov. MIL Opp. 10. Other such questions may be impermissible, depending on context, if they presume a fact not independently established. For instance, a bank witness testifying generally about the bank's practices might fairly answer whether it would be relevant to the bank's decision if a participant "was affiliated with the government of Iran." *Id.* But such a question would be misleading and unfairly prejudicial, if it were directed at a specific transaction in this case, and the evidence does not show—as it will not—that any participant *was* affiliated with the government of Iran.[13]

The meat of the government's questioning, however—"[w]hy would such information have been relevant?" (Gov. MIL Opp. 10)—will be impermissible. The government plans to have its witnesses testify that "they are prohibited by the sanctions at issue in this case from directly or indirectly facilitating any transaction involving Iran, the Iranian government, or Iranian persons and entities." *Id.* That testimony is inadmissible for at least three reasons.

*First*, the government's witnesses may not tell the jury from the witness stand what the sanctions regulations prohibit. Those sanctions prohibitions define the crimes charged against Sadr. They are for instruction by the Court, not by prosecution witnesses.[14]

---

[13] See *Cuti*, 720 F.3d at 458 (approving questions about facts "independently established in the record"); 28 Charles Alan Wright & Victor J. Gold, *Federal Practice & Procedure (Evidence)* § 6164 (2d ed. 2012) (a question is misleading, and may be prohibited under Rule 611(a), if it tricks the witness into assuming facts that have not been proven, or mischaracterizes the evidence).

[14] *See* Sadr MIL to Exclude Expert Test., at 30-33 (Dkt. No. 189); *see also* Gov't's Mot. to Preclude Certain Expert Test., *United States v. Banki*, No. 10-cr-08, Dkt. No. 52 (S.D.N.Y. Apr. 27, 2010) (government arguing an expert "should not be instructing the jury on the law at all").

*Second*, prosecution witnesses may not testify, either as lay or expert opinion, that the defendant's conduct violated the law. Such testimony is not helpful to the jury under either Rule 701(b) or Rule 702(a).[15] Here, such prohibited testimony would not be limited to the government's anticipated testimony that certain transactions were outright "prohibited by the sanctions at issue." Gov. MIL Opp. 10. It would also include testimony stating (or questions presuming) that "the benefit of the transaction was received by a person in Iran" (Sadr MIL Br. 8; Gov. MIL Opp. 9). Although that language appears to be couched as a factual proposition, in fact it contains a legal conclusion—one that the government contends, and this Court has preliminarily ruled, constitutes a sanctions violation.[16] Here, such questions and answers would amount to asking the witness and jury to assume (and the witness to testify) that Sadr violated the sanctions.

*Third*, even if the government's anticipated testimony were permissible, here it is wrong—and unfairly prejudicial in the extreme. The government again urges, as it did in the Indictment and its opposition to Sadr's pretrial motions, that the sanctions prohibit U.S. bank transactions "involving ... Iranian persons and entities." Gov. MIL Opp. 10.[17] Here, the government is even more explicit—making clear that "Iranian persons" includes "Iranian

---

[15] *See Garcia*, 413 F.3d at 211, 213-14; *United States v. Grinage*, 390 F.3d 746, 749-51 (2d Cir. 2004) (rejecting lay opinion testimony about defendant's culpability under Rule 701 because, "rather than being helpful to the jury, it usurped the jury's function"); *United States v. Dukagjini*, 326 F.3d 45, 54-56 (2d Cir. 2003) (rejecting receipt of such evidence as expert opinion under Rule 702); *see also* Sadr MIL to Exclude Expert Test., at 27 (Dkt. No. 189).

[16] *See* Gov't Omnibus Mem. Opp. Sadr's Motions to Dismiss, at 14 (Dkt. No. 108); *United States v. Nejad*, No. 18-cr-224 (AJN), 2019 WL 6702361, at *4 (S.D.N.Y. Dec. 6, 2019).

[17] *See also* Ind. ¶ 12 (alleging a "conspir[acy] to evade U.S. sanctions by conducting international financial transactions ... on behalf of and for the benefit of Iranian individuals"); Gov. Omnibus Mem. Opp. to Sadr's Motions to Dismiss, at 12 (Dkt. No. 108) (claiming the Indictment charges exports "to Iranian individuals (including Sadr ...)"); *id.* at 30 (arguing "the transactions' true participants were Iranian persons ... and ... as a result, these transactions were illegal under U.S. sanctions").

nationals." Gov. MIL Opp. 10 (asking whether a transaction participant "was owned by one or more Iranian nationals"); *id.* at 11 (asking whether it would have been relevant that payments were to be received "by or for the benefit of," among others, "an Iranian national"). The government expressly seeks to have its witnesses testify that transactions involving "Iranian nationals" are "prohibited by the sanctions." Gov. MIL 10. **They are not**. The Iranian trade sanctions regulations define "Iranian" as "pertaining to Iran *as defined in this section*," *i.e.*, pertaining to "the *territory of Iran*." 31 C.F.R. § 560.303 (emphasis added). Transactions conducted by or for the benefit of "Iranian nationals," such as Sadr, *are not and never have been prohibited by the sanctions*. The government wants its witnesses to tell the jury otherwise, suggesting that Sadr's (and his family members') national origin alone makes them targets of the sanctions and inherently suspect. Few things could be more unfairly prejudicial.[18]

At most, the bank witnesses should be permitted to testify as fact witnesses regarding their own banks' policies and procedures. *See* Sadr MIL to Exclude Expert Test., at 37 (Dkt. No. 189). Bank fact witnesses may be able to testify that they were prohibited by their banks' policies and procedures from "directly or indirectly facilitating an transaction involving Iran, the Iranian government, or Iranian persons and entities." Gov. MIL Opp. 10. But they may not testify—much less testify incorrectly—about what is prohibited under the sanctions regulations.

## Conclusion

For the reasons set forth above and in Sadr's opening brief, the Court should (1) prohibit evidence or argument using the terms "shell company" or "front company"; (2) prohibit the

---

[18] *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("Unfair prejudice" under Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.") (citation omitted); *cf. United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) ("Injection of a defendant's ethnicity into a trial as evidence of criminal behavior is self-evidently improper and prejudicial ....").

9

government from using an FBI overview witness at any point in its case presentation; and

(3) prohibit the government from asking guilt-assuming hypothetical questions of witnesses.

                    Respectfully submitted,

                    */s/ Brian M. Heberlig*
                    Reid H. Weingarten
                    STEPTOE & JOHNSON LLP
                    1114 Avenue of the Americas
                    New York, New York 10036
                    Tel: (212) 506-3900
                    Fax: (212) 506-3950
                    rweingarten@steptoe.com

                    Brian M. Heberlig (Pro Hac Vice)
                    Bruce C. Bishop (Pro Hac Vice)
                    David M. Fragale
                    Nicholas P. Silverman (Pro Hac Vice)
                    STEPTOE & JOHNSON LLP
                    1330 Connecticut Avenue, N.W.
                    Washington, DC  20036-1795
                    Tel: (202) 429-3000
                    Fax: (202) 429-3902
                    bheberlig@steptoe.com

                    *Counsel for Defendant*
                    *Ali Sadr Hashemi Nejad*

Dated:  January 24, 2020