**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 4, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

      Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

      The Government respectfully writes to update the Court with respect to certain outstanding issues relating to the defendant's motions to suppress and for the return of property. (*See* Dkt. 197 at 42-43). The parties have conferred, and the defendant has represented to the Government that he does not assert standing to suppress the 449 pages of documents over which the Court has reserved judgment. (*See* Dkt. 197 at 42). The parties have not been able to reach agreement with respect to the defendant's standing to move for the return of two non-Sadr email accounts, and the parties have agreed to submit simultaneous submissions on that issue on or before February 5, 2020.

      In addition, for the reasons that follow, the Government respectfully requests that the Court (1) order the defendant to produce reciprocal discovery and expert notice by February 11, 2020; and (2) allow the Government to retrieve from the provider data the native versions of the 2,549 pages of documents that the Government expects to authenticate and rely on at trial.

**I.    The Court Should Order the Defendant to Produce Reciprocal Discovery and Expert Notice by February 11, 2020**

    **A.    Relevant Facts**

      On January 9, 2019, the Court set a deadline of February 25, 2019 for pretrial motions. The defendant filed motions, but did not move for witness depositions pursuant to Rule 15. By letter dated April 5, 2018, and as recently as January 30, 2020, the Government requested reciprocal discovery pursuant to Rule 16(b), including expert notice. On January 31, the defense informed the Government that it does not plan to produce reciprocal discovery or expert notice, or pursue depositions of witnesses located abroad until after the Government produces its 3500 material, witness list, and exhibits for trial. (*See* Ex. A at 1-2 (01/31/2020 Defense Letter)).

The Honorable Alison J. Nathan, U.S.D.J.
February 4, 2020
Page 2

Specifically, defense counsel stated that the Government's request for reciprocal discovery, expert notice, and notification of foreign witnesses

> turns on Sadr's intent to introduce specific evidence as part of his case-in-chief. . . . Sadr, cannot decide whether he needs to call witnesses (including foreign witnesses) without a list of the government's witnesses and their prior statements. Likewise, Sadr cannot decide whether he will introduce any documents outside of those available to the government without lists of the government's witnesses and exhibits. Sadr cannot decide whether he intends to introduce expert witness testimony until the motion to exclude the government's expert witnesses is adjudicated. To ask Sadr to formulate and disclose his responsive case before the government discloses the most basic information about its case-in-chief . . . is putting the cart before the horse.

(*See id.* at 1-2).

### B. Applicable Law

Under Rule 16(b)(1)(A) and (B), a defendant must produce reciprocal discovery to the Government upon request. *See* Fed. R. Crim. P. 16(b)(1)(A)-(B). Under Rule 16(b)(1)(C), a defendant must "give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." Fed. R. Crim. P. 16(b)(1)(C). This rule exists to allow opposing counsel the opportunity to challenge the admissibility of testimony, adequately prepare for cross-examination, and decide whether to retain and prepare rebuttal witnesses. *See United States v. Rajaratnam*, No. S2 09 Cr. 1184, 2011 WL 723530, at *4 (S.D.N.Y. Feb. 25, 2011). While a defendant may wait to inform the Government about certain core decisions, like whether the defendant will put on a case or testify, a defendant cannot invoke this principle to decline to produce reciprocal discovery pursuant to Rule 16(b). *See, e.g.*, *United States v. Bump*, 605 F.2d 548, 551-52 (10th Cir. 1979) (requiring reciprocal disclosure over defendant's objection that it would violate his constitutional rights); *United States v. Cohen*, No. 85 Cr. 843, 1985 WL 4851, at *2 (S.D.N.Y. Dec. 23, 1985) (ordering reciprocal discovery over suggestion that discovery should be unilateral); *see generally Williams v. Florida*, 399 U.S. 78, 85 (1970) ("Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the [prosecution's] case before announcing the nature of his defense[.]").

In *Rajaratnam*, the court ordered the defendant to make Rule 16 expert disclosures, rejecting the defendant's contention that he needed more information about the Government's case before he could devise his case-in-chief. *See* 2011 WL 723530, at *4. In support of its decision, the court quoted *United States v. Ryan*, 448 F. Supp. 810 (S.D.N.Y. 1978), *aff'd*, 594 F.2d 853 (2d Cir. 1978), where the defendant withheld the production of documents he intended to introduce if he testified because the defense had not yet decided whether he would testify. *Id.* at 810-12. In *Ryan*, the court concluded that the defendant would be precluded from offering into evidence documents that he had not timely produced to the Government. *See id.* The court explained that

> [w]hile the refusal to testify is constitutionally protected, the trial strategy determination is not so protected. Since the defendant has availed himself of the strategy to obtain discovery of the government, he must comply with the request for reciprocal discovery.

