UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



United States of America,

—v—

Ali Sadr Hashemi Nejad,

        Defendant.

18-cr-224 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

On February 10, 2020, the Court held a final pretrial conference in the above-captioned matter. At that conference, the Court preliminarily resolved several of the parties' *in limine* motions as follows:

1) The Court will conditionally admit the statements of co-conspirators, subject to the Government establishing its burden through the course of trial, as per *United States v. Geaney*, 417 F.2d 1116 (2d Cir. 1969). *See* Dkt. No. 186 at 11.

2) The Court will admit, on the basis of the Government's proffer and subject to the Government establishing its burden pursuant to *Geaney* where necessary, some examples of emails and attachments the Government provided as adoptive admissions. The Court will not preliminarily admit UVN_00016368 and UNV_000163510, for which the proffers were not sufficient to justify admission. The Court reserves ruling on those two documents and any other statements not now before the Court. The Government must identify any documents it intends to offer pursuant to this exception, discuss them with Sadr, and raise the issue with the Court either the night or morning before the sitting in which the Government seeks to introduce such documents. *See* Dkt. No. 186 at 21.

1

3) The Court offers the parties the following guidance with respect to the Government's motion to admit certain communications and documents for the non-hearsay purpose of establishing Sadr's knowledge of U.S. and other sanctions against Iran and Iranian entities: documents concerning other countries' sanctions programs may be relevant; the Government need not offer additional evidence (beyond receipt) that Sadr read emails to render them relevant; and emails received at any point during the charged conspiracies may be relevant to Sadr's state of mind. Having offered this guidance, the Court reserves ruling on the motion until individual documents are offered at trial. *See* Dkt. No. 186 at 28.

4) The parties have reached an agreement with respect to the admissibility of evidence demonstrating the process of purchasing St. Kitts and Nevis citizenship. The remaining disagreement relating to the introduction of testimony about how the purchase of such citizenship may be used to evade sanctions will be resolved when the Court resolves Sadr's motion *in limine* regarding Mark Dubowitz's testimony. *See* Dkt. No. 186 at 29.

5) The Court denies the motion to preclude the introduction of evidence and cross-examination or argument regarding the description of the housing project in Venezuela as "low-income." *See* Dkt. No. 186 at 31.

6) The Court denies in part the motion to preclude the introduction of evidence and cross-examination or argument regarding whether the victim banks were harmed by Sadr's conduct, whether Sadr intended to harm the victim banks, or whether the victim banks were in any way at fault. Sadr may offer evidence that there was no risk of harm to the victim banks, and he may also offer evidence that the victim banks were not actually harmed to the extent that such evidence is probative of the risk of harm. The Court

reserves judgment on the motion with respect to whether Sadr may offer evidence of his intent, or lack thereof, to harm the victim banks. Finally, the motion is moot with respect to evidence that the victim banks were at fault, because Sadr will not offer such evidence. *See* Dkt. No. 186 at 32.

7) The Court denies the motion to preclude the introduction of evidence and cross-examination or argument regarding the so-called "U-Turn" license that was revoked by the Office of Foreign Assets Control in 2008. *See* Dkt. No. 186 at 35.

8) No reference may be made to the Joint Comprehensive Plan of Action in the parties' opening statements. Should either party seek to elicit any testimony relating to the JCPOA, it must address it with the opposing party first and raise the issue with the Court before any mention of the JCPOA is made. Failure to follow this procedure will result in the Court excluding any testimony referencing the JCPOA. *See* Dkt. No. 186 at 39.

9) The terms "shell company" and "front company" may not be used in opening statements. The Court will await the introduction of evidence at trial before determining whether they may be used in closing arguments. The Court will not prohibit the parties from describing an entity as "a front" as opposed to a "front company." *See* Dkt. No. 183 at 1.

10) Sadr's motion to prohibit the Government from calling an FBI overview witness prior to the admission of any evidence is moot because the Government will not call such a witness. *See* Dkt. No. 183 at 4.

11) The motion to prohibit the Government from asking "guilt-assuming" hypothetical questions of witnesses is denied. However, where necessary, the Government should make clear in phrasing its questions that assumed facts are in dispute. Furthermore, at least with respect to fact witnesses, the Government must establish a factual foundation

3

for an assumed fact. In addition, it may not ask questions that elicit testimony as to the wrongfulness of Sadr's actions. *See* Dkt. No. 183 at 8.

