UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



United States of America,

—v—

Ali Sadr Hashemi Nejad,

                Defendant.

18-cr-224 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    At the February 10, 2020 final pretrial conference in the above-captioned matter, the Court reserved judgment with respect to whether Sadr may offer evidence or argument at trial of his intent, or lack thereof, to harm the victim banks. Implicated in this dispute is the question of whether the Government must establish that Sadr intended to harm the victim banks in order to prove bank fraud under 18 U.S.C. § 1344. This issue has arisen in both the parties' motions *in limine*, *see* Dkt. Nos. 186, 192, 194, and the parties' proposed request to charge, *see* Dkt. No. 185, and the Court now resolves it here.

    The bank fraud statute, 18 U.S.C. § 1344, has two separate prongs:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The Government argues that neither prong of the bank fraud statute requires it to prove that Sadr intended to harm the victim banks. Dkt. No. 186 at 32–35; Dkt. No. 216 at 1. However, it concedes that the Government must show that Sadr "exposed and *contemplated exposing* the victim banks to a risk of economic harm under a right to control theory of bank fraud under § 1344(1)." Dkt. No. 216 at 3 (emphasis added). Sadr, on the other hand, argues

1

that both prongs require the Government to prove that he intended harm. With respect to prong one, he argues, the Government must prove that he intended to harm the *victim banks*, and with respect to prong two, it must prove that he intended to harm *someone*.

The Court concludes that prong one generally—and a right to control theory under prong one specifically—requires the Government to prove that Sadr had *knowledge* that his scheme would likely harm the victim banks. The Court further concludes that prong two does not require the Government to prove that Sadr had any intent to harm the victim banks—or anyone else, for that matter.

I.     § 1344(1)

With respect to the first prong of the bank fraud statute, § 1344(1), the Government must prove that Sadr knew it was likely that his scheme to defraud would "harm the bank's property interest." *Shaw v. United States*, 137 S. Ct. 462, 468 (2016). This conclusion follows from the Supreme Court's decision in *Shaw* and Second Circuit precedent that predates it. In *Shaw*, the Supreme Court rejected the defendant's argument that § 1344(1) required the Government to prove something "*more than* his simple *knowledge* that he would likely harm the bank's property interest." *Id.* (first emphasis added). The obvious implication of the rejection of this argument is that this prong *does* require that the Government prove a defendant's *knowledge* that his scheme to defraud "would likely harm the bank's property interest." *Id.* Though the Government is right that *Shaw* establishes that the first prong of the bank fraud statute does not demand "a showing of intent to cause financial loss," *id.* at 467, this statement is not inconsistent with the Court's conclusion that *knowledge* of likely harm is required.[1]

---

[1] Indeed, the Supreme Court makes clear in *Shaw* that it uses intent to mean purpose and rejects the defendant's argument that prong one requires the Government to prove that harming the bank's property interest was his "*purpose*." *Id.* at 468. This is made abundantly clear by the fact that in the defendant's petition for certiorari he

2

Such a requirement is generally consistent with prior Second Circuit precedent interpreting the term "scheme to defraud," but reconciles that case law with the *mens rea* the bank fraud statute prescribes—knowledge. Prior to *Shaw*, the Second Circuit interpreted the term "scheme to defraud" as requiring a fraudulent intent comprising "intent to deceive and intent to cause actual harm." *See United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992) ("[A] conviction under the 'scheme to defraud' clause of the bank fraud statute requires that the defendant engage in or attempt to engage in a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, *with the intent to victimize the institution by exposing it to actual or potential loss*." (emphasis added)); *see also United States v. Bouchard*, 828 F.3d 116, 125 (2d Cir. 2016) (citing *Stavroulakis* for the proposition that § 1344(1) requires the Government to show that a defendant intended to defraud a financial institution). *Shaw* clarifies, consistent with the statute itself, *see* 18 U.S.C. § 1344, that the requisite *mens rea* for a scheme to defraud is knowledge. In other words, a scheme to defraud requires that the defendant *know*—without necessarily having as his purpose—that he is likely to cause harm. *See Shaw*, 137 S. Ct. at 468 (rejecting the argument that the Government must prove that it was defendant's "purpose" to "harm the bank's property interest"). The Court thus agrees with Sadr that *Shaw* serves only to "reduced th[e] *mens rea* from purpose to knowledge," Dkt. No. 212 at 4 n.3, and does not effect a wholesale rejection of prior Second Circuit precedent interpreting the term "scheme to defraud." Accordingly, with respect to prong one, the Government must prove that Sadr knew it likely that the alleged scheme to defraud would harm the victim banks. Sadr, in turn, may offer evidence and argument that he possessed no such knowledge.

---

argued that prong one of the bank fraud statute requires the Government to prove that he had "a specific intent not only to deceive, but also to cheat, a bank." *Id.* at 466 (emphasis omitted).

In accord with the foregoing, if the Government intends to prove bank fraud under § 1344(1) pursuant to a right to control theory, it must prove that Sadr interfered with the victim banks' right to control their money or property *with knowledge* that such interference was likely to cause them tangible economic harm. *See generally* Dkt. No. 164 at 28–29 (discussing in general, in the Court's December 6, 2019 Opinion and Order on Sadr's first seven pretrial motions, the right to control theory). This conclusion is consonant with Second Circuit right to control precedent, which requires a "fraudulent intent" that comprises "contemplated harm to the victim." *United States v. Binday*, 804 F.3d 558, 578 (2d Cir. 2015). The Court sees little daylight between "contemplate[ing] exposing the victim banks to a risk of economic harm"—which the Government concedes it must prove "under a right to control theory of bank fraud under § 1344(1)," Dkt. No. 216 at 3—and the fraudulent intent generally required by § 1344(1)—that is, *knowing* that such harm is likely to result. Indeed, much of the right to control precedent in this Circuit derives from cases involving the mail and wire statutes, *see, e.g.*, *Binday*, 804 F.3d at 578–80 (discussing intent required for right to control where defendants were convicted of mail and wire fraud), which, like prong one of the bank fraud statute, require a scheme to defraud, *see Loughrin v. United States*, 573 U.S. 351, 359 (2014) (explaining that the mail fraud statute "set[s] forth just one offense—using the mails to advance a scheme to defraud"). Accordingly, this precedent does not evince any separate *mens rea* for right to control—which is, itself, only a theory of liability—but rather describes the *mens rea* for a scheme to defraud in the right to control context.

The Court thus concludes that the Government must prove that Sadr knew that it was likely that the alleged fraudulent scheme would cause the victim banks tangible economic harm

4

under a right to control theory of bank fraud under § 1344(1).[2] Sadr, in turn, may offer evidence and argument to the contrary.

**II. 1344(2)**

With respect to the second prong of the bank fraud statute, § 1344(2), the Court concludes that the Government need not prove that Sadr intended to cause harm to the victim banks—or to anyone else, for that matter. This conclusion follows from the Supreme Court's decision in *Loughrin v. United States* and the Second Circuit's decision in *Lebedev v. United States*.

In *Loughrin*, the Supreme Court described the core criminality that the second prong of the bank fraud statute proscribes as the obtaining of bank property by means of false or fraudulent pretenses, representations, or promises. *See Loughrin*, 573 U.S. at 355–56. It then rejected the defendant's attempt to engraft an additional element onto the second prong of the bank fraud statute, concluding that the text of the statute precluded this result. *Id.* at 356. (rejecting the defendant's argument that the Government must also prove intent to defraud a bank). Indeed, the Supreme Court noted that prong two "focuses, first, on the scheme's goal (obtaining bank property) and, second, on the scheme's means (a false representation)," but nothing in it "additionally demands" anything more. *Id.* at 357. Applying this logic same here, the Court concludes that nothing in the text of this prong additionally demands that a defendant have any intent to harm *any* victim.

That § 1344(2) does not require the Government to prove any intent to harm the victim

---

[2] The Government is correct that *one way* it may attempt to prove the requisite intent is by way of inference where "the defendant's misrepresentations foreseeably concealed economic risk or deprived the victim of the ability to make an informed economic decision." *See* Dkt. No. 216 at 3 (quoting *Binday*, 804 F.3d at 578). This argument embodies the uncontroversial principle that "[i]ntent to harm . . . can be inferred from exposure to potential loss." *Binday*, 804 F.3d at 578 (alternations in original) (quoting *United States v. Chandler*, 98 F.3d 711, 716 (2d Cir. 1996)).

5

banks, or anyone else, is confirmed by the Second Circuit's decision in *Lebedev v. United States*. In *Lebedev*, the Second Circuit concluded that there was sufficient evidence to convict the defendant under 1344(2) even though there was no evidence that he intended to harm either the customers who willingly purchased Bitcoin with their credit cards or the banks that approved the credit card transactions. *United States v. Lebedev*, 932 F.3d 40, 49 (2d Cir. 2019). The Second Circuit found that there was sufficient evidence that the defendant caused a false representation to be sent to the banks with the intent of obtaining funds under the banks' custody or control, and that nothing more was needed to sustain a conviction under § 1344(2).[3] *Id.* The Court agrees with the Government that "*Loughrin* and *Lebedev* make clear that there are two elements to this prong of bank fraud, and that intent to cause harm is not one of them," *see* Dkt. No. 216 at 4, and *Loughrin* cautions the Court against reading into the statute anything not already provided by it. Accordingly, with respect to prong two, the Government need not prove anything regarding Sadr's intent to harm the victim banks—or anyone else. However, as discussed above, evidence and argument regarding Sadr's knowledge that the alleged scheme would likely harm the victim banks may be offered at trial because it is relevant to the bank fraud charge under prong one of § 1344.

SO ORDERED.

---

[3] Sadr argues that the Second Circuit also implicitly required—and found sufficient evidence—that Lebedev intended to harm the banks because it referenced evidence of funds the banks advanced upon approving the credit card transactions at issue. *See Lebedev*, 932 F.3d at 49. According to Sadr, "these advanced bank funds were at risk of not being paid back, due to fraudulent transactions and chargebacks." Dkt. No. 212 at 5. Thus, his argument goes, "even if Lebedev thought all customers would willingly pay their bills, he still knew he was exposing the banks to the risk of losing their own money—and that was enough to constitute intended harm." *Id.* The Court rejects this argument and agrees with the Government that it is clear that the Second Circuit referenced the advanced funds *not* as any evidence of intended harm—which is not a requirement of prong two—but rather as evidence that Lebedev intended to obtain money under the banks' custody and control—which is a requirement of prong two. *See* Dkt. No. 216 at 4.

Dated: February 22, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge