USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 2 / 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

—v—

Ali Sadr Hashemi Nejad,

        Defendant.

18-cr-224 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

At the February 10, 2020 final pretrial conference, the Court reserved judgment on the second, third, and fourth categories of testimony in the Government's expert notice for Mark Dubowitz and ordered the Government to provide Sadr with a more detailed proffer regarding this testimony. *See* Dkt. No. 210 at 4, 6. Upon receiving and reviewing that proffer, Sadr subsequently renewed his objections to the remaining categories of Mr. Dubowitz's testimony, *see* Dkt. No. 220, and the Government responded to Sadr's renewed objections on February 24, 2020, *see* Dkt. No. 230.

Also at the February 10 conference, the Court allowed the Government to pull "clean versions" of its trial exhibits from the native files and ordered Sadr to subsequently make objections, if any, to these "clean versions." Dkt. No. 210 at 5. Sadr filed objections to 16 of the Government's exhibits on February 22, 2020, *see* Dkt. No. 222, and the Government responded to these objections on February 23, 2020, *see* Dkt. No. 223.

The Court has reviewed the parties' briefing on each of these outstanding issues and now resolves them as follows.

**1. Mark Dubowitz's Expert Testimony**

1

In its response to Sadr's renewed objections to Mr. Dubowitz's testimony, the Government represents that it will not "elicit any substantive testimony from Mr. Dubowitz regarding the history of sanctions against Iran, the Islamic Revolution Guard Corps ("IRGC"), the U-Turn Exemption, or the entities that OFAC has designated as SDNs." Dkt. No. 230 at 1. Rather, Mr. Dubowitz's testimony will be limited "to explaining certain means, methods, and strategies of sanctions evasion as they relate to the charges in this case." *Id.*

The Court concludes that Mr. Dubowitz may testify to "the process by which individuals establish or incorporate companies in foreign jurisdictions, the documents and disclosures needed to establish such companies, the concept and use of front and shell companies, the extent to which bank accounts may be established remotely, . . . the way international financial transactions may be conducted online and through email[,] . . . the process by which individuals obtain citizenship and passports in countries other than their country of birth, the process by which individuals obtain residency in foreign jurisdictions, . . . citizenship-by-investment programs[,] . . . bank secrecy laws in countries like Switzerland, [and] the manner in which money can be transferred electronically across various jurisdictions." *Id.* at 2. He may explain these sophisticated concepts because they are beyond the ken of the average juror.

However, to the extent the Government seeks to have Mr. Dubowitz "explain how these complicated methods and means can be used together in order to obscure an individual or entity's connection to Iran," *id.*, it may cross the line into testimony that runs afoul of *Castillo v. United States*, which prohibits expert testimony that invites the jury to infer the defendant's guilt "from the behavior of unrelated persons," *United States v. Castillo*, 924 F.2d 1227, 1234 (2d Cir. 1991). In this regard, the Court will entertain objections to specific questions from Sadr during the course of the trial that he thinks crosses this line. If the Government has questions as to what

2

it may say during opening statements in this regard, it may submit a specific proffer to the Court by Friday, February 28, 2020 at 12 p.m. In addition, to the extent the Government anticipates testimony that it believes will be permissible, but close to this line, it shall prepare a proposed limiting instruction, which it shall submit to the Court by Friday, February 28, 2020 at 12 p.m.

### 2. Government's Trial Exhibits

Sadr's objections to the "clean versions" of the Government's trial exhibits fall into two categories. *See* Dkt. No. 222. First, he objects to documents that had cut off pages in the May 2018 production but have been replaced with clean, complete versions in the Government's trial exhibits. Second, he objects to documents that contain charts or text images that were illegible in the May 2018 production but have been replaced with completely legible versions in the Government's trial exhibits. With respect to both categories of documents, Sadr objects that they contain "additional content that was not present in the previously-seized versions." *Id.* at 2. The Court disagrees.

The Court has already determined that all of the pages Sadr complains about were identified as responsive and seized during the course of a constitutional responsiveness review. *See* Dkt. No. 197. That technical issues may have resulted in these documents being cut off or rendered illegible in the May 2018 production does not mean that the reviewers *seized* cut off or illegible versions of these documents. Moreover, Sadr will not be prejudiced in any way by the Government using these 16 exhibits, because he has had access to the native files from which the Government pulled them since at least November 15, 2018, when the Government produced the original search warrant returns as Relativity load files to Sadr. *See* Dkt. No. 201 at 4–5. Accordingly, the Court concludes that the Government may use the 16 exhibits to which Sadr objects at trial.

SO ORDERED.

Dated: February 27, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge

4