

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 5, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

    The Government respectfully submits this letter in response to the defendant's letter of yesterday regarding the Government's objections to the exhibits the defendant would like to offer during the cross-examination of OFAC Enforcement Officer Ted Kim tomorrow. (Dkt. 264). For all of the reasons below, the Government objects to each of the documents below.[1]

**Transcripts of a 2016 U.S. Congressional Hearing (DX 1334).**

    First, this Congressional Hearing is from 2016. Mr. Kim did not testify about the JCPOA, which one of the subjects of this hearing. It is not within the time period of the charged conduct and is therefore irrelevant hearsay and beyond the scope of Mr. Kim's direct.

    Second, this Congressional Hearing discusses the JCPOA—a topic included in the Governments motions *in limine* filed on December 20, 2019. (Dkt. 186). On February 14, 2020, the Court ordered the following:

> Should either party seek to elicit any testimony about the JCPOA, it must address it with the opposing party first and raise the issue with the Court before any mention of the JCPOA is made. Failure to follow this procedure will result in the Court excluding any testimony referencing the JCPOA.

---

[1] The Government has tried to attach the defense's exhibits as exhibits to its submissions to the Court, but due to their size, they cannot be uploaded.

For many of these documents, it is unlikely that Mr. Kim will be able to authenticate them.

(Dkt. 210 at 3). The defense did not raise with the Government any plans to elicit testimony about the JCPOA. Because the defense failed to follow the Court's procedures, it should be precluded from offering this document at trial.

Third, these statements are taken out of context and are misleading to the jury.

Fourth, to the extent the defendant offers this exhibit for his state of mind—as the Court has repeatedly stated, the defendant must provide a *factual connection* as to why this evidence shows the defendant's state of mind other than the fact that it was out in the world.

Fifth, with respect to this document and several documents below—statements by the U.S. Department of Treasury and its employees are not admissible under Rule 801(d)(2)(B). Under the defense's absurd theory, the defendant's video exhibits of President Obama would also be admitted as the Government's party admissions.

To determine whether the U.S. Attorney's Office for the Southern District of New York ("SDNY") should be treated as "the same party" under Rule 801(d)(2)(B), the Court must find that SDNY and OFAC are the "same party" for purposes of Rule 801(d)(2). Courts in this Circuit have held in securities fraud cases that the SEC and DOJ cannot be regarded as the "same party" where "they did not cooperate or collaborate in the relevant investigation." *See, e.g.*, *United States v. Klein*, 2017 WL 1316999, at *4-5 (E.D.N.Y. 2017) (citing *United States v. Martoma*, No. 12-cr-973, 2014 U.S. Dist. LEXIS 152926, *14-15, 19-20 (S.D.N.Y. Jan. 8, 2014) (citing *United States v. Whitman*, No. 12-cr-125 (S.D.N.Y. 2012) (ECF No. 110 at 2305-07) (involving analysis under Rule 804(b)). Here, the "bare minimum"—"some level of cooperation or collaboration between the agencies in the course of their respective investigations" simply does not exist. *Klein*, 2017 WL 1316999, at *4-5. As the Government has repeatedly explained, OFAC was not involved in this investigation. OFAC is not a part of the prosecution team. Full stop. Treasury and SDNY thus cannot be treated as the same party.

The cases cited by the defendant are entirely distinguishable. *See Klein*, 2017 WL 131699, at *4-5 (discussing *Van Griffin*, among other cases). In *Van Griffin*, 874 F.2d 645 (9th Cir. 1989), a case that was factually distinguishable, the Ninth Circuit stated: "We do not say that every publication of every branch of government of the United States can be treated as a party admission by the United States under [Rule 801(d)(2)(D)]." *Id.* at 638. The decision in *United States v. Connolly*, 2018 WL 2411760 (S.D.N.Y. 2018), moreover, includes one line without any factual context as to why the other agency's statement was a party admission and why it was relevant. *Id.* at 5.

**Nearly 900 Pages of Documents of SDN Listings from 2012, 2016, and 2018 (DXs 1360, 1361, 1362).**

First, these documents are irrelevant. The Government has not alleged that Clarity, Stratus Turkey, IIHC, or Stratus Global were SDNs. Admitting nearly 900 pages of irrelevant material will also confuse the jury and kill trees.

Second, it appears that the defendant proposes having Mr. Kim review these documents to confirm that the "[defendant's] entities" are not listed within them. Perhaps he also wants to show that many Iranian entities have been designated as SDNs—testimony proposed by the defendant via Burns—by carrying binders full of designations to the witness stand. This will take hours for Mr. Kim to review and will be a waste of the jury's time.

Third, the defendant disclosed that the fact that the defendant's entities are not SDNs would be a topic of Burns's testimony. If the defendant wants to offer this evidence, he should do so in his own case-in-chief in a manner consistent with the Rules of Evidence that does not waste the jury's time.

**Inauthenticatable Alleged Statement by Richard Newcomb, OFAC Director, May 9, 2003 (DX 1335):**

The first page of this document is depicted below:

> NO LICENSE IS REQUIRED FOR EXPORTS OF EQUIPMENT TO BE USED TO MANUFACTURE OR TEST GOODS DESTINED FOR IRAN.
>
> May 9, 2003
> 030509-FACRL-IA-05
>
> FAC No. [text deleted]
>
> [text deleted]
> [text deleted]
> [text deleted]
> [text deleted]
> [text deleted]
>
> Dear [text deleted]:
>
> This is in reply to your letter of September 24, 2002 to the Department of the Treasury's Office of Foreign Assets Control ("OFAC") on behalf of [a U.S. person]. In your letter you inquired whether a license is required in order for the [third country] branch of [a U.S. person] to sell two [text deleted] testing systems (the "[text deleted] systems") to a [third country entity]. As we understand the facts, one [text deleted] system would be permanently installed in [the third country entity's] facilities for the purpose of testing during the manufacture of [text deleted]. [Third country entity] would use the second [text deleted] system for final inspection of completed [text deleted] equipment. The [text deleted] system would be used exclusively by [third country entity] and would not be incorporated into [third country entity's] products. The [U.S. person] has learned that the [third country entity's] products could be sold to Iran.
>
> Section 560.204 of the Iranian Transactions Regulations, 31 C.F.R. Part 560 (the "ITR"), prohibits the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran. Section 560.205(a) of the ITR prohibits the re-exportation from a third country, directly or indirectly, by a person other than a United States person, of any goods, technology, or services that have been exported from the United States, if undertaken with knowledge or reason to know that the reexportation is intended specifically for Iran; and the exportation of such goods, technology, or services from the United States to Iran was subject to export license application requirements under any United States regulations in effect on May 6, 1995, or thereafter.
>
> Since no U.S.-origin goods, technology, or services will be exported to Iran or the Government of Iran or incorporated into goods intended for exportation, reexportation, sale or supply, directly or indirectly, to Iran or the Government of Iran, no OFAC license is required in order for [a U.S. person] to export the [text deleted] systems to [third country entity]. It should be noted that an exportation or reexportation transaction that is not prohibited by the ITR may, nevertheless, be prohibited pursuant to laws and regulations administered by the U.S. Department of Commerce, Bureau of Industry and Security.
>
> Defense Exhibit 1335
>
> DX 1335, Page 1 of 2

The top half of the second page appears to have been altered, perhaps with white redaction.

This document cannot be authenticated. This document, moreover, is irrelevant because it is an alleged statement from 2003. Finally, this document is not a party admission for the same reasons outlined above.

**The 50/50 Rule Documents (DXs 1352 and 121):**

First, the 50/50 rule applies to entities that are owned by blocked entities. Here, the Government has not alleged that the Iranian International Housing Company, Stratus Turkey, Clarity, or Stratus Contracting Company were owned by an SDN. These documents are thus irrelevant. The second document, DX 121, moreover, was published in 2015 and is additionally irrelevant. These documents will only confuse the jury with an additional concept that is not relevant to the facts.

Second, to the extent the defendant seeks to offer these documents as evidence of his state of mind, again, he has to proffer a factual connection.

Third, these are not party admissions, for the reasons stated above.

**The Comprehensive Iran Sanctions Accountability and Divestment Act of 2010 (July 1, 2010) (DX 1333) ("CISADA").**

First, the Court has urged the defense to proffer some evidence—a factual connection—between the exhibits proposed and the defendant's state of mind. The defense has repeatedly refused to make such a proffer. The defense cannot submit a 48-page statute to the jury and read from it at will in order to later argue a certain theory about the defendant's state of mine—without some sort of link to the facts here.

Second, the suggestion that because the Government did not elicit testimony regarding *every single statute concerning Iran sanctions* or every single Executive Order or every single regulation is not misleading. Certainly, there are many other documents related to the Iran sanctions program that Mr. Kim did not discuss—because they are not relevant to this case. CISADA is one of them.

Third, there is substantial risk of confusion in putting an entire statute before the jury—just as it would have confused the jury to put the 2008 version of Section 560.516 of the ITR before the jury. (*See* Trial Tr. at 313-16).

**Banking-Related Document From 2016 (DX 1825).**

This document likely cannot be authenticated through Mr. Kim. In addition, it is beyond the scope of Mr. Kim's testimony.

**Treasury Press Releases and Statements (DX 1347 and DX 1349):**

DX 1347 is dated August 30, 2016. It is therefore irrelevant and outside the scope of Mr. Kim's testimony. In addition, for the reasons discussed above, it is not a party admission.

DX 1349, as a press release about humanitarian activity and athletic exchanges, is irrelevant. The defendant has proffer *no evidence* that his conduct fell within a license for

humanitarian activity or athletic exchanges. This press release is entirely irrelevant hearsay that does not constitute a party admission.

**More Treasury Press Releases that the Government Did Not Offer (DXs 608, 609, 614, 616).**

First, these are not party admissions, as discussed above.

Second, the defense objected to these documents—the Government did not offer them—and now the defendant wants to offer them.

Third, the Government did not offer 616 specifically because it references terrorism and other words that, according to the defendant, were too prejudicial for the Government to use.

Fourth, to the extent the defendant offers these exhibits as evidence of his state of mind, he should have to proffer some evidence connecting these documents to his state of mind.

\* \* \*

There are two themes that emerge from these defense exhibits and from the defendant's arguments.

First, the defendant continues to exploit the Court's ruling regarding the defendant's motion to preclude the Government from using words like "terrorism" and "nuclear proliferation" in this trial—words that the defendant claimed posed "extreme unfair prejudice" (Dkt. 189 at 17) and then turned around and used in his opening statement (Trial Tr. at 87, 95-96). The Government has been careful in its direct examinations and exhibits to ensure that reference to these words is extremely sparing. Indeed, the Government was not even able to freely elicit general background information about a witness because the mission of her office included combatting "terrorist financing." (Trial Tr. at 327). Per the Court's Order (Dkt. 210 at 4), the Government directed Mr. Kim *not to testify* about the sources of SDN designations, for example, and about other components of the Iran sanctions program that he would have naturally referenced. Now, the defense leverages the Court's ruling to present evidence to the jury about nuclear proliferation and terrorism to argue that Mr. Kim was misleading on direct.

Second, the defendant's refusal to produce documents to the Government in a timely manner is inefficient for the Court and for the jury. Had these documents been produced earlier, perhaps the parties could have entered into certain stipulations or the Government could have proposed redactions to some of these documents. But, given their late disclosure, these options are not available.

                                              Respectfully submitted,

                                              GEOFFREY S. BERMAN
                                              United States Attorney

                                  By:      /s/                            
                                              Jane Kim / Michael Krouse / Stephanie Lake
                                                 Assistant United States Attorneys
                                              Garrett Lynch
                                                 Special Assistant United States Attorney
                                              (212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)