# Exhibit B

| From: | Silverman, Nicholas |
|---|---|
| Sent: | Sunday, March 8, 2020 1:36 PM |
| To: | Kim, Jane (USANYS) 4; Heberlig, Brian; Lake, Stephanie (USANYS); Weingarten, Reid |
| Cc: | Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor]; Milione, Shawn (USANYS) [Contractor] |
| Subject: | RE: U.S. v. Sadr |
| Attachments: | 092-1 2019-02-25 Pretrial Mem 6 - Exhibit A-c2.pdf |

Counsel:

(1) Are there any other documents in the government's possession that have not been produced?

(2) Is there any other *Brady* information in the government's possession that has not been produced?

(3) Is there any information in the government's possession, custody, or control showing OFAC's response to this letter? This is subject to production under *Giglio* and/or *Napue* because it would at a minimum undermine Ted Kim's testimony (A) that to his knowledge, nothing relating to this matter was investigated by OFAC, (B) that "it matters a lot" if Iranian involvement in a transaction is concealed, and (C) that hiding "Iranian connections … would make it very difficult for me to do my job."

(4) As we have said, our requests for *Brady* and *Giglio* are continuing in nature. I have attached our September 2018 letter in case you want a non-exclusive list of examples of the type of information covered by *Brady* and *Giglio* in this case. Obviously, any information contrary to government witness testimony would be another example.

(5) Regarding the authenticity of GX 411, we stipulate to authenticity.

(6) GX 704 – Please let us know what modifications have been made.

(7) GX 495A, 495B – What is the relevance of Sadr having bank accounts at HSBX from January 2010 through October 2013?

(8) GX 456 – We are reviewing and anticipate stipulating to authenticity.

(9) GX 705A & 705B – We are reviewing.

(10)     GX 2304A – Subject to our continuing objection (which we understand to have been overruled), no further objection.

**Nicholas P. Silverman**
Associate
nsilverman@steptoe.com

Steptoe

| +1 202 429 8096 direct | Steptoe & Johnson LLP |
|---|---|
| +1 617 595 6559 mobile | 1330 Connecticut Avenue, NW |
| +1 202 429 3902 fax | Washington, DC 20036 |
| | www.steptoe.com |

This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Sent:** Sunday, March 8, 2020 9:41 AM

**To:** Heberlig, Brian <BHeberlig@steptoe.com>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Milione, Shawn (USANYS) [Contractor] <Shawn.Milione@usdoj.gov>
**Subject:** RE: U.S. v. Sadr

Brian, Reid, and Nick:

As I explained in my last email, when we first saw the document in mid-January, we thought it had been part of Commerzbank's subpoena return and had been produced.  We didn't think it would be necessary to use given our other evidence about that payment.  Given some of the arguments you made on Friday, we decided that we did want to introduce it at trial.

Again, we don't see this document as exculpatory, as we would like to offer it tomorrow.  Can you please let us know your position on an authenticity stipulation for this document and the other bank records we sent yesterday, as well as whether you have any issues with the summary charts?

Thanks,
Jane

---

**From:** Heberlig, Brian <BHeberlig@steptoe.com>
**Sent:** Saturday, March 7, 2020 10:09 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** RE: U.S. v. Sadr

If you have been aware of the letter since mid-January, why wasn't it on the government's pretrial exhibit list instead of appearing the day before the government rests its case?  The exculpatory nature of the exhibit is self-evident.

---

**From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Sent:** Saturday, March 7, 2020 5:36 PM
**To:** Heberlig, Brian <BHeberlig@steptoe.com>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Milione, Shawn (USANYS) [Contractor] <Shawn.Milione@usdoj.gov>
**Subject:** RE: U.S. v. Sadr

Brian,

We do not agree with your characterization of GX 430, 431, 432, or 411 as *Brady*.  These are all exhibits the Government has introduced or is seeking to introduce in our case.  Perhaps you can explain how it is you think GX 411 is helpful to your case.

In any event, we have been aware of the letter since mid-January. We thought it was part of the Commerzbank subpoena return that was produced in discovery.  We now understand that it came from an unrelated DANY investigation, and therefore was not in the Commerzbank subpoena return.

It is not clear to us how this document would have been relevant to the OFAC witness's testimony.

Jane

---

**From:** Heberlig, Brian <BHeberlig@steptoe.com>
**Sent:** Saturday, March 7, 2020 4:57 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** RE: U.S. v. Sadr

We request immediate disclosure of (1) where GX411 came from, (2) how long it has been in the government's possession, (3) why we are only receiving it today.  This is the second episode—along with GX430, GX431, and GX432—of the government producing fundamentally exculpatory documents mid-trial.  In this instance, the document was produced after the government's OFAC witness, who would have been subject to cross-examination on this document.  Provide this information by 6 pm or we will see the intervention of the Court.

---

**From:** Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>
**Sent:** Saturday, March 7, 2020 4:24 PM
**To:** Weingarten, Reid <RWeingarten@steptoe.com>; Heberlig, Brian <BHeberlig@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Milione, Shawn (USANYS) [Contractor] <Shawn.Milione@usdoj.gov>
**Subject:** RE: U.S. v. Sadr

Counsel,

We attempted to send you a number of attachments, which will not go through without encryption. It looks like Steptoe's servers are blocking the encrypted email. Shawn will upload the files to the link he has been using.  The descriptions are below.

Stephanie

---

**From:** Lake, Stephanie (USANYS)
**Sent:** Saturday, March 07, 2020 4:04 PM
**To:** Weingarten, Reid <RWeingarten@steptoe.com>; Heberlig, Brian <BHeberlig@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** U.S. v. Sadr

Counsel,

Mr. Dubowitz is still very ill. As a result, we do not intend to call him as a witness in our case-in-chief.  It's possible that, depending on the defense case, we will call him as a rebuttal witness.

In addition, we've attached the following documents:

- Updated GX 2284D – there were formatting problems with our version. We think the attached corrects them.
- 3508-08 – 3500 from today
- GX 411 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 456 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 495A & B – we intend to offer these on Monday (likely in redacted form), although think a stipulation that the defendant had bank accounts at HSBC from January 2010 through October 2013 might be simpler. Let us know how you prefer to proceed.
- GX 704 – this is the modified version of the travel chart. Please confirm whether you have any remaining concerns.
- GX 705A & B – these are summary charts reflecting the information in GX 2090A. Please confirm whether you have any objections.
- Updated GX 2304A – we enlarged some of the cells, as the formatting of the PDFd excel file was cutting off some of the data. The content is the same.
- 3504-10 – Peri 3500, which was provided in hard copy yesterday morning.
- 3505-06 – Blair 3500, which was provided in hard copy yesterday morning.
- 3513-02 – Paralegal 3500 for summary chart (you may already have this)
- 3513-03 – Paralegal 3500 for summary chart (you may already have this)

We are still working on one additional summary chart, which we expect to provide later today.

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

Brian M. Heberlig
202 429 8134
bheberlig@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

September 25, 2018

By Electronic Mail

Andrew DeFilippis
Matthew Laroche
Rebekah Donaleski
Assistant United States Attorneys
Garrett Lynch
Special Assistant United States Attorney
U.S. Attorney's Office for the
Southern District of New York
1 St. Andrew's Plaza
New York, NY  10007

> Re:  *United States v. Ali Sadr Hashemi Nejad*, No. 18 Cr. 224 (ALC)
> **Request for Discovery, *Brady* Material, and Particulars**

Dear Counsel:

On behalf of defendant Ali Sadr Hashemi Nejad, we request that the government provide "open file" discovery in this case, including the prompt production of all of the documents and other evidence it has obtained in its investigation and all grand jury transcripts, FBI 302s, and interview memoranda.

In the event that you elect not to provide "open file" discovery, Sadr respectfully submits this formal request for discovery in this case, pursuant to the Fifth and Sixth Amendments to the United States Constitution; Rules 12, 16, and 26.2 of the Federal Rules of Criminal Procedure; *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and progeny; the Department of Justice's "Guidance for Prosecutors Regarding Criminal Discovery"; and the additional authority set forth below.

We understand that Sadr's prior counsel at Arnold & Porter made earlier discovery requests in this matter, including requests in letters and emails dated: March 21, March 25,



September 25, 2018
Page 2

March 29, April 3, May 15, July 5, July 10, July 26, August 2, August 23, and September 4, 2018.  We adopt those requests and ask that you provide any future responsive material directly to us.  Arnold & Porter has provided us with copies of your prior discovery letters and emails and the discovery productions to date, and we do not need you to reproduce them to us.  Although some of these discovery requests overlap with prior requests by Arnold & Porter, we submit them to ensure that Sadr has fully protected his rights to discovery and *Brady*/*Giglio* material in this matter.

Sadr requests that you produce and/or permit him to inspect and copy or photograph the materials specified below.  This request encompasses not only documents[1] and information in the possession, custody, or control of, or that have been reviewed by, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation, but also documents and information in the possession, custody, and control of, or that have been reviewed by, the Manhattan District Attorney's Office, and any other federal, state or local agency allied with the prosecution or involved in any way in investigating the activities alleged in the Indictment or related conduct.  As used in this letter, the words "government" and "you" include your office and the above-referenced federal, state, or local agencies.

Sadr requests that the government comply with all of its discovery obligations under federal law, including, but not limited to, the following:[2]

I.      **Search Warrant Returns**

We request clarification of the government's position on the discoverability of the data and documents collected pursuant to search warrants in the investigation.  It is our understanding that the government has produced the full and unfiltered email accounts of Sadr collected pursuant to search warrants.  Arnold & Porter requested the "terabyte" of unfiltered data and documents from non-Sadr accounts obtained pursuant to search warrants, in an April 3, 2018 letter and an August 2, 2018 email.  With respect to that data, it is our understanding that the government has produced only a subset of materials that it has deemed "pertinent."  We reiterate Sadr's request for complete, unfiltered data and documents from all accounts obtained by the

---

[1] The word "documents" includes, but is not limited to, all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, e-mail, text messages, instant messages, other computer facilitated or transmitted materials, images, photographs, polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

[2] All of these requests are continuing in nature, requiring supplementation in accordance with Fed. R. Crim. P. 16(c).

September 25, 2018
Page 3



government pursuant to search warrants.  If you decline to provide these materials, please indicate:

      1.      The search terms and/or other filtering process used by the government to identify the "pertinent" documents from the search warrant returns for the non-Sadr accounts; and

      2.      How the government has satisfied its *Brady* obligations with respect to the purportedly non-pertinent data and documents from the search warrant returns for the non-Sadr accounts.

## II.      Statements of the Defendant

      1.      Any written or recorded statements made by Sadr within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the government.  *See* Fed. R. Crim. P. 16(a)(1)(B)(i).  This request includes, without limitation:

      a.      All notes, reports, and memoranda summarizing any statement by Sadr to law enforcement officials at the time of his arrest;

      b.      All transcripts and recordings of conversations in which Sadr was a participant;

      c.      All wire and oral communications made by Sadr that were transmitted to or intercepted by, for or on behalf of any government agent or employee or any agency or entity of the U.S. government;

      d.      All written and recorded statements of witnesses that reflect, relate, or incorporate any statements made by Sadr; and

      e.      All other documents that purport to reflect, relate, or incorporate any statements made by Sadr.

      2.      The portion of any written record containing the substance of any oral statement made by Sadr, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a government agent.  *See* Fed. R. Crim. P. 16(a)(1)(B)(ii).  This request includes without limitation, all documents, including notes, prepared by any FBI employee or agent that contain the substance of any relevant statement made by Sadr.

      3.      The substance of any other oral statement made by Sadr, whether before or after arrest, in response to interrogation by any person then known by Sadr to be a government agent.  *See* Fed. R. Crim. P. 16(a)(1)(A).

September 25, 2018
Page 4



### III.    Documents and Tangible Objects

1.      All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that were obtained from or belong to Sadr, or that belonged to Sadr at the time of the alleged offenses, or that belong or belonged to any agent of Sadr or any entity allegedly owned or controlled by Sadr.  *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).  This request includes all documents as to which the government or any entity assigned Sadr as a custodian, whether hard copy or electronic records.

2.      All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that the government intends to use at trial in its case-in-chief.  *See* Fed. R. Crim. P. 16(a)(1)(E)(ii).  We request that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's other Rule 16 and *Brady* requests, both to enable counsel to prepare effectively for trial and to afford Sadr an opportunity to move to suppress any evidence the prosecution intends to use in its case-in-chief.  *See* Fed. R. Crim. P. 12(b)(3)(C) and 12(b)(4)(B).

3.      All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that are material to the preparation of Sadr's defense, *see* Fed. R. Crim. P. 16(a)(l)(E)(i), including, but not limited to, those items set forth in paragraphs III.4 to III.14 below.

4.      All documents reflecting the alleged specific "international financial transactions" at issue in Count Two of the indictment.  Indictment ¶ 19.

5.      All documents reflecting the alleged "financial transactions" at issue in Counts Three and Four of the indictment.  Indictment ¶¶ 23, 26.

6.      All documents reflecting the alleged false and fraudulent pretenses, representations and promises at issue in Counts Three and Four of the indictment.  Indictment ¶¶ 23, 26.

7.      All documents reflecting the alleged monetary transactions and transfers at issue in Counts Five and Six of the indictment.  Indictment ¶¶ 29, 32.

8.      All documents relating to Sadr or the conduct alleged in the indictment that were introduced as exhibits before the grand jury.  We request that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's other Rule 16 and *Brady* requests.

9.      All documents relating to Sadr or the conduct alleged in the indictment that were obtained by or for the grand jury or pursuant to any grand jury or trial subpoena.  This request includes any documents furnished informally to prosecutors in lieu of formal compliance with a subpoena.

September 25, 2018
Page 5



       10.     All documents relating to Sadr or the conduct alleged in the indictment obtained from any witness who testified before the grand jury, or who was interviewed or consulted during the course of the grand jury investigation.

       11.     All documents relating to Sadr or the conduct alleged in the indictment that were obtained by any search or seizure pursuant to a search warrant or otherwise.

       12.     All documents relating to Sadr or the conduct alleged in the indictment obtained from any federal, state or local governmental, regulatory or legislative body or agency.

       13.     All documents relating to press releases or press conferences concerning Sadr or the investigation of the defendant, and all other documents relating to any contacts between the government and representatives of the media concerning Sadr or the investigation of the defendant.

       14.     All documents relating to the reputation of Sadr, including, without limitation, any documents relating to Sadr's reputation for honesty, integrity, or competence.

## IV.    *Brady* and *Giglio* Material

       Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitney*, 514 U.S. 419 (1995), and New York Rule of Professional Conduct 3.8, Sadr requests immediate identification and disclosure of all documents and information (in whatever form) that are favorable to the defense or that would tend to exculpate Sadr or mitigate his culpability with respect to the charges in the indictment, that would tend to impeach any potential witness against Sadr, or that are relevant to the issue of sentencing, including but not limited to the following:

       1.     Any document or information indicating or tending to establish that any of the allegations in the indictment are not true.

       2.     Any document or information indicating or tending to establish that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not violate government laws, regulations, standards or established business practices.

       3.     Any document or information indicating or tending to establish that Sadr believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not constitute a crime.

       4.     Any document or information indicating or tending to establish that any other person (including but not limited to the alleged co-conspirators) believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not constitute a crime.

September 25, 2018
Page 6



     5.      Any documents or information indicating or tending to establish that Sadr did not instigate, control, authorize, approve, or acquiesce in the practices that are the subject of the indictment.

     6.      Any documents or information indicating or tending to establish that the alleged false or fraudulent pretenses were not false.

     7.      Any documents or information indicating or tending to establish that the alleged false or fraudulent pretenses were not material.

     8.      Any documents or information indicating or tending to establish that a third person was responsible for the financial transactions at issue in any count of the indictment.

     9.      Any document or information indicating or tending to establish that Sadr engaged in any conduct that forms the basis of the indictment in reliance upon advice provided by counsel or accountants.

     10.      Any document or information (in whatever form) that could be used to impeach any potential government witness, or any person whose statements will be introduced pursuant to Fed. R. Evid. 801(d)(2)(C), (D), or (E), including but not limited to:

          a.      Any document or information relating to any conviction, arrest, or criminal record of, and any criminal charge brought against, any potential government witness;

          b.      Any document or information relating to promises, consideration, or inducements made to any potential government witness, whether directly to the witness or indirectly to the witness' attorney, friends, family, employer, business associates, or other culpable or at risk third-party. "Consideration" means anything of value or use, including immunity grants, whether formal or informal, witness fees, transportation or relocation assistance, money, dropped or reduced charges or suggestions of favorable treatment with respect to any federal, state or local criminal, civil, or administrative matter, expectations of downward departures or motions for reduction of sentence, considerations regarding forfeiture of assets, or stays of deportation or other immigration status considerations;

          c.      Any document or information tending to show the bias of a potential government witness, including animosity toward Sadr, animosity toward any group or entity of which Sadr is a member or with which Sadr is affiliated, a relationship with the alleged victim, or known but uncharged criminal conduct that may provide an incentive to curry favor with a prosecutor;

          d.      Any document or information affecting the reliability of a potential government witness's testimony, including known alcohol or substance



abuse, mental health issues or other issues that could affect the witness's ability to perceive and recall events;

e.       Any document or information relating to any inconsistency in statements given by any potential government witness;

f.       Any document or information relating to any inconsistency between agents' and/or prosecutors' rough notes and FBI 302s or other memoranda of interviews of any potential government witness;

g.       Any document or information bearing adversely on the character or reputation for truthfulness of any potential government witness; and

h.       Each specific instance of conduct from which it could be inferred that any potential government witness is untruthful.

11.     The date of and participants in each and every interview (including not only interviews conducted by the U.S. Attorney's Office or the Manhattan District Attorney's Office, but also interviews conducted by third parties), debriefing, "queen for a day" session, proffer, deposition, or other statement or description of the alleged facts made by each potential government witness (whether directly or indirectly, such as a proffer made by counsel).  In addition, please specify, as to each such witness, the first date on which the witness made any allegation that Sadr engaged in any allegedly unlawful conduct or any conduct alleged in the indictment.

As you are aware, New York has adopted Rule of Professional Conduct 3.8, entitled "Special Responsibilities of Prosecutors and Other Government Lawyers," which provides that a prosecutor "shall make timely disclosure to [the defense] of evidence or information known to the prosecutor or other government lawyer that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the sentence . . . ."  Rule 3.8(b).  The Supreme Court has recognized that Rule 3.8 imposes a higher standard on prosecutors than the standards mandating disclosure of exculpatory evidence under *Brady*.  *See Kyles*, 514 U.S. at 437 ("[*Brady*] requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate."); ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993) ("A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused"); ABA Model Rule of Professional Conduct 3.8(d) (1984) ("The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense").

We contend that the foregoing categories of information constitute *Brady* and Rule 3.8(b) material, and that disclosure should take place immediately.  Sadr further requests that the



government identify with particularity and provide copies of all materials that qualify as *Brady* and Rule 3.8 material, as described above.  Please advise us promptly whether the government will be producing *Brady* material immediately even if it is contained in what might otherwise be considered as *Jencks* material, or whether you take the position that you are not obligated to produce such material at this time.

We also request the underlying source material for any *Brady* and Rule 3.8(d) information, as opposed to any summary letter or paraphrased description of the information.  Please advise us promptly whether the government will not be producing underlying source material.

For purposes of the *Brady* doctrine, "the format of the information does not determine whether it is discoverable."  U.S. Attorneys' Manual § 9-5.002.B.5 (2018).  For example, material exculpatory information that is provided "during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email."  *Id.*  We therefore request that all such information be memorialized and produced to Sadr.

**V.      Purportedly Privileged Material**

Sadr specifically requests that the government produce all documents or information (in whatever form) produced to the government—or over which the government otherwise has custody, control, or possession—that are responsive to Sadr's discovery and *Brady/Giglio* requests contained herein or that the government would otherwise be legally required to produce, over which any individual or entity has asserted the attorney-client privilege and/or the attorney work product doctrine.  This request applies to all such documents produced pursuant to (a) a non-waiver agreement between any individual or entity and the government, (b) a court order pursuant to Fed. R. Evid. 502, or (c) a court order concluding that the documents are covered by the crime-fraud exception to the attorney-client privilege.

Sadr also requests that you identify any person or entity that has asserted any attorney-client privilege, work product privilege, common interest privilege, or any other privilege as the basis for withholding or not producing, in whole or in part, any documents to the government or the grand jury during the investigation.  Sadr further requests that you provide all documents (including all privilege logs) with respect to the assertion of or challenge to any such claimed privileges.  This request specifically encompasses all pleadings, court orders, correspondence, and other material related to any grand jury litigation by the government in which it challenged any assertion of any  privilege.

**VI.      Criminal Records**

Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, Sadr requests copies of his prior criminal record, if any.

September 25, 2018
Page 9



### VII.    *Jencks* Material

Pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure, Sadr requests that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case-in-chief and all statements of those witnesses in the possession, custody, or control of the government or any other government entity, including, but not limited to, notes of interviews, FBI 302s, or other summaries prepared by government attorneys or agents, and grand jury transcripts and any other witness statements. We request that the government begin providing this material as soon as possible, or in any event no later than ninety (90) days prior to the start of trial.

### VIII.   Scientific Evidence

Pursuant to Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure, Sadr requests documentation relating to all requests for, and the results of, physical or mental examinations, scientific tests, or experiments that were conducted in connection with the investigation of the charges contained in the indictment.  This includes, but is not limited to:

      a.    all forensic examinations of any computer hard drive, handheld cellular telephone or mobile device that Sadr possessed or to which Sadr had access;

      b.    all handwriting exemplars, handwriting samples, handwriting or document analyses, and all documents examined or used in or related to such analyses;

      c.    all fingerprint and palm print exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts, and all documents examined or used in connection with, or that relate to, those opinions; and

      d.    all polygraph examinations, psychological stress examinations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth, or to refresh a witness' memory, and all documents that refer or relate to such examinations.

### IX.    Other Crimes Evidence

Pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rules 403 and 404(b)(2) of the Federal Rules of Evidence, Sadr requests that the government disclose all evidence of similar crimes, wrongs, or acts, allegedly committed by Sadr (or any person alleged to have been acting pursuant to his instructions), upon which the government intends to rely on at trial.

September 25, 2018
Page 10



### X.     Suppression Issues

1.     As a predicate to potential motions pursuant to Rule 12(b) of the Federal Rules Of Criminal Procedure, *see* Rule 12(b)(4)(B), Sadr requests that he be informed:

  a. Whether the government intends to offer into evidence any statement made by Sadr or any family member, and the substance of any such statement;

  b. Whether any evidence in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence;

  c. Whether any evidence in the government's possession, custody, or control was obtained through electronic or mechanical surveillance, including without limitation, wiretaps, body wires, pen registers, and/or surveillance of telephone calls, and a description of such evidence;

  d. Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence;

  e. In connection with any tape recording, wiretaps, or other surveillance of the defendant during the investigation of the allegations of the indictment or any related allegations, Sadr seeks:

    i. The names and addresses of all such persons whose personal or business telephones the government tapped or monitored, or whose conversations or actions the government monitored by other means without the person's knowledge;

    ii. Transcripts or other records of the statements or conversations monitored;

    iii. The original recorded tapes created during such surveillance;

    iv. The procedures used to conduct such surveillance; and

    v. The authority under which such surveillance was conducted.

  f. Whether any evidence in the government's possession, custody, or control was obtained through a mail cover and/or trash cover and a description of such evidence; and

  g. The identities of any informant or undercover agent employed by the government during its investigation of the charges of the indictment.



2.      Sadr requests that the prosecution disclose whether it intends to offer in its case-in-chief, as a statement by the defendant, any of the following, and that it provide the substance of any such statement:

a.      Any statement as to which the defendant allegedly manifested his adoption or belief in its truth.  *See* Fed. R. Evid. 801(d)(2)(B).

b.      Any statement made by another which was purportedly authorized by the defendant.  *See* Fed. R. Evid. 801(d)(2)(C).

c.      Any statement made by an agent or servant of the defendant concerning a matter within the scope of his agency or employment made during the existence of such a relationship.  *See* Fed. R. Evid. 801(d)(2)(D).

d.      Any statement made by an alleged co-conspirator of the defendant during the course and in furtherance of any alleged conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E).

## XI.      Hearsay

Sadr requests notice of any hearsay statement that the government plans to offer at trial under Federal Rule of Evidence 807, including its particulars, the declarant's name and address, and other information giving Sadr a fair opportunity to meet the statement.  Fed. R. Evid. 807(b).

## XII.      Charts and Summaries

Pursuant to Fed. R. Evid. 1006, Sadr requests that he be advised whether the government will seek to offer any chart, summary, or calculation in evidence and, if so, (1) that all such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

## XIII.      Electronically Stored Information

Sadr requests that the government comply with the "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" issued by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System in February 2012.  To that end, Sadr requests the ability to "meet and confer" with the government as needed to discuss the nature, volume, and mechanics of the government's production of ESI discovery.  Among other things, Sadr makes the following requests:

1.      The government should produce ESI received from third parties in the format it was received.  However, if the government has further processed ESI received from third parties, such as by adding load files, converting native files to TIFF images, extracting metadata or other coding, or making electronic files



searchable, the government should produce such enhanced ESI in discovery to save Sadr the expense of replicating this work. Sadr does not seek any government attorney work product by this request.

2.   The government should produce a table of contents describing the general categories of information available as ESI discovery in order to expedite Sadr's review of discovery and avoid discovery disputes, unnecessary expense, and undue delay. Further, the government should produce the cover letters that accompanied and described the third party productions of ESI and other documents to facilitate Sadr's review.

3.   For all ESI produced from a seized, searched, or subpoenaed third-party digital device (e.g., computer, hard drive, thumb drive, CD, DVD, cell phone, Blackberry, iPhone, Android, smart phone, smart watch, or personal digital assistant), the government should identify the digital device that held the ESI, identify the device's owner or custodian, and identify the location where the device was seized, searched, or from where it was produced.

4.   The government should produce any materials received in paper form in converted digital files that can be viewed and searched. These materials should be produced in multi-page TIFF and OCR format where each document is one file that may have multiple pages. Alternatively, a less preferable option would be production in multi-page, searchable PDF format. Under no circumstances should paper materials be converted into single-page TIFF images without document breaks.

5.   All production of ESI should maintain parent-child relationships between documents, such as where an email (the parent document) has attachments (the child documents).

## XIV.   Bill of Particulars

We also adopt Arnold & Porter's August 23, 2018 letter requesting a bill of particulars regarding the allegations in the indictment. We need specification of those allegations in the indictment to permit Sadr to prepare to defend the charges against him. Please advise us whether the government will provide the requested information so that we can determine whether it will be necessary to move for a bill of particulars under Federal Rule of Criminal Procedure 7(f).



September 25, 2018
Page 13

       Please let us know promptly whether there are any requests set forth in this letter with which you decline to comply.  We are available to discuss any of the foregoing requests at your convenience.  We reserve the right to supplement these requests as we continue to review the discovery material and prepare for trial.  Thank you for your consideration.

                         Sincerely,

                         Brian M. Heberlig