

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

>  Re:   *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020. The Government has stipulated to the authenticity of GX 411 if the defense wishes it as a defense exhibit, and consents to the curative instruction proposed by the defense yesterday. (*See* Dkt. No. 274 at 2). The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

### I.  The Government's Review

In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team: AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States Attorney ("SAUSA") Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2] In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3] The emails at issue are attached as Exhibit A. In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II. The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank. The Commerzbank investigation commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System. The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately 2002 and 2008. During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to

---

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the undersigned preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case. *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and. Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation. The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States. One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

OFAC between March 2010 and October 2014.  GX 411 was one such disclosure.[5]  In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

### III.  The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant.  On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:

> For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spanrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S., including, but not limited to, the following wire transfer information:
>
> 1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
> 2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ. (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
> 3. Possible Account Number: IBAN CH7708530519663100203
> 4. Possible CHIPS System Sequence Number: 0262787
> 5. Possible Credit/Debit Reference Number: FAAS109400150500
> 6. Possible Transaction Reference Number: 5111500094FC
> 7. Possible Transaction Date: 4/4/2011
> 8. Possible Amount: USD $29,442,967.57

Ex. A at 4.  In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case.  GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations.  Ex. A at 6.  During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, SAUSA

---

[5] SAUSA Lynch has been unable to determine when specifically DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide grand jury testimony. SAUSA Lynch also offered in the email "to provide you with information so you can take action on your own if so desired." *Id.* On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief"). Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers. Ex. A at 10. During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation. In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY. Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails. *See* Ex. A at 12-14. During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation. The phone call did not happen until September 21, 2017. *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened."). On that day, SAUSA Lynch spoke to OFAC Officer-1. Ex. A at 11. During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges. Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case. *Id.*; *see* Ex. A at 26-47 (the "Presentation"). OFAC Officer-1 responded: "[T]hanks for passing along the information below/attached. We'll take a look and will get back to you." *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche. Ex. A at 15. OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have." *Id.* SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email. Ex. A at 16. Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case. *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse. *See* Ex. B. AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million, which is described in GX 411. AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411. That same day, SAUSA Lynch located GX 411 in a hard copy file at his DANY office; SAUSA Lynch had

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

segregated letter from Commerzbank's other voluntary disclosures and stored it in the folder, but does not recall when he did so. SAUSA Lynch then sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411 and said: "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment." None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email. SAUSA Lynch recalls that he and AUSA Lake discussed the substance of GX 411 and whether to introduce it in the Government's case-in-chief. At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been. AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020. GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails. After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included. The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense. At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief. AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

### IV. OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411. During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter. OFAC reported further that the absence of GX 411 from this database may have been caused by modifications to the database in approximately 2012. In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter. As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who were

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

                                          Respectfully submitted,

                                          GEOFFREY S. BERMAN
                                          United States Attorney

                              By: _____/s/_____
                                   Jane Kim / Michael Krouse / Stephanie Lake
                                       Assistant United States Attorneys
                                   Garrett Lynch
                                       Special Assistant United States Attorney
                                   (212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)