# **<u>EXHIBIT A</u>**

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

August 31, 2015

**VIA CERTIFIED MAIL**
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: Investigation No. M2013-00223036

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015.** In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@danv.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**

Please note that *electronic copies are preferred.* If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | BUSINESS RECORDS AFFIDAVIT |
| -against- | STATE OF NEW YORK |
| John Doe, | COUNTY OF NEW YORK |
| Defendant. | M2013-00223036 |

I _____ _____, declare that I am a duly authorized custodian
of the records, or other employee or agent, of _____ (*name
of business*), and am familiar with the record keeping practices of
_____ (*name of business*).  I make this affidavit pursuant to New
York State Criminal Procedure Law Section 190.30(8).

Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account
number _____. These pages contain the following types of records
[*list or description of records*]:

_____     _____

_____     _____

_____     _____

I am familiar with the above-described records.  These records were made in the regular course
of business, and it was the regular course of such business to make and keep these records.  The
records were made at the time of the recorded act, transaction, occurrence or event, or within a
reasonable time thereafter.  The person who made these records was under a business duty to do
so accurately.

*False statements made herein are punishable as a Class A
misdemeanor pursuant to P.L. § 210.45.*

X _____     _____
   Signature (Deponent)                             Date

# SUBPOENA
### (Duces Tecum)
## FOR A WITNESS TO ATTEND THE
# GRAND JURY

In the Name of the People of the State of New York

### To: Commerzbank AG

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, **as a witness in a Grand Jury investigation:**

**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**

**AND,** YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

### SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

**YOU ARE ORDERED not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.**

Dated in the County of New York,
August 31, 2015

So Ordered:

CYRUS R. VANCE, JR.
**District Attorney, New York County**

_____
Justice of the Supreme Court
State of New York

**PT. 1 AUG 3 1 2015**
**HON. ABRAHAM L. CLOTT**

By: _____
Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

Note: In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to Thomas.M@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

*Case No.: M2013-00223036*

## EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015

ITEMS TO BE PRODUCED are those in the actual and constructive possession of ~~Citibank, N.A.~~ *Commerzbank AG*
and all entities, agents, officers, employees, officials, over which it has control, including its   *MJT  TWD*
subsidiaries:

*Sep. 15, 2015*

For the time period of January 1, 2010 through the present (date of this subpoena), provide
electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating
from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano
(aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global
Investments Ltd., Clarity Trade and Finance S.A., Spanrise Holding GmbH, Petroleosa de
Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the
following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ
   (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

## DEFINITIONS AND INSTRUCTIONS

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth
below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities;
(ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership;
(iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same
signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be
construed as is necessary in each case to make the request to produce inclusive rather than exclusive,
and are intended to convey, as appropriate in context, the concepts of comprising, respecting,
referring to, embodying, evidencing, connected with, commenting on, responding to, showing,
refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning,
defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called
for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make
each request to produce inclusive rather than exclusive.

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Thursday, May 19, 2016 11:22 AM |
| **To:** | Conroy, Christopher |
| **Subject:** | FYI |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

Ex. A at 6

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Monday, August 1, 2016 12:36 PM |
| **To:** | 'Michael.Dondarski@treasury.gov' |
| **Subject:** | Request |

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case. Who's the best person for us to contact about either or both? Thanks!

Best,
Garrett

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Wednesday, August 3, 2016 9:26 AM |
| **To:** | Hochhauser, Rachel; Maloney, Christina |
| **Subject:** | FW: Request |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| | Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10th) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

1

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 9

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Rosanna.Wells@treasury.gov |
| **Sent:** | Monday, August 8, 2016 9:08 AM |
| **To:** | Lynch, Garrett |
| **Cc:** | Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov |
| **Subject:** | RE: Thanks |

Thanks Garrett.  I'm looping in the two OFAC Enforcement Officers who were on the call.

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 10

## Lynch, Garrett

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Friday, September 22, 2017 5:44 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov |
| **Subject:** | RE: Case |

Garrett,

It was great speaking with you all yesterday, and thanks for passing along the information below/attached.  We'll take a look and will get back to you.  And thanks for the well wishes!

Have a great weekend,

Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday.  As always, great to chat with you.  Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence.  Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend.  Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 11

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Wednesday, September 20, 2017 4:08 PM |
| **To:** | Lynch, Garrett |
| **Subject:** | RE: Call |

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now.  Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above.  I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there.  Would you be able to do a call tomorrow or Friday?  Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ex. A at 12

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here.  Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation!  Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards.  Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00.  Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir!  No worries – I know how slammed you all are.  I'm leaving on Vacation on Wednesday, so does early in the week work?  My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30.  It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski).  I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting.  Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike!  I'm very happy for you and Rachel – join the club!  You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though...

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory.  Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

2

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir. I hope this email finds you well and that you've been enjoying the summer with the family. I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail. I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up. Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY. What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir! I hope the summer is treating you well so far in the swamp. If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland. We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA. It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis. We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

Ex. A at 14

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Tuesday, September 26, 2017 4:00 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov |
| **Subject:** | RE: Case |

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 15

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Thursday, March 28, 2019 11:34 AM |
| **To:** | Lynch, Garrett |
| **Subject:** | CSE TransTel |
| **Attachments:** | 20170727_transtel_web post.pdf; transtel_settlement.pdf |
| **Importance:** | High |

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company.  The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A. These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at** www.treasury.gov/ofac/enforcement.

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.** CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case. Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters. TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

---

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. See 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran. TransTel initiated the wire transfers from its account with the Bank. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, <u>please see the Settlement Agreement between OFAC and CSE Global and TransTel here.</u>

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A. OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology.  When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



## DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

### SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I.    PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others.  OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector.  At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II.    RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

---

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation.  Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341.  *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety.  *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012).  For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

ENF 41441
CSE Global Limited and CSE TransTel Pte. Ltd.

## III.   FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company). At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List"). The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders. CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes. All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List. On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions." Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.
[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

2

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran. (*See* attached Penalty Calculation Spreadsheet). These transactions were processed through the United States and caused multiple financial institutions—including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran. TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran. As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "...unlawful for a person to violate...or cause a violation of any...regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction ... [that] causes a violation of ... any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case. Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

**IV.    Terms of Settlement**

OFAC and Respondent agree as follows:

1.  In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2.  In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

    A.  Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

        (i) sign, date, and mail an original signed copy of this Agreement to: ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220. Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

        (ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**. Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**. Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

    B.  To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

    C.  That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured. In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

---

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Respondent accepts the terms of this Settlement Agreement this  15  day of  July , 2017.

Signature

LIM BUON KUENG

Respondent's Printed Name (or in the case of an
entity, the name of Respondent's Duly Authorized
Representative)

DIRECTOR  CSE TransTel Pte Ltd &
DIRECTOR  CSE GLOBAL LIMITED

Printed Title of Respondent's Duly Authorized
Representative and Name of Entity (if applicable)

☒    Please check this box if you have not enclosed payment with this Agreement and will
instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the
Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: July 19, 2017

John E. Smith
Director
Office of Foreign Assets Control

Enclosure

6

# Venezuela Housing Case

1

I.    Introduction

II.   USD Payments

III.  Potential Charges

IV.  Company Structure

V.   Individuals

VI.  Proof of Payment

VII. Knowledge of Sanctions/Efforts to Hide Iranian Connection

2

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

3

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013

- Total amount cleared: **$115,508,527.28**

- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

4

# EVIDENCE

- Emails (mostly from the Iranian side of the "Project")

- Payment records (SWIFT messages and wires)

- Bank account records (limited)

- 2 possible fact witnesses (significant availability issues with both)

- Expert testimony (from banks, FED, and OFAC)

5

# IV. Company Structure



6

# <u>Stratus International Contracting ("Stratus")</u>

- Established in 1978 in Tehran, Iran by **Mohammad SADR**

- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007

- Builds infrastructure projects in and outside of Iran

- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)

- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

7

- Stratus establishes a new subsidiary (IIHC) and a "Venezuela Project Executive Committee" in 2009 to manage and oversee the execution of the project in Venezuela.
- Committee members over time include:
  - **Mohammad SADR** (Chairman)
  - **Ali SADR**
  - **Behrooz ZANGENEH**
  - **Ahmad SAFAVARDI**
  - **Bahram KARIMI**
  - **Mustafa CETINEL**
  - **Ekrem CINAR**

8



**Iranian Int'l. Housing Co.**

This mass housing production project is constructed for 60,000 inhabitants in an area of 318 hectares on the outskirts of Ojeda in Solia province.

# V. Individuals



**Venezuela Committee (Iran)**
Chairman: **Mohammad SADR**
Members: **Bahram KARIMI, Farshid KAZERANI, Ali SADR; Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR; Ahmad SAFAVARDI**i

**Hussein TEHRANI (Iran)**
Chairman/CEO/President of IIHC

**Farshid KAZERANI (Iran)**
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting

**Mustafa CETINEL (Istanbul/VE)**
Project Director

**Behrooz ZANGENEH (Iran)**
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC

**Ekrem CINAR (Turkey)**
Vice Project Manager

**Bahram KARIMI (Iran/VE)**
Project Manager

**Ahmad SAFAVARDI (US/VE)**
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US

**Numerous Iranian IIHCO employees in VE**

**\*Parentheticals indicate where people were physically located at relevant time period**

10

Ex. A at 35

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information "as requested:"**

**Subject:** USD Account
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Thu, 30 Dec 2010 17:39:59 -0500
**To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>

Salam,

Please find attached the USD account information as requested.

Best regards

Intermediary Bank:  JPMORGAN CHASE BANK (New York, New York)
SWIFT CODE: CHASUS33
Banking Code: FED ABA 02100021


Bank of Beneficiary:  HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
SWIFT Code: SHHBCHZZ
(USD)Account No: 5196631203
IBAN: CH7708530519663100203


Beneficiary:  Stratus International Contracting J.S.
Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

11

Ex. A at 36

**Instruction Letter and payment for IPC 11-13:**

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|------|-----------|---------------|-----------|-----------|-----------|--------|-------------|
| 7/5/2011 | $ 20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hyposwiss Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |



**ZANGENEH** signature

12

Ex. A at 37

# Wire Sheet

| | |
|---|---|
| **Transaction Details for TRN: 3251400186fs** | **Region: US** |
| **Instruction Date:** | 7/5/2011 |
| **Payment Date:** | 7/5/2011 |
| **Transaction Amount:** | $20,692,579.48 |
| **Transaction Type:** | BT |
| **Customer Swift ID:** | SHHBCHZZ |
| **Debit Fin Entity:** | 01 |
| **Credit Fin Entity:** | 01 |
| **Credit Reference:** | OOE9996A000394 |
| **Debit Reference:** | OOE9996A000394 |
| **Sender's ID:** | SWF/BESCPTPLOSF |
| **Bene Flag:** | B |
| **Order Party:** | /PT50000709030009508180330 |
| | 1/PETROLEOS DE VENEZUELA SA |
| | 2/AV LIBERTADOR ED PETROLEOA VANEZU |
| | 2/TORRE ESTA LA CAMPIA CARACAS |
| | 3/VE/VENEZUELA |
| **Debit Party:** | 00000011728748 |
| | BES SFE FUNCHALOFFSHORE MADEIRA |
| | DPC – SERVICO RECONCILIACAO |
| | BANCARIA |
| | LISBON PORTUGAL 1250--142 |
| **Details of Payment:** | 1590011835 |
| **Credit Party:** | 00000011835873 |
| | HYPOSWISS PRIVATBANK AG |
| | BAHNHOFSTRASSE/SCHUETZENGASSE 4 |
| | POSTFACH 3180 |
| | ZURICH SWITZERLAND 8021 - |
| **Account Party:** | SHHBCHZZ |
| **Bene:** | /CH8008530518206100203 |
| | CLARITY TRADE AND FINANCE S A |

13

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR

IPC 11–12–13

**HYPOSWISS**
P R I V A T E   B A N K

Hyposwiss Private Bank Ltd.
Stauffacherstrasse 41
8004 Zürich
Phone +41 (0)44 214 31 11
Fax +41 (0)44 211 52 23
www.hyposwiss.com
BIC SHHBCHZZ

Your contact person:
Urs Schneider
Direct +41 (0)44 214 31 94
urs.schneider@hyposwiss.ch

Zurich, July 5, 2011
Reference number: 51805412

**Clarity Trade & Finance SA**
Current account USD 5182061.203
Custody account no.  5182061.01
IBAN CH80 0853 0518 2061 0020 3

Sent electronically
Clarity Trade & Finance SA
c/o Kessler Wassmer Giacomini & Partner
Wächlenstrasse 5
8832 Wollerau

## Credit advice

On July 5, 2011 we booked the following payment

|  | | Currency | Amount |
|---|---|---|---|
| Ordered by | 1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA   CARACAS<br>3/VE/VENEZUELA | | |
| Reference | 1590011835 | | |
| Original Amount | USD 20'692'579.48 | | |
| Amount | | USD | 20'692'579.48 |
| **To your credit** | **Value date July 5, 2011** | **USD** | **20'692'579.48** |

14

# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

15

# VII. <u>Knowledge of Sanctions/Efforts to Hide Iranian Connection</u>

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR's** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

16

Ex. A at 41

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

> **Subject:** Re: Conference Call with Mercantil Valores Uruguay
> **From:** Ali Sadr <ali.sadr@stratus-global.com>
> **Date:** Fri, 16 Jul 2010 12:06:04 –0400
> **To:** HBM Funds – Alwin de Jongh <alwin.dejongh@hbmgroup.com>
> **CC:** HBM Funds – Herman Oosten <Herman.Oosten@hbmgroup.com>
>
> Dear Alwin.
>
> NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.
>
> The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.
>
> Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.
>
> Hope this helps.

17

Ex. A at 42

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

There's no Iranian behind any of the accounts provided.
This is a simple answer.

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:
Salam
I tried call you several time but could not reach you. please call me urgently.
Client asked if the owner of the account in the intermmidate bank is Iranian?

Bahram karimi
Project Manager

18

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

---

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

---

19

Ex. A at 44

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

**Subject:** Fwd: Payment USD 6'000
**From:** Linet Estiroti <linet.estiroti@perseswiss.ch>
**Date:** Thu, 3 Jul 2014 19:41:34 +0300
**To:** Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual. Please advise what to do. Regards, Linet Estiroti

20

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards
Sent from my BlackBerry® Smartphone supplied by Swisscom

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

Furher to our conversation in Istanbul I suggest two names for the change as follows:

1. International Industrial Housing Company

2.International Iron Housing Company

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

21

Ex. A at 46

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGANEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 –0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

22