

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 10, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

    The Government respectfully submits this letter regarding: (1) which parts of Mr. Kim's testimony should be struck; and (2) the mechanics to be employed in connection with the striking.

    **I.**    **Testimony to be Stricken**

    The defense proposes striking the following segments of Mr. Kim's testimony:

- Tr. 473 (lines 10-19)
- Tr. 501 (line 15) – Tr. 502 (line 2)
- Tr. 502 (line 25) – Tr. 503 (line 5)
- Tr. 507 (line 5) – Tr. 510 (line 25)
- Tr. 600 (lines 23-25)
- Tr. 601 (line 4-9)
- Tr. 652 (line 18-20)
- Tr. 653 (line 19) – Tr. 656 (line 11)
- Tr. 659 (lines 1-5)

    The Government consents to the Court striking the following testimony from Mr. Kim regarding the concept of strict liability, only:

- Tr. 501 (line 22)-Tr. 502 (line 2)
- Tr. 600 (lines 23-25)
- Tr. 652 (lines 18-20)

The Government does not dispute that striking testimony related to this more limited topic is appropriate because defense counsel could have sought to impeach Mr. Kim's testimony regarding

strict liability by inquiring about his knowledge of: (1) Commerzbank's letter to OFAC regarding the April 4, 2011 payment, (2) the prosecution team's September 2016 communication with OFAC regarding evidence related to this case, and (3) OFAC's apparent inaction in response to these two sources of information. That said, appropriate remedial steps have already been imposed, including today's adverse inference instruction and the Government's execution of the stipulation regarding these issues, and the defense has declined the Court's further invitation to recall Mr. Kim and put these questions to him.

In this context—while the Government in no way seeks to minimize the disclosure issues that have been discussed with the Court and counsel—the Government respectfully submits that the Court should not strike Mr. Kim's testimony concerning OFAC's general practices and processes. Mr. Kim testified on cross examination that he was not aware of any OFAC action in this case, and the parties have so stipulated. *See* Tr. 580 ("Q: So, to your knowledge, this matter was never investigated by OFAC, correct? A: In my knowledge, no. Q: Ok. To your knowledge, was there ever a referral made by J.P. Morgan to OFAC relating to this case? A: In my knowledge, no."); DX 1901-R. Accordingly, there is no basis to strike Mr. Kim's general expert testimony regarding OFAC's role in administering the U.S. sanctions program, which included:

(1) The blocking of assets;

(2) The fact that U.S. correspondent banks *can* be held liable for sanctions violations, even if they do not know of the Iranian connection to the transaction;

(3) The fact that OFAC's mission is made more difficult to perform when parties hide Iranian connections;

(4) The various penalties, in general, that OFAC can impose on banks, ranging from cautionary letters to monetary penalties; and

(5) The fact that banks are a source of information that can lead OFAC to open an investigation or pursue enforcement actions.

During this testimony, Mr. Kim did not discuss any of the facts of this case, or make any representations about what, if anything, OFAC would have done had it known these facts. Accordingly, and particularly in light of the defense's strategic choice not to recall Mr. Kim, the additional testimony identified by the defense should not be stricken.

## ~~I.~~II. Mechanics of Striking the Testimony

The Government does not object to the Court identifying specific page and line numbers to be stricken outside the presence of the jury. The Government respectfully submits, however, that the jurors must be given, at minimum, a general description of the testimony that they are no longer permitted to consider. The defense proposal that the Court instruct the jury that unspecified "parts" of Mr. Kim's testimony are stricken would leave the jurors to guess which parts of the testimony are still in the record. *See* Dkt. 291 at 3. While the Government understands that the

defense feels there is a strategic disadvantage to identifying the stricken testimony to the jury in some fashion, it bears repeating that the defense has elected to pursue this strategy rather than to recall Mr. Kim. *See id.* Moreover, the risk of juror confusion regarding the state of the record far outweighs this strategic consideration, as the jury must be presumed to follow the Court's instruction to disregard the testimony, which the Court can reiterate as a general matter during its final instructions following summations. *E.g.*, *United States v. Cox*, 324 F.3d 77, 87 (2d Cir. 2003) ("[A]bsent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court.").

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:    /s/
Jane Kim / Michael Krouse / Stephanie Lake
   Assistant United States Attorneys
Garrett Lynch
   Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)