# Exhibit B
*to May 22, 2020 Letter from Ali Sadr*

FD-1057 (Rev. 5-8-10)

# FEDERAL BUREAU OF INVESTIGATION
## Electronic Communication

**Title:** ▮ Meeting with BAHRAM KARIMI on 09/14/16     **Date:** 10/06/2016

**CC:** JohnArthur Sgroi
Mary F. Gleason
Sherri E Onks
William I Wikstrom

**From:** NEW YORK
   ▮
   **Contact:** Benjamin Denk, ▮

**Approved By:** SSA William I Wikstrom

**Drafted By:** Benjamin Denk

**Case ID #:** 420U-NY-4186159     ▮ STRATUS GROUP of IRAN;
Iran Counter-proliferation

**Synopsis:** ▮ To document the results of a personal meeting with BAHRAM KARIMI in Vancouver, BC, Canada on 09/14/16.



**Full Investigation Initiated:** 01/23/2014

**Reference:** 420U-NY-4186159-Crim Serial 36
420U-NY-4186159-Crim Serial 35

**Details:**

The purpose of this Electronic Communication is to document the results of a discussion with BAHRAM KARIMI subsequent to his interview with Special Agent Benjamin Denk, FBI New York, and Christina Maloney, Assistant District Attorney, New York County District Attorney's Office (DANY) in Vancouver, BC on 09/14/16.

As background, SA Denk and ADA Maloney, among others, previously interviewed KARIMI in Vancouver, BC in June 2016, the results of which were memorialized in a 302 and serialized to the case file. SA Denk and ADA Maloney conducted a follow-up interview of KARIMI on 09/14/16 at the Fairmont Waterfront Hotel located at 900 Canada Place Way, Vancouver, BC, Canada V6c3L5. The results of that interview were also memorialized in a 302 and serialized to the case file. Royal Canadian Mounted Police (RCMP) Cpl Sean Kinney was present during the 09/14/16 interview and follow-on discussion.

Immediately following the 09/14/16 interview, SA Denk explored with KARIMI the possibility of traveling to New York to testify before a Grand Jury convened in New York State Court. KARIMI was advised as to the specifics of the Grand Jury and all that testifying entailed, including the confidentiality of the Grand Jury process. KARIMI questioned the reason for having him travel all the way to New York to provide information he already provided during his meetings with the FBI in Vancouver. KARIMI then indicated he had no problem meeting with the FBI in Vancouver to answer questions but was not interested in traveling to New York. KARIMI expressed concerns as to why he was unwilling to travel. First, KARIMI was fearful for his life and the lives of his family members. KARIMI elaborated he could be killed in Iran for providing information to the FBI and he planned on returning to Iran in the next year. Second, KARIMI was adamant he would not take part in anything that could potentially get his friends, specifically MUSTAFA CETINEL and BEHROOZ ZANGENEH, in trouble. KARIMI further advised he would only testify before the Grand Jury if DANY guaranteed it would not charge CETINEL or ZANGENEH. KARIMI voiced his displeasure at the thought of having to testify as to the activities he was performing in Venezuela, at one point stating aloud neither he or anyone else broke any laws. KARIMI then accused the US government of creating a situation with its sanctions whereby it made it difficult

Title: ▮ Meeting with BAHRAM KARIMI on 09/14/16
Re: 420U-NY-4186159, 10/06/2016

for normal, hard working Iranians to earn a living. After expressing his displeasure and frustrations, KARIMI asked SA Denk what benefit he stood to receive by testifying.

After listening to KARIMI's list of concerns and demands, SA Denk conveyed his understanding of KARIMI's concerns with regards to his safety and that of his family. SA Denk advised he would take any and all available steps to minimize KARIMI's footprint in New York. Further, ADA Maloney advised KARIMI again as to the confidentiality of the Grand Jury process but specifically noted that complete confidentiality could never be guaranteed. Regarding KARIMI's demand that neither CETINEL or ZANGENEH be charged in exchange for KARIMI's testimony, SA Denk advised no one was in a position to guarantee anything or make any decisions at that time.

Lastly, SA Denk addressed KARIMI's question as to what benefit KARIMI stood to receive by testifying. ADA Maloney began by advising KARIMI that generally information provided by an individual during Grand Jury testimony will not be used against him/her. KARIMI responded he wasn't concerned about himself as he felt he had done nothing wrong. SA Denk conveyed his appreciation of KARIMI's cooperation to this point and that it was important his cooperation continue, specifically by testifying before a Grand Jury in New York. Outside of his continued cooperation, SA Denk advised he wasn't in a position to guarantee KARIMI any type of benefit. SA Denk thanked KARIMI for his time and concluded the meeting.

Title: ▮ Meeting with BAHRAM KARIMI on 09/14/16
Re: 420U-NY-4186159, 10/06/2016

♦♦

USAO_00503