

# HOWARD UNIVERSITY

*Excellence in Truth and Service*

School of Law
Criminal Justice Clinic

July 10, 2020

**VIA FIRST CLASS MAIL**
Clerk of the Court
U.S. District Court for SDNY
500 Pearl Street
New York, NY 10007

      RE:   *United States v. Ali Sadr Hashemi Nejad*
                18-cr-00224-AJN

Clerk of the Court:

Please find enclosed an amicus letter related to Judge Alison Nathan's Order of June 9, 2020 in the above-referenced case. Dkt. No. 350. The enclosed was transmitted by email to Judge Nathan's chambers, counsel for Mr. Ali Sadr, and government counsel. I ask that you file it on the case docket.

Please contact me at 202-997-3452 if you have any questions or concerns.

Thank you for your assistance with this request.

Sincerely,

Lucius T. Outlaw III
Supervising Attorney
Criminal Justice Clinic
Howard Univ. School of Law

ENCLOSURE



# HOWARD UNIVERSITY

*Excellence in Truth and Service*

School of Law
Criminal Justice Clinic

**VIA EMAIL & FIRST CLASS MAIL TO CLERK'S OFFICE**

Honorable Alison J. Nathan
U.S. District Court Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

July 7, 2020

RE:   *United States v. Ali Sadr Hashemi Nejad*
         18-cr-00224-AJN

Dear Judge Nathan:

The Criminal Justice Clinic ("CJC") of the Howard University School of Law submits the amicus letter in connection to the Court's Order, dated June 9, 2020, in the above referenced case. Dkt. No. 350. Specifically, the letter addresses the issue raised by item number nine (9) of the Court's Order, namely whether the "Court possesses continuing supervisory authority to determine if sanctions are appropriate for any ethical violations and/or prosecutorial misconduct." *Id.* at 4 (¶ 9). For the reasons expressed herein, and those put forward by Mr. Ali Sadr and his counsel, the CJC respectfully submits that the Court possesses such authority, and the Court should explore exercising it in this case.

*Brady* is a fragile constitutional protection because it rests on the integrity, forthrightness, and honesty of prosecutors. It is the prosecutor who controls access to the evidence collected by the government. It is the prosecutor who is responsible for reviewing that evidence with a full understanding of the allegation(s) charged against a defendant, and what the possible defenses to such allegation(s) *could be*, in addition to the defenses articulated by a defendant. And, most importantly, it is the prosecutor's responsibility to timely and effectively identify and produce any evidence that does and *may* undermine the government's case, and support a defense known *and not known* to the defense. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 432 (1995) ("a defendant's failure to request favorable evidence did not leave the Government free of all [its *Brady*] obligations."). As such, it is the prosecutor who is the gatekeeper to the *Brady*'s effectiveness and promise of due process. *United States v. Wolfson*, 289 F. Supp. 903, 914 (S.D.N.Y. 1968) ("In this posture the motion can only serve as a reminder of the heavy responsibility resting upon the prosecutor pursuant to the rule laid down in *Brady v. Maryland*.").

When a prosecutor fails in this critical gatekeeping function, it must fall to the Court to examine why the failure occurred, and levy punishment where necessary. The Court's ability to punish using sanctions must be a part of *Brady* to protect its fragile nature. *Brady* cannot be a robust and full protector of due process if violators face no repercussions other than a case dismissal. *Brady* offers little deterrence to individual prosecutors absent the possibility of suffering *personal* consequences for violating the constitutional rights of person who that prosecutor is seeking to convict and imprison. Indeed, how much



School of Law
Criminal Justice Clinic

*Excellence in Truth and Service*

of a constitutional due process right does *Brady* actually protect if there is no personal consequence for violating it?

The CJC also joins Mr. Ali Sadr's call that AUSA Lake's suggestion to "bury" *Brady* material "in some other documents," AUSA Kim's endorsement of that suggestion, and the government's related conduct – is a "textbook example of bad faith." Dkt. No. 355 at 1-2. The CJC offers the Court another perspective on why this is so, and why the government's justifications and arguments otherwise are hollow and fail to remove the troubling taint from the government's words and actions.

Our criminal justice system is an adversarial one. In many ways this nature is a positive thing. Adversarial competition drives and promotes innovation, creativity, and zealous advocacy. But the downside is that this nature also fosters a "must win" mentality that causes some prosecutors to lose sight that a person's liberty is at stake, and that primary concern is not winning a case, but rather justice and determining the truth of whether a defendant should be found criminally liable and responsible for certain conduct and outcomes. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when the accused is treated unfairly.").

Suggesting that the government "bury" exculpatory evidence reflects this competition/must win attitude that undermines the integrity and purpose of our criminal justice system. The sentiment behind AUSA Lake's suggestion (and AUSA Kim's endorsement) is obvious – lets comply with our *Brady* obligation, but do so in a way *during trial* that obfuscates the exculpatory importance of GX 411, and possibly leads to the defense not discovering the material and/or understanding its importance until it is too late. This sentiment should raise alarm bells for anyone who is a part of and cares about our criminal justice system. When prosecuting a person and attempting to take his/her/their liberty, the government's north star should be bringing the full truth to light, *especially when it is inconsistent with the allegations and charges faced by a defendant*, and not "burying" the truth to win a case. Indeed, in this instance, the government should have made a special and focused disclosure that highlighted the importance of GX 411 and that it had not been disclosed pre-trial. There is no place for dirty-pool when a person's liberty is at stake. *See United States v. Thomas*, 981 F.Supp.2d 229, 239 (S.D.N.Y. 2103) ("the Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials"); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) ("The Government cannot meet its *Brady* obligations by providing . . . 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information.") (cited by *Thomas*, 981 F. Supp. 2d at 239).

Moreover, it should be equally alarming that AUSA Lake felt comfortable putting the "burying" suggestion in writing, and that AUSA Kim was also comfortable endorsing the suggestion in writing. That these prosecutors felt comfortable writing about violating the spirit and letter of *Brady* and due process is chilling. Such comfort is gained through experience and environment. That is, these two prosecutors were comfortable memorializing their plan to tread on Mr. Ali Sadr's due process rights because they had: (1) done it before; (2) seen fellow prosecutors do it before; and/or (3) the culture of their office is one that such conduct is deemed acceptable. Indeed, the government's false *written* representation to this Court that it had designated GX 411 as a newly marked exhibit, further evidences that this USAO's culture concerning

2900 Van Ness Street NW | Washington, DC 20008
202.806.8082 OFFICE | 202.806.8436 FAX

 Howard.edu



*Excellence in Truth and Service*

School of Law
Criminal Justice Clinic

*Brady* is troubling. *See, e.g.,* Dkt. No. 350 (Order) at ¶ 4. To break this comfort, sanctions are needed – case dismissals clearly are not sufficient. *See, e.g., id.* at ¶ 7 (This Court noting that following an earlier *Brady* violation the USAO gave assurances that it would institute training that would prevent future *Brady* violations).

Finally, the government's conduct in this case cannot be not insulated from the post-George Floyd world in which we now live. One of the consequences of the events and protests of the past few weeks is that government authority – particularly policing and prosecuting authority – is no longer beyond accountability. When the government seeks to take the life and/or liberty of a person, their process for doing so must comply *fully* with constitutional standards and human decency. It is long time that this accountability consequence reach prosecutors who violate the letter and spirit of *Brady*.

Thank you for your attention and consideration.

Sincerely,

Lucius T. Outlaw III
Supervising Attorney
Criminal Justice Clinic
Howard Univ. School of Law

cc: Brian Heberlig, Esq.
AUSA Emil Bove, III
AUSA Shawn Crowley
AUSA Stephanie Lake
AUSA Jane Kim
*Sent to all above by email*

2900 Van Ness Street NW | Washington, DC 20008
202.806.8082 OFFICE | 202.806.8436 FAX

Howard.edu

Criminal Justice Clinic
Howard Univ. School of Law
2900 Van Ness St, NW
Washington, DC 20008

SDNY
Criminal Docketing
kh

10007-131608

Clerk of Court
U.S. District Court for SDNY
500 Pearl Street
New York, NY 10007