*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 57

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **To:** | Laroche, Matthew (USANYS); Denton, David (USANYS); Donaleski, Rebekah (USANYS) |
| **Cc:** | Bove, Emil (USANYS) |
| **Subject:** | FW: GX 411 (002).pdf |
| **Date:** | Monday, March 9, 2020 3:33:58 PM |
| **Attachments:** | GX 411 (002).pdf |



NEW YORK BRANCH

Department of the Treasury
Office of Foreign Assets Control
1500 Pennsylvania Avenue NW
Washington DC 20220

Vinay Jepal
2 World Financial Center, New York, NY 10281-1050
Telephone (212) 266-7200
Fax (212) 266-7235
vinay.jepal@commerzbank.com

June 16, 2011

**Re: Information Sharing – Stratus International Contracting Company**

Dear Sir/Madam:

Commerzbank AG, New York Branch (CBNY) would like to share the following information with OFAC. On April 20, 2011 CBNY's AML transaction monitoring system generated an alert, which involved a transaction for USD 29,442,967.57 value April 4, 2011.

The transaction was originated by Banco Del Tesoro, CA Banco Universal Caracas for its client BT / Fideicomiso / Fondo Chino Venezolano in Caracas, Venezuela. The beneficiary of the payment was Stratus International Contracting Company ("Stratus"), a client of Hyposwiss Privatbank AG, Zurich.

As per standard procedure, CBNY initiated a request for information to the remitting bank Banco Del Tesoro, CA Banco Universal Caracas, Venezuela to obtain details on both entities and their relationship. In the interim, CBNY conducted further due diligence and noted the following regarding Stratus from its website:

- Stratus was founded in 1978 in Tehran, Iran
- Stratus International specializes in providing contracting services to infrastructure projects such as roads, railways, dams, tunnels, airports and buildings.
- Stratus is presently working on a 7000 Apartment Unit "New Ojeda" Housing Development Project in Venezuela

On May 12, 2011, CBNY received a response from the bank in Caracas indicating the following:

- Stratus's physical address is Gardenya Plaza 5, K:3 D:3 (Floor 3, Suite3) 34758 Atasehir, Istanbul, Turkey
- Stratus is registered in Istanbul, Turkey (copy of the registration attached)
- Stratus provides construction services in Turkey, Dubai and Venezuela
- The purpose of the payment is for the construction of a 7000 apartment unit project "Proyecto Urbanismo Nueva Ciudad Fabricio Ojeda, in Cuidad Ojeda, Estado Zuila, Venezuela (same address as listed on Stratus' website)

Although Stratus is not listed as an SDN, and the payment does not indicate any direct involvement of Iran or with Iran, due to conflicting information between the website and the response forwarded by the bank in Caracas, CBNY believes it appropriate to share this information with OFAC since Stratus may be an Iranian Company.

Chairman of the Supervisory Board: Klaus-Peter Müller
Board of Managing Directors: Martin Blessing (Chairman), Frank Annuscheit, Markus Beumer, Achim Kassow, Jochen Klösges, Michael Reuther, Stefan Schmittmann, Ulrich Sieber, Eric Strutz, Martin Zielke

Commerzbank Aktiengesellschaft, Frankfurt am Main
Registered Office: Frankfurt am Main Reg.No. 32000
VAT No. DE 114 103 514

GOVERNMENT
EXHIBIT
411
18 Cr. 224 (AJN)



NEW YORK BRANCH

**Re: Information Sharing – Stratus International Contracting Company– Page 2**

We have added Stratus into our sanctions filter to monitor any future payments. Please note that apart from this transaction, there have not been any other payments involving Stratus processed by CBNY to date.

The purpose of this letter is to report the good faith efforts of Commerzbank AG, New York Branch in complying with applicable OFAC requirements and voluntarily informing OFAC of any information received during its investigation into possible sanctions-related entities.

Should you have any further questions concerning this matter, please do not hesitate to contact the signatories below.

Respectfully,

Commerzbank AG
New York Branch

Deepa Keswani
Head of AML/Anti-Fraud/Sanctions Compliance

Vinay Jepal
Sanctions Compliance Officer

Encls.

stratus intl payment

```
:LT Address                   :COBAUS3XA
 :transaction type             :202 COVER bank tfr favour 3rd bank
 :input from                   :COBADEFF
                                COMMERZBANK AG FRANKFURT
                                HEAD OFFICE
                                32-36 NEUE MAINZERSTRASSE
                                60261 FRANKFURT GERMANY
 :Validation Flag               :COV}
--------------------------------------------------------------------------------
{4: Text block:
    :20 /transaction reference number   :FAAS109400150500
    :21 /related reference              :FAAS109400150500
    :32A/value date                     :040411 USD 29,442,967.57
    :52A/ordering institution - BIC     :COBADEFF
                                         COMMERZBANK AG
                                         FRANKFURT AM MAIN
    :57A/account with inst - BIC        :CHASUS33
                                         JPMORGAN CHASE BANK, N.A.
                                         NEW YORK,NY
    :58A/beneficiary inst - BIC         :SHHBCHZZ
                                         HYPOSWISS PRIVATBANK AG, ZURICH
                                         ZURICH
    :50K/ordering customer              :/400887746602USD
                                         BT/ FIDEICOMISO / FONDO CHINO
                                         VENEZOLANO. AV GUICAIPURO. URB EL
                                         ROSAL. TORRE BANCO DEL TESORO.
                                         CARACAS - VENEZUELA.
    :52A/ordering institution - BIC     :BDTEVECA
                                         BANCO DEL TESORO, C.A. BANCO
                                          UNIVERSAL
                                           CARACAS
    :59 /beneficiary customer           :/CH7708530519663100203
                                         STRATUS INTERNATIONAL CONTRACTING
                                         J.S.
    :70 /details of payment             :REF: DESEMBOLSO NRO. 386 FONDO
                                         CHINO VENEZOLANO. CODIGO NRO.
                                         00579.
    :33B/amount                         :USD 29,442,967.57}
--------------------------------------------------------------------------------
 Entry   :          /SWIFT/ Date:110404 Time:02:44:17
                   Info:1111/001781
```





فارسی | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

- STRATUS is an Engineering, Construction, Management and Contracting Company by specializing in the field of Building Construction, Road Works and Water Works.
  STRATUS is Graded in three major categories: Read more...

- STRATUS has succeeded to recieve ISO 9001-2000 certificate for Quality Management System from MIC registered under UKAS, United Kingdom from 2004 which upgraded recently to ISO 9001-2008 in 2010 and intending to extend it by OHSAS 18001:2007. Read more...

- Our memberships:
  - Federation of Contractors of Islamic Countries (F.C.I.C.)
  - Pakistan Engineering Council
  - International Chamber of Commerce (I.C.C.)
  - Iran – UK Chamber of Commerce
  - Iran – Canada Chamber of Commerce Read more...

*Road & Railway*

*Dam*

*Building*

Copyright © 2010 Stratus Group Company. All rights reserved



STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

## Contact Us

**STRATUS International Contracting Co.**

Address: **No.35, Golestan St., Iran Zamin Ave., Shahrake Ghods, Tehran, Iran.**

Postal Code: **1465865187**

Tell: **(98) 21 8837 3100-6**

Fax: **(98) 21 8808 2882**

E-mail: **stratus@stratusgc.com**

Copyright © 2010 Stratus Group Company. All rights reserved



فارسي | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**Branch Offices**

| **Middle East** | **CIS** | **South America** |
|---|---|---|
| Iran | Kazakhstan | Venezuela |
| Iraq | | |

Copyright © 2010 Stratus Group Company. All rights reserved



Stratus International
Contracting Company

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

---

**Sister Companies List**

1.Samaneh Stratus (INVESTMENT CO.)

2.Iran Construction Investment Co.

3.Eghtesad - Novin Bank

4.Pishgaman Bazar Novin (BROKERAGE CO.)

5.Novin Insurance Co.

6.Pars Shahr Co.

7.Global Petro Tech CO.

8.Keyhan Tabadol Co.

9.Pars Hanza Aluminium CO.

10.Azarbaijan Industry Development Co.

11.Eghtesad Novin Investment CO.

12.Samaneh Gostar Novin

Sister Companies List
Page 2 of 2

Copyright © 2010 Stratus Group Company. All rights reserved

http://www.stratusgc.com/en/list-sisterco.aspx
6/13/2011





فارسي | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**7000 Units 'New Ojeda' Housing Development Project**

| | |
|---|---|
| Main Technical Features | Site Gross Area : 318 Hec.<br>Concrete works : 520,000 $m^3$<br>Net Construction Area : 850.000 $m^2$<br>Water & Sewage network : 150 Km<br>Electrical network : 200 Km<br>Communication network : 220 Km<br>Gas network : 30 Km |
| Location | Ciudad Ojeda, Zulia State, Venezuela |
| Employer | Ducolsa 'Urban Development S.A' |
| Contract Duration | 48 Months |
| Date of Award | September 2009 |
| Status | [ Under Construction ] |

[Back to list]

Copyright © 2010 Stratus Group Company. All rights reserved

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**Dalbandin – Nokkundi Highway - Section III-B** Details >>

**Socotra Airport** Details >>

**Design & Construction of Parliament Building & Commercial Center in Djibouti City** Details >>

**7000 Units "New Ojeda" Housing Development Project** Details >>

Copyright © 2010 Stratus Group Company. All rights reserved

( K A D I K Ö Y )
370857 - 2010

T.C.
İ S T A N B U L
Ticaret Sicil Memurluğu

# S İ C İ L  T A S D İ K N A M E S İ

| | |
|---|---|
| Ticaret Ünvanı | STRATUS INTERNATIONAL CONTRACTING İNŞAAT VE TAAHHÜT ANONİM ŞİRKETİ |
| Sicil No. | 751671 |
| Tescil Tarihi | 22 / 10 / 2010 |
| İşletme Merkezinin Adresi (Şubenin tescilinde şubenin Adresi ile beraber merkezin adresi de yazılır.) | GARDENYA PLAZA 5 K.3 D.3 ATAŞEHİR |
| İşletmenin uğraştığı işler | Ana sözleşmesinde yazılı olan işler |
| İşletme sahibinin hüviyeti (Hükmi şahıslarda, hükmi şahsın mahiyeti) | Anonim |
| İşletme temsilcileri | 38824643592 TC.No.lu CELAL TATLICIBAŞI |
| Tasdiknamenin düzenlenme Tarih ve Sayısı | 22 EKİM 2010 - 39185 |

RECAİ SÖKMEN
İSTANBUL TİCARET SİCİLİ
MEMURU YARDIMCISI

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 58

| | |
|---|---|
| **From:** | Bove, Emil (USANYS) |
| **To:** | Crowley, Shawn (USANYS) |
| **Subject:** | Commerzbank $1.45B Settlement: OFAC Continues Scrutinizing Foreign Banks \| Steptoe & Johnson LLP |
| **Date:** | Monday, March 9, 2020 3:46:55 PM |

https://www.steptoe.com/en/news-publications/commerzbank-1-45b-settlement-ofac-continues-scrutinizing-foreign-banks html

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 59

**Exhibit 59. March 9, 2020 Text Messages With Co-Chief Crowley and AUSA Kim Beginning At Approximately 3:50 p.m.**

| | |
|---|---|
| Kim | Rested |
| Kim | Court wondering when we can get her answers |
| Kim | Reid arguing rule 29 |
| Bove | Jane, could you please step out and call Kaveh to see where ofac is on tracking the gx 411 letter? |
| Kim | Yes |

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 60

| | |
|---|---|
| **From:** | Denton, David (USANYS) |
| **To:** | Crowley, Shawn (USANYS); Bove, Emil (USANYS) |
| **Subject:** | RE: Draft-Declaration-Template.docx |
| **Date:** | Monday, March 9, 2020 3:59:33 PM |
| **Attachments:** | 2020.03.09 Denton Sadr Declaration.docx |

See if this does the trick.

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 3:38 PM
**To:** Laroche, Matthew (USANYS) <MLaroche@usa.doj.gov>; Denton, David (USANYS) <DDenton@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Garrett Lynch <LynchG@dany.nyc.gov>; DeFilippis, Andrew (USANYS) <ADeFilippis@usa.doj.gov>
**Subject:** Draft-Declaration-Template.docx

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

ALI SADR HASHEMI NEJAD,

Defendant.

DECLARATION

18 CR 224 (AJN)

I, , pursuant to Title 28, United States Code, Section 1746, declare under penalty of perjury:

1. I am an attorney admitted to the bar of the State of New York and the bar of this Court, and one of the Assistant United States Attorneys for the Southern District of New York previously responsible for this matter.

2. From approximately June 25, 2019 through approximately August 30, 2019, I was one of the Assistant United States Attorneys assigned to this case.

3. On this date, March 9, 2020, I have reviewed the document marked for identification as Government Exhibit 411, consisting of a letter from Commerzbank AG to the Department of the Treasury, Office of Foreign Assets Control ("OFAC") dated June 16, 2011. To the best of my recollection, I have not seen this document prior to today. I first learned of the existence of this document and of its general content yesterday, March 8, 2020, during a casual conversation with one of the Assistant United States Attorneys currently responsible for handling this matter.

4. During the course of my participation in this matter, I communicated with OFAC representatives on approximately twelve occasions via email and phone. My

communications with OFAC pertained solely to securing (1) the testimony of an OFAC witness at trial in this matter regarding the applicable Iranian sanctions regulations, and (2) formal documentation of the fact that the defendant and any entities related to the conduct charged in this case had not been licensed by OFAC to engage in transactions through the United States for the benefit of Iran. My involvement with the case ended before any formal list of the relevant entities had been transmitted to OFAC for a "license check."

5. I did not learn, at any point during my involvement with the case or any of my communications with OFAC, anything about the status or existence of any OFAC investigation, inquiry, subpoena, enforcement action, or other matter related to the defendant, his family, or any entity associated with the defendant or his family. On the contrary, during my communications with OFAC, I gave a brief description of the charges against the defendant in order to assist OFAC in identifying an OFAC official with appropriate expertise to testify as a witness in this case. It was my understanding that the OFAC personnel with whom I communicated were not familiar with the case beyond the brief description that I provided.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing information is true and correct.

Dated: New York, New York
March 9, 2020

______________________________
David W. Denton, Jr.
Assistant United States Attorney

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 61

**From:** Crowley, Shawn (USANYS)
**To:** Bove, Emil (USANYS)
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
**Date:** Monday, March 9, 2020 4:34:04 PM

---

Begin forwarded message:

> **From:** "Graff, Ilan (USANYS)" <IGraff@usa.doj.gov>
> **Date:** March 9, 2020 at 4:21:54 PM EDT
> **To:** "Crowley, Shawn (USANYS)" <SCrowley@usa.doj.gov>
> **Subject: FW: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)**
>
> This is because I'm going to take a final look at the Declarations post-roast.
>
> ---
>
> **From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
> **Sent:** Monday, March 9, 2020 4:21 PM
> **To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
> **Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>; Graff, Ilan (USANYS) <IGraff@usa.doj.gov>
> **Subject:** Re: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
>
> Shawn
> Please send all docs you sent me today to Ilan as well.
> Thnx
> Audrey
>
> Sent from my iPhone
>
>> On Mar 9, 2020, at 3:49 PM, Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov> wrote:
>>
>> Here is the order referred to in the letter (3.08.20), and the subsequent order asking us to be prepared to explain how we made clear that GX 411 had been newly marked (3.9.20).
>>
>> ---
>>
>> **From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
>> **Sent:** Monday, March 09, 2020 3:47 PM

**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Pls also send the court's order referred to in letter you just sent.
Thanks

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 3:24 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Thanks.  Attaching the email chain in which we produce GX 411 (Saturday at 4:04 p.m.) as well as the letter we filed with Judge Nathan in which we represent that we "made clear that GX 411 was a newly marked exhibit and that we intended to offer it."

---

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:17 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

I am trying to review this transcript but I think I am missing a document---our letter to the defense that the judge views as not fully candid.
Would you pls send?
Thanks.

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 2:22 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

This is the transcript from this morning before Judge Nathan. As Laura knows, the AUSAs are scrubbing their files and drafting their declarations.

Begin forwarded message:

> **From:** "DeLuca, Michael (USANYS) [Contractor]"

<MDeLuca@usa.doj.gov>
**Date:** March 9, 2020 at 2:05:16 PM EDT
**To:** "Bove, Emil (USANYS)" <EBove@usa.doj.gov>, "Crowley, Shawn (USANYS)" <SCrowley@usa.doj.gov>
**Subject: FW: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)**

---

**From:** Goretti Moya <gmoya@sdreporters.com>
**Sent:** Monday, March 9, 2020 2:05 PM
**To:** DeLuca, Michael (USANYS) [Contractor] <MDeLuca@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

---

**From:** DeLuca, Michael (USANYS) [Contractor] <Michael.DeLuca@usdoj.gov>
**Sent:** Monday, March 09, 2020 10:43 AM
**To:** Info <Info@sdreporters.com>; reporters <reporters@sdreporters.com>
**Subject:** Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Good morning – We have a time-sensitive request for this morning's transcript in the ongoing trial in front of Judge Nathan, US v. Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN). We are requesting a copy of this morning's transcript (from before the jury entered the courtroom) as soon as possible, and will pay any fees associated with the expedited request.

Could you please let me know when we would be able to get this? I'm sorry for the urgent request and I appreciate your help.

Thank you,
Michael

Michael DeLuca
Paralegal, Terrorism & International Narcotics Unit
U.S. Attorney's Office, SDNY

Desk: (212) 637-2248
Cell: (646) 265-8172

<18cr224 Order 3.08.20.pdf>
<18cr224 Order 3.9.20.pdf>

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 62

**From:** Kaveh.Miremadi@treasury.gov
**To:** Kim, Jane (USANYS) 4
**Cc:** Bove, Emil (USANYS); MariaHelene.VanWagenberg@treasury.gov; Jacqueline.Brewer@treasury.gov; Lake, Stephanie (USANYS); Krouse, Michael (USANYS); LynchG@dany.nyc.gov; Lynch, Garrett (USANYS) [Contractor]; Crowley, Shawn (USANYS)
**Subject:** Re: Time Sensitive Question
**Date:** Monday, March 9, 2020 4:36:15 PM

I'm available now for a call. Thanks.

---

**From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Date:** March 9, 2020 at 4:07:18 PM EDT
**To:** Miremadi, Kaveh <Kaveh.Miremadi@treasury.gov>
**Cc:** Bove, Emil (USANYS) <Emil.Bove@usdoj.gov>, Van Wagenberg, Maria-Helene <MariaHelene.VanWagenberg@treasury.gov>, Brewer, Jacqueline <Jacqueline.Brewer@treasury.gov>, Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>, Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>, LynchG@dany.nyc.gov <LynchG@dany.nyc.gov>, Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>, Crowley, Shawn (USANYS) <Shawn.Crowley@usdoj.gov>
**Subject:** Re: Time Sensitive Question

** **Caution:** External email. Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

Kaveh, just tried your cell. Please let me know when you're free to talk. Thanks.

On Mar 9, 2020, at 10:50 AM, "Kaveh.Miremadi@treasury.gov" <Kaveh.Miremadi@treasury.gov> wrote:

Cell: 202-746-4485

---

**From:** Bove, Emil (USANYS) <Emil.Bove@usdoj.gov>
**Sent:** Monday, March 9, 2020 10:25 AM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Cc:** Miremadi, Kaveh <Kaveh.Miremadi@treasury.gov>; Van Wagenberg, Maria-Helene <MariaHelene.VanWagenberg@treasury.gov>; Brewer, Jacqueline <Jacqueline.Brewer@treasury.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; LynchG@dany.nyc.gov; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Crowley, Shawn (USANYS) <Shawn.Crowley@usdoj.gov>

**Subject:** Re: Time Sensitive Question

**** Caution:** External email. Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov ******

Hi Kaveh, what number can we reach you at?

On Mar 9, 2020, at 10:04 AM, Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov> wrote:

> I don't. I'm adding my Chiefs to this chain.
>
> On Mar 9, 2020, at 9:23 AM, "Kaveh.Miremadi@treasury.gov" <Kaveh.Miremadi@treasury.gov> wrote:
>
>> Hi Jane,
>>
>> Do you know who or what division in OFAC this letter was sent to? I'm searching our records now. We may not be able to get you a comprehensive answer this morning.
>>
>> Kaveh
>>
>> ---
>>
>> **From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
>> **Sent:** Sunday, March 8, 2020 5:58 PM
>> **To:** Miremadi, Kaveh <Kaveh.Miremadi@treasury.gov>; Van Wagenberg, Maria-Helene <MariaHelene.VanWagenberg@treasury.gov>; Brewer, Jacqueline <Jacqueline.Brewer@treasury.gov>
>> **Cc:** Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>
>> **Subject:** Time Sensitive Question
>>
>> **** Caution:** External email. Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov ******

Kaveh, Maria, and Jacqui:

I'm attaching a letter dated June 16, 2011, from Commerzbank to OFAC concerning a specific payment. Could you please let us know what actions OFAC took in response to this letter?  We need to update the Court on this issue tomorrow morning, so any information would be hugely appreciated.

Thank you in advance,
Jane


Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone:  (212) 637-2038
Email:  jane.kim@usdoj.gov

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 63

**Exhibit 63. March 9, 2020 Text Messages With AUSAs Kim and Krouse Beginning at Approximately 4:42 p.m.**

| | |
|---|---|
| Bove | One of you guys should step out to call Kaveh |
| Bove | Cell: 202-746-4485 |
| Bove | We'll look at these docs and vids before committing to excerpts |
| Kim | Yup, we clarified |
| Bove | Let's meet in my office heading there now |

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 64

**From:** Laroche, Matthew (USANYS)
**To:** Bove, Emil (USANYS); Crowley, Shawn (USANYS)
**Subject:** Laroche Declaration Sadr.docx
**Date:** Monday, March 9, 2020 4:46:44 PM
**Attachments:** Laroche Declaration Sadr.docx

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

ALI SADR HASHEMI NEJAD,

Defendant.

DECLARATION

18 Cr. 224 (ALC)

I, Matthew Laroche, pursuant to Title 28, United States Code, Section 1746, declare under penalty of perjury:

1. I am an attorney admitted to the bar of the State of New York and the bar of this Court, and one of the Assistant United States Attorneys for the Southern District of New York previously responsible for this matter. From April 2017 through March 2019, I was one of the Assistant United States Attorneys assigned to this case. Prior to preparing this declaration, I reviewed my records related to this case, including emails, notes, and documents.

2. Today, I was shown a document marked as identification as Government Exhibit 411, which consists of a June 16, 2011 letter from Commerzbank AG to the Department of the Treasury, Office of Foreign Assets Control ("OFAC"). I have no record of that letter and do not recall seeing it before today, although I am aware that the Government produced subpoena returns for Commerzbank AG in discovery.

3. While I was assigned to this case, in September 2017, I participated in a phone call with another member of the prosecution team, who is currently on the trial team, and officials from OFAC. It was my understanding from that call that OFAC was not aware of our investigation and was otherwise not investigating any matter related to the defendant. Following that call, on September 26, 2017, I received an email in which an OFAC member copied others

from OFAC and stated that they would follow-up with any questions. I have no record of any follow-up questions from OFAC and I do not recall participating in any other phone calls with OFAC related to this case.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing information is true and correct.

Dated: New York, New York
March 9, 2020

Matthew Laroche
Assistant United States Attorney

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 65

**From:** Birger, Laura (USANYS)
**To:** Crowley, Shawn (USANYS); Strauss, Audrey (USANYS)
**Cc:** Graff, Ilan (USANYS); Bove, Emil (USANYS)
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
**Date:** Monday, March 9, 2020 4:59:11 PM

---

Good development. When do we need to file the letter?

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 4:42 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>; Graff, Ilan (USANYS) <IGraff@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Re: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Of course. We just left court. Judge Nathan is going to take our representations in a letter instead of declarations.

> On Mar 9, 2020, at 4:20 PM, Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov> wrote:
>
> Shawn
> Please send all docs you sent me today to Ilan as well.
> Thnx
> Audrey
>
> Sent from my iPhone
>
> > On Mar 9, 2020, at 3:49 PM, Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov> wrote:
> >
> > Here is the order referred to in the letter (3.08.20), and the subsequent order asking us to be prepared to explain how we made clear that GX 411 had been newly marked (3.9.20).
> >
> > ---
> >
> > **From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
> > **Sent:** Monday, March 09, 2020 3:47 PM
> > **To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
> > **Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
> >
> > Pls also send the court's order referred to in letter you just sent.
> > Thanks
> >
> > ---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 3:24 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Thanks. Attaching the email chain in which we produce GX 411 (Saturday at 4:04 p.m.) as well as the letter we filed with Judge Nathan in which we represent that we "made clear that GX 411 was a newly marked exhibit and that we intended to offer it."

---

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:17 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

I am trying to review this transcript but I think I am missing a document--- our letter to the defense that the judge views as not fully candid.
Would you pls send?
Thanks.

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 2:22 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

This is the transcript from this morning before Judge Nathan. As Laura knows, the AUSAs are scrubbing their files and drafting their declarations.

Begin forwarded message:

> **From:** "DeLuca, Michael (USANYS) [Contractor]" <MDeLuca@usa.doj.gov>
> **Date:** March 9, 2020 at 2:05:16 PM EDT
> **To:** "Bove, Emil (USANYS)" <EBove@usa.doj.gov>, "Crowley, Shawn (USANYS)" <SCrowley@usa.doj.gov>
> **Subject: FW: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)**

---

**From:** Goretti Moya <gmoya@sdreporters.com>
**Sent:** Monday, March 9, 2020 2:05 PM
**To:** DeLuca, Michael (USANYS) [Contractor] <MDeLuca@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

---

**From:** DeLuca, Michael (USANYS) [Contractor] <Michael.DeLuca@usdoj.gov>
**Sent:** Monday, March 09, 2020 10:43 AM
**To:** Info <Info@sdreporters.com>; reporters <reporters@sdreporters.com>
**Subject:** Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Good morning – We have a time-sensitive request for this morning's transcript in the ongoing trial in front of Judge Nathan, US v. Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN). We are requesting a copy of this morning's transcript (from before the jury entered the courtroom) as soon as possible, and will pay any fees associated with the expedited request.

Could you please let me know when we would be able to get this? I'm sorry for the urgent request and I appreciate your help.

Thank you,
Michael

Michael DeLuca
Paralegal, Terrorism & International Narcotics Unit
U.S. Attorney's Office, SDNY
Desk: (212) 637-2248
Cell: (646) 265-8172

<18cr224 Order 3.08.20.pdf>
<18cr224 Order 3.9.20.pdf>

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 66

**From:** Birger, Laura (USANYS)
**To:** Crowley, Shawn (USANYS); Bove, Emil (USANYS)
**Date:** Monday, March 9, 2020 5:13:39 PM

---

I just spoke with Audrey. She seems to think you were planning to put in a declaration from the SAUSA? Unless that's what was ordered, it doesn't seem like a good idea – his facts should also be addressed by letter. When you know the timing of the submission, can you let us know? Obviously, if we can get until morning that would be preferable.

Laura Grossfield Birger
Chief, Criminal Division
United States Attorney's Office, SDNY
(212) 637-1117
Laura.Birger@usdoj.gov

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 67

**From:** Lynch, Garrett
**To:** Crowley, Shawn (USANYS)
**Cc:** Bove, Emil (USANYS)
**Subject:** RE: Draft-Declaration-Template.docx
**Date:** Monday, March 9, 2020 6:03:58 PM

Let me know when you're available for a quick call. Thanks.

**From:** Crowley, Shawn (USANYS) [mailto:Shawn.Crowley@usdoj.gov]
**Sent:** Monday, March 9, 2020 4:55 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** Re: Draft-Declaration-Template.docx

Can you call me again? 212-637-1034

On Mar 9, 2020, at 3:43 PM, Lynch, Garrett <LynchG@dany.nyc.gov> wrote:

Shawn, we've spoken to four out of the five other people who ever touched this case. They're all over the place (including Ireland), and only one still works here (but is out of the office). Can I represent in my declaration that we spoke with them?

**From:** Crowley, Shawn (USANYS) [mailto:Shawn.Crowley@usdoj.gov]
**Sent:** Monday, March 9, 2020 3:38 PM
**To:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>; Denton, David (USANYS) <David.Denton@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; DeFilippis, Andrew (USANYS) <Andrew.DeFilippis@usdoj.gov>
**Subject:** Draft-Declaration-Template.docx

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 68

**From:** Krouse, Michael (USANYS)
**To:** Bove, Emil (USANYS); Crowley, Shawn (USANYS)
**Subject:** FW: Sadr - wire transfers
**Date:** Monday, March 9, 2020 6:24:16 PM
**Attachments:** Commerz OFAC disclosure.pdf

---

Here is the January 10 email Garrett sent us. No one responded.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Friday, January 10, 2020 4:52 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze made to OFAC re: the payment.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Friday, January 10, 2020 3:16 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Closing the loop on this– I found a document in the material Fuenmayor gave us that discusses the $29 million transfer through Fondo Chino, and he also mentioned it in the last meeting. I think this should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA. The doc is attached, if anyone cares, but it's also en Espanol (I've requested translation). Pages 14-15.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 12:46 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

The Venezuelans used various state-owned "funds" and banks to fund various government projects, among them BANDES, the economic and social development bank (which, I believe made some early payments (not ours) related to the project), and Fondo Chino (the Chinese-Venezuelan Fund). Fondo Chino (at least ostensibly) was funded by oil sales to and loans from China (I think PDVSA and the government liberally moved money around). I forget exactly why Fondo Chino was used to make the first payment (or if we ever knew for sure) – my guess is that PDVSA, which controlled all oil-related funds (i.e., the Venezuelan purse), had adequate funds in the Fondo Chino account to make the payment from that account. I believe the money came from a Banco del Tesoro account in Venezuela, which had a correspondent relationship with Commerz in Germany. Thereafter, they

used PDVSA accounts at Banco Espirito Santo in Portugal.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Wednesday, January 8, 2020 11:02 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Found the first one. Thanks. Do you know why it came from "Fondo Chino" / what that is?

That's fine on two. Just wanted to make sure I wasn't missing some other records that would show that information.

Definitely agree on the third point.

Thank you!

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 10:04 AM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

1. Re: the first payment, there should be a copy of the SWIFT message in the Commerzbank production. In my version of the subpoena compliance production it's a PDF titled "Copy".

2. Re: the identity of the intermediary bank, the bank whose business record the wire transfer is is the intermediary bank, so the witness will be able to state that.

3. Also, for several of the payments, we have additional search warrant documents -- e.g., while we may just have the wire transfer record from the clearing bank, we may also have a SWIFT message attached to an email, or a Hyposwiss record, or some other document which identifies the payment route. When the dust settles on the SW docs, we can reconstruct my old payments binders where I had all of the documents bundled together for each payment (the payment instruction letter, the bank record(s), emails, attachments, etc.). This is what we did for the GJ.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Tuesday, January 7, 2020 6:19 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** FW: Sadr - wire transfers

My original email had three attachments, which had to be sent to you securely. So you should be getting a secure message with instructions on how to access it.

---

**From:** Lake, Stephanie (USANYS)
**Sent:** Tuesday, January 07, 2020 5:37 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** Sadr - wire transfers

See attached a spreadsheet (Payments) showing each transfer and where I found documentation. A few things:

1) I didn't find a wire confirmation for the 4/4/2011 $29 million transfer. I did find reference to it in the CHIPS subpoena returns. It seems to show that it went from "Fondo Chino-Venezolano" to Stratus International Contracting (see attached two spreadsheets that show this). Garrett – do you know if we have a wire confirmation for that transfer?

2) I noticed that the wire confirmations don't generally show the U.S. intermediary bank on them. Is there other documentation I'm missing that has this information?

*All documents are saved here: \\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\###Trial\Documents\Payment Records and here: \\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\Evidence [INT]\Discovery\#5 - Subpoena Returns\To Produce.

Also – Garrett, I was thinking that if you don't already have the ability to remotely login to our network, we should have that set up! That way the file paths above wouldn't be useless to you.

Thanks!

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by

return email.



NEW YORK BRANCH

Department of the Treasury
Office of Foreign Assets Control
1500 Pennsylvania Avenue NW
Washington DC 20220

**Vinay Jepal**
2 World Financial Center, New York, NY 10281-1050
Telephone (212) 266-7200
Fax (212) 266-7235
vinay.jepal@commerzbank.com

June 16, 2011

**Re: Information Sharing – Stratus International Contracting Company**

Dear Sir/Madam:

Commerzbank AG, New York Branch (CBNY) would like to share the following information with OFAC. On April 20, 2011 CBNY's AML transaction monitoring system generated an alert, which involved a transaction for USD 29,442,967.57 value April 4, 2011.

The transaction was originated by Banco Del Tesoro, CA Banco Universal Caracas for its client BT / Fideicomiso / Fondo Chino Venezolano in Caracas, Venezuela. The beneficiary of the payment was Stratus International Contracting Company ("Stratus"), a client of Hyposwiss Privatbank AG, Zurich.

As per standard procedure, CBNY initiated a request for information to the remitting bank Banco Del Tesoro, CA Banco Universal Caracas, Venezuela to obtain details on both entities and their relationship. In the interim, CBNY conducted further due diligence and noted the following regarding Stratus from its website:

- Stratus was founded in 1978 in Tehran, Iran
- Stratus International specializes in providing contracting services to infrastructure projects such as roads, railways, dams, tunnels, airports and buildings.
- Stratus is presently working on a 7000 Apartment Unit "New Ojeda" Housing Development Project in Venezuela

On May 12, 2011, CBNY received a response from the bank in Caracas indicating the following:

- Stratus's physical address is Gardenya Plaza 5, K:3 D:3 (Floor 3, Suite3) 34758 Atasehir, Istanbul, Turkey
- Stratus is registered in Istanbul, Turkey (copy of the registration attached)
- Stratus provides construction services in Turkey, Dubai and Venezuela
- The purpose of the payment is for the construction of a 7000 apartment unit project "Proyecto Urbanismo Nueva Ciudad Fabricio Ojeda, in Cuidad Ojeda, Estado Zuila, Venezuela (same address as listed on Stratus' website)

Although Stratus is not listed as an SDN, and the payment does not indicate any direct involvement of Iran or with Iran, due to conflicting information between the website and the response forwarded by the bank in Caracas, CBNY believes it appropriate to share this information with OFAC since Stratus may be an Iranian Company.

Chairman of the Supervisory Board: Klaus-Peter Müller
Board of Managing Directors: Martin Blessing (Chairman),
Frank Annuscheit, Markus Beumer, Achim Kassow, Jochen Klösges,
Michael Reuther, Stefan Schmittmann, Ulrich Sieber, Eric Strutz, Martin Zielke

Commerzbank Aktiengesellschaft, Frankfurt am Main
Registered Office: Frankfurt am Main Reg.No. 32000
VAT No. DE 114 103 514



NEW YORK BRANCH

**Re: Information Sharing – Stratus International Contracting Company– Page 2**

We have added Stratus into our sanctions filter to monitor any future payments. Please note that apart from this transaction, there have not been any other payments involving Stratus processed by CBNY to date.

The purpose of this letter is to report the good faith efforts of Commerzbank AG, New York Branch in complying with applicable OFAC requirements and voluntarily informing OFAC of any information received during its investigation into possible sanctions-related entities.

Should you have any further questions concerning this matter, please do not hesitate to contact the signatories below.

Respectfully,

Commerzbank AG
New York Branch

Deepa Keswani
Head of AML/Anti-Fraud/Sanctions Compliance

Vinay Jepal
Sanctions Compliance Officer

Encls.

stratus intl payment

```
:LT Address                    :COBAUS3XA
 :transaction type              :202 COVER bank tfr favour 3rd bank
 :input from                    :COBADEFF
                                 COMMERZBANK AG FRANKFURT
                                 HEAD OFFICE
                                 32-36 NEUE MAINZERSTRASSE
                                 60261 FRANKFURT GERMANY
 :Validation Flag                :COV}
--------------------------------------------------------------------------------
{4: Text block:
    :20 /transaction reference number    :FAAS109400150500
    :21 /related reference               :FAAS109400150500
    :32A/value date                      :040411 USD 29,442,967.57
    :52A/ordering institution - BIC      :COBADEFF
                                          COMMERZBANK AG
                                          FRANKFURT AM MAIN
    :57A/account with inst - BIC         :CHASUS33
                                          JPMORGAN CHASE BANK, N.A.
                                          NEW YORK,NY
    :58A/beneficiary inst - BIC          :SHHBCHZZ
                                          HYPOSWISS PRIVATBANK AG, ZURICH
                                          ZURICH
    :50K/ordering customer               :/400887746602USD
                                          BT/ FIDEICOMISO / FONDO CHINO
                                          VENEZOLANO. AV GUICAIPURO. URB EL
                                          ROSAL. TORRE BANCO DEL TESORO.
                                          CARACAS - VENEZUELA.
    :52A/ordering institution - BIC      :BDTEVECA
                                          BANCO DEL TESORO, C.A. BANCO
                                           UNIVERSAL
                                            CARACAS
    :59 /beneficiary customer            :/CH7708530519663100203
                                          STRATUS INTERNATIONAL CONTRACTING
                                          J.S.
    :70 /details of payment              :REF: DESEMBOLSO NRO. 386 FONDO
                                          CHINO VENEZOLANO. CODIGO NRO.
                                          00579.
    :33B/amount                          :USD 29,442,967.57}
--------------------------------------------------------------------------------
 Entry   :          /SWIFT/ Date:110404 Time:02:44:17
                   Info:1111/001781
```



Stratus International
Contracting Company

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

---

STRATUS is an Engineering, Construction, Management and Contracting Company by specializing in the field of Building Construction, Road Works and Water Works.
STRATUS is Graded in three major categories: Read more...

STRATUS has succeeded to recieve ISO 9001-2000 certificate for Quality Management System from MIC registered under UKAS, United Kingdom from 2004 which upgraded recently to ISO 9001-2008 in 2010 and intending to extend it by OHSAS 18001:2007. Read more...

Our memberships:

- Federation of Contractors of Islamic Countries (F.C.I.C.)
- Pakistan Engineering Council
- International Chamber of Commerce (I.C.C.)
- Iran – UK Chamber of Commerce
- Iran – Canada Chamber of Commerce    Read more...

*Road & Railway*

*Dam*

*Building*

---

Copyright © 2010 Stratus Group Company. All rights reserved





STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

## Contact Us

**STRATUS International Contracting Co.**

Address: **No.35, Golestan St., Iran Zamin Ave., Shahrake Ghods, Tehran, Iran.**

Postal Code: **1465865187**

Tell: **(98) 21 8837 3100-6**

Fax: **(98) 21 8808 2882**

E-mail: **stratus@stratusgc.com**

Copyright © 2010 Stratus Group Company. All rights reserved





فارسي | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**Branch Offices**

| **Middle East** | **CIS** | **South America** |
| --- | --- | --- |
| Iran | Kazakhstan | Venezuela |
| Iraq | | |

Copyright © 2010 Stratus Group Company. All rights reserved

فارسي | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

---

**Sister Companies List**

 1.Samaneh Stratus (INVESTMENT CO.)

 2.Iran Construction Investment Co.

 3.Eghtesad - Novin Bank

4.Pishgaman Bazar Novin (BROKERAGE CO.)

 5.Novin Insurance Co.

 6.Pars Shahr Co.

 7.Global Petro Tech CO.

 8.Keyhan Tabadol Co.

9.Pars Hanza Aluminium CO.

 10.Azarbaijan Industry Development Co.

11.Eghtesad Novin Investment CO.

 12.Samaneh Gostar Novin

Copyright © 2010 Stratus Group Company. All rights reserved





STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**7000 Units 'New Ojeda' Housing Development Project**

| | |
|---|---|
| Main Technical Features | Site Gross Area : 318 Hec.<br>Concrete works : 520,000 $m^3$<br>Net Construction Area : 850.000 $m^2$<br>Water & Sewage network : 150 Km<br>Electrical network : 200 Km<br>Communication network : 220 Km<br>Gas network : 30 Km |
| Location | Ciudad Ojeda, Zulia State, Venezuela |
| Employer | Ducolsa 'Urban Development S.A' |
| Contract Duration | 48 Months |
| Date of Award | September 2009 |
| Status | [ Under Construction ] |

  

[Back to list]

Copyright © 2010 Stratus Group Company. All rights reserved

Stratus International
Contracting Company

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**Dalbandin – Nokkundi Highway - Section III-B** Details >>

**Socotra Airport** Details >>

**Design & Construction of Parliament Building & Commercial Center in Djibouti City** Details >>

**7000 Units "New Ojeda" Housing Development Project** Details >>

Copyright © 2010 Stratus Group Company. All rights reserved

( K A D I K Ö Y )
370857 - 2010

T.C.
İ S T A N B U L
Ticaret Sicil Memurluğu

# SİCİL TASDİKNAMESİ

| | |
|---|---|
| Ticaret Ünvanı | STRATUS INTERNATIONAL CONTRACTING İNŞAAT VE TAAHHÜT ANONİM ŞİRKETİ |
| Sicil No. | 751671 |
| Tescil Tarihi | 22 / 10 / 2010 |
| İşletme Merkezinin Adresi (Şubenin tescilinde şubenin Adresi ile beraber,merkezin adresi de yazılır.) | GARDENYA PLAZA 5 K.3 D.3 ATAŞEHİR |
| İşletmenin uğraştığı işler | Ana sözleşmesinde yazılı olan işler |
| İşletme sahibinin hüviyeti (Hükmi şahıslarda, hükmi şahsın mahiyeti) | Anonim |
| İşletme temsilcileri | 38824643592 TC.No.lu CELAL TATLICIBAŞI |
| Tasdiknamenin düzenlenme Tarih ve Sayısı | 22 EKİM 2010 - 39185 |

RECAİ SÖKMEN
İSTANBUL TİCARET SİCİLİ
MEMURU YARDIMCISI

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 69

| | |
|---|---|
| **From:** | Krouse, Michael (USANYS) |
| **To:** | Crowley, Shawn (USANYS); Bove, Emil (USANYS); Kim, Jane (USANYS) 4 |
| **Subject:** | FW: |
| **Date:** | Monday, March 9, 2020 6:43:11 PM |
| **Attachments:** | 00206BBA05AF200309182049.pdf<br>Draft declaration (Lynch).docx |

Email on page 15 references the powerpoint. We don't have the powerpoint included. Asking Garrett now.

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Monday, March 9, 2020 6:23 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:**

Draft declaration and related docs attached.

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000

CYRUS R. VANCE, JR.
DISTRICT ATTORNEY

August 31, 2015

**VIA CERTIFIED MAIL**
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: Investigation No. M2013-00223036

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015**. In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@dany.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**

Please note that ***electronic copies are preferred.*** If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| THE PEOPLE OF THE STATE OF NEW YORK<br>-against-<br>John Doe,<br>Defendant. | BUSINESS RECORDS AFFIDAVIT<br>STATE OF NEW YORK<br>COUNTY OF NEW YORK<br>M2013-00223036 |
|---|---|

I, ______________, declare that I am a duly authorized custodian of the records, or other employee or agent, of ______________ (*name of business*), and am familiar with the record keeping practices of ______________ (*name of business*). I make this affidavit pursuant to New York State Criminal Procedure Law Section 190.30(8).

Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account number ______________. These pages contain the following types of records [*list or description of records*]:

______________________________________________

______________________________________________

______________________________________________

______________________________________________

I am familiar with the above-described records. These records were made in the regular course of business, and it was the regular course of such business to make and keep these records. The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter. The person who made these records was under a business duty to do so accurately.

*False statements made herein are punishable as a Class A misdemeanor pursuant to P.L. § 210.45.*

X______________________________________

Signature (Deponent) Date

# SUBPOENA

(Duces Tecum)
FOR A WITNESS TO ATTEND THE
**GRAND JURY**

In the Name of the People of the State of New York

**To: Commerzbank AG**

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, **as a witness in a Grand Jury investigation:**

**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

**YOU ARE ORDERED not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.**

Dated in the County of New York,
August 31, 2015

So Ordered:

Justice of the Supreme Court
State of New York
PT. 1 AUG 3 1 2015
HON. ABRAHAM L. CLOTT

CYRUS R. VANCE, JR.
**District Attorney, New York County**

By:
Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

**Note:** In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to ThomasM@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

*Case No.: M2013-00223036*

**EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015**

ITEMS TO BE PRODUCED are those in the actual and constructive possession of ~~Citibank, N.A.~~ Commerzbank AG and all entities, agents, officers, employees, officials, over which it has control, including its subsidiaries:

MJT [initials]
Sept. 15, 2015

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spamrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

**DEFINITIONS AND INSTRUCTIONS**

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities; (ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership; (iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

**Lynch, Garrett**

**From:** Lynch, Garrett
**Sent:** Thursday, May 19, 2016 11:22 AM
**To:** Conroy, Christopher
**Subject:** FYI

**Tracking:**

| Recipient | Read |
|---|---|
| Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

**Lynch, Garrett**

**From:** Lynch, Garrett
**Sent:** Monday, August 1, 2016 12:36 PM
**To:** 'Michael.Dondarski@treasury.gov'
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case. Who's the best person for us to contact about either or both? Thanks!

Best,
Garrett

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Wednesday, August 3, 2016 9:26 AM |
| **To:** | Hochhauser, Rachel; Maloney, Christina |
| **Subject:** | FW: Request |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| | Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10th) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Rosanna.Wells@treasury.gov
**Sent:** Monday, August 8, 2016 9:08 AM
**To:** Lynch, Garrett
**Cc:** Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov
**Subject:** RE: Thanks

Thanks Garrett. I'm looping in the two OFAC Enforcement Officers who were on the call.

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Friday, September 22, 2017 5:44 PM
**To:** Lynch, Garrett
**Cc:** Matthew.Laroche@usdoj.gov
**Subject:** RE: Case

Garrett,

It was great speaking with you all yesterday, and thanks for passing along the information below/attached. We'll take a look and will get back to you. And thanks for the well wishes!

Have a great weekend,

Mike

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Wednesday, September 20, 2017 4:08 PM
**To:** Lynch, Garrett
**Subject:** RE: Call

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now. Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above. I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there. Would you be able to do a call tomorrow or Friday? Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

---

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here. Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation! Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards. Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00. Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir! No worries – I know how slammed you all are. I'm leaving on Vacation on Wednesday, so does early in the week work? My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30. It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski). I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting. Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike! I'm very happy for you and Rachel – join the club! You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though...

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory. Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir. I hope this email finds you well and that you've been enjoying the summer with the family. I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail. I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up. Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY. What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir! I hope the summer is treating you well so far in the swamp. If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland. We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA. It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis. We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Tuesday, September 26, 2017 4:00 PM
**To:** Lynch, Garrett
**Cc:** Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov
**Subject:** RE: Case

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

## Lynch, Garrett

**From:** Michael.Dondarski@treasury.gov
**Sent:** Thursday, March 28, 2019 11:34 AM
**To:** Lynch, Garrett
**Subject:** CSE TransTel
**Attachments:** 20170727_transtel_web post.pdf; transtel_settlement.pdf

**Importance:** High

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company. The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A. These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at www.treasury.gov/ofac/enforcement.**

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.** CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case. Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters. TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. See 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran. TransTel initiated the wire transfers from its account with the Bank. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, please see the Settlement Agreement between OFAC and CSE Global and TransTel here.

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A. OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology.  When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

**SETTLEMENT AGREEMENT**

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I. PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others. OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector. At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II. RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

---

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation. Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341. *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

## III. FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company). At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List"). The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders. CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes. All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd ... hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List. On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions." Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.

[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran. (*See* attached Penalty Calculation Spreadsheet). These transactions were processed through the United States and caused multiple financial institutions—including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran. TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran. As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "...unlawful for a person to violate...or cause a violation of any...regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction ... [that] causes a violation of ... any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case. Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

**IV. Terms of Settlement**

OFAC and Respondent agree as follows:

1. In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2. In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

A. Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

(i) sign, date, and mail an original signed copy of this Agreement to: [redacted] [redacted], Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220. Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

(ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**. Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**. Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

B. To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

C. That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured. In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Respondent accepts the terms of this Settlement Agreement this 15 day of July, 2017.

[signature]
Signature

LIM BOON KHENG
Respondent's Printed Name (or in the case of an entity, the name of Respondent's Duly Authorized Representative)

DIRECTOR CSE TransTel Pte Ltd &
DIRECTOR CSE GLOBAL LIMITED
Printed Title of Respondent's Duly Authorized Representative and Name of Entity (if applicable)

☒ Please check this box if you have not enclosed payment with this Agreement and will instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: July 19, 2017

[signature]
John E. Smith
Director
Office of Foreign Assets Control

Enclosure

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

ALI SADR HASHEMI NEJAD,

Defendant.

DECLARATION

18 CR 224 (ALC)

I, GARRETT A. LYNCH, pursuant to Title 28, United States Code, Section 1746, declare under penalty of perjury:

1. I am an attorney admitted to the bar of the State of New York, and an Assistant District Attorney in the New York County District Attorney's Office ("DANY"), as well as a Special Assistant United States Attorney for the Southern District of New York responsible for this matter.

2. In January 2012, at DANY, I was assigned to work on an investigation into Commerzbank, A.G., a German bank under investigation by DANY, the United States Department of Justice ("DOJ"), and multiple regulatory agencies since January 2011 related to violations of U.S. sanctions laws and regulations during the period 2002 through 2007.

3. During the course of that investigation, DANY received voluminous record from Commerzbank, include records related to voluntary disclosures made by the Commerzbank branch in New York the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") during the course of the investigation (but unrelated to the historical conduct under investigation). In total, DANY received approximately 215 pages related to approximately 15

such disclosures, with dates ranging between March 2010 and October 2014.  I reviewed these disclosures during the course of the Commerzbank investigation.

4.      The Government exhibit in this case marked GX 411, dated June 16, 2011, was included in the approximately 215 pages of disclosures produced by Commerzbank in that investigation.  I reviewed these productions at or about the time that I received them.

5.      The DANY and DOJ investigation into Commerzbank was resolved in March 2015 when Commerzbank entered into deferred prosecution agreements with DANY and DOJ.

6.      I was first assigned to work on the DANY investigation related to the defendant, Ali Sadr Hashemi Nejad, in May 2015.

7.      On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch seeking records related to a specific U.S. dollar transaction, as well as any wire transfer records related several entities involved in this case (e.g., Fondo Chino, PDVSA, Stratus International Contracting, J.S., Stratus Global Investments, and Clarity Trade and Finace).  DANY received records in response to that subpoena in October 2015.  Ex. A.

8.      On or about May 19, 2016, I had a conversation with a supervisory enforcement officer at OFAC with whom I had dealt on past cases involving U.S. sanctions laws and regulations.  During the course of that call, I outlined the general facts of the case to get this individual's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  He confirmed that the scenario I outlined would constitute a violation.  Ex. B.

9.      On or about August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, I emailed the same OFAC supervisor to (a) line up an OFAC

witness for possible grand jury testimony, and (2) to offer the information to OFAC for their own enforcement purposes. The OFAC supervisor responded by offering to put DANY in touch with an enforcement officer, and he copied his management team. Ex. C.

10. On or about August 5, 2016, I had a telephone call with an OFAC enforcement officer in which I briefed her on the general facts of the case. Ex. D.

11. On September 22, 2017, after my appointment as a Special Assistant United States Attorney in June 2017, I had another call with the OFAC supervisor while preparing to present the case to a federal grand jury, in which I outlined the facts of the case again for purposes of getting OFAC's thoughts on the proposed federal charges. Following the call, I sent him a PowerPoint presentation outlining the case. Ex. E.

12. On September 26, 2017, I received an email from the OFAC supervisor on which he copied two enforcement officers with whom the prosecution team could follow up with any questions. Ex. F.

13. Later, on March 28, 2019, after an unrelated phone call with the OFAC supervisor in which the status of the instant criminal case was raised, he email me two documents related to a public enforcement action OFAC had taken with a fact pattern he believed to be similar to this case based upon our discussions. Ex. G.

14. I have no further records reflecting communications about this case with OFAC.

15. During the course of above-described emails and phone calls, I provided OFAC with information about the investigation in an effort to get OFAC's views about the general facts to further our own criminal case. I never inquired or learned whether OFAC took any independent steps to investigate any of the entities, individuals, or banks involved in this case as a

result of the information we had shared with OFAC, or whether OFAC had conducted any investigations (or, conversely, had declined to do so) related to information it had independently obtained in the past related to any of the relevant individuals and entities. Further, during the course of the above-described phone calls and conversations, I never discussed the document (or information) contained in GX 411 with anyone at OFAC, nor did I learn what action, if any, OFAC took (or didn't take) in response to receiving that document.

16. Later, in preparation for trial, in an effort to uncover any document possibly relevant to the case, I searched a file in my office containing records received from Commerzbank during the course of the separate investigation into Commerzbank which had concluded in March 2015 and identified the document later marked as GX 411, which I emailed to other members of the prosecution team at the U.S. Attorney's Office on January 20, 2020.

17. In response to the Court's Order of March 9, 2020, I and other supervisory members of my bureau contacted all five Assistant District Attorneys who worked on the case during the course of DANY's investigation, four of whom no longer work at the office. Two of the five stated that they never had any contact with OFAC during their time on the investigation, and three of the five stated that they have no recollection of speaking to anyone from OFAC, beyond possible scheduling matters when DANY was preparing to present the case to a New York State grand jury in 2016.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing information is true and correct.

Dated: New York, New York
March 9, 2020

Garrett A. Lynch
Special Assistant United States Attorney

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 70

**From:** Kim, Jane (USANYS) 4
**To:** Bove, Emil (USANYS); Krouse, Michael (USANYS); Crowley, Shawn (USANYS)
**Subject:** RE:
**Date:** Monday, March 9, 2020 6:47:58 PM

---

We just emailed and called. Will keep you posted.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 6:47 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** RE:

Makes sense to give Matt a call. Thanks guys.

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 6:45 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** RE:

Garrett says he can't find the sent email. So doesn't know exactly which powerpoint was sent. Laroche is on the email, though, so maybe he has it.

---

**From:** Krouse, Michael (USANYS)
**Sent:** Monday, March 9, 2020 6:43 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Emil J. .Bove (Emil.Bove@usdoj.gov) <Emil.Bove@usdoj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** FW:

Email on page 15 references the powerpoint. We don't have the powerpoint included. Asking Garrett now.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Monday, March 9, 2020 6:23 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:**

Draft declaration and related docs attached.

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335

lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 71

**From:** Kim, Jane (USANYS) 4
**To:** Bove, Emil (USANYS); Crowley, Shawn (USANYS)
**Cc:** Krouse, Michael (USANYS)
**Subject:** FW: Case
**Date:** Monday, March 9, 2020 7:01:22 PM
**Attachments:** 2017.01.20 SDNY VZ Housing PowerPoint.PPTX

---

**From:** Laroche, Matthew (USANYS) <MLaroche@usa.doj.gov>
**Sent:** Monday, March 9, 2020 7:00 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** FW: Case

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** 'Michael.Dondarski@treasury.gov' <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <MLaroche@usa.doj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know…maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

# Venezuela Housing Case

I.    Introduction

II.   USD Payments

III.  Potential Charges

IV.  Company Structure

V.   Individuals

VI.  Proof of Payment

VII. Knowledge of Sanctions/Efforts to Hide Iranian Connection

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013
- Total amount cleared: **$115,508,527.28**
- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

# EVIDENCE

- Emails (mostly from the Iranian side of the "Project")

- Payment records (SWIFT messages and wires)

- Bank account records (limited)

- 2 possible fact witnesses (significant availability issues with both)

- Expert testimony (from banks, FED, and OFAC)

# IV. Company Structure



# Stratus International Contracting ("Stratus")

- Established in 1978 in Tehran, Iran by **Mohammad SADR**
- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007
- Builds infrastructure projects in and outside of Iran
- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)
- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

- Stratus establishes a new subsidiary (IIHC) and a “Venezuela Project Executive Committee” in 2009 to manage and oversee the execution of the project in Venezuela.
- Committee members over time include:
  - **Mohammad SADR** (Chairman)
  - **Ali SADR**
  - **Behrooz ZANGENEH**
  - **Ahmad SAFAVARDI**
  - **Bahram KARIMI**
  - **Mustafa CETINEL**
  - **Ekrem CINAR**



# Iranian Int'l. Housing Co.

**This mass housing production project is constructed for 60,000 inhabitants in an area of 318 hectares on the outskirts of Ojeda in Solia province.**

# V. Individuals

**Venezuela Committee (Iran)**
Chairman: **Mohammad SADR**
Members: **Bahram KARIMI, Farshid KAZERANI, Ali SADR; Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR; Ahmad SAFAVARDIi**

**Hussein TEHRANI (Iran)**
Chairman/CEO/President of IIHC

**Farshid KAZERANI (Iran)**
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting

**Mustafa CETINEL (Istanbul/VE)**
Project Director

**Behrooz ZANGENEH (Iran)**
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC

**Ekrem CINAR (Turkey)**
Vice Project Manager

**Bahram KARIMI (Iran/VE)**
Project Manager

**Ahmad SAFAVARDI (US/VE)**
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US

**Numerous Iranian IIHCO employees in VE**

***Parentheticals indicate where people were physically located at relevant time period**

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information “as requested:”**

**Subject:** USD Account
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Thu, 30 Dec 2010 17:39:59 -0500
**To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>

Salam,

Please find attached the USD account information as requested.

Best regards

Intermediary Bank: JPMORGAN CHASE BANK (New York, New York)
SWIFT CODE: CHASUS33
Banking Code: FED ABA 02100021

Bank of Beneficiary: HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
SWIFT Code: SHHBCHZZ
(USD)Account No: 5196631203
IBAN: CH7708530519663100203

Beneficiary: Stratus International Contracting J.S.
Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

**Instruction Letter and payment for IPC 11-13:**

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|---|---|---|---|---|---|---|---|
| 7/5/2011 | $ 20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hyposwiss Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |

IRANIAN INT. HOUSING Co. (PJS)

Proyecto de 7000 Unidades de Nueva Ojeda
New Ojeda Housing Development Project (7000 Residential units)

Date: 01/07/2011
No.: 101-90-107
Annex:

To: Eng. Jose Luis Parada Sanchez
Chairman of the Board of DUCOLSA

Dear Sir,

I hereby write you with my cordial and revolutionary greetings.

In view of the current difficulties for transfer and movements of funds and to facilitate the process we already appointed Clarity Trade & Finance S.A. to act as our agent for receiving the payment of IPCs.

Therefore, we, hereby, request you to order to make the payment of IPCs 11, 12 & 13 to the account of the aforementioned company with the below details, for USD:

**Beneficiary: Clarity Trade & Finance SA**
**IBAN #: CH80 0853 0518 2061 0020 3**
**Address: Wachlenstrasse 5, 8832 Wollerau Schwyz, Switzerland**

**Beneficiary's Bank: Hyposwiss Private Bank Ltd.**
**Account No. 001-1-835873 / Chips UID: 059242**
**Swift Code: SHHBCHZZ**

**Intermediary Bank: JPMORGAN CHASE BANK New York, New York**
**Swift Code: CHASUS33**
**Banking Code: FED ABA 021000021**

Thank you in advance for your anticipation.

**Código Swift: CHASUS33**
**Código Bancario: FED ABA 021000021**

Agradecemos por sus sinceras colaboraciones.

Sincerely yours

Behrooz Zangeneh
Managing Director

شرکت بین المللی
خانه سازی ایرانیان
Iranian International Housing Co.
Sucursal Venezuela

Calle Piar, esquina de avenida 10 y calle Piar, Cuidad Ojeda,Edo. Zulia, Venezuela
Tel:(+58-265) 63 20 111 . 63 20 239
Email: info@iihco.ir - www.iihco.ir

In view of the current difficulties for transfer and movements of funds and to facilitate the process we already appointed Clarity Trade & Finance S.A. to act as our agent for receiving the payment of IPCs.

**ZANGENEH** signature

# Wire Sheet

Transaction Details for TRN: 3251400186fs Region: US

| | |
|---|---|
| Instruction Date: | 7/5/2011 |
| Payment Date: | 7/5/2011 |
| Transaction Amount: | $20,692,579.48 |
| Transaction Type: | BT |
| Customer Swift ID: | SHHBCHZZ |
| Debit Fin Entity: | 01 |
| Credit Fin Entity: | 01 |
| Credit Reference: | OOE9996A000394 |
| Debit Reference: | OOE9996A000394 |
| Sender's ID: | SWF/BESCPTPLOSF |
| Bene Flag: | B |
| Order Party: | /PT50000709030009508180330<br>1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA CARACAS<br>3/VE/VENEZUELA |
| Debit Party: | 00000011728748<br>BES SFE FUNCHALOFFSHORE MADEIRA<br>DPC - SERVICO RECONCILIACAO<br>BANCARIA<br>LISBON PORTUGAL 1250--142 |
| Details of Payment: | 1590011835 |
| Credit Party: | 00000011835873<br>HYPOSWISS PRIVATBANK AG<br>BAHNHOFSTRASSE/SCHUETZENGASSE 4<br>POSTFACH 3180<br>ZURICH SWITZERLAND 8021 - |
| Account Party: | SHHBCHZZ |
| Bene: | /CH8008530518206100203<br>CLARITY TRADE AND FINANCE S A |

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR

IPC 11-12-13

**HYPOSWISS**
**PRIVATE BANK**

Hyposwiss Private Bank Ltd.
Stauffacherstrasse 41
8004 Zürich
Phone +41 (0)44 214 31 11
Fax +41 (0)44 211 52 23
www.hyposwiss.com
BIC SHHBCHZZ

Your contact person:
Urs Schneider
Direct +41 (0)44 214 31 94
urs.schneider@hyposwiss.ch

**Clarity Trade & Finance SA**
Current account USD 5182061.203
Custody account no. 5182061.01
IBAN CH80 0853 0518 2061 0020 3

Sent electronically
Clarity Trade & Finance SA
c/o Kessler Wassmer Giacomini & Partner
Wächlenstrasse 5
8832 Wollerau

Zurich, July 5, 2011
Reference number: 51805412

## Credit advice

On July 5, 2011 we booked the following payment

| | | Currency | Amount |
|---|---|---|---|
| Ordered by | 1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA CARACAS<br>3/VE/VENEZUELA | | |
| Reference | 1590011835 | | |
| Original Amount | USD 20'692'579.48 | | |
| Amount | | USD | 20'692'579.48 |
| **To your credit** | **Value date July 5, 2011** | **USD** | **20'692'579.48** |

# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

# VII. Knowledge of Sanctions/Efforts to Hide Iranian Connection

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR's** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

**Subject:** Re: Conference Call with Mercantil Valores Uruguay
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Fri, 16 Jul 2010 12:06:04 -0400
**To:** HBM Funds - Alwin de Jongh <alwin.dejongh@hbmgroup.com>
**CC:** HBM Funds - Herman Oosten <Herman.Oosten@hbmgroup.com>

Dear Alwin.

NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.

The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.

Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.

Hope this helps.

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

There's no Iranian behind any of the accounts provided.
This is a simple answer.

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:

> Salam
> I tried call you several time but could not reach you. please call me urgently.
> Client asked if the owner of the account in the intermmidate bank is Iranian?
>
> Bahram karimi
> Project Manager

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

**Subject:** Fwd: Payment USD 6'000
**From:** Linet Estiroti <linet.estiroti@perseswiss.ch>
**Date:** Thu, 3 Jul 2014 19:41:34 +0300
**To:** Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual. Please advise what to do. Regards, Linet Estiroti

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards

Sent from my BlackBerry® Smartphone supplied by Swisscom

---

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

Furher to our conversation in Istanbul I suggest two names for the change as follows:

1. International Industrial Housing Company

2.International Iron Housing Company

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGANEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 -0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 72

**From:** Kim, Jane (USANYS) 4
**To:** Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor]
**Cc:** Bove, Emil (USANYS); Crowley, Shawn (USANYS)
**Subject:** Email - if anyone has revisions
**Date:** Monday, March 9, 2020 7:19:24 PM
**Attachments:** 2020.03.09 Government Production.pdf

---

Counsel:

Attached are all of the email communications with OFAC about this case that SAUSA Lynch found today. The PowerPoint attached at the end of this PDF was attached to SAUSA Lynch's email on Page 15 of the PDF. Please see, in particular, Pages 7 and 15. We will describe these materials in our letter to the Court this evening, but we are producing all of it to you now.

Also, we agree to the stipulation you presented to the Court this afternoon. If you'd like to discuss any of the attached or revisions to the stipulation, we are available any time.

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone: (212) 637-2038
Email: jane.kim@usdoj.gov

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000

CYRUS R. VANCE, JR.
DISTRICT ATTORNEY

August 31, 2015

**VIA CERTIFIED MAIL**
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: Investigation No. M2013-00223036

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015**. In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@dany.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**

Please note that ***electronic copies are preferred.*** If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>John Doe,<br><br>Defendant. | BUSINESS RECORDS AFFIDAVIT<br><br>STATE OF NEW YORK<br>COUNTY OF NEW YORK<br><br>M2013-00223036 |
|---|---|

I, ______________________, declare that I am a duly authorized custodian of the records, or other employee or agent, of ______________________ (*name of business*), and am familiar with the record keeping practices of ______________________ (*name of business*). I make this affidavit pursuant to New York State Criminal Procedure Law Section 190.30(8).

Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account number ______________________. These pages contain the following types of records [*list or description of records*]:

______________________________________________

______________________________________________

______________________________________________

______________________________________________

I am familiar with the above-described records. These records were made in the regular course of business, and it was the regular course of such business to make and keep these records. The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter. The person who made these records was under a business duty to do so accurately.

*False statements made herein are punishable as a Class A misdemeanor pursuant to P.L. § 210.45.*

X______________________________________________
Signature (Deponent) Date

# SUBPOENA

(Duces Tecum)

FOR A WITNESS TO ATTEND THE

**GRAND JURY**

In the Name of the People of the State of New York

**To: Commerzbank AG**

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, **as a witness in a Grand Jury investigation:**

**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

**YOU ARE ORDERED not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.**

Dated in the County of New York,
August 31, 2015

So Ordered:

Justice of the Supreme Court
State of New York

PT. 1 AUG 3 1 2015

HON. ABRAHAM L. CLOTT

CYRUS R. VANCE, JR.
**District Attorney, New York County**

By:

Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

**Note:** In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to ThomasM@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

*Case No.: M2013-00223036*

**EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015**

ITEMS TO BE PRODUCED are those in the actual and constructive possession of ~~Citibank, N.A.~~ Commerzbank AG and all entities, agents, officers, employees, officials, over which it has control, including its subsidiaries:

MJT [initials]

Sept. 15, 2015

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spatrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

**DEFINITIONS AND INSTRUCTIONS**

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities; (ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership; (iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Thursday, May 19, 2016 11:22 AM |
| **To:** | Conroy, Christopher |
| **Subject:** | FYI |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

**Lynch, Garrett**

**From:** Lynch, Garrett
**Sent:** Monday, August 1, 2016 12:36 PM
**To:** 'Michael.Dondarski@treasury.gov'
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case. Who's the best person for us to contact about either or both? Thanks!

Best,
Garrett

**Lynch, Garrett**

**From:** Lynch, Garrett
**Sent:** Wednesday, August 3, 2016 9:26 AM
**To:** Hochhauser, Rachel; Maloney, Christina
**Subject:** FW: Request

**Tracking:**

| Recipient | Read |
|---|---|
| Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10th) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Rosanna.Wells@treasury.gov
**Sent:** Monday, August 8, 2016 9:08 AM
**To:** Lynch, Garrett
**Cc:** Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov
**Subject:** RE: Thanks

Thanks Garrett. I'm looping in the two OFAC Enforcement Officers who were on the call.

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Friday, September 22, 2017 5:44 PM
**To:** Lynch, Garrett
**Cc:** Matthew.Laroche@usdoj.gov
**Subject:** RE: Case

Garrett,

It was great speaking with you all yesterday, and thanks for passing along the information below/attached. We'll take a look and will get back to you. And thanks for the well wishes!

Have a great weekend,

Mike

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Wednesday, September 20, 2017 4:08 PM
**To:** Lynch, Garrett
**Subject:** RE: Call

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now. Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above. I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there. Would you be able to do a call tomorrow or Friday? Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

---

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here.  Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation!  Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards.  Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00.  Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir!  No worries – I know how slammed you all are.  I'm leaving on Vacation on Wednesday, so does early in the week work?  My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30.  It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski).  I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting.  Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike!  I'm very happy for you and Rachel – join the club!  You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though...

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory.  Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir. I hope this email finds you well and that you've been enjoying the summer with the family. I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail. I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up. Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY. What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir! I hope the summer is treating you well so far in the swamp. If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland. We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA. It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis. We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Tuesday, September 26, 2017 4:00 PM
**To:** Lynch, Garrett
**Cc:** Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov
**Subject:** RE: Case

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Thursday, March 28, 2019 11:34 AM
**To:** Lynch, Garrett
**Subject:** CSE TransTel
**Attachments:** 20170727_transtel_web post.pdf; transtel_settlement.pdf

**Importance:** High

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company. The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A. These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at www.treasury.gov/ofac/enforcement.**

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.** CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case. Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters. TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. See 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran. TransTel initiated the wire transfers from its account with the Bank. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, please see the Settlement Agreement between OFAC and CSE Global and TransTel here.

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A. OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology.  When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

# SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I. PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others. OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector. At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II. RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation. Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341. *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

## III. FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company). At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List"). The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders. CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes. All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd ... hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List. On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions." Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.

[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran. (*See* attached Penalty Calculation Spreadsheet). These transactions were processed through the United States and caused multiple financial institutions—including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran. TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran. As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "...unlawful for a person to violate...or cause a violation of any...regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction ... [that] causes a violation of ... any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case. Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

## IV. Terms of Settlement

OFAC and Respondent agree as follows:

1. In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2. In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

A. Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

(i) sign, date, and mail an original signed copy of this Agreement to: [redacted], Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220. Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

(ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**. Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**. Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

B. To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

C. That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured. In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Respondent accepts the terms of this Settlement Agreement this 15 day of JULY, 2017.

[signature]
Signature

LIM BOON KHENG
Respondent's Printed Name (or in the case of an entity, the name of Respondent's Duly Authorized Representative)

DIRECTOR CSE TransTel Pte Ltd &
DIRECTOR CSE GLOBAL LIMITED
Printed Title of Respondent's Duly Authorized Representative and Name of Entity (if applicable)

☒ Please check this box if you have not enclosed payment with this Agreement and will instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: July 19, 2017

John Smith
John E. Smith
Director
Office of Foreign Assets Control

Enclosure

# Venezuela Housing Case

I.    Introduction

II.   USD Payments

III.  Potential Charges

IV.  Company Structure

V.   Individuals

VI.  Proof of Payment

VII. Knowledge of Sanctions/Efforts to Hide Iranian Connection

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013
- Total amount cleared: **$115,508,527.28**
- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

# EVIDENCE

- Emails (mostly from the Iranian side of the "Project")

- Payment records (SWIFT messages and wires)

- Bank account records (limited)

- 2 possible fact witnesses (significant availability issues with both)

- Expert testimony (from banks, FED, and OFAC)

# IV. Company Structure



# Stratus International Contracting ("Stratus")

- Established in 1978 in Tehran, Iran by **Mohammad SADR**
- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007
- Builds infrastructure projects in and outside of Iran
- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)
- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

- Stratus establishes a new subsidiary (IIHC) and a “Venezuela Project Executive Committee” in 2009 to manage and oversee the execution of the project in Venezuela.
- Committee members over time include:
  - **Mohammad SADR** (Chairman)
  - **Ali SADR**
  - **Behrooz ZANGENEH**
  - **Ahmad SAFAVARDI**
  - **Bahram KARIMI**
  - **Mustafa CETINEL**
  - **Ekrem CINAR**



# Iranian Int'l. Housing Co.

**This mass housing production project is constructed for 60,000 inhabitants in an area of 318 hectares on the outskirts of Ojeda in Solia province.**

# V. Individuals

**Venezuela Committee (Iran)**
Chairman: **Mohammad SADR**
Members: **Bahram KARIMI, Farshid KAZERANI, Ali SADR; Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR; Ahmad SAFAVARDIi**

**Hussein TEHRANI (Iran)**
Chairman/CEO/President of IIHC

**Farshid KAZERANI (Iran)**
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting

**Mustafa CETINEL (Istanbul/VE)**
Project Director

**Behrooz ZANGENEH (Iran)**
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC

**Ekrem CINAR (Turkey)**
Vice Project Manager

**Bahram KARIMI (Iran/VE)**
Project Manager

**Ahmad SAFAVARDI (US/VE)**
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US

**Numerous Iranian IIHCO employees in VE**

*Parentheticals indicate where people were physically located at relevant time period

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information "as requested:"**

**Subject:** USD Account
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Thu, 30 Dec 2010 17:39:59 -0500
**To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>

Salam,

Please find attached the USD account information as requested.

Best regards

Intermediary Bank: JPMORGAN CHASE BANK (New York, New York)
SWIFT CODE: CHASUS33
Banking Code: FED ABA 02100021

Bank of Beneficiary: HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
SWIFT Code: SHHBCHZZ
(USD)Account No: 5196631203
IBAN: CH7708530519663100203

Beneficiary: Stratus International Contracting J.S.
Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

## Instruction Letter and payment for IPC 11-13:

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|---|---|---|---|---|---|---|---|
| 7/5/2011 | $ 20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hyposwiss Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |

IRANIAN INT. HOUSING Co. (PJS)
Proyecto de 7000 Unidades de Nueva Ojeda
New Ojeda Housing Development Project (7000 Residential units)

Date: 01/07/2011
No.: 101-90-107
Annex:

To: Eng. Jose Luis Parada Sanchez
Chairman of the Board of DUCOLSA

Dear Sir,

I hereby write you with my cordial and revolutionary greetings.

In view of the current difficulties for transfer and movements of funds and to facilitate the process we already appointed Clarity Trade & Finance S.A. to act as our agent for receiving the payment of IPCs.

Therefore, we, hereby, request you to order to make the payment of IPCs 11, 12 & 13 to the account of the aforementioned company with the below details, for USD:

**Beneficiary: Clarity Trade & Finance SA**
**IBAN #: CH80 0853 0518 2061 0020 3**
**Address: Wachlenstrasse 5, 8832 Wollerau Schwyz, Switzerland**

**Beneficiary's Bank: Hyposwiss Private Bank Ltd.**
**Account No. 001-1-835873 / Chips UID: 059242**
**Swift Code: SHHBCHZZ**

**Intermediary Bank: JPMORGAN CHASE BANK New York, New York**
**Swift Code: CHASUS33**
**Banking Code: FED ABA 021000021**

Thank you in advance for your anticipation.

**Código Swift: CHASUS33**
**Código Bancario: FED ABA 021000021**

Agradecemos por sus sinceras colaboraciones.

Sincerely yours
Behrooz Zangeneh
Managing Director

شرکت بین المللی
خانه سازی ایرانیان
Iranian International Housing Co.
Sucursal Venezuela

Calle Piar, esquina de avenida 10 y calle Piar, Cuidad Ojeda, Edo. Zulia, Venezuela
Tel:(+58-265) 63 20 111 , 63 20 239
Email: info@iihco.ir - www.iihco.ir

# Wire Sheet

Transaction Details for TRN: 3251400186fs Region: US

| | |
|---|---|
| Instruction Date: | 7/5/2011 |
| Payment Date: | 7/5/2011 |
| Transaction Amount: | $20,692,579.48 |
| Transaction Type: | BT |
| Customer Swift ID: | SHHBCHZZ |
| Debit Fin Entity: | 01 |
| Credit Fin Entity: | 01 |
| Credit Reference: | OOE9996A000394 |
| Debit Reference: | OOE9996A000394 |
| Sender's ID: | SWF/BESCPTPLOSF |
| Bene Flag: | B |
| Order Party: | /PT50000709030009508180330<br>1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA CARACAS<br>3/VE/VENEZUELA |
| Debit Party: | 00000011728748<br>BES SFE FUNCHALOFFSHORE MADEIRA<br>DPC - SERVICO RECONCILIACAO<br>BANCARIA<br>LISBON PORTUGAL 1250--142 |
| Details of Payment: | 1590011835 |
| Credit Party: | 00000011835873<br>HYPOSWISS PRIVATBANK AG<br>BAHNHOFSTRASSE/SCHUETZENGASSE 4<br>POSTFACH 3180<br>ZURICH SWITZERLAND 8021 - |
| Account Party: | SHHBCHZZ |
| Bene: | /CH8008530518206100203<br>CLARITY TRADE AND FINANCE S A |

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR

IPC 11-12-12

**HYPOSWISS**
PRIVATE BANK

Hyposwiss Private Bank Ltd.
Stauffacherstrasse 41
8004 Zürich
Phone +41 (0)44 214 31 11
Fax +41 (0)44 211 52 23
www.hyposwiss.com
BIC SHHBCHZZ

Your contact person:
Urs Schneider
Direct +41 (0)44 214 31 94
urs.schneider@hyposwiss.ch

**Clarity Trade & Finance SA**
Current account USD 5182061.203
Custody account no. 5182061.01
IBAN CH80 0853 0518 2061 0020 3

Sent electronically
Clarity Trade & Finance SA
c/o Kessler Wassmer Giacomini & Partner
Wächlenstrasse 5
8832 Wollerau

Zurich, July 5, 2011
Reference number: 51805412

## Credit advice

On July 5, 2011 we booked the following payment

| | | *Currency* | *Amount* |
|---|---|---|---|
| Ordered by | 1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA CARACAS<br>3/VE/VENEZUELA | | |
| Reference | 1590011835 | | |
| Original Amount | USD 20'692'579.48 | | |
| Amount | | USD | 20'692'579.48 |
| **To your credit** | **Value date July 5, 2011** | **USD** | **20'692'579.48** |

# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

# VII. Knowledge of Sanctions/Efforts to Hide Iranian Connection

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR's** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

**Subject:** Re: Conference Call with Mercantil Valores Uruguay
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Fri, 16 Jul 2010 12:06:04 -0400
**To:** HBM Funds - Alwin de Jongh <alwin.dejongh@hbmgroup.com>
**CC:** HBM Funds - Herman Oosten <Herman.Oosten@hbmgroup.com>

Dear Alwin.

NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.

The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.

Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.

Hope this helps.

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

There's no Iranian behind any of the accounts provided.
This is a simple answer.

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:

> Salam
> I tried call you several time but could not reach you. please call me urgently.
> Client asked if the owner of the account in the intermmidate bank is Iranian?
>
> Bahram karimi
> Project Manager

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

**Subject:** Fwd: Payment USD 6'000
**From:** Linet Estiroti <linet.estiroti@perseswiss.ch>
**Date:** Thu, 3 Jul 2014 19:41:34 +0300
**To:** Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual. Please advise what to do. Regards, Linet Estiroti

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards

Sent from my BlackBerry® Smartphone supplied by Swisscom

---

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

Furher to our conversation in Istanbul I suggest two names for the change as follows:

1. International Industrial Housing Company

2.International Iron Housing Company

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGANEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 -0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 73

**Exhibit 73. March 9, 2020 Text Messages With Co-Chief Crowley Beginning At Approximately 2:16 p.m.**

| | |
|---|---|
| Bove | Do we need decl from Ilan [Graff] [M]ike [Ferrara] and [Sean] Buckley |
| * * * | |
| *Exchange of screenshots of trial transcript from morning of March 9, 2020* | |
| * * * | |
| Crowley [*5:06 pm*] | Can we talk briefly? |
| Crowley | I am so sorry. I will absolutely come back |
| Bove | I'm coming in |
| * * * | |
| Crowley [*7:36 pm*] | Is this as bad as it seems? |
| Crowley | I am so sorry |
| Bove | No worries we're tag teaming it will be fine |
| Bove | I just gave Garrett an hour long cx tutorial |
| Bove | Krouse is sending me the draft letter in 10 |

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 74

**From:** Kim, Jane (USANYS) 4
**To:** Bove, Emil (USANYS); Krouse, Michael (USANYS); Lake, Stephanie (USANYS); Crowley, Shawn (USANYS)
**Subject:** RE: Here is a draft letter
**Date:** Monday, March 9, 2020 10:16:23 PM
**Attachments:** Time Sensitive Question.msg.msg

---

Attaching email to OFAC. Will confirm Fuenmayor doc.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:11 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Did we produce the "document in the material Fuenmayor gave us"?

---

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:10 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Attached.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:58 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Can you send me exs a and b please

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse

Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

**From:** Kim, Jane (USANYS) 4
**To:** Kaveh.Miremadi@treasury.gov; MariaHelene.VanWagenberg@treasury.gov; Jacqueline.Brewer@treasury.gov
**Cc:** Lake, Stephanie (USANYS); Krouse, Michael (USANYS); Lynch, Garrett; Lynch, Garrett (USANYS) [Contractor]
**Subject:** Time Sensitive Question
**Attachments:** GX 411.pdf

---

Kaveh, Maria, and Jacqui:

I'm attaching a letter dated June 16, 2011, from Commerzbank to OFAC concerning a specific payment. Could you please let us know what actions OFAC took in response to this letter? We need to update the Court on this issue tomorrow morning, so any information would be hugely appreciated.

Thank you in advance,

Jane

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone: (212) 637-2038
Email: jane.kim@usdoj.gov



NEW YORK BRANCH

Department of the Treasury
Office of Foreign Assets Control
1500 Pennsylvania Avenue NW
Washington DC 20220

Vinay Jepal
2 World Financial Center, New York, NY 10281-1050
Telephone (212) 266-7200
Fax (212) 266-7235
vinay.jepal@commerzbank.com

June 16, 2011

**Re: Information Sharing – Stratus International Contracting Company**

Dear Sir/Madam:

Commerzbank AG, New York Branch (CBNY) would like to share the following information with OFAC. On April 20, 2011 CBNY's AML transaction monitoring system generated an alert, which involved a transaction for USD 29,442,967.57 value April 4, 2011.

The transaction was originated by Banco Del Tesoro, CA Banco Universal Caracas for its client BT / Fideicomiso / Fondo Chino Venezolano in Caracas, Venezuela. The beneficiary of the payment was Stratus International Contracting Company ("Stratus"), a client of Hyposwiss Privatbank AG, Zurich.

As per standard procedure, CBNY initiated a request for information to the remitting bank Banco Del Tesoro, CA Banco Universal Caracas, Venezuela to obtain details on both entities and their relationship. In the interim, CBNY conducted further due diligence and noted the following regarding Stratus from its website:

- Stratus was founded in 1978 in Tehran, Iran
- Stratus International specializes in providing contracting services to infrastructure projects such as roads, railways, dams, tunnels, airports and buildings.
- Stratus is presently working on a 7000 Apartment Unit "New Ojeda" Housing Development Project in Venezuela

On May 12, 2011, CBNY received a response from the bank in Caracas indicating the following:

- Stratus's physical address is Gardenya Plaza 5, K:3 D:3 (Floor 3, Suite3) 34758 Atasehir, Istanbul, Turkey
- Stratus is registered in Istanbul, Turkey (copy of the registration attached)
- Stratus provides construction services in Turkey, Dubai and Venezuela
- The purpose of the payment is for the construction of a 7000 apartment unit project "Proyecto Urbanismo Nueva Ciudad Fabricio Ojeda, in Cuidad Ojeda, Estado Zuila, Venezuela (same address as listed on Stratus' website)

Although Stratus is not listed as an SDN, and the payment does not indicate any direct involvement of Iran or with Iran, due to conflicting information between the website and the response forwarded by the bank in Caracas, CBNY believes it appropriate to share this information with OFAC since Stratus may be an Iranian Company.

Chairman of the Supervisory Board: Klaus-Peter Müller
Board of Managing Directors: Martin Blessing (Chairman),
Frank Annuscheit, Markus Beumer, Achim Kassow, Jochen Klösges,
Michael Reuther, Stefan Schmittmann, Ulrich Sieber, Eric Strutz, Martin Zielke

Commerzbank Aktiengesellschaft, Frankfurt am Main
Registered Office: Frankfurt am Main Reg.No. 32000
VAT No. DE 114 103 514

GOVERNMENT
EXHIBIT
411
18 Cr. 224 (AJN)



NEW YORK BRANCH

**Re: Information Sharing – Stratus International Contracting Company– Page 2**

We have added Stratus into our sanctions filter to monitor any future payments. Please note that apart from this transaction, there have not been any other payments involving Stratus processed by CBNY to date.

The purpose of this letter is to report the good faith efforts of Commerzbank AG, New York Branch in complying with applicable OFAC requirements and voluntarily informing OFAC of any information received during its investigation into possible sanctions-related entities.

Should you have any further questions concerning this matter, please do not hesitate to contact the signatories below.

Respectfully,

Commerzbank AG
New York Branch

Deepa Keswani
Head of AML/Anti-Fraud/Sanctions Compliance

Vinay Jepal
Sanctions Compliance Officer

Encls.

stratus intl payment

```
:LT Address                        :COBAUS3XA
 :transaction type                  :202 COVER bank tfr favour 3rd bank
 :input from                        :COBADEFF
                                     COMMERZBANK AG FRANKFURT
                                     HEAD OFFICE
                                     32-36 NEUE MAINZERSTRASSE
                                     60261 FRANKFURT GERMANY
 :Validation Flag                    :COV}
--------------------------------------------------------------------------------
{4: Text block:
    :20 /transaction reference number   :FAAS109400150500
    :21 /related reference              :FAAS109400150500
    :32A/value date                     :040411 USD 29,442,967.57
    :52A/ordering institution - BIC     :COBADEFF
                                         COMMERZBANK AG
                                         FRANKFURT AM MAIN
    :57A/account with inst - BIC        :CHASUS33
                                         JPMORGAN CHASE BANK, N.A.
                                         NEW YORK,NY
    :58A/beneficiary inst - BIC         :SHHBCHZZ
                                         HYPOSWISS PRIVATBANK AG, ZURICH
                                         ZURICH
    :50K/ordering customer              :/400887746602USD
                                         BT/ FIDEICOMISO / FONDO CHINO
                                         VENEZOLANO. AV GUICAIPURO. URB EL
                                         ROSAL. TORRE BANCO DEL TESORO.
                                         CARACAS - VENEZUELA.
    :52A/ordering institution - BIC     :BDTEVECA
                                         BANCO DEL TESORO, C.A. BANCO
                                          UNIVERSAL
                                           CARACAS
    :59 /beneficiary customer           :/CH7708530519663100203
                                         STRATUS INTERNATIONAL CONTRACTING
                                         J.S.
    :70 /details of payment             :REF: DESEMBOLSO NRO. 386 FONDO
                                         CHINO VENEZOLANO. CODIGO NRO.
                                         00579.
    :33B/amount                         :USD 29,442,967.57}
--------------------------------------------------------------------------------
 Entry   :          /SWIFT/ Date:110404 Time:02:44:17
                   Info:1111/001781
```



فارسی | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

---

STRATUS is an Engineering, Construction, Management and Contracting Company by specializing in the field of Building Construction, Road Works and Water Works.
STRATUS is Graded in three major categories: Read more...

*Road & Railway*

STRATUS has succeeded to recieve ISO 9001-2000 certificate for Quality Management System from MIC registered under UKAS, United Kingdom from 2004 which upgraded recently to ISO 9001-2008 in 2010 and intending to extend it by OHSAS 18001:2007. Read more...

*Dam*

Our memberships:

- Federation of Contractors of Islamic Countries (F.C.I.C.)
- Pakistan Engineering Council
- International Chamber of Commerce (I.C.C.)
- Iran – UK Chamber of Commerce
- Iran – Canada Chamber of Commerce Read more...

*Building*

---

Copyright © 2010 Stratus Group Company. All rights reserved



STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

## Contact Us

**STRATUS International Contracting Co.**

Address: **No.35, Golestan St., Iran Zamin Ave., Shahrake Ghods, Tehran, Iran.**

Postal Code: **1465865187**

Tell: **(98) 21 8837 3100-6**

Fax: **(98) 21 8808 2882**

E-mail: **stratus@stratusgc.com**

Copyright © 2010 Stratus Group Company. All rights reserved





فارسي | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**Branch Offices**

| **Middle East** | **CIS** | **South America** |
|---|---|---|
| Iran | Kazakhstan | Venezuela |
| Iraq | | |

Copyright © 2010 Stratus Group Company. All rights reserved





STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

---

**Sister Companies List**

 1.Samaneh Stratus (INVESTMENT CO.)

 2.Iran Construction Investment Co.

 3.Eghtesad - Novin Bank

4.Pishgaman Bazar Novin (BROKERAGE CO.)

 5.Novin Insurance Co.

 6.Pars Shahr Co.

 7.Global Petro Tech CO.

 8.Keyhan Tabadol Co.

9.Pars Hanza Aluminium CO.

 10.Azarbaijan Industry Development Co.

11.Eghtesad Novin Investment CO.

 12.Samaneh Gostar Novin

Copyright © 2010 Stratus Group Company. All rights reserved



STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**7000 Units 'New Ojeda' Housing Development Project**

| | |
|---|---|
| Main Technical Features | Site Gross Area : 318 Hec.<br>Concrete works : 520,000 $m^3$<br>Net Construction Area : 850.000 $m^2$<br>Water & Sewage network : 150 Km<br>Electrical network : 200 Km<br>Communication network : 220 Km<br>Gas network : 30 Km |
| Location | Ciudad Ojeda, Zulia State, Venezuela |
| Employer | Ducolsa 'Urban Development S.A' |
| Contract Duration | 48 Months |
| Date of Award | September 2009 |
| Status | [ Under Construction ] |

[Back to list]

Copyright © 2010 Stratus Group Company. All rights reserved



فارسی | Staff Login | Site Map | Hon

STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**Dalbandin – Nokkundi Highway - Section III-B** Details >>

**Socotra Airport** Details >>

**Design & Construction of Parliament Building & Commercial Center in Djibouti City** Details >>

**7000 Units "New Ojeda" Housing Development Project** Details >>

Copyright © 2010 Stratus Group Company. All rights reserved

( K A D I K Ö Y )
370857 - 2010

T.C.
İ S T A N B U L
Ticaret Sicil Memurluğu

# S İ C İ L T A S D İ K N A M E S İ

| | |
|---|---|
| Ticaret Ünvanı | STRATUS INTERNATIONAL CONTRACTING İNŞAAT VE TAAHHÜT ANONİM ŞİRKETİ |
| Sicil No. | 751671 |
| Tescil Tarihi | 22 / 10 / 2010 |
| İşletme Merkezinin Adresi (Şubenin tescilinde şubenin Adresi ile beraber,merkezin adresi de yazılır.) | GARDENYA PLAZA 5 K.3 D.3 ATAŞEHİR |
| İşletmenin uğraştığı işler | Ana sözleşmesinde yazılı olan işler |
| İşletme sahibinin hüviyeti (Hükmi şahıslarda, hükmi şahsın mahiyeti) | Anonim |
| İşletme temsilcileri | 38824643592 TC.No.lu CELAL TATLICIBAŞI |
| Tasdiknamenin düzenlenme Tarih ve Sayısı | 22 EKİM 2010 - 39185 |

RECAİ SÖKMEN
İSTANBUL TİCARET SİCİLİ
MEMURU YARDIMCISI

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 75

## Milione, Shawn (USANYS) [Contractor]

**From:** Bove, Emil (USANYS)
**Sent:** Monday, March 9, 2020 8:31 PM
**To:** Kim, Jane (USANYS) 4
**Cc:** Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor]; Crowley, Shawn (USANYS)
**Subject:** Summation points

1) On CICADA, I think we need to hammer the point that OFAC specifically designated one of Sadr's subsidiaries after Obama supposedly welcomed individual Iranians to violate the sanctions at will. That designation puts the lie to the idea that USG was no longer targeting individuals, or that Sadr could have reasonably believed that. Are there violative transactions after the designation?

2) I think we need to hit this Commerzbank issue in the closing and the rebuttal. I'd assume GX 411 is coming in. Krouse, please add language linking this to the emails we like. For the sanctions violations/evasion, we want to lay out our theory for how these documents show together that Sadr was intentionally hiding information from the bank, and succeeding in that strategy. For the bank fraud / harm arguments, I think it boils down to emphasizing that the letter makes clear they added Sadr to the filter. Jane, I think we go at a higher frame of reference in the rebuttal, and probably on page 1. The main point is that Sadr's scheme worked as to Commerzbank – he hid the information and got the payments through. OFAC could have done more to follow up, but that's not a defense to Sadr. OFAC isn't on trial. And the fact that OFAC didn't take action based on the watered down version of events fed to Commerzbank by Sadr says nothing about Sadr's state of mind.

3) I also think there's some room to work with this "clobbered" point in one of the summations. From our perspective, he's admitting/conceding that banks take hits over this stuff.



2020.03.03 Transcript.pdf - Adobe Acrobat Pro DC

trouble dealing with Iranians. The politics, the reputation, the hassle, and there's also legal exposure.

It turns out that some banks and some companies over the years have done business with the government of Iran and the bad guys in Iran totally contrary to U.S. sanctions, and they have been caught. For them -- and many of them are

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86

K33nsad2 Opening - Mr. Weingarten

European banks -- they have a U.S. presence, so they have been clobbered by the United States of Department of Justice. There is a French bank that basically financed the terror in Darfur. Many of the banks dealt with Syria. Many of the banks dealt with Mozambique when there were sanctions, and Cuba when there were sanctions. And many banks have gotten clobbered in addition for dealing with Iran, sometimes the Central Bank of Iran, sometimes with companies owned by the IRGC, the paramilitary arm of the theocrasy.

And new rules pop up about due diligence and compliance obligations that banks and other companies must follow. The results have been companies and in particular

# Exhibit 76

| | |
|---|---|
| **From:** | Krouse, Michael (USANYS) |
| **To:** | Bove, Emil (USANYS); Kim, Jane (USANYS) 4; Lake, Stephanie (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | Here is a draft letter |
| **Date:** | Monday, March 9, 2020 8:40:05 PM |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.docx |

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

**Re: *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)**

Dear Judge Nathan:

The Government writes to provide further facts regarding the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"), and the circumstances surrounding the late production of what has now been marked as Government Exhibit ("GX") 411.

At the outset, the Government wants to make clear that, if the defense wishes to offer GX 411, the Government consents to the proposed curative instruction. The Government is also willing to enter into the stipulation proposed by Reid Weingarten, or a modified version of the stipulation in light of the disclosures contained in this letter.

All former and current members of the Government's prosecution team have now completed a diligent review of all files (including, but not limited to, emails, hard copy correspondence, hard copy files, and notes) for any materials reflecting communications or correspondence with OFAC. The members of the prosecution team includes AUSAs Andrew DeFilippis, David Denton, Rebekah Donaleski, Jane Kim, Michael Krouse, Stephanie Lake, Matthew Laroche, as well as Special Assistant United States ("SAUSA") Attorney Garrett Lynch.

Based on the diligent review, no AUSA on the prosecution team had any communications or correspondence with OFAC, except in connection with (1) the preparation of Mr. Ted Kim to testify at trial, and (2) the OFAC license check (which has been admitted as Government Exhibit 602). However, as explained in detail below, SAUSA Lynch did have substantive discussions with OFAC. Copies of emails between SAUSA Lynch and officials at OFAC were produced to the defense tonight at 7:25 p.m., and are attached to this letter as Exhibit A ("Ex. A"). Set forth

below is a chronological account of SAUSA Lynch's communications with OFAC during this case.

First, SAUSA Garrett Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA"). In January 2012, while at DANY, ADA Lynch was assigned to work on an investigation into Commerzbank, A.G., a German bank that had been under investigation since January 2011 by DANY, the United States Department of Justice ("DOJ"), and multiple regulatory agencies. That investigation concerned alleged violations of U.S. sanctions laws and regulations during the period 2002 through 2007.

During the course of that investigation, DANY received, from Commerzbank, 15 voluntary disclosures that the Commerzbank branch in New York City had made to OFAC between March 2010 and October 2014. In total, DANY received approximately 215 pages related to those disclosures. GX 411 was one such disclosure. In March 2015, Commerzbank entered deferred prosecution agreements with DANY and DOJ.

In May 2015, ADA Lynch was assigned to work on the DANY investigation related to the defendant, Ali Sadr Hashemi Nejad. On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch, which made the following request:

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spantrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

Sept. 15, 2015

Ex. A at 4. In October 2015, DANY received records in response to the subpoena. Those subpoena returns were produced to the defense in this case during Rule 16 discovery.

On May 19, 2016, ADA Lynch had a conversation with a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and regulations. Ex. A at 6. During that call, ADA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation

potentially violated U.S. sanctions laws and regulations. OFAC Officer-1 confirmed that the facts outlined by ADA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, ADA Lynch sent OFAC Officer-1 an email. Ex. A. at 7. In the email, ADA Lynch asked OFAC Officer-1 about arranging an OFAC witness for possible grand jury testimony. ADA Lynch also offered "to provide you with information so you can take action on your own if so desired." *Id.* On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief"). Ex. A at 8.

On or about August 5, 2016, ADA Lynch had a telephone call with the Section Chief, along with two other OFAC enforcement officers. Ex. A at 10. During this call, ADA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

In June 2017, ADA Lynch was appointed as a SAUSA.

Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails. *See* Ex. A at 12-14. During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation. The phone call, however, did not happen until September 21, 2017. *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").

On September 21, 2017, SAUSA Lynch had a call with OFAC Officer-1. Ex. A at 11. During that call, SAUSA Lynch outlined the facts of the case in order to get OFAC Officer-1's thoughts on the proposed federal charges. That same day, following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case. *Id.*; *see* Ex. A at 26-47 (the "PowerPoint"). OFAC Officer-1 responded: "[T]hanks for passing along the information below/attached. We'll take a look and will get back to you." *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the PowerPoint, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche. Ex. A at 15. OFAC Officer-1 thanks SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have." *Id.* No one from OFAC followed-up with SAUSA Lynch on next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email. Ex. A at 16. Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case. *Id.* at 17-25.

SAUSA Lynch has no further records reflecting communications about this case with OFAC, or any recollection of other such communications. SAUSA Lynch never inquired or learned whether OFAC took independent steps to investigate any of the entities, individuals, or

banks involved in this case. Further, during the course of the above-described phone calls and conversations, SAUSA Lynch never discussed the contents of GX 411 with anyone at OFAC. Nor did SAUSA Lynch learn what, if any, actions OFAC took in response to receiving that document.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse. *See* Ex. B. AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million. AUSA Lake stated a document previously provided by a witness "should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email caused SAUSA Lynch to recall the Commerzbank document he previously saw while working at DANY. That same day, SAUSA Lynch reviewed a file in his DANY office containing records received from Commerzbank during the course of the separate investigation into Commerzbank, which had concluded in March 2015. During that review, he found the document later marked as GX 411. That same day, SAUSA Lynch sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411, and said: "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment." None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email. Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief. At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been. AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020. GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails. After reviewing GX 411, AUSA Lake looked at the Commerzbank subpoena production, and discovered that GX 411 was not included. The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense. At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document, and did not consider it to be *Brady*. The prosecution team decided to seek to admit GX 411 in its case in chief. AUSA Lake sent the document, along

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

with others, to the defense. The Government did not specifically identify that GX 411 had not previously been produced in discovery.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: /s/
Jane Kim / Michael Krouse / Stephanie Lake
Assistant United States Attorneys
Garrett Lynch
Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 77

**From:** Kim, Jane (USANYS) 4
**To:** Bove, Emil (USANYS); Krouse, Michael (USANYS); Lake, Stephanie (USANYS); Crowley, Shawn (USANYS)
**Subject:** RE: Here is a draft letter
**Date:** Monday, March 9, 2020 9:06:48 PM

---

Not yet.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:06 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Do we have the transcript from today yet?

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

*United States v. Sadr*, No. 18 Cr. 224 (AJN)

Exhibits to the October 16, 2020 Declaration of Emil J. Bove III

# Exhibit 78

**From:** Kim, Jane (USANYS) 4
**To:** Bove, Emil (USANYS); Krouse, Michael (USANYS); Lake, Stephanie (USANYS); Crowley, Shawn (USANYS)
**Subject:** RE: Here is a draft letter
**Date:** Monday, March 9, 2020 10:10:07 PM
**Attachments:** Ex. A.pdf
Ex. B Email from GL.pdf

---

Attached.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:58 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Can you send me exs a and b please

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

# EXHIBIT A

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



CYRUS R. VANCE, JR.
DISTRICT ATTORNEY

August 31, 2015

**VIA CERTIFIED MAIL**
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: Investigation No. M2013-00223036

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015**. In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@dany.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**

Please note that ***electronic copies are preferred***. If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>John Doe,<br><br>Defendant. | BUSINESS RECORDS AFFIDAVIT<br><br>STATE OF NEW YORK<br>COUNTY OF NEW YORK<br><br>M2013-00223036 |

I, ______________________, declare that I am a duly authorized custodian of the records, or other employee or agent, of ______________________ (*name of business*), and am familiar with the record keeping practices of ______________________ (*name of business*). I make this affidavit pursuant to New York State Criminal Procedure Law Section 190.30(8).

Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account number ______________________. These pages contain the following types of records [*list or description of records*]:

______________________________________________

______________________________________________

______________________________________________

______________________________________________

I am familiar with the above-described records. These records were made in the regular course of business, and it was the regular course of such business to make and keep these records. The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter. The person who made these records was under a business duty to do so accurately.

*False statements made herein are punishable as a Class A misdemeanor pursuant to P.L. § 210.45.*

X______________________________________________
Signature (Deponent) Date

# SUBPOENA

(Duces Tecum)
FOR A WITNESS TO ATTEND THE
**GRAND JURY**

In the Name of the People of the State of New York

**To: Commerzbank AG**

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, **as a witness in a Grand Jury investigation:**

**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

**YOU ARE ORDERED not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.**

Dated in the County of New York,
August 31, 2015

So Ordered:

Justice of the Supreme Court
State of New York
PT. 1 AUG 3 1 2015
HON. ABRAHAM L. CLOTT

CYRUS R. VANCE, JR.
**District Attorney, New York County**

By:
Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

**Note:** In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to ThomasM@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

*Case No.: M2013-00223036*

**EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015**

ITEMS TO BE PRODUCED are those in the actual and constructive possession of ~~Citibank, N.A.~~ Commerzbank AG and all entities, agents, officers, employees, officials, over which it has control, including its subsidiaries:

MJT [initials]
Sept. 15, 2015

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spamrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

**DEFINITIONS AND INSTRUCTIONS**

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities; (ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership; (iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

## Lynch, Garrett

**From:** Lynch, Garrett
**Sent:** Thursday, May 19, 2016 11:22 AM
**To:** Conroy, Christopher
**Subject:** FYI

**Tracking:**

| Recipient | Read |
| --- | --- |
| Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

**Lynch, Garrett**

**From:** Lynch, Garrett
**Sent:** Monday, August 1, 2016 12:36 PM
**To:** 'Michael.Dondarski@treasury.gov'
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case. Who's the best person for us to contact about either or both? Thanks!

Best,
Garrett

**Lynch, Garrett**

| | | |
|---|---|---|
| **From:** | Lynch, Garrett | |
| **Sent:** | Wednesday, August 3, 2016 9:26 AM | |
| **To:** | Hochhauser, Rachel; Maloney, Christina | |
| **Subject:** | FW: Request | |
| **Tracking:** | **Recipient** | **Read** |
| | Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| | Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10th) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case. Who's the best person for us to contact about either or both? Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Rosanna.Wells@treasury.gov
**Sent:** Monday, August 8, 2016 9:08 AM
**To:** Lynch, Garrett
**Cc:** Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov
**Subject:** RE: Thanks

Thanks Garrett. I'm looping in the two OFAC Enforcement Officers who were on the call.

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Friday, September 22, 2017 5:44 PM
**To:** Lynch, Garrett
**Cc:** Matthew.Laroche@usdoj.gov
**Subject:** RE: Case

Garrett,

It was great speaking with you all yesterday, and thanks for passing along the information below/attached. We'll take a look and will get back to you. And thanks for the well wishes!

Have a great weekend,

Mike

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Wednesday, September 20, 2017 4:08 PM
**To:** Lynch, Garrett
**Subject:** RE: Call

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now. Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above. I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there. Would you be able to do a call tomorrow or Friday? Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

---

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

---

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here. Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation! Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards. Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00. Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir! No worries – I know how slammed you all are. I'm leaving on Vacation on Wednesday, so does early in the week work? My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30. It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski). I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting. Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike! I'm very happy for you and Rachel – join the club! You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though...

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory. Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir. I hope this email finds you well and that you've been enjoying the summer with the family. I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail. I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up. Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY. What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir! I hope the summer is treating you well so far in the swamp. If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland. We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA. It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis. We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

**Lynch, Garrett**

**From:** Michael.Dondarski@treasury.gov
**Sent:** Tuesday, September 26, 2017 4:00 PM
**To:** Lynch, Garrett
**Cc:** Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov
**Subject:** RE: Case

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

---

**From:** Michael.Dondarski@treasury.gov
**Sent:** Thursday, March 28, 2019 11:34 AM
**To:** Lynch, Garrett
**Subject:** CSE TransTel
**Attachments:** 20170727_transtel_web post.pdf; transtel_settlement.pdf

**Importance:** High

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company. The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A. These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at www.treasury.gov/ofac/enforcement.**

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.** CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case. Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters. TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. See 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran. TransTel initiated the wire transfers from its account with the Bank. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, please see the Settlement Agreement between OFAC and CSE Global and TransTel here.

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A. OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology.  When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

**SETTLEMENT AGREEMENT**

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I. PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others. OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector. At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II. RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

---

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation. Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341. *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

## III. FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company). At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List"). The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders. CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes. All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd ... hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List. On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions." Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.

[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran. (*See* attached Penalty Calculation Spreadsheet). These transactions were processed through the United States and caused multiple financial institutions—including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran. TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran. As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "...unlawful for a person to violate...or cause a violation of any...regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction ... [that] causes a violation of ... any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case. Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

## IV. Terms of Settlement

OFAC and Respondent agree as follows:

1. In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2. In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

A. Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

(i) sign, date, and mail an original signed copy of this Agreement to: [redacted] [redacted], Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220. Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

(ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**. Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**. Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

B. To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

C. That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured. In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Respondent accepts the terms of this Settlement Agreement this 15 day of July, 2017.

[signature]
Signature

LIM BOON KHENG
Respondent's Printed Name (or in the case of an entity, the name of Respondent's Duly Authorized Representative)

DIRECTOR CSE TransTel Pte Ltd &
DIRECTOR CSE GLOBAL LIMITED
Printed Title of Respondent's Duly Authorized Representative and Name of Entity (if applicable)

☒ Please check this box if you have not enclosed payment with this Agreement and will instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: July 19, 2017

John Smith
John E. Smith
Director
Office of Foreign Assets Control

Enclosure

# Venezuela Housing Case

I. Introduction

II. USD Payments

III. Potential Charges

IV. Company Structure

V. Individuals

VI. Proof of Payment

VII. Knowledge of Sanctions/Efforts to Hide Iranian Connection

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013
- Total amount cleared: **$115,508,527.28**
- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

# EVIDENCE

- Emails (mostly from the Iranian side of the "Project")
- Payment records (SWIFT messages and wires)
- Bank account records (limited)
- 2 possible fact witnesses (significant availability issues with both)
- Expert testimony (from banks, FED, and OFAC)

IV. Company Structure
PDVSA
(Venezuela state-owned oil company)
Payments made to Clarity and Stratus, Turkey via PDVSA account(s)
Stratus, Iran
Established in 1978 by Mohammad Sadr
Leading Iranian Contracting Co.
Contract between DUCOLSA and IIHCO, Iran signed 7/2/2007
IIHCO, Iran
Incorporated 12/27/2006
DUCOLSA
Venezuelan Housing Fund
Contract between DUCOLSA and IIHCO, Venezuela signed 7/2/2007
IIHCO, Venezuela
Incorporated 2/2007
Branch Office of IIHC, Iran
Subcontract Agreement between IIHCO, Venezuela and Stratus, Turkey 2/2/2012
Stratus Intl Contracting aka Straturk, Turkey
(Ali Sadr, chairman)
Incorporated 9/22/2010
Finance Management Contract between IIHCO, Venezuela, Stratus Turkey, Clarity, and Stratus Global 2/1/2011
Clarity Trade & Finance
Incorporated 3/19/2010
Serves as the "Administrator" for IIHCO, Venezuela and Stratus, Turkey by being the designated recipient of funds
Stratus Global Investments
Incorporated 2/3/2009
Serves as the "investment agent" for IIHCO, Venezuela and Stratus, Turkey.
6

Ex. A at 31

# Stratus International Contracting (“Stratus”)

- Established in 1978 in Tehran, Iran by **Mohammad SADR**
- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007
- Builds infrastructure projects in and outside of Iran
- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)
- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

- Stratus establishes a new subsidiary (IIHC) and a “Venezuela Project Executive Committee” in 2009 to manage and oversee the execution of the project in Venezuela.
- Committee members over time include:
  - **Mohammad SADR** (Chairman)
  - **Ali SADR**
  - **Behrooz ZANGENEH**
  - **Ahmad SAFAVARDI**
  - **Bahram KARIMI**
  - **Mustafa CETINEL**
  - **Ekrem CINAR**



# Iranian Int'l. Housing Co.

**This mass housing production project is constructed for 60,000 inhabitants in an area of 318 hectares on the outskirts of Ojeda in Solia province.**

# V. Individuals

Venezuela Committee (Iran)
Chairman: Mohammad SADR
Members: Bahram KARIMI, Farshid KAZERANI, Ali SADR; Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR; Ahmad SAFAVARDIi
Hussein TEHRANI (Iran)
Chairman/CEO/President of IIHC
Farshid KAZERANI (Iran)
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting
Mustafa CETINEL (Istanbul/VE)
Project Director
Behrooz ZANGENEH (Iran)
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC
Ekrem CINAR (Turkey)
Vice Project Manager
Bahram KARIMI (Iran/VE)
Project Manager
Ahmad SAFAVARDI (US/VE)
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US
Numerous Iranian IIHCO employees in VE
*Parentheticals indicate where people were physically located at relevant time period
10

Ex. A at 35

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information "as requested:"**

**Subject:** USD Account
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Thu, 30 Dec 2010 17:39:59 -0500
**To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>

Salam,

Please find attached the USD account information as requested.

Best regards

Intermediary Bank: JPMORGAN CHASE BANK (New York, New York)
SWIFT CODE: CHASUS33
Banking Code: FED ABA 02100021

Bank of Beneficiary: HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
SWIFT Code: SHHBCHZZ
(USD)Account No: 5196631203
IBAN: CH7708530519663100203

Beneficiary: Stratus International Contracting J.S.
Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

**Instruction Letter and payment for IPC 11-13:**

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|---|---|---|---|---|---|---|---|
| 7/5/2011 | $ 20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hypobank Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |

IRANIAN INT. HOUSING Co. (PJS)

Proyecto de 7000 Unidades de Nueva Ojeda
New Ojeda Housing Development Project (7000 Residential units)

Date: 01/07/2011
No.: 101-90-107
Annex:

To: Eng. Jose Luis Parada Sanchez
Chairman of the Board of DUCOLSA

Dear Sir,

I hereby write you with my cordial and revolutionary greetings.

In view of the current difficulties for transfer and movements of funds and to facilitate the process we already appointed Clarity Trade & Finance S.A. to act as our agent for receiving the payment of IPCs.

Therefore, we, hereby, request you to order to make the payment of IPCs 11, 12 & 13 to the account of the aforementioned company with the below details, for USD:

**Beneficiary: Clarity Trade & Finance SA**
**IBAN #: CH80 0853 0518 2061 0020 3**
**Address: Wachlenstrasse 5, 8832 Wollerau Schwyz, Switzerland**

**Beneficiary's Bank: Hyposwiss Private Bank Ltd.**
**Account No. 001-1-835873 / Chips UID: 059242**
**Swift Code: SHHBCHZZ**

**Intermediary Bank: JPMORGAN CHASE BANK New York, New York**
**Swift Code: CHASUS33**
**Banking Code: FED ABA 021000021**

Thank you in advance for your anticipation.

In view of the current difficulties for transfer and movements of funds and to facilitate the process we already appointed Clarity Trade & Finance S.A. to act as our agent for receiving the payment of IPCs.

**Código Swift: CHASUS33**
**Código Bancario: FED ABA 021000021**

Agradecemos por sus sinceras colaboraciones.

Sincerely yours

Behrooz Zangeneh
Managing Director

شرکت بین المللی
خانه سازی ایرانیان
Iranian International Housing Co.
Sucursal Venezuela

Calle Piar, esquina de avenida 10 y calle Piar, Ciudad Ojeda, Edo. Zulia. Venezuela
Tel:(+58-265) 63 20 111 , 63 20 239
Email: info@iihco.ir - www.iihco.ir

**ZANGENEH** signature

12

# Wire Sheet

Transaction Details for TRN: 3251400186fs Region: US

| | |
|---|---|
| Instruction Date: | 7/5/2011 |
| Payment Date: | 7/5/2011 |
| Transaction Amount: | $20,692,579.48 |
| Transaction Type: | BT |
| Customer Swift ID: | SHHBCHZZ |
| Debit Fin Entity: | 01 |
| Credit Fin Entity: | 01 |
| Credit Reference: | OOE9996A000394 |
| Debit Reference: | OOE9996A000394 |
| Sender's ID: | SWF/BESCPTPLOSF |
| Bene Flag: | B |
| Order Party: | /PT50000709030009508180330<br>1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA CARACAS<br>3/VE/VENEZUELA |
| Debit Party: | 00000011728748<br>BES SFE FUNCHALOFFSHORE MADEIRA<br>DPC - SERVICO RECONCILIACAO<br>BANCARIA<br>LISBON PORTUGAL 1250--142 |
| Details of Payment: | 1590011835 |
| Credit Party: | 00000011835873<br>HYPOSWISS PRIVATBANK AG<br>BAHNHOFSTRASSE/SCHUETZENGASSE 4<br>POSTFACH 3180<br>ZURICH SWITZERLAND 8021 - |
| Account Party: | SHHBCHZZ |
| Bene: | /CH8008530518206100203<br>CLARITY TRADE AND FINANCE S A |

13

Ex. A at 38

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR

IPC 11-12-13

**HYPOSWISS**
**PRIVATE BANK**

Hyposwiss Private Bank Ltd.
Stauffacherstrasse 41
8004 Zürich
Phone +41 (0)44 214 31 11
Fax +41 (0)44 211 52 23
www.hyposwiss.com
BIC SHHBCHZZ

Your contact person:
Urs Schneider
Direct +41 (0)44 214 31 94
urs.schneider@hyposwiss.ch

**Clarity Trade & Finance SA**
Current account USD 5182061.203
Custody account no. 5182061.01
IBAN CH80 0853 0518 2061 0020 3

Sent electronically
Clarity Trade & Finance SA
c/o Kessler Wassmer Giacomini & Partner
Wächlenstrasse 5
8832 Wollerau

Zurich, July 5, 2011
Reference number: 51805412

## Credit advice

On July 5, 2011 we booked the following payment

| | | *Currency* | *Amount* |
|---|---|---|---|
| Ordered by | 1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA CARACAS<br>3/VE/VENEZUELA | | |
| Reference | 1590011835 | | |
| Original Amount | USD 20'692'579.48 | | |
| Amount | | USD | 20'692'579.48 |
| **To your credit** | **Value date July 5, 2011** | **USD** | **20'692'579.48** |

14

# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

# VII. Knowledge of Sanctions/Efforts to Hide Iranian Connection

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR's** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

**Subject:** Re: Conference Call with Mercantil Valores Uruguay
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Fri, 16 Jul 2010 12:06:04 -0400
**To:** HBM Funds - Alwin de Jongh <alwin.dejongh@hbmgroup.com>
**CC:** HBM Funds - Herman Oosten <Herman.Oosten@hbmgroup.com>

Dear Alwin.

NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.

The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.

Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.

Hope this helps.

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

There's no Iranian behind any of the accounts provided.
This is a simple answer.

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:

> Salam
> I tried call you several time but could not reach you. please call me urgently.
> Client asked if the owner of the account in the intermmidate bank is Iranian?
>
> Bahram karimi
> Project Manager

Ex. A at 43

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

**Subject:** Fwd: Payment USD 6'000
**From:** Linet Estiroti <linet.estiroti@perseswiss.ch>
**Date:** Thu, 3 Jul 2014 19:41:34 +0300
**To:** Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual. Please advise what to do. Regards, Linet Estiroti

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards

Sent from my BlackBerry® Smartphone supplied by Swisscom

---

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

Furher to our conversation in Istanbul I suggest two names for the change as follows:

1. International Industrial Housing Company

2.International Iron Housing Company

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGANEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 -0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

# EXHIBIT B

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Friday, January 10, 2020 4:52 PM
**To:** Lake, Stephanie (USANYS)
**Cc:** Kim, Jane (USANYS) 4; Krouse, Michael (USANYS)
**Subject:** RE: Sadr - wire transfers
**Attachments:** Commerz OFAC disclosure.pdf

In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze made to OFAC re: the payment.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Friday, January 10, 2020 3:16 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Closing the loop on this– I found a document in the material Fuenmayor gave us that discusses the $29 million transfer through Fondo Chino, and he also mentioned it in the last meeting. I think this should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA. The doc is attached, if anyone cares, but it's also en Espanol (I've requested translation). Pages 14-15.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 12:46 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

The Venezuelans used various state-owned "funds" and banks to fund various government projects, among them BANDES, the economic and social development bank (which, I believe made some early payments (not ours) related to the project), and Fondo Chino (the Chinese-Venezuelan Fund). Fondo Chino (at least ostensibly) was funded by oil sales to and loans from China (I think PDVSA and the government liberally moved money around). I forget exactly why Fondo Chino was used to make the first payment (or if we ever knew for sure) – my guess is that PDVSA, which controlled all oil-related funds (i.e., the Venezuelan purse), had adequate funds in the Fondo Chino account to make the payment from that account. I believe the money came from a Banco del Tesoro account in Venezuela, which had a correspondent relationship with Commerz in Germany. Thereafter, they used PDVSA accounts at Banco Espirito Santo in Portugal.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Wednesday, January 8, 2020 11:02 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Found the first one. Thanks. Do you know why it came from "Fondo Chino" / what that is?

That's fine on two. Just wanted to make sure I wasn't missing some other records that would show that information.

Definitely agree on the third point.

Thank you!

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 10:04 AM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

1. Re: the first payment, there should be a copy of the SWIFT message in the Commerzbank production. In my version of the subpoena compliance production it's a PDF titled "Copy".

2. Re: the identity of the intermediary bank, the bank whose business record the wire transfer is is the intermediary bank, so the witness will be able to state that.

3. Also, for several of the payments, we have additional search warrant documents -- e.g., while we may just have the wire transfer record from the clearing bank, we may also have a SWIFT message attached to an email, or a Hyposwiss record, or some other document which identifies the payment route. When the dust settles on the SW docs, we can reconstruct my old payments binders where I had all of the documents bundled together for each payment (the payment instruction letter, the bank record(s), emails, attachments, etc.). This is what we did for the GJ.

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Tuesday, January 7, 2020 6:19 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** FW: Sadr - wire transfers

My original email had three attachments, which had to be sent to you securely. So you should be getting a secure message with instructions on how to access it.

**From:** Lake, Stephanie (USANYS)
**Sent:** Tuesday, January 07, 2020 5:37 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** Sadr - wire transfers

See attached a spreadsheet (Payments) showing each transfer and where I found documentation. A few things:

1) I didn't find a wire confirmation for the 4/4/2011 $29 million transfer. I did find reference to it in the CHIPS subpoena returns. It seems to show that it went from "Fondo Chino-Venezolano" to Stratus International Contracting (see attached two spreadsheets that show this). Garrett – do you know if we have a wire confirmation for that transfer?

2) I noticed that the wire confirmations don't generally show the U.S. intermediary bank on them. Is there other documentation I'm missing that has this information?

*All documents are saved here: \\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\###Trial\Documents\Payment Records and here:

\\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\Evidence [INT]\Discovery\#5 - Subpoena Returns\To Produce.

Also – Garrett, I was thinking that if you don't already have the ability to remotely login to our network, we should have that set up! That way the file paths above wouldn't be useless to you.

Thanks!

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.