UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | DECLARATION |
| ALI SADR HASHEMI NEJAD, | 18 Cr. 224 (AJN) |
| Defendant. | |

I, Shawn G. Crowley, pursuant to Title 28, United States Code, Section 1746, declare under penalty of perjury:

1.      I am an attorney admitted to the bar of the State of New York and the bar of this Court, and an Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York (the "Office").  I have been Co-Chief of the Office's Terrorism and International Narcotics ("TIN") Unit since September 19, 2019 and became responsible for supervising this matter, along with Co-Chief Emil Bove, at that time.

2.      In this declaration, I address the Court's questions in the September 16, 2020 opinion (the "Opinion") concerning my awareness of and involvement in the issues relating to GX 411.  *See* Dkt. 379 at 32.  As described in more detail below, my responses to the questions are as follows:

a.      I first learned of GX 411 on Sunday, March 8, 2020, the day after it had been produced to the defense.  *See infra* Part I.

b.      I did not have any communications regarding GX 411 or the disclosure of GX 411 before it was produced to the defense on March 7, 2020.[1]

_____

[1] All communications to which I was a party that are responsive to the questions in the Opinion (Dkt. 379 at 32-33) between March 7, 2020 through the end of trial are described herein and

1

   c.  I recognized that GX 411 had exculpatory value immediately upon being informed of it and the information it contained on March 8, 2020.  *See infra* Part I.

   d.  I did not draft the Government's March 8, 2020 10:00 p.m. letter (the "March 8 10 p.m. Letter").  The line prosecutors sent Chief Bove and me a draft of the letter at approximately 9:50 p.m. on March 8, 2020, ten minutes before it was due to the Court.  I participated in a phone call with Chief Bove and AUSA Krouse that began at approximately 9:52 p.m. and lasted up to one minute (the "March 8 Phone Call").[2]  During the March 8 Phone Call, Chief Bove, AUSA Krouse, and I briefly discussed the letter, as well as the fact that AUSA Krouse needed to stand up in court the next morning to take responsibility on behalf of the Government for the late disclosure of GX 411.  The one-minute March 8 Phone Call ended at approximately 9:53 p.m.  AUSA Krouse filed the March 8 10 p.m. Letter approximately seven minutes later, at 10:00 p.m.  I did not see the edited version of the letter before AUSA Krouse filed it.  *See infra* Part IV.

   e.  I did not have any role in drafting the sentence in the March 8 10 p.m. Letter that the Court has concluded contained a misrepresentation.  *See infra* Parts IV, V.

   f.  When the Court asked specific questions of the Government at trial on March 9, 2020 regarding this sentence, I was not aware that the accurate sentence containing the answer to the question the Court posed in its March 9, 2020 9:05 p.m. order had been included

---

attached hereto.  These include emails, as well as responsive portions of text messages and chat conversations.

[2] The July 2, 2020 letter to the Court from Associate United States Attorney John McEnany incorrectly stated that the March 8 Phone Call began at approximately 9:53 p.m. and lasted approximately six minutes.  Dkt. 354 at 14-15.  As described below, *see infra* ¶¶ 56-57, phone records establish that the March 8 Phone Call began at approximately 9:52 p.m. and lasted up to one minute.  Ex. 1 (Oct. 15 Email from J. McEnany).  Mr. McEnany has stated that he will inform the Court of this correction in the Government's October 30, 2020 filing.  *Id.*

in a prior version of the March 8 10 p.m. Letter, or that it had been deleted.  I first learned of the

deletion in late May or early June 2020.  *See infra* Part VIII.

        3.      In the months following trial in this case, Chief Bove and I have worked

with the line prosecutors to identify and address the mistakes that were made.  We have also

worked with other AUSAs in the TIN unit to ensure that similar issues do not arise in other cases.

Among other things, in July and August 2020, Chief Bove and I conducted case reviews with every

AUSA in the TIN unit in which we discussed the scope and status of discovery in every case and/or

investigation, and we outlined the specific steps the AUSAs should take to ensure compliance with

their disclosure obligations.  In July 2020, a member of the Office's Disclosure Committee

provided every AUSA in the TIN unit with additional training regarding the disclosure obligations

that govern federal prosecutors.  Chief Bove and I supplemented this training with a training that

was specific to classified discovery, discussing in detail the steps that need to be taken at every

stage in an investigation and prosecution, including those matters involving classified information,

to ensure that AUSAs are in compliance with their disclosure obligations.  Chief Bove and I have

also had several conversations with our counterparts at the Federal Bureau of Investigation who

supervised the *Sadr* investigation to discuss the disclosure issues that arose and strategies for

avoiding similar problems in other investigations.  On October 14, 2020, Chief Bove and I

participated in a meeting with members of the Office's executive management team (the

"Executive Staff") to discuss the disclosure errors in this case and specific steps the Office and the

TIN unit will continue to take to address them.  And, as a member of the Office's Disclosure

Committee for over a year, I have participated in the Committee's discussions about the disclosure

issues in this case and others, and am involved in implementing changes and strategies that will

better equip AUSAs to avoid mistakes and missteps in the future.

I.      Discovery of GX 411

4.      On Saturday, March 7, 2020, in the evening, I was notified by AUSA Stephanie Lake that the *Sadr* defense had accused the line prosecutors of violating their obligations under *Brady v. Maryland*.  I did not learn the details of this accusation (including the existence of GX 411) until the following day, March 8, 2020.

5.      Specifically, at approximately 5:36 p.m. on Saturday, March 7, 2020, AUSA Lake mentioned during a chat conversation that the defense had "accused us of a brady violation (again)," and indicated that she would come to my office to explain the details.  Ex. 2 (Mar. 7-8 Crowley/Lake Chat) at 1.  I responded that I was available to discuss in person until approximately 6:00 p.m., when I had to leave the office.  We did not get an opportunity to discuss the issue that Saturday evening.

6.      At approximately 10:17 p.m. on March 7, 2020, Chief Bove informed me via text message that AUSA Lake had called him to discuss a different issue relating to the ongoing trial in this matter, and that AUSA Lake had "also mentioned that the defense accused them of a Brady violation based on a bank letter they turned over today."  Ex. 3 (Mar. 7 Crowley/Bove Texts).  Chief Bove further explained that AUSA Lake "said [the prosecution team] can't understand how it's exculpatory and [defense counsel] said it was 'self evident why.'"  *Id.*  At the time I received this text, I was not aware of a "bank letter" or any document that had been belatedly "turned over" that day.  I decided to discuss the issue in-person with the line prosecutors on Sunday, the following day.

7.      On Sunday afternoon, March 8, 2020, Chief Bove and I met with the line prosecutors to discuss the *Brady* issue that AUSA Lake had mentioned to Chief Bove and me the night before.  It was during this conversation that I first learned about GX 411.  Prior to March 8,

2020, I had never seen GX 411, discussed it with anyone, or been aware of its existence.  Put differently, I only learned about the existence of GX 411 after it already had been disclosed to the defense.

8.      During the March 8 meeting and in the course of subsequent communications that same day, I learned some, but not all, of the details concerning the history of GX 411.  In particular, the prosecutors informed me that Special Assistant United States Attorney ("SAUSA") Garrett Lynch had emailed GX 411 to AUSAs Lake, Krouse, and Jane Kim in January 2020.  The AUSAs told me that they had incorrectly assumed that GX 411 had already been produced to the defense.  I was told that after a brief follow-up conversation between AUSA Lake and SAUSA Lynch concerning GX 411 in January 2020, the AUSAs had forgotten about GX 411 until AUSA Lake re-discovered it that weekend.

9.      The line prosecutors further advised Chief Bove and me that they had produced GX 411 to the defense the day before (March 7, 2020), and that defense counsel had accused them of a *Brady* violation based on the late production.  The prosecutors explained that they viewed GX 411 as a wholly inculpatory document that they intended to offer in their case-in-chief.

10.      I disagreed, recognizing immediately upon discussing and reviewing GX 411 on the afternoon of March 8 that the document had both inculpatory and exculpatory value.  During conversations with the line prosecutors, I recall, for example, that Chief Bove and I explained that the defense could use GX 411 to, among other things, undermine the *Klein* conspiracy alleged in Count One of the Indictment.  Chief Bove and I instructed the AUSAs that they should notify defense counsel that the Office would not contest that GX 411 had exculpatory value.

11.     At approximately 4:04 p.m. on March 8, 2020, AUSA Krouse forwarded to Chief Bove and me, copying the rest of the line prosecutors, a letter the defense had filed relating to GX 411.  Ex. 4 (Mar. 8 4:04 p.m. Email); Dkt. 274.  In the letter, defense counsel notified the Court that the prosecution had failed to timely produce GX 411, explained why it viewed GX 411 as exculpatory, and sought a curative instruction relating to the late production.  Dkt. 274.  I responded to AUSA Krouse's email requesting that he send us GX 411, which he did.  Ex. 5 (Mar. 8 4:06 p.m. Email).  Chief Bove then asked the AUSAs to send to him and me the January 2020 email exchange in which SAUSA Lynch apparently had first transmitted GX 411 to the AUSAs. Ex. 6 (Mar. 8 4:16 p.m. Email).  At 4:20 p.m., AUSA Lake sent Chief Bove and me the January 2020 email exchange (Ex. 7 (Mar. 8 4:20 p.m. Email), and Chief Bove asked the AUSAs to come to my office to discuss the matter with the two of us (Ex. 8 (Mar. 8 4:54 p.m. Email); *see also* Ex. 9 (Mar. 8 Crowley/Bove Chats) at 1).

II.     The March 8, 2020 5 p.m. Order

12.     At approximately 5:00 p.m. on Sunday, March 8, 2020, the Court entered an order (the "5 p.m. Order") directing the prosecutors to file a letter by 7:00 p.m. that evening, which must "include a detailed representation to the Court that explains why Government Exhibit 411 was not previously disclosed and what led to its disclosure for the first time yesterday."  (Dkt. 287).  The 5 p.m. Order required that the "representation shall further specify all attorneys involved in the decision-making with respect to both the non-disclosure and the subsequent disclosure yesterday of this document."  (*Id.*).  AUSA Lake forwarded the 5 p.m. Order to Chief Bove and me.  Ex. 10 (Mar. 8 5:03 p.m. Email).  Chief Bove and I subsequently reported the GX 411 disclosure issue to Chief of the Criminal Division Laura Birger.  Ex. 11 (Mar. 8 5:36 p.m. Email).

13.     At approximately 6:25 p.m., AUSA Lake emailed to Chief Bove and me a draft response to the 5 p.m. Order.  Ex. 12 (Mar. 8 6:25 p.m. Email).  Chief Bove and I made edits to the draft response.  Among other edits, we revised the letter to remove a section that contested defense arguments concerning the ways in which GX 411 was exculpatory.  I sent the line prosecutors our edits to the letter at approximately 6:54 p.m. and approximately 7:01 p.m. Ex. 13 (Mar. 8 6:54 p.m. Email); Ex. 14 (Mar. 8 7:01 p.m. Email); Ex. 15 (Redline Comparing 6:25 p.m. Draft to 7:01 p.m. Draft).  The prosecutors filed the letter at approximately 7:00 p.m.  Dkt 275. The letter represented, *inter alia*:

> Based on conversations the Government has had with defense counsel this weekend, the Government now understands how GX 411 advances the defendant's claim that any decision by [the Office of Foreign Assets Control ("OFAC")] not to take enforcement action following this disclosure is probative of the risk of harm from OFAC enforcement that banks face when they process transactions in violation of the sanctions laws. The Government is currently seeking to confirm whether OFAC took any action based on [Commerzbank's] disclosure, and is willing to stipulate that OFAC did not take action against [Commerzbank], the Stratus entities, or the defendant.

III.    <u>March 8, 2020 Diligence</u>

14.     After the letter was filed at approximately 7:00 p.m. on Sunday, March 8, 2020, Chief Bove and I met with the line prosecutors again and instructed them that, that evening, they needed to (a) scrub their files to ensure that they had produced all documents relating to GX 411, Commerzbank, and any other potentially exculpatory materials, and (b) contact OFAC to determine what action, if any, OFAC had taken upon receiving GX 411.  Ex. 16 (Mar. 8 7:08 p.m. Email; *cf.* Ex. 9 (Crowley/Bove March 8 Chat at 1 ("we need to sit down with these guys.  They need to scrub, tonight, and be sure they are in compliance with Brady")).  I left the office shortly thereafter.  Chief Bove then reiterated our guidance by email, and AUSA Kim confirmed that she had emailed OFAC representatives and would "call them now."  Ex. 17 (Mar. 8 7:43 p.m. Email).

15.    At approximately 7:53 p.m., Chief Bove sent an email to the Executive Staff, copying me, explaining the disclosure issues that had arisen and attaching (a) GX 411, (b) the defense's letter requesting a curative instruction, and (c) the Government's response to the 5 p.m. Order.  Ex. 18 (Mar. 8 7:53 p.m. Email); Ex. 19 (Mar. 8 8:25 p.m. Email).  Chief Bove reported that the line prosecutors were spending the night "scouring the case file—here and at DANY [the District Attorney's Office of New York]—to verify that we are in compliance with our disclosure obligations.  They are also preparing to answer detailed factual questions from Judge Nathan tomorrow morning about the situation, which we discussed during a team meeting after we filed" the 7:00 p.m. letter.  *Id.*; *cf.* Ex. 20 (Mar. 8-9 Crowley/Graff Texts).

IV.    The March 8 9:05 p.m. Order and Subsequent Filings

16.    At approximately 9:05 p.m., the Court issued an order (the "9:05 p.m. Order") directing the Government to submit a letter by 10:00 p.m. providing "further explanation" about, among other things, "precisely when and how it realized that [GX 411] had erroneously been withheld and when, if at all, upon learning of the failure to disclose this was communicated to the defense," and "how it came to be that GX 411 was not (though should have been) provided to the defense as part of [Commerzbank's] subpoena production."  Dkt. 290.

17.    I was not copied on the Court's email attaching the 9:05 p.m. Order.  At approximately 9:15 p.m., AUSA Kim forwarded the 9:05 p.m. Order to Chief Bove and me, copying the rest of the trial team.  Ex. 21 (Mar. 8 9:15 p.m. Email).[3]  At approximately 9:22 p.m., Chief Bove replied to AUSA Kim's email, copying the rest of the trial team, and said that Chief

---

[3] Lacking full information at that time about the sequence of events leading up to and following the disclosure of GX 411 to the defense, I expressed frustration in a text to Chief Bove about the limited time the Government had to respond to the order.  *See* Ex. 22 (Mar. 8 Crowley/Bove Texts).

Bove and I were "around to turn the draft" response to the 9:05 p.m. Order. Ex. 23 (Mar. 8 9:22 p.m. Email).

18.     At the same time—approximately 9:22 p.m. on March 8—AUSA Lake called to inform me that she was extremely ill, that she needed to go home immediately, and that she would be unable to come to court the following day. Ex. 24 (Crowley Phone Records) at lines 28-29. AUSA Lake and I had previously discussed her illness—including earlier that day—and I agreed that she should go home. I told AUSA Lake that I would ask AUSA Krouse to handle AUSA Lake's witness the following day. I then spoke to Chief Bove, and called AUSA Krouse approximately ten minutes later to convey this message. *Id.* at lines 30, 32; Ex. 25 (Mar. 8 Crowley/Lake Texts).

19.     At approximately 9:31 p.m., I emailed the line prosecutors, asking them to "forward the transmittal email" the prosecutors had sent to the defense when they "produced [GX 411] to them yesterday [March 7, 2020]." Ex. 26 (Mar. 8 9:31 p.m. Email). At approximately 9:41 p.m., AUSA Kim responded by attaching the email AUSA Lake had sent to the defense on March 7, 2020, which transmitted GX 411 among other documents (the "GX 411 Transmittal Email"). Ex. 27 (Mar 8 9:41 p.m. Email). I did not have access to my computer at this time, and, as described below, *see infra* ¶ 26, I was not able to open the GX 411 Transmittal Email attachment on my phone.

20.     At approximately 9:50 p.m., AUSA Krouse forwarded to Chief Bove and me (for the first time) a draft response to the 9:05 p.m. Order, which AUSA Lake had apparently written and sent to AUSAs Krouse and Kim and SAUSA Lynch at approximately 9:31 p.m. Ex. 28 (Mar. 8 9:50 p.m. Email); *see also* Ex. 29 (Mar. 8 9:56 p.m. Email).

21.     Chief Bove called me from his personal cellphone at approximately 9:51 p.m.  Ex. 1 (Oct. 15 Email from J. McEnany); Ex. 24 (Crowley Phone Records) at line 34.  At approximately 9:52 p.m., we conferenced in AUSA Krouse (*i.e.*, the March 8 Phone Call).  Ex. 1 (Oct. 15 Email from J. McEnany); Ex. 24 (Crowley Phone Records) at line 35; Ex. 30 (Krouse Phone Records) at line 20.  Phone records reflect that the March 8 Phone Call lasted up to one minute and took place between approximately 9:52 p.m. and 9:53 p.m.  *Id.*  I took the call while in a car home from dinner and therefore did not have access to a computer.  I do not believe that I had an opportunity to review AUSA Lake's draft of the letter in the one minute between the time when AUSA Krouse forwarded it to me at 9:50 p.m. and when Chief Bove called me at 9:51 p.m.  Nor was I able to review the draft on my cellphone during the March 8 Phone Call, as I was using the cellphone to participate in the call.

22.     While I do not have a verbatim recollection of the one-minute long March 8 Phone Call, I recall discussing the fact that AUSA Lake would be unable to come to Court the next morning and the need for AUSA Krouse to therefore stand up and acknowledge and accept responsibility on behalf of the Government for the late production of GX 411 and related issues.  I also recall what was not discussed.  During this brief call with AUSA Krouse, we did not discuss the sentence that AUSA Lake had drafted, which clearly stated that GX 411 had not previously been produced to the defense.  As described below, I did not know that sentence existed until late May or early June 2020.  *See infra* 51.  Neither I nor Chief Bove dictated language revising that sentence, nor did either of us instruct AUSA Krouse to delete that sentence.

23.     The March 8 Phone Call lasted up to one minute and ended at approximately 9:53 p.m.  Ex. 1 (Oct. 15 Email from J. McEnany); Ex. 24 (Crowley Phone Records) at line 35; Ex. 30 (Krouse Phone Records) at line 20.  AUSA Krouse filed the letter at approximately 10:00

p.m.  He did not send me his edited version of the March 8 10 p.m. Letter before he filed it, nor did he save it in the *Sadr* shared drive communications folder, where AUSA Lake's draft and other pertinent court letters appear to have been saved.

24.    Chief Bove called me at 9:53 p.m. (right after the March 8 Phone Call ended), and we spoke for approximately six minutes.  Ex. 1 (Oct. 15 Email from J. McEnany); Ex. 24 (Crowley Phone Records) at line 36; Ex. 30 (Bove Phone Records) at line 26.  We discussed the fact that AUSA Lake would likely not be able to participate in the rest of the trial and how to convey the reason for her absence to defense counsel and the Court.  We decided that we would consult Criminal Division Chief Laura Birger on this issue.  Immediately after hanging up with Chief Bove at 9:59 p.m., I called AUSA Lake again to confirm that she was comfortable with me informing Chief Birger of her illness.  Ex. 24 (Crowley Phone Records) at line 37.  After confirming with AUSA Lake, Chief Bove and I called Chief Birger at approximately 10:07 p.m. to discuss the issue.  *Id.* at lines 38-39.

25.    At approximately 11:00 p.m. on March 8, the defense filed its first reply (the "First Reply") to the Government's March 8 10 p.m. Letter.  Dkt. 279.  The First Reply attached as Exhibit A the GX 411 Transmittal Email and subsequent emails between the line prosecutors and the defense on March 7, 2020 concerning GX 411.  Dkt. 279-1.

26.    Shortly after 11:00 p.m., I checked the docket on my cellphone and reviewed the First Reply and Exhibit A (because I had not entered an appearance in the case, I was not receiving ECF notifications).  I had not seen the documents included in Exhibit A—*i.e.*, the GX 411 Transmittal Email and subsequent correspondence between the line prosecutors and the defense on March 7—prior to this point.  At approximately 11:13 p.m., I texted Exhibit A to Chief Bove and wrote: "Oh man[.]  Is this what Jane [Kim] sent before[?] I couldn't open it[.]"  Ex. 22

(Crowley/Bove March 8 Texts) at 3.  "This" was a reference to the GX 411 Transmittal Email, which AUSA Kim had attached to her email at 9:41 p.m. *See supra* ¶ 19.  In short, I had been unable to read or review the GX 411 Transmittal Email prior to 11:00 p.m. on March 8.  Nor had I received or seen the line prosecutors' March 7 email correspondence with the defense concerning GX 411.

27.     AUSAs Krouse and Kim subsequently forwarded the First Reply and Exhibit A to Chief Bove and me.  Ex. 32 (Mar. 8 11:15 p.m. Email); Ex. 33 (Mar. 8 11:19 p.m. Email).

28.     At approximately 11:30 p.m., AUSA Kim forwarded to Chief Bove and me, copying AUSA Krouse, a second reply filed by the defense (the "Second Reply").  Ex. 33 (Mar. 8 11:30 p.m. Email); Dkt. 280.  The Second Reply attached as Exhibit B "a more complete version of Exhibit A."  *Id.*; Dkt. 280-1.  Exhibit B included the GX 411 Transmittal email, as well as additional correspondence between the line prosecutors and the defense on March 7 and 8 concerning GX 411.

29.     Chief Bove and I expressed frustration in a text exchange that the line prosecutors had not provided us with all of the information concerning their transmission of GX 411 and their subsequent conversations with defense counsel.  At approximately 11:32 p.m., Chief Bove noted that "this stuff is trickling in and they [the line prosecutors] aren't telling us . . . the whole story," and I responded, "[t]his is now the third time we've learned a material fact about how this was turned over from [Judge] Nathan or the defense."  Ex. 22 (Mar. 8 Crowley/Bove Texts) at 5.

30.     The email correspondence attached in Exhibit B to the defense's Second Reply included an email from the defense to the line prosecutors at approximately 1:36 p.m. on

March 8, in which the defense asked a series of questions concerning GX 411 among other things. Dkt. 280-1 at 1.  At approximately 11:35 p.m. on March 8—*i.e.*, five minutes after AUSAs Kim and Krouse forwarded the defense's Second Reply and Exhibit B—I emailed AUSAs Kim and Krouse, copying Chief Bove:  "Did we (it doesn't matter who) respond to [the defense's] last email at 1:30 [on March 8]?  Can you guys please forward us all correspondence relating to this document [*i.e.*, GX 411]?"  Ex. 35 (Mar. 8 11:35 p.m. Email).  Approximately one minute later, AUSA Kim replied:  "We spoke to [the defense] by phone at 2:30 and walked through each category of their questions.  I think this is it but will double check."  Ex. 36 (Mar. 8 11:36 p.m. Email).

V.    March 9, 2020 Court Proceedings

31.    On March 9, 2020 at approximately 1:08 a.m., the Court issued an order (the "1:08 a.m. Order") directing the Government to be prepared to discuss in court "its representation to the Court (in response to the Court's March 8, 2020 Order) that it 'made clear' in its March 7 correspondence with Mr. Sadr's counsel 'that GX 411 was a newly marked exhibit.'"  The Court's law clerk emailed the order to the line prosecutors and the defense attorneys.  Chief Bove and I were not copied on the email.

32.    At approximately 5:44 a.m. on March 9, 2020, Chief Bove sent an email to Chief Birger, copying me, and attaching the 9:05 p.m. Order, the March 8 10 p.m. Letter, and the Exhibit B to the Second Reply.  Ex. 37 (Mar. 9 5:44 a.m. Email).  Chief Bove explained in the email:  "In these attachments, you'll see that [the Court] asked follow-up questions about our initial letter. We found the answers to the questions to be unfortunate, particularly the fact that the team did not flag for defense counsel that the document was being produced for the first time."  *Id.*

33.    At approximately 5:48 a.m., AUSA Kim forwarded the 1:08 a.m. Order to Chief Bove and me.  Ex. 37 (Mar. 9 5:48 a.m. Email).

13

34.     It was at this point in the morning of March 9, 2020—after reviewing the defense filings and exhibits (including the GX 411 Transmittal Email and subsequent correspondence between the line prosecutors and defense on March 7 and 8), the as-filed version of the March 8 10 p.m. Letter, and the 1:08 a.m. Order—that I fully appreciated that the March 8 10 p.m. Letter did not accurately convey how GX 411 had been produced to the defense.  I did not compare the as-filed version of the March 8 10 p.m. Letter to AUSA Lake's earlier draft of the letter at this time, as I had no reason to believe—based on what was discussed during the one-minute March 8 2020 Phone Call—that there were material differences between them.  I therefore did not know at that time—or at any time before late May or early June 2020, *see infra* 51—that AUSA Lake's accurate sentence, which clearly stated that GX 411 had not previously been produced to the defense, existed, or that it had been deleted.

35.     Nonetheless, it was apparent to me from reviewing the as-filed version of the March 8 2020 Letter and the defense filings that the letter did not accurately respond to the question in the Court's 9:05 p.m. Order.  In a text message exchange at 7:20 a.m. on March 9, Chief Bove and I expressed frustration that we were still learning new information concerning GX 411 and its transmission to the defense that morning.  I wrote that I believed the prosecutors would be facing a "bloodbath" in court that morning because, based on the information I had learned from the defense filings and Court's order, it was apparent that we, the Government, had "lied in that letter" by failing to accurately respond to the Court's question about whether the Government had identified GX 411 as not having been previously produced.  Ex. 39 (Crowley/Bove March 9 Texts) at 1.  Accordingly, I emailed AUSAs Kim and Krouse at 7:24 a.m., copying Chief Bove: "I think we need to fall on our sword big time here. We didn't make that clear in the transmittal

email and shouldn't have represented that we did."  Ex. 40 (Mar. 9 7:24 a.m. Email); Ex. 41 (Mar. 9 7:38 a.m. Email).

36.     At approximately 8:08 a.m. on March 9, 2020, I called AUSA Krouse and instructed him to inform defense counsel that AUSA Lake was ill and would not be in court that morning.  Ex. 24 (Crowley Phone Records) at line 41.  One minute later, I called the Court and explained that AUSA Lake would not be present in court that morning due to a serious illness.  *Id.* at line 42; Ex. 42 (Mar. 9 9:49 a.m. Email) at 1-2.  I then went directly to court.

37.     Chief Bove and I were present in court on the morning of March 9, 2020. Chief Bove addressed the Court's questions concerning GX 411.  I was not aware at that time— or at any time before late May or early June 2020, *see infra* 51—that AUSA Lake's accurate sentence existed or that it had been deleted.  Consistent with the instruction we had given the prosecution team the evening before, *see supra* ¶ 14, Chief Bove told the Court that he and I had "asked the team . . . to go back to the files and make sure there are no similar [disclosure] issues in this case."  Tr. at 996.

38.     The Court preliminarily granted the defense's application for "declarations from every prosecutor who worked on this case" regarding whether inquiries were made to OFAC concerning GX 411, among other things, "about what they did and didn't do in reference to [Sadr and related entities]."  Tr. 1005.

VI.     March 9, 2020 Diligence

39.     At approximately 9:45 a.m. that morning, after leaving court, Chief Bove and I met with members of the Executive Staff to brief them on the ongoing issues relating to GX 411, including the prosecutors' ongoing diligence efforts, and the Court's order for declarations. Ex. 42 (Mar. 9 9:49 a.m. Email).  Chief Bove and I then instructed the line prosecutors—including

former members of the trial team—to scrub their files and collect any documents and correspondence relating to GX 411, any communications with OFAC, and any other materials that should have been previously produced.

40.     Throughout the day on March 9, 2020, Chief Bove and I worked with the line prosecutors—including former members of the trial team—to compile responsive documents as they began drafting their declarations and reported the status of their review to the Executive Staff.  *E.g.*, Exs. 43 to 75.  I also engaged in supervision of other cases, including another national security trial that was ongoing at the time.

41.     At the end of the trial day on March 9, 2020, the Court agreed to accept a single letter regarding its pending questions relating to GX 411 and OFAC, rather than declarations, and directed that the Government submit the letter that night (the "March 9 Letter"). Tr. 1227.  Chief Bove and I instructed the line prosecutors to continue scrubbing their files for any documents relating to GX 411 and/or communications with OFAC, and to produce any such files to the defense immediately.  *See* Exs. 76-81.  AUSA Krouse sent Chief Bove and me a draft of the March 9 Letter at approximately 8:40 p.m. (Ex. 82), which Chief Bove and I and members of the Office's Executive Staff subsequently reviewed.  *See* Exs. 83 to 107.

42.     The Government filed the March 9 Letter just after midnight on March 9, 2020.  Dkt. 283.[4]

VII.    Post-Trial Diligence

43.     Shortly after the verdict on March 16, 2020, in light of this series of discovery mistakes, Chief Bove and I discussed with the line prosecutors that they needed to do a

---

[4]  Exhibits 108 through 119 reflect communications on March 10 and 11, 2020 concerning principally the defense's request to strike portions of the OFAC expert's testimony based on the late disclosure of GX 411.

thorough review of their *Sadr* case files and any related case files to confirm that all Rule 16,
*Brady*, and *Giglio* material had been produced (and, if it had not, to produce it immediately).  In
this conversation and in subsequent ones, Chief Bove and I explained to the line prosecutors, in
person, by phone, and by email, specific steps they needed to take to conduct this diligence,
including: reviewing their own files for any relevant materials; contacting supervisors in other
units of the Criminal and Civil Divisions of the Office to determine whether they had investigations
that could have produced materials relevant to this case; reviewing the SDNY file relating to a
separate 2014 investigation into Commerzbank; reviewing the FBI case file to determine if the
FBI had any materials that had not been produced; and re-searching all relevant databases and files
at DANY, including SAUSA Lynch's emails.

      44.    During the course of this review, and as noted in the Opinion, the line
prosecutors discovered and produced to the defense materials that were relevant to defense
arguments and that should have been produced in advance of trial, including, among other things
and as relevant here, communications between the prosecution team and Commerzbank
concerning GX 411.

      45.    Specifically, on May 21, 2020, AUSA Krouse emailed to Chief Bove and
me two email chains relating to GX 411 and Commerzbank from January 31 and February 1, 2020.
Ex. 120.  These emails reflected, in sum and substance, that  SAUSA Lynch had communicated
with a Commerzbank employee in late January 2020 to discuss providing testimony at trial relating
to GX 411 and, during those communications, the Commerzbank employee reported her belief
that Commerzbank had sent GX 411 to OFAC "due to [DANY's] investigation into the bank" in
2011.  *Id.*

46.     Prior to May 21, 2020, I had never seen these email communications, nor was I otherwise aware that the prosecution team had communicated with Commerzbank concerning GX 411.  Chief Bove and I were concerned that the emails and their non-disclosure were inconsistent with representations the Government had made to defense counsel and to the Court concerning the scope of the Government's diligence and productions related to Commerzbank and GX 411, including in its March 9 Letter.

47.     Chief Bove and I instructed the prosecutors to produce the emails to the defense immediately, which they did.  Chief Bove and I subsequently informed members of the Executive Staff of this issue.

VIII.    The Nolle Request and My Discovery of the Deleted Sentence

48.     On June 5, 2020, the then-United States Attorney filed an application for an order of *nolle prosequi* of the Indictments in this case.  Dkt. 348.

49.     On June 9, 2020, the Court issued an order directing the Government to respond to a defense submission concerning the *nolle* request  and to provide answers to a series of questions posed by the Court, including additional questions concerning GX 411, its transmission to the defense, and the March 8 10 p.m. Letter, among other things.  Dkt. 350 at 2-4.

50.     Between approximately June 9, 2020 and July 2, 2020, Associate United States Attorney John McEnany conducted a review in connection with the Government's response to the Court's June 9, 2020 order.  During this review, Mr. McEnany requested that each of the line prosecutors and TIN chiefs provide him with all communications relating to certain categories of issues, including GX 411, which I did.

51.     At some point in late May or early June 2020, AUSA Lake informed me that she had gone back and looked at the draft of the March 8 10 p.m. Letter she had written and

sent to the other line prosecutors before leaving the office on the evening of March 8, 2020.  AUSA Lake said that she noticed for the first time that her draft contained a sentence that accurately stated that the GX 411 Transmittal Email did not identify GX 411 as not having been previously produced, but that sentence did not appear in the as-filed version of the March 8 10 p.m. Letter.  I later relayed this conversation to Chief Bove.

52.     I subsequently compared AUSA Lake's draft and the as-filed version of the March 8 10 p.m. Letter.  Upon doing this comparison, I learned for the first time that AUSA Lake's draft contained the sentence "[t]he Government did not specifically identify that GX 411 had not previously been produced in discovery."  The as-filed version of the March 8 10 p.m. Letter did not contain this sentence.  I reported to Associate United States Attorney John McEnany the discrepancy between the two versions of the March 8 10 p.m. Letter.

53.     At no prior point was I aware that AUSA Lake's accurate sentence had been edited or deleted.  As noted above, *see supra* ¶¶ 21-22, I did not authorize or instruct AUSA Krouse to edit or delete this sentence during the March 8 Phone Call or at any other time.  Chief Bove also did not instruct AUSA Krouse to make any such edit or deletion during the March 8 Phone Call.

54.     After comparing AUSA Lake's draft of the March 8 10 p.m. Letter to the as-filed version, I also learned of other changes that had been made to the letter.  For example, I learned that AUSA Lake's phrase "produced [GX 411] to the defense" was edited to read: "produced it to the defense along with other exhibits and 3500 materials. The Government made clear that GX 411 was a newly marked exhibit and that we intended to offer it, and asked the defense if they would stipulate to authenticity."  I also learned that AUSA Lake's explanation that the prosecutors had a "paralegal stamp [GX 411] <u>later in the day</u>," had been edited to read: "The Government <u>promptly</u> had a paralegal mark it as an exhibit."  I do not recall discussing these

changes during the one-minute March 8 Phone Call, nor did I have the information during the March 8 Phone Call which would have equipped me to suggest these changes, as I had not been involved in the production of GX 411, or had access to the line prosecutors' correspondence with the defense concerning the document.

IX.     September – October 2020

55.     On September 22, 2020, AUSA Krouse came to my office.  After discussing other matters, AUSA Krouse brought up the March 8 Phone Call.  He explained that, while he did not remember the call, he fully credited that Chief Bove and I did not intend for him to delete AUSA Lake's accurate sentence in the March 8 10 p.m. Letter and that he took responsibility for the mistakes in the letter.  I took notes of our conversation immediately after AUSA Krouse left my office, and reported it to members of the Executive Staff.

56.     In his July 2, 2020 letter to the Court, Associate United States Attorney McEnany wrote that the March 8 Phone Call lasted approximately six minutes, beginning at approximately 9:53 p.m. and ending at approximately 9:59 p.m., one minute before AUSA Krouse filed the March 8 10 p.m. Letter.  *See* Dkt. 354 at 14-15.  This was, however, incorrect.  In October 2020, Mr. McEnany provided me with records for the work cellphones belonging to AUSA Krouse, Chief Bove, and me.  *See* Ex. 24 (Crowley Phone Records); Ex. 30 (Krouse Phone Records); Ex. 32 (Bove Phone Records).  The records establish that the March 8 Phone Call began at approximately 9:52 p.m. and lasted up to one minute (ending approximately seven minutes before AUSA Krouse filed the March 8 10 p.m. Letter).

57.     On October 12, 2020, Chief Bove and I notified Mr. McEnany of the discrepancy between the phone records and the statement in his July 2 letter concerning the length of the March 8 Phone Call.  Mr. McEnany then had a Special Agent from the Office review the

records.  The Special Agent confirmed that the March 8 Phone Call began at approximately 9:52

p.m. and lasted up to one minute.  Ex. 1 (Oct. 15 Email from J. McEnany).

I declare under penalty of perjury that, to the best of my knowledge, the foregoing

information is true and correct.

Dated:        New York, New York
              October 16, 2020

                                        _____
                                        Shawn G. Crowley
                                        Assistant United States Attorney