sent to?  I'm searching our records now.  We may not be able to get you a comprehensive answer this morning.

Kaveh

---

**From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Sent:** Sunday, March 8, 2020 5:58 PM
**To:** Miremadi, Kaveh <Kaveh.Miremadi@treasury.gov>; Van Wagenberg, Maria-Helene <MariaHelene.VanWagenberg@treasury.gov>; Brewer, Jacqueline <Jacqueline.Brewer@treasury.gov>
**Cc:** Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>
**Subject:** Time Sensitive Question

** **Caution:** External email. Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

Kaveh, Maria, and Jacqui:

I'm attaching a letter dated June 16, 2011, from Commerzbank to OFAC concerning a specific payment. Could you please let us know what actions OFAC took in response to this letter?  We need to update the Court on this issue tomorrow morning, so any information would be hugely appreciated.

Thank you in advance,
Jane

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone:  (212) 637-2038

Email:  jane.kim@usdoj.gov

# EXHIBIT 66

**From:** Graff, Ilan (USANYS)
**To:** Crowley, Shawn (USANYS)
**Subject:** FW: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
**Date:** Monday, March 09, 2020 4:21:52 PM

This is because I'm going to take a final look at the Declarations post-roast.

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 9, 2020 4:21 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>; Graff, Ilan (USANYS) <IGraff@usa.doj.gov>
**Subject:** Re: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Shawn
Please send all docs you sent me today to Ilan as well.
Thnx
Audrey

Sent from my iPhone

On Mar 9, 2020, at 3:49 PM, Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
wrote:

Here is the order referred to in the letter (3.08.20), and the subsequent order asking us
to be prepared to explain how we made clear that GX 411 had been newly marked
(3.9.20).

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:47 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Pls also send the court's order referred to in letter you just sent.
Thanks

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 3:24 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Bove, Emil (USANYS)
<EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Thanks.  Attaching the email chain in which we produce GX 411 (Saturday at 4:04 p.m.) as well as the letter we filed with Judge Nathan in which we represent that we "made clear that GX 411 was a newly marked exhibit and that we intended to offer it."

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:17 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

I am trying to review this transcript but I think I am missing a document--- our letter to the defense that the judge views as not fully candid.
Would you pls send?
Thanks.

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 2:22 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

This is the transcript from this morning before Judge Nathan. As Laura knows, the AUSAs are scrubbing their files and drafting their declarations.

Begin forwarded message:

> **From:** "DeLuca, Michael (USANYS) [Contractor]" <MDeLuca@usa.doj.gov>
> **Date:** March 9, 2020 at 2:05:16 PM EDT
> **To:** "Bove, Emil (USANYS)" <EBove@usa.doj.gov>, "Crowley, Shawn (USANYS)" <SCrowley@usa.doj.gov>
> **Subject: FW:  Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)**

>> **From:** Goretti Moya <gmoya@sdreporters.com>
>> **Sent:** Monday, March 9, 2020 2:05 PM
>> **To:** DeLuca, Michael (USANYS) [Contractor] <MDeLuca@usa.doj.gov>
>> **Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

**From:** DeLuca, Michael (USANYS) [Contractor]
<Michael.DeLuca@usdoj.gov>
**Sent:** Monday, March 09, 2020 10:43 AM
**To:** Info <Info@sdreporters.com>; reporters
<reporters@sdreporters.com>
**Subject:** Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Good morning – We have a time-sensitive request for this morning's transcript in the ongoing trial in front of Judge Nathan, US v. Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN). We are requesting a copy of this morning's transcript (from before the jury entered the courtroom) as soon as possible, and will pay any fees associated with the expedited request.

Could you please let me know when we would be able to get this? I'm sorry for the urgent request and I appreciate your help.

Thank you,
Michael

Michael DeLuca
Paralegal, Terrorism & International Narcotics Unit
U.S. Attorney's Office, SDNY
Desk: (212) 637-2248
Cell: (646) 265-8172

<18cr224 Order 3.08.20.pdf>
<18cr224 Order 3.9.20.pdf>

# EXHIBIT 67

| | |
|---|---|
| **From:** | Kaveh.Miremadi@treasury.gov |
| **To:** | Kim, Jane (USANYS) 4 |
| **Cc:** | Bove, Emil (USANYS); MariaHelene.VanWagenberg@treasury.gov; Jacqueline.Brewer@treasury.gov; Lake, Stephanie (USANYS); Krouse, Michael (USANYS); LynchG@dany.nyc.gov; Lynch, Garrett (USANYS) [Contractor]; Crowley, Shawn (USANYS) |
| **Subject:** | Re: Time Sensitive Question |
| **Date:** | Monday, March 09, 2020 4:36:15 PM |

I'm available now for a call. Thanks.

---

**From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Date:** March 9, 2020 at 4:07:18 PM EDT
**To:** Miremadi, Kaveh <Kaveh.Miremadi@treasury.gov>
**Cc:** Bove, Emil (USANYS) <Emil.Bove@usdoj.gov>, Van Wagenberg, Maria-Helene <MariaHelene.VanWagenberg@treasury.gov>, Brewer, Jacqueline <Jacqueline.Brewer@treasury.gov>, Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>, Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>, LynchG@dany.nyc.gov <LynchG@dany.nyc.gov>, Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>, Crowley, Shawn (USANYS) <Shawn.Crowley@usdoj.gov>
**Subject:** Re: Time Sensitive Question

** **Caution:** External email. Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

Kaveh, just tried your cell. Please let me know when you're free to talk. Thanks.

On Mar 9, 2020, at 10:50 AM, "Kaveh.Miremadi@treasury.gov" <Kaveh.Miremadi@treasury.gov> wrote:

> Cell: 202-746-4485
>
> ---
>
> **From:** Bove, Emil (USANYS) <Emil.Bove@usdoj.gov>
> **Sent:** Monday, March 9, 2020 10:25 AM
> **To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
> **Cc:** Miremadi, Kaveh <Kaveh.Miremadi@treasury.gov>; Van Wagenberg, Maria-Helene <MariaHelene.VanWagenberg@treasury.gov>; Brewer, Jacqueline <Jacqueline.Brewer@treasury.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; LynchG@dany.nyc.gov; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Crowley, Shawn (USANYS) <Shawn.Crowley@usdoj.gov>

**Subject:** Re: Time Sensitive Question

** **Caution:** External email. Pay attention to suspicious links and attachments.
Send suspicious email to suspect@treasury.gov **

Hi Kaveh, what number can we reach you at?

On Mar 9, 2020, at 10:04 AM, Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov> wrote:

> I don't. I'm adding my Chiefs to this chain.
>
> On Mar 9, 2020, at 9:23 AM, "Kaveh.Miremadi@treasury.gov"
> <Kaveh.Miremadi@treasury.gov> wrote:
>
>> Hi Jane,
>>
>> Do you know who or what division in OFAC this letter was
>> sent to?  I'm searching our records now.  We may not be
>> able to get you a comprehensive answer this morning.
>>
>> Kaveh
>>
>> **From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
>> **Sent:** Sunday, March 8, 2020 5:58 PM
>> **To:** Miremadi, Kaveh <Kaveh.Miremadi@treasury.gov>; Van
>> Wagenberg, Maria-Helene
>> <MariaHelene.VanWagenberg@treasury.gov>; Brewer,
>> Jacqueline <Jacqueline.Brewer@treasury.gov>
>> **Cc:** Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>;
>> Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>;
>> Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett
>> (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>
>> **Subject:** Time Sensitive Question
>>
>> ** **Caution:** External email. Pay attention to suspicious
>> links and attachments. Send suspicious email to
>> suspect@treasury.gov **

Kaveh, Maria, and Jacqui:

I'm attaching a letter dated June 16, 2011, from Commerzbank to OFAC concerning a specific payment. Could you please let us know what actions OFAC took in response to this letter?  We need to update the Court on this issue tomorrow morning, so any information would be hugely appreciated.

Thank you in advance,
Jane


Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone:  (212) 637-2038
Email:  jane.kim@usdoj.gov

# EXHIBIT 68

**From:**          Laroche, Matthew (USANYS)
**To:**            Bove, Emil (USANYS); Crowley, Shawn (USANYS)
**Subject:**       Laroche Declaration Sadr.docx
**Date:**          Monday, March 09, 2020 4:46:44 PM
**Attachments:**   Laroche Declaration Sadr.docx

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | DECLARATION |
| -v.- | 18 Cr. 224 (ALC) |
| ALI SADR HASHEMI NEJAD, | |
| Defendant. | |

I, Matthew Laroche, pursuant to Title 28, United States Code, Section 1746, declare under penalty of perjury:

1.      I am an attorney admitted to the bar of the State of New York and the bar of this Court, and one of the Assistant United States Attorneys for the Southern District of New York previously responsible for this matter.  From April 2017 through March 2019, I was one of the Assistant United States Attorneys assigned to this case.  Prior to preparing this declaration, I reviewed my records related to this case, including emails, notes, and documents.

2.      Today, I was shown a document marked as identification as Government Exhibit 411, which consists of a June 16, 2011 letter from Commerzbank AG to the Department of the Treasury, Office of Foreign Assets Control ("OFAC").  I have no record of that letter and do not recall seeing it before today, although I am aware that the Government produced subpoena returns for Commerzbank AG in discovery.

3.      While I was assigned to this case, in September 2017, I participated in a phone call with another member of the prosecution team, who is currently on the trial team, and officials from OFAC.  It was my understanding from that call that OFAC was not aware of our investigation and was otherwise not investigating any matter related to the defendant.  Following that call, on September 26, 2017, I received an email in which an OFAC member copied others

1

from OFAC and stated that they would follow-up with any questions.  I have no record of any follow-up questions from OFAC and I do not recall participating in any other phone calls with OFAC related to this case.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing information is true and correct.

Dated:          New York, New York
                March 9, 2020

_____
Matthew Laroche
Assistant United States Attorney

2

# EXHIBIT 69

**From:**     Graff, Ilan (USANYS)
**To:**       Crowley, Shawn (USANYS)
**Subject:**  Re: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
**Date:**     Monday, March 09, 2020 4:49:33 PM

Sweet.

> On Mar 9, 2020, at 4:41 PM, Crowley, Shawn (USANYS)
> <SCrowley@usa.doj.gov> wrote:
>
>
> Of course. We just left court. Judge Nathan is going to take our representations in a letter instead of declarations.
>
> > On Mar 9, 2020, at 4:20 PM, Strauss, Audrey (USANYS)
> > <AStrauss@usa.doj.gov> wrote:
> >
> >
> > Shawn
> > Please send all docs you sent me today to Ilan as well.
> > Thnx
> > Audrey
> >
> > Sent from my iPhone
> >
> > > On Mar 9, 2020, at 3:49 PM, Crowley, Shawn
> > > (USANYS) <SCrowley@usa.doj.gov> wrote:
> > >
> > >
> > > Here is the order referred to in the letter (3.08.20), and the subsequent order asking us to be prepared to explain how we made clear that GX 411 had been newly marked (3.9.20).
> > >
> > > **From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
> > > **Sent:** Monday, March 09, 2020 3:47 PM
> > > **To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
> > > **Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
> > >
> > > Pls also send the court's order referred to in letter you just sent.
> > > Thanks

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 3:24 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>;
Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No.
18-cr-224 (AJN)

Thanks.  Attaching the email chain in which we produce GX
411 (Saturday at 4:04 p.m.) as well as the letter we filed with
Judge Nathan in which we represent that we "made clear
that GX 411 was a newly marked exhibit and that we
intended to offer it."

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:17 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>;
Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No.
18-cr-224 (AJN)

I am trying to review this transcript but I think I am missing a
document--- our letter to the defense that the judge views
as not fully candid.
Would you pls send?
Thanks.

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 2:22 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>;
Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No.
18-cr-224 (AJN)

This is the transcript from this morning before Judge Nathan.
As Laura knows, the AUSAs are scrubbing their files and
drafting their declarations.

Begin forwarded message:

> **From:** "DeLuca, Michael (USANYS)
> [Contractor]" <MDeLuca@usa.doj.gov>

**Date:** March 9, 2020 at 2:05:16 PM EDT
**To:** "Bove, Emil (USANYS)"
<EBove@usa.doj.gov>, "Crowley, Shawn
(USANYS)" <SCrowley@usa.doj.gov>
**Subject: FW:  Transcript - Ali Sadr Hashemi
Nejad, Case No. 18-cr-224 (AJN)**

---

**From:** Goretti Moya
<gmoya@sdreporters.com>
**Sent:** Monday, March 9, 2020 2:05 PM
**To:** DeLuca, Michael (USANYS) [Contractor]
<MDeLuca@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi
Nejad, Case No. 18-cr-224 (AJN)

---

**From:** DeLuca, Michael (USANYS) [Contractor]
<Michael.DeLuca@usdoj.gov>
**Sent:** Monday, March 09, 2020 10:43 AM
**To:** Info <Info@sdreporters.com>; reporters
<reporters@sdreporters.com>
**Subject:** Transcript - Ali Sadr Hashemi Nejad,
Case No. 18-cr-224 (AJN)

Good morning – We have a time-sensitive
request for this morning's transcript in the
ongoing trial in front of Judge Nathan, US v. Ali
Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN).
We are requesting a copy of this morning's
transcript (from before the jury entered the
courtroom) as soon as possible, and will pay
any fees associated with the expedited request.

Could you please let me know when we would
be able to get this? I'm sorry for the urgent
request and I appreciate your help.

Thank you,
Michael

Michael DeLuca

Paralegal, Terrorism & International Narcotics
Unit
U.S. Attorney's Office, SDNY
Desk: (212) 637-2248
Cell: (646) 265-8172

<18cr224 Order 3.08.20.pdf>
<18cr224 Order 3.9.20.pdf>

# EXHIBIT 70

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **To:** | Lynch, Garrett |
| **Subject:** | Re: Draft-Declaration-Template.docx |
| **Date:** | Monday, March 09, 2020 4:55:00 PM |

Can you call me again? 212-637-1034

On Mar 9, 2020, at 3:43 PM, Lynch, Garrett <LynchG@dany.nyc.gov> wrote:

Shawn, we've spoken to four out of the five other people who ever touched this case. They're all over the place (including Ireland), and only one still works here (but is out of the office). Can I represent in my declaration that we spoke with them?

**From:** Crowley, Shawn (USANYS) [mailto:Shawn.Crowley@usdoj.gov]
**Sent:** Monday, March 9, 2020 3:38 PM
**To:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>; Denton, David (USANYS) <David.Denton@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; DeFilippis, Andrew (USANYS) <Andrew.DeFilippis@usdoj.gov>
**Subject:** Draft-Declaration-Template.docx

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

# EXHIBIT 71

| | |
|---|---|
| **From:** | Birger, Laura (USANYS) |
| **To:** | Crowley, Shawn (USANYS); Strauss, Audrey (USANYS) |
| **Cc:** | Graff, Ilan (USANYS); Bove, Emil (USANYS) |
| **Subject:** | RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN) |
| **Date:** | Monday, March 09, 2020 4:59:11 PM |

Good development.  When do we need to file the letter?

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 4:42 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>; Graff, Ilan (USANYS) <IGraff@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Re: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Of course. We just left court. Judge Nathan is going to take our representations in a letter instead of declarations.


On Mar 9, 2020, at 4:20 PM, Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov> wrote:

 Shawn
Please send all docs you sent me today to Ilan as well.
Thnx
Audrey

Sent from my iPhone


On Mar 9, 2020, at 3:49 PM, Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov> wrote:

Here is the order referred to in the letter (3.08.20), and the subsequent order asking us to be prepared to explain how we made clear that GX 411 had been newly marked (3.9.20).

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:47 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Pls also send the court's order referred to in letter you just sent.
Thanks

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 3:24 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Thanks.  Attaching the email chain in which we produce GX 411 (Saturday at 4:04 p.m.) as well as the letter we filed with Judge Nathan in which we represent that we "made clear that GX 411 was a newly marked exhibit and that we intended to offer it."

---

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:17 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

I am trying to review this transcript but I think I am missing a document---our letter to the defense that the judge views as not fully candid.
Would you pls send?
Thanks.

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 2:22 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

This is the transcript from this morning before Judge Nathan. As Laura knows, the AUSAs are scrubbing their files and drafting their declarations.

Begin forwarded message:

> **From:** "DeLuca, Michael (USANYS) [Contractor]" <MDeLuca@usa.doj.gov>
> **Date:** March 9, 2020 at 2:05:16 PM EDT
> **To:** "Bove, Emil (USANYS)" <EBove@usa.doj.gov>, "Crowley, Shawn (USANYS)" <SCrowley@usa.doj.gov>
> **Subject: FW:  Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)**

**From:** Goretti Moya <gmoya@sdreporters.com>
**Sent:** Monday, March 9, 2020 2:05 PM
**To:** DeLuca, Michael (USANYS) [Contractor]
<MDeLuca@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No.
18-cr-224 (AJN)

**From:** DeLuca, Michael (USANYS) [Contractor]
<Michael.DeLuca@usdoj.gov>
**Sent:** Monday, March 09, 2020 10:43 AM
**To:** Info <Info@sdreporters.com>; reporters
<reporters@sdreporters.com>
**Subject:** Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-
224 (AJN)

Good morning – We have a time-sensitive request for this
morning's transcript in the ongoing trial in front of Judge
Nathan, US v. Ali Sadr Hashemi Nejad, Case No. 18-cr-224
(AJN). We are requesting a copy of this morning's transcript
(from before the jury entered the courtroom) as soon as
possible, and will pay any fees associated with the expedited
request.

Could you please let me know when we would be able to get
this? I'm sorry for the urgent request and I appreciate your
help.

Thank you,
Michael

Michael DeLuca
Paralegal, Terrorism & International Narcotics Unit
U.S. Attorney's Office, SDNY
Desk: (212) 637-2248
Cell: (646) 265-8172

<18cr224 Order 3.08.20.pdf>
<18cr224 Order 3.9.20.pdf>

# EXHIBIT 72

**From:**          Lynch, Garrett
**To:**            Crowley, Shawn (USANYS)
**Subject:**       Emailing: Correction to 8-31-2015 Commzerbank
**Date:**          Monday, March 09, 2020 5:06:53 PM
**Attachments:**   Correction to 8-31-2015 Commzerbank.nrl

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

# EXHIBIT 73

**From:** Crowley, Shawn (USANYS)
**To:** Graff, Ilan (USANYS)
**Subject:** FW: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
**Date:** Monday, March 09, 2020 5:08:25 PM
**Attachments:** 127126528741.pdf
[280-1] Def resp re brady.pdf

---

**From:** Crowley, Shawn (USANYS)
**Sent:** Monday, March 09, 2020 3:24 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Thanks.  Attaching the email chain in which we produce GX 411 (Saturday at 4:04 p.m.) as well as the letter we filed with Judge Nathan in which we represent that we "made clear that GX 411 was a newly marked exhibit and that we intended to offer it."

---

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:17 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

I am trying to review this transcript but I think I am missing a document--- our letter to the defense that the judge views as not fully candid.
Would you pls send?
Thanks.

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 2:22 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

This is the transcript from this morning before Judge Nathan. As Laura knows, the AUSAs are scrubbing their files and drafting their declarations.

Begin forwarded message:

> **From:** "DeLuca, Michael (USANYS) [Contractor]" <MDeLuca@usa.doj.gov>
> **Date:** March 9, 2020 at 2:05:16 PM EDT
> **To:** "Bove, Emil (USANYS)" <EBove@usa.doj.gov>, "Crowley, Shawn (USANYS)"

<[SCrowley@usa.doj.gov](mailto:SCrowley@usa.doj.gov)>
**Subject: FW:  Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)**

---

**From:** Goretti Moya <[gmoya@sdreporters.com](mailto:gmoya@sdreporters.com)>
**Sent:** Monday, March 9, 2020 2:05 PM
**To:** DeLuca, Michael (USANYS) [Contractor] <[MDeLuca@usa.doj.gov](mailto:MDeLuca@usa.doj.gov)>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

---

**From:** DeLuca, Michael (USANYS) [Contractor] <[Michael.DeLuca@usdoj.gov](mailto:Michael.DeLuca@usdoj.gov)>
**Sent:** Monday, March 09, 2020 10:43 AM
**To:** Info <[Info@sdreporters.com](mailto:Info@sdreporters.com)>; reporters <[reporters@sdreporters.com](mailto:reporters@sdreporters.com)>
**Subject:** Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Good morning – We have a time-sensitive request for this morning's transcript in the ongoing trial in front of Judge Nathan, US v. Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN). We are requesting a copy of this morning's transcript (from before the jury entered the courtroom) as soon as possible, and will pay any fees associated with the expedited request.

Could you please let me know when we would be able to get this? I'm sorry for the urgent request and I appreciate your help.

Thank you,
Michael

Michael DeLuca
Paralegal, Terrorism & International Narcotics Unit
U.S. Attorney's Office, SDNY
Desk: (212) 637-2248
Cell: (646) 265-8172

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 8, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

     Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

     The Court writes in response to the Court's order from 9:00 this evening. The Government apologizes for the lack of clarity in its prior email.

     The Government found GX 411 in its emails on Friday night, looked at the Bank-1 subpoena production, and did not find it. The members of the team discussed the document the next morning and confirmed that it likely had not been produced to the defense previously. The Government promptly had a paralegal mark it as an exhibit and produced it to the defense along with other exhibits and 3500 materials. The Government made clear that GX 411 was a newly marked exhibit and that we intended to offer it, and asked the defense if they would stipulate to authenticity. Defense counsel responded shortly after the Government provided GX 411 and asked how long the Government had GX 411, and why they had not previously received it. The Government responded and explained that we had been aware of the letter since mid-January, and that, at the time, the Government had mistakenly believed it was part of the discovery in the case.

     When SAUSA Lynch sent what is now GX 411 to the AUSAs in the case in January, the AUSAs assumed that this was a document that came from this case (specifically, the subpoena to Bank-1), and that it was therefore a document that had been previously produced to the defense as part of the Rule 16 discovery. This was an incorrect assumption. The document in fact was

# Exhibit B

| From: | Silverman, Nicholas |
|---|---|
| Sent: | Sunday, March 8, 2020 1:36 PM |
| To: | Kim, Jane (USANYS) 4; Heberlig, Brian; Lake, Stephanie (USANYS); Weingarten, Reid |
| Cc: | Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor]; Milione, Shawn (USANYS) [Contractor] |
| Subject: | RE: U.S. v. Sadr |
| Attachments: | 092-1 2019-02-25 Pretrial Mem 6 - Exhibit A-c2.pdf |

Counsel:

(1) Are there any other documents in the government's possession that have not been produced?

(2) Is there any other *Brady* information in the government's possession that has not been produced?

(3) Is there any information in the government's possession, custody, or control showing OFAC's response to this letter? This is subject to production under *Giglio* and/or *Napue* because it would at a minimum undermine Ted Kim's testimony (A) that to his knowledge, nothing relating to this matter was investigated by OFAC, (B) that "it matters a lot" if Iranian involvement in a transaction is concealed, and (C) that hiding "Iranian connections … would make it very difficult for me to do my job."

(4) As we have said, our requests for *Brady* and *Giglio* are continuing in nature. I have attached our September 2018 letter in case you want a non-exclusive list of examples of the type of information covered by *Brady* and *Giglio* in this case. Obviously, any information contrary to government witness testimony would be another example.

(5) Regarding the authenticity of GX 411, we stipulate to authenticity.

(6) GX 704 – Please let us know what modifications have been made.

(7) GX 495A, 495B – What is the relevance of Sadr having bank accounts at HSBX from January 2010 through October 2013?

(8) GX 456 – We are reviewing and anticipate stipulating to authenticity.

(9) GX 705A & 705B – We are reviewing.

(10)     GX 2304A – Subject to our continuing objection (which we understand to have been overruled), no further objection.

**Nicholas P. Silverman**
Associate
nsilverman@steptoe.com

**Steptoe**

+1 202 429 8096 direct    Steptoe & Johnson LLP
+1 617 595 6559 mobile    1330 Connecticut Avenue, NW
+1 202 429 3902 fax       Washington, DC 20036
                      www.steptoe.com

This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Sent:** Sunday, March 8, 2020 9:41 AM

**To:** Heberlig, Brian <BHeberlig@steptoe.com>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Milione, Shawn (USANYS) [Contractor] <Shawn.Milione@usdoj.gov>
**Subject:** RE: U.S. v. Sadr

Brian, Reid, and Nick:

As I explained in my last email, when we first saw the document in mid-January, we thought it had been part of Commerzbank's subpoena return and had been produced. We didn't think it would be necessary to use given our other evidence about that payment. Given some of the arguments you made on Friday, we decided that we did want to introduce it at trial.

Again, we don't see this document as exculpatory, as we would like to offer it tomorrow. Can you please let us know your position on an authenticity stipulation for this document and the other bank records we sent yesterday, as well as whether you have any issues with the summary charts?

Thanks,
Jane

---

**From:** Heberlig, Brian <BHeberlig@steptoe.com>
**Sent:** Saturday, March 7, 2020 10:09 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** RE: U.S. v. Sadr

If you have been aware of the letter since mid-January, why wasn't it on the government's pretrial exhibit list instead of appearing the day before the government rests its case? The exculpatory nature of the exhibit is self-evident.

---

**From:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>
**Sent:** Saturday, March 7, 2020 5:36 PM
**To:** Heberlig, Brian <BHeberlig@steptoe.com>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Milione, Shawn (USANYS) [Contractor] <Shawn.Milione@usdoj.gov>
**Subject:** RE: U.S. v. Sadr

Brian,

We do not agree with your characterization of GX 430, 431, 432, or 411 as *Brady*. These are all exhibits the Government has introduced or is seeking to introduce in our case. Perhaps you can explain how it is you think GX 411 is helpful to your case.

In any event, we have been aware of the letter since mid-January. We thought it was part of the Commerzbank subpoena return that was produced in discovery. We now understand that it came from an unrelated DANY investigation, and therefore was not in the Commerzbank subpoena return.

It is not clear to us how this document would have been relevant to the OFAC witness's testimony.

Jane

---

**From:** Heberlig, Brian <BHeberlig@steptoe.com>
**Sent:** Saturday, March 7, 2020 4:57 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** RE: U.S. v. Sadr

We request immediate disclosure of (1) where GX411 came from, (2) how long it has been in the government's possession, (3) why we are only receiving it today. This is the second episode—along with GX430, GX431, and GX432—of the government producing fundamentally exculpatory documents mid-trial. In this instance, the document was produced after the government's OFAC witness, who would have been subject to cross-examination on this document. Provide this information by 6 pm or we will see the intervention of the Court.

---

**From:** Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>
**Sent:** Saturday, March 7, 2020 4:24 PM
**To:** Weingarten, Reid <RWeingarten@steptoe.com>; Heberlig, Brian <BHeberlig@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Milione, Shawn (USANYS) [Contractor] <Shawn.Milione@usdoj.gov>
**Subject:** RE: U.S. v. Sadr

Counsel,

We attempted to send you a number of attachments, which will not go through without encryption. It looks like Steptoe's servers are blocking the encrypted email. Shawn will upload the files to the link he has been using. The descriptions are below.

Stephanie

---

**From:** Lake, Stephanie (USANYS)
**Sent:** Saturday, March 07, 2020 4:04 PM
**To:** Weingarten, Reid <RWeingarten@steptoe.com>; Heberlig, Brian <BHeberlig@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** U.S. v. Sadr

Counsel,

Mr. Dubowitz is still very ill. As a result, we do not intend to call him as a witness in our case-in-chief. It's possible that, depending on the defense case, we will call him as a rebuttal witness.

In addition, we've attached the following documents:

3

- Updated GX 2284D – there were formatting problems with our version. We think the attached corrects them.
- 3508-08 – 3500 from today
- GX 411 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 456 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 495A & B – we intend to offer these on Monday (likely in redacted form), although think a stipulation that the defendant had bank accounts at HSBC from January 2010 through October 2013 might be simpler. Let us know how you prefer to proceed.
- GX 704 – this is the modified version of the travel chart. Please confirm whether you have any remaining concerns.
- GX 705A & B – these are summary charts reflecting the information in GX 2090A. Please confirm whether you have any objections.
- Updated GX 2304A – we enlarged some of the cells, as the formatting of the PDFd excel file was cutting off some of the data. The content is the same.
- 3504-10 – Peri 3500, which was provided in hard copy yesterday morning.
- 3505-06 – Blair 3500, which was provided in hard copy yesterday morning.
- 3513-02 – Paralegal 3500 for summary chart (you may already have this)
- 3513-03 – Paralegal 3500 for summary chart (you may already have this)

We are still working on one additional summary chart, which we expect to provide later today.

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

Brian M. Heberlig
202 429 8134
bheberlig@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

September 25, 2018

<u>By Electronic Mail</u>

Andrew DeFilippis
Matthew Laroche
Rebekah Donaleski
Assistant United States Attorneys
Garrett Lynch
Special Assistant United States Attorney
U.S. Attorney's Office for the
Southern District of New York
1 St. Andrew's Plaza
New York, NY  10007

> Re:  *United States v. Ali Sadr Hashemi Nejad*, No. 18 Cr. 224 (ALC)
> **Request for Discovery, *Brady* Material, and Particulars**

Dear Counsel:

On behalf of defendant Ali Sadr Hashemi Nejad, we request that the government provide "open file" discovery in this case, including the prompt production of all of the documents and other evidence it has obtained in its investigation and all grand jury transcripts, FBI 302s, and interview memoranda.

In the event that you elect not to provide "open file" discovery, Sadr respectfully submits this formal request for discovery in this case, pursuant to the Fifth and Sixth Amendments to the United States Constitution; Rules 12, 16, and 26.2 of the Federal Rules of Criminal Procedure; *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and progeny; the Department of Justice's "Guidance for Prosecutors Regarding Criminal Discovery"; and the additional authority set forth below.

We understand that Sadr's prior counsel at Arnold & Porter made earlier discovery requests in this matter, including requests in letters and emails dated: March 21, March 25,

September 25, 2018
Page 2



March 29, April 3, May 15, July 5, July 10, July 26, August 2, August 23, and September 4, 2018.  We adopt those requests and ask that you provide any future responsive material directly to us.  Arnold & Porter has provided us with copies of your prior discovery letters and emails and the discovery productions to date, and we do not need you to reproduce them to us.  Although some of these discovery requests overlap with prior requests by Arnold & Porter, we submit them to ensure that Sadr has fully protected his rights to discovery and *Brady*/*Giglio* material in this matter.

Sadr requests that you produce and/or permit him to inspect and copy or photograph the materials specified below.  This request encompasses not only documents[1] and information in the possession, custody, or control of, or that have been reviewed by, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation, but also documents and information in the possession, custody, and control of, or that have been reviewed by, the Manhattan District Attorney's Office, and any other federal, state or local agency allied with the prosecution or involved in any way in investigating the activities alleged in the Indictment or related conduct.  As used in this letter, the words "government" and "you" include your office and the above-referenced federal, state, or local agencies.

Sadr requests that the government comply with all of its discovery obligations under federal law, including, but not limited to, the following:[2]

## I.      Search Warrant Returns

We request clarification of the government's position on the discoverability of the data and documents collected pursuant to search warrants in the investigation.  It is our understanding that the government has produced the full and unfiltered email accounts of Sadr collected pursuant to search warrants.  Arnold & Porter requested the "terabyte" of unfiltered data and documents from non-Sadr accounts obtained pursuant to search warrants, in an April 3, 2018 letter and an August 2, 2018 email.  With respect to that data, it is our understanding that the government has produced only a subset of materials that it has deemed "pertinent."  We reiterate Sadr's request for complete, unfiltered data and documents from all accounts obtained by the

---

[1] The word "documents" includes, but is not limited to, all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, e-mail, text messages, instant messages, other computer facilitated or transmitted materials, images, photographs, polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

[2] All of these requests are continuing in nature, requiring supplementation in accordance with Fed. R. Crim. P. 16(c).

September 25, 2018
Page 3



government pursuant to search warrants. If you decline to provide these materials, please indicate:

    1.    The search terms and/or other filtering process used by the government to identify the "pertinent" documents from the search warrant returns for the non-Sadr accounts; and

    2.    How the government has satisfied its *Brady* obligations with respect to the purportedly non-pertinent data and documents from the search warrant returns for the non-Sadr accounts.

## II.    Statements of the Defendant

    1.    Any written or recorded statements made by Sadr within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the government. *See* Fed. R. Crim. P. 16(a)(1)(B)(i). This request includes, without limitation:

        a.    All notes, reports, and memoranda summarizing any statement by Sadr to law enforcement officials at the time of his arrest;

        b.    All transcripts and recordings of conversations in which Sadr was a participant;

        c.    All wire and oral communications made by Sadr that were transmitted to or intercepted by, for or on behalf of any government agent or employee or any agency or entity of the U.S. government;

        d.    All written and recorded statements of witnesses that reflect, relate, or incorporate any statements made by Sadr; and

        e.    All other documents that purport to reflect, relate, or incorporate any statements made by Sadr.

    2.    The portion of any written record containing the substance of any oral statement made by Sadr, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a government agent. *See* Fed. R. Crim. P. 16(a)(1)(B)(ii). This request includes without limitation, all documents, including notes, prepared by any FBI employee or agent that contain the substance of any relevant statement made by Sadr.

    3.    The substance of any other oral statement made by Sadr, whether before or after arrest, in response to interrogation by any person then known by Sadr to be a government agent. *See* Fed. R. Crim. P. 16(a)(1)(A).

September 25, 2018
Page 4



## III.　Documents and Tangible Objects

1.　All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that were obtained from or belong to Sadr, or that belonged to Sadr at the time of the alleged offenses, or that belong or belonged to any agent of Sadr or any entity allegedly owned or controlled by Sadr.  *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).  This request includes all documents as to which the government or any entity assigned Sadr as a custodian, whether hard copy or electronic records.

2.　All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that the government intends to use at trial in its case-in-chief.  *See* Fed. R. Crim. P. 16(a)(1)(E)(ii).  We request that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's other Rule 16 and *Brady* requests, both to enable counsel to prepare effectively for trial and to afford Sadr an opportunity to move to suppress any evidence the prosecution intends to use in its case-in-chief. *See* Fed. R. Crim. P. 12(b)(3)(C) and 12(b)(4)(B).

3.　All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that are material to the preparation of Sadr's defense, *see* Fed. R. Crim. P. 16(a)(l)(E)(i), including, but not limited to, those items set forth in paragraphs III.4 to III.14 below.

4.　All documents reflecting the alleged specific "international financial transactions" at issue in Count Two of the indictment.  Indictment ¶ 19.

5.　All documents reflecting the alleged "financial transactions" at issue in Counts Three and Four of the indictment.  Indictment ¶¶ 23, 26.

6.　All documents reflecting the alleged false and fraudulent pretenses, representations and promises at issue in Counts Three and Four of the indictment.  Indictment ¶¶ 23, 26.

7.　All documents reflecting the alleged monetary transactions and transfers at issue in Counts Five and Six of the indictment.  Indictment ¶¶ 29, 32.

8.　All documents relating to Sadr or the conduct alleged in the indictment that were introduced as exhibits before the grand jury.  We request that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's other Rule 16 and *Brady* requests.

9.　All documents relating to Sadr or the conduct alleged in the indictment that were obtained by or for the grand jury or pursuant to any grand jury or trial subpoena.  This request includes any documents furnished informally to prosecutors in lieu of formal compliance with a subpoena.

September 25, 2018
Page 5



10. All documents relating to Sadr or the conduct alleged in the indictment obtained from any witness who testified before the grand jury, or who was interviewed or consulted during the course of the grand jury investigation.

11. All documents relating to Sadr or the conduct alleged in the indictment that were obtained by any search or seizure pursuant to a search warrant or otherwise.

12. All documents relating to Sadr or the conduct alleged in the indictment obtained from any federal, state or local governmental, regulatory or legislative body or agency.

13. All documents relating to press releases or press conferences concerning Sadr or the investigation of the defendant, and all other documents relating to any contacts between the government and representatives of the media concerning Sadr or the investigation of the defendant.

14. All documents relating to the reputation of Sadr, including, without limitation, any documents relating to Sadr's reputation for honesty, integrity, or competence.

## IV. *Brady* and *Giglio* Material

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitney*, 514 U.S. 419 (1995), and New York Rule of Professional Conduct 3.8, Sadr requests immediate identification and disclosure of all documents and information (in whatever form) that are favorable to the defense or that would tend to exculpate Sadr or mitigate his culpability with respect to the charges in the indictment, that would tend to impeach any potential witness against Sadr, or that are relevant to the issue of sentencing, including but not limited to the following:

1. Any document or information indicating or tending to establish that any of the allegations in the indictment are not true.

2. Any document or information indicating or tending to establish that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not violate government laws, regulations, standards or established business practices.

3. Any document or information indicating or tending to establish that Sadr believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not constitute a crime.

4. Any document or information indicating or tending to establish that any other person (including but not limited to the alleged co-conspirators) believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not constitute a crime.

September 25, 2018
Page 6



    5.       Any documents or information indicating or tending to establish that Sadr did not instigate, control, authorize, approve, or acquiesce in the practices that are the subject of the indictment.

    6.       Any documents or information indicating or tending to establish that the alleged false or fraudulent pretenses were not false.

    7.       Any documents or information indicating or tending to establish that the alleged false or fraudulent pretenses were not material.

    8.       Any documents or information indicating or tending to establish that a third person was responsible for the financial transactions at issue in any count of the indictment.

    9.       Any document or information indicating or tending to establish that Sadr engaged in any conduct that forms the basis of the indictment in reliance upon advice provided by counsel or accountants.

    10.      Any document or information (in whatever form) that could be used to impeach any potential government witness, or any person whose statements will be introduced pursuant to Fed. R. Evid. 801(d)(2)(C), (D), or (E), including but not limited to:

        a.      Any document or information relating to any conviction, arrest, or criminal record of, and any criminal charge brought against, any potential government witness;

        b.      Any document or information relating to promises, consideration, or inducements made to any potential government witness, whether directly to the witness or indirectly to the witness' attorney, friends, family, employer, business associates, or other culpable or at risk third-party. "Consideration" means anything of value or use, including immunity grants, whether formal or informal, witness fees, transportation or relocation assistance, money, dropped or reduced charges or suggestions of favorable treatment with respect to any federal, state or local criminal, civil, or administrative matter, expectations of downward departures or motions for reduction of sentence, considerations regarding forfeiture of assets, or stays of deportation or other immigration status considerations;

        c.      Any document or information tending to show the bias of a potential government witness, including animosity toward Sadr, animosity toward any group or entity of which Sadr is a member or with which Sadr is affiliated, a relationship with the alleged victim, or known but uncharged criminal conduct that may provide an incentive to curry favor with a prosecutor;

        d.      Any document or information affecting the reliability of a potential government witness's testimony, including known alcohol or substance



                abuse, mental health issues or other issues that could affect the witness's
ability to perceive and recall events;

    e.      Any document or information relating to any inconsistency in statements
given by any potential government witness;

    f.      Any document or information relating to any inconsistency between
agents' and/or prosecutors' rough notes and FBI 302s or other memoranda
of interviews of any potential government witness;

    g.      Any document or information bearing adversely on the character or
reputation for truthfulness of any potential government witness; and

    h.      Each specific instance of conduct from which it could be inferred that any
potential government witness is untruthful.

    11.      The date of and participants in each and every interview (including not only
interviews conducted by the U.S. Attorney's Office or the Manhattan District Attorney's Office,
but also interviews conducted by third parties), debriefing, "queen for a day" session, proffer,
deposition, or other statement or description of the alleged facts made by each potential
government witness (whether directly or indirectly, such as a proffer made by counsel). In
addition, please specify, as to each such witness, the first date on which the witness made any
allegation that Sadr engaged in any allegedly unlawful conduct or any conduct alleged in the
indictment.

    As you are aware, New York has adopted Rule of Professional Conduct 3.8, entitled
"Special Responsibilities of Prosecutors and Other Government Lawyers," which provides that a
prosecutor "shall make timely disclosure to [the defense] of evidence or information known to
the prosecutor or other government lawyer that tends to negate the guilt of the accused, mitigate
the degree of the offense, or reduce the sentence . . . ." Rule 3.8(b). The Supreme Court has
recognized that Rule 3.8 imposes a higher standard on prosecutors than the standards mandating
disclosure of exculpatory evidence under *Brady*. *See Kyles*, 514 U.S. at 437 ("[*Brady*] requires
less of the prosecution than the ABA Standards for Criminal Justice, which call generally for
prosecutorial disclosures of any evidence tending to exculpate or mitigate."); ABA Standards for
Criminal Justice, Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993) ("A
prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest
feasible opportunity, of the existence of all evidence or information which tends to negate the
guilt of the accused or mitigate the offense charged or which would tend to reduce the
punishment of the accused"); ABA Model Rule of Professional Conduct 3.8(d) (1984) ("The
prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or
information known to the prosecutor that tends to negate the guilt of the accused or mitigates the
offense").

    We contend that the foregoing categories of information constitute *Brady* and Rule 3.8(b)
material, and that disclosure should take place immediately. Sadr further requests that the

September 25, 2018
Page 8



government identify with particularity and provide copies of all materials that qualify as *Brady* and Rule 3.8 material, as described above.  Please advise us promptly whether the government will be producing *Brady* material immediately even if it is contained in what might otherwise be considered as *Jencks* material, or whether you take the position that you are not obligated to produce such material at this time.

We also request the underlying source material for any *Brady* and Rule 3.8(d) information, as opposed to any summary letter or paraphrased description of the information.  Please advise us promptly whether the government will not be producing underlying source material.

For purposes of the *Brady* doctrine, "the format of the information does not determine whether it is discoverable."  U.S. Attorneys' Manual § 9-5.002.B.5 (2018).  For example, material exculpatory information that is provided "during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email."  *Id.*  We therefore request that all such information be memorialized and produced to Sadr.

## V.      Purportedly Privileged Material

Sadr specifically requests that the government produce all documents or information (in whatever form) produced to the government—or over which the government otherwise has custody, control, or possession—that are responsive to Sadr's discovery and *Brady/Giglio* requests contained herein or that the government would otherwise be legally required to produce, over which any individual or entity has asserted the attorney-client privilege and/or the attorney work product doctrine.  This request applies to all such documents produced pursuant to (a) a non-waiver agreement between any individual or entity and the government, (b) a court order pursuant to Fed. R. Evid. 502, or (c) a court order concluding that the documents are covered by the crime-fraud exception to the attorney-client privilege.

Sadr also requests that you identify any person or entity that has asserted any attorney-client privilege, work product privilege, common interest privilege, or any other privilege as the basis for withholding or not producing, in whole or in part, any documents to the government or the grand jury during the investigation.  Sadr further requests that you provide all documents (including all privilege logs) with respect to the assertion of or challenge to any such claimed privileges.  This request specifically encompasses all pleadings, court orders, correspondence, and other material related to any grand jury litigation by the government in which it challenged any assertion of any  privilege.

## VI.     Criminal Records

Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, Sadr requests copies of his prior criminal record, if any.

September 25, 2018
Page 9



## VII. *Jencks* Material

Pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure, Sadr requests that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case-in-chief and all statements of those witnesses in the possession, custody, or control of the government or any other government entity, including, but not limited to, notes of interviews, FBI 302s, or other summaries prepared by government attorneys or agents, and grand jury transcripts and any other witness statements. We request that the government begin providing this material as soon as possible, or in any event no later than ninety (90) days prior to the start of trial.

## VIII. Scientific Evidence

Pursuant to Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure, Sadr requests documentation relating to all requests for, and the results of, physical or mental examinations, scientific tests, or experiments that were conducted in connection with the investigation of the charges contained in the indictment. This includes, but is not limited to:

      a.     all forensic examinations of any computer hard drive, handheld cellular telephone or mobile device that Sadr possessed or to which Sadr had access;

      b.     all handwriting exemplars, handwriting samples, handwriting or document analyses, and all documents examined or used in or related to such analyses;

      c.     all fingerprint and palm print exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts, and all documents examined or used in connection with, or that relate to, those opinions; and

      d.     all polygraph examinations, psychological stress examinations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth, or to refresh a witness' memory, and all documents that refer or relate to such examinations.

## IX. Other Crimes Evidence

Pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rules 403 and 404(b)(2) of the Federal Rules of Evidence, Sadr requests that the government disclose all evidence of similar crimes, wrongs, or acts, allegedly committed by Sadr (or any person alleged to have been acting pursuant to his instructions), upon which the government intends to rely on at trial.



## X.    Suppression Issues

1.    As a predicate to potential motions pursuant to Rule 12(b) of the Federal Rules Of Criminal Procedure, *see* Rule 12(b)(4)(B), Sadr requests that he be informed:

    a.    Whether the government intends to offer into evidence any statement made by Sadr or any family member, and the substance of any such statement;

    b.    Whether any evidence in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence;

    c.    Whether any evidence in the government's possession, custody, or control was obtained through electronic or mechanical surveillance, including without limitation, wiretaps, body wires, pen registers, and/or surveillance of telephone calls, and a description of such evidence;

    d.    Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence;

    e.    In connection with any tape recording, wiretaps, or other surveillance of the defendant during the investigation of the allegations of the indictment or any related allegations, Sadr seeks:

        i.    The names and addresses of all such persons whose personal or business telephones the government tapped or monitored, or whose conversations or actions the government monitored by other means without the person's knowledge;

        ii.    Transcripts or other records of the statements or conversations monitored;

        iii.    The original recorded tapes created during such surveillance;

        iv.    The procedures used to conduct such surveillance; and

        v.    The authority under which such surveillance was conducted.

    f.    Whether any evidence in the government's possession, custody, or control was obtained through a mail cover and/or trash cover and a description of such evidence; and

    g.    The identities of any informant or undercover agent employed by the government during its investigation of the charges of the indictment.

Case 1:18-cr-00224-AJN   Document 92-1   Filed 02/26/20   Page 17 of 74

September 25, 2018
Page 11



2.      Sadr requests that the prosecution disclose whether it intends to offer in its case-in-chief, as a statement by the defendant, any of the following, and that it provide the substance of any such statement:

> a.      Any statement as to which the defendant allegedly manifested his adoption or belief in its truth.  *See* Fed. R. Evid. 801(d)(2)(B).
>
> b.      Any statement made by another which was purportedly authorized by the defendant.  *See* Fed. R. Evid. 801(d)(2)(C).
>
> c.      Any statement made by an agent or servant of the defendant concerning a matter within the scope of his agency or employment made during the existence of such a relationship.  *See* Fed. R. Evid. 801(d)(2)(D).
>
> d.      Any statement made by an alleged co-conspirator of the defendant during the course and in furtherance of any alleged conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E).

## XI.      Hearsay

Sadr requests notice of any hearsay statement that the government plans to offer at trial under Federal Rule of Evidence 807, including its particulars, the declarant's name and address, and other information giving Sadr a fair opportunity to meet the statement.  Fed. R. Evid. 807(b).

## XII.      Charts and Summaries

Pursuant to Fed. R. Evid. 1006, Sadr requests that he be advised whether the government will seek to offer any chart, summary, or calculation in evidence and, if so, (1) that all such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

## XIII.      Electronically Stored Information

Sadr requests that the government comply with the "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" issued by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System in February 2012.  To that end, Sadr requests the ability to "meet and confer" with the government as needed to discuss the nature, volume, and mechanics of the government's production of ESI discovery.  Among other things, Sadr makes the following requests:

> 1.      The government should produce ESI received from third parties in the format it was received.  However, if the government has further processed ESI received from third parties, such as by adding load files, converting native files to TIFF images, extracting metadata or other coding, or making electronic files



searchable, the government should produce such enhanced ESI in discovery to save Sadr the expense of replicating this work.  Sadr does not seek any government attorney work product by this request.

2.      The government should produce a table of contents describing the general categories of information available as ESI discovery in order to expedite Sadr's review of discovery and avoid discovery disputes, unnecessary expense, and undue delay.  Further, the government should produce the cover letters that accompanied and described the third party productions of ESI and other documents to facilitate Sadr's review.

3.      For all ESI produced from a seized, searched, or subpoenaed third-party digital device (e.g., computer, hard drive, thumb drive, CD, DVD, cell phone, Blackberry, iPhone, Android, smart phone, smart watch, or personal digital assistant), the government should identify the digital device that held the ESI, identify the device's owner or custodian, and identify the location where the device was seized, searched, or from where it was produced.

4.      The government should produce any materials received in paper form in converted digital files that can be viewed and searched.  These materials should be produced in multi-page TIFF and OCR format where each document is one file that may have multiple pages.  Alternatively, a less preferable option would be production in multi-page, searchable PDF format.  Under no circumstances should paper materials be converted into single-page TIFF images without document breaks.

5.      All production of ESI should maintain parent-child relationships between documents, such as where an email (the parent document) has attachments (the child documents).

## XIV.   Bill of Particulars

We also adopt Arnold & Porter's August 23, 2018 letter requesting a bill of particulars regarding the allegations in the indictment.  We need specification of those allegations in the indictment to permit Sadr to prepare to defend the charges against him.  Please advise us whether the government will provide the requested information so that we can determine whether it will be necessary to move for a bill of particulars under Federal Rule of Criminal Procedure 7(f).

September 25, 2018
Page 13



   Please let us know promptly whether there are any requests set forth in this letter with which you decline to comply.  We are available to discuss any of the foregoing requests at your convenience.  We reserve the right to supplement these requests as we continue to review the discovery material and prepare for trial.  Thank you for your consideration.

       Sincerely,

       Brian M. Heberlig

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 2

obtained in an unrelated DANY investigation and was not provided to this Office before January 2020.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
    Assistant United States Attorneys
Garrett Lynch
    Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 74

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **To:** | Graff, Ilan (USANYS) |
| **Subject:** | FW: Sadr |
| **Date:** | Monday, March 09, 2020 5:08:50 PM |
| **Attachments:** | 127126528741.pdf |
| | ATT00001.htm |
| | 18cr224 Order 3.08.20.pdf |
| | ATT00002.htm |
| | [280-1] Def resp re brady.pdf |
| | ATT00003.htm |

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 09, 2020 5:44 AM
**To:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Sadr

Hi Laura,

Attached are additional filings from last night. We held off on distributing these more broadly because we weren't sure how much would come in, and didn't want to send 3-4 update emails. The defense ended up not saying much other than to file the attached correspondence with the team. Our plan is to send an internal update once we hear from AJN at 9 this morning, but we wanted you to have seen these documents before you call the court.

In these attachments, you'll see that AJN asked follow-up questions about our initial letter. We found the answers to the questions to be unfortunate, particularly the fact that the team did not flag for defense counsel that the document was being produced for the first time. We're going to talk to the unit about the disclosure issues here and in Schulte once the dust settles with the trials.

Thanks again for making this call.

Emil

# EXHIBIT 75

**From:**      Crowley, Shawn (USANYS)
**To:**        Graff, Ilan (USANYS)
**Subject:**   FW: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)
**Date:**      Monday, March 09, 2020 5:08:31 PM
**Attachments:**  18cr224 Order 3.08.20.pdf
                  18cr224 Order 3.9.20.pdf

---

**From:** Crowley, Shawn (USANYS)
**Sent:** Monday, March 09, 2020 3:49 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Here is the order referred to in the letter (3.08.20), and the subsequent order asking us to be prepared to explain how we made clear that GX 411 had been newly marked (3.9.20).

---

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:47 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Pls also send the court's order referred to in letter you just sent.
Thanks

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 3:24 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

Thanks.  Attaching the email chain in which we produce GX 411 (Saturday at 4:04 p.m.) as well as the letter we filed with Judge Nathan in which we represent that we "made clear that GX 411 was a newly marked exhibit and that we intended to offer it."

---

**From:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>
**Sent:** Monday, March 09, 2020 3:17 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

I am trying to review this transcript but I think I am missing a document--- our letter to the defense that the judge views as not fully candid.
Would you pls send?
Thanks.

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Monday, March 9, 2020 2:22 PM
**To:** Strauss, Audrey (USANYS) <AStrauss@usa.doj.gov>; Birger, Laura (USANYS) <LBirger@usa.doj.gov>
**Cc:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Subject:** Fwd: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

This is the transcript from this morning before Judge Nathan. As Laura knows, the AUSAs are scrubbing their files and drafting their declarations.


Begin forwarded message:

> **From:** "DeLuca, Michael (USANYS) [Contractor]" <MDeLuca@usa.doj.gov>
> **Date:** March 9, 2020 at 2:05:16 PM EDT
> **To:** "Bove, Emil (USANYS)" <EBove@usa.doj.gov>, "Crowley, Shawn (USANYS)" <SCrowley@usa.doj.gov>
> **Subject: FW:  Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)**



> **From:** Goretti Moya <gmoya@sdreporters.com>
> **Sent:** Monday, March 9, 2020 2:05 PM
> **To:** DeLuca, Michael (USANYS) [Contractor] <MDeLuca@usa.doj.gov>
> **Subject:** RE: Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)



> **From:** DeLuca, Michael (USANYS) [Contractor] <Michael.DeLuca@usdoj.gov>
> **Sent:** Monday, March 09, 2020 10:43 AM
> **To:** Info <Info@sdreporters.com>; reporters <reporters@sdreporters.com>
> **Subject:** Transcript - Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN)

> Good morning – We have a time-sensitive request for this morning's transcript in the ongoing trial in front of Judge Nathan, US v. Ali Sadr Hashemi Nejad, Case No. 18-cr-224 (AJN). We are requesting a copy of this morning's transcript (from before the jury entered the courtroom) as soon as possible, and will pay any fees associated with the expedited request.

> Could you please let me know when we would be able to get this? I'm sorry for the urgent request and I appreciate your help.

> Thank you,
> Michael

Michael DeLuca
Paralegal, Terrorism & International Narcotics Unit
U.S. Attorney's Office, SDNY
Desk: (212) 637-2248
Cell: (646) 265-8172

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

          –v–

Ali Sadr Hashemi Nejad,

             Defendants.

18-cr-224 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

In the letter filed this evening by the Government, Dkt. No. 275, the Government states that "It was only in the context of this process that the Government realized that GX 411 was not part of Bank-1's subpoena production, which had been provided to the defense in discovery."

The Court requires further explanation. Specifically, it is unclear from this sentence if the Government realized GX 411 had not been previously disclosed before or after the Government turned it over to the defense yesterday. Nor does this sentence indicate if, upon learning of the late disclosure, the Government informed defense counsel or not. The Government shall explain precisely when and how it realized that the document had erroneously been withheld and when, if at all, upon learning of the failure to disclose this was communicated to the defense.

Furthermore, the previously filed letter does not offer an explanation for how it came to be that GX 411 was not (though should have been) provided to the defense as part of Bank-1's subpoena production.

The Government is ordered to address these points by letter to be filed no later than 10 p.m. this evening. The defense may reply to the Government's letters by 11 p.m.

1

SO ORDERED.

Dated:   March 8, 2020
         New York, New York

3/8/20

_____
ALISON J. NATHAN
United States District Judge

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

        –v–

Ali Sadr Hashemi Nejad,

                Defendant.

18-cr-224 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

      The parties shall be ready to begin today, March 9, 2020, at 8:30 a.m.  The Government

shall be prepared to discuss, among other matters, its representation to the Court (in response to

the Court's March 8, 2020 Order) that it "made clear" in its March 7 correspondence with Mr.

Sadr's counsel "that GX 411 was a newly marked exhibit."  *See* Dkt. No. 277.

      SO ORDERED.

Dated: March ___9___, 2020
       New York, New York

_____
          ALISON J. NATHAN
        United States District Judge

# EXHIBIT 76

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **To:** | Crowley, Shawn (USANYS) |
| **Cc:** | Bove, Emil (USANYS) |
| **Subject:** | RE: Draft-Declaration-Template.docx |
| **Date:** | Monday, March 09, 2020 6:03:58 PM |

Let me know when you're available for a quick call.  Thanks.

**From:** Crowley, Shawn (USANYS) [mailto:Shawn.Crowley@usdoj.gov]
**Sent:** Monday, March 9, 2020 4:55 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** Re: Draft-Declaration-Template.docx

Can you call me again? 212-637-1034


On Mar 9, 2020, at 3:43 PM, Lynch, Garrett <LynchG@dany.nyc.gov> wrote:


Shawn, we've spoken to four out of the five other people who ever touched this case. They're all over the place (including Ireland), and only one still works here (but is out of the office).  Can I represent in my declaration that we spoke with them?

**From:** Crowley, Shawn (USANYS) [mailto:Shawn.Crowley@usdoj.gov]
**Sent:** Monday, March 9, 2020 3:38 PM
**To:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>; Denton, David (USANYS) <David.Denton@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; DeFilippis, Andrew (USANYS) <Andrew.DeFilippis@usdoj.gov>
**Subject:** Draft-Declaration-Template.docx


This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

# EXHIBIT 77

| | |
|---|---|
| **From:** | Krouse, Michael (USANYS) |
| **To:** | Bove, Emil (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | FW: Sadr - wire transfers |
| **Date:** | Monday, March 09, 2020 6:24:16 PM |
| **Attachments:** | Commerz OFAC disclosure.pdf |

Here is the January 10 email Garrett sent us.  No one responded.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Friday, January 10, 2020 4:52 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze made to OFAC re: the payment.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Friday, January 10, 2020 3:16 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Closing the loop on this– I found a document in the material Fuenmayor gave us that discusses the $29 million transfer through Fondo Chino, and he also mentioned it in the last meeting. I think this should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA. The doc is attached, if anyone cares, but it's also en Espanol (I've requested translation). Pages 14-15.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 12:46 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

The Venezuelans used various state-owned "funds" and banks to fund various government projects, among them BANDES, the economic and social development bank (which, I believe made some early payments (not ours) related to the project), and Fondo Chino (the Chinese-Venezuelan Fund). Fondo Chino (at least ostensibly) was funded by oil sales to and loans from China (I think PDVSA and the government liberally moved money around). I forget exactly why Fondo Chino was used to make the first payment (or if we ever knew for sure) – my guess is that PDVSA, which controlled all oil-related funds (i.e., the Venezuelan purse), had adequate funds in the Fondo Chino account to make the payment from that account.  I believe the money came from a Banco del Tesoro account in Venezuela, which had a correspondent relationship with Commerz in Germany.  Thereafter, they

used PDVSA accounts at Banco Espirito Santo in Portugal.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Wednesday, January 8, 2020 11:02 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS)
<Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Found the first one. Thanks. Do you know why it came from "Fondo Chino" / what that is?

That's fine on two. Just wanted to make sure I wasn't missing some other records that would show
that information.

Definitely agree on the third point.

Thank you!

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 10:04 AM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers


1. Re: the first payment, there should be a copy of the SWIFT message in the Commerzbank
production.  In my version of the subpoena compliance production it's a PDF titled "Copy".

2. Re: the identity of the intermediary bank, the bank whose business record the wire transfer
is is the intermediary bank, so the witness will be able to state that.

3. Also, for several of the payments, we have additional search warrant documents -- e.g.,
while we may just have the wire transfer record from the clearing bank, we may also have a
SWIFT message attached to an email, or a Hyposwiss record, or some other document which
identifies the payment route. When the dust settles on the SW docs, we can reconstruct my old
payments binders where I had all of the documents bundled together for each payment (the
payment instruction letter, the bank record(s), emails, attachments, etc.).  This is what we did
for the GJ.


---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Tuesday, January 7, 2020 6:19 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** FW: Sadr - wire transfers

My original email had three attachments, which had to be sent to you securely. So you should be getting a secure message with instructions on how to access it.

**From:** Lake, Stephanie (USANYS)
**Sent:** Tuesday, January 07, 2020 5:37 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** Sadr - wire transfers

See attached a spreadsheet (Payments) showing each transfer and where I found documentation. A few things:

1)  I didn't find a wire confirmation for the 4/4/2011 $29 million transfer. I did find reference to it in the CHIPS subpoena returns. It seems to show that it went from "Fondo Chino-Venezolano" to Stratus International Contracting (see attached two spreadsheets that show this). Garrett – do you know if we have a wire confirmation for that transfer?

2)  I noticed that the wire confirmations don't generally show the U.S. intermediary bank on them. Is there other documentation I'm missing that has this information?

*All documents are saved here: \\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\###Trial\Documents\Payment Records and here: \\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\Evidence [INT]\Discovery\#5 - Subpoena Returns\To Produce.

Also – Garrett, I was thinking that if you don't already have the ability to remotely login to our network, we should have that set up! That way the file paths above wouldn't be useless to you.

Thanks!

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by

return email.



**COMMERZBANK**

NEW YORK BRANCH

Department of the Treasury
Office of Foreign Assets Control
1500 Pennsylvania Avenue NW
Washington DC 20220

Vinay Jepal
2 World Financial Center, New York, NY 10281-1050
Telephone (212) 266-7200
Fax (212) 266-7235
vinay.jepal@commerzbank.com

June 16, 2011

**Re: Information Sharing – Stratus International Contracting Company**

Dear Sir/Madam:

Commerzbank AG, New York Branch (CBNY) would like to share the following information with OFAC. On April 20, 2011 CBNY's AML transaction monitoring system generated an alert, which involved a transaction for USD 29,442,967.57 value April 4, 2011.

The transaction was originated by Banco Del Tesoro, CA Banco Universal Caracas for its client BT / Fideicomiso / Fondo Chino Venezolano in Caracas, Venezuela. The beneficiary of the payment was Stratus International Contracting Company ("Stratus"), a client of Hyposwiss Privatbank AG, Zurich.

As per standard procedure, CBNY initiated a request for information to the remitting bank Banco Del Tesoro, CA Banco Universal Caracas, Venezuela to obtain details on both entities and their relationship. In the interim, CBNY conducted further due diligence and noted the following regarding Stratus from its website:

- Stratus was founded in 1978 in Tehran, Iran
- Stratus International specializes in providing contracting services to infrastructure projects such as roads, railways, dams, tunnels, airports and buildings.
- Stratus is presently working on a 7000 Apartment Unit "New Ojeda" Housing Development Project in Venezuela

On May 12, 2011, CBNY received a response from the bank in Caracas indicating the following:

- Stratus's physical address is Gardenya Plaza 5, K:3 D:3 (Floor 3, Suite3) 34758 Atasehir, Istanbul, Turkey
- Stratus is registered in Istanbul, Turkey (copy of the registration attached)
- Stratus provides construction services in Turkey, Dubai and Venezuela
- The purpose of the payment is for the construction of a 7000 apartment unit project "Proyecto Urbanismo Nueva Ciudad Fabricio Ojeda, in Cuidad Ojeda, Estado Zuila, Venezuela (same address as listed on Stratus' website)

Although Stratus is not listed as an SDN, and the payment does not indicate any direct involvement of Iran or with Iran, due to conflicting information between the website and the response forwarded by the bank in Caracas, CBNY believes it appropriate to share this information with OFAC since Stratus may be an Iranian Company.

Chairman of the Supervisory Board: Klaus-Peter Müller
Board of Managing Directors: Martin Blessing (Chairman),
Frank Annuscheit, Markus Beumer, Achim Kassow, Jochen Klösges,
Michael Reuther, Stefan Schmittmann, Ulrich Sieber, Eric Strutz, Martin Zielke

Commerzbank Aktiengesellschaft, Frankfurt am Main
Registered Office: Frankfurt am Main Reg.No. 32000
VAT No. DE 114 103 514



**COMMERZBANK**

NEW YORK BRANCH

**Re: Information Sharing – Stratus International Contracting Company– Page 2**

We have added Stratus into our sanctions filter to monitor any future payments.  Please note that apart from this transaction, there have not been any other payments involving Stratus processed by CBNY to date.

The purpose of this letter is to report the good faith efforts of Commerzbank AG, New York Branch in complying with applicable OFAC requirements and voluntarily informing OFAC of any information received during its investigation into possible sanctions-related entities.

Should you have any further questions concerning this matter, please do not hesitate to contact the signatories below.

Respectfully,

Commerzbank AG
New York Branch

Deepa Keswani
Head of AML/Anti-Fraud/Sanctions Compliance

Vinay Jepal
Sanctions Compliance Officer

Encls.

```
                              stratus intl payment

      :LT Address                 :COBAUS3XA
      :transaction type           :202 COVER bank tfr favour 3rd bank
      :input from                 :COBADEFF
                                  COMMERZBANK AG FRANKFURT
                                  HEAD OFFICE
                                  32-36 NEUE MAINZERSTRASSE
                                  60261 FRANKFURT GERMANY
      :Validation Flag            :COV}
-----------------------------------------------------------------------
{4: Text block:
      :20 /transaction reference number :FAAS109400150500
      :21 /related reference      :FAAS109400150500
      :32A/value date             :040411 USD 29,442,967.57
      :52A/ordering institution - BIC   :COBADEFF
                                  COMMERZBANK AG
                                  FRANKFURT AM MAIN
      :57A/account with inst - BIC      :CHASUS33
                                  JPMORGAN CHASE BANK, N.A.
                                  NEW YORK,NY
      :58A/beneficiary inst - BIC       :SHHBCHZZ
                                  HYPOSWISS PRIVATBANK AG, ZURICH
                                  ZURICH
      :50K/ordering customer      :/400887746602USD
                                  BT/ FIDEICOMISO / FONDO CHINO
                                  VENEZOLANO. AV GUICAIPURO. URB EL
                                  ROSAL. TORRE BANCO DEL TESORO.
                                  CARACAS - VENEZUELA.
      :52A/ordering institution - BIC   :BDTEVECA
                                  BANCO DEL TESORO, C.A. BANCO
                                   UNIVERSAL
                                   CARACAS
      :59 /beneficiary customer   :/CH7708530519663100203
                                  STRATUS INTERNATIONAL CONTRACTING
                                  J.S.
      :70 /details of payment     :REF: DESEMBOLSO NRO. 386 FONDO
                                  CHINO VENEZOLANO. CODIGO NRO.
                                  00579.
      :33B/amount                 :USD 29,442,967.57}
-----------------------------------------------------------------------
  Entry    :        /SWIFT/ Date:110404 Time:02:44:17
                    Info:1111/001781
```





STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

STRATUS is an Engineering, Construction, Management and Contracting Company by specializing in the field of Building Construction, Road Works and Water Works.
STRATUS is Graded in three major categories: Read more...

*Road & Railway*



STRATUS has succeeded to recieve ISO 9001-2000 certificate for Quality Management System from MIC registered under UKAS, United Kingdom from 2004 which upgraded recently to ISO 9001-2008 in 2010 and intending to extend it by OHSAS 18001:2007.  Read more...

*Dam*



Our memberships:
  • Federation of Contractors of Islamic Countries (F.C.I.C.)
  • Pakistan Engineering Council
  • International Chamber of Commerce (I.C.C.)
  • Iran – UK Chamber of Commerce
  • Iran – Canada Chamber of Commerce    Read more...

*Building*



Copyright © 2010 Stratus Group Company. All rights reserved



فارسی | Staff Login | Site Map | Hom



STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

**Contact Us**

**STRATUS International Contracting Co.**

Address: **No.35, Golestan St., Iran Zamin Ave., Shahrake Ghods, Tehran, Iran.**

Postal Code: **1465865187**

Tell: **(98) 21 8837 3100-6**

Fax: **(98) 21 8808 2882**

E-mail: **stratus@stratusgc.com**

Copyright © 2010 Stratus Group Company. All rights reserved



STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.



**Branch Offices**

| **Middle East** | **CIS** | **South America** |
|---|---|---|
| **Iran** | Kazakhstan | Venezuela |
| Iraq | | |

Copyright © 2010 Stratus Group Company. All rights reserved

Sister Companies List





STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran, with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

## Sister  Companies  List

 1.Samaneh Stratus (INVESTMENT CO.)

 2.Iran Construction Investment Co.

 3.Eghtesad - Novin Bank

4.Pishgaman Bazar Novin (BROKERAGE CO.)

 5.Novin Insurance Co.

 6.Pars Shahr Co.

 7.Global Petro Tech CO.

 8.Keyhan Tabadol Co.

 9.Pars Hanza Aluminium CO.

 10.Azarbaijan Industry Development Co.

11.Eghtesad Novin Investment CO.

 12.Samaneh Gostar Novin

Sister Companies List

Copyright © 2010 Stratus Group Company. All rights reserved





STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran, with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.

### 7000 Units 'New Ojeda' Housing Development Project

| | |
|---|---|
| Main Technical Features | Site Gross Area : 318 Hec.<br>Concrete works : 520,000 m³<br>Net Construction Area : 850.000 m²<br>Water & Sewage network : 150 Km<br>Electrical network : 200 Km<br>Communication network : 220 Km<br>Gas network : 30 Km |
| Location | Ciudad Ojeda, Zulia State, Venezuela |
| Employer | Ducolsa 'Urban Development S.A' |
| Contract Duration | 48 Months |
| Date of Award | September 2009 |
| Status | [ Under Construction ] |

 

[Back to list]

Copyright © 2010 Stratus Group Company. All rights reserved



STRATUS International Contracting Company has been founded in 1978 in Tehran, Iran,with registered paid up share capital of Rls 100 billions. STRATUS provides contracting services to infrastructure projects such as Roads, Railways, Dams, Tunnels, Airports and Buildings. Since 1994, STRATUS has been the first pioneered company in exporting Engineering and Technical Services in Iran and received **"Exemplary Exporters"** of the year 1999 from his excellency Mr.president.





**Dalbandin – Nokkundi Highway - Section III-B**          Details >>

**Socotra Airport**          Details >>

**Design & Construction of Parliament Building & Commercial Center in Djibouti City**          Details >>

**7000 Units "New Ojeda" Housing Development Project**          Details >>

Copyright © 2010 Stratus Group Company. All rights reserved

T.C.
İ S T A N B U L
Ticaret Sicil Memurluğu

## S İ C İ L    T A S D İ K N A M E S İ

| | |
|---|---|
| Ticaret Ünvanı | STRATUS INTERNATIONAL CONTRACTING İNŞAAT VE TAAHHÜT ANONİM ŞİRKETİ |
| Sicil No. | 751671 |
| Tescil Tarihi | 22 / 10 / 2010 |
| İşletme Merkezinin Adresi (Şubenin tescilinde şubenin Adresi ile beraber merkezin adresi de yazılır.) | GARDENYA PLAZA 5 K.3 D.3 ATAŞEHİR |
| İşletmenin uğraştığı işler | Ana sözleşmesinde yazılı olan işler |
| İşletme sahibinin hüviyeti (Hükmi şahıslarda. hükmi şahsın mahiyeti) | Anonim |
| İşletme temsilcileri | 38824643592 TC.No.lu CELAL TATLICIBAŞI |
| Tasdiknamenin düzenlenme Tarih ve Sayısı | 22 EKİM   2010 -  39185 |

RECAİ SÖKMEN
İSTANBUL TİCARET SİCİLİ
MEMURU YARDIMCISI

# EXHIBIT 78

**From:** Krouse, Michael (USANYS)
**To:** Bove, Emil (USANYS); Crowley, Shawn (USANYS)
**Subject:** FW:
**Date:** Monday, March 09, 2020 6:32:40 PM
**Attachments:** 00206BBA05AF200309182049.pdf
Draft declaration (Lynch).docx

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Monday, March 9, 2020 6:23 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:**

Draft declaration and related docs attached.

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.



**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000

**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

August 31, 2015

<u>VIA CERTIFIED MAIL</u>
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: <u>Investigation No. M2013-00223036</u>

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015.** In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@dany.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

<u>**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**</u>

Please note that *electronic copies are preferred.* If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | BUSINESS RECORDS AFFIDAVIT |
| -against- | STATE OF NEW YORK |
| John Doe, | COUNTY OF NEW YORK |
| Defendant. | M2013-00223036 |

I _____, declare that I am a duly authorized custodian of the records, or other employee or agent, of _____ (*name of business*), and am familiar with the record keeping practices of _____ (*name of business*). I make this affidavit pursuant to New York State Criminal Procedure Law Section 190.30(8).

Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account number _____. These pages contain the following types of records [*list or description of records*]:

_____    _____

_____    _____

I am familiar with the above-described records. These records were made in the regular course of business, and it was the regular course of such business to make and keep these records. The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter. The person who made these records was under a business duty to do so accurately.

*False statements made herein are punishable as a Class A misdemeanor pursuant to P.L. § 210.45.*

X _____

Signature (Deponent)          Date

# SUBPOENA
### (Duces Tecum)
### FOR A WITNESS TO ATTEND THE
### GRAND JURY

In the Name of the People of the State of New York

#### To: Commerzbank AG

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, as a witness in a Grand Jury investigation:

**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

### SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

**YOU ARE ORDERED not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.**

Dated in the County of New York,
August 31, 2015

So Ordered:

CYRUS R. VANCE, JR.
**District Attorney, New York County**

_____
Justice of the Supreme Court
State of New York

By: _____
Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

HON. ABRAHAM L. CLOTT
PT. 1 AUG 3 1 2015

**Note:** In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to ThomasM@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

*Case No.: M2013-00223036*

## EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015

ITEMS TO BE PRODUCED are those in the actual and constructive possession of ~~Citibank, N.A.~~ *Commerzbank AG* and all entities, agents, officers, employees, officials, over which it has control, including its subsidiaries:

*MJT TND*
*Sep. 15, 2015*

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spartrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.,** including, but not limited to, the following wire transfer information:

1. <u>Possible Originating Bank:</u> Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. <u>Possible Beneficiary Bank:</u> Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. <u>Possible Account Number:</u> IBAN CH7708530519663100203
4. <u>Possible CHIPS System Sequence Number:</u> 0262787
5. <u>Possible Credit/Debit Reference Number:</u> FAAS109400150500
6. <u>Possible Transaction Reference Number:</u> 5111500094FC
7. <u>Possible Transaction Date:</u> 4/4/2011
8. <u>Possible Amount:</u> USD $29,442,967.57

## DEFINITIONS AND INSTRUCTIONS

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities; (ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership; (iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Thursday, May 19, 2016 11:22 AM |
| **To:** | Conroy, Christopher |
| **Subject:** | FYI |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Monday, August 1, 2016 12:36 PM |
| **To:** | 'Michael.Dondarski@treasury.gov' |
| **Subject:** | Request |

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons.  We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland.  Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Wednesday, August 3, 2016 9:26 AM |
| **To:** | Hochhauser, Rachel; Maloney, Christina |
| **Subject:** | FW: Request |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| | Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10th) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

1

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Rosanna.Wells@treasury.gov |
| **Sent:** | Monday, August 8, 2016 9:08 AM |
| **To:** | Lynch, Garrett |
| **Cc:** | Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov |
| **Subject:** | RE: Thanks |

Thanks Garrett. I'm looping in the two OFAC Enforcement Officers who were on the call.

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Friday, September 22, 2017 5:44 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov |
| **Subject:** | RE: Case |

Garrett,

It was great speaking with you all yesterday, and thanks for passing along the information below/attached. We'll take a look and will get back to you. And thanks for the well wishes!

Have a great weekend,

Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

---

**From:**        Michael.Dondarski@treasury.gov
**Sent:**        Wednesday, September 20, 2017 4:08 PM
**To:**          Lynch, Garrett
**Subject:**     RE: Call

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now.  Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above.  I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there.  Would you be able to do a call tomorrow or Friday?  Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here. Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation! Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards. Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00. Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir! No worries – I know how slammed you all are. I'm leaving on Vacation on Wednesday, so does early in the week work? My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30. It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski). I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting. Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike! I'm very happy for you and Rachel – join the club! You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though...

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory. Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir. I hope this email finds you well and that you've been enjoying the summer with the family. I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail. I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up. Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY. What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir! I hope the summer is treating you well so far in the swamp. If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland. We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA. It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis. We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Tuesday, September 26, 2017 4:00 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov |
| **Subject:** | RE: Case |

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Thursday, March 28, 2019 11:34 AM |
| **To:** | Lynch, Garrett |
| **Subject:** | CSE TransTel |
| **Attachments:** | 20170727_transtel_web post.pdf; transtel_settlement.pdf |

| | |
|---|---|
| **Importance:** | High |

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company.  The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A. These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at www.treasury.gov/ofac/enforcement.**

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.** CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case. Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters. TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

---

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. See 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd ... hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran. TransTel initiated the wire transfers from its account with the Bank. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, please see the Settlement Agreement between OFAC and CSE Global and TransTel here.

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A.  OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology.  When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



DEPARTMENT OF THE TREASURY

WASHINGTON, D.C. 20220

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I.  PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others. OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector. At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II.  RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

---

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation. Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341. *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

ENF 41441
**CSE Global Limited and CSE TransTel Pte. Ltd.**

## III.    FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company).  At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List").  The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.  CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes.  All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank").  Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List.  On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions."  Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.
[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

END (fix)

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.  The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States.  None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran.  (*See* attached Penalty Calculation Spreadsheet).  These transactions were processed through the United States and caused multiple financial institutions— including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran.  TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran.  As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "...unlawful for a person to violate...or cause a violation of any...regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction ... [that] causes a violation of ... any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case.  Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

**IV.    Terms of Settlement**

OFAC and Respondent agree as follows:

1.  In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2.  In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

    A.  Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

        (i) sign, date, and mail an original signed copy of this Agreement to: ███
        ███████████, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220.  Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

        (ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**.  Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**.  Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

    B.  To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

    C.  That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured.  In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

---

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

4

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

5

ENF 41441
CSE Global Limited and CSE TransTel Pte. Ltd.

Respondent accepts the terms of this Settlement Agreement this 15 day of July, 2017.

_____
Signature

LIM  BOON  KHENG
Respondent's Printed Name (or in the case of an
entity, the name of Respondent's Duly Authorized
Representative)

DIRECTOR  CSE TransTel Pte Ltd &
DIRECTOR CSE GLOBAL LIMITED
Printed Title of Respondent's Duly Authorized
Representative and Name of Entity (if applicable)

☒   Please check this box if you have not enclosed payment with this Agreement and will
      instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the
      Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: July 19, 2017        John Smith
                           John E. Smith
                           Director
                           Office of Foreign Assets Control

Enclosure

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | DECLARATION |
| ALI SADR HASHEMI NEJAD, | 18 CR 224 (ALC) |
| Defendant. | |

    I, GARRETT A. LYNCH, pursuant to Title 28, United States Code, Section 1746, declare under penalty of perjury:

    1.  I am an attorney admitted to the bar of the State of New York, and an Assistant District Attorney in the New York County District Attorney's Office ("DANY"), as well as a Special Assistant United States Attorney for the Southern District of New York responsible for this matter.

    2.  In January 2012, at DANY, I was assigned to work on an investigation into Commerzbank, A.G., a German bank under investigation by DANY, the United States Department of Justice ("DOJ"), and multiple regulatory agencies since January 2011 related to violations of U.S. sanctions laws and regulations during the period 2002 through 2007.

    3.  During the course of that investigation, DANY received voluminous record from Commerzbank, include records related to voluntary disclosures made by the Commerzbank branch in New York the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") during the course of the investigation (but unrelated to the historical conduct under investigation).  In total, DANY received approximately 215 pages related to approximately 15

such disclosures, with dates ranging between March 2010 and October 2014.  I reviewed these disclosures during the course of the Commerzbank investigation.

4.       The Government exhibit in this case marked GX 411, dated June 16, 2011, was included in the approximately 215 pages of disclosures produced by Commerzbank in that investigation.  I reviewed these productions at or about the time that I received them.

5.       The DANY and DOJ investigation into Commerzbank was resolved in March 2015 when Commerzbank entered into deferred prosecution agreements with DANY and DOJ.

6.       I was first assigned to work on the DANY investigation related to the defendant, Ali Sadr Hashemi Nejad, in May 2015.

7.       On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch seeking records related to a specific U.S. dollar transaction, as well as any wire transfer records related several entities involved in this case (e.g., Fondo Chino, PDVSA, Stratus International Contracting, J.S., Stratus Global Investments, and Clarity Trade and Finace).  DANY received records in response to that subpoena in October 2015.  Ex. A.

8.       On or about May 19, 2016, I had a conversation with a supervisory enforcement officer at OFAC with whom I had dealt on past cases involving U.S. sanctions laws and regulations.  During the course of that call, I outlined the general facts of the case to get this individual's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  He confirmed that the scenario I outlined would constitute a violation.  Ex. B.

9.       On or about August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, I emailed the same OFAC supervisor to (a) line up an OFAC

witness for possible grand jury testimony, and (2) to offer the information to OFAC for their own enforcement purposes.  The OFAC supervisor responded by offering to put DANY in touch with an enforcement officer, and he copied his management team.  Ex. C.

10.     On or about August 5, 2016, I had a telephone call with an OFAC enforcement officer in which I briefed her on the general facts of the case. Ex. D.

11.     On September 22, 2017, after my appointment as a Special Assistant United States Attorney in June 2017, I had another call with the OFAC supervisor while preparing to present the case to a federal grand jury, in which I outlined the facts of the case again for purposes of getting OFAC's thoughts on the proposed federal charges.  Following the call, I sent him a PowerPoint presentation outlining the case.  Ex. E.

12.      On September 26, 2017, I received an email from the OFAC supervisor on which he copied two enforcement officers with whom the prosecution team could follow up with any questions.  Ex. F.

13.     Later, on March 28, 2019, after an unrelated phone call with the OFAC supervisor in which the status of the instant criminal case was raised, he email me two documents related to a public enforcement action OFAC had taken with a fact pattern he believed to be similar to this case based upon our discussions.  Ex. G.

14.     I have no further records reflecting communications about this case with OFAC.

15.     During the course of above-described emails and phone calls, I provided OFAC with information about the investigation in an effort to get OFAC's views about the general facts to further our own criminal case. I never inquired or learned whether OFAC took any independent steps to investigate any of the entities, individuals, or banks involved in this case as a

result of the information we had shared with OFAC, or whether OFAC had conducted any investigations (or, conversely, had declined to do so) related to information it had independently obtained in the past related to any of the relevant individuals and entities.  Further, during the course of the above-described phone calls and conversations, I never discussed the document (or information) contained in GX 411 with anyone at OFAC, nor did I learn what action, if any, OFAC took (or didn't take) in response to receiving that document.

16.     Later, in preparation for trial, in an effort to uncover any document possibly relevant to the case, I searched a file in my office containing records received from Commerzbank during the course of the separate investigation into Commerzbank which had concluded in March 2015 and identified the document later marked as GX 411, which I emailed to other members of the prosecution team at the U.S. Attorney's Office on January 20, 2020.

17.     In response to the Court's Order of March 9, 2020, I and other supervisory members of my bureau contacted all five Assistant District Attorneys who worked on the case during the course of DANY's investigation, four of whom no longer work at the office.  Two of the five stated that they never had any contact with OFAC during their time on the investigation, and three of the five stated that they have no recollection of speaking to anyone from OFAC, beyond possible scheduling matters when DANY was preparing to present the case to a New York State grand jury in 2016.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing information is true and correct.

Dated:     New York, New York
           March 9, 2020

_____
Garrett A. Lynch
Special Assistant United States Attorney

# EXHIBIT 79

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **To:** | Bove, Emil (USANYS); Krouse, Michael (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | RE: |
| **Date:** | Monday, March 09, 2020 6:47:58 PM |

We just emailed and called. Will keep you posted.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 6:47 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Crowley, Shawn (USANYS)
<SCrowley@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** RE:

Makes sense to give Matt a call. Thanks guys.

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 6:45 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>;
Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** RE:

Garrett says he can't find the sent email. So doesn't know exactly which powerpoint was sent.
Laroche is on the email, though, so maybe he has it.

**From:** Krouse, Michael (USANYS)
**Sent:** Monday, March 9, 2020 6:43 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Emil J. .Bove (Emil.Bove@usdoj.gov)
<Emil.Bove@usdoj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** FW:

Email on page 15 references the powerpoint. We don't have the powerpoint included. Asking
Garrett now.

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Monday, March 9, 2020 6:23 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:**

Draft declaration and related docs attached.
Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential
information from the New York County District Attorney's Office and are intended solely for
the use of the individuals or entity to whom it has been addressed. If you are not the intended
recipient, you are hereby notified that any dissemination or copying of this email is strictly
prohibited. If you have received this email in error, please delete it and notify the sender by

return email.

# EXHIBIT 80

**From:**       Kim, Jane (USANYS) 4
**To:**         Bove, Emil (USANYS); Crowley, Shawn (USANYS)
**Cc:**         Krouse, Michael (USANYS)
**Subject:**    FW: Case
**Date:**       Monday, March 09, 2020 7:01:22 PM
**Attachments:** 2017.01.20 SDNY VZ Housing PowerPoint.PPTX

---

**From:** Laroche, Matthew (USANYS) <MLaroche@usa.doj.gov>
**Sent:** Monday, March 9, 2020 7:00 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** FW: Case

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** 'Michael.Dondarski@treasury.gov' <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <MLaroche@usa.doj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday.  As always, great to chat with you.  Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence.  Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend.  Who know…maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Venezuela Housing Case

1

I.    Introduction

II.   USD Payments

III.  Potential Charges

IV.   Company Structure

V.    Individuals

VI.   Proof of Payment

VII.  Knowledge of Sanctions/Efforts to Hide Iranian Connection

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

3

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013

- Total amount cleared: **$115,508,527.28**

- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

4

# EVIDENCE

- Emails (mostly from the Iranian side of the "Project")

- Payment records (SWIFT messages and wires)

- Bank account records (limited)

- 2 possible fact witnesses (significant availability issues with both)

- Expert testimony (from banks, FED, and OFAC)

# IV. Company Structure



**PDVSA**
**(Venezuela state-owned oil company)**

**Payments made to Clarity and Stratus, Turkey via PDVSA account(s)**

**Stratus, Iran**
**Established in 1978 by Mohammad Sadr**
**Leading Iranian Contracting Co.**

**DUCOLSA**
**Venezuelan Housing Fund**

**Contract between DUCOLSA and IIHCO, Iran signed 7/2/2007**

**IIHCO, Iran**
**Incorporated 12/27/2006**

**Contract between DUCOLSA and IIHCO, Venezuela signed 7/2/2007**

**IIHCO, Venezuela**
**Incorporated 2/2007**
**Branch Office of IIHC, Iran**

**Subcontract Agreement between IIHCO, Venezuela and Stratus, Turkey 2/2/2012**

**Stratus Intl Contracting aka Straturk, Turkey**
**(Ali Sadr, chairman)**
**Incorporated 9/22/2010**

**Finance Management Contract between IIHCO, Venezuela, Stratus Turkey, Clarity, and Stratus Global 2/1/2011**

**Clarity Trade & Finance**
**Incorporated 3/19/2010**
**Serves as the "Administrator" for IIHCO, Venezuela and Stratus, Turkey by being the designated recipient of funds**

**Stratus Global Investments**
**Incorporated 2/3/2009**
**Serves as the "investment agent" for IIHCO, Venezuela and Stratus, Turkey.**

6

# Stratus International Contracting ("Stratus")

- Established in 1978 in Tehran, Iran by **Mohammad SADR**

- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007

- Builds infrastructure projects in and outside of Iran

- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)

- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

7

- Stratus establishes a new subsidiary (IIHC) and a "Venezuela Project Executive Committee" in 2009 to manage and oversee the execution of the project in Venezuela.

- Committee members over time include:
  - **Mohammad SADR** (Chairman)
  - **Ali SADR**
  - **Behrooz ZANGENEH**
  - **Ahmad SAFAVARDI**
  - **Bahram KARIMI**
  - **Mustafa CETINEL**
  - **Ekrem CINAR**

8



9

# V. Individuals

**Venezuela Committee (Iran)**
Chairman: **Mohammad SADR**
Members: **Bahram KARIMI, Farshid KAZERANI,  Ali SADR;   Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR;  Ahmad SAFAVARDI**i

**Hussein TEHRANI (Iran)**
Chairman/CEO/President of IIHC

**Farshid KAZERANI (Iran)**
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting

**Mustafa CETINEL (Istanbul/VE)**
Project Director

**Behrooz ZANGENEH (Iran)**
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC

**Ekrem CINAR (Turkey)**
Vice Project Manager

**Bahram KARIMI (Iran/VE)**
Project Manager

**Ahmad SAFAVARDI (US/VE)**
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US

**Numerous Iranian IIHCO employees in VE**

**\*Parentheticals indicate where people were physically located at relevant time period**

10

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information "as requested:"**

**Subject:** USD Account
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Thu, 30 Dec 2010 17:39:59 –0500
**To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>

Salam,

Please find attached the USD account information as requested.

Best regards

Intermediary Bank:  JPMORGAN CHASE BANK (New York, New York)
SWIFT CODE: CHASUS33
Banking Code: FED ABA 02100021

Bank of Beneficiary:  HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
SWIFT Code: SHHBCHZZ
(USD)Account No: 5196631203
IBAN: CH7708530519663100203

Beneficiary:  Stratus International Contracting J.S.
Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

11

**Instruction Letter and payment for IPC 11-13:**

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|---|---|---|---|---|---|---|---|
| 7/5/2011 | $ 20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hyposwiss Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |



**ZANGENEH** signature

# Wire Sheet

Transaction Details for TRN: 3251400186fs          Region: US

| | |
|---|---|
| **Instruction Date:** | 7/5/2011 |
| **Payment Date:** | 7/5/2011 |
| **Transaction Amount:** | $20,692,579.48 |
| Transaction Type: | BT |
| Customer Swift ID: | SHHBCHZZ |
| Debit Fin Entity: | 01 |
| Credit Fin Entity: | 01 |
| Credit Reference: | OOE9996A000394 |
| Debit Reference: | OOE9996A000394 |
| Sender's ID: | SWF/BESCPTPLOSF |
| Bene Flag: | B |
| **Order Party:** | /PT50000709030009508180330 |
| | 1/PETROLEOS DE VENEZUELA SA |
| | 2/AV LIBERTADOR ED PETROLEOA VANEZU |
| | 2/TORRE ESTA LA CAMPIA CARACAS |
| | 3/VE/VENEZUELA |
| **Debit Party:** | 00000011728748 |
| | BES SFE FUNCHALOFFSHORE MADEIRA |
| | DPC – SERVICO RECONCILIACAO |
| | BANCARIA |
| | LISBON PORTUGAL 1250--142 |
| Details of Payment: | 1590011835 |
| **Credit Party:** | 00000011835873 |
| | HYPOSWISS PRIVATBANK AG |
| | BAHNHOFSTRASSE/SCHUETZENGASSE 4 |
| | POSTFACH 3180 |
| | ZURICH SWITZERLAND 8021 - |
| Account Party: | SHHBCHZZ |
| **Bene:** | /CH8008530518206100203 |
| | CLARITY TRADE AND FINANCE S A |

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR

IPC 11-12-13

## HYPOSWISS
### PRIVATE BANK

Hyposwiss Private Bank Ltd.
Stauffacherstrasse 41
8004 Zürich
Phone +41 (0)44 214 31 11
Fax +41 (0)44 211 52 23
www.hyposwiss.com
BIC SHHBCHZZ

Your contact person:
Urs Schneider
Direct +41 (0)44 214 31 94
urs.schneider@hyposwiss.ch

Zurich, July 5, 2011
Reference number: 51805412

**Clarity Trade & Finance SA**
Current account USD 5182061.203
Custody account no.  5182061.01
IBAN CH80 0853 0518 2061 0020 3

Sent electronically
Clarity Trade & Finance SA
c/o Kessler Wassmer Giacomini & Partner
Wächlenstrasse 5
8832 Wollerau

## Credit advice

On July 5, 2011 we booked the following payment

|  | | Currency | Amount |
|---|---|---|---|
| Ordered by | 1/PETROLEOS DE VENEZUELA SA 2/AV LIBERTADOR ED PETROLEOA VANEZU 2/TORRE ESTA LA CAMPIA   CARACAS 3/VE/VENEZUELA | | |
| Reference | 1590011835 | | |
| Original Amount | USD 20'692'579.48 | | |
| Amount | | USD | 20'692'579.48 |
| To your credit | Value date July 5, 2011 | USD | 20'692'579.48 |

14

# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

15

# VII. <u>Knowledge of Sanctions/Efforts to Hide Iranian Connection</u>

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR's** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

16

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

**Subject:** Re: Conference Call with Mercantil Valores Uruguay
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Fri, 16 Jul 2010 12:06:04 -0400
**To:** HBM Funds – Alwin de Jongh <alwin.dejongh@hbmgroup.com>
**CC:** HBM Funds – Herman Oosten <Herman.Oosten@hbmgroup.com>

Dear Alwin.

NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.

The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.

Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.

Hope this helps.

17

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

<mark>There's no Iranian behind any of the accounts provided.
This is a simple answer.</mark>

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:
Salam
I tried call you several time but could not reach you. please call me urgently.
<mark>Client asked if the owner of the account in the intermmidate bank is Iranian?</mark>

Bahram karimi
Project Manager

18

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

19

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

Subject: Fwd: Payment USD 6'000
From: Linet Estiroti <linet.estiroti@perseswiss.ch>
Date: Thu, 3 Jul 2014 19:41:34 +0300
To: Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual.  Please advise what to do. Regards, Linet Estiroti

20

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards

Sent from my BlackBerry® Smartphone supplied by Swisscom

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

Furher to our conversation in Istanbul I suggest two names for the change as follows:

1. International Industrial Housing Company

2.International Iron Housing Company

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

21

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGANEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 –0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

22

# EXHIBIT 81

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **To:** | Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor] |
| **Cc:** | Bove, Emil (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | Email - if anyone has revisions |
| **Date:** | Monday, March 09, 2020 7:19:24 PM |
| **Attachments:** | 2020.03.09 Government Production.pdf |

Counsel:

Attached are all of the email communications with OFAC about this case that SAUSA Lynch found today.  The PowerPoint attached at the end of this PDF was attached to SAUSA Lynch's email on Page 15 of the PDF.  Please see, in particular, Pages 7 and 15.  We will describe these materials in our letter to the Court this evening, but we are producing all of it to you now.

Also, we agree to the stipulation you presented to the Court this afternoon.  If you'd like to discuss any of the attached or revisions to the stipulation, we are available any time.

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone:  (212) 637-2038
Email:  jane.kim@usdoj.gov

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

August 31, 2015

**VIA CERTIFIED MAIL**
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: Investigation No. M2013-00223036

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015.** In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@dany.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**

Please note that *electronic copies are preferred.* If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Doe,

                            Defendant.

BUSINESS RECORDS AFFIDAVIT

STATE OF NEW YORK
COUNTY OF NEW YORK

M2013-00223036

     I _____ _____, declare that I am a duly authorized custodian of the records, or other employee or agent, of _____ (*name of business*), and am familiar with the record keeping practices of _____ (*name of business*). I make this affidavit pursuant to New York State Criminal Procedure Law Section 190.30(8).

     Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account number _____. These pages contain the following types of records [*list or description of records*]:

_____     _____

_____     _____

_____     _____

I am familiar with the above-described records.  These records were made in the regular course of business, and it was the regular course of such business to make and keep these records.  The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter.  The person who made these records was under a business duty to do so accurately.

                  *False statements made herein are punishable as a Class A misdemeanor pursuant to P.L. § 210.45.*

X _____

        Signature (Deponent)             Date

# SUBPOENA

(Duces Tecum)

FOR A WITNESS TO ATTEND THE

## GRAND JURY

In the Name of the People of the State of New York

### To: Commerzbank AG

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, **as a witness in a Grand Jury investigation:**

<u>**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**</u>

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

### SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

<u>**YOU ARE ORDERED** not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.</u>

Dated in the County of New York,
August 31, 2015

So Ordered:

CYRUS R. VANCE, JR.
**District Attorney, New York County**

_____
Justice of the Supreme Court
State of New York

By: _____
Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

PT. 1 AUG 3 1 2015
HON. ABRAHAM L. CLOTT

**Note:** In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to ThomasM@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

*Case No.: M2013-00223036*

## EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015

ITEMS TO BE PRODUCED are those in the actual and constructive possession of ~~Citibank, N.A.~~ *Commerzbank AG*
and all entities, agents, officers, employees, officials, over which it has control, including its
subsidiaries:

*MJT [initials]*

*Sep. 15, 2015*

For the time period of January 1, 2010 through the present (date of this subpoena), provide
electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating
from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano
(aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global
Investments Ltd., Clarity Trade and Finance S.A., Spartrise Holding GmbH, Petroleosa de
Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the
following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ
   (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

## DEFINITIONS AND INSTRUCTIONS

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth
below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities;
(ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership;
(iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same
signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be
construed as is necessary in each case to make the request to produce inclusive rather than exclusive,
and are intended to convey, as appropriate in context, the concepts of comprising, respecting,
referring to, embodying, evidencing, connected with, commenting on, responding to, showing,
refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning,
defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called
for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make
each request to produce inclusive rather than exclusive.

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Thursday, May 19, 2016 11:22 AM |
| **To:** | Conroy, Christopher |
| **Subject:** | FYI |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

1

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Monday, August 1, 2016 12:36 PM |
| **To:** | 'Michael.Dondarski@treasury.gov' |
| **Subject:** | Request |

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons.  We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland.  Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Wednesday, August 3, 2016 9:26 AM |
| **To:** | Hochhauser, Rachel; Maloney, Christina |
| **Subject:** | FW: Request |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| | Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10ᵗʰ) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

1

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Rosanna.Wells@treasury.gov |
| **Sent:** | Monday, August 8, 2016 9:08 AM |
| **To:** | Lynch, Garrett |
| **Cc:** | Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov |
| **Subject:** | RE: Thanks |

Thanks Garrett.  I'm looping in the two OFAC Enforcement Officers who were on the call.

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

## Lynch, Garrett

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Friday, September 22, 2017 5:44 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov |
| **Subject:** | RE: Case |

Garrett,

It was great speaking with you all yesterday, and thanks for passing along the information below/attached. We'll take a look and will get back to you. And thanks for the well wishes!

Have a great weekend,

Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Wednesday, September 20, 2017 4:08 PM |
| **To:** | Lynch, Garrett |
| **Subject:** | RE: Call |

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now.  Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above.  I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there.  Would you be able to do a call tomorrow or Friday?  Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here. Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation!  Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards.  Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00.  Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir!  No worries – I know how slammed you all are.  I'm leaving on Vacation on Wednesday, so does early in the week work?  My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30.  It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski).  I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting.  Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike!  I'm very happy for you and Rachel – join the club!  You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though...

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory.  Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

2

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir. I hope this email finds you well and that you've been enjoying the summer with the family. I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail. I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up. Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY. What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir! I hope the summer is treating you well so far in the swamp. If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland. We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA. It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis. We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Tuesday, September 26, 2017 4:00 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov |
| **Subject:** | RE: Case |

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Thursday, March 28, 2019 11:34 AM |
| **To:** | Lynch, Garrett |
| **Subject:** | CSE TransTel |
| **Attachments:** | 20170727_transtel_web post.pdf; transtel_settlement.pdf |

**Importance:**     High

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company.  The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A. These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at www.treasury.gov/ofac/enforcement.**

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.** CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case. Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters. TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

---

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. See 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd ... hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran.  TransTel initiated the wire transfers from its account with the Bank.  The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, please see the Settlement Agreement between OFAC and CSE Global and TransTel here.

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A.  OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology.  When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I.   PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others.  OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector.  At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II.   RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

---

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation.  Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341.  *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety.  *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

ENF 41441
**CSE Global Limited and CSE TransTel Pte. Ltd.**

## III.     FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company). At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List"). The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders. CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes. All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List. On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions." Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.
[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran. (*See* attached Penalty Calculation Spreadsheet). These transactions were processed through the United States and caused multiple financial institutions— including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran. TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran. As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "...unlawful for a person to violate...or cause a violation of any...regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction ... [that] causes a violation of ... any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case. Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

**IV.    Terms of Settlement**

OFAC and Respondent agree as follows:

1. In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

3

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2.  In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

    A.  Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

        (i) sign, date, and mail an original signed copy of this Agreement to: ███
        █████████, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220. Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

        (ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**. Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**. Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

    B.  To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

    C.  That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

    Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured. In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

---

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Respondent accepts the terms of this Settlement Agreement this _15_ day of _July_ , 2017.

_[signature]_

Signature

LIM BOON KHENG

Respondent's Printed Name (or in the case of an
entity, the name of Respondent's Duly Authorized
Representative)

DIRECTOR CSE TransTel Pte Ltd &
DIRECTOR CSE GLOBAL LIMITED

Printed Title of Respondent's Duly Authorized
Representative and Name of Entity (if applicable)

☒    Please check this box if you have not enclosed payment with this Agreement and will
     instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the
     Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: _July 19, 2017_       _John Smith_

John E. Smith
Director
Office of Foreign Assets Control

Enclosure

6

# Venezuela Housing Case

I.    Introduction

II.   USD Payments

III.  Potential Charges

IV.   Company Structure

V.    Individuals

VI.   Proof of Payment

VII.  Knowledge of Sanctions/Efforts to Hide Iranian Connection

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

3

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013

- Total amount cleared: **$115,508,527.28**

- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

4

# EVIDENCE

- Emails (mostly from the Iranian side of the "Project")

- Payment records (SWIFT messages and wires)

- Bank account records (limited)

- 2 possible fact witnesses (significant availability issues with both)

- Expert testimony (from banks, FED, and OFAC)

# IV. <u>Company Structure</u>



6

# Stratus International Contracting ("Stratus")

- Established in 1978 in Tehran, Iran by **Mohammad SADR**

- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007

- Builds infrastructure projects in and outside of Iran

- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)

- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

7

- Stratus establishes a new subsidiary (IIHC) and a "Venezuela Project Executive Committee" in 2009 to manage and oversee the execution of the project in Venezuela.
- Committee members over time include:
  - **Mohammad SADR** (Chairman)
  - **Ali SADR**
  - **Behrooz ZANGENEH**
  - **Ahmad SAFAVARDI**
  - **Bahram KARIMI**
  - **Mustafa CETINEL**
  - **Ekrem CINAR**

# Iranian Int'l. Housing Co.





**This mass housing production project is constructed for 60,000 inhabitants in _an area of 318 hectares_ on the outskirts of Ojeda in Solia province.**

9

# V. Individuals

**Venezuela Committee (Iran)**
Chairman: **Mohammad SADR**
Members:  **Bahram KARIMI, Farshid KAZERANI,  Ali SADR;   Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR;  Ahmad SAFAVARDI**i

**Hussein TEHRANI (Iran)**
Chairman/CEO/President of IIHC

**Farshid KAZERANI (Iran)**
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting

**Mustafa CETINEL (Istanbul/VE)**
Project Director

**Behrooz ZANGENEH (Iran)**
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC

**Ekrem CINAR (Turkey)**
Vice Project Manager

**Bahram KARIMI (Iran/VE)**
Project Manager

**Ahmad SAFAVARDI (US/VE)**
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US

**Numerous Iranian IIHCO employees in VE**

**\*Parentheticals indicate where people were physically located at relevant time period**

10

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information "as requested:"**

> **Subject:** USD Account
> **From:** Ali Sadr <ali.sadr@stratus-global.com>
> **Date:** Thu, 30 Dec 2010 17:39:59 –0500
> **To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>
>
> Salam,
>
> Please find attached the USD account information as requested.
>
> Best regards

> Intermediary Bank:  JPMORGAN CHASE BANK (New York, New York)
> SWIFT CODE: CHASUS33
> Banking Code: FED ABA 02100021
>
>
> Bank of Beneficiary:  HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
> SWIFT Code: SHHBCHZZ
> (USD)Account No: 5196631203
> IBAN: CH7708530519663100203
>
>
> Beneficiary:  Stratus International Contracting J.S.
> Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

11

**Instruction Letter and payment for IPC 11-13:**

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|------|-----------|---------------|-----------|-----------|-----------|--------|-------------|
| 7/5/2011 | $   20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hyposwiss Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |



12

# Wire Sheet

**Transaction Details for TRN: 3251400186fs        Region: US**

| | |
|---|---|
| **Instruction Date:** | 7/5/2011 |
| **Payment Date:** | 7/5/2011 |
| **Transaction Amount:** | $20,692,579.48 |
| **Transaction Type:** | BT |
| **Customer Swift ID:** | SHHBCHZZ |
| **Debit Fin Entity:** | 01 |
| **Credit Fin Entity:** | 01 |
| **Credit Reference:** | OOE9996A000394 |
| **Debit Reference:** | OOE9996A000394 |
| **Sender's ID:** | SWF/BESCPTPLOSF |
| **Bene Flag:** | B |
| **Order Party:** | /PT50000709030009508180330 |
| | 1/PETROLEOS DE VENEZUELA SA |
| | 2/AV LIBERTADOR ED PETROLEOA VANEZU |
| | 2/TORRE ESTA LA CAMPIA CARACAS |
| | 3/VE/VENEZUELA |
| **Debit Party:** | 00000011728748 |
| | BES SFE FUNCHALOFFSHORE MADEIRA |
| | DPC - SERVICO RECONCILIACAO |
| | BANCARIA |
| | LISBON PORTUGAL 1250--142 |
| **Details of Payment:** | 1590011835 |
| **Credit Party:** | 00000011835873 |
| | HYPOSWISS PRIVATBANK AG |
| | BAHNHOFSTRASSE/SCHUETZENGASSE 4 |
| | POSTFACH 3180 |
| | ZURICH SWITZERLAND 8021 - |
| **Account Party:** | SHHBCHZZ |
| **Bene:** | /CH8008530518206100203 |
| | CLARITY TRADE AND FINANCE S A |

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR



# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

# VII. <u>Knowledge of Sanctions/Efforts to Hide Iranian Connection</u>

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR's** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

16

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

**Subject:** Re: Conference Call with Mercantil Valores Uruguay
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Fri, 16 Jul 2010 12:06:04 –0400
**To:** HBM Funds – Alwin de Jongh <alwin.dejongh@hbmgroup.com>
**CC:** HBM Funds – Herman Oosten <Herman.Oosten@hbmgroup.com>

Dear Alwin.

NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.

The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.

Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.

Hope this helps.

17

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

There's no Iranian behind any of the accounts provided.
This is a simple answer.

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:
Salam
I tried call you several time but could not reach you. please call me urgently.
Client asked if the owner of the account in the intermmidate bank is Iranian?

Bahram karimi
Project Manager

18

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of  July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

**Subject:** Fwd: Payment USD 6'000
**From:** Linet Estiroti <linet.estiroti@perseswiss.ch>
**Date:** Thu, 3 Jul 2014 19:41:34 +0300
**To:** Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual.  Please advise what to do. Regards, Linet Estiroti

20

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

<mark>Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.</mark>

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards

Sent from my BlackBerry® Smartphone supplied by Swisscom

---

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

<mark>Furher to our conversation in Istanbul I suggest two names for the change as follows:</mark>

<mark>1. International Industrial Housing Company</mark>

<mark>2.International Iron Housing Company</mark>

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

21

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGANEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 –0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

# EXHIBIT 82

| **From:** | Krouse, Michael (USANYS) |
| **To:** | Bove, Emil (USANYS); Kim, Jane (USANYS) 4; Lake, Stephanie (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | Here is a draft letter |
| **Date:** | Monday, March 09, 2020 8:40:05 PM |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.docx |

Michael Krouse

Assistant United States Attorney

Southern District of New York

One St. Andrew's Plaza

New York, NY 10007

(212) 637-2279



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

      **Re:**    *United States* **v.** *Ali Sadr Hashemi Nejad*, **18 Cr. 224 (AJN)**

Dear Judge Nathan:

      The Government writes to provide further facts regarding the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"), and the circumstances surrounding the late production of what has now been marked as Government Exhibit ("GX") 411.

      At the outset, the Government wants to make clear that, if the defense wishes to offer GX 411, the Government consents to the proposed curative instruction.  The Government is also willing to enter into the stipulation proposed by Reid Weingarten, or a modified version of the stipulation in light of the disclosures contained in this letter.

      All former and current members of the Government's prosecution team have now completed a diligent review of all files (including, but not limited to, emails, hard copy correspondence, hard copy files, and notes) for any materials reflecting communications or correspondence with OFAC.  The members of the prosecution team includes AUSAs Andrew DeFilippis, David Denton, Rebekah Donaleski, Jane Kim, Michael Krouse, Stephanie Lake, Matthew Laroche, as well as Special Assistant United States ("SAUSA") Attorney Garrett Lynch.

      Based on the diligent review, no AUSA on the prosecution team had any communications or correspondence with OFAC, except in connection with (1) the preparation of Mr. Ted Kim to testify at trial, and (2) the OFAC license check (which has been admitted as Government Exhibit 602).  However, as explained in detail below, SAUSA Lynch did have substantive discussions with OFAC.  Copies of emails between SAUSA Lynch and officials at OFAC were produced to the defense tonight at 7:25 p.m., and are attached to this letter as Exhibit A ("Ex. A").  Set forth

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

below is a chronological account of SAUSA Lynch's communications with OFAC during this case.

First, SAUSA Garrett Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA"). In January 2012, while at DANY, ADA Lynch was assigned to work on an investigation into Commerzbank, A.G., a German bank that had been under investigation since January 2011 by DANY, the United States Department of Justice ("DOJ"), and multiple regulatory agencies. That investigation concerned alleged violations of U.S. sanctions laws and regulations during the period 2002 through 2007.

During the course of that investigation, DANY received, from Commerzbank, 15 voluntary disclosures that the Commerzbank branch in New York City had made to OFAC between March 2010 and October 2014. In total, DANY received approximately 215 pages related to those disclosures. GX 411 was one such disclosure. In March 2015, Commerzbank entered deferred prosecution agreements with DANY and DOJ.

In May 2015, ADA Lynch was assigned to work on the DANY investigation related to the defendant, Ali Sadr Hashemi Nejad. On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch, which made the following request:

> For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spamiar Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S., including, but not limited to, the following wire transfer information:
>
> 1. **Possible Originating Bank:** Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
> 2. **Possible Beneficiary Bank:** Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ, (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
> 3. **Possible Account Number:** IBAN CH7708530619663100203
> 4. **Possible CHIPS System Sequence Number:** 0262787
> 5. **Possible Credit/Debit Reference Number:** FAAS109400150500
> 6. **Possible Transaction Reference Number:** 5111500094FC
> 7. **Possible Transaction Date:** 4/4/2011
> 8. **Possible Amount:** USD $29,442,967.57

Ex. A at 4. In October 2015, DANY received records in response to the subpoena. Those subpoena returns were produced to the defense in this case during Rule 16 discovery.

On May 19, 2016, ADA Lynch had a conversation with a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and regulations. Ex. A at 6. During that call, ADA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by ADA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, ADA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, ADA Lynch asked OFAC Officer-1 about arranging an OFAC witness for possible grand jury testimony.  ADA Lynch also offered "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief").  Ex. A at 8.

On or about August 5, 2016, ADA Lynch had a telephone call with the Section Chief, along with two other OFAC enforcement officers.  Ex. A at 10.  During this call, ADA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

In June 2017, ADA Lynch was appointed as a SAUSA.

Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call, however, did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").

On September 21, 2017, SAUSA Lynch had a call with OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch outlined the facts of the case in order to get OFAC Officer-1's thoughts on the proposed federal charges.  That same day, following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "PowerPoint").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the PowerPoint, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanks SAUSA Lynch for "passing along the slide deck."  OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  No one from OFAC followed-up with SAUSA Lynch on next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

SAUSA Lynch has no further records reflecting communications about this case with OFAC, or any recollection of other such communications.  SAUSA Lynch never inquired or learned whether OFAC took independent steps to investigate any of the entities, individuals, or

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

banks involved in this case.  Further, during the course of the above-described phone calls and conversations, SAUSA Lynch never discussed the contents of GX 411 with anyone at OFAC.  Nor did SAUSA Lynch learn what, if any, actions OFAC took in response to receiving that document.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million.  AUSA Lake stated a document previously provided by a witness "should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA."  AUSA Lake's email caused SAUSA Lynch to recall the Commerzbank document he previously saw while working at DANY.  That same day, SAUSA Lynch reviewed a file in his DANY office containing records received from Commerzbank during the course of the separate investigation into Commerzbank, which had concluded in March 2015.  During that review, he found the document later marked as GX 411.  That same day, SAUSA Lynch sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411, and said:  "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment."  None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email.  Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief.  At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been.  AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020.  GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails.  After reviewing GX 411, AUSA Lake looked at the Commerzbank subpoena production, and discovered that GX 411 was not included.  The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense.  At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document, and did not consider it to be *Brady*.  The prosecution team decided to seek to admit GX 411 in its case in chief.  AUSA Lake sent the document, along

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

with others, to the defense.  The Government did not specifically identify that GX 411 had not previously been produced in discovery.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
    Assistant United States Attorneys
Garrett Lynch
    Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 83

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **To:** | Bove, Emil (USANYS); Krouse, Michael (USANYS); Lake, Stephanie (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | RE: Here is a draft letter |
| **Date:** | Monday, March 09, 2020 9:06:48 PM |

Not yet.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:06 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4
<JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS)
<SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Do we have the transcript from today yet?

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake,
Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

# EXHIBIT 84

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **To:** | Bove, Emil (USANYS); Krouse, Michael (USANYS); Lake, Stephanie (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | RE: Here is a draft letter |
| **Date:** | Monday, March 09, 2020 10:10:07 PM |
| **Attachments:** | Ex. A.pdf |
| | Ex. B Email from GL.pdf |

Attached.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:58 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4
<JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS)
<SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Can you send me exs a and b please

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake,
Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter


Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

# **EXHIBIT A**

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

August 31, 2015

**VIA CERTIFIED MAIL**
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: Investigation No. M2013-00223036

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015.** In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@dany.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**

Please note that *electronic copies are preferred.* If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>John Doe,<br>                                        Defendant. | BUSINESS RECORDS AFFIDAVIT<br><br>STATE OF NEW YORK<br>COUNTY OF NEW YORK<br><br>M2013-00223036 |

    I _____ _____, declare that I am a duly authorized custodian of the records, or other employee or agent, of _____ (*name of business*), and am familiar with the record keeping practices of _____ (*name of business*).  I make this affidavit pursuant to New York State Criminal Procedure Law Section 190.30(8).

    Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account number _____.  These pages contain the following types of records [*list or description of records*]:

_____    _____

_____    _____

_____    _____

I am familiar with the above-described records.  These records were made in the regular course of business, and it was the regular course of such business to make and keep these records.  The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter.  The person who made these records was under a business duty to do so accurately.

              *False statements made herein are punishable as a Class A misdemeanor pursuant to P.L. § 210.45.*

X _____

      Signature (Deponent)                              Date

# SUBPOENA

(Duces Tecum)

## FOR A WITNESS TO ATTEND THE

## GRAND JURY

In the Name of the People of the State of New York

### To: Commerzbank AG

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, **as a witness in a Grand Jury investigation:**

**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

### SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

**YOU ARE ORDERED** not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.

Dated in the County of New York,
August 31, 2015

So Ordered:

CYRUS R. VANCE, JR.
**District Attorney, New York County**

_____
Justice of the Supreme Court
State of New York

**PT. 1 AUG 3 1 2015**
**HON. ABRAHAM L. CLOTT**

By: _____
Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

Note: In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to ThomasM@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

**Case No.: M2013-00223036**

## EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015

ITEMS TO BE PRODUCED are those in the actual and constructive possession of Citibank, N.A. *Commerzbank AG* and all entities, agents, officers, employees, officials, over which it has control, including its *MJT* subsidiaries: *Sept. 15, 2015*

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spartrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.,** including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

## DEFINITIONS AND INSTRUCTIONS

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities; (ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership; (iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Thursday, May 19, 2016 11:22 AM |
| **To:** | Conroy, Christopher |
| **Subject:** | FYI |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

1

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Monday, August 1, 2016 12:36 PM |
| **To:** | 'Michael.Dondarski@treasury.gov' |
| **Subject:** | Request |

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons.  We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland.  Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

Ex. A at 7

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Wednesday, August 3, 2016 9:26 AM |
| **To:** | Hochhauser, Rachel; Maloney, Christina |
| **Subject:** | FW: Request |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| | Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10th) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

1

Ex. A at 8

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Rosanna.Wells@treasury.gov |
| **Sent:** | Monday, August 8, 2016 9:08 AM |
| **To:** | Lynch, Garrett |
| **Cc:** | Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov |
| **Subject:** | RE: Thanks |

Thanks Garrett. I'm looping in the two OFAC Enforcement Officers who were on the call.

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 10

## Lynch, Garrett

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Friday, September 22, 2017 5:44 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov |
| **Subject:** | RE: Case |

Garrett,

It was great speaking with you all  yesterday, and thanks for passing along the information below/attached.  We'll take a look and will get back to you.  And thanks for the well wishes!

Have a great weekend,

Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday.  As always, great to chat with you.  Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence.  Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend.  Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 11

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Wednesday, September 20, 2017 4:08 PM |
| **To:** | Lynch, Garrett |
| **Subject:** | RE: Call |

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now.  Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above.  I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there.  Would you be able to do a call tomorrow or Friday?  Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ex. A at 12

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here.  Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation!  Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards.  Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00.  Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir!  No worries – I know how slammed you all are.  I'm leaving on Vacation on Wednesday, so does early in the week work?  My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30.  It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski).  I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting.  Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike!  I'm very happy for you and Rachel – join the club!  You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though…

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory.  Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

Ex. A at 13

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir. I hope this email finds you well and that you've been enjoying the summer with the family. I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail. I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up. Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY. What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir! I hope the summer is treating you well so far in the swamp. If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland. We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA. It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis. We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

Ex. A at 14

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Tuesday, September 26, 2017 4:00 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov |
| **Subject:** | RE: Case |

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know…maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 15

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Thursday, March 28, 2019 11:34 AM |
| **To:** | Lynch, Garrett |
| **Subject:** | CSE TransTel |
| **Attachments:** | 20170727_transtel_web post.pdf; transtel_settlement.pdf |
| | |
| **Importance:** | High |

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company.  The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

Ex. A at 16

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A.  These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at www.treasury.gov/ofac/enforcement.**

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.**  CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case.  Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters.  TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank").  In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

---

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety.  See 77 Fed. Reg. 64,664 (Oct. 22, 2012).  For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran. TransTel initiated the wire transfers from its account with the Bank. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, please see the Settlement Agreement between OFAC and CSE Global and TransTel here.

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A. OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology.  When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I.    PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others. OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector. At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II.    RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

---

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation. Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341. *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

## III.    FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company).  At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List").  The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.  CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes.  All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank").  Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List.  On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions."  Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.

[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

2

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran. (*See* attached Penalty Calculation Spreadsheet). These transactions were processed through the United States and caused multiple financial institutions— including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran. TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran. As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "…unlawful for a person to violate…or cause a violation of any…regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction … [that] causes a violation of … any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case. Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

**IV.    Terms of Settlement**

OFAC and Respondent agree as follows:

1.  In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

3

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2. In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

A. Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

(i) sign, date, and mail an original signed copy of this Agreement to: ███ ████████, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220. Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

(ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**. Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**. Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

B. To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

C. That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured. In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

---

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Respondent accepts the terms of this Settlement Agreement this _15_ day of _July_____, 2017.

_____
Signature

LIM BOON KHENG
_____
Respondent's Printed Name (or in the case of an
entity, the name of Respondent's Duly Authorized
Representative)

DIRECTOR CSE TransTel Pte Ltd &
DIRECTOR CSE GLOBAL LIMITED
_____
Printed Title of Respondent's Duly Authorized
Representative and Name of Entity (if applicable)

☒     Please check this box if you have not enclosed payment with this Agreement and will
      instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the
      Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: July 19, 2017          _____
                             John E. Smith
                             Director
                             Office of Foreign Assets Control

Enclosure

6

# Venezuela Housing Case

1

I.     Introduction

II.    USD Payments

III.   Potential Charges

IV.   Company Structure

V.    Individuals

VI.   Proof of Payment

VII.  Knowledge of Sanctions/Efforts to Hide Iranian Connection

2

Ex. A at 27

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

3

Ex. A at 28

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013

- Total amount cleared: **$115,508,527.28**

- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

4

# <u>EVIDENCE</u>

- Emails (mostly from the Iranian side of the "Project")

- Payment records (SWIFT messages and wires)

- Bank account records (limited)

- 2 possible fact witnesses (significant availability issues with both)

- Expert testimony (from banks, FED, and OFAC)

5

# IV. <u>Company Structure</u>



6

# Stratus International Contracting ("Stratus")

- Established in 1978 in Tehran, Iran by **Mohammad SADR**

- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007

- Builds infrastructure projects in and outside of Iran

- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)

- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

7

Ex. A at 32

- Stratus establishes a new subsidiary (IIHC) and a "Venezuela Project Executive Committee" in 2009 to manage and oversee the execution of the project in Venezuela.
- Committee members over time include:
    - **Mohammad SADR** (Chairman)
    - **Ali SADR**
    - **Behrooz ZANGENEH**
    - **Ahmad SAFAVARDI**
    - **Bahram KARIMI**
    - **Mustafa CETINEL**
    - **Ekrem CINAR**

8

Ex. A at 33



# V. Individuals



**Venezuela Committee (Iran)**
Chairman: **Mohammad SADR**
Members:  **Bahram KARIMI, Farshid KAZERANI,  Ali SADR;   Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR;  Ahmad SAFAVARDI**i

**Hussein TEHRANI (Iran)**
Chairman/CEO/President of IIHC

**Farshid KAZERANI (Iran)**
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting

**Mustafa CETINEL (Istanbul/VE)**
Project Director

**Behrooz ZANGENEH (Iran)**
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC

**Ekrem CINAR (Turkey)**
Vice Project Manager

**Bahram KARIMI (Iran/VE)**
Project Manager

**Ahmad SAFAVARDI (US/VE)**
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US

**Numerous Iranian IIHCO employees in VE**

**\*Parentheticals indicate where people were physically located at relevant time period**

10

Ex. A at 35

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information "as requested:"**

**Subject:** USD Account
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Thu, 30 Dec 2010 17:39:59 –0500
**To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>

Salam,

Please find attached the USD account information as requested.

Best regards

Intermediary Bank:  JPMORGAN CHASE BANK (New York, New York)
SWIFT CODE: CHASUS33
Banking Code: FED ABA 02100021


Bank of Beneficiary:  HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
SWIFT Code: SHHBCHZZ
(USD)Account No: 5196631203
IBAN: CH7708530519663100203


Beneficiary:  Stratus International Contracting J.S.
Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

11

Ex. A at 36

**Instruction Letter and payment for IPC 11-13:**

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|---|---|---|---|---|---|---|---|
| 7/5/2011 | $ 20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hyposwiss Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |



ZANGENEH
signature

Ex. A at 37

# Wire Sheet

**Transaction Details for TRN: 3251400186fs        Region: US**

| | |
|---|---|
| **Instruction Date:** | 7/5/2011 |
| **Payment Date:** | 7/5/2011 |
| **Transaction Amount:** | $20,692,579.48 |
| **Transaction Type:** | BT |
| **Customer Swift ID:** | SHHBCHZZ |
| **Debit Fin Entity:** | 01 |
| **Credit Fin Entity:** | 01 |
| **Credit Reference:** | OOE9996A000394 |
| **Debit Reference:** | OOE9996A000394 |
| **Sender's ID:** | SWF/BESCPTPLOSF |
| **Bene Flag:** | B |
| **Order Party:** | /PT50000709030009508180330 |
| | 1/PETROLEOS DE VENEZUELA SA |
| | 2/AV LIBERTADOR ED PETROLEOA VANEZU |
| | 2/TORRE ESTA LA CAMPIA CARACAS |
| | 3/VE/VENEZUELA |
| **Debit Party:** | 00000011728748 |
| | BES SFE FUNCHALOFFSHORE MADEIRA |
| | DPC – SERVICO RECONCILIACAO |
| | BANCARIA |
| | LISBON PORTUGAL 1250--142 |
| **Details of Payment:** | 1590011835 |
| **Credit Party:** | 00000011835873 |
| | HYPOSWISS PRIVATBANK AG |
| | BAHNHOFSTRASSE/SCHUETZENGASSE 4 |
| | POSTFACH 3180 |
| | ZURICH SWITZERLAND 8021 - |
| **Account Party:** | SHHBCHZZ |
| **Bene:** | /CH8008530518206100203 |
| | CLARITY TRADE AND FINANCE S A |

13

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR



Ex. A at 39

# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

15

Ex. A at 40

# VII. <u>Knowledge of Sanctions/Efforts to Hide Iranian Connection</u>

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR'S** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

16

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

**Subject:** Re: Conference Call with Mercantil Valores Uruguay
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Fri, 16 Jul 2010 12:06:04 –0400
**To:** HBM Funds – Alwin de Jongh <alwin.dejongh@hbmgroup.com>
**CC:** HBM Funds – Herman Oosten <Herman.Oosten@hbmgroup.com>

Dear Alwin.

NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.

The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.

Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.

Hope this helps.

17

Ex. A at 42

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

There's no Iranian behind any of the accounts provided.
This is a simple answer.

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:
Salam
I tried call you several time but could not reach you. please call me urgently.
Client asked if the owner of the account in the intermmidate bank is Iranian?

Bahram karimi
Project Manager

18

Ex. A at 43

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

19

Ex. A at 44

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

---

**Subject:** Fwd: Payment USD 6'000
**From:** Linet Estiroti <linet.estiroti@perseswiss.ch>
**Date:** Thu, 3 Jul 2014 19:41:34 +0300
**To:** Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual. Please advise what to do. Regards, Linet Estiroti

---

20

Ex. A at 45

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards

Sent from my BlackBerry® Smartphone supplied by Swisscom

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

Furher to our conversation in Istanbul I suggest two names for the change as follows:

1. International Industrial Housing Company

2.International Iron Housing Company

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

21

Ex. A at 46

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGENEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 –0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

22

Ex. A at 47

# **EXHIBIT B**

| | |
|---|---|
| **From:** | Lynch, Garrett <LynchG@dany.nyc.gov> |
| **Sent:** | Friday, January 10, 2020 4:52 PM |
| **To:** | Lake, Stephanie (USANYS) |
| **Cc:** | Kim, Jane (USANYS) 4; Krouse, Michael (USANYS) |
| **Subject:** | RE: Sadr - wire transfers |
| **Attachments:** | Commerz OFAC disclosure.pdf |

In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze made to OFAC re: the payment.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Friday, January 10, 2020 3:16 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Closing the loop on this– I found a document in the material Fuenmayor gave us that discusses the $29 million transfer through Fondo Chino, and he also mentioned it in the last meeting. I think this should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA. The doc is attached, if anyone cares, but it's also en Espanol (I've requested translation). Pages 14-15.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 12:46 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

The Venezuelans used various state-owned "funds" and banks to fund various government projects, among them BANDES, the economic and social development bank (which, I believe made some early payments (not ours) related to the project), and Fondo Chino (the Chinese-Venezuelan Fund). Fondo Chino (at least ostensibly) was funded by oil sales to and loans from China (I think PDVSA and the government liberally moved money around). I forget exactly why Fondo Chino was used to make the first payment (or if we ever knew for sure) – my guess is that PDVSA, which controlled all oil-related funds (i.e., the Venezuelan purse), had adequate funds in the Fondo Chino account to make the payment from that account. I believe the money came from a Banco del Tesoro account in Venezuela, which had a correspondent relationship with Commerz in Germany. Thereafter, they used PDVSA accounts at Banco Espirito Santo in Portugal.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Wednesday, January 8, 2020 11:02 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Found the first one. Thanks. Do you know why it came from "Fondo Chino" / what that is?

That's fine on two. Just wanted to make sure I wasn't missing some other records that would show that information.

Definitely agree on the third point.

Ex. B at 1

Thank you!

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 10:04 AM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers


1. Re: the first payment, there should be a copy of the SWIFT message in the Commerzbank production.  In my version of the subpoena compliance production it's a PDF titled "Copy".

2. Re: the identity of the intermediary bank, the bank whose business record the wire transfer is is the intermediary bank, so the witness will be able to state that.

3. Also, for several of the payments, we have additional search warrant documents -- e.g., while we may just have the wire transfer record from the clearing bank, we may also have a SWIFT message attached to an email, or a Hyposwiss record, or some other document which identifies the payment route. When the dust settles on the SW docs, we can reconstruct my old payments binders where I had all of the documents bundled together for each payment (the payment instruction letter, the bank record(s), emails, attachments, etc.).  This is what we did for the GJ.


---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Tuesday, January 7, 2020 6:19 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** FW: Sadr - wire transfers

My original email had three attachments, which had to be sent to you securely. So you should be getting a secure message with instructions on how to access it.

---

**From:** Lake, Stephanie (USANYS)
**Sent:** Tuesday, January 07, 2020 5:37 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** Sadr - wire transfers

See attached a spreadsheet (Payments) showing each transfer and where I found documentation. A few things:

1) I didn't find a wire confirmation for the 4/4/2011 $29 million transfer. I did find reference to it in the CHIPS subpoena returns. It seems to show that it went from "Fondo Chino-Venezolano" to Stratus International Contracting (see attached two spreadsheets that show this). Garrett – do you know if we have a wire confirmation for that transfer?

2) I noticed that the wire confirmations don't generally show the U.S. intermediary bank on them. Is there other documentation I'm missing that has this information?

*All documents are saved here: \\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\###Trial\Documents\Payment Records and here:

Ex. B at 2

\\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\Evidence [INT]\Discovery\#5 - Subpoena Returns\To Produce.

Also – Garrett, I was thinking that if you don't already have the ability to remotely login to our network, we should have that set up! That way the file paths above wouldn't be useless to you.

Thanks!

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. B at 3

# EXHIBIT 85

| From: | Crowley, Shawn (USANYS) |
|---|---|
| To: | Bove, Emil (USANYS) |
| Subject: | RE: Here is a draft letter |
| Date: | Monday, March 09, 2020 10:15:58 PM |

Good god I hope so

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 09, 2020 10:11 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Did we produce the "document in the material Fuenmayor gave us"?

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:10 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Attached.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:58 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Can you send me exs a and b please

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse
Assistant United States Attorney
Southern District of New York

One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

# EXHIBIT 86

| | |
|---|---|
| **From:** | Lake, Stephanie (USANYS) |
| **To:** | Kim, Jane (USANYS) 4 |
| **Cc:** | Bove, Emil (USANYS); Krouse, Michael (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | Re: Here is a draft letter |
| **Date:** | Monday, March 09, 2020 10:21:28 PM |

Yes we produced the Fuenmayor documents.


On Mar 9, 2020, at 10:16 PM, Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov> wrote:


Attaching email to OFAC.  Will confirm Fuenmayor doc.


**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:11 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Did we produce the "document in the material Fuenmayor gave us"?

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:10 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Attached.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:58 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Can you send me exs a and b please

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM

**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4
<JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley,
Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter


Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

<mime-attachment>

# EXHIBIT 87

| From: | Krouse, Michael (USANYS) |
|---|---|
| To: | Bove, Emil (USANYS) |
| Cc: | Crowley, Shawn (USANYS) |
| Subject: | RE: OFAC letter diligence |
| Date: | Monday, March 09, 2020 10:22:25 PM |

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411.  During telephone calls today, OFAC reported that it has searched its database of correspondence, and was unable to find a copy of the letter.  OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012.  In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter.  As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:20 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Cc:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** OFAC letter diligence

Can you fill this in and add any more detail you got from the call?  Thanks

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411.  During telephone calls today, OFAC reported that it has searched its database of correspondence, and was unable to find a copy of the letter.  OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012.  In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, [XX], and [XX] components if they were familiar with the letter.  As of [TIME], OFAC had not identified any employees who were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

# EXHIBIT 88

| | |
|---|---|
| **From:** | Bove, Emil (USANYS) |
| **To:** | Crowley, Shawn (USANYS) |
| **Subject:** | 2020.03.09 Letter re OFAC contacts.EB3.docx |
| **Date:** | Monday, March 09, 2020 10:24:27 PM |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.EB3.docx |

Want to take a look at the intro part with the meat of the reps?  I think then we sent to Audrey / HBC / Laura and continue editing while team verifies



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

  **Re:**   *United States* **v.** *Ali Sadr Hashemi Nejad*, **18 Cr. 224 (AJN)**

Dear Judge Nathan:

  The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC currently marked for identification as GX 411. At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020. If the defense wishes to offer GX 411 as a defense exhibit, the Government will stipulate to the authenticity of the document and consents to the curative instruction proposed by the defense yesterday (*see* Dkt. [X]). The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider reasonable modifications to the stipulation based on the disclosures contained in this letter.

  **I.**   **The Government's Review**

  In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team: AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ("SAUSA") Attorney Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight prosecutors did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted it to AUSAs Lake, Kim, and Krouse via email. In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[2] The emails at issue are attached as Exhibit A. During the course of the communications reflected in these emails, SAUSA Lynch did not discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.    The Commerzbank Investigation

In January 2012, while at DANY, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank, which had commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[3] OFAC, and the Board of Governors of the Federal Reserve System. The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act (IEEPA) and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately period 2002 and 2008. During the course of the investigation of Commerzbank, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City sent OFAC between March 2010 and October 2014. GX 411 was one such disclosure.

---

[2] The AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[3] The AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States. One of the AUSAs participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[4]

### III.    The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant.  On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:



Ex. A at 4.  In October 2015, Commerzbank provided DANY with records in response to the subpoena, which the Government produced to the defense during Rule 16 discovery in this case. GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not re-produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations. Ex. A at 6.  During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email. Ex. A. at 7.  In the email, SAUSA Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information

---

[4] *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and; *see also*
https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief"). Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers.  Ex. A at 10.  During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the new York State grand jury investigation.  In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY.  Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14. During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").  On that day, SAUSA Lynch spoke to OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges.  Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "Presentation").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million.  AUSA Lake stated a document previously provided by a witness "should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411.  That same day, SAUSA Lynch located GX 411 in a file at his DANY office that contained Commerzbank's voluntary disclosures from 2015.  SAUSA Lynch then sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411 and said:  "In the spirit of closing the loop on

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment." None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email. Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief. At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been. AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020. GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails. After reviewing GX 411, AUSA Lake looked at the Commerzbank subpoena production, and discovered that GX 411 was not included. The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense. At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief. AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

## IV.    OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411. During telephone calls today, OFAC reported that it has searched its database of correspondence, and was unable to find a copy of the letter. OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012. In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter. As of approximately 5:00 p.m. tonight, OFAC had not identified any

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

employees who were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
Assistant United States Attorneys
Garrett Lynch
Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 89

**From:**          Crowley, Shawn (USANYS)
**To:**            Bove, Emil (USANYS)
**Subject:**       2020.03.09 Letter re OFAC contacts.EB3 sgc.docx
**Date:**          Monday, March 09, 2020 10:40:10 PM
**Attachments:**   2020.03.09 Letter re OFAC contacts.EB3 sgc.docx



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    **Re:**    ***United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)**

Dear Judge Nathan:

    The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC currently marked for identification as GX 411. At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020. If the defense wishes to offer GX 411 as a defense exhibit, the Government will stipulate to the authenticity of the document and consents to the curative instruction proposed by the defense yesterday (*see* Dkt. [X]). The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider reasonable modifications to the stipulation based on the disclosures contained in this letter.

    **I.**    **The Government's Review**

    In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team: AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ("SAUSA") Attorney Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").