2020.3.8 6.11pm Email & Attachment

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **Sent:** | Sunday, March 08, 2020 6:11 PM |
| **To:** | Lake, Stephanie (USANYS) |
| **Attachments:** | schulte letter.pdf |

Shawn G. Crowley
Co-Chief, Terrorism and International Narcotics Unit
United States Attorney's Office
Southern District of New York
212-637-1034 (o)
347-880-1399 (c)

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 28, 2020

**By ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 14C
New York, New York 10007

      Re:    ***United States v. Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)**

Dear Judge Crotty:

      The Government writes in response to two issues raised at the February 27, 2020 charge conference (the "Conference") and the defendant's February 27, 2020 letter (the "February 27 Letter") after the Conference raising additional issues with the Court's proposed jury charge.

      *First*, with respect to the defendant's requested "Adverse Inference Regarding Michael" instruction, there is no case law support (and the defendant cites none)[1] for the proposition that the jury should be instructed about untimely discovery productions. In any event, the defendant's proposed instruction is inappropriate because it misstates the fact that the law and the record. *See United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998) ("A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."); *United States v. Doyle*, 130 F.3d 523, 540 (2d Cir. 1997) ("A conviction will not be overturned for refusal to give a requested charge, however, unless that instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge."). Specifically, the defendant's proposed instruction attempts to cast the Government's disclosure regarding Michael's administrative leave status and the CIA Memorandum, which was admittedly and regrettably untimely but provided with sufficient time for the defense to make use of it effectively at trial, as a constitutional violation. Untimely discovery productions, however, only acquire a constitutional dimension when they result in prejudice to the defendant. *See United States v. Alston*, 899 F.3d 135, 147-48 (2d Cir. 2018), *cert.*

---

[1] Aside from law review articles, the only case to which the defendant cites is a decision rejecting a habeas challenge to a state conviction because the defendant had failed to establish that any favorable evidence had been suppressed, merely noting the fact that the New York state court had given an adverse inference instruction. *Rosario v. Smith*, 2009 WL 1787715, at *1 (S.D.N.Y. June 23, 2009). No instruction like that proposed by the defendant appears in *Modern Federal Jury Instructions* or in any pattern federal jury instructions, and the Government is aware of no federal criminal case approving such an instruction.

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 2

*denied*, 139 S. Ct. 1282 (2019) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). Even to the extent the defendant could argue that any evidence had been "suppressed" (which he cannot, since he received all of it), the record is clear that the defendant has not been prejudiced and the Court has already taken steps to ensure that any delay did not result in a constitutional violation.

As the Government explained in its opposition to the defendant's mistrial motion, to the extent the defendant wants, or wanted, to pursue an "alternative perpetrator" theory with respect to Michael, he had all of the substantive evidence necessary to pursue that theory for months, if not more than a year before trial, including: (i) the screenshot (the "Screenshot") that Michael took of his computer screen during the reversion of the Confluence virtual machine on April 20, 2016, which showed that Michael was logged into VSphere; (ii) the fact that Michael had administrator access to the ESXi Server; (iii) the fact that Michael was in contact with the defendant during the time period of the defendant's reversion; (iv) the fact that Michael left the office with the defendant that night; (v) the fact that Michael and the defendant had had a physical altercation in which Michael struck the defendant; (vi) the fact that Michael did not tell the Federal Bureau of Investigation (the "FBI") about the Screenshot until he was confronted with the image; (vii) the fact that Michael declined to take a polygraph examination at the FBI's request and had trouble with Central Intelligence Agency ("CIA") polygraph examinations in the past; and (viii) the fact that in August 2019, the Government advised Michael to seek legal counsel. *See* Dkt. # 329 at 15-16. Accordingly, the information supporting a purported (and meritless) "alternative perpetrator" argument with respect to Michael was never "suppressed" and cannot form the basis of a constitutional violation. *See Alston*, 899 F.3d 135, 147–48 (first element of *Brady* violation is suppression of evidence).

Moreover, while the Government acknowledges that it should have notified the defense about Michael's administrative leave status and the memorandum seeking to place him on leave (the "CIA Memorandum") sooner, the Court has eliminated any prejudice that the defendant might have suffered from the timing of the Government's disclosure. On February 11, 2020 (the day before Michael took the stand), the Government notified the defense that the CIA placed Michael on administrative leave "on or about August 19, 2019 as a result of security concerns based on the CIA's assessment that he did not fully cooperate with the investigation into the leaks." The following day, in response to the Court's directive, the Government obtained the CIA Memorandum for the first time and provided it to the Court. On February 13, 2020, the Court directed the Government to produce the CIA Memorandum to the defense and suspended Michael's cross-examination. On February 18, 2020, the Court directed the Government to produce Michael's investigative file to the defense. Over the two weeks since the Government produced the CIA Memorandum, the defense has had numerous opportunities to present to the jury whatever helpful information they believe the CIA Memorandum contained, including by:

- Re-calling Michael to complete his cross-examination, which the defense chose not to do.

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 3

- Introducing the CIA Memorandum into evidence as part of the defense case, which they did yesterday.

- Cross-examining Carter Hall, the CIA officer responsible for approving the CIA Memorandum, which they also did yesterday.[2]

Therefore, the defendant was not prejudiced for purposes of *Brady* or *Giglio* by the timing of the Government's production of the CIA Memorandum and the fact of Michael's administrative leave. He had the underlying information about Michael's activities on April 20, 2016 and his conduct during investigative interviews months before trial. He had access to the CIA Memorandum for weeks in order to prepare to cross- and/or re-cross-examine Michael and Mr. Hall. And he strategically availed himself of some of Court-ordered relief by offering the CIA Memorandum, cross-examining Mr. Hall, and declining to continue cross-examining Michael. *See United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) ("Thus, we have never interpreted due process of law as requiring more than that *Brady* material must be disclosed in time for its effective use at trial."). Accordingly, because the defendant cannot establish a constitutional violation with respect to the Government's disclosures of the CIA Memorandum and the fact of Michael's administrative leave status, his "Adverse Inference" instruction is unsupported by the law and the facts, and thus, inappropriate. *See Bok*, 156 F.3d at 160; *Doyle*, 130 F.3d at 540.

Finally, the defendant's proposed instruction seeking to describe the weight that the jury should ascribe to Michael's administrative leave status is unnecessary. The Court already intends to instruct the jury as to how to assess witness credibility (including any biases the witness may have) and the testimony of CIA officers. (*See* Instr. II(C) & (E)). Thus, the defendant is well-equipped to argue that Michael's testimony should be scrutinized in light of his administrative leave status. *United States v. Jacobs*, 735 F. App'x 739, 741 (2d Cir. 2018) (affirming "district court's refusal to highlight [in jury instructions] the taxpayer witnesses' purported incentive to cooperate with the government" because "district court's charge combined with defense counsel's summation . . . fairly put the issue of the taxpayer witnesses' possible motivations to the jury for its consideration" (internal quotation marks omitted)). *Cf. United States v. Mundy*, 539 F.3d 154, 157 (2d Cir. 2008) ("In contemporary administration of justice, what conclusions should, or should not, be drawn from the evidence are generally left to counsel to argue."). "In the context of special credibility instructions," the Second Circuit has "held that '[d]istrict courts are under no obligation to give requested charges word for word and there is no talismanic formula for an instruction on [interested witness] testimony.'" *Jacobs*, 735 F. App'x at 741 (quoting *United States v. Prawl*, 168 F.3d 622, 626 (2d Cir. 1999)). Here, no special instruction regarding Michael is warranted in light of the relief already granted by the Court and because such an instruction would call undue attention to Michael's testimony, which the defense elected not to continue, relative to other witnesses.

---

[2] As the Court is aware, Hall confirmed unequivocally that the CIA did not and does not view Michael as an "alternative perpetrator" to the defendant, that the unexplained network activity described in the CIA Memorandum referred only to the Screenshot, and that it was the defendant who "reverted" the Confluence virtual machine on April 20, 2016. (*See* Tr. 2685, 2691, 2737).

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 4

*Second*, the defense argues that the Court should not give a false exculpatory statements charge. While false exculpatory statements alone are not sufficient to convict a defendant, "it is axiomatic that exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force." *United States v. Parness*, 503 F.2d 430, 438 (2d Cir. 1974); *see also United States v. Gaskin*, 364 F.3d 438, 462 (2d Cir. 2004) (inference of criminal intent "was strengthened by [defendant's] post-arrest false exculpatory statement denying ownership or knowledge of the [cash]"); *United States v. Glenn*, 312 F.3d 58, 69 (2d Cir. 2002) (false exculpatory statements may amount to "circumstantial evidence of consciousness of guilt and may strengthen inferences supplied by other pieces of evidence"). Instructing the jury as to the "independent probative value" of false exculpatory statements is therefore appropriate under the law. *United States v. Strother*, 49 F.3d 869, 873-74 (2d Cir. 1995). There is an ample basis for such an instruction here—Special Agent Evanchec testified at length about the defendant's misrepresentations (such as, for example, his false denial that he retained the classified Office of Inspector General email that the FBI seized from his apartment (*see* Tr. 2179)), and independent evidence in the record establishes that those assertions were false. The defendant argues that the Court should use its discretion to decline to instruct the jury about false exculpatory statements, but fails to explain why the Court should not give the jury an instruction that is legally sound and entirely supported by the record. Moreover, failing to provide such an instruction would create a risk that some or all of the jurors use the already admitted evidence of the false exculpatory statements for an impermissible purpose rather than "circumstantial evidence of consciousness of guilt" under *Glenn*. Therefore, the Court should instruction the jury about the appropriate use of this evidence.

*Third*, with respect to the conscious avoidance portion of the instruction for Count Five, the Government submits that there is a sufficient factual basis for the charge because (i) the defendant has suggested to the jury that he was unaware in April 2016 that the CIA had revoked his access privileges relating to OSB Libraries, (ii) the defendant "was aware of a high probability of the disputed fact" (*i.e.*, the revocation of his privileges), and (iii) the defendant "deliberately avoided confirming that fact" in a meeting with Sean F. *United States v. Flores*, 945 F.3d 687, 715 (2d Cir. 2019) (internal quotation marks omitted); *see also United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016) ("A factual predicate may be established where a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." (internal quotation marks and alteration omitted)). Specifically, in April 2016, in the wake of the defendant losing his privileges to the OSB Libraries and after failing to convince Jeremy Weber to restore those privileges, the defendant went to speak with Sean F., purportedly about the privileges issue. (*See generally* GX 1062). Sean F. testified, however, that the defendant did not raise the issue of his OSB Libraries privileges during that conversation. (*See* Tr. 1651-52). In other words, the jury could infer that the defendant was aware of a high probability that his privileges had been revoked, and that he deliberately avoided confirming the fact of the revocation during a conversation with Sean F.[3] That is precisely the situation in which a conscious avoidance jury charge is appropriate. *See United States v. Aina-Marshall*, 336 F.3d

---

[3] Of course, "the government need not choose between an 'actual knowledge' and a 'conscious avoidance' theory." *United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011).

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 5

167, 171 (2d Cir. 2003). Therefore, the Court should instruct the jury on conscious avoidance on Count Five with respect to the issue of the defendant's knowledge that the CIA had revoked his access privileges to OSB Libraries.

*Fourth*, with respect to what Count Nine, charging the defendant with making false statements to the FBI, as discussed at the Conference, the Government would propose adding to the Court's proposed Instruction III(PP) the following language derived from the bill of particulars provided to the defendant on or about April 29, 2019.

The specific statements that the defendant is charged with making are:

(1) On or about March 15, 2017, the defendant (i) denied having any involvement in leaking the classified information stolen from the Engineering Development Group; (ii) stated that he had not kept a copy of an email he sent to the Office of Inspector General that discussed purported security issues at the CIA; and (iii) denied having any classified materials in his apartment.

(2) On or about March 20 and 21, 2017, the defendant (i) denied having any involvement in leaking the classified information stolen from the Engineering Development Group; (ii) denied ever taking information from the CIA and transferring it to an unclassified network; (iii) denied ever making CIA systems vulnerable to the theft of data; and (iv) denied housing information from the CIA on his home computer.

(3) On or about June 29, 2017, the defendant (i) stated that he had never worked on Brutal Kangaroo outside of the CIA; and (ii) stated that he had never removed any classified information from the CIA and took it home.

*Fifth*, with respect to Counts Two and Three of the Indictment, the Government has decided that—while the Government continues to believe that both charges are legally applicable and supported by the evidence—the Government will forgo Count Two in order to avoid the risk of juror confusion raised by the Court at yesterday's conference. Attached is a revised Indictment reflecting those changes. Pursuant to the Court's instructions at the Conference, the remaining counts have also been renumbered so that the WikiLeaks-related counts as to which the defendant has waived venue are grouped together, followed by the remaining counts pertaining to the defendant's post-leak conduct.

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 6

      Finally, the Government has also attached a proposed verdict form.

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

by: _____
      Matthew  Laroche  /  Sidhardha  Kamaraju /
      David W. Denton, Jr.
      Assistant United States Attorneys
      (212) 637-2420 / 6523 / 2744

Enclosures

cc: Defense Counsel (by ECF)

2020.3.8 6.25-7.43pm Email Chain & Attachment

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Bove, Emil (USANYS) |
| **Sent:** | Sunday, March 08, 2020 7:43 PM |
| **To:** | Kim, Jane (USANYS) 4; Crowley, Shawn (USANYS); Lake, Stephanie (USANYS) |
| **Cc:** | Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor] |
| **Subject:** | RE: GX 411 response |

Great, thank you.

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Sunday, March 8, 2020 7:43 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** RE: GX 411 response

I emailed them. I can call them now.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Sunday, March 8, 2020 7:32 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** RE: GX 411 response

Really sorry to be annoying, but want to make sure we've put down a call and an email to OFAC on this issue – basically to the point in our letter about seeking to confirm their (non)response to the letter.

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Sunday, March 8, 2020 7:08 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** RE: GX 411 response

Sorry, can you guys swing by my office once you've filed this letter? Thank you!

**From:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Sent:** Sunday, March 08, 2020 6:25 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** GX 411 response

I'm sorry – this is not very good. I'm not a fast writer, but didn't want to spend time revising and then have no time for your review.

Stephanie Lake

1

Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 8, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

> **Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)**

Dear Judge Nathan:

The Government respectfully submits this letter in response to the defendant's letter (Dkt. XX), and the Court's orders sent earlier today.

## I.    History of Government Exhibit 411

This Office received Government Exhibit 411 from the Manhattan DA's Office on January 10, 2020, in the context of a discussion about one of the payments relevant to this case.

Government Exhibit 411 is a voluntary disclosure that Commerzbank made to OFAC after clearing a payment from an entity affiliated with PDVSA in Venezuela to Stratus International Contracting (the "Payment"), which was one of the entities the defendant used to receive payments on behalf of IIHC. In the voluntary disclosure, dated June 16, 2011, Commerzbank reported that its money laundering filter flagged the Payment after it was already processed. The disclosure goes on to note that, after the Payment was alerted, Commerzbank investigated Stratus and learned that "Stratus was founded in 1978 in Tehran, Iran; Stratus International specializes in providing contracting services to infrastructure projects such as roads, railways, dams, tunnels, airports and buildings; Stratus is presently working on a 7000 Apartment Unit 'New Ojeda' Housing Development Project in Venezuela."

It further reported that, on May 12, 2011, Commerzbank received a response to its inquiry to the remitter bank, stating, in sum and substance, that Stratus's address is in Turkey, it is registered in Turkey, it does construction in, among other places, Venezuela, and the payment was for the "construction of a 7000 apartment unit project" in Venezuela.

Commerzbank concluded that "Although Stratus is not listed as an SDN, and the payment does not indicate any direct involvement of Iran or with Iran, due to conflicting information

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 2

between the website and the response forwarded by the bank in Caracas, [Commerzbank] believes it appropriate to share this information with OFAC since Stratus may be an Iranian Company. We have added Stratus into our sanctions filter to monitor any future payments."

The Government viewed GX 411 as helpful to its case at trial, but unnecessary in light of GX 2032 and 2034. Those exhibits show that Commerzbank sent a series of questions to the remitter bank on April 27, 2011 related to the Payment. Those questions were ultimately forwarded to the defendant. The defendant responded with misleading information, including by failing to answer one of the questions posed about the identity of the beneficial owners and Citizenship of the owners of Stratus International Contracting.

Based on the availability of other, overlapping evidence, the Government did not extract GX 411 from its email and mark it as an exhibit. The members of the team from this Office wrongly assumed that the document had been part of the Commerzbank subpoena return and therefore had been produced to the defense in discovery in 2018. We erred in failing to confirm with the DA's office the source of the document, and in failing to confirm that it was in fact part of the Commerzbank discovery that had previously been produced. We now understand that GX 411 was obtained through an unrelated DANY investigation into Commerzbank and therefore had not previously been produced in discovery. There was no affirmative decision made not to produce GX 411 to the defense. Had we realized it was not part of an earlier discovery production, we would have provided it immediately upon receiving it.

This weekend, one of the members of the prosecution team came upon GX 411 in Outlook while organizing emails related to this case and others. Based on arguments the defense had made on Friday during Robert Peri's cross-examination, GX 411 now appeared useful to the Government's case, in addition to GX 2032 and 2034. For example, defense counsel asked Peri wither "Citigroup . . . conduct[ed] any research regarding the Iranian International Housing Company when it was reviewing" one of the transactions in the case. (Trial Tr. at 931.) GX 411 presented an example of a bank doing precisely what defense counsel had accused Citigroup of failing to do – it researched a flagged transaction, and then added the concerning party to its sanctions filter.

At that time, the Government realized that GX 411 had not in fact been part of the Commerzbank discovery. All members of the team agreed that the document should be produced to the defense. No member of the Government team anticipated that the defense would view GX 411 as helpful to the defense case.

## II.    The Defendant's *Brady* Claim

The defendant has stated that GX 411 is exculpatory evidence for three reasons. First, "because Stratus Turkey's affiliation with Stratus Iran was not material either to OFAC or the intermediary banks," second, because "the intermediary banks conducted independent investigation and could easily identify the affiliation between Stratus Turkey and Stratus Iran" and, third "neither the intermediary bank nor OFAC deemed the disparities in information about the

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 3

two Stratus International Contractings working on the Ojeda project as important enough to stop
U.S. dollar payments to Stratus International Contracting J.S."

The Government now understand how GX 411 could advance the defendant's claim that
any decision by OFAC not to take enforcement action following this disclosure is probative of the
risk of harm from OFAC enforcement that banks face when the process sanctions violative
transactions.  However, as the defense has identified, this is a point the defendant already elicited
from Ted Kim's.  Kim testified that, to his knowledge, OFAC did not investigate this case.  The
Government is seeking to confirm whether OFAC took any action based on the Commerzbank
disclosure, and is willing to enter into a stipulation that it did not if and when it gets confirmation
from OFAC.

However, the Government does not agree that GX 411 is helpful to the defense for the
other reasons proffered.  First, GX 411 shows that Stratus Turkey's affiliation with Stratus Iran
was material to Commerzbank, as Commerzbank added Stratus International Contracting to its
sanctions filter following its review of this transaction.

Second, Commerzbank was only able to identify the connection between Stratus Turkey
and Iran because the transaction was flagged for money laundering and it then launched an
investigation.  Absent that flag, nobody would have known to look into the companies.  In addition,
the Court has precluded the defendant from arguing that the banks "could easily identify the
affiliation between" the front companies and Iran.  *See* Dkt. XX.

The Government regrets its error and is working to confirm that there is nothing else related
to the Commerzbank investigation that has any bearing in this case, and that there have been no
other omissions from the materials produced to the defense.

However, the Government does not believe that the proposed curative instruction is
necessary.  In our conversations with the defense, the defense explained that it sought the
instruction because the jury would not understand why they are seeing GX 411 for the first time
at the end of the trial.  But, if it is admitted, the Government expects that GX 411 will be admitted
as part of the evidence on the payments in this case, which is its logical place.[1]  As stated above,
the Government is also willing to enter a stipulation that OFAC did not take action regarding the
disclosure, pending OFAC's confirmation of this point.  The Government believes this will

---

[1] If the defendant determines that he does not want to admit GX 411, the Government has agreed
not to offer it in light of the late disclosure.

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 4

sufficiently cure any potential prejudice the defendant could have suffered through the Government's late disclosure of GX 411.

<div style="margin-left:40%">

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
      Jane Kim / Michael Krouse / Stephanie Lake
         Assistant United States Attorneys
      Garrett Lynch
         Special Assistant United States Attorney
      (212) 637-2038 / 2279 / 1066

</div>

cc: Defense Counsel (by ECF)

2020.3.8 6.54pm Email & Attachment

**Lake, Stephanie (USANYS)**

---

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **Sent:** | Sunday, March 08, 2020 6:54 PM |
| **To:** | Lake, Stephanie (USANYS); Krouse, Michael (USANYS); Kim, Jane (USANYS) 4; Garrett Lynch |
| **Cc:** | Bove, Emil (USANYS) |
| **Subject:** | 2020.03.08 Letter to Nathan re GX 411 sgc.docx |
| **Attachments:** | 2020.03.08 Letter to Nathan re GX 411 sgc.docx |



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 8, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    **Re:**    *United States* **v.** *Ali Sadr Hashemi Nejad*, **18 Cr. 224 (AJN)**

Dear Judge Nathan:

        The Government respectfully submits this letter in response to the defendant's letter (Dkt. XX), and the Court's orders sent earlier today.  The Government concedes that it erroneously failed to timely disclose the document at issue, and apologizes to the Court and counsel for its error.  As a result, the Government will not seek to offer the document in evidence and, to the extent the defense intends to offer it, will stipulate to its admission and to relevant facts relating to OFAC's handling of the letter.

## I.    Disclosure of Government Exhibit 411

        Government Exhibit 411 was first produced to the Manhattan DA's Office on [XX] in the course of a separate investigation of a particular bank ("Bank-1").  SAUSA Lynch emailed ~~This Office received~~ Government Exhibit 411 to AUSAs Kim, Krouse, and Lake~~from the Manhattan DA's Office~~ on January 10, 2020, in the context of a discussion about one of the payments relevant to this case.  The prosecution team wrongly assumed that Government Exhibit 411 had been produced to the defense, and failed to verify whether it had been.  This was a mistake.  The Government does not dispute that the document should have been disclosed along with its Rule 16 productions.

        This weekend, AUSA Lake came upon GX 411 in Outlook while organizing emails related to this case and others.  At the time, AUSA Lake concluded that the Government may wish to offer GX 411 in its case in chief, consulted the other members of the prosecution team, marked GX 411 as an exhibit, and emailed it to defense counsel.[1]

---

[1] Based on arguments the defense had made on Friday during Robert Peri's cross-examination, GX 411 appeared useful to the Government's case, in addition to GX 2032 and 2034.  For example, defense counsel asked Peri wither "Citigroup . . . conduct[ed] any research regarding the Iranian

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 2

Government Exhibit 411 is a voluntary disclosure that Bank-1 made to OFAC after clearing a payment from an entity affiliated with PDVSA in Venezuela to Stratus International Contracting (the "Payment"), which was one of the entities the defendant used to receive payments on behalf of IIHC.  In the voluntary disclosure, dated June 16, 2011, Bank-1processed.  The disclosure goes on to note that, after the Payment was alerted, Bank-1 investigated Stratus and learned that "Stratus was founded in 1978 in Tehran, Iran; Stratus International specializes in providing contracting services to infrastructure projects such as roads, railways, dams, tunnels, airports and buildings; Stratus is presently working on a 7000 Apartment Unit 'New Ojeda' Housing Development Project in Venezuela."

It further reported that, on May 12, 2011, Bank-1 received a response to its inquiry to the remitter bank, stating, in sum and substance, that Stratus's address is in Turkey, it is registered in Turkey, it does construction in, among other places, Venezuela, and the payment was for the "construction of a 7000 apartment unit project" in Venezuela.

Bank-1 concluded that "Although Stratus is not listed as an SDN, and the payment does not indicate any direct involvement of Iran or with Iran, due to conflicting information between the website and the response forwarded by the bank in Caracas, [Bank-1] believes it appropriate to share this information with OFAC since Stratus may be an Iranian Company.  We have added Stratus into our sanctions filter to monitor any future payments."

GX 2032 and 2034 show that Bank-1 sent a series of questions to the remitter bank on April 27, 2011 related to the Payment.  Those questions were ultimately forwarded to the defendant.  The defendant responded with misleading information, including by failing to answer one of the questions posed about the identity of the beneficial owners and Citizenship of the owners of Stratus International Contracting.

## II.    The Defendant's *Brady* Claim

Based on conversations the Government has had with defense counsel this weekend, the Government now understands how GX 411 could advance the defendant's claim that any decision by OFAC not to take enforcement action following this disclosure is probative of the risk of harm from OFAC enforcement that banks face when they process transactions in violation of the sanctions laws.   The Government is currently seeking to confirm whether OFAC took any action based on Bank-1's disclosure, and is willing to enter to stipulate that OFAC did not take action against Bank-1, the Stratus entities, or the defendant.

The Government regrets its error and is working to confirm that there is nothing else related to the Bank-1 investigation that has any bearing in this case, and that there have been no other

_____

International Housing Company when it was reviewing" one of the transactions in the case.  (Trial Tr. at 931.)  GX 411 presented an example of a bank doing precisely what defense counsel had accused Citigroup of failing to do – it researched a flagged transaction, and then added the concerning party to its sanctions filter.

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 3

omissions from the materials produced to the defense, both at the U.S. Attorney's Office and DANY.  And, in light of our late disclosure of GX 411, we will not seek to offer it at trial.  To the extent the defense wishes to offer GX 411 in its case, the Government has no objection and will stipulate to its admissibility.  As a result, the defendant is not prejudiced by the late disclosure, and in light of the fact that they have not begun to present evidence, no curative instruction is necessary.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
     Jane Kim / Michael Krouse / Stephanie Lake
         Assistant United States Attorneys
     Garrett Lynch
         Special Assistant United States Attorney
     (212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

2020.3.8 7.01pm Email & Attachment

**Lake, Stephanie (USANYS)**

---

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **Sent:** | Sunday, March 08, 2020 7:01 PM |
| **To:** | Lake, Stephanie (USANYS) |
| **Cc:** | Bove, Emil (USANYS) |
| **Subject:** | 2020.03.08 Letter to Nathan re GX 411 sgc2.docx |
| **Attachments:** | 2020.03.08 Letter to Nathan re GX 411 sgc2.docx |

A few typos



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 8, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

     **Re:**    *United States* **v.** *Ali Sadr Hashemi Nejad*, **18 Cr. 224 (AJN)**

Dear Judge Nathan:

     The Government respectfully submits this letter in response to the defendant's letter (Dkt. XX), and the Court's orders sent earlier today. The Government concedes that it erroneously failed to timely disclose the document at issue, and apologizes to the Court and counsel for its error. As a result, the Government will not seek to offer the document in evidence and, to the extent the defense intends to offer it, will stipulate to its admission and to relevant facts relating to OFAC's handling of the letter.

**I.**     **Disclosure of Government Exhibit 411**

     Government Exhibit 411 was first produced to the Manhattan DA's Office on [XX] in the course of a separate investigation of a particular bank ("Bank-1"). SAUSA Lynch emailed ~~This Office received~~ Government Exhibit 411 to AUSAs Kim, Krouse, and Lake ~~from the Manhattan DA's Office~~ on January 10, 2020, in the context of a discussion about one of the payments relevant to this case. The prosecution team wrongly assumed that Government Exhibit 411 had been produced to the defense, and failed to verify whether it had been. This was a mistake. The Government does not dispute that the document should have been disclosed along with its Rule 16 productions.

     This weekend, AUSA Lake came upon GX 411 in Outlook while organizing emails related to this case and others. At the time, AUSA Lake concluded that the Government may wish to offer GX 411 in its case in chief, consulted the other members of the prosecution team, marked GX 411 as an exhibit, and emailed it to defense counsel.[1]

---

[1] Based on arguments the defense had made on Friday during Robert Peri's cross-examination, GX 411 appeared useful to the Government's case, in addition to GX 2032 and 2034. For example, defense counsel asked Peri wither "Citigroup . . . conduct[ed] any research regarding the Iranian

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 2

Government Exhibit 411 is a voluntary disclosure that Bank-1 made to OFAC after clearing a payment from an entity affiliated with PDVSA in Venezuela to Stratus International Contracting (the "Payment"), which was one of the entities the defendant used to receive payments on behalf of IIHC.  In the voluntary disclosure, dated June 16, 2011, Bank-1processed.  The disclosure goes on to note that, after the Payment was alerted, Bank-1 investigated Stratus and learned that "Stratus was founded in 1978 in Tehran, Iran; Stratus International specializes in providing contracting services to infrastructure projects such as roads, railways, dams, tunnels, airports and buildings; Stratus is presently working on a 7000 Apartment Unit 'New Ojeda' Housing Development Project in Venezuela."

It further reported that, on May 12, 2011, Bank-1 received a response to its inquiry to the remitter bank, stating, in sum and substance, that Stratus's address is in Turkey, it is registered in Turkey, it does construction in, among other places, Venezuela, and the payment was for the "construction of a 7000 apartment unit project" in Venezuela.

Bank-1 concluded that "Although Stratus is not listed as an SDN, and the payment does not indicate any direct involvement of Iran or with Iran, due to conflicting information between the website and the response forwarded by the bank in Caracas, [Bank-1] believes it appropriate to share this information with OFAC since Stratus may be an Iranian Company.  We have added Stratus into our sanctions filter to monitor any future payments."

GX 2032 and 2034 show that Bank-1 sent a series of questions to the remitter bank on April 27, 2011 related to the Payment.  Those questions were ultimately forwarded to the defendant.  The defendant responded with misleading information, including by failing to answer one of the questions posed about the identity of the beneficial owners and Citizenship of the owners of Stratus International Contracting.

## II.    The Defendant's *Brady* Claim

Based on conversations the Government has had with defense counsel this weekend, the Government now understands how GX 411 could advance the defendant's claim that any decision by OFAC not to take enforcement action following this disclosure is probative of the risk of harm from OFAC enforcement that banks face when they process transactions in violation of the sanctions laws.   The Government is currently seeking to confirm whether OFAC took any action based on Bank-1's disclosure, and is willing to enter to stipulate that OFAC did not take action against Bank-1, the Stratus entities, or the defendant.

The Government regrets its error and is working to confirm that there is nothing else related to the Bank-1 investigation that has any bearing in this case, and that there have been no other

International Housing Company when it was reviewing" one of the transactions in the case. (Trial Tr. at 931.)  GX 411 presented an example of a bank doing precisely what defense counsel had accused Citigroup of failing to do – it researched a flagged transaction, and then added the concerning party to its sanctions filter.

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 3

omissions from the materials produced to the defense, both at the U.S. Attorney's Office and DANY.  And, in light of our late disclosure of GX 411, we will not seek to offer it at trial.  To the extent the defense wishes to offer GX 411 in its case, the Government has no objection and will stipulate to its admissibility.  As a result, the defendant is not prejudiced by the late disclosure, and in light of the fact that they have not begun to present evidence, no curative instruction is necessary.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
   Assistant United States Attorneys
Garrett Lynch
   Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

2020.3.8 9.05-9.16pm Emails & Attachment

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Sunday, March 08, 2020 9:16 PM |
| **To:** | Bove, Emil (USANYS); Crowley, Shawn (USANYS) |
| **Cc:** | Lynch, Garrett; Lake, Stephanie (USANYS); Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor] |
| **Subject:** | FW: Order in 18cr224 |
| **Attachments:** | 18cr224 Order 3.08.20.pdf |

---

**From:** Nathan NYSD Chambers <NathanNYSDChambers@nysd.uscourts.gov>
**Sent:** Sunday, March 8, 2020 9:05 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Attached please find another Order from Judge Nathan that will appear on the docket on Monday.  Please confirm receipt.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

---

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 5:01 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Attached please find a third Order from Judge Nathan that will appear on the docket on Monday.  Please confirm receipt.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

1

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 4:04 PM
**To:** 'Kim, Jane (USANYS) 4' <Jane.Kim@usdoj.gov>; 'Lake, Stephanie (USANYS)' <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; 'Fragale, David' <DFragale@steptoe.com>; 'Levin, Michelle' <mlevin@steptoe.com>; 'Silverman, Nicholas' <nsilverman@steptoe.com>; 'Weingarten, Reid' <RWeingarten@steptoe.com>; 'Lynch, Garrett' <LynchG@dany.nyc.gov>; 'Lynch, Garrett (USANYS) [Contractor]' <Garrett.Lynch@usdoj.gov>; 'Heberlig, Brian' <BHeberlig@steptoe.com>; 'Krouse, Michael (USANYS)' <Michael.Krouse@usdoj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Attached please find another Order from Judge Nathan that will appear on the docket on Monday.  Please confirm receipt.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

---

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 12:48 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Please confirm receipt of this Order.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

---

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 12:41 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** Order in 18cr224

Counsel,

Attached please find an Order from Judge Nathan that will appear on the docket on Monday.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

—v—

Ali Sadr Hashemi Nejad,

Defendants.

18-cr-224 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

In the letter filed this evening by the Government, Dkt. No. 275, the Government states

that "It was only in the context of this process that the Government realized that GX 411 was not

part of Bank-1's subpoena production, which had been provided to the defense in discovery."

The Court requires further explanation. Specifically, it is unclear from this sentence if

the Government realized GX 411 had not been previously disclosed before or after the

Government turned it over to the defense yesterday. Nor does this sentence indicate if, upon

learning of the late disclosure, the Government informed defense counsel or not. The

Government shall explain precisely when and how it realized that the document had erroneously

been withheld and when, if at all, upon learning of the failure to disclose this was communicated

to the defense.

Furthermore, the previously filed letter does not offer an explanation for how it came to

be that GX 411 was not (though should have been) provided to the defense as part of Bank-1's

subpoena production.

The Government is ordered to address these points by letter to be filed no later than 10

p.m. this evening. The defense may reply to the Government's letters by 11 p.m.

1

SO ORDERED.

Dated:  March 8, 2020
        New York, New York

3/8/20

_____
ALISON J. NATHAN
United States District Judge

2020.3.8 9.15-11.10pm Email Chain

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Sunday, March 08, 2020 11:10 PM |
| **To:** | Crowley, Shawn (USANYS) |
| **Cc:** | Krouse, Michael (USANYS); Bove, Emil (USANYS); Lake, Stephanie (USANYS) |
| **Subject:** | RE: Draft |

Yes. They were supposed to file at 11. Still waiting.

---

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Sunday, March 8, 2020 11:03 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Subject:** Re: Draft

Thanks guys. Can you forward along any reply? Thank you

> On Mar 8, 2020, at 9:55 PM, Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov> wrote:

> And really sorry for the quick turnaround – the order said we had to file by 10.

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Sunday, March 8, 2020 9:50 PM
**To:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>; Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** Draft

Not sure Stephanie sent this to you.

---

**From:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Sent:** Sunday, March 8, 2020 9:31 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** RE: Proofing and then I'll file these objections

Here's a shitty draft.

---

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Sunday, March 08, 2020 9:15 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** Proofing and then I'll file these objections

In 10 minutes unless anyone has objections.

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone: (212) 637-2038
Email: jane.kim@usdoj.gov

2020.3.8 9.22-9.41pm Email Chain & Attachment

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Sunday, March 08, 2020 9:41 PM |
| **To:** | Crowley, Shawn (USANYS); Bove, Emil (USANYS) |
| **Cc:** | Lynch, Garrett; Lake, Stephanie (USANYS); Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor] |
| **Subject:** | RE: Order in 18cr224 |
| **Attachments:** | U.S. v. Sadr |

**From:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Sent:** Sunday, March 8, 2020 9:31 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** Re: Order in 18cr224

Can you guys forward the transmittal email we sent to them when we produced the doc yesterday? Thanks

> On Mar 8, 2020, at 9:22 PM, Bove, Emil (USANYS) <EBove@usa.doj.gov> wrote:

> Thanks guys. We're around to turn the draft.

> On Mar 8, 2020, at 9:15 PM, Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov> wrote:

**From:** Nathan NYSD Chambers <NathanNYSDChambers@nysd.uscourts.gov>
**Sent:** Sunday, March 8, 2020 9:05 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Attached please find another Order from Judge Nathan that will appear on the docket on Monday.  Please confirm receipt.

Sincerely,
Alyssa O'Gallagher

Law Clerk to the Hon. Alison J. Nathan

---

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 5:01 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Attached please find a third Order from Judge Nathan that will appear on the docket on Monday.  Please confirm receipt.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

---

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 4:04 PM
**To:** 'Kim, Jane (USANYS) 4' <Jane.Kim@usdoj.gov>; 'Lake, Stephanie (USANYS)' <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; 'Fragale, David' <DFragale@steptoe.com>; 'Levin, Michelle' <mlevin@steptoe.com>; 'Silverman, Nicholas' <nsilverman@steptoe.com>; 'Weingarten, Reid' <RWeingarten@steptoe.com>; 'Lynch, Garrett' <LynchG@dany.nyc.gov>; 'Lynch, Garrett (USANYS) [Contractor]' <Garrett.Lynch@usdoj.gov>; 'Heberlig, Brian' <BHeberlig@steptoe.com>; 'Krouse, Michael (USANYS)' <Michael.Krouse@usdoj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Attached please find another Order from Judge Nathan that will appear on the docket on Monday.  Please confirm receipt.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

---

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 12:48 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor]

<Garrett.Lynch@usdoj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Order in 18cr224

Counsel,

Please confirm receipt of this Order.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

---

**From:** Nathan NYSD Chambers
**Sent:** Sunday, March 8, 2020 12:41 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>; Bbishop_steptoe.com <Bbishop@steptoe.com>; Fragale, David <DFragale@steptoe.com>; Levin, Michelle <mlevin@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>; Weingarten, Reid <RWeingarten@steptoe.com>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Heberlig, Brian <BHeberlig@steptoe.com>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** Order in 18cr224

Counsel,

Attached please find an Order from Judge Nathan that will appear on the docket on Monday.

Sincerely,
Alyssa O'Gallagher
Law Clerk to the Hon. Alison J. Nathan

<18cr224 Order 3.08.20.pdf>

## Lake, Stephanie (USANYS)

| | |
|---|---|
| **From:** | Lake, Stephanie (USANYS) |
| **Sent:** | Saturday, March 07, 2020 4:04 PM |
| **To:** | Weingarten, Reid; Heberlig, Brian; Silverman, Nicholas |
| **Cc:** | Krouse, Michael (USANYS); Kim, Jane (USANYS) 4; Lynch, Garrett (USANYS) [Contractor]; Milione, Shawn (USANYS) [Contractor] |
| **Subject:** | U.S. v. Sadr |
| **Attachments:** | GX 2284D.pdf; 3508-008.pdf; GX 411.pdf; GX 456.pdf; GX 495A 2280 Statements.pdf; GX 495B 9288 Statements.pdf; GX 704_Redacted.pdf; GX 705A.pdf; GX 705B.pdf; GX 2304A (rev'd 2020.3.7).pdf; 3504-10.pdf; 3505-06.pdf; 3513-02.pdf; 3513-03.pdf |

Counsel,

Mr. Dubowitz is still very ill. As a result, we do not intend to call him as a witness in our case-in-chief. It's possible that, depending on the defense case, we will call him as a rebuttal witness.

In addition, we've attached the following documents:

- Updated GX 2284D – there were formatting problems with our version. We think the attached corrects them.
- 3508-08 – 3500 from today
- GX 411 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 456 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 495A & B – we intend to offer these on Monday (likely in redacted form), although think a stipulation that the defendant had bank accounts at HSBC from January 2010 through October 2013 might be simpler. Let us know how you prefer to proceed.
- GX 704 – this is the modified version of the travel chart. Please confirm whether you have any remaining concerns.
- GX 705A & B – these are summary charts reflecting the information in GX 2090A. Please confirm whether you have any objections.
- Updated GX 2304A – we enlarged some of the cells, as the formatting of the PDFd excel file was cutting off some of the data. The content is the same.
- 3504-10 – Peri 3500, which was provided in hard copy yesterday morning.
- 3505-06 – Blair 3500, which was provided in hard copy yesterday morning.
- 3513-02 – Paralegal 3500 for summary chart (you may already have this)
- 3513-03 – Paralegal 3500 for summary chart (you may already have this)

We are still working on one additional summary chart, which we expect to provide later today.

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

2020.3.8 9.31pm Email & Attachment

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Lake, Stephanie (USANYS) |
| **Sent:** | Sunday, March 08, 2020 9:31 PM |
| **To:** | Kim, Jane (USANYS) 4; Krouse, Michael (USANYS); Lynch, Garrett; Lynch, Garrett (USANYS) [Contractor] |
| **Subject:** | RE: Proofing and then I'll file these objections |
| **Attachments:** | 2020.03.08 Letter to Nathan re GX 411 (2).docx |

Here's a shitty draft.

---

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Sunday, March 08, 2020 9:15 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** Proofing and then I'll file these objections

In 10 minutes unless anyone has objections.

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone:  (212) 637-2038
Email:  jane.kim@usdoj.gov



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 8, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    **Re:**    ***United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)**

Dear Judge Nathan:

      The Court writes in response to the Court's order from 9:00 this evening.  The Government apologizes for the lack of clarity in its prior email.

      The Government found GX 411 in its emails on Friday night, looked at the Commerzbank subpoena production, and did not find it.  The members of the team discussed the document the next morning and confirmed that it likely had not been produced to the defense previously. The Government had a paralegal stamp it later in the day, and produced it to the defense.  The Government did not specifically identify that GX 411 had not previously been produced in discovery.  Defense counsel responded shortly after the Government provided GX 411 and asked how long the Government had GX 411, and why they had not previously received it.  The Government responded and explained that we had been aware of the letter since mid-January, and had mistakenly believed that it was part of the discovery in the case.

      When SAUSA Lynch sent what is now GX 411 to the AUSAs in the case in January, the AUSAs assumed that this was a document that came from this case (specifically, the subpoena to Commerzbank), and that it was therefore a document that had been previously produced to the

The Honorable Alison J. Nathan, U.S.D.J.
March 8, 2020
Page 2

defense as part of discovery.  This was an incorrect assumption. The document in fact was obtained in an unrelated DANY investigation and was not provided to this Office before January 2020.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
    Jane Kim / Michael Krouse / Stephanie Lake
      Assistant United States Attorneys
    Garrett Lynch
      Special Assistant United States Attorney
    (212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

2020.3.8-22 9.38pm Text Excerpt

**Add and share your name and photo**
Set Up…

Verizon

SC

Shawn >

Sun, Mar 8, 9:38 PM

Talked to Krouse. He's going to put her on, no problem

Tue, Mar 24, 6:57 PM

iMessage

2020.3.8 9.41pm Text

.ıll Verizon

12:23 PM



2 People >

Add and share your name and photo
Set Up...

Sun, Mar 8, 9:41 PM

I don't know if it helps or hurts to say that when we sent it we didn't think it was a rule 16 violation because we didn't think it helped them and hadn't intended to use it until we sent it

Michael K. .Krouse

I think that helps

We also did not have it in our possession, and it was from a different case, until Jan 2020

Jane .Kim

It'll be okay Steph

I can put some bullets together

iMessage

2020.3.8 9.42pm Email

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Lynch, Garrett <LynchG@dany.nyc.gov> |
| **Sent:** | Sunday, March 08, 2020 9:42 PM |
| **To:** | Lake, Stephanie (USANYS) |
| **Subject:** | RE: Proofing and then I'll file these objections |

Under the bus again! Eureka! If you care for it, here's the outline of the Commerz investigation:

- Initiated in January 2011; concluded in March 2015.
- Focused on conduct in period from 2002 – 2007 at Commerzbank, AG in Germany.
- Obtained voluminous data related bank's USD transaction activity in that period.
- Also obtained information during investigation about sanctions related activity the bank detected during the course of our investigation and voluntarily reported to OFAC. Received 217 pages. This letter was included in those 217 pages.
-

In January 2020, I recalled seeing this document in those records and provided it to you.

I have reviewed the other 217 records, and there is no other record related to any individual or entity in this case.

I have reviewed the emails and records we obtained related to the author of the letter (Deepa Keswani), and all of the records we have (other than the 217 pages of OFAC disclosures) date to the period of the conduct under investigation (i.e., 2002-2007) and do not relate to this transaction or to these entities.

Still reviewing other stuff…

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Sunday, March 8, 2020 9:31 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>
**Subject:** RE: Proofing and then I'll file these objections

Here's a shitty draft.

---

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Sunday, March 08, 2020 9:15 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** Proofing and then I'll file these objections

In 10 minutes unless anyone has objections.

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone: (212) 637-2038
Email: jane.kim@usdoj.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

2020.3.8 9.47pm Email

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Lynch, Garrett <LynchG@dany.nyc.gov> |
| **Sent:** | Sunday, March 08, 2020 9:47 PM |
| **To:** | Lake, Stephanie (USANYS) |
| **Subject:** | RE: Proofing and then I'll file these objections |

Also, impossible to review the data produced from Germany (the vast, vast majority – we were investigating the German bank, not it's U.S. branch) since it's all redacted under data privacy (i.e., employee, individual, and entity names were all anonymized – it would just say "Iranian Entity 1", for example).

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Sunday, March 8, 2020 9:31 PM
**To:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>
**Subject:** RE: Proofing and then I'll file these objections

Here's a shitty draft.

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Sunday, March 08, 2020 9:15 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lynch, Garrett <LynchG@dany.nyc.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Subject:** Proofing and then I'll file these objections

In 10 minutes unless anyone has objections.

Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone: (212) 637-2038
Email: jane.kim@usdoj.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

2020.3.8 11.19pm Email & Attachment

**Lake, Stephanie (USANYS)**

---

| | |
|---|---|
| **From:** | Krouse, Michael (USANYS) |
| **Sent:** | Sunday, March 08, 2020 11:19 PM |
| **To:** | Crowley, Shawn (USANYS); Bove, Emil (USANYS) |
| **Cc:** | Kim, Jane (USANYS) 4; Lake, Stephanie (USANYS) |
| **Subject:** | Here is the reply |
| **Attachments:** | Defense reply.pdf; Defense reply (attachment).pdf |

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

Brian M. Heberlig
202 429 8134
bheberlig@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

March 8, 2020

<u>By ECF</u>

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

Re:  *United States v. Ali Sadr Hashemi Nejad*, Case No. 18-cr-224 (AJN)

Dear Judge Nathan:

We respectfully reply to the government's 10 p.m. letter regarding the belated production of GX 411.  Dkt. No. 77.  We also note that whereas the government apparently has access to documents that Commerzbank produced in response to a subpoena in some other matter, the government produced to defense exactly four documents from Commerzbank's subpoena return in this matter (including a blank envelope and a duplicate).

We attach the relevant correspondence between the parties that followed the first identification of GX 411 on Saturday March 7, 2020.  We will be prepared to address the matter in Court tomorrow.

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
rweingarten@steptoe.com

The Honorable Alison J. Nathan
March 8, 2020
Page 2

**Steptoe**

Brian M. Heberlig (*Pro Hac Vice*)
Bruce C. Bishop (*Pro Hac Vice*)
David M. Fragale
Nicholas P. Silverman (*Pro Hac Vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 429-3000Bishop
Fax: (202) 429-3902
bheberlig@steptoe.com

*Counsel for Defendant Ali Sadr Hashemi Nejad*

cc:     Counsel of Record (via ECF)

# Exhibit A

| From: | Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov> |
|---|---|
| Sent: | Saturday, March 7, 2020 5:36 PM |
| To: | Heberlig, Brian; Lake, Stephanie (USANYS); Weingarten, Reid; Silverman, Nicholas |
| Cc: | Krouse, Michael (USANYS); Lynch, Garrett (USANYS) [Contractor]; Milione, Shawn (USANYS) [Contractor] |
| Subject: | RE: U.S. v. Sadr |

Brian,

We do not agree with your characterization of GX 430, 431, 432, or 411 as *Brady*. These are all exhibits the Government has introduced or is seeking to introduce in our case. Perhaps you can explain how it is you think GX 411 is helpful to your case.

In any event, we have been aware of the letter since mid-January. We thought it was part of the Commerzbank subpoena return that was produced in discovery. We now understand that it came from an unrelated DANY investigation, and therefore was not in the Commerzbank subpoena return.

It is not clear to us how this document would have been relevant to the OFAC witness's testimony.

Jane

---

**From:** Heberlig, Brian <BHeberlig@steptoe.com>
**Sent:** Saturday, March 7, 2020 4:57 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Weingarten, Reid <RWeingarten@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** RE: U.S. v. Sadr

We request immediate disclosure of (1) where GX411 came from, (2) how long it has been in the government's possession, (3) why we are only receiving it today. This is the second episode—along with GX430, GX431, and GX432—of the government producing fundamentally exculpatory documents mid-trial. In this instance, the document was produced after the government's OFAC witness, who would have been subject to cross-examination on this document. Provide this information by 6 pm or we will see the intervention of the Court.

---

**From:** Lake, Stephanie (USANYS) <Stephanie.Lake@usdoj.gov>
**Sent:** Saturday, March 7, 2020 4:24 PM
**To:** Weingarten, Reid <RWeingarten@steptoe.com>; Heberlig, Brian <BHeberlig@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>; Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Lynch, Garrett (USANYS) [Contractor] <Garrett.Lynch@usdoj.gov>; Milione, Shawn (USANYS) [Contractor] <Shawn.Milione@usdoj.gov>
**Subject:** RE: U.S. v. Sadr

Counsel,

We attempted to send you a number of attachments, which will not go through without encryption. It looks like Steptoe's servers are blocking the encrypted email. Shawn will upload the files to the link he has been using.  The descriptions are below.

Stephanie

---

**From:** Lake, Stephanie (USANYS)
**Sent:** Saturday, March 07, 2020 4:04 PM
**To:** Weingarten, Reid <RWeingarten@steptoe.com>; Heberlig, Brian <BHeberlig@steptoe.com>; Silverman, Nicholas <nsilverman@steptoe.com>
**Cc:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Milione, Shawn (USANYS) [Contractor] <SMilione@usa.doj.gov>
**Subject:** U.S. v. Sadr

Counsel,

Mr. Dubowitz is still very ill. As a result, we do not intend to call him as a witness in our case-in-chief.  It's possible that, depending on the defense case, we will call him as a rebuttal witness.

In addition, we've attached the following documents:

- Updated GX 2284D – there were formatting problems with our version. We think the attached corrects them.
- 3508-08 – 3500 from today
- GX 411 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 456 – we intend to offer this on Monday. Let us know if you will stipulate to authenticity.
- GX 495A & B – we intend to offer these on Monday (likely in redacted form), although think a stipulation that the defendant had bank accounts at HSBC from January 2010 through October 2013 might be simpler. Let us know how you prefer to proceed.
- GX 704 – this is the modified version of the travel chart. Please confirm whether you have any remaining concerns.
- GX 705A & B – these are summary charts reflecting the information in GX 2090A. Please confirm whether you have any objections.
- Updated GX 2304A – we enlarged some of the cells, as the formatting of the PDFd excel file was cutting off some of the data. The content is the same.
- 3504-10 – Peri 3500, which was provided in hard copy yesterday morning.
- 3505-06 – Blair 3500, which was provided in hard copy yesterday morning.
- 3513-02 – Paralegal 3500 for summary chart (you may already have this)
- 3513-03 – Paralegal 3500 for summary chart (you may already have this)

We are still working on one additional summary chart, which we expect to provide later today.

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

2020.3.9 4.22am Email

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Spiller, Christina (NY) <Christina.Spiller@commerzbank.com> |
| **Sent:** | Monday, March 09, 2020 4:22 AM |
| **To:** | Lynch, Garrett |
| **Cc:** | Lake, Stephanie (USANYS); Fruchter, Michael |
| **Subject:** | RE: Trial witness |

Hi Garrett,

I apologize but I didn't see your message until just now. My phone was in airplane mode and I'm in Austria for the week. Can you please reach out to Mike Fruchter (copied) if you still need assistance, and I will also have my phone today.

Best,
Christina


Sent from my Samsung Galaxy smartphone.

-------- Original message --------
From: "Lynch, Garrett" <LynchG@dany.nyc.gov>
Date: 3/7/20 2:46 AM (GMT+01:00)
To: "Spiller, Christina (NY)" <Christina.Spiller@commerzbank.com>
Cc: "Lake, Stephanie (USANYS)" <Stephanie.Lake@usdoj.gov>
Subject: RE: Trial witness


Hi Christina,

I'm sorry to disturb you on a Friday night, but are you available tonight or tomorrow to quickly discuss a possible trial witness for Monday? I know this is very sudden notice, but an issue unexpectedly has made the one payment that went through Commerz in our case relevant.

Thank you!

Garrett



-------- Original message --------
From: "Spiller, Christina (NY)" <Christina.Spiller@commerzbank.com>
Date: 1/31/20 10:42 AM (GMT-05:00)
To: "Lynch, Garrett" <LynchG@dany.nyc.gov>
Cc: "Lake, Stephanie (USANYS)" <Stephanie.Lake@usdoj.gov>, "Krouse, Michael (USANYS)" <Michael.Krouse@usdoj.gov>, "Kim, Jane (USANYS) 4" <Jane.Kim@usdoj.gov>
Subject: RE: Trial witness

Hello Garrett,

I just got your message and am happy to speak at your convenience.  I'm free for most of today (except between 4.30 and 5.30 pm) and next week is pretty flexible as well.

Best,

Christina

Christina Spiller

Commerzbank AG

New York Branch

+1 (212) 895-5267

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, January 31, 2020 10:18 AM
**To:** Spiller, Christina (NY)
**Cc:** Lake, Stephanie (USANYS); Krouse, Michael (USANYS); Kim, Jane (USANYS) 4
**Subject:** Trial witness

Hello Christina,

I left you a voicemail yesterday about a case I'm handling with the Southern District that is going to trial in early March.  It involves a series of USD payments cleared through banks in New York in violation of U.S. sanctions against Iran in the 2011-2013 time period.  In particular, one payment in April 2011 was processed through Commerzbank's Frankfurt and New York branches in the amount of $29 million (the wire transfer

record is attached).  At trial, we likely will need a witness from Commerz to (a) authenticate the wire transfer record and possibly (b) testify about Commerz's payment screening at that time in NY.  Can you let us know a good time to discuss?


Thanks,

Garrett


Garrett A. Lynch

Deputy Bureau Chief

Major Economic Crimes Bureau

New York County District Attorney's Office

(212) 335-4335

lynchg@dany.nyc.gov




This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

2020.3.9 7.59am Email

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Krouse, Michael (USANYS) |
| **Sent:** | Monday, March 09, 2020 7:59 AM |
| **To:** | Lynch, Garrett (USANYS) [Contractor]; Lake, Stephanie (USANYS); Kim, Jane (USANYS) 4 |
| **Subject:** | RE: Order |

I will handle the argument about GX 411.  Can one of you handle:  (1) making sure we have admitted everything we want to admit as exhibits; (2) arguing defense exhibits?

---

**From:** Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>
**Sent:** Monday, March 9, 2020 7:56 AM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** Order

What is the order for today?  Is this it?

1. Peri cross/redirect.
2. Payments.
3. Payment problems.
4. Travel.
5. Follow the money.
6. Conte.
7. Evasion.

2020.3.9 3.38pm Email & Attachment

**Lake, Stephanie (USANYS)**

---

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **Sent:** | Monday, March 09, 2020 3:38 PM |
| **To:** | Laroche, Matthew (USANYS); Denton, David (USANYS); Lake, Stephanie (USANYS); Krouse, Michael (USANYS); Kim, Jane (USANYS) 4; Garrett Lynch; DeFilippis, Andrew (USANYS) |
| **Subject:** | Draft-Declaration-Template.docx |
| **Attachments:** | Draft-Declaration-Template.docx |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | DECLARATION |
| ALI SADR HASHEMI NEJAD, | 18 CR 224 (ALC) |
| Defendant. | |

I, , pursuant to Title 28, United States Code, Section 1746, declare under penalty of perjury:

1.      I am an attorney admitted to the bar of the State of New York and the bar of this Court, and one of the Assistant United States Attorneys for the Southern District of New York previously responsible for this matter.

2.      From approximately XX through approximately XX, I was one of the Assistant United States Attorneys assigned to this case.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing information is true and correct.

Dated:      New York, New York
            March 9, 2020

_____
Andrew J. DeFilippis
Assistant United States Attorney

1

2020.3.9 8.40-9.07pm Email Chain & Attachment

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Monday, March 09, 2020 9:07 PM |
| **To:** | Bove, Emil (USANYS); Krouse, Michael (USANYS); Lake, Stephanie (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | RE: Here is a draft letter |

Not yet.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:06 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Do we have the transcript from today yet?

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

　　Re:　　*United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

　　The Government writes to provide further facts regarding the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"), and the circumstances surrounding the late production of what has now been marked as Government Exhibit ("GX") 411.

　　At the outset, the Government wants to make clear that, if the defense wishes to offer GX 411, the Government consents to the proposed curative instruction.  The Government is also willing to enter into the stipulation proposed by Reid Weingarten, or a modified version of the stipulation in light of the disclosures contained in this letter.

　　All former and current members of the Government's prosecution team have now completed a diligent review of all files (including, but not limited to, emails, hard copy correspondence, hard copy files, and notes) for any materials reflecting communications or correspondence with OFAC.  The members of the prosecution team includes AUSAs Andrew DeFilippis, David Denton, Rebekah Donaleski, Jane Kim, Michael Krouse, Stephanie Lake, Matthew Laroche, as well as Special Assistant United States ("SAUSA") Attorney Garrett Lynch.

　　Based on the diligent review, no AUSA on the prosecution team had any communications or correspondence with OFAC, except in connection with (1) the preparation of Mr. Ted Kim to testify at trial, and (2) the OFAC license check (which has been admitted as Government Exhibit 602).  However, as explained in detail below, SAUSA Lynch did have substantive discussions with OFAC.  Copies of emails between SAUSA Lynch and officials at OFAC were produced to the defense tonight at 7:25 p.m., and are attached to this letter as Exhibit A ("Ex. A").  Set forth

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

below is a chronological account of SAUSA Lynch's communications with OFAC during this case.

     First, SAUSA Garrett Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA"). In January 2012, while at DANY, ADA Lynch was assigned to work on an investigation into Commerzbank, A.G., a German bank that had been under investigation since January 2011 by DANY, the United States Department of Justice ("DOJ"), and multiple regulatory agencies. That investigation concerned alleged violations of U.S. sanctions laws and regulations during the period 2002 through 2007.

     During the course of that investigation, DANY received, from Commerzbank, 15 voluntary disclosures that the Commerzbank branch in New York City had made to OFAC between March 2010 and October 2014. In total, DANY received approximately 215 pages related to those disclosures. GX 411 was one such disclosure. In March 2015, Commerzbank entered deferred prosecution agreements with DANY and DOJ.

     In May 2015, ADA Lynch was assigned to work on the DANY investigation related to the defendant, Ali Sadr Hashemi Nejad. On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch, which made the following request:

> For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spamise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S., including, but not limited to, the following wire transfer information:
>
> 1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
> 2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ. (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
> 3. Possible Account Number: IBAN CH7708530519663100203
> 4. Possible CHIPS System Sequence Number: 0262787
> 5. Possible Credit/Debit Reference Number: FAAS109400150500
> 6. Possible Transaction Reference Number: 5111500094FC
> 7. Possible Transaction Date: 4/4/2011
> 8. Possible Amount: USD $29,442,967.57

Ex. A at 4. In October 2015, DANY received records in response to the subpoena. Those subpoena returns were produced to the defense in this case during Rule 16 discovery.

     On May 19, 2016, ADA Lynch had a conversation with a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and regulations. Ex. A at 6. During that call, ADA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by ADA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, ADA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, ADA Lynch asked OFAC Officer-1 about arranging an OFAC witness for possible grand jury testimony.  ADA Lynch also offered "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief").  Ex. A at 8.

On or about August 5, 2016, ADA Lynch had a telephone call with the Section Chief, along with two other OFAC enforcement officers.  Ex. A at 10.  During this call, ADA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

In June 2017, ADA Lynch was appointed as a SAUSA.

Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call, however, did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").

On September 21, 2017, SAUSA Lynch had a call with OFAC Officer-1.  Ex. A at 11. During that call, SAUSA Lynch outlined the facts of the case in order to get OFAC Officer-1's thoughts on the proposed federal charges.  That same day, following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "PowerPoint").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the PowerPoint, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanks SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  No one from OFAC followed-up with SAUSA Lynch on next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

SAUSA Lynch has no further records reflecting communications about this case with OFAC, or any recollection of other such communications.  SAUSA Lynch never inquired or learned whether OFAC took independent steps to investigate any of the entities, individuals, or

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

banks involved in this case.  Further, during the course of the above-described phone calls and conversations, SAUSA Lynch never discussed the contents of GX 411 with anyone at OFAC.  Nor did SAUSA Lynch learn what, if any, actions OFAC took in response to receiving that document.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million.  AUSA Lake stated a document previously provided by a witness "should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email caused SAUSA Lynch to recall the Commerzbank document he previously saw while working at DANY.  That same day, SAUSA Lynch reviewed a file in his DANY office containing records received from Commerzbank during the course of the separate investigation into Commerzbank, which had concluded in March 2015.  During that review, he found the document later marked as GX 411.  That same day, SAUSA Lynch sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411, and said:  "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment."  None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email.  Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief.  At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been.  AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020.  GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails.  After reviewing GX 411, AUSA Lake looked at the Commerzbank subpoena production, and discovered that GX 411 was not included.  The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense.  At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document, and did not consider it to be *Brady*.  The prosecution team decided to seek to admit GX 411 in its case in chief.  AUSA Lake sent the document, along

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

with others, to the defense.  The Government did not specifically identify that GX 411 had not previously been produced in discovery.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
    Assistant United States Attorneys
Garrett Lynch
    Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

2020.3.9 8.40-10.16pm Email Chain & Attachments

**Lake, Stephanie (USANYS)**

---

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Monday, March 09, 2020 10:16 PM |
| **To:** | Bove, Emil (USANYS); Krouse, Michael (USANYS); Lake, Stephanie (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | RE: Here is a draft letter |
| **Attachments:** | Time Sensitive Question |

Attaching email to OFAC.  Will confirm Fuenmayor doc.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:11 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Did we produce the "document in the material Fuenmayor gave us"?

---

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:10 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Attached.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:58 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Can you send me exs a and b please

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

1

(212) 637-2279

# **<u>EXHIBIT A</u>**

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

August 31, 2015

**VIA CERTIFIED MAIL**
Commerzbank AG
Legal Services
225 Liberty Street
New York, NY 10281

Re: Investigation No. M2013-00223036

Dear Custodian of Records:

Enclosed, please find a grand jury subpoena relating to the above-referenced investigation. Also, please find a business records affidavit attesting to the validity of records. Please have a duly authorized custodian of records, or other employee or agent who is familiar with such records, sign and return the attached affidavit along with the records produced.

These records are needed in connection with a grand jury investigation. **These records are needed on or before September 14, 2015.** In lieu of appearing personally with the requested documents, you may email the requested material to ThomasM@dany.nyc.gov (if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, New York, NY 10013, Major Economic Crimes Bureau, to the attention of Financial Intelligence Analyst Matthew Thomas.

**Please Note: This subpoena calls for an electronic copy of wire transfers processed through the Clearing House Interbank Payments Systems.**

**You are ORDERED not to disclose the existence of this subpoena. Such disclosure might impede the investigation being conducted and interfere with the enforcement of law.**

Please note that *electronic copies are preferred.* If you have any questions concerning the subpoena, please call Mr. Thomas at 212-335-4053. Your attention to this matter is greatly appreciated.

Sincerely,

Garrett A. Lynch
Assistant District Attorney
212-335-4335

Enc.

Ex. A at 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | BUSINESS RECORDS AFFIDAVIT |
| -against- | STATE OF NEW YORK |
| | COUNTY OF NEW YORK |
| John Doe, | |
| Defendant. | M2013-00223036 |

I _____ _____, declare that I am a duly authorized custodian of the records, or other employee or agent, of _____ (*name of business*), and am familiar with the record keeping practices of _____ (*name of business*). I make this affidavit pursuant to New York State Criminal Procedure Law Section 190.30(8).

Attached hereto are _____ [*circle one*] page(s)/CD(s)/flash drive(s) of records of account number _____. These pages contain the following types of records [*list or description of records*]:

_____    _____

_____    _____
_____

I am familiar with the above-described records. These records were made in the regular course of business, and it was the regular course of such business to make and keep these records. The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter. The person who made these records was under a business duty to do so accurately.

*False statements made herein are punishable as a Class A misdemeanor pursuant to P.L. § 210.45.*

X _____
    Signature (Deponent)                            Date

Ex. A at 2

# SUBPOENA

(Duces Tecum)
FOR A WITNESS TO ATTEND THE
## GRAND JURY

In the Name of the People of the State of New York

### To: Commerzbank AG

**YOU ARE COMMANDED** to appear before the **GRAND JURY** of the County of New York, at the Grand Jury Room 9, of the District Attorney's Office, at, 100 Centre Street (between Hogan Place and White Street), on the 9th floor in the Borough of Manhattan, of the City of the New York, on September 14, 2015 at 9:00AM, as a witness in a Grand Jury investigation:

**Investigation into the Business and Affairs of John Doe (Case No. M2013-00223036)**

**AND**, YOU ARE DIRECTED TO BRING WITH YOU AND PRODUCE AT THE TIME AND PLACE AFORESAID, THE FOLLOWING ITEMS IN YOUR CUSTODY:

### SEE EXHIBIT A

**IF YOU FAIL TO ATTEND AND PRODUCE SAID ITEMS,** you may be adjudged guilty of a Criminal Contempt of Court, and liable to a fine of one thousand dollars and imprisonment for one year.

**YOU ARE ORDERED** not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.

Dated in the County of New York,
August 31, 2015

So Ordered:

CYRUS R. VANCE, JR.
**District Attorney, New York County**

_____
Justice of the Supreme Court
State of New York

By: _____
Garrett A. Lynch
Assistant District Attorney
(212) 335-4335

PT. 1 AUG 3 1 2015
HON. ABRAHAM L. CLOTT

Note: In lieu of appearing personally with the requested data, you may e-mail or deliver electronic copies. E-mail the requested material to ThomasM@dany.nyc.gov if less than 10mb); or deliver CDs, DVDs, or USB 2.0 external hard drives to the New York County District Attorney's Office, One Hogan Place, Major Economic Crimes Bureau, New York, NY 10013, for the attention of Assistant District Attorney Garrett A. Lynch c/o Matthew Thomas.

*Case No.: M2013-00223036*

Ex. A at 3

## EXHIBIT "A" TO SUBPOENA DATED AUGUST 31, 2015

ITEMS TO BE PRODUCED are those in the actual and constructive possession of Citibank, N.A. ~~Commerzbank AG~~ *Commerzbank AG MJT ꝛW? Sep. 15, 2015* and all entities, agents, officers, employees, officials, over which it has control, including its subsidiaries:

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spartrise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

## DEFINITIONS AND INSTRUCTIONS

As used herein, unless otherwise indicated, the following terms shall have the meanings set forth below:

A. "Related accounts" are those accounts that: (i) are or were held by the same person(s) or entities; (ii) are or were held by a family relation or business partner; (iii) share or shared corporate ownership; (iv) share or shared subsidiaries; (v) share or shared parent entities; and (vi) share or shared the same signatories.

B. The words "relating to," "including," "including but not limited to," and "concerning" shall be construed as is necessary in each case to make the request to produce inclusive rather than exclusive, and are intended to convey, as appropriate in context, the concepts of comprising, respecting, referring to, embodying, evidencing, connected with, commenting on, responding to, showing, refuting, describing, analyzing, reflecting, presenting, and consisting of, constituting, mentioning, defining, involving, or explaining, pertaining to in any way, expressly or impliedly, to the matter called for.

C. The words "and," "or," "each," and "all" shall be construed as is necessary in each case to make each request to produce inclusive rather than exclusive.

Ex. A at 4

D. Terms in the plural include the singular and terms in the singular include the plural. Terms in the male include the female and terms in the female include the male. Neutral gender terms include all.

E. "Document" includes without limitation, any written, printed, typed, photocopied, photographic, recorded or otherwise created or reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, in the form maintained, having access to, constructively possessed, physically possessed, and controlled. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings, and drafts, preliminary versions, and revisions of such. It includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, faxes, messages, emails, voice mails, instant messenger services, studies, analyses, contracts, agreements, working papers, summaries, work papers, calendars, diaries, reports. It includes, without limitation, internal and external communications of any type. It includes without limitation documents in physical, electronic, audio, digital, video existence, and all data compilations from which the data sought can be obtained, including electronic and computer as well as by means of other storage systems, in the form maintained and in usable form.

F. "Communication" includes every means of transmitting, receiving or recording transmission or receipt of facts, information, opinion, data, or thoughts by one person, and between one and more persons, entities, or things.

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Thursday, May 19, 2016 11:22 AM |
| **To:** | Conroy, Christopher |
| **Subject:** | FYI |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Conroy, Christopher | Read: 5/19/2016 11:25 AM |

I ran our general facts in Housing by Dondarski again and he agrees we're on firm ground that it's violative (although, he did say it would be harder to establish on the payer side – but I think if we're just targeting Parada, we probably have enough – for someone like Aular who's just cutting the checks, no).

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Monday, August 1, 2016 12:36 PM |
| **To:** | 'Michael.Dondarski@treasury.gov' |
| **Subject:** | Request |

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons.  We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland.  Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

1

Ex. A at 7

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Lynch, Garrett |
| **Sent:** | Wednesday, August 3, 2016 9:26 AM |
| **To:** | Hochhauser, Rachel; Maloney, Christina |
| **Subject:** | FW: Request |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Hochhauser, Rachel | Read: 8/3/2016 10:23 AM |
| | Maloney, Christina | Read: 8/3/2016 9:44 AM |

The last guy we used was from the Global Targeting division, but I can't imagine it matters for what we need, which is pretty high level.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Tuesday, August 02, 2016 6:43 PM
**To:** Lynch, Garrett
**Cc:** Jeremy.Sausser@treasury.gov; Rachel.Fiorill@treasury.gov; Rosanna.Wells@treasury.gov; Julie.Malec@treasury.gov
**Subject:** RE: Request

Mr. Lynch,

I hope all is well and that you're enjoying your summer, too. My apologies for not getting back to you sooner. I've been going through a painful email exercise at work that has wreaked havoc on my ability to receive, read, or send emails over the past few days. I hope it is, or will soon be, resolved.

As for your inquiry below, we (OFAC Enforcement) would be the right shop/unit for you to touch base with on the issues below. Let us discuss internally and reach out to you sometime this week. I'll be out-of-the-office starting Thursday for a couple of days (I'll be back on Wednesday the 10th) but will make sure we touch base with you before my trip/during my absence.

I also wanted to introduce you to, and make sure you have the contact information for, my management team. Jeremy Sausser, Rachel Fiorill, and Rosanna Wells are Section Chiefs, and Julie Malec is the/my Senior Advisor for Enforcement. One (or more) of us will get in touch with you in the coming days.

Keep in touch!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Monday, August 01, 2016 12:36 PM
**To:** Dondarski, Michael
**Subject:** Request

Sir, I hope you're doing well in your new position and enjoying your summer.

We have a case that we intend to present to a grand jury in the next couple months that is similar to our IRISL case back in 2011 (and similar to SDNY's current Zarrab case), and I'm reaching out for a couple of reasons. We've spoken about the case in general terms before – it involves an Iranian company doing business in South America and receiving USD payments (cleared through the US) through front company accounts in Switzerland. Our evidence is pretty strong that our targets were aware of US sanctions and structured the USD payments to evade them and to disguise the Iranian

Ex. A at 8

connection to the payments (moreover, our primary Iranian targets was a U.S. person for a chunk of the relevant period – he got his green card in 2012).

Anyway, we'd like to coordinate with OFAC for two reasons: (1) to provide you with information so you can take action on your own if so desired, and (2) we'd love to have an OFAC rep testify in the grand jury about US sanctions, IEEPA, the ITSRs, etc., as David Tessler did back in 2011 on the IRISL case.  Who's the best person for us to contact about either or both?  Thanks!

Best,
Garrett

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 9

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Rosanna.Wells@treasury.gov |
| **Sent:** | Monday, August 8, 2016 9:08 AM |
| **To:** | Lynch, Garrett |
| **Cc:** | Hochhauser, Rachel; Maloney, Christina; Kaveh.Miremadi@treasury.gov; Alonzo.Bell@treasury.gov |
| **Subject:** | RE: Thanks |

Thanks Garrett.  I'm looping in the two OFAC Enforcement Officers who were on the call.

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, August 05, 2016 10:32 AM
**To:** Wells, Rosanna
**Cc:** Hochhauser, Rachel; Maloney, Christina
**Subject:** Thanks

Rosie, thanks for the call – we'll be in touch soon.

Have a great weekend.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 10

## Lynch, Garrett

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Friday, September 22, 2017 5:44 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov |
| **Subject:** | RE: Case |

Garrett,

It was great speaking with you all yesterday, and thanks for passing along the information below/attached. We'll take a look and will get back to you. And thanks for the well wishes!

Have a great weekend,

Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg — we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 11

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Wednesday, September 20, 2017 4:08 PM |
| **To:** | Lynch, Garrett |
| **Subject:** | RE: Call |

Hey Garrett,

Yeah, we're in the final stages and it seems it could be any day now.  Excited and nervous at the same time.

Happy to chat tomorrow or Friday, though it could obviously change depending on the circumstances above.  I'd normally have someone else from my office join or participate so they could continue the conversation in my absence, but my team is absolutely stretched thin at the moment, so it'll just be me for the time being.

Let me know what works best - - - my calendar is relatively open.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, September 20, 2017 11:42 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Michael,

I hear you guys are in the home stretch – good luck!

This call with SDNY that I tried to set up back in July never happened – my apologies, there was a mix-up on with my colleague down there.  Would you be able to do a call tomorrow or Friday?  Again, we're planning to go in to a grand jury in the near future and wanted to run this case by you again.

Thanks, and all the best.

Garrett

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:57 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Sounds good – thanks, you too!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 11:13 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Ex. A at 12

Ok – we'll try you after 3:00 on Monday – that seems to be the best time up here.  Have a great weekend!

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Friday, July 28, 2017 11:09 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Thanks, Garrett - - - make sure to enjoy your vacation!  Monday in the morning and early afternoon will be tough, but I should be available from 3:00 onwards.  Otherwise I'm free on Tuesday other than a 10:30 – 11:30 and 2:00 – 3:00.  Just let me know.

And do make sure to swing by if and when you're here – especially if it's in the building!

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, July 28, 2017 9:10 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Hello sir!  No worries – I know how slammed you all are.  I'm leaving on Vacation on Wednesday, so does early in the week work?  My SDNY colleagues are available for a call on Monday, any time but 10:00 and 4:30.  It looks like I'll be down there the week of August 14 (August 16, to be exact, on another matter involving Mrs. Dondarski).  I'll try to swing by.

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Thursday, July 27, 2017 9:55 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Mr. Lynch,

My apologies for the delay in getting back to you - - - we had an enforcement action last week that took up all of my time, and then I had to head out-of-town unexpectedly for a few days.

My schedule is relatively free next week and the week after if you're looking for some time in early August – for either or both the call and in-person meeting.  Any thoughts on your end?

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 5:40 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** RE: Call

Great news, Mike!  I'm very happy for you and Rachel – join the club!  You have a ways to go before you catch up with my record of three kids during the pendency of one investigation, though...

Our visit to DC is a moving target at this point, so maybe we start with a call to refresh your memory.  Why don't you shoot me some good dates/times and we can go from there.

All the best,
Garrett

2

**From:** Michael.Dondarski@treasury.gov [mailto:Michael.Dondarski@treasury.gov]
**Sent:** Wednesday, July 12, 2017 5:35 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** RE: Call

Hi Garrett,

It's an absolute pleasure to hear from you, sir.  I hope this email finds you well and that you've been enjoying the summer with the family.  I can't recall if I mentioned it to you, but my wife and I are expecting our first in September - - - very excited!

I do remember the case you all had been working on, and would be happy to touch base once to speak about it in greater detail.  I recall we had some questions with regard to which entities or persons were being charged and the roles they played in the transactions/conspiracy, so it would be great to catch-up.  Would that be best for an over the phone or in-person visit?

That's a perfect segway to say that it's always a pleasure to have a meet-and-greet with our friends from DANY.  What weeks/dates were you thinking?

Again, I hope all is well and look forward to a possible meet-and-greet.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Wednesday, July 12, 2017 10:25 AM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Subject:** Call

Michael,

Good morning, sir!  I hope the summer is treating you well so far in the swamp.  If you recall, I called you some time ago about an investigation we have involving Iran and Venezuela and a ton of USD payments flowing through the US to front companies in Switzerland.  We're now working the case jointly with SDNY and I've been cross-designated as a SAUSA.  It's likely we'll be presenting the case to a grand jury in the near future, so I thought it would be a good idea to touch base again and give you an overview of the facts, etc. since the indictment would charge a conspiracy to defraud the USG, conspiracy to violate IEEPA, etc.

If you have availability, I'm happy to schedule a call with my new colleagues, Matt Laroche and Andrew DeFilippis.  We also need to come down to the DC area for a prudential review at Langley at the end of the month in the event you all want to meet in person (I always like an excuse to visit you and your team!).

Best,
Garrett

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

Ex. A at 14

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Tuesday, September 26, 2017 4:00 PM |
| **To:** | Lynch, Garrett |
| **Cc:** | Matthew.Laroche@usdoj.gov; Ethan.Walpole@treasury.gov; Rosanna.Wells@treasury.gov |
| **Subject:** | RE: Case |

Garrett,

Thanks again for speaking last week and for passing along the slide deck. I'm copying Ethan Walpole and Rosie Wells from OFAC Enforcement on this email so they can coordinate with you on next steps or follow-up with any questions they have.

Best,
Mike

**From:** Lynch, Garrett [mailto:LynchG@dany.nyc.gov]
**Sent:** Friday, September 22, 2017 3:12 PM
**To:** Dondarski, Michael <Michael.Dondarski@treasury.gov>
**Cc:** Laroche, Matthew (USANYS) <Matthew.Laroche@usdoj.gov>
**Subject:** Case

Michael,

Thanks for the call yesterday. As always, great to chat with you. Attached is the powerpoint I mentioned which gives a rough sketch of the case, the players, and the evidence. Obviously, it's the tip of the iceberg – we're happy to share more information, records, etc.

Have a great weekend. Who know...maybe you'll be a father the next time we speak!

Garrett A. Lynch
Deputy Bureau Chief
Major Economic Crimes Bureau
New York County District Attorney's Office
(212) 335-4335
lynchg@dany.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. A at 15

**Lynch, Garrett**

| | |
|---|---|
| **From:** | Michael.Dondarski@treasury.gov |
| **Sent:** | Thursday, March 28, 2019 11:34 AM |
| **To:** | Lynch, Garrett |
| **Subject:** | CSE TransTel |
| **Attachments:** | 20170727_transtel_web post.pdf; transtel_settlement.pdf |
| | |
| **Importance:** | High |

Take a look at the attached documents, which OFAC publicized in a civil monetary penalty enforcement action taken against a Singaporean company.  The apparent violations related to U.S. Dollar transfers sent *through* U.S. financial institutions from the Singaporean entity to third-country parties for commercial projects/work conducted in Iran, so there are many similarities to your fact pattern.

Ex. A at 16

**ENFORCEMENT INFORMATION FOR JULY 27, 2017**

**Information concerning the civil penalties process can be found in the Office of Foreign Assets Control (OFAC) regulations governing each sanctions program; the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. part 501; and the Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, App. A. These references, as well as recent final civil penalties and enforcement information, can be found on OFAC's Web site at www.treasury.gov/ofac/enforcement.**

**ENTITIES – 31 CFR 501.805(d)(1)(i)**

**CSE Global Limited and CSE TransTel Pte. Ltd. Settle Potential Civil Liability for Apparent Violations of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.** CSE TransTel Pte. Ltd. ("TransTel"), a wholly-owned subsidiary of the international technology group CSE Global Limited ("CSE Global"), both of which are located in Singapore, has agreed to pay $12,027,066 to settle its potential civil liability for 104 apparent violations of the International Emergency Economic Powers Act (IEEPA) and the Iranian Transactions and Sanctions Regulations, 31 C.F.R. part 560 (ITSR).[1] Specifically, from on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and § 560.203 of the ITSR by causing at least six separate financial institutions to engage in the unauthorized exportation or re-exportation of financial services from the United States to Iran, a prohibition of § 560.204 of the ITSR.

OFAC determined that TransTel did not voluntarily self-disclose the apparent violations to OFAC, and that the apparent violations constitute an egregious case. Both the statutory maximum and base penalty civil monetary penalty amounts for the apparent violations were $38,181,161.

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for several energy projects in Iran and/or Iranian territorial waters. TransTel hired and engaged a number of different third-party vendors – including several Iranian companies – to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). In a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012 and signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (referred to hereafter as the "Letter of Undertaking"), TransTel made the following statement to the Bank: "In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE

---

[1] On October 22, 2012, OFAC changed the heading of the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. See 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. part 560 in effect at the time of the activity, regardless of whether such activity occurred before or after the regulations were renamed.

TransTel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere." TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012 – less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel appears to have violated § 1705 (a) of IEEPA and/or § 560.203 of the ITSR when it originated 104 USD wire transfers totaling more than $11,111,000 involving Iran. TransTel initiated the wire transfers from its account with the Bank. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects, or any Iranian parties.

For more information regarding the conduct that led to the apparent violations, please see the Settlement Agreement between OFAC and CSE Global and TransTel here.

The settlement amount reflects OFAC's consideration of the following facts and circumstances, pursuant to the General Factors under OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A. OFAC considered the following to be aggravating factors: (1) TransTel willfully and recklessly caused apparent violations of U.S. economic sanctions by engaging in, and systematically obfuscating, conduct it knew to be prohibited, including by materially misrepresenting to its bank that it would not route Iran-related business through the bank's branch in Singapore or elsewhere, and by engaging in a pattern or practice that lasted for 10 months; (2) TransTel's then-senior management had actual knowledge of – and played an active role in – the conduct underlying the apparent violations; (3) TransTel's actions conveyed significant economic benefit to Iran and/or persons on OFAC's List of Specially Designated Nationals and Blocked Persons by processing dozens of transactions through the U.S. financial system that totaled $11,111,812 and benefited Iran's oil, gas, and power industries; and (4) TransTel is a commercially sophisticated company that engages in business in multiple countries.

OFAC considered the following to be mitigating factors: (1) TransTel has not received a penalty notice, Finding of Violation, or cautionary letter from OFAC in the five years preceding the date of the earliest transaction giving rise to the apparent violations; (2) TransTel and CSE Global have undertaken remedial steps to ensure compliance with U.S. sanctions programs; and (3) TransTel and CSE Global provided substantial cooperation during the course of OFAC's investigation, including by submitting detailed information to OFAC in an organized manner, and responding to several inquiries in a complete and timely fashion.

This enforcement action highlights the sanctions compliance obligations of all individuals and entities that conduct business in OFAC-sanctioned jurisdictions or with OFAC-sanctioned parties

and that also process transactions directly or indirectly through the United States, or involving U.S. companies, or U.S.-origin goods, services, and technology. When signing letters of attestation or making other representations and warrantees to financial institutions that provide access to the U.S. financial system, individuals and entities should consider carefully whether they are willing and able to act within the parameters of such agreements.

For more information regarding OFAC regulations, please go to: www.treasury.gov/ofac.



# DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is made by and between CSE Global Limited ("CSE Global") and its subsidiary CSE TransTel Pte. Ltd. ("TransTel") (collectively referred to hereafter as "Respondent"), and the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

## I.  PARTIES

OFAC administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and proliferators of weapons of mass destruction, among others. OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

TransTel, a wholly-owned subsidiary of the international technology group CSE Global, is based in Singapore and supplies telecommunications systems to the oil and gas sector. At the time the apparent violations described in the Agreement occurred, TransTel conducted business in Iran through, and owned a 49 percent stake in, TransTel Engineering Kish Co Ltd, an Iranian limited liability company.

## II.  RECITALS

WHEREAS, OFAC has conducted an investigation into Respondent's activities involving apparent violations by Respondent of certain provisions of the sanctions regulations administered by OFAC.[1]

WHEREAS, OFAC administers and enforces a comprehensive trade embargo against Iran as set forth in the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560 (referred to hereafter as the ITSR or "Regulations"), issued under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 (IEEPA), and other statutes.[2]

WHEREAS, Respondent and OFAC wish to settle any apparent violations of the Regulations by Respondent that OFAC identified during its investigation.

NOW THEREFORE, Respondent and OFAC (the "Parties") hereby agree as follows:

---

[1] "Sanctions regulations administered by OFAC" include economic and trade sanctions enacted pursuant to Presidential national emergency powers or other specific legislation. Such "sanctions regulations administered by OFAC" include, but are not limited to, Executive Orders and regulations issued pursuant to 18 U.S.C. § 2332d; 21 U.S.C. §§ 1901-08; 22 U.S.C. § 287c; 22 U.S.C. § 2370(a); 31 U.S.C. § 321(b); 50 U.S.C. §§ 1701-06; § 4301-4341. *See generally* 31 C.F.R. ch. V.

[2] On October 22, 2012, OFAC changed the heading of 31 C.F.R. Part 560 from the Iranian Transactions Regulations to the ITSR, amended the renamed ITSR, and reissued them in their entirety. *See* 77 Fed. Reg. 64,664 (Oct. 22, 2012). For the sake of clarity, all references herein to the ITSR shall mean the regulations in 31 C.F.R. Part 560 at the time of the activity, regardless of whether such activity occurred before or after the regulations were reissued.

ENF 41441
**CSE Global Limited and CSE TransTel Pte. Ltd.**

### III.    FACTUAL STATEMENT

Between August 25, 2010 and November 5, 2011, TransTel entered into contracts with, and received purchase orders from, multiple Iranian companies to deliver and install telecommunications equipment for the South Pars Gas Field in the Persian Gulf (located between the territorial waters of Iran and Qatar), the South Pars Power Plant in Assalouyeh, Iran, and the Reshadat Oil Field in the Persian Gulf (operated by the Iranian Offshore Oil Company). At the time of the contracts and the apparent violations described in the Agreement, at least two of the Iranian companies that TransTel contracted or engaged with, Petropars[3] and SADRA,[4] were identified or designated on OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List"). The other Iranian companies included Ayra Nafte Shahab Co., Oil Industries Engineering and Constructions, and the Iranian Offshore Engineering and Construction Company.

In addition to providing goods, services, and equipment for these projects, TransTel hired and engaged a number of different third-party vendors—including several Iranian companies—to provide goods and services on its behalf in connection with the above-referenced contracts and purchase orders. CSE Global stated that it instructed TransTel to screen certain third-party vendors for OFAC purposes. All of the invoices associated with the third-party vendors required TransTel to make payments to the third-party vendors for goods and services provided in connection with the above-referenced projects.

Prior and subsequent to entering into the above-referenced contracts, CSE Global and TransTel separately maintained individual U.S. Dollar (USD) and Singaporean Dollar accounts with a non-U.S. financial institution located in Singapore (the "Bank"). Respondent provided the Bank with a letter entitled "Sanctions – Letter of Undertaking," dated April 20, 2012, signed by TransTel's then-Managing Director and CSE Global's then-Group Chief Executive Officer (CEO) (referred to hereafter as the "Letter of Undertaking").

TransTel made the following statement to the Bank in its Letter of Undertaking:

> In consideration of [the Bank] agreeing to continue providing banking services in Singapore to our company, we, CSE Transtel Pte. Ltd … hereby undertake not to route any transactions related to Iran through [the Bank], whether in Singapore or elsewhere.

TransTel continued to receive banking services from the Bank after execution and delivery of its Letter of Undertaking.

---

[3] On June 16, 2010, OFAC identified Petropars as an entity that was owned or controlled by the Government of Iran and added it to the SDN List. On January 16, 2016, OFAC removed Petropars from the SDN List and placed it on the List of Persons Identified as Blocked Solely Pursuant to Executive Order 13599, "Blocking Property of the Government of Iran and Iranian Financial Institutions." Any property or interests in property of Petropars that come within the United States or in the possession or control of a U.S. person must be blocked.
[4] On March 28, 2012, OFAC designated Iran Maritime Industrial Company SADRA pursuant to Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," and added it to the SDN List.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Despite the written attestation that TransTel and CSE Global provided to the Bank, TransTel appears to have begun originating USD funds transfers from its USD-denominated account with the Bank that were related to its Iranian business beginning no later than June 2012—less than two months after TransTel's and CSE Global's management signed and submitted the Letter of Undertaking. The transactions were destined for multiple third-party vendors (including several Iranian parties) that supplied goods or services to or for the above-referenced energy projects in Iran, and all of the funds transfers were processed through the United States. None of the transactions contained references to Iran, the Iranian projects (*i.e.,* South Pars Gas Field, South Pars Power Plant, or Reshadat Oil Field), or to any Iranian parties.

From on or about June 4, 2012 to on or about March 27, 2013, TransTel originated 104 funds transfers totaling $11,111,812 from its USD-denominated account at the Bank that were processed through the United States and related to the provision or supply of goods or services to Iran and/or persons located in Iran. (*See* attached Penalty Calculation Spreadsheet). These transactions were processed through the United States and caused multiple financial institutions— including several U.S. financial institutions—to engage in the prohibited exportation or re-exportation of financial services from the United States to Iran. TransTel appears to have had explicit knowledge and reason to know that the transactions were destined for or involved, or that the benefit of these funds transfers would be received in, Iran. As a result, TransTel appears to have violated § 1705 (a) of IEEPA, which makes it "...unlawful for a person to violate...or cause a violation of any...regulation, or prohibition issued under this chapter," and/or § 560.203 of the ITSR, which prohibits "any transaction ... [that] causes a violation of ... any of the prohibitions set forth" in the ITSR, by causing these financial institutions to engage in apparent violations of § 560.204 of the ITSR.

**Maximum Penalty:**

Pursuant to IEEPA, Respondent could be subject to a maximum civil monetary penalty totaling $38,181,161.

**Base Penalty:**

OFAC has determined that Respondent did not make a voluntary self-disclosure of the apparent violations, and that the apparent violations constitute an egregious case. Accordingly, the base civil monetary penalty for the apparent violations equals the sum of the maximum statutory civil monetary penalty amount for each apparent violation, which in this case totals $38,181,161.

**IV.    Terms of Settlement**

OFAC and Respondent agree as follows:

1.  In consideration of the undertakings of Respondent in paragraph 2 below, OFAC agrees to release and forever discharge Respondent, without any finding of fault, from any and

3

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

all civil liability in connection with the Apparent Violations[5] arising under the legal authorities that OFAC administers.

2. In consideration of the undertakings of OFAC in paragraph 1 above, Respondent agrees:

    A. Within fifteen (15) days of the date Respondent receives the unsigned copy of this Agreement, to:

        (i) sign, date, and mail an original signed copy of this Agreement to: ▮▮▮
        ▮▮▮▮▮▮▮▮, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220. Respondent should retain a copy of the signed Agreement and a receipt or other evidence that shows the date that Respondent mailed the signed Agreement to OFAC; and

        (ii) pay or arrange for the payment to the U.S. Department of the Treasury the amount of **$12,027,066**. Respondent's payment must be made either by electronic funds transfer in accordance with the enclosed "Electronic Funds Transfer (EFT) Instructions," or by cashier's or certified check or money order payable to the "U.S. Treasury" and referencing **ENF 41441**. Unless otherwise arranged with the U.S. Department of the Treasury's Bureau of the Fiscal Service, Respondent must either: (1) indicate payment by electronic funds transfer, by checking the box on the signature page of this Agreement; or (2) enclose with this Agreement the payment by cashier's or certified check or money order.

    B. To waive (i) any claim by or on behalf of Respondent, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to the enforcement matter that resulted in this Agreement, including but not limited to OFAC's investigation of the Apparent Violations and the issuance of the Pre-Penalty Notice, and (ii) any possible legal objection to this Agreement at any future date.

    C. That Respondent has terminated the conduct that led to the Apparent Violations described in this Agreement and has established, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the occurrence of, similar conduct in the future.

Should OFAC determine, in the reasonable exercise of its discretion, that Respondent has willfully and materially breached its obligations under paragraph 2 above, OFAC shall provide written notice to Respondent of the alleged breach and provide Respondent with 30 days from the date of Respondent's receipt of such notice, or longer as determined by OFAC, to demonstrate that no willful and material branch has occurred or that any breach has been cured. In the event that OFAC determines that a willful and material breach of this Agreement has occurred, OFAC will provide notice to Respondent of its determination, and this Agreement shall be null and void, and

---

[5] "Apparent Violations" is defined to include all Iran-related apparent violations of economic sanctions administered by OFAC referenced in this document that may have occurred from on or about June 4, 2012 to on or about March 27, 2013.

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

the statute of limitations applying to activity occurring on or after March 24, 2012 shall be deemed tolled until a date 180 days following Respondent's receipt of notice of OFAC's determination that a breach of this Agreement has occurred.

This Agreement does not constitute a final agency determination that a violation has occurred, and shall not in any way be construed as an admission by Respondent that Respondent engaged in the Apparent Violations.

This Agreement has no bearing on any past, present, or future OFAC actions, including the imposition of civil penalties, with respect to any activities by Respondent other than those set forth in the Apparent Violations.

OFAC may, in its sole discretion, post on OFAC's website this entire Agreement and/or issue a public statement about the facts of this Agreement, including the identity of any entity involved, the settlement amount, and a description of the Apparent Violations.

This Agreement consists of six pages and one spreadsheet, and expresses the complete understanding of OFAC and Respondent regarding resolution of OFAC's enforcement matter involving the Apparent Violations. No other agreements, oral or written, exist between OFAC and Respondent regarding resolution of this matter.

This Agreement shall inure to the benefit of and be binding on each party, as well as its respective successors or assigns. Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement. In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature. The Agreement may be signed in multiple counterparts, which together shall constitute the Agreement. The effective date of the Agreement shall be the latest date of execution.

[THIS SPACE IS LEFT INTENTIONALY BLANK]

**ENF 41441**
**CSE Global Limited and CSE TransTel Pte. Ltd.**

Respondent accepts the terms of this Settlement Agreement this ‾15‾ day of ‾July‾, 2017.

_[signature]_
——————————————————
Signature

LIM BOON KUENG
——————————————————
Respondent's Printed Name (or in the case of an
entity, the name of Respondent's Duly Authorized
Representative)

DIRECTOR  CSE TransTel Pte Ltd &
DIRECTOR  CSE GLOBAL LIMITED
——————————————————
Printed Title of Respondent's Duly Authorized
Representative and Name of Entity (if applicable)

☒      Please check this box if you have not enclosed payment with this Agreement and will
       instead be paying or have paid by electronic funds transfer (see paragraph 2(A)(ii) and the
       Electronic Funds Transfer Instructions enclosed with this Agreement).

Date: July 19, 2017          _John Smith_
                             ——————————————————
                             John E. Smith
                             Director
                             Office of Foreign Assets Control

Enclosure

6

# Venezuela Housing Case

1

Ex. A at 26

I.    Introduction

II.   USD Payments

III.  Potential Charges

IV.   Company Structure

V.    Individuals

VI.   Proof of Payment

VII.  Knowledge of Sanctions/Efforts to Hide Iranian Connection

2

# Theory of the Case

- Iranian construction company builds houses in Venezuela pursuant to a bilateral agreement between the governments of Iran and Venezuela and receives more than $100 million in payments through front companies and accounts in violation of US sanctions, causing the filing of false business records with New York banks which omit the true nature and beneficiary of the payments.

3

# II. USD Payments

- Evidence of 15 USD payments clearing through NY County between April 2011 and November 2013

- Total amount cleared: **$115,508,527.28**

- Payments sent from PDVSA/VE government-controlled accounts to accounts at Hyposwiss and Falcon Bank in Switzerland on behalf of IIHCO
  - 7 payments to Stratus International Contracting J.S. (AKA Straturk) account
  - 8 payments to Clarity Trade & Finance S.A. account

4

# EVIDENCE

- Emails (mostly from the Iranian side of the "Project")

- Payment records (SWIFT messages and wires)

- Bank account records (limited)

- 2 possible fact witnesses (significant availability issues with both)

- Expert testimony (from banks, FED, and OFAC)

5

Ex. A at 30

# IV. <u>Company Structure</u>



6

# Stratus International Contracting ("Stratus")

- Established in 1978 in Tehran, Iran by **Mohammad SADR**

- Part of Samaneh Stratus/Stratus Holding
  - Iranian conglomerate that includes a bank (EN Bank) sanctioned in 2012 (removed in 2016) and an oil company (Oriental Oil Kish) sanctioned in 2007

- Builds infrastructure projects in and outside of Iran

- Projects outside of Iran:
  - Pakistan (highway)
  - Yemen (airport)
  - Djibouti (parliamentary building – ongoing in 2011)
  - Venezuela (housing)

- Five member board of directors, including **M. SADR,** and **Farshid KAZERANI**

7

- Stratus establishes a new subsidiary (IIHC) and a "Venezuela Project Executive Committee" in 2009 to manage and oversee the execution of the project in Venezuela.
- Committee members over time include:
  - **Mohammad SADR** (Chairman)
  - **Ali SADR**
  - **Behrooz ZANGENEH**
  - **Ahmad SAFAVARDI**
  - **Bahram KARIMI**
  - **Mustafa CETINEL**
  - **Ekrem CINAR**

8



# V. Individuals



**Venezuela Committee (Iran)**
Chairman: **Mohammad SADR**
Members:  **Bahram KARIMI, Farshid KAZERANI,  Ali SADR;   Behrooz ZANGENEH; Mustafa CETINEL; Ekrem CINAR;  Ahmad SAFAVARDI**i

**Hussein TEHRANI (Iran)**
Chairman/CEO/President of IIHC

**Farshid KAZERANI (Iran)**
General Manager of IIHCO
Member of the Board & project manager of Stratus Intl Contracting

**Mustafa CETINEL (Istanbul/VE)**
Project Director

**Behrooz ZANGENEH (Iran)**
Vice managing director of Stratus Intl Contracting, Iran
Managing/General Director of IIHC

**Ekrem CINAR (Turkey)**
Vice Project Manager

**Bahram KARIMI (Iran/VE)**
Project Manager

**Ahmad SAFAVARDI (US/VE)**
VP & Deputy Manager of IIHCO VE
Signs as Stratus Group Envoy to Latin America
signs as Contractor's representative
Stationed in California, US

**Numerous Iranian IIHCO employees in VE**

**\*Parentheticals indicate where people were physically located at relevant time period**

10

Ex. A at 35

# VI. Proof of Payment

- **In an email dated December 30, 2010, Ali SADR sends B. KARIMI the USD account information "as requested:"**

> **Subject:** USD Account
> **From:** Ali Sadr <ali.sadr@stratus-global.com>
> **Date:** Thu, 30 Dec 2010 17:39:59 -0500
> **To:** B Karimi <bkarimi_66@yahoo.com>, Zangeneh <zangeneh@stratusgc.com>
>
> Salam,
>
> Please find attached the USD account information as requested.
>
> Best regards

> Intermediary Bank:  JPMORGAN CHASE BANK (New York, New York)
> SWIFT CODE: CHASUS33
> Banking Code: FED ABA 02100021
>
>
> Bank of Beneficiary:  HYPOSWISS Private Bank Ltd. (Zurich, Switzerland)
> SWIFT Code: SHHBCHZZ
> (USD)Account No: 5196631203
> IBAN: CH7708530519663100203
>
>
> Beneficiary:  Stratus International Contracting J.S.
> Beneficiary Address: Gardenya Plaza 5, K.3, D.3, Atasehir, Istanbul, Turkey

11

Ex. A at 36

**Instruction Letter and payment for IPC 11-13:**

| Date | USD Amount | Sending Party | Intr BK-1 | Intr BK-2 | Intr BK-3 | Rec BK | Beneficiary |
|------|-----------|---------------|-----------|-----------|-----------|--------|-------------|
| 7/5/2011 | $ 20,692,579.48 | Petroleos De Venezuela SA (PDVSA) Caracas, Venezuela | JPMorgan Chase New York, NY SWIFT: CHASUS33 | | | Hyposwiss Privatbank AG Zurich, Switzerland SWIFT: SHHBCHZZ | Clarity Trade & Finance S.A. |



ZANGENEH
signature

# Wire Sheet

| | |
|---|---|
| **Transaction Details for TRN: 3251400186fs** | **Region: US** |
| **Instruction Date:** | 7/5/2011 |
| **Payment Date:** | 7/5/2011 |
| **Transaction Amount:** | $20,692,579.48 |
| **Transaction Type:** | BT |
| **Customer Swift ID:** | SHHBCHZZ |
| **Debit Fin Entity:** | 01 |
| **Credit Fin Entity:** | 01 |
| **Credit Reference:** | OOE9996A000394 |
| **Debit Reference:** | OOE9996A000394 |
| **Sender's ID:** | SWF/BESCPTPLOSF |
| **Bene Flag:** | B |
| **Order Party:** | /PT50000709030009508180330 |
| | 1/PETROLEOS DE VENEZUELA SA |
| | 2/AV LIBERTADOR ED PETROLEOA VANEZU |
| | 2/TORRE ESTA LA CAMPIA CARACAS |
| | 3/VE/VENEZUELA |
| **Debit Party:** | 00000011728748 |
| | BES SFE FUNCHALOFFSHORE MADEIRA |
| | DPC – SERVICO RECONCILIACAO |
| | BANCARIA |
| | LISBON PORTUGAL 1250--142 |
| **Details of Payment:** | 1590011835 |
| **Credit Party:** | 00000011835873 |
| | HYPOSWISS PRIVATBANK AG |
| | BAHNHOFSTRASSE/SCHUETZENGASSE 4 |
| | POSTFACH 3180 |
| | ZURICH SWITZERLAND 8021 - |
| **Account Party:** | SHHBCHZZ |
| **Bene:** | /CH8008530518206100203 |
| | CLARITY TRADE AND FINANCE S A |

13

Ex. A at 38

# Bank Statement Attachment from April 11, 2012 Email L. Estiroti to A. SADR

IPC 11–12–13

**HYPOSWISS**
**P R I V A T E   B A N K**

Hyposwiss Private Bank Ltd.
Stauffacherstrasse 41
8004 Zürich
Phone +41 (0)44 214 31 11
Fax +41 (0)44 211 52 23
www.hyposwiss.com
BIC SHHBCHZZ

Your contact person:
Urs Schneider
Direct +41 (0)44 214 31 94
urs.schneider@hyposwiss.ch

**Clarity Trade & Finance SA**
Current account USD 5182061.203
Custody account no.  5182061.01
IBAN CH80 0853 0518 2061 0020 3

Sent electronically
Clarity Trade & Finance SA
c/o Kessler Wassmer Giacomini & Partner
Wächlenstrasse 5
8832 Wollerau

Zurich, July 5, 2011
Reference number: 51805412

## Credit advice

On July 5, 2011 we booked the following payment

| | | Currency | Amount |
|---|---|---|---|
| Ordered by | 1/PETROLEOS DE VENEZUELA SA<br>2/AV LIBERTADOR ED PETROLEOA VANEZU<br>2/TORRE ESTA LA CAMPIA   CARACAS<br>3/VE/VENEZUELA | | |
| Reference | 1590011835 | | |
| Original Amount | USD 20'692'579.48 | | |
| Amount | | USD | 20'692'579.48 |
| **To your credit** | **Value date July 5, 2011** | **USD** | **20'692'579.48** |

14

# July 6, 2011 Email A. SADR to M. CETINEL

**Subject:** Payment from Venezuela
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Wed, 6 Jul 2011 06:18:32 -0400
**To:** mustafa cetinel <m.cetinel@superonline.com>

Dear Mustafa jan,

Please find attached the swift confirmation for the incoming funds from Venezuela for the amount of **USD20,692,579.48**
It seems like our strategy has worked so far. Please keep the news confidential to yourself and Ekrem, till we decide tonight on when's best to go public with it.

15

Ex. A at 40

# VII. <u>Knowledge of Sanctions/Efforts to Hide Iranian Connection</u>

- Evidence establishes that M. Sadr and A. Sadr were both aware of US sanctions and had a nuanced understanding of their reach and effect.
  - Both have numerous emails which reference the existence of US sanctions
  - Several emails attach articles about US sanctions
  - An email includes the text of the "Comprehensive Iranian Sanctions Accountability and Divestment Act of 2010"
  - **A. SADR** is sent an email entitled "The Impact of US Sanctions Against Iran on You"
  - **M. SADR's** comment is sought by a student doing research on US sanctions and Iranian businesses
  - Emails indicate that various payments, including salary to employees were blocked by American financial institutions due to sanctions (see, e.g. email of 3 July 2014 informing A. Sadr that a payment of 6,000USD to **FARSHID KAZERANI** "has been rejected by the intermediary bank.")
  - **M. SADR** and Stratus Holding control one bank and one oil service company that were specifically designated as SDNs by OFAC

16

Ex. A at 41

# July 16, 2010 Email A. SADR to HBM Funds

- **In an email to a fund manager who is assisting in an FX exchange from USD to Bolivars, in response to a "Know Your Customer" Inquiry about Clarity, A. SADR writes:**

**Subject:** Re: Conference Call with Mercantil Valores Uruguay
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Fri, 16 Jul 2010 12:06:04 –0400
**To:** HBM Funds – Alwin de Jongh <alwin.dejongh@hbmgroup.com>
**CC:** HBM Funds – Herman Oosten <Herman.Oosten@hbmgroup.com>

Dear Alwin.

NO ONE is dealing with an Iranian entity, The clients are 1) Clarity Trade and Finance which is domiciled in Switzerland with a non-Iranian Shareholder, 2) Pinnacle Investments SA Domiciled in Venezuela with non-Iranian Shareholders.

The issue of the iranian concern should be completely out of the picture!!! why do you think all these enteties are set up in different countries with no Iranian connections! I'm sure it's now clear that MV's client/costumer is in no shape or form an Iranian entity or shareholder.

Fianlly IIHC is completely irrelevant to this whole process. A legitimate Swiss company wants to exchange USD to Bs. to a Venezualan entity, I only brought up IIHC to prove the source of funds and nothing else.

Hope this helps.

17

Ex. A at 42

# March 26, 2011 Email A. SADR to B. KARIMI

- **An email exchange between A. SADR and B. KARIMI:**

**Subject:** Re:
**From:** Ali Sadr <ali.sadr@stratus-global.com>
**Date:** Sat, 26 Mar 2011 00:36:24 -0400
**To:** B Karimi <bkarimi_66@yahoo.com>

There's no Iranian behind any of the accounts provided.
This is a simple answer.

On Friday, March 25, 2011, B Karimi <bkarimi_66@yahoo.com> wrote:
Salam
I tried call you several time but could not reach you. please call me urgently.
Client asked if the owner of the account in the intermmidate bank is Iranian?

Bahram karimi
Project Manager

18

Ex. A at 43

# January 7, 2013 Email from A. SADR to P. Rosiak

- **Email to a representative from the business publication "The Businessyear.com", A. SADR wrote:**

---

**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Jan 2013 06:16:33 -0500
**To:** PEGGY ROSIAK <peggy@thebusinessyear.com>
**Subject:** Website Take Down

Dear Peggy,

Hope all's well and you've enjoyed your short Holiday. Please take down our page from the website, since this has created so many problems due to sanctions and this might damage us further if this is not done urgently.

We are under the following link:

http://www.thebusinessyear.com/publication/article/7/489/iran-2011/nothing-too-difficult

Please also make sure that for 2012 and 2013 we are not published on the website.

Thanks for your continued business with us and I look forward to hearing from your with prompt action in this regard

---

# July 3, 2014 Email from L. Estiroti to A. Sadr

- **Email of  July 3, 2014 from Ali's assistant L. Estiroti to Ali alerting him that a payment to Kazerani was rejected:**

**Subject:** Fwd: Payment USD 6'000
**From:** Linet Estiroti <linet.estiroti@perseswiss.ch>
**Date:** Thu, 3 Jul 2014 19:41:34 +0300
**To:** Ali Sadr <ali.sadr.h@gmail.com>

Mr Ali, the intermediary bank has rejected the payment to Mr Kazerani. The reason is the U.S. sactions to pay Iranian institution/individual.  Please advise what to do. Regards, Linet Estiroti

20

Ex. A at 45

# October 24, 2011 Email from A. SADR to M. Cetinel

**Subject:** Re: name change of IIHCO
**From:** ali.sadr.h@gmail.com
**Date:** Mon, 24 Oct 2011 16:38:45 +0000
**To:** m.cetinel@superonline.com

Dear Mustafa jan,

Hope all's well in Venezuela, I think the first choice is a good one, but to keep it in the right order I think it should read: Industrial International Housing Company.

Please let me know if we can proceed.

Have we made any advances on the contract with clarity and Stratus.

Best regards

Sent from my BlackBerry® Smartphone supplied by Swisscom

**From:** mustafa cetinel <m.cetinel@superonline.com>
**Date:** Mon, 24 Oct 2011 17:52:15 +0300
**To:** Ali Sadr<ali.sadr.h@gmail.com>
**ReplyTo:** m.cetinel@superonline.com
**Cc:** ekrem çınar<ekrem.cinar@istanbul.com>; B Karimi<bkarimi_66@yahoo.com>
**Subject:** name change of IIHCO

Dear Ali Jan,

Furher to our conversation in Istanbul I suggest two names for the change as follows:

1. International Industrial Housing Company

2.International Iron Housing Company

Could you please check with the availability of the above names in the registry office of Iran. So we can proceed with notification process at this end.

Thanks and Regards
Mustafa Cetinel

21

Ex. A at 46

# March 7, 2011 Email from A. SADR to B. ZANGENEH

- **Email from A. SADR to B. ZANGANEH:**

**Subject:** Fwd: Fw: CHANGING BUSSINES NAME
**From:** Ali Sadr <ali.sadr.h@gmail.com>
**Date:** Mon, 7 Mar 2011 06:52:36 –0500
**To:** Zangeneh <zangeneh@stratusgc.com>

Dear Mr. Zangeneh,

Hope all's well. I've already sent the transfer to Dubai this morning and will provide you with the swift as soon as I receive it.

Please see attached the documents frowarded by Mr. Karimi in order to make some necessary changes to our TRADE name in Venezuela so that we can make our transactions a bit easier.

Let me know when we can conclude on this as we have requested for our last invoice to be paid in USD which makes this name change a bit more crucial.

Thanks and best regards

22

Ex. A at 47

# **EXHIBIT B**

| | |
|---|---|
| **From:** | Lynch, Garrett <LynchG@dany.nyc.gov> |
| **Sent:** | Friday, January 10, 2020 4:52 PM |
| **To:** | Lake, Stephanie (USANYS) |
| **Cc:** | Kim, Jane (USANYS) 4; Krouse, Michael (USANYS) |
| **Subject:** | RE: Sadr - wire transfers |
| **Attachments:** | Commerz OFAC disclosure.pdf |

In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze made to OFAC re: the payment.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Friday, January 10, 2020 3:16 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Closing the loop on this– I found a document in the material Fuenmayor gave us that discusses the $29 million transfer through Fondo Chino, and he also mentioned it in the last meeting. I think this should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA. The doc is attached, if anyone cares, but it's also en Espanol (I've requested translation). Pages 14-15.

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 12:46 PM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

The Venezuelans used various state-owned "funds" and banks to fund various government projects, among them BANDES, the economic and social development bank (which, I believe made some early payments (not ours) related to the project), and Fondo Chino (the Chinese-Venezuelan Fund). Fondo Chino (at least ostensibly) was funded by oil sales to and loans from China (I think PDVSA and the government liberally moved money around). I forget exactly why Fondo Chino was used to make the first payment (or if we ever knew for sure) – my guess is that PDVSA, which controlled all oil-related funds (i.e., the Venezuelan purse), had adequate funds in the Fondo Chino account to make the payment from that account. I believe the money came from a Banco del Tesoro account in Venezuela, which had a correspondent relationship with Commerz in Germany. Thereafter, they used PDVSA accounts at Banco Espirito Santo in Portugal.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Wednesday, January 8, 2020 11:02 AM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Cc:** Kim, Jane (USANYS) 4 <Jane.Kim@usdoj.gov>; Krouse, Michael (USANYS) <Michael.Krouse@usdoj.gov>
**Subject:** RE: Sadr - wire transfers

Found the first one. Thanks. Do you know why it came from "Fondo Chino" / what that is?

That's fine on two. Just wanted to make sure I wasn't missing some other records that would show that information.

Definitely agree on the third point.

Thank you!

---

**From:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Sent:** Wednesday, January 08, 2020 10:04 AM
**To:** Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Subject:** RE: Sadr - wire transfers

1. Re: the first payment, there should be a copy of the SWIFT message in the Commerzbank production.  In my version of the subpoena compliance production it's a PDF titled "Copy".

2. Re: the identity of the intermediary bank, the bank whose business record the wire transfer is is the intermediary bank, so the witness will be able to state that.

3. Also, for several of the payments, we have additional search warrant documents -- e.g., while we may just have the wire transfer record from the clearing bank, we may also have a SWIFT message attached to an email, or a Hyposwiss record, or some other document which identifies the payment route. When the dust settles on the SW docs, we can reconstruct my old payments binders where I had all of the documents bundled together for each payment (the payment instruction letter, the bank record(s), emails, attachments, etc.).  This is what we did for the GJ.

---

**From:** Lake, Stephanie (USANYS) [mailto:Stephanie.Lake@usdoj.gov]
**Sent:** Tuesday, January 7, 2020 6:19 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>
**Subject:** FW: Sadr - wire transfers

My original email had three attachments, which had to be sent to you securely. So you should be getting a secure message with instructions on how to access it.

---

**From:** Lake, Stephanie (USANYS)
**Sent:** Tuesday, January 07, 2020 5:37 PM
**To:** Lynch, Garrett <LynchG@dany.nyc.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Subject:** Sadr - wire transfers

See attached a spreadsheet (Payments) showing each transfer and where I found documentation. A few things:

1) I didn't find a wire confirmation for the 4/4/2011 $29 million transfer. I did find reference to it in the CHIPS subpoena returns. It seems to show that it went from "Fondo Chino-Venezolano" to Stratus International Contracting (see attached two spreadsheets that show this). Garrett – do you know if we have a wire confirmation for that transfer?

2) I noticed that the wire confirmations don't generally show the U.S. intermediary bank on them. Is there other documentation I'm missing that has this information?

*All documents are saved here: \\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\###Trial\Documents\Payment Records and here:

Ex. B at 2

\\Usa.doj.gov\cloud\NYS\StAndrews\Shared\Iran_VEHousing-2017R01160\Evidence [INT]\Discovery\#5 - Subpoena Returns\To Produce.

Also – Garrett, I was thinking that if you don't already have the ability to remotely login to our network, we should have that set up! That way the file paths above wouldn't be useless to you.

Thanks!

Stephanie Lake
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel: (212) 637-1066

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

Ex. B at 3

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Sunday, March 08, 2020 5:58 PM |
| **To:** | Kaveh.Miremadi@treasury.gov; MariaHelene.VanWagenberg@treasury.gov; Jacqueline.Brewer@treasury.gov |
| **Cc:** | Lake, Stephanie (USANYS); Krouse, Michael (USANYS); Lynch, Garrett; Lynch, Garrett (USANYS) [Contractor] |
| **Subject:** | Time Sensitive Question |
| **Attachments:** | GX 411.pdf |

Kaveh, Maria, and Jacqui:

I'm attaching a letter dated June 16, 2011, from Commerzbank to OFAC concerning a specific payment.  Could you please let us know what actions OFAC took in response to this letter?  We need to update the Court on this issue tomorrow morning, so any information would be hugely appreciated.

Thank you in advance,
Jane


Jane Kim
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Phone:  (212) 637-2038
Email:  jane.kim@usdoj.gov

2020.3.9 8.40-10.21pm Email Chain

## Lake, Stephanie (USANYS)

| | |
|---|---|
| **From:** | Lake, Stephanie (USANYS) |
| **Sent:** | Monday, March 09, 2020 10:21 PM |
| **To:** | Kim, Jane (USANYS) 4 |
| **Cc:** | Bove, Emil (USANYS); Krouse, Michael (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | Re: Here is a draft letter |

Yes we produced the Fuenmayor documents.


On Mar 9, 2020, at 10:16 PM, Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov> wrote:


Attaching email to OFAC.  Will confirm Fuenmayor doc.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:11 PM
**To:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>;
Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Did we produce the "document in the material Fuenmayor gave us"?

---

**From:** Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:10 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>;
Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Attached.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 9:58 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>;
Lake, Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: Here is a draft letter

Can you send me exs a and b please

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 8:40 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lake,
Stephanie (USANYS) <SLake@usa.doj.gov>; Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** Here is a draft letter

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

<mime-attachment>

2020.3.9 10.41pm Text

Case 1:18-cr-00224-AT   Document 463-3   Filed 02/22/21   Page 136 of 162

Jane >

**Add and share your name and photo**
Set Up...

Mon, Mar 9, 10:41 PM

Looking at the full email exchange with Garrett, I feel like they're going to say I was lying that I thought it was part of the subpoena return because he pointed me to the return for the swift

But I definitely am not lying about that.

You definitely are not

Don't worry, we have your back

Don't think about this stuff!!

Yeah I really need to not

I shouldn't have looked at it

iMessage

2020.3.9 10.49-11.03pm Email Chain & Attachments

**Lake, Stephanie (USANYS)**

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Monday, March 09, 2020 11:03 PM |
| **To:** | Krouse, Michael (USANYS); Bove, Emil (USANYS); Lynch, Garrett (USANYS) [Contractor]; Lake, Stephanie (USANYS) |
| **Cc:** | Crowley, Shawn (USANYS) |
| **Subject:** | RE: 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.EB3.sgc.jk.docx |

Minor nits.

---

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:59 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx

Looks good.  One tiny nit in the attached.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:49 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx

Here is a revised draft.  Please take a careful read for accuracy and stop by / call if you have any issues.  Thanks guys.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

_____

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

    The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

    At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020.  If the defense wishes to offer GX 411 as a defense exhibit, the Government will stipulate to the authenticity of the document and consents to the curative instruction proposed by the defense yesterday.  (*See* Dkt. No. 274 at 2).  The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

    **I.    The Government's Review**

    In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team:  AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ("SAUSA") Attorney Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

_____

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2]  In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3]  The emails at issue are attached as Exhibit A.  In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.    The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank.  The Commerzbank commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System.  The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act (IEEPA) and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately period 2002 and 2008.  During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to

---

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the Government preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case.  *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and.  Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation.  The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States.  One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

OFAC between March 2010 and October 2014.  GX 411 was one such disclosure.[5]  In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

### III.    The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant.  On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:



Ex. A at 4.  In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case.  GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not re-produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations.  Ex. A at 6.  During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, SAUSA Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide

---

[5] SAUSA Lynch has been unable to determine when DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief").  Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers.  Ex. A at 10.  During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation.  In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY.  Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").  On that day, SAUSA Lynch spoke to OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges.  Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "Presentation").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck."  OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million, which is described in GX 411.  AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA."  AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411.  That same day, SAUSA Lynch located GX 411 in a file at his DANY office that contained Commerzbank's voluntary disclosures from 2015.  SAUSA Lynch then sent an email to AUSA Lake, copying

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

AUSAs Kim and Krouse, which attached GX 411 and said:  "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment."  None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email.  Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief.  At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been.  AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020.  GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails.  After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included.  The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense.  At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief.  AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

## IV.    OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411.  During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter.  OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012.  In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter.  As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect
to the letter.

<div style="margin-left: 40%;">

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
    Jane Kim / Michael Krouse / Stephanie Lake
      Assistant United States Attorneys
    Garrett Lynch
      Special Assistant United States Attorney
    (212) 637-2038 / 2279 / 1066

</div>

cc: Defense Counsel (by ECF)



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

    The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

    At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020.  If the defense wishes to offer GX 411 as a defense exhibit, the Government will stipulate to the authenticity of the document and consents to the curative instruction proposed by the defense yesterday.  (*See* Dkt. No. 274 at 2).  The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

    **I.    The Government's Review**

    In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team:  AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ("SAUSA") Attorney Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2]  In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3] The emails at issue are attached as Exhibit A.  In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.    The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank.  The Commerzbank investigation commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System.  The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act (IEEPA) and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately period 2002 and 2008.  During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to OFAC between March 2010 and October 2014.  GX 411 was one such

---

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the Government preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case.  *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and.   Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation.  The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States.  One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

disclosure.[5]  In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

### III.     The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant.  On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:



Ex. A at 4.  In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case.  GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not re-produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations.  Ex. A at 6.  During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, SAUSA Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information

---

[5] SAUSA Lynch has been unable to determine when DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

so you can take action on your own if so desired." *Id.* On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief"). Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers. Ex. A at 10. During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation. In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY. Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails. *See* Ex. A at 12-14. During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation. The phone call did not happen until September 21, 2017. *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened."). On that day, SAUSA Lynch spoke to OFAC Officer-1. Ex. A at 11. During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges. Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case. *Id.*; *see* Ex. A at 26-47 (the "Presentation"). OFAC Officer-1 responded: "[T]hanks for passing along the information below/attached. We'll take a look and will get back to you." *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche. Ex. A at 15. OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have." *Id.* SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email. Ex. A at 16. Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case. *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse. *See* Ex. B. AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million, which is described in GX 411. AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411. That same day, SAUSA Lynch located GX 411 in a file at his DANY office that contained Commerzbank's voluntary disclosures from 2015. SAUSA Lynch then sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411 and said: "In the spirit of closing the loop on

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment." None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email. Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief. At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been. AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020. GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails. After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included. The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense. At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief. AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

IV.    **OFAC's Handling of GX 411**

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411. During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter. OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012. In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter. As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
    Assistant United States Attorneys
Garrett Lynch
    Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

> Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020. The Government has stipulated to the authenticity of GX 411 ~~If~~ if the defense wishes ~~to offer GX 411~~ it as a defense exhibit, ~~the Government will stipulate to the authenticity of the document~~ and consents to the curative instruction proposed by the defense yesterday. (*See* Dkt. No. 274 at 2). The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

## I.    The Government's Review

In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team:  AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ~~("SAUSA")~~ Attorney ("SAUSA")

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

Garrett Lynch.[1]  Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2]  In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3]  The emails at issue are attached as Exhibit A. In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.    The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank.  The Commerzbank investigation commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System.  The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the Government preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case.  *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and.  Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation.  The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States.  One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

("IEEPA") and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately ~~period~~ 2002 and 2008.  During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to OFAC between March 2010 and October 2014.  GX 411 was one such disclosure.[5]  In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

### III.  The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant.  On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:



For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spartiste Holding GmbH, Petroleoa de Venezuela (aka, PDVSA), Stratark Insaat Ve Taahhut A.S., including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTBVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ. (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS109400150500
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

Ex. A at 4.  In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case.  GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not re-produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations.  Ex. A at 6.  During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under

---

[5] SAUSA Lynch has been unable to determine when DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, SAUSA Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief").  Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers.  Ex. A at 10.  During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation.  In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY.  Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").  On that day, SAUSA Lynch spoke to OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges.  Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "Presentation").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck."  OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

J.S. for $29 million, which is described in GX 411.  AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411.  That same day, SAUSA Lynch located GX 411 in a file at his DANY office that contained Commerzbank's voluntary disclosures from 2015.  SAUSA Lynch then sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411 and said:  "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment."  None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email.  Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief.  At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been.  AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020.  GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails.  After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included.  The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense.  At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief.  AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

## IV.   OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411.  During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter.  OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012.  In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter.  As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
    Assistant United States Attorneys
Garrett Lynch
    Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

2020.3.11 1.55pm Text Excerpts

.ıll Verizon 🛜    12:26 PM

Jane ›

Add and share your name and photo
Set Up...

Wed, Mar 11, 1:55 PM

How's cross?

She's making us air out all our cross questions before we start

It's a little ridiculous

She said this is what happens when Garrett has no credibility with court

iMessage

Case 1:18-cr-00224-AT   Document 213-3   Filed 02/22/21   Page 159 of 162



Jane >

**Add and share your name and photo**
Set Up...

Jeez

It's outrageous

Because of the commerz thing?

Yeah

We came back, I was the only one here, Heberlig said no ones here from the gov

I said hello, I'm here

Nathan laughed

You would've appreciated

Is the commerzbank thing just because he knew it was a new doc but didn't tell us?

iMessage

Case 1:18-cr-00224-AT   Document 207-3   Filed 02/22/21   Page 160 of 162



Jane ›

Add and share your name and photo
Set Up...

Is the commerzbank thing just because he knew it was a new doc but didn't tell us?

Her face got red and she put her head on the desk

And it came out that Garrett had reached out to OFAC and presented the case

What

And that wasn't disclosed

Yeah

So they're getting an instruction on that

iMessage

Phone Records

Company Name: US GOVT
User name: harry  calventas
Structure name: Default
Position: 987298206-00001

Report Name: Call detail - wireless number detail

Date from: Feb-20  Date to: Mar-20

Call detail - local calls

| Date | Time | In/Out number | Rate | Usage type | Account au | Origination | Destination | International | Duration | Airtime cha | Long distan | Total | call detail |
|------|------|---------------|------|------------|-----------|-------------|-------------|--------------|----------|-------------|-------------|-------|-------------|
| 3/6/2020 | 8:41 AM | 6446475005 | Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 1 | 0 | 0 | 0 | AUSA Krouse |
| 3/6/2020 | 8:45 AM | 3478801399 | Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 1 | 0 | 0 | 0 | AUSA Crowley |
| 3/6/2020 | 8:46 AM | 6462854782 | Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 1 | 0 | 0 | 0 | SA Rob Depresco |
| 3/6/2020 | 8:47 AM | 9176853707 | Peak | M2MAllow | | New York | Brooklyn | N/A | 5 | 0 | 0 | 0 | SA Leigh Ann Pond |
| 3/6/2020 | 5:38 PM | 2126372627 | Peak | PlanAllow | | New York | New York | N/A | 1 | 0 | 0 | 0 | Security |
| 3/6/2020 | 7:53 PM | 9175964282 | Peak | M2MAllow | | New York | Vm Deposi | N/A | 1 | 0 | 0 | 0 | SAUSA Lynch |
| 3/6/2020 | 7:57 PM | 9175964282 | Peak | M2MAllow | | New York | Incoming | N/A | 8 | 0 | 0 | 0 | SAUSA Lynch |
| 3/6/2020 | 8:07 PM | 6446475005 | Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 1 | 0 | 0 | 0 | AUSA Krouse |
| 3/7/2020 | 9:23 AM | 3475784867 | Off-Peak | M2MAllow;ConfCall | | New York | Nwyrcyzn0 | N/A | 26 | 0 | 0 | 0 | AUSA Kim |
| 3/7/2020 | 9:23 AM | 6446475005 | Off-Peak | M2MAllow;ConfCall | | New York | Nwyrcyzn0 | N/A | 26 | 0 | 0 | 0 | AUSA Krouse |
| 3/7/2020 | 9:24 AM | 9175964282 | Off-Peak | M2MAllow | | New York | Vm Deposi | N/A | 1 | 0 | 0 | 0 | SAUSA Lynch |
| 3/7/2020 | 9:39 AM | 9175964282 | Off-Peak | N&W;CallWait | | New York | Incoming | N/A | 10 | 0 | 0 | 0 | SAUSA Lynch |
| 3/7/2020 | 11:24 AM | 2123354353 | Off-Peak | N&W | | New York | Incoming | N/A | 2 | 0 | 0 | 0 | DANY Paralegal |
| 3/7/2020 | 12:03 PM | 7325561742 | Off-Peak | N&W;ConfCall | | New York | Incoming | N/A | 35 | 0 | 0 | 0 | Attorney for Witness Conte |
| 3/7/2020 | 12:03 PM | 6462854782 | Off-Peak | M2MAllow;ConfCall | | New York | Nwyrcyzn0 | N/A | 34 | 0 | 0 | 0 | SA Rob Depresco |
| 3/7/2020 | 1:55 PM | 3472820498 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | Unknown |
| 3/7/2020 | 6:52 PM | 3475784867 | Off-Peak | N&W | | New York | Incoming | N/A | 3 | 0 | 0 | 0 | AUSA Kim |
| 3/7/2020 | 9:37 PM | 9175964282 | Off-Peak | M2MAllow | | New York | Incoming | N/A | 5 | 0 | 0 | 0 | SAUSA Lynch |
| 3/7/2020 | 9:42 PM | 9175964282 | Off-Peak | N&W | | New York | Incoming | N/A | 3 | 0 | 0 | 0 | SAUSA Lynch |
| 3/7/2020 | 10:05 PM | 9175964282 | Off-Peak | N&W | | New York | Incoming | N/A | 3 | 0 | 0 | 0 | SAUSA Lynch |
| 3/7/2020 | 10:08 PM | 3476682048 | Off-Peak | M2MAllow | | New York | New York | N/A | 9 | 0 | 0 | 0 | AUSA Bove |
| 3/8/2020 | 9:49 AM | 3475784867 | Off-Peak | M2MAllow;ConfCall | | New York | Nwyrcyzn0 | N/A | 6 | 0 | 0 | 0 | AUSA Kim |
| 3/8/2020 | 9:49 AM | 6446475005 | Off-Peak | M2MAllow;ConfCall | | New York | Nwyrcyzn0 | N/A | 6 | 0 | 0 | 0 | AUSA Krouse |
| 3/8/2020 | 2:36 PM | 2123787616 | Off-Peak | N&W | | New York | New York | N/A | 24 | 0 | 0 | 0 | Defense counsel |
| 3/8/2020 | 3:02 PM | 2123787616 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | Defense counsel |
| 3/8/2020 | 3:06 PM | 2125067539 | Off-Peak | N&W | | New York | Incoming | N/A | 2 | 0 | 0 | 0 | Unknown |
| 3/8/2020 | 6:09 PM | 9175964282 | Off-Peak | N&W | | New York | Incoming | N/A | 5 | 0 | 0 | 0 | SAUSA Lynch |
| 3/8/2020 | 6:15 PM | 9175964282 | Off-Peak | M2MAllow | | New York | New York | N/A | 3 | 0 | 0 | 0 | SAUSA Lynch |
| 3/8/2020 | 6:47 PM | 9175964282 | Off-Peak | N&W | | New York | Incoming | N/A | 2 | 0 | 0 | 0 | SAUSA Lynch |
| 3/8/2020 | 7:22 PM | 6462495636 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | Unknown - possible food delivery |
| 3/8/2020 | 7:27 PM | 6462495636 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | Unknown - possible food delivery |
| 3/8/2020 | 7:29 PM | 0 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | |
| 3/8/2020 | 7:30 PM | 6462495636 | Off-Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 1 | 0 | 0 | 0 | Unknown - possible food delivery |
| 3/8/2020 | 7:52 PM | 2126371034 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | AUSA Crowley |
| 3/8/2020 | 7:54 PM | 2126372444 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | AUSA Bove |
| 3/8/2020 | 9:21 PM | 3478801399 | Off-Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 1 | 0 | 0 | 0 | AUSA Crowley |
| 3/8/2020 | 9:22 PM | 3478801399 | Off-Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 3 | 0 | 0 | 0 | AUSA Crowley |
| 3/8/2020 | 9:32 PM | 3478801399 | Off-Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 2 | 0 | 0 | 0 | AUSA Crowley |
| 3/8/2020 | 9:59 PM | 3478801399 | Off-Peak | N&W | | Brooklyn | Incoming | N/A | 5 | 0 | 0 | 0 | AUSA Crowley |
| 3/9/2020 | 8:23 AM | 7324924592 | Peak | M2MAllow | | New York | Incoming | N/A | 2 | 0 | 0 | 0 | Attorney for Witness Conte |
| 3/9/2020 | 5:50 PM | 6446475005 | Peak | M2MAllow | | New York | Nwyrcyzn0 | N/A | 7 | 0 | 0 | 0 | AUSA Krouse |
| 3/9/2020 | 9:20 PM | 3475784867 | Off-Peak | N&W | | New York | Incoming | N/A | 1 | 0 | 0 | 0 | AUSA Kim |
| 3/10/2020 | 2:50 PM | 2128578596 | Peak | PlanAllow | | New York | New York | N/A | 1 | 0 | 0 | 0 | Court |
| 3/10/2020 | 5:12 PM | 3475784867 | Peak | M2MAllow | | New York | Incoming | N/A | 10 | 0 | 0 | 0 | AUSA Bove |

Company Name: US GOVT
User name: harry  calventas
Structure name: Default
Position: 987298206-00001

Report Name: Call detail - wireless number detail

Call detail - roaming calls

| Date | Time | In/Out number | Rate | Usage type | Account au | Origination | Destination | International | Duration | Airtime cha | Long distan | Total | call detail |
|------|------|---------------|------|------------|-----------|-------------|-------------|--------------|----------|-------------|-------------|-------|-------------|
| Roaming Calls Total | | | | | | | | | 0 | 0 | 0 | 0 | |