# EXHIBIT 106

**Kim, Jane (USANYS) 4**

| | |
|---|---|
| **From:** | Krouse, Michael (USANYS) |
| **Sent:** | Monday, March 9, 2020 8:40 PM |
| **To:** | Bove, Emil (USANYS); Kim, Jane (USANYS) 4; Lake, Stephanie (USANYS); Crowley, Shawn (USANYS) |
| **Subject:** | Here is a draft letter |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.docx |

Michael Krouse
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2279

# EXHIBIT 106-1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

Re:     *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

The Government writes to provide further facts regarding the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"), and the circumstances surrounding the late production of what has now been marked as Government Exhibit ("GX") 411.

At the outset, the Government wants to make clear that, if the defense wishes to offer GX 411, the Government consents to the proposed curative instruction. The Government is also willing to enter into the stipulation proposed by Reid Weingarten, or a modified version of the stipulation in light of the disclosures contained in this letter.

All former and current members of the Government's prosecution team have now completed a diligent review of all files (including, but not limited to, emails, hard copy correspondence, hard copy files, and notes) for any materials reflecting communications or correspondence with OFAC. The members of the prosecution team includes AUSAs Andrew DeFilippis, David Denton, Rebekah Donaleski, Jane Kim, Michael Krouse, Stephanie Lake, Matthew Laroche, as well as Special Assistant United States ("SAUSA") Attorney Garrett Lynch.

Based on the diligent review, no AUSA on the prosecution team had any communications or correspondence with OFAC, except in connection with (1) the preparation of Mr. Ted Kim to testify at trial, and (2) the OFAC license check (which has been admitted as Government Exhibit 602). However, as explained in detail below, SAUSA Lynch did have substantive discussions with OFAC. Copies of emails between SAUSA Lynch and officials at OFAC were produced to the defense tonight at 7:25 p.m., and are attached to this letter as Exhibit A ("Ex. A"). Set forth

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

below is a chronological account of SAUSA Lynch's communications with OFAC during this case.

First, SAUSA Garrett Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA"). In January 2012, while at DANY, ADA Lynch was assigned to work on an investigation into Commerzbank, A.G., a German bank that had been under investigation since January 2011 by DANY, the United States Department of Justice ("DOJ"), and multiple regulatory agencies. That investigation concerned alleged violations of U.S. sanctions laws and regulations during the period 2002 through 2007.

During the course of that investigation, DANY received, from Commerzbank, 15 voluntary disclosures that the Commerzbank branch in New York City had made to OFAC between March 2010 and October 2014. In total, DANY received approximately 215 pages related to those disclosures. GX 411 was one such disclosure. In March 2015, Commerzbank entered deferred prosecution agreements with DANY and DOJ.

In May 2015, ADA Lynch was assigned to work on the DANY investigation related to the defendant, Ali Sadr Hashemi Nejad. On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch, which made the following request:

> For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spamise Holding GmbH, Petroleosa de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S., including, but not limited to, the following wire transfer information:
>
> 1.  Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
> 2.  Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ, (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
> 3.  Possible Account Number: IBAN CH7708530619663100203
> 4.  Possible CHIPS System Sequence Number: 0262787
> 5.  Possible Credit/Debit Reference Number: FAAS109400150500
> 6.  Possible Transaction Reference Number: 5111500094FC
> 7.  Possible Transaction Date: 4/4/2011
> 8.  Possible Amount: USD $29,442,967.57

Ex. A at 4. In October 2015, DANY received records in response to the subpoena. Those subpoena returns were produced to the defense in this case during Rule 16 discovery.

On May 19, 2016, ADA Lynch had a conversation with a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and regulations. Ex. A at 6. During that call, ADA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by ADA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, ADA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, ADA Lynch asked OFAC Officer-1 about arranging an OFAC witness for possible grand jury testimony.  ADA Lynch also offered "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief").  Ex. A at 8.

On or about August 5, 2016, ADA Lynch had a telephone call with the Section Chief, along with two other OFAC enforcement officers.  Ex. A at 10.  During this call, ADA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

In June 2017, ADA Lynch was appointed as a SAUSA.

Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call, however, did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").

On September 21, 2017, SAUSA Lynch had a call with OFAC Officer-1.  Ex. A at 11. During that call, SAUSA Lynch outlined the facts of the case in order to get OFAC Officer-1's thoughts on the proposed federal charges.  That same day, following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "PowerPoint").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the PowerPoint, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanks SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  No one from OFAC followed-up with SAUSA Lynch on next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

SAUSA Lynch has no further records reflecting communications about this case with OFAC, or any recollection of other such communications.  SAUSA Lynch never inquired or learned whether OFAC took independent steps to investigate any of the entities, individuals, or

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

banks involved in this case.  Further, during the course of the above-described phone calls and conversations, SAUSA Lynch never discussed the contents of GX 411 with anyone at OFAC.  Nor did SAUSA Lynch learn what, if any, actions OFAC took in response to receiving that document.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million.  AUSA Lake stated a document previously provided by a witness "should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email caused SAUSA Lynch to recall the Commerzbank document he previously saw while working at DANY.  That same day, SAUSA Lynch reviewed a file in his DANY office containing records received from Commerzbank during the course of the separate investigation into Commerzbank, which had concluded in March 2015.  During that review, he found the document later marked as GX 411.  That same day, SAUSA Lynch sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411, and said:  "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment."  None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email.  Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief.  At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been.  AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020.  GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails.  After reviewing GX 411, AUSA Lake looked at the Commerzbank subpoena production, and discovered that GX 411 was not included.  The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense.  At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document, and did not consider it to be *Brady*.  The prosecution team decided to seek to admit GX 411 in its case in chief.  AUSA Lake sent the document, along

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

with others, to the defense.  The Government did not specifically identify that GX 411 had not previously been produced in discovery.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
    Assistant United States Attorneys
Garrett Lynch
    Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 107

**Kim, Jane (USANYS) 4**

| | |
|---|---|
| **From:** | Bove, Emil (USANYS) |
| **Sent:** | Monday, March 9, 2020 10:49 PM |
| **To:** | Krouse, Michael (USANYS); Kim, Jane (USANYS) 4; Lynch, Garrett (USANYS) [Contractor]; Lake, Stephanie (USANYS) |
| **Cc:** | Crowley, Shawn (USANYS) |
| **Subject:** | 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx |

Here is a revised draft.  Please take a careful read for accuracy and stop by / call if you have any issues.  Thanks guys.

# EXHIBIT 107-1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

    **Re:**    *United States* **v.** *Ali Sadr Hashemi Nejad*, **18 Cr. 224 (AJN)**

Dear Judge Nathan:

    The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

    At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020. If the defense wishes to offer GX 411 as a defense exhibit, the Government will stipulate to the authenticity of the document and consents to the curative instruction proposed by the defense yesterday. (*See* Dkt. No. 274 at 2). The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

    **I.**    **The Government's Review**

    In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team: AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ("SAUSA") Attorney Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2]  In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3] The emails at issue are attached as Exhibit A.  In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.   The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank.  The Commerzbank commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System.  The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act (IEEPA) and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately period 2002 and 2008.  During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to

---

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the Government preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case.  *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and.  Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation.  The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States.  One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

OFAC between March 2010 and October 2014. GX 411 was one such disclosure.[5] In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

### III.    The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant. On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:



Ex. A at 4. In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case. GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not re-produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations. Ex. A at 6. During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations. OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email. Ex. A. at 7. In the email, SAUSA Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide

---

[5] SAUSA Lynch has been unable to determine when DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief").  Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers.  Ex. A at 10.  During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation.  In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY.  Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").  On that day, SAUSA Lynch spoke to OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges.  Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "Presentation").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck."  OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million, which is described in GX 411.  AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA."  AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411.  That same day, SAUSA Lynch located GX 411 in a file at his DANY office that contained Commerzbank's voluntary disclosures from 2015.  SAUSA Lynch then sent an email to AUSA Lake, copying

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

AUSAs Kim and Krouse, which attached GX 411 and said: "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment." None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email. Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief. At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been. AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020. GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails. After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included. The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense. At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief. AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

## IV.   OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411. During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter. OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012. In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter. As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
       Jane Kim / Michael Krouse / Stephanie Lake
          Assistant United States Attorneys
       Garrett Lynch
          Special Assistant United States Attorney
       (212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 108

**Kim, Jane (USANYS) 4**

| | |
|---|---|
| **From:** | Krouse, Michael (USANYS) |
| **Sent:** | Monday, March 9, 2020 10:59 PM |
| **To:** | Bove, Emil (USANYS); Kim, Jane (USANYS) 4; Lynch, Garrett (USANYS) [Contractor]; Lake, Stephanie (USANYS) |
| **Cc:** | Crowley, Shawn (USANYS) |
| **Subject:** | RE: 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.EB3.sgc (MKK).docx |

Looks good.  One tiny nit in the attached.

---

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:49 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx

Here is a revised draft.  Please take a careful read for accuracy and stop by / call if you have any issues.  Thanks guys.

# EXHIBIT 108-1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

> Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020. If the defense wishes to offer GX 411 as a defense exhibit, the Government will stipulate to the authenticity of the document and consents to the curative instruction proposed by the defense yesterday. (*See* Dkt. No. 274 at 2). The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

## I.    The Government's Review

In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team: AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ("SAUSA") Attorney Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2]  In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3] The emails at issue are attached as Exhibit A.  In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.    The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank.  The Commerzbank investigation commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System.  The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act (IEEPA) and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately period 2002 and 2008.  During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to OFAC between March 2010 and October 2014.  GX 411 was one such

---

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the Government preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case.  *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and.  Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation.  The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States.  One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

disclosure.[5]  In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

## III.    The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant.  On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:

> For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: **Fondo Chino Venezolano** (aka, **Chinese Venezuelan Fund**), **Stratus International Contracting J.S.**, **Stratus Global Investments Ltd.**, **Clarity Trade and Finance S.A.**, **Spartan Holding GmbH**, **Petroleos de Venezuela** (aka, **PDVSA**), **Straturk Insaat Ve Taahhut A.S.**, including, but not limited to, the following wire transfer information:
>
> 1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
> 2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
> 3. Possible Account Number: IBAN CH7708530519663100203
> 4. Possible CHIPS System Sequence Number: 0262787
> 5. Possible Credit/Debit Reference Number: FAAS109400150500
> 6. Possible Transaction Reference Number: 5111500094FC
> 7. Possible Transaction Date: 4/4/2011
> 8. Possible Amount: USD $29,442,967.57

Ex. A at 4.  In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case.  GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not re-produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations.  Ex. A at 6.  During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, SAUSA Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information

---

[5] SAUSA Lynch has been unable to determine when DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief"). Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers. Ex. A at 10.  During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation.  In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY.  Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").  On that day, SAUSA Lynch spoke to OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges.  Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "Presentation").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche. Ex. A at 15.  OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email. Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million, which is described in GX 411.  AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411.  That same day, SAUSA Lynch located GX 411 in a file at his DANY office that contained Commerzbank's voluntary disclosures from 2015.  SAUSA Lynch then sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411 and said:  "In the spirit of closing the loop on

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment." None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email. Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief. At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been. AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020. GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails. After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included. The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense. At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief. AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

## IV.    OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411. During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter. OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012. In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter. As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect
to the letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
Assistant United States Attorneys
Garrett Lynch
Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 109

**Kim, Jane (USANYS) 4**

| | |
|---|---|
| **From:** | Kim, Jane (USANYS) 4 |
| **Sent:** | Monday, March 9, 2020 11:03 PM |
| **To:** | Krouse, Michael (USANYS); Bove, Emil (USANYS); Lynch, Garrett (USANYS) [Contractor]; Lake, Stephanie (USANYS) |
| **Cc:** | Crowley, Shawn (USANYS) |
| **Subject:** | RE: 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.EB3.sgc.jk.docx |

Minor nits.

**From:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:59 PM
**To:** Bove, Emil (USANYS) <EBove@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** RE: 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx

Looks good.  One tiny nit in the attached.

**From:** Bove, Emil (USANYS) <EBove@usa.doj.gov>
**Sent:** Monday, March 9, 2020 10:49 PM
**To:** Krouse, Michael (USANYS) <MKrouse@usa.doj.gov>; Kim, Jane (USANYS) 4 <JKim4@usa.doj.gov>; Lynch, Garrett (USANYS) [Contractor] <GLynch@usa.doj.gov>; Lake, Stephanie (USANYS) <SLake@usa.doj.gov>
**Cc:** Crowley, Shawn (USANYS) <SCrowley@usa.doj.gov>
**Subject:** 2020.03.09 Letter re OFAC contacts.EB3.sgc.docx

Here is a revised draft.  Please take a careful read for accuracy and stop by / call if you have any issues.  Thanks guys.

# EXHIBIT 109-1

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

Re:     *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020.  The Government has stipulated to the authenticity of GX 411 ~~If~~ if the defense wishes ~~to offer GX 411~~ it as a defense exhibit, ~~the Government will stipulate to the authenticity of the document~~ and consents to the curative instruction proposed by the defense yesterday.  (*See* Dkt. No. 274 at 2).  The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

    **I.     The Government's Review**

In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team:  AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States ~~("SAUSA")~~ Attorney ("SAUSA")

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

Garrett Lynch.[1]  Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2]  In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3]  The emails at issue are attached as Exhibit A. In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.    The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank.  The Commerzbank investigation commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System.  The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the Government preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case.  *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and.  Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation.  The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States.  One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

("IEEPA") and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately ~~period~~ 2002 and 2008. During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to OFAC between March 2010 and October 2014. GX 411 was one such disclosure.[5] In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

### III.    The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant. On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:

For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Spartise Holding GmbH, Petroleoa de Venezuela (aka, PDVSA), Stratark Insaat Ve Taahhut A.S., including, but not limited to, the following wire transfer information:

1. Possible Originating Bank: Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. Possible Beneficiary Bank: Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ. (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. Possible Account Number: IBAN CH7708530519663100203
4. Possible CHIPS System Sequence Number: 0262787
5. Possible Credit/Debit Reference Number: FAAS10940015050
6. Possible Transaction Reference Number: 5111500094FC
7. Possible Transaction Date: 4/4/2011
8. Possible Amount: USD $29,442,967.57

Ex. A at 4. In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case. GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not re-produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations. Ex. A at 6. During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under

---

[5] SAUSA Lynch has been unable to determine when DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, SAUSA Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief").  Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers.  Ex. A at 10.  During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation.  In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY.  Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").  On that day, SAUSA Lynch spoke to OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges.  Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "Presentation").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck."  OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

J.S. for $29 million, which is described in GX 411.  AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411.  That same day, SAUSA Lynch located GX 411 in a file at his DANY office that contained Commerzbank's voluntary disclosures from 2015.  SAUSA Lynch then sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411 and said:  "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment."  None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email.  Neither AUSA Lake nor SAUSA Lynch recall the substance of the call, other than that it was brief.  At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been.  AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020.  GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails.  After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included.  The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense.  At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief.  AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

## IV.    OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411.  During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter.  OFAC reported further that the absence of GX 411 from this database at the present time may have been caused by modifications to the database in approximately 2012.  In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter.  As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

were familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
       Jane Kim / Michael Krouse / Stephanie Lake
           Assistant United States Attorneys
       Garrett Lynch
           Special Assistant United States Attorney
       (212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 110

**Kim, Jane (USANYS) 4**

| | |
|---|---|
| **From:** | Crowley, Shawn (USANYS) |
| **Sent:** | Monday, March 9, 2020 11:45 PM |
| **To:** | Krouse, Michael (USANYS); Kim, Jane (USANYS) 4; Lynch, Garrett |
| **Cc:** | Bove, Emil (USANYS) |
| **Subject:** | 2020.03.09 Letter re OFAC contacts.EB3.sgc.v2.docx |
| **Attachments:** | 2020.03.09 Letter re OFAC contacts.EB3.sgc.v2.docx |

Here's the final version from us.  We are signed off.  Garrett, please make sure this is accurate:  That same day, SAUSA Lynch located GX 411 in a hard copy file at his DANY office; SAUSA Lynch had segregated letter from Commerzbank's other voluntary disclosures and stored it in the folder, but does not recall when he did so.

# EXHIBIT 110-1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**FILED BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

> **Re:    *United States* v. *Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)**

Dear Judge Nathan:

The Government writes to provide further facts regarding (1) the prosecution team's contacts with the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") regarding the defendant, the defendant's entities, and the banks that processed the payments at issue in this case, and (2) the circumstances surrounding the Government's untimely production of the June 16, 2011 letter from Commerzbank to OFAC that is currently marked for identification as GX 411.

At the outset, the Government reiterates its earlier concessions of error in failing to timely produce GX 411, and failing to make accurate disclosures regarding the status of the document on March 7 and March 8, 2020.  The Government has stipulated to the authenticity of GX 411 if the defense wishes it as a defense exhibit, and consents to the curative instruction proposed by the defense yesterday.  (*See* Dkt. No. 274 at 2).  The Government is also prepared to execute the stipulation that defense counsel proposed this afternoon, and to consider any reasonable modifications to the stipulation based on the disclosures contained in this letter.

> **I.    The Government's Review**

In response to the questions raised by the Court and counsel this morning, the unit supervisors overseeing this prosecution—Emil Bove and Shawn Crowley—communicated with the AUSAs previously assigned to this case—Andrew DeFilippis, David Denton, Rebekah Donaleski, and Matthew Laroche—and the current prosecution team:  AUSAs Jane Kim, Michael Krouse, Stephanie Lake, and Special Assistant United States Attorney ("SAUSA") Garrett Lynch.[1] Based on the supervisors' instructions, today these eight prosecutors reviewed emails, network

---

[1] SAUSA Lynch is employed full-time with the District Attorney's Office of New York ("DANY") as an Assistant District Attorney ("ADA").

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 2

folders, hard copy files, and notes, for materials reflecting communications or correspondence with OFAC.

Based on today's review, the undersigned represent to the Court and counsel that (1) the eight line prosecutors named in the preceding paragraph did not at any point inquire of any OFAC employee about whether and to what extent OFAC considered or pursued regulatory enforcement action against the defendant, the defendant's entities, or the banks at issue based on their processing of the payments in this case (including but not limited to Commerzbank), and (2) the seven AUSAs named in the preceding paragraph were unaware of GX 411 prior to January 10, 2020, when SAUSA Lynch transmitted the document to AUSAs Lake, Kim, and Krouse via email.[2]  In connection with today's review, SAUSA Lynch identified email communications with OFAC personnel that the Government produced to the defense for the first time tonight at 7:25 p.m. because they reflect somewhat substantive communications with OFAC regarding the case.[3]  The emails at issue are attached as Exhibit A.  In addition to representations (1) and (2), the undersigned represent to the Court and counsel that (3) at no time did SAUSA Lynch discuss GX 411 or Commerzbank's role in this case with anyone at OFAC.

## II.    The Commerzbank Investigation

In January 2012, while at DANY, and prior to the initiation of DANY's investigation into the defendant, SAUSA Lynch was assigned to work on an ongoing investigation into Commerzbank.  The Commerzbank investigation commenced in approximately January 2011 and involved the United States Department of Justice ("DOJ"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"),[4] OFAC, and the Board of Governors of the Federal Reserve System.  The investigation focused on Commerzbank's violations of U.S. sanctions laws and regulations, including violations of the International Emergency Economic Powers Act and the Bank Secrecy Act as well as OFAC sanctions programs targeting Iran, between approximately 2002 and 2008.  During the course of the Commerzbank investigation, Commerzbank provided to DANY 15 voluntary disclosures that the Commerzbank branch in New York City had sent to

---

[2] There is no dispute that SAUSA Lynch is a member of the prosecution team and that, as a result and as explained herein, GX 411 was in the hands of the prosecution team since 2015.

[3] The seven AUSAs identified additional communications with OFAC personnel, but they related principally to OFAC's verification that it did not issue licenses relevant to this case and to the preparation of OFAC witness Ted Kim.

[4] At approximately 9:00 p.m., the undersigned preliminarily determined that SDNY participated in the investigation of Commerzbank based on a press release related to the case.  *See* https://www.justice.gov/opa/pr/commerzbank-ag-admits-sanctions-and-bank-secrecy-violations-agrees-forfeit-563-million-and.   Due to the timing of this discovery, the Government has not reviewed any SDNY case files related to the Commerzbank investigation.  The seven AUSAs who participated in the investigation at issue in this case did not participate in the investigation of Commerzbank on behalf of the United States.  One of the AUSAs, David Denton, participated in the investigation while in private practice prior to joining SDNY.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 3

OFAC between March 2010 and October 2014.  GX 411 was one such disclosure.[5]  In March 2015, Commerzbank entered into a deferred prosecution agreement with DOJ, SDNY, DANY, OFAC, and the Federal Reserve.[6]

### III.    The Investigation of the Defendant

In May 2015, SAUSA Lynch was assigned to work on the DANY investigation related to the defendant.  On or about August 31, 2015, DANY issued a subpoena to Commerzbank's New York branch in connection with the investigation of the defendant, which requested the following:



For the time period of January 1, 2010 through the present (date of this subpoena), provide electronic copies of any and all wire transfers, book transfers, rejected wire transfers, originating from, benefiting, and/or otherwise referencing the following entities: Fondo Chino Venezolano (aka, Chinese Venezuelan Fund), Stratus International Contracting J.S., Stratus Global Investments Ltd., Clarity Trade and Finance S.A., Sparise Holding GmbH, Petroleoas de Venezuela (aka, PDVSA), Straturk Insaat Ve Taahhut A.S., including, but not limited to, the following wire transfer information:

1. <u>Possible Originating Bank:</u> Banco Del Tesoro, Caracas, Venezuela, BDTEVECA
2. <u>Possible Beneficiary Bank:</u> Hyposwiss Private Bank, Zurich, Switzerland, SHHBCHZZ, (aka, Hyposwiss Privatbank, Falcon Private Bank, Falcon Privatbank)
3. <u>Possible Account Number:</u> IBAN CH7708530519663100203
4. <u>Possible CHIPS System Sequence Number:</u> 0262787
5. <u>Possible Credit/Debit Reference Number:</u> FAAS109400150500
6. <u>Possible Transaction Reference Number:</u> 5111500094FC
7. <u>Possible Transaction Date:</u> 4/4/2011
8. <u>Possible Amount:</u> USD $29,442,967.57

Ex. A at 4.  In October 2015, Commerzbank provided DANY with records in response to the subpoena (the "Commerzbank Subpoena Production"), which the Government produced to the defense during Rule 16 discovery in this case.  GX 411 does not appear to be responsive to the subpoena, and Commerzbank did not produce GX 411 to DANY in response to the subpoena.

On May 19, 2016, SAUSA Lynch spoke to a supervisory enforcement officer at OFAC ("OFAC Officer-1") with whom he had dealt on past cases involving U.S. sanctions laws and OFAC regulations.  Ex. A at 6.  During that call, SAUSA Lynch outlined the general facts of the case and solicited OFAC Officer-1's informal thoughts about whether the conduct under investigation potentially violated U.S. sanctions laws and regulations.  OFAC Officer-1 confirmed that the facts outlined by SAUSA Lynch would constitute a violation.

On August 1, 2016, when DANY was preparing to present the case to a grand jury in New York County, SAUSA Lynch sent OFAC Officer-1 an email.  Ex. A. at 7.  In the email, SAUSA

---

[5] SAUSA Lynch has been unable to determine when specifically DANY received GX 411 from Commerzbank.

[6] *See* https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/12/commerzbank_deferred_prosecution_agreement_1.pdf.

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 4

Lynch asked OFAC Officer-1 about the possibility of arranging for an OFAC witness to provide grand jury testimony.  SAUSA Lynch also offered in the email "to provide you with information so you can take action on your own if so desired."  *Id.*  On August 2, 2016, OFAC Officer-1 responded and introduced his management team, including a Section Chief (the "Section Chief"). Ex. A at 8.

On or about August 5, 2016, SAUSA Lynch participated in a phone call with the Section Chief and two other OFAC enforcement officers.  Ex. A at 10.  During this call, SAUSA Lynch briefed OFAC on the general facts of the investigation into Mr. Sadr's alleged conduct.

DANY and the Federal Bureau of Investigation ultimately decided to pursue federal charges at SDNY rather than proceeding with the New York State grand jury investigation.  In June 2017, SAUSA Lynch was appointed as a SAUSA at SDNY.  Between July 12, 2017 and September 20, 2017, SAUSA Lynch and OFAC Officer-1 exchanged a series of emails.  *See* Ex. A at 12-14.  During those emails, SAUSA Lynch informed OFAC Officer-1 that he had been designated a SAUSA, and raised the possibility of arranging a phone call in July to discuss the ongoing investigation.  The phone call did not happen until September 21, 2017.  *See* Ex. A at 12 ("This call with SDNY that I tried to set up back in July never happened.").  On that day, SAUSA Lynch spoke to OFAC Officer-1.  Ex. A at 11.  During that call, SAUSA Lynch summarized his understanding of the then-existing evidence in this case and solicited OFAC Officer-1's thoughts regarding the potential for federal charges.  Following the call, SAUSA Lynch sent OFAC Officer-1 a PowerPoint presentation outlining some of the evidence in the case.  *Id.*; *see* Ex. A at 26-47 (the "Presentation").  OFAC Officer-1 responded:  "[T]hanks for passing along the information below/attached.  We'll take a look and will get back to you."  *Id.*

On September 26, 2017, OFAC Officer-1 responded again to the email attaching the Presentation, this time copying the Section Chief, another OFAC enforcement officer, and AUSA Laroche.  Ex. A at 15.  OFAC Officer-1 thanked SAUSA Lynch for "passing along the slide deck." OFAC Officer-1 stated that the two other OFAC officials copied would "coordinate with you on next steps or follow-up with any questions they have."  *Id.*  SAUSA Lynch does not recall anyone from OFAC following up with SAUSA Lynch to discuss next steps or questions.

On March 28, 2019, after an unrelated phone call with OFAC Officer-1 during which this case was mentioned, OFAC Officer-1 sent SAUSA Lynch an email.  Ex. A at 16.  Attached to the email were two documents related to a public enforcement action OFAC had taken with a fact pattern that OFAC Officer-1 believed to be similar to this case.  *Id.* at 17-25.

On January 10, 2020, while preparing for trial, AUSA Stephanie Lake sent an email to SAUSA Lynch, copying AUSAs Jane Kim and Michael Krouse.  *See* Ex. B.  AUSA Lake's email mentioned the April 4, 2011 wire transfer from Fondo Cino to Stratus International Contracting J.S. for $29 million, which is described in GX 411.  AUSA Lake stated a document previously provided by a witness—which was produced to the defense during Rule 16 discovery—"should be helpful in tying the wire information we have showing the Fondo Chino transfer to PDVSA." AUSA Lake's email triggered for SAUSA Lynch a recollection of GX 411.  That same day, SAUSA Lynch located GX 411 in a hard copy file at his DANY office; SAUSA Lynch had

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 5

segregated letter from Commerzbank's other voluntary disclosures and stored it in the folder, but does not recall when he did so.  SAUSA Lynch then sent an email to AUSA Lake, copying AUSAs Kim and Krouse, which attached GX 411 and said:  "In the spirit of closing the loop on the $29M payment through Commerz, attached is the voluntary disclosure Commerze (sic) made to OFAC re: the payment."  None of the three AUSAs responded to SAUSA Lynch's email.

AUSA Lake recalls speaking to SAUSA Lynch on the phone briefly about GX 411 soon after SAUSA Lynch sent his January 10, 2020 email.  SAUSA Lynch recalls that he and AUSA Lake discussed the substance of GX 411 and whether to introduce it in the Government's case-in-chief.  At the time of the January 10, 2020 email, AUSAs Lake, Kim, Krouse, and SAUSA Lynch did not realize GX 411 had not been produced in Rule 16 discovery, and failed to check whether it had been.  AUSAs Lake, Kim, Krouse, and SAUSA Lynch do not recall any other conversations about GX 411 between January 10, 2020 and March 6, 2020.  GX 411 was not produced to the defense or marked as a Government Exhibit before trial.

On March 6, 2020, AUSA Lake found the January 10, 2020 email from SAUSA Lynch while organizing her emails.  After reviewing GX 411, AUSA Lake looked at the Commerzbank Subpoena Production, and discovered that GX 411 was not included.  The next morning, AUSA Lake consulted with the other members of the prosecution team, and concluded that GX 411 had not been produced to the defense.  At that time, AUSAs Lake, Kim, Krouse, and SAUSA Lynch viewed GX 411 as an inculpatory document and decided to seek to admit GX 411 during the Government's case in chief.  AUSA Lake sent the document, along with others, to the defense. The transmittal email failed to disclose that GX 411 had not been produced previously, and there is no dispute that was a failure in judgment on the part of the undersigned.

## IV.    OFAC's Handling of GX 411

At approximately 6:00 p.m. on March 8, 2020, SDNY contacted OFAC in an effort to determine what, if anything, OFAC did in response to the letter from Commerzbank reflected in GX 411.  During telephone calls today, OFAC reported that it has searched its database of correspondence, and is unable to find a copy of the letter.  OFAC reported further that the absence of GX 411 from this database may have been caused by modifications to the database in approximately 2012.  In addition to searching the database, OFAC asked personnel in OFAC's Enforcement, Compliance, and Global Targeting components if they were familiar with the letter.  As of approximately 5:00 p.m. tonight, OFAC had not identified any employees who were

The Honorable Alison J. Nathan, U.S.D.J.
March 9, 2020
Page 6

familiar with the letter or any investigative or enforcement steps taken by OFAC with respect to the letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jane Kim / Michael Krouse / Stephanie Lake
    Assistant United States Attorneys
Garrett Lynch
    Special Assistant United States Attorney
(212) 637-2038 / 2279 / 1066

cc: Defense Counsel (by ECF)

# EXHIBIT 111

**Kim, Jane (USANYS) 4**

| | |
|---|---|
| **From:** | Lynch, Garrett <LynchG@dany.nyc.gov> |
| **Sent:** | Monday, March 9, 2020 11:54 PM |
| **To:** | Crowley, Shawn (USANYS); Krouse, Michael (USANYS); Kim, Jane (USANYS) 4 |
| **Cc:** | Bove, Emil (USANYS) |
| **Subject:** | RE: 2020.03.09 Letter re OFAC contacts.EB3.sgc.v2.docx |

That's right.

-------- Original message --------
From: "Crowley, Shawn (USANYS)" <Shawn.Crowley@usdoj.gov>
Date: 3/9/20 11:45 PM (GMT-05:00)
To: "Krouse, Michael (USANYS)" <Michael.Krouse@usdoj.gov>, "Kim, Jane (USANYS) 4"
<Jane.Kim@usdoj.gov>, "Lynch, Garrett" <LynchG@dany.nyc.gov>
Cc: "Bove, Emil (USANYS)" <Emil.Bove@usdoj.gov>
Subject: 2020.03.09 Letter re OFAC contacts.EB3.sgc.v2.docx

Here's the final version from us.  We are signed off.  Garrett, please make sure this is accurate:  That same day, SAUSA Lynch located GX 411 in a hard copy file at his DANY office; SAUSA Lynch had segregated letter from Commerzbank's other voluntary disclosures and stored it in the folder, but does not recall when he did so.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

# EXHIBIT 112



2 People >

Fri, Mar 6, 10:02 PM

> Hey can you guys let me know when we're meeting tomorrow AM. I'm flex, but might not come in at 9 if you guys aren't there

Stephanie L. .Lake

I'm not sure I'll be in by 9. Was thinking more like 10. A call might make sense since krouse said he planned to work at home for a while?

> Sounds good!!

Michael K. .Krouse

Yep, I'm available for a call.  But I'm working on closing at home now and probably will keep going in the morning here.  I brought a bunch of binders home

 iMessage

# EXHIBIT 113



M. S.

2 People >

M.
brought a bunch of binders home

Sat, Mar 7, 7:00 AM

Stephanie L. .Lake

S.
Let us know when you're up and can talk.

Sat, Mar 7, 8:27 AM

Michael K. .Krouse

M.
I'm up

Stephanie L. .Lake

S.
Talk at 9?

Michael K. .Krouse

M.
Sure

Stephanie L. .Lake

S.
Maybe 9:15. We're at breakfast and will be walking back soon, but it's too windy to talk on the phone outside.

  iMessage 

     

# EXHIBIT 114



**M. S.**

2 People >

Michael K. .Krouse

Sure

9:30 works too if you don't want to feel rushed

Stephanie L. .Lake

Thanks. I'll call when I'm home, between 9:15 and 9:30

Works for me. I'm on my cell then/ won't leave yet for office

Stephanie L. .Lake


**FaceTime**
Call Ended

Thanks for including me in the discussion and listening to my views :)

Go team!!

Krouse I can help you with

iMessage

# EXHIBIT 115



M.  S.

2 People >

S. between 9:15 and 9:30

Works for me. I'm on my cell then/ won't leave yet for office

Stephanie L. .Lake

 

FaceTime
Call Ended

Thanks for including me in the discussion and listening to my views :)

Go team!!

Krouse I can help you with closing and slides tonight too



You're going to be great. I'm psyched about rebuttal and woke up at 5am!!

Sat, Mar 7, 11:48 AM

  iMessage 

     

# EXHIBIT 116

M. S.

2 People >

> I had a side email with Reid about the doc- it was his bday yesterday

Stephanie L. .Lake

What did he say?

Michael K. .Krouse

How old is he?

> I don't know- but he said it was a "big bday"

Stephanie L. .Lake

70 I bet

> He just said they were concerned it hadn't been produced and asked if we thought it had been

Stephanie L. .Lake

Did he explain how they think

iMessage

# EXHIBIT 117



M.  S.

2 People >

Stephanie L. .Lake

Did he explain how they think it's Brady?

I tried to limit my words bc 1) I felt gross about emailing w him and 2) I didn't want them to use any statements

No, really short

I could ask him why he thinks it's Brady

Stephanie L. .Lake

Eh

Maybe we just let them do whatever they're going to do

Yeah, I'd rather not engage further

Michael K. .Krouse

  iMessage 

      

# EXHIBIT 118

**M. S.**

2 People >

Sun, Mar 8, 9:41 PM

Stephanie L. .Lake

I don't know if it helps or hurts to say that when we sent it we didn't think it was a rule 16 violation because we didn't think it helped them and hadn't intended to use it until we sent it

Michael K. .Krouse

I think that helps

We also did not have it in our possession, and it was from a different case, until Jan 2020

It'll be okay Steph

I can put some bullets together

If you want, I can handle and you don't have to go to court

iMessage

# EXHIBIT 119



M. S.

2 People >

> If you want, I can handle and you don't have to go to court

> But we need you on payments!! And with Conte!!

Stephanie L. .Lake

I'm sorry

I don't know if I can

I'm really not doing well

> Okay. We'll do it. Don't worry about it- just focus on your health

> I'm assuming there are outlines on the shared drive

> We can just pull

Stephanie L. .Lake

I'm sorry

  iMessage

     

# EXHIBIT 120

‹   Ⓜ️ **M.**

Michael ›

I'll come in early

I hope Stephanie's ok

I have no idea about the payment chart

Mon, Mar 9, 6:05 AM

I'm nervous now bc her last order

Mon, Mar 9, 7:37 AM

Wasn't that a change the chiefs made

Do you want to take this or do you want me to

Can you do arg while I gather all of steph's materials

I can do the arg

📷  Ⓐ  ⬭ iMessage  🎤

# EXHIBIT 121

Case 1:18-cr-00224-AJN    Document 463-10    Filed 02/22/21    Page 66 of 84



**2 People** >

iMessage
Mon, Mar 9, 4:42 PM

Emil J. .Bove

 One of you guys should step out to call Kaveh

 Cell: 202-746-4485

 We'll look at these docs and vids before committing to excerpts

Yup, we clarified

Emil J. .Bove

 Let's meet in my office heading there now

Tue, Mar 10, 9:06 AM

Emil J. .Bove

Let's get off this immediately

We will focus on the other

iMessage

# EXHIBIT 122



Stephanie ›

Mon, Mar 9, 10:41 PM

Looking at the full email exchange with Garrett, I feel like they're going to say I was lying that I thought it was part of the subpoena return because he pointed me to the return for the swift

But I definitely am not lying about that.

You definitely are not

Don't worry, we have your back

Don't think about this stuff!!

Yeah I really need to not

I shouldn't have looked at it

Turn your phone off

  iMessage 

     

# EXHIBIT 123



Stephanie >

Looking at the full email exchange with Garrett, I feel like they're going to say I was lying that I thought it was part of the subpoena return because he pointed me to the return for the swift

But I definitely am not lying about that.

You definitely are not

Don't worry, we have your back

Don't think about this stuff!!

Yeah I really need to not

I shouldn't have looked at it

Turn your phone off

We made a mistake

iMessage

# EXHIBIT 124

4 People >

Michael K. .Krouse

No closing today.  They affirmatively told the court they are calling the defendant after this reader

They admitted GX 411 and judge read the curative

Emil J. .Bove

Sounds good - thank you. We'll get over to watch the direct.

Michael K. .Krouse

Stip is in and read.  reader still on.  We'll let you know when Sadr takes the stand

Defendant testifying

He's taking the stand

Wed, Mar 11, 10:35 AM

iMessage

# EXHIBIT 125

 Verizon LTE 11:29 AM



**Stephanie** ›

Wed, Mar 11, 1:55 PM

How did the blood tests look?

Hope you're ok

I called and they have them back, but the doctor hasn't released them so I don't know. It's annoying.

How's cross?

She's making us air out all our cross questions before we start

It's a little ridiculous

She said this is what happens when Garrett has no credibility with court

Jeez

  iMessage 

     

# EXHIBIT 126




**S.**

Stephanie >

It's outrageous

Because of the commerz thing?

Yeah

We came back, I was the only one here, Heberlig said no ones here from the gov

I said hello, I'm here

Nathan laughed

You would've appreciated

Is the commerzbank thing just because he knew it was a new doc but didn't tell us?

Her face got red and she put her head on the desk

  iMessage 

     

# EXHIBIT 127

S.

Stephanie >

doc but didn't tell us?

Her face got red and she put her head on the desk

And it came out that Garrett had reached out to OFAC and presented the case

What

And that wasn't disclosed

Yeah

So they're getting an instruction on that

Jesus

Starting!

It was bad

iMessage

# EXHIBIT 128

Case 1:18-cr-00224-AJN Document 93-10 Filed 02/22/21



Stephanie >

Wed, Mar 11, 7:51 PM

> Defense cross done

> Judge read count one charge

> How are you feeling?

Worse. But planning to come tomorrow

> Oh no!! If worse don't come

> We don't start until 10 and have probably 90 mins more of charge

Charge is the worst

Three questions, before I walk into something awkward

1) is Garrett pissed I disappeared / was he told why?

iMessage

# EXHIBIT 129



Stephanie >

2) was defense told anything?

We told him you weren't feeling well

3) did I come out looking like an unethical villain in the commerz thing?

No other details bc I didn't know what you wanted him to know

Defense not told anything

No not at all

Garrett looks bad and judge told him he has no credibility with her. She was really hard on him today

Judge doesn't like any of us right now but not you

iMessage

# EXHIBIT 130



Stephanie >

We told him you weren't feeling well

3) did I come out looking like an unethical villain in the commerz thing?

No other details bc I didn't know what you wanted him to know

Defense not told anything

No not at all

Garrett looks bad and judge told him he has no credibility with her. She was really hard on him today

Judge doesn't like any of us right now but not you specifically

iMessage