*Id.*; *see also Rajaratnam*, 2011 WL 723530, at *4 (quoting *Ryan*).

Similarly, in *United States v. Jasper*, No. 00 Cr. 825, 2003 WL 223212, at *4 (S.D.N.Y. Jan. 21, 2003), the defense claimed that the Government's request for reciprocal discovery and summaries of expert testimony was "premature" because the defense had not yet decided whether to call the expert. Judge Leisure disagreed, explaining that "[a]llowing [the] defendant to defer the provision of such discovery until a final determination regarding whether or not [to] put an expert witness on the stand would seem to frustrate" the goal of allowing the Government a fair opportunity to prepare. *Id.*; *see also United States v. Huntress*, No. 13 Civ. 99S, 2015 WL 631976, at *33 (N.D.N.Y. Feb. 13, 2015) (rejecting the argument that the defense need not provide reciprocal discovery because it had "not made any decision as to whether it will be putting a case on at trial, as we do not know if the government will meet its burden of proof at trial"); *see generally United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (affirming preclusion of evidence defendant had failed to produce; explaining that permitting defendant to use documents the prosecution had not timely seen would have given defendant an unfair advantage); *United States v. Young*, 248 F.3d 260, 270 (4th Cir. 2001) (same).

### C. Discussion

The defendant cannot delay producing discovery or expert notice until the eve of trial without consequences. *See, e.g.*, *Rajaratnam*, 2011 WL 723530, at *4; *Jasper*, 2003 WL 223212, at *4. "There is simply no support for an argument that a defendant's experts [and other Rule 16(b) material] are protected until the government reveals more than Rule 16 requires." *Rajaratnam*, 2011 WL 723530, at *5. "A defendant would always like more information about the government's case before revealing anything about his or her own, but Rule 16 conditions a defendant's disclosure obligations on the government's having made certain specified disclosures, not on the government's laying open its entire case or the defendant's satisfaction." *Id.* at *5. To the extent the defendant "contends that he cannot decide whether to use an expert until the government clarifies" who it will call at trial, "which the government has no obligation to disclose" at this point in the proceedings, "that argument is misplaced." *Id.* at *4. Accordingly, the Government requests that the Court order the defendant to produce discovery subject to Rule 16(b), including expert notice, by February 11, 2020. The Government requests that the Court preclude the defendant from offering any evidence it has not provided in Rule 16 discovery by that date, or from introducing any expert witnesses for whom it has not provided notice.

Defense counsel has also indicated that they may request the Government's assistance in securing testimony from foreign witnesses at trial. Counsel have declined to provide further information regarding the identities and locations of these witnesses, they have not specified the assistance they hope to obtain, and they do not appear to have taken other available steps to secure testimony from these witnesses by, for example, filing a motion for foreign depositions pursuant

The Honorable Alison J. Nathan, U.S.D.J.
February 4, 2020
Page 4

to Rule 15 or pursuing information from the witnesses via Letters Rogatory. Consistent with the defense's approach to Rule 16(b), counsel has indicated that they do not intend to make any requests for foreign witness assistance to the Government until after they receive 3500 material, a witness list, and exhibits from the Government. (*See* Ex. A at 12 *(*01/31/2020 Defense Letter)). At that point, even if the Government were inclined to assist, it will likely be too late for anything to be accomplished. And despite withholding information regarding the witnesses, thereby preventing the Government from exploring options for securing their testimony, counsel requested a favorable jury instruction that "missing witnesses," including foreign witnesses, "[are] not equally available to the defendant." (Dkt. 185 at 150). The defense's approach to this issue is little more than gamesmanship. The Court should reject the instruction, and there should be no adjournments to permit the defense to pursue these witnesses in light of the opportunities they have already rejected.

**II.     The Government Should Be Permitted to Access the Provider Data to Obtain the Native Files the Court Did Not Suppress For Use at Trial**

The Government respectfully requests that its filter team be permitted to access the data obtained from email service providers in response to search warrants for the limited purpose of retrieving the native files as to which suppression was denied so that the Government can prepare its trial exhibits and the service providers can authenticate those exhibits.

**A.     Relevant Facts**

On April 5, 2018, the Government produced to the defendant all of the data that the New York County District Attorney's Office ("DANY") obtained from email accounts belonging to the defendant (the "Original Returns") pursuant to court-authorized search warrants (the "Search Warrants"). The Government produced the Original Returns in the format that the email service providers provided them to DANY in response to the Search Warrants.

On May 15, 2018, the Government identified 420 documents that DANY had identified as responsive to the Search Warrants by producing copies of these documents to the defendant. These 420 documents were the subject of the defendant's motion to suppress (*see* Dkt. 197 at 3), and they had already been produced to the defendant on April 5, 2018 as part of the Original Returns. The Government produced these documents to the defendant at defense counsel's request in order to provide notice as early as possible as to material responsive to the Search Warrants. The copies included in the May 15 production originated from hard-copy binders maintained by DANY that had been scanned prior to production—rather than the native versions of those files in the provider data. As a result, the quality of the copies is poor; they are black-and-white, they are not text-searchable, and some have been photocopied so many times that they have become difficult to read.

On September 7, 2018, in response to a request from prior counsel, Judge Carter ordered the Government to stop accessing documents connected to the case pending an additional privilege review. (Dkt. 53). In response to Judge Carter's Order, the SDNY prosecution team walled itself off from the Original Returns. On November 15, 2018, at the defendant's request, the

The Honorable Alison J. Nathan, U.S.D.J.
February 4, 2020
Page 5

Government's filter team re-produced the Original Returns as Relativity load files so that the defendant could more easily review them. On November 25, 2019, in connection with the defendant's suppression motion and upon the defendant's request, the Government agreed not to access the Original Returns except to the extent that members of the filter team needed such access in order to determine when the document was identified as responsive to the search warrants. (11/26/2019 Tr. at 59-61).

On January 28, 2020, the Court denied the defendant's suppression motion in part and ruled that the Government could rely on 2,100 pages of the 420 documents produced on May 15, 2018, that had been obtained from the defendant's email accounts. (Dkt. 197 at 40). As noted above, the defendant has indicated that he is no longer seeking to suppress the 449 pages of documents from the non-Sadr accounts. (*See id.* at 41-42). The Government therefore expects to offer in its case-in-chief at trial the 2,559 pages of documents described in the Court's opinion, which DANY obtained from Sadr and non-Sadr email accounts (the "Email Evidence").

Following the Court's ruling, the Government notified the defense that it intends to retrieve the native files of the Email Evidence from the provider data so that (i) the documents can be marked as exhibits and produced to the defendant in advance of trial; and (ii) witnesses from the email services providers can prepare to authenticate the exhibits at trial. On January 31, 2020, defense counsel stated that it opposed "the government re-accessing the raw search warrant returns in the November 2018 production for this or any other purpose." (Ex. A at 2 (01/31/2020 Defense Letter)). On February 3, 2020, by phone, defense counsel further explained that they objected to an agent retrieving the native Email Evidence because the agent could potentially see documents or portions of documents that DANY did not seize or that were suppressed. As a solution, the Government proposed that either a filter team or the defense retrieve the native Email Evidence. Defense counsel considered and rejected these options.

**B.  Discussion**

The Court should allow the Government to retrieve native versions of the Email Evidence so that the prosecution team can prepare for trial. *See United States v. Ganias*, 824 F.3d 199, 215 (2d Cir. 2016) (explaining that the Government "generally retain[s] the original evidential item in a secure location for future reference" for purposes of authentication) (citing cases). Indeed, at oral argument on the defendant's motion for the return of property, defense counsel agreed that "[t]o the extent authentication presents an issue, the non-responsive material could be revisited." (11/26/2019 Tr. at 59; *see also* Tr. at 58 ("If there are any authentication issues, the government can use that material to their heart's content.")).

Authentication "presents an issue" because witnesses from the email service providers cannot authenticate hard-copy versions of the Email Evidence that were duplicated from DANY's binders rather than the provider data. Moreover, the Government relied on DANY's binders for the May 2018 production of seized documents in order to provide those materials to prior counsel at counsel's request and as quickly as possible. But the native versions of the Email Evidence are the documents that DANY seized, even if copies of those materials were later printed, photocopied, or scanned in black-and-white. Thus, the Government should not be penalized—by being denied

The Honorable Alison J. Nathan, U.S.D.J.
February 4, 2020
Page 6

access to the native files—because it produced photocopies of the Email Evidence for the defense in an effort to quickly produce documents identified as responsive.

      The defendant's opposition to the Government re-accessing the Original Returns for this exceedingly limited purpose can be addressed by allowing a member of the Government's filter team to retrieve the native versions of the Email Evidence.  This is a straightforward process.  And because the Court has identified, nearly page by page, the documents that the prosecution may use in its case-in-chief, there is no risk that the Government will access the data for some other unauthorized purpose.  Accordingly, the Government respectfully requests that the Court allow a member of its filter team to retrieve authentic versions of the Email Evidence from the Original Returns for use as exhibits at trial.

      Respectfully submitted,

      GEOFFREY S. BERMAN
      United States Attorney

By: _____/s/_____
    Jane Kim / Michael Krouse / Stephanie Lake
      Assistant United States Attorneys
    Garrett Lynch
      Special Assistant United States Attorney
    (212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)