12) The parties agree that Office of Foreign Assets Control Senior Enforcement Officer Ted Kim may testify to when the applicable sanction laws were enacted, issued or adopted, and the fact that they were made publicly available; their general content, in a manner that provides sufficient context for the jury to understand other evidence that will be introduced at trial; the U-Turn license and its revocation; the system of licensing administered by OFAC; the Specially Designated Nationals list; designations by OFAC of relevant individuals and entities as Specially Designated Nationals, and the fact that such designations are publicly available; the fact that no licenses were provided for the conduct at issue in this case; and OFAC's interactions with banks and their regulations concerning banks. However, Mr. Kim may not testify to the legal requirements of the applicable regulations, and the jury will not be informed that he is testifying as an expert. *See* Dkt. No. 189 at 30.

13) The Government no longer seeks to offer testimony from Mark Dubowitz in the first and sixth categories of its expert disclosure. Furthermore, the Court concludes that he is not qualified to offer testimony with respect to the fifth category in its expert disclosure. The Court reserves judgment with respect to the second, third, and fourth categories, which it will revisit after the Government submits the detailed proffer the Court requires below. *See* Dkt. No. 189 at 23. The Government may not elicit testimony from Mark Dubowitz—or any of its other witnesses—referencing terrorism or economic jihad.

14) To the extent any of Mark Dubowitz's testimony is admitted at trial, Sadr may cross-examine him concerning the Foundation for Defense of Democracies' donors. Such

cross-examination must be limited to only donors who are publicly known. *See* Dkt. No. 186 at 40.

The Court also set briefing and pretrial disclosure schedules as follows:

1) By **February 14, 2020**, the Government shall provide Sadr with its witness list and existing § 3500 material for its experts, bank witnesses, law enforcement witnesses, and St. Kitts and Nevis citizenship witness, if needed. It shall provide additional § 3500 material related to these witnesses on a rolling basis. By **February 20, 2020**, the Government shall provide Sadr with its witness list and § 3500 materials for any other witnesses, unless it makes an *ex parte* offer to the Court before that date demonstrating any safety concerns regarding this disclosure date. It shall provide additional § 3500 material related to these witnesses on a rolling basis.

2) By **February 14, 2020**, Sadr shall submit letter briefing addressing the Second Circuit's decision in *United States v. Lebedev*, 932 F.3d 40 (2d Cir. 2019). The Government may respond by **February 18, 2020**.

3) By **February 14, 2020**, the Government shall provide Sadr with "clean versions" of the "Sadr documents" on its exhibit list that it pulls from the native files. These "clean versions" must be identical to their corresponding versions in the Government's May 2018 production. The Government must also provide Sadr with a Bates number cross-reference that matches documents in the May 2018 production to their corresponding "clean versions." By **February 18, 2020**, the Government shall complete the same process for the "non-Sadr documents" on its exhibit list. Also by **February 18, 2020**, Sadr shall make any objections he has to the "clean versions" of these documents and the Bates number cross-reference.

4) **By February 18, 2020**, the Government shall make a specific proffer to Sadr regarding Mark Dubowitz's testimony. By **February 20, 2020**, Sadr shall restate his continuing objections to this testimony, if any, with specificity.

5) By **February 24, 2020**, Sadr shall produce any remaining reciprocal discovery to satisfy his obligations under Rule 16 of the Federal Rules of Criminal Procedure.

6) By **February 24, 2020**, Sadr shall provide the Government with his expert disclosures.

7) By **February 26, 2020**, Sadr shall provide the Government with his witness list, defense exhibits, and Rule 26.2 material. He shall provide additional Rule 26.2 material related to defense witnesses on a rolling basis.

8) By **February 27, 2020**, the parties shall submit an agreed-upon description of the case and a list of any names or entities that may be referenced for the voir dire, as well as the names of anyone who will be present at counsel table during trial.

Finally, at the February 10 conference, the parties expressed disagreement over whether the transactions charged in the Indictment would have been legal prior to the repeal of the U-Turn license. They are directed to meet and confer to see if they can reach a resolution with respect to how information related to this issue will be presented to the jury. If they are able to reach a resolution, they shall submit their agreed-upon proposal by **February 20, 2020**; if they are unable to do so, they shall submit simultaneous letter briefing by that date.

SO ORDERED.

Dated: February 14, